**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————— x
                               :
                               :

IN RE AMERICAN INTERNATIONAL     :
GROUP, INC. SECURITIES LITIGATION   :
                               :

This Document Relates To:  All Actions   :
                               :
                               :
————————————————————— x

**ECF CASE**

Master File No. 04 Civ. 8141 (JES) (AJP)

<u>Oral Argument Requested</u>

 

## <u>LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT PRICEWATERHOUSECOOPERS LLP</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     BRIEF PROCEDURAL HISTORY ........................................................................... 2

        A.      Overview of Claims ...................................................................................... 2

        B.      First Lead Plaintiff Motion ........................................................................... 3

        C.      Second Lead Plaintiff Motion ....................................................................... 4

        D.      Discovery ...................................................................................................... 4

        E.      Class Certification ......................................................................................... 5

        F.      Settlement Negotiations and the Proposed Settlement .................................. 5

III.    ARGUMENT ............................................................................................................ 5

        A.      The Proposed Settlement Fully Satisfies the Criteria for
                Preliminary Approval .................................................................................... 5

                1.      Factors to Be Considered .................................................................. 5

                2.      The Proposed Settlement Is the Result of Well Grounded,
                        Good Faith, Arm's-Length Negotiations Between
                        Experienced Counsel ......................................................................... 7

                3.      The Proposed Settlement Falls Well Within the Range of
                        Reasonableness and Warrants Notice and a Hearing on
                        Final Approval ................................................................................... 7

                4.      The $97.5 Million Settlement Has No Obvious Deficiencies .................... 8

IV.     THE COURT SHOULD PRELIMINARILY CERTIFY THE
        SETTLEMENT CLASS ............................................................................................ 9

        A.      Standards Applicable to Class Certification ................................................. 9

        B.      This Action Meets the Requirements of Rule 23(a) ................................... 11

                1.      Rule 23(a)(1): The Class Is So Numerous That Joinder of
                        All Members Is Impracticable ................................................. 11

                2.      Rule 23(a)(2): Questions of Law or Fact Are Common to
                        the Class ................................................................................ 11

3.      Rule 23(a)(3): Plaintiffs' Claims Are Typical of the Claims
        of Other Class Members ............................................................ 12

4.      Rule 23(a)(4): The Ohio State Funds Will Adequately
        Protect the Interests of the Class............................................. 13

C.      This Action Meets the Requirements of Rule 23(b)(3) ........................................ 14

1.      Questions of Law or Fact Common to the Class
        Predominate Over Any Questions Affecting Only
        Individual Members................................................................ 14

2.      A Class Action Is Superior to Other Available Methods for
        the Fair and Efficient Adjudication of the Controversy............................ 16

D.      Co-Lead Counsel Should Be Appointed Class Counsel Under Rule
        23(g)......................................................................................... 17

V.   THE COURT SHOULD APPROVE THE FORM OF THE NOTICES AND
     PLAN FOR PROVIDING NOTICE TO THE CLASS ................................................. 18

VI.  CONCLUSION........................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*In re AIG ERISA Litigation,*
  No. 04 Civ.9387(JES).......................................................................................9

*Affiliated Ute Citizens v. United States,*
  406 U.S. 128 (1972)........................................................................................16

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997)........................................................................................14

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
  222 F.3d 52 (2d Cir. 2000)..............................................................................13

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988)...................................................................................15, 16

*In re Blech Sec. Litig.,*
  187 F.R.D. 97 (S.D.N.Y. 1999)......................................................................17

*In re Bristol-Myers-Squibb Securities Litigation,*
  No. 00-1990 (D.N.J.).......................................................................................18

*Cromer Fin. Ltd. v. Berger,*
  205 F.R.D. 113 (S.D.N.Y. 2001)....................................................................16

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006)............................................................................10

*Dietrich v. Bauer,*
  192 F.R.D. 119 (S.D.N.Y. 2000)....................................................................15

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974)..........................................................................................9

*In re Excess Value Ins. Coverage Litig.,*
  No. M-21-84 (RMB), 2004 WL 1724980 (S.D.N.Y. July 30, 2004) ....................7

*In re Flag Telecom Holdings Ltd., Sec. Litig.,*
  245 F.R.D. 147 (S.D.N.Y. 2007) ....................................................................12

*In re Indep. Energy Holdings PLC Sec. Litig.,*
  210 F.R.D. 476 (S.D.N.Y. 2002) ......................................................................9

*In re Indep. Energy Holdings PLC Sec. Litig.,*
  302 F. Supp. 2d 180 (S.D.N.Y. 2003)..............................................................19

*In re Initial Public Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) ........................................................................6

*In re Interpublic Sec. Litig., No. 02 Civ. 6527 (DLC),*
  *2004 WL 2397193 (S.D.N.Y. Oct. 26, 2004)* ...............................................5

*In re HealthSouth Corporation Securities Litigation,*
  CV-03-BE-1500-S (N.D. Ala.) ......................................................................18

*Marisol v. Giuliani,*
  126 F.3d 372 (2d Cir. 1997)..........................................................9, 11,12, 13

*In re Medical X-ray Film Antitrust Litig.,*
  No. CV-93-5904, 1997 WL. 33320580 (E.D.N.Y. Dec. 26, 1997) .........................6

*Moore v. PaineWebber, Inc.,*
  306 F.3d 1247 (2d Cir. 2002).......................................................................15

*In re NASDAQ Market-Makers Antitrust Litig.,*
  176 F.R.D. 99 (S.D.N.Y. 1997) .......................................................................6

*In re NTL, Inc. Sec. Litig.,*
  No. 02 Civ. 3013, 2006 WL. 330113 (S.D.N.Y. Feb. 14, 2006) .............................9

*Ohio Public Employees Retirement System et al. v. Freddie Mac,*
  No. 03 Civ. 4261 (S.D.N.Y.) ........................................................................14

*Oscar Private Equity Investments v. Allegiance Telecom, Inc.,*
  487 F.3d 261 (5th Cir. 2007) .......................................................................10

*In re Oxford Health Plans, Inc. Sec. Litig.,*
  191 F.R.D. 369 (S.D.N.Y. 2000) ...........................................................11, 12, 15

*In re PaineWebber Ltd. P'ships Litig.,*
  147 F.3d 132 (2d Cir. 1998)...........................................................................5

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.,*
  163 F.R.D. 200 (S.D.N.Y. 1995) .....................................................................8

*In re Qiao Xing Sec. Litig.,*
  07-Civ.-7097, 2008 WL 872298 (S.D.N.Y. 2008) .......................................10, 20

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993)..........................................................................13

*Robinson v. Metro-North Commuter R.R.,*
  267 F.3d 147 (2d Cir. 2001)..........................................................................11

*In re Seagate Technology II Securities Litigation,*
   843 F. Supp. 1341 (N.D. Cal. 1994) ..................................................................10

*In re Stock Exchanges Options Trading Antitrust Litig.,*
   No. 99 Civ. 0962,(RCC), 2005 WL 1635158 (S.D.N.Y. July 8, 2005)..................10

*In re Sumitomo Copper  Litig.,*
   189 F.R.D. 274 (S.D.N.Y. 1999) .........................................................................8

*Teamsters Local 445 Freight Div. Pension Fund v. Bombadier, Inc.,*
   No. 05 Civ. 1898 (SAS), 2006 WL. 2161887 (S.D.N.Y. Aug. 1, 2006) ...............16

*In re Telik, Inc. Sec. Litig.,*
   No. 07 Civ. 4819, 2008 WL. 4198516 (S.D.N.Y. Sept. 10, 2008) ........................17

*In re Veeco Instruments, Inc. Sec. Litig.,*
   235 F.R.D. 220 (S.D.N.Y. 2006) .......................................................................12

*In re Vesta Insurance Group Securities Litigation,*
   No. 98-1407 (N.D. Ala.) ....................................................................................18

*In re Visa Check/MasterMoney Antitrust Litig.,*
   280 F.3d 124 (2d Cir. 2001)..........................................................................9, 15

*In re Vivendi Universal, S.A.,*
   242 F.R.D. 76 (S.D.N.Y. 2007) .........................................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005)..................................................................................7

*In re Waste Management, Inc. Securities Litigation,*
   No. H-99-2183 (S.D. Tex.) ................................................................................18

*In re WorldCom, Inc. Sec. Litig.,*
   219 F.R.D. 267 (S.D.N.Y. 2003) .......................................................................12

## STATUTES

15 U.S.C. §§ 77k, 77o ....................................................................................................2

15 U.S.C. § 78u-4(a)(7) .................................................................................................19

15 U.S.C. §§ 78j(b), 78t(a), 78t(i) ...................................................................................3

17 C.F.R. § 240.10b-5 .....................................................................................................3

Fed. R. Civ. P. 23(a)(2) .................................................................................................11

Fed. R. Civ. P. 23(e)(1) .................................................................................................19

Fed. R. Civ. P. 23(g)(1)(A) ..................................................................................17

Fed. R. Civ. P. 23(g)(1)(B) ..................................................................................17

Private Securities Litigation Reform Act of 1995 (the "PSLRA"),
    15 U.S.C. §§ 78u-4 *et seq* ............................................................................1

## OTHER AUTHORITIES

3 Newberg on Class Actions § 7:33 (4th ed.) ......................................................10

Manual for Complex Litigation (4th) § 21.632 ....................................................10

I.     **PRELIMINARY STATEMENT**

        The Ohio Public Employees Retirement System, State Teachers Retirement System of

Ohio and the Ohio Police & Fire Pension Fund (collectively, "Lead Plaintiff" or the "Ohio State

Funds"), as Court-appointed Lead Plaintiff in this case, submit this memorandum of law in

support of their motion, pursuant to Rules 23(a), (b)(3), and (e) of the Federal Rules, for:

- Preliminary approval of the proposed $97.5 million settlement (the "Settlement") of claims against Defendant PricewaterhouseCoopers LLP ("PwC") in this class action ("Action"), as set forth in the Stipulation and Agreement of Settlement dated September 29, 2008 (the "Stipulation"), filed contemporaneously herewith;

- Preliminary certification of a settlement class (the "Settlement Class") of all persons or entities who purchased or otherwise acquired the publicly traded securities of Defendant American International Group, Inc. ("AIG" or the "Company") on or after October 28, 1999 until, and including, April 1, 2005 (the "Class Period"),[1] and appointment of the Ohio State Funds as Class Representatives; and

- Approval of the form, substance and the requirements of the proposed notice of pendency  (the "Notice") and summary notice, appended as Exhibits 1 and 3 to the proposed Preliminary Approval Order, and the means and methods for disseminating Notice, as comporting with due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 78u-4 *et seq*.

        The $97.5 million proposed settlement with PwC, which served as AIG's independent

auditor during the Class Period (and still today), is an outstanding result for the class.  Therefore,

there is no doubt that the proposed Settlement, which would be the ***eighth largest settlement***

entered into by an accounting firm to settle a securities fraud class action, should be preliminarily

approved.

        This Action arises from, *inter alia*, material misstatements and omissions allegedly made

by defendants[2] in connection with AIG's involvement in an illegal market division scheme with

---

        [1]   Excluded from the class are defendants and persons related to them and any person who files a timely request for exclusion.

        [2]   All defendants other than PwC are referred to herein as the "Non-Settling Defendants."

Marsh McLennan ("Marsh") and others in the insurance industry, as well as a far-reaching accounting fraud scheme that led to AIG's massive $3.9 billion restatement or adjustment of earnings in May 2005.  The price of AIG's stock fell at various times when these frauds were disclosed, resulting in significant damages to the class.  Lead Plaintiff contends that, during the Class Period, PwC certified that it had conducted its audits in accordance with Generally Accepted Auditing Standards and had expressed its opinion that AIG's financial statements were presented in accordance with Generally Accepted Accounting Principles, even though PwC knew – or was reckless in not knowing – that that was not the case.

The Settlement follows nearly four years of litigation that included:

- Fully-briefed motion practice, on two separate occasions, to determine the lead plaintiff in this case;

- Motions to dismiss filed by more than 20 defendants, all of which (except one) the Court denied in April and May 2006;

- The production and review of nearly 45 million pages of documents by defendants and non-parties, including 28 million pages produced by PwC; and

- More than 41 depositions conducted to date.

Under these circumstances, Lead Plaintiff respectfully requests that this Court enter the proposed the Preliminary Approval Order, preliminarily approving the Settlement, preliminarily certifying the Settlement Class, and allowing the dissemination of Notice to the Settlement Class.

## II.   BRIEF PROCEDURAL HISTORY

### A.   Overview of Claims

The Consolidated Third Amended Complaint ("Complaint") asserts claims under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o, and Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78j(b), 78t(a) and 78t-1, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against 22 defendants.

The claims arise from: (1) the disclosures on October 14 and 15, 2004 of AIG's involvement in a market division scheme that included its payment of improper "steering" contingent commissions to, and illegal rigging of bids with, Marsh and others in the insurance industry ("Market Division Fraud"); and (2) the disclosures in February, March and April 2005 of a massive accounting fraud at AIG that resulted in the Company restating nearly four years of earnings and adjusting a fifth year, *inter alia*, slashing net income by a whopping $3.9 billion and shareholders' equity by $2.7 billion ("Accounting Frauds").

The fallout that resulted from these frauds has been extensive, including:

- AIG's payment of ***nearly $1.6 billion*** to settle claims relating to the Market Division and Accounting Frauds brought by federal and state regulators, including the Securities and Exchange Commission, Department of Justice, and the Office of the New York Attorney General; and

- ***Criminal convictions and guilty pleas*** by numerous current and former AIG executives and employees in connection with the Market Division and Restatement Frauds.

However, the government did not sue PwC, which still serves as AIG's outside auditor today.

### B.    First Lead Plaintiff Motion

After the Market Division Fraud was revealed to the public on October 14, 2004, ten class action complaints were filed against AIG and others (but not PwC), and the cases were transferred to Judge Laura Taylor Swain.  The complaints included class periods of October 28, 1999 to October 15, 2004, and alleged Section 10(b) claims.

After hearing fully-briefed motions regarding appointment of a lead plaintiff and lead counsel, Judge Swain, by order dated February 7, 2005, appointed the Ohio State Funds as Lead

Plaintiff; appointed Labaton Sucharow (at the time known as Goodkind Labaton Rudoff & Sucharow LLP) and Hahn Loeser & Parks LLP as Co-Lead Counsel.

On April 19, 2005, Lead Plaintiff filed the First Amended Complaint, which included claims based on both the Market Division Fraud and the Accounting Frauds; alleged a class period of October 28, 1999 through March 30, 2005; named additional defendants, including PwC; and added claims under Section 11 and 15 of the Securities Act.

**C.**     **Second Lead Plaintiff Motion**

On May 16, 2005, the San Francisco Employees' Retirement System filed a separate, purportedly "new" securities class action complaint against AIG and others that alleged causes of action based solely on the Accounting Frauds disclosed in the spring of 2005.[3]   At a June 16, 2005 pre-motion conference, the Court asked for briefing on the issue of appointing a lead plaintiff with respect to the Accounting Fraud claims.  After the issue was fully briefed, the Court held a hearing on July 18, 2005, wherein the Court found that the Ohio State Funds would serve as the Lead Plaintiff for *all* the claims at issue – *i.e.*, both the Market Division fraud disclosed in October 2004 *and* the Accounting Frauds disclosed in the Spring of 2005.

**D.**     **Discovery**

Fact discovery in the case began in May 2006 after the Court denied all but one of the defendants' motions to dismiss.  Since that time, the defendants and non-parties have produced more than 45 million pages of documents, which includes more than 28 million pages produced by PwC.  Counsel for Lead Plaintiff have reviewed and analyzed virtually all of the documents produced to date.  In addition, Lead Plaintiff has taken more than a dozen fact depositions to date.

---

[3]   In late May 2005, Judge Swain recused herself from this case, and it was transferred to Your Honor on or about June 9, 2005.

###### E.     Class Certification

On February 20, 2008, Lead Plaintiff moved for class certification.  In connection with that motion, the Ohio State Funds produced more than 267,000 pages of documents, and more than 20 witnesses from the Funds and their external investment advisers have been deposed.

On August 20, 2008, AIG submitted its opposition to class certification, and on September 23, 2008, several other defendants submitted their opposition papers.  Lead Plaintiff's reply papers must be filed no later than November 7, 2008, and oral argument before the Court has been scheduled for December 16, 2008.

###### F.     Settlement Negotiations and the Proposed Settlement

The $97.5 million Settlement with PwC is the result of two full-day mediation sessions with former federal Judge Layn R. Phillips as mediator, as well as several additional in-person and telephonic negotiations (often including Judge Phillips) that took place over two months.  These negotiations were informed by the more than two years of fact discovery discussed above.

## III.   ARGUMENT

#### A.     The Proposed Settlement Fully Satisfies the Criteria for Preliminary Approval

##### 1.     Factors to Be Considered

There is no doubt that this Settlement should be preliminarily approved.  Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis.  Approval of a proposed settlement is within the discretion of the district court, which should be exercised in accordance with public policy strongly favoring pretrial settlement of class action lawsuits.  *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2004 WL 2397190, at *7 (S.D.N.Y. Oct. 26, 2004) (Cote, J.); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).

"Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  During the first step, a court must consider whether the settlement warrants preliminary approval, providing notice to the proposed class and the scheduling of a final settlement hearing.  In the second step, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness and adequacy of the proposed settlement, the court considers whether the settlement warrants "final court approval." *Id*.

The Court's role at this juncture is narrow:  to determine whether the Settlement is the product of an informed, arm's-length negotiation and free of obvious deficiencies and, thus, whether it is within the *range* of what might later be found fair, reasonable and adequate.  *Id*. at 102.  In other words, "preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlement." *In re Medical X-ray Film Antitrust Litig.*, No. CV-93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997).  *See also In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (Scheindlin, J.) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.").

Here, the circumstances underlying the proposed Settlement strongly support preliminary approval.

6

2.      **The Proposed Settlement Is the Result of**
        **Well Grounded, Good Faith, Arm's-Length**
        **Negotiations Between Experienced Counsel**

A proposed class action settlement "will enjoy a presumption of fairness" where the settlement "is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex class litigation."  *In re Excess Value Ins. Coverage Litig.*, No. M-21-84 (RMB), 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

Here, the proposed Settlement is without question the product of extensive arm's length negotiations that occurred over the last two months between counsel for Lead Plaintiff and counsel for PwC.  The Settlement was also reached at a point where Lead Plaintiff had a solid understanding of the strengths and weaknesses of the claims against PwC based on its review of more than 28 million pages of documents produced by PwC to date.  In short, there is no evidence indicating that the Settlement is not the product of informed and non-collusive negotiations among counsel.  Thus, it deserves preliminary approval.

3.      **The Proposed Settlement Falls Well Within the**
        **Range of Reasonableness and Warrants Notice**
        **and a Hearing on Final Approval**

The proposed Settlement of $97.5 million is well within the range of reasonableness. Indeed, our understanding is that the proposed Settlement would be the ***eighth largest settlement ever*** by an auditor in a securities class action and the ***fourth largest settlement ever*** by an auditor in a securities class action ***where the auditor had not been sued by the government*** in connection with the audits at issue.

In considering whether to enter into the Settlement, Lead Plaintiff, represented by counsel highly experienced in securities litigation (*see* Section IV.D, *infra*), weighed the value of this substantial, immediate recovery with the prospect that significant proceedings remained ahead,

including extensive fact and expert discovery over the remaining 14 months of discovery, the inevitable *Daubert* motions, summary judgment briefing, and, of course, trial preparation and a trial.  Lead Plaintiff also considered the risks inherent in litigating a securities class action, given that such cases are by their nature legally and factually complex.  *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) ("In evaluating the settlement of a securities class action, [courts] have long recognized that such litigation is notably difficult and notoriously uncertain.").

In sum, Lead Plaintiff has a solid understanding of the claims against PwC and the litigation risks associated therewith, and is confident that the Settlement is within the range of reasonableness.

### 4.      The $97.5 Million Settlement Has No Obvious Deficiencies

There are also no "grounds to doubt [the Settlement's] fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys."  *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995) (Pollack, J.).  The Ohio State Funds, like all other Settlement Class members, will receive their *pro rata* distribution from the Net Settlement Fund in accordance with the Plan of Allocation.  Subject to the approval of the Court, Co-Lead Counsel will seek compensation for the Ohio State Funds' costs and expenses, pursuant to the PSLRA, reasonable attorneys' fees of no more than 9% of the Settlement Fund, and reimbursement of Counsel's litigation expenses of up to $6 million.

In sum, nothing in the course of the settlement negotiations or the terms of the Settlement itself raises doubt as to its fairness.  Rather, the substantial recovery to the Settlement Class, the arm's-length nature of the negotiations, the participation of Judge Phillips – an extremely experienced and well-known mediator – and the participation of sophisticated counsel

throughout the litigation, compels the finding that the proposed Settlement is sufficiently fair, reasonable and adequate to justify dissemination of the Notice to the class and the scheduling of a final approval hearing.

**IV.   THE COURT SHOULD PRELIMINARILY CERTIFY**
**THE SETTLEMENT CLASS**

On July 1, 2008, Your Honor preliminary certified a settlement class in *In re AIG ERISA Litigation*, No. 04 Civ. 9387 (JES) (AJP) (S.D.N.Y.), a related litigation with nearly identical underlying facts (*i.e.*, class members' injuries from both the Market Division and Accounting Frauds), and time periods, as in this case.  Just as the Court saw fit to preliminarily certify a class for settlement purposes in that case, the Court should also do so here.

**A.   Standards Applicable to Class Certification**

In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification.  *In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013 (LAK) (AJP), 2006 WL 330113, at *4 (S.D.N.Y. Feb. 14, 2006) (Peck, J.) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).  This "liberal standard is in accord with this Circuit's preference for the use of class actions in securities law claims."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002). Accordingly, doubts as to whether or not to certify a class action should be resolved "in favor of allowing the class to go forward."  *Id.*  In determining class certification, "the question is not whether the plaintiff or plaintiffs . . . will prevail on the merits, but rather whether the requirements of Rule 23 are met."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir. 2001) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)).

Because Lead Plaintiff seeks class certification in the context of preliminary approval, the Court need only preliminarily certify the Settlement Class now, with a more thorough inquiry

into the issues – to the extent raised by those with standing – to be heard at the hearing for final

approval.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding that

"conditional certification survives the 2003 amendments to Rule 23(c)(1)"); *In re Qiao Xing Sec.

Litig.*, No. 07 Civ. 7097, 2008 WL 872298 (DLC), at *1 (S.D.N.Y. Apr. 2, 2008) (Cote, J.)

(certifying class on a preliminary basis until final determination at fairness hearing); *In re Stock

Exchanges Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2005 WL 1635158, at *5

(S.D.N.Y. July 8, 2005) (Casey, J.) ("In the context of settlement, courts often provisionally

certify the class along with preliminary approval of the settlement."); Manual for Complex

Litigation (4th) § 21.632 ("The judge should make a preliminary determination that the proposed

class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule

23(b)."); 3 Newberg on Class Actions § 7:33 (4th ed.) ("Provisional class certification may also

be granted for settlement purposes . . . .").[4]

---

[4]   This is true despite the fact that the Non-Settling Defendants are opposing Lead Plaintiff's separate, still-pending motion for class certification.  (*See* Section II.E., *supra*.)  The central arguments made by the Non-Settling Defendants, all of which lack merit, are as follows:

(1) That post-disclosure purchases render the Ohio State Funds atypical: however, our research reveals no instance where this Court has held an institutional investor atypical for those reasons and, in any event, all three of the Ohio State Funds did *not* increase their holdings after the frauds were disclosed;

(2) That the supposed failure by the Ohio State Funds to preserve certain electronic documents renders them inadequate:  however, all relevant, non-duplicative documents were preserved by the Funds and, in any event, all the courts that have addressed this issue granted class certification even where the parties *agreed* that documents relevant to the litigation were destroyed;

(3) That certain conflicts among class members render the Ohio State Funds inadequate:  however, there are no conflicts between Lead Plaintiff and class members, and the Non-Settling Defendants' reliance on *In re Seagate Technology II Securities Litigation*, 843 F. Supp. 1341 (N.D. Cal. 1994) – which conflicts with Second Circuit *and* Ninth Circuit law – is wholly without merit; and

(4) That under the Fifth Circuit's standards set forth in *Oscar Private Equity Investments v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007), Lead Plaintiff has not proved loss causation by a preponderance of the evidence: however, *Oscar* has been rejected by every judge in this Court that has addressed it and, regardless, Lead Plaintiff's loss causation expert readily satisfies the *Oscar* standards.

In any event, these and any other arguments raised by the Non-Settling Defendants are of no moment at this juncture, and can be appropriately addressed at the December 16 hearing on Lead Plaintiff's motion for class certification with respect to the litigation class (and may also be raised by those with standing at the hearing for final approval of the Settlement).

B.    **This Action Meets the Requirements of Rule 23(a)**

1.    **Rule 23(a)(1): The Class Is So Numerous**
**That Joinder of All Members Is Impracticable**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.  This rule does not require that joinder of all parties be impossible, only that it be difficult or inconvenient.  *In re IPO*, 243 F.R.D. at 84.  Although "precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts, numbers in excess of forty generally satisfy the numerosity requirement."  *Id.*

Here, there can be no dispute that the putative class satisfies numerosity and consists of (at least) tens of thousands of investors.  As of September 30, 2004, a date within the Class Period, AIG had more than *2.6 billion* shares of common stock outstanding.  AIG common stock was actively traded on the New York Stock Exchange throughout the Class Period, with more than *7.6 billion* shares traded during the Class Period.  Common sense dictates that these shares were purchased by tens of thousands of investors, making joinder impracticable.  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) (Brieant, J.) ("[B]ecause Oxford stock was traded in high volume during the class period, the precise number of class members could be, and very likely is, numbered in the thousands.").

2.    **Rule 23(a)(2): Questions of Law**
**or Fact Are Common to the Class**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality does not mean that all class members must make identical claims and arguments, but only that "plaintiff's grievances share a common question of law or fact."  *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).  And "[w]here, as here, there

11

exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail." *Oxford*, 191 F.R.D. at 374 (finding commonality with respect to securities claims).

Common questions of both law and fact abound.  The central questions of whether PwC made material misstatements of fact and/or omissions in documents filed publicly with the SEC, and whether PwC did so with the requisite mental state, are all the same for each class member. Therefore, the existence and nature of PwC's material misstatements and/or omissions will be common to all class members, and the claims of each class member arise from the same operative facts and share legal theories.  *See, e.g., In re Flag Telecom Holdings Ltd., Sec. Litig.*, 245 F.R.D. 147, 158 (S.D.N.Y. 2007) (Conner, J.) (finding common issues as to violations of federal securities laws, misrepresentations and omissions of material fact, scienter, and damages satisfy commonality).  As the court stated in *Oxford*, "[w]here the facts alleged show that [d]efendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met."  191 F.R.D. at 374.

### 3.   Rule 23(a)(3): Plaintiffs' Claims Are Typical of the Claims of Other Class Members

Rule 23(a)(3), the typicality requirement, is satisfied when the plaintiff shows that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol*, 126 F.3d at 376.  Typicality does not require, however, "that the situations of the named representative and the class members [be] identical."  *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (McMahon, J.).  Rather, so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (Cote,

J.) (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1993)), "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). Moreover, the typicality and commonality requirements "tend to merge" in securities cases, suggesting that typicality generally will be found if commonality is found. *Marisol*, 126 F.3d at 376.

Here, Lead Plaintiff's claims are identical to those of the other members of the class. Lead Plaintiff, like all class members, purchased AIG's publicly traded securities at artificially inflated prices during the Class Period and claim to have suffered damages because of PwC's alleged material misstatements and omissions. Accordingly, the legal theories and evidence Lead Plaintiff will advance to prove its claims will simultaneously advance the claims of other class members. The typicality requirement is met.

### 4.    Rule 23(a)(4): The Ohio State Funds Will Adequately Protect the Interests of the Class

Rule 23(a)(4), the adequacy of representation requirement, entails two showings: (i) class counsel must be qualified, experienced and generally able to conduct the litigation; and (ii) the representative plaintiff's interests must not be antagonistic to those of the remainder of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

*First,* Labaton Sucharow and Hahn Loeser, Court-appointed Co-Lead Counsel for Lead Plaintiff, are amply qualified, experienced and able to conduct this litigation vigorously and effectively, and have zealously and ably represented Lead Plaintiff on behalf of the proposed class for the last three and one-half years. (*See* Section IV.D *infra*.).[5]

---

[5]    As a result of the 2003 amendments to the Federal Rules, the issue of appropriate class counsel is guided by Rule 23(g) rather than Rule 23(a)(4). Accordingly, this issue is addressed in greater detail in Section IV.D below.

*Second,* there is no conflict or antagonism between the claims of the proposed class representative and those of the other members of the proposed class.  Moreover, the Ohio State Funds – three large institutional investors with collective assets of more than $150 billion and proven track records of successfully pursuing securities class claims (including a $410 million settlement in *Ohio Public Employees Retirement System et al. v. Freddie Mac*, No. 03 Civ. 4261 (S.D.N.Y.), approved by Your Honor in October 2006) – are committed to monitoring Lead Counsel and prosecuting this action vigorously, as indicated by their direct involvement in the litigation to date (and also in the mediation that led to this settlement).

Given that no conflicts exist between Lead Plaintiff's interests and those of other class members, and their counsel are able and competent lawyers in this area of practice, the adequacy of representation requirement is met.[6]

**C.    This Action Meets the Requirements of Rule 23(b)(3)**

**1.    Questions of Law or Fact Common to the Class Predominate Over Any Questions Affecting Only Individual Members**

Rule 23(b)(3) sets forth two requirements, the first being that the questions of law or fact common to the members of the class must "predominate" over any questions affecting only individual members.  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  The Supreme Court expressly recognized that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud[.]"  *Id.* at 625.

---

[6]    As noted above (*see* footnote 4, *supra*), the Non-Settling Defendants are opposing Lead Plaintiff's still-pending motion for class certification of the litigation class on grounds that, *inter alia*, the Ohio State Funds are inadequate representatives.  That opposition can be heard by the Court at the December 16 hearing on that motion regarding the litigation class.  In addition, those with standing may raise objections at the hearing for final approval of the Settlement.

The Second Circuit has stated that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  This is undoubtedly true here.

For example, the common questions of law and fact noted above clearly predominate over any conceivable individual question, because PwC's alleged false statements affected all class members in the same manner (*i.e.*, through documents publicly filed with the SEC) and generalized proof will be necessary with respect to the issues of whether: (1) PwC made misleading statements and/or omissions; (2) such misstatements and/or omissions were material to AIG's investors; and (3) PwC possessed the requisite scienter.  *See Dietrich v. Bauer*, 192 F.R.D. 119, 127-28 (S.D.N.Y. 2000) (Sweet, J.) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues.").  In other words, all class members suffered the same kinds of harm, pursuant to the same legal theories, and arising out of the same alleged common course of conduct.  *See In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 90-91 (S.D.N.Y. 2007) (Holwell, J.) (finding predominance satisfied by allegations of defendants' false and misleading statements, scienter, reliance and causation).[7]

Moreover, whether any class member relied on a particular misrepresentation or omission does not raise individual issues in this case because reliance is presumed pursuant to (i) *Basic*'s

---

[7]   Indeed, the sole question of law or fact here that is not subject to "generalized proof" is the amount of each Class member's damages, which can be calculated relatively easily.  Individual questions of damages, however, are obviously found in every securities class action and are no bar to class certification.  *See, e.g., Visa Check*, 280 F.3d at 136; *Oxford*, 191 F.R.D. at 378.

fraud on the market doctrine, and (ii) *Affiliated Ute*'s presumption of reliance on material

omissions, with either presumption sufficient to satisfy this element.

The fraud on the market doctrine, as enunciated by the Supreme Court in *Basic Inc. v.*

*Levinson*, 485 U.S. 224 (1988), dispenses with the requirement that an investor prove awareness

or reliance of a particular statement. *Id.* at 241-42.  In order to be entitled to the *Basic*

presumption of reliance, the market for the security must be "efficient." *Id.* at 247.  Here, the

Court should *presume* that AIG common stock traded in an efficient market because it is traded

on the New York Stock Exchange. *See*, *e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v.*

*Bombadier, Inc.*, No. 05 Civ. 1898 (SAS), 2006 WL 2161887, at *8 (S.D.N.Y. Aug. 1, 2006)

(Scheindlin, J.) ("If, for example, a security is listed on the NYSE, AMEX, NASDAQ, or a

similar national market, the market for that security is presumed to be efficient.").[8]

### 2.   A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy

Finally, Rule 23(b)(3) also requires that the action be superior to other available methods

for the fair and efficient adjudication of the controversy.  This is self-evident here.  Courts find

that the superiority requirement is satisfied where:

> The potential class members are both significant in number and geographically
> dispersed.  The interest of the class as a whole in litigating the many common
> questions substantially outweighs any interest by individual members in bringing
> and prosecuting separate actions.

*Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001).

Here, the utility of presenting the claims asserted through the class action method is

substantial since the Settlement Class members who have been injured number in the tens of

---

[8]   Similarly, reliance is presumed to the extent that the claims are based on omissions of material facts. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972) ("[P]ositive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.").

thousands, but few may have been damaged to a degree that would induce them to institute litigation on their own behalf. *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999).

Further, certification of the Settlement Class is the superior method to facilitate the resolution of Lead Plaintiff's claims. Without the settlement class device, PwC could not obtain a class-wide release, and therefore would have had little, if any, incentive to enter into the Settlement. Moreover, certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner. *See In re Telik, Inc. Sec. Litig.*, No. 07 Civ. 4819 (CM), 2008 WL 4198516, at *12 (S.D.N.Y. Sept. 10, 2008) (McMahon, J.). Resolution of Lead Plaintiff's claims against PwC through the proposed Settlement Class is plainly superior to any other available method of resolution.

For all of the foregoing reasons, this Court should find that this Settlement Class meets the requirements of both 23(a) and 23(b) and should certify the Settlement Class.

### D. Co-Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g)

Rule 23(g)(1)(A) of the Federal Rules states that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1)(A). Lead Plaintiff respectfully requests that Labaton Sucharow and Hahn Loeser, Court-appointed Co-Lead Counsel for Lead Plaintiff, be appointed class counsel for the Settlement Class. As discussed above, these firms will continue to fairly and adequately represent the class. Proposed Class counsel are knowledgeable about the applicable law and experienced in handling class actions, have performed substantial work in vigorously pursuing the class's claims here, and have committed substantial resources to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(B).

Labaton Sucharow is among the nation's preeminent law firms in this area of practice and has served as lead or co-lead counsel on behalf of major institutional investors in numerous class

17

actions since the enactment of the PSLRA, including *In re HealthSouth Corporation Securities Litigation*, CV-03-BE-1500-S (N.D. Ala.) (representing New Mexico State Investment Council and the Educational Retirement Board of New Mexico); *In re Waste Management, Inc. Securities Litigation*, No. H-99-2183 (S.D. Tex.) (representing Connecticut Retirement Plans and Trust Funds); *In re Bristol-Myers-Squibb Securities Litigation*, No. 00-1990 (D.N.J.) (representing Amalgamated Bank); and *In re Vesta Insurance Group Securities Litigation*, No. 98-1407 (N.D. Ala.) (representing Florida State Board of Administration).

Hahn Loeser, one of Ohio's largest and most respected law firms, is eminently (and equally) qualified to serve as class counsel and represent the interests of Lead Plaintiff and the class.  Hahn Loeser has served as lead counsel in, and has defended, many class actions in the securities area, as well as in the areas of banking law, privacy, real estate, and antitrust law.

## V. THE COURT SHOULD APPROVE THE FORM OF THE NOTICES AND PLAN FOR PROVIDING NOTICE TO THE CLASS

The Court should also approve the form and content of the proposed Notice and Summary Notice.  (*See* Exhibits 1 and 3, annexed both to the proposed Preliminary Approval Order and Stipulation.)  Each is written in clear, straightforward language, and the Notice uses a format that clearly sets out the relevant information.  Consistent with Rules 23(c)(2)(B) and 23(e)(B), the Notice objectively apprises class members of the nature of the action, the definition of the class sought to be certified, the class claims and issues, that a class member may enter an appearance through counsel if desired, that the Court will exclude from the class any class member who requests exclusion (and sets forth the procedures and deadline for doing so), and the binding effect of a judgment on class members under Rule 23(c)(3).

The Notice also satisfies the separate disclosure requirements imposed by the PSLRA. The Notice states the amount of the settlement proposed to be distributed to the parties,

determined in the aggregate and on an average per share basis; provides a statement from each

party concerning the issues about which the parties disagree; states the amount of attorney's fees

and expenses (both on an aggregate and average per share basis) that Co-Lead Counsel will seek,

with a brief explanation supporting such fees and expenses; provides the names, addresses, and a

toll-free telephone number for Co-Lead Counsel, who will be available to answer questions from

class members; provides a brief statement explaining the reasons why the parties are proposing

the Settlement; and includes a cover page summarizing all of this information.  *See* 15 U.S.C. §

78u-4(a)(7); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184-85

(S.D.N.Y. 2003) (discussing PSLRA notice requirements and approving notice).

      Additionally, both of the Notices disclose the date, time and location of the Settlement

Hearing and the procedures and deadlines for the submission of Proof of Claim forms and

objections to any aspect of the Settlement, Plan of Allocation, or attorney's fees and expenses to

be sought by counsel.  These disclosures are thorough and should be approved by the Court.

      Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable

under the circumstances, including individual notice to all members who can be identified

through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e) requires the court

to "direct notice in a reasonable manner to all class members who would be bound by the

proposal."  Fed. R. Civ. P. 23(e)(1).  Here, the proposed notice plan readily meets these

standards.  Lead Plaintiff, through an experienced settlement and claims administrator, will cause

the Notice, including the Plan of Allocation and Proof of Claim form, to be sent by first class

mail to every class member who can be identified through reasonable effort.  This will be

accomplished principally by using record holder data to be produced by the transfer agent for

AIG, and by reaching out to broker-dealers for the last-known names and addresses of potential

class members and shareholders.  The Summary Notice, which summarizes the essential

Settlement terms and informs readers how to obtain the full Notice, will be published once in the

*Wall Street Journal*.  This notice program clearly satisfies the requirements of Rule 23 and due

process and should be approved by the Court.  *See In re Qiao Xing Sec. Litig.*, 07-CIV-7097

(DLC), 2008 WL 872298 (S.D.N.Y. 2008) (Cote, J.).[9]

---

[9]    In addition, the proposed judgment contains bar provisions that would preclude all claims seeking
contribution or indemnity from the Released Persons arising out of the Non-Settling Defendants' liability
to Lead Plaintiff and the class. The judgment also contains a provision that would give the Non-Settling
Defendants a judgment credit that is the greater of (1) an amount that corresponds to the percentage of
responsibility of the Released Persons, or (2) the amount paid by the Released Persons.

## VI.     CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court preliminarily

certify the proposed Settlement Class, grant preliminary approval to the proposed Settlement,

approve the forms and methods of notice, and issue the proposed Preliminary Approval Order

submitted herewith.

Dated:  New York, New York
        October 3, 2008

SHERYL CREED MAXFIELD,
FIRST ASSISTANT ATTORNEY GENERAL
OFFICE OF THE OHIO ATTORNEY GENERAL

LABATON SUCHAROW LLP

By _____
        Thomas A. Dubbs (TD 9658)
        Louis Gottlieb (LG 9169)
        Zachary M. Ratzman (ZR 0802)
140 Broadway
New York, New York  10005
(212) 907-0700
(212) 818-0477 (Fax)

Alan Kopit (Ohio Bar #0031965)
**HAHN LOESER & PARKS LLP**
200 Public Square, Suite 2800
Cleveland, Ohio  44114-2301
(216) 621-0150
(216) 274-2478 (Fax)

*Special Counsel to the Attorney General of Ohio
and the Ohio State Funds and Co-Lead Counsel
for the Class*

*Lead Counsel for Lead Plaintiff Ohio State Funds
and Lead Counsel for the Class*

21