**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x
                                    :
                                    :        ECF CASE
IN RE AMERICAN INTERNATIONAL GROUP,  :
INC. SECURITIES LITIGATION           :        Master File No. 04 Civ. 8141 (DC) (AJP)
                                    :
This Document Relates To:  All Actions  :
                                    :        <u>Oral Argument Requested</u>
                                    :
———————————————————————— x

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO**
**OBJECTIONS CONCERNING THE PROPOSED SETTLEMENT WITH DEFENDANT**
**<u>PRICEWATERHOUSECOOPERS LLP</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

I.      OBJECTIONS BY PUTATIVE SETTLEMENT CLASS MEMBERS ......................................... 1

        A.      Letters Critical of Securities Class Actions as a  Whole Should Not be
                Credited by the Court.......................................................................................... 2

        B.      "Rothstein Objection" to Fee Request  and Notice Is Without Merit ................................. 3

        C.      Karen Michaels Lacks Standing to Object and Her  Objection to the
                Settlement and Fee Request Is Without Merit ...................................................... 5

                1.      Michaels Lacks Standing to Object to the Settlement ............................................ 6

                2.      Requirement That Class Members Provide Details of Ownership Does
                        Not Deny Due Process ..................................................................................... 7

                3.      Notice Was Disseminated in Compliance With the Court's Order ..................... 7

                4.      The Class Definition Is Not Impermissibly Vague or Uncertain .......................... 8

                5.      The Timing of the Payment of Any Attorneys' Fees Is Proper ............................ 9

                6.      The Process for District Court Review  of Claims Is Reasonable and
                        Appropriate ......................................................................................................11

                7.      Notice Need Not Be Re-Issued if the Plan of Allocation Is Modified by
                        the Court ..........................................................................................................12

                8.      The Court's Ability to Adjust Claims on Equitable Grounds..............................13

                9.      Lead Plaintiff Has Established that the Settlement Is Fair, Reasonable
                        and Adequate ...................................................................................................13

                10.     Co-Lead Counsel's Fee and Expense Request Is Reasonable ............................14

II.     NON-SETTLING GREENBERG DEFENDANTS' OBJECTION TO PART OF
        THE BAR ORDER IS WITHOUT MERIT .........................................................................14

        A.      Consistent with *Gerber*, the Only Claims Barred Are Contribution
                Claims Where the Injury is Liability to the Plaintiffs ......................................15

        B.      The Scope of the Judgment Reduction Credit is the Same as the Scope of
                the Bar..............................................................................................................16

CONCLUSION.....................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

### CASES

<u>Page(s)</u>

*Biben v. Card*,
   789 F. Supp. 1001 (D. Mo. 1992) ........................................................................................ 3

*Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco
   Managed Care*,
   504 F.3d 229 (2d Cir. 2007) ............................................................................................... 6

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ............................................................................................... 2

*Gerber v. MTC Elec. Techs. Co.*,
   329 F.3d 297 (2d Cir. 2003) ............................................................................................. 15

*Hanson v. Acceleration Life Ins. Co.*,
   No. Civ. A3-97-152, 2000 WL 33340298 (D.N.D. June 21, 2000) ......................................... 9

*ITT v. Vencap, Ltd.*,
   519 F.2d 1001 (2d Cir. 1975) ........................................................................................... 11

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) .................................................................................. 4

*Lapin v. Goldman Sachs & Co.*,
   -- F.R.D. --, 2008 WL 4222850 (S.D.N.Y. Sept. 15, 2008) .................................................... 9

*In re Livent, Inc. Noteholders Sec. Litig.*,
   210 F.R.D. 512 (S.D.N.Y. 2002) ......................................................................................... 9

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007) ............................................................................................. 10

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................................... 2

*Powell v. Georgia-Pacific Corp.*,
   90 F.3d 283 (8th Cir. 1996) ....................................................................................... 11, 12

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................................................ 14

*In re Veeco Instruments Inc. Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006) ...................................................................................... 8, 9

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................................................. 8

**DOCKETED CASES**

*In Re Nortel Networks Corp. Sec. Litig,*
  No. 1-1855 (S.D.N.Y.) ................................................................................................ 3

*In re Tyco Int'l, Ltd. Multidistrict Litig.,*
  No. 02-1335 (D.N.H.) ................................................................................................ 11

**STATUTES AND RULES**

15 U.S.C. § 78u-4(a)(7) ................................................................................... 4, 10, 15, 16

28 U.S.C. § 1291 ......................................................................................................... 12

Fed. R. Civ. P. 23 ....................................................................................................... 10

Fed. R. Civ. P. 23(e) ..................................................................................................... 1

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................... 12

## PRELIMINARY STATEMENT

Pursuant to Rules 23(a), (b)(3) and (e) of the Federal Rules of Civil Procedure, the Ohio Public

Employees Retirement System, State Teachers Retirement System of Ohio and the Ohio Police & Fire

Pension Fund (collectively, "Lead Plaintiff" or the "Ohio State Funds"), as Court-appointed Lead Plaintiff in

this case, respectfully submits this memorandum of law in response to objections concerning the proposed

settlement (the "Settlement") of claims against Defendant PricewaterhouseCoopers LLP ("PwC") in this

proposed class action ("Action"), as set forth in the Agreement of Compromise and Settlement dated

September 29, 2008 (the "Stipulation"), for $97.5 million.

Despite mailing more than *2 million* copies of the Notice of Proposed Settlement, Motion for

Attorneys' Fees and Expenses Award and Fairness Hearing ("Notice") and publication of the Summary

Notice of Pendency and Proposed Settlement of Class Action ("Publication Notice") in the *Wall Street

Journal*, and transmission of the Summary Notice over PR Newswire and Bloomberg News Services, *see*

Declaration of Thomas A. Dubbs, dated January 13, 2008 ("Dubbs Decl."), Ex. 2 ¶ 6, 16.[1] the Settling Parties

have *not received one single objection* by an institutional investor or public pension fund and have received,

at most, *four* objections by putative settlement class members and *one* limited objection by a group of Non-

Settling defendants.  There has been *no objection to the proposed Plan of Allocation or to the fact that Lead

Plaintiff will be asking for reimbursement of its costs and expenses in an amount not to exceed $30,000*.

As discussed below, none of the objections should be credited and none cast doubt on the propriety of

the Settlement or Co-Lead Counsel's request for attorneys' fees and expenses.

## ARGUMENT

**I.      OBJECTIONS BY PUTATIVE SETTLEMENT CLASS MEMBERS**

---

[1] All exhibits referenced in Lead Plaintiff's submissions in connection with approval of the Settlement are annexed to the Dubbs Decl..  For clarity, citations to exhibits that themselves have attached exhibits, will be referenced as "Ex. ___ - ___."  The first numerical reference refers to the designation of the entire exhibit attached to the Dubbs Decl., and the second reference refers to the exhibit designation within the exhibit itself.

In all, only four objections by putative settlement class members have been received by the Settling Parties. When considering the millions of notices sent and the hundreds of thousands of potential class members, this result shows that the Settlement has the overwhelming support of the Settlement Class.[2] In addition, of the four so-called "objections" by putative class members, two are more properly characterized as general objections to securities class actions as a whole and do not even address the merits of this Settlement, and one is from a person who does not even have standing to object.

### A.  Letters Critical of Securities Class Actions as a Whole Should Not be Credited by the Court

The first possible "objection" is a tongue-in-cheek letter from Peter Lilly, Dubbs Decl. Ex. 8, remarking on the fact that Mr. Lilly estimates that he will receive only $12 from the Settlement (he does not say how he makes this estimate). He then questions the utility of securities class actions and of his taking the time required to complete the proof of claim form. Although Mr. Lilly is clearly unhappy with class action settlements in general, he raises no substantive issues concerning this Settlement and does not state that he objects to it.

The second "objection" is from Shana De Caro, who objects to the proof of claim procedure and specifically to the fact that claimants are required to gather their records and complete the claim form. Dubbs Decl. Ex. 7. She believes that American International Group, Inc. ("AIG" or "the Company") has access to investors' records and that it should provide the needed information to the claims administrator.

Ms. De Caro misunderstands the claims administration process. The claims process utilized in this Settlement follows that used in most securities class actions. The claims administrator, Complete Claims Solutions, LLC ("CCS"), has extensive experience administering such settlements. CCS Aff., Dubbs Decl. Ex. 2. Co-Lead Counsel, together with CCS, have taken great care to minimize the burdens on claimants where possible. CCS worked hard to assist people who had questions about the claim form and how to access

---

[2] *See, e.g., City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) (approving settlement where only 20 objectors appeared from group of 14,156 claimants); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 478-80 (S.D.N.Y. 1998) (Sweet, J.) (approving settlement where "miniscule" percentage of the class objected).

their records through their brokers.  CCS Aff. ¶ 11, Dubbs Decl. Ex. 2.  CCS also notified brokers that their

clients could have claims.  Although the claims process can be somewhat time consuming, all securities class

actions require potential class members to establish that they are eligible to recover.[3]  *See Biben v. Card*, 789

F. Supp. 1001, 1004, 1006 (D. Mo. 1992) ("[a]ll courts hearing class actions require class members to either

show damages or lose their claims.")

We also note that CCS attempted to contact Ms. De Caro in an effort to assist her with the claims

filing procedures. Dubbs Decl. Ex. 2 ¶ 18.

**B.      "Rothstein Objection" to Fee Request
          and Notice Is Without Merit**

Six relatives named Rothstein, represented by attorney Paul Kerson and referred by attorneys Paul S.

Rothstein, N. Albert Bacharach, Jr. and Frank H. Tomlinson, object to the 9% attorney fee cap set forth in the

Notice as well as certain aspects of the Notice.[4]  Their arguments are baseless.

The Rothsteins contend that an attorney fee of 9% of the $97.5 million Settlement is excessive.  For

this proposition, they rely entirely and solely on the fee decision in *In Re Nortel Networks Corp. Sec. Litig*,

No. 1-1855 (S.D.N.Y.), Dubbs Ex. 13.  As is abundantly clear, however, *Nortel* is readily distinguishable

because the 8.5% fee request in that case was based on a settlement valued at $1.14 billion, which would have

resulted in a lodestar multiplier of 5.8.  Instead of awarding the requested fee, the *Nortel* court awarded a 3%

fee that resulted in a multiplier of ***2.05***.  *Id*. at 3.

---

[3] Claims administrators do not have the ability or the authority to obtain the private records of potential class members.  Moreover, the public policy implications of allowing claims administrators to routinely obtain private trading records of millions of citizens would be daunting.  While some class members may be willing to waive any privacy concerns, many others (and perhaps the vast majority) would seriously object to such an intrusion without prior individualized waivers.  Further, even if some potential class members were to execute privacy waivers, these class members would be adding significant costs to the claims administration process to the detriment of other class members.  Therefore, as a matter of public policy, the responsibility of establishing class membership should fall on each individual.

[4] Of note, attorney Paul Rothstein has represented objectors in at least 11 class actions, 7 of which were also with attorneys Bacharach and Tomlinson.  *See* Dubbs Decl. Ex. 12.  Attorney Bacharach has represented objectors in at least 3 additional class actions.  Attorney Tomlinson has represented objectors in at least 2 additional class actions.  *Id*.  A portion of their objections were entertained in only three of the cases, however in two of those situations, the court noted that the objections related to issues that were already known to the parties.  In all three cases, the settlements were approved.  *Id*.

As set forth in the Memorandum of Law in Support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and Lead Plaintiff's Request for Reimbursement of Expenses ("Fee Br."),  the requested fee here is only 6% of the Settlement (not the 9% maximum figure set forth in the Notice).  Moreover, Co-Lead Counsel have expended more than 30,000 hours pursuing the claims against PwC and *the requested fee would result in a multiplier of approximately .54*.  *See* Fee Br. at 7-9, 16-17.  Such a fee is eminently reasonable under Second Circuit precedent.  *Id*. at 4-6.

The Rothsteins also offhandedly argue that the Notice was deficient, because it did not (i) state how much the potential damages could have been, (ii) state what PwC's insurance limits were or (iii) provide sufficient information to judge the attorneys' fee request.  Not surprisingly, the Rothsteins fail to cite any authority in support of this argument.

 Indeed, the Notice fully complies with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(7), which imposes specific disclosure requirements.  As required, the Notice sets forth the amount of the settlement, determined in the aggregate and on an average per share basis; provides a statement from the Settling Parties concerning the issues about which they disagree, including the amount of potential damages; states the maximum amount of attorneys' fees and expenses (both on an aggregate and average per share basis) that Co-Lead Counsel would seek, with a brief explanation supporting such fees and expenses; provides the names, addresses, and a toll-free telephone number for Co-Lead Counsel, who is available to answer questions from class members; provides an explanation of the reasons why the Settlement was being proposed; and includes a cover page summarizing all of this information.  *See* 15 U.S.C. § 78u-4(a)(7); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184-85 (S.D.N.Y. 2003) ( Scheindlin, J.) (discussing PSLRA notice requirements and overruling objections to notice).

Disclosure of the amount of damages potentially recoverable is specifically *not* required where, as here, the parties disagree on the amount of damages. 15 U.S.C. § 78u-4(a)(7)(B)(ii).  Disclosure of insurance limits is also not required.

With respect to the attorneys' fee request, the Notice sets out the maximum amount that would be requested and explains that counsel had not received any payment for their work in pursuing the claims against PwC and that it is customary to award counsel a percentage of a settlement for their efforts in achieving the settlement. Dubbs Decl. Ex. 2 at 5-6.  The Notice also states that the maximum fee of 9% was within the range of fees awarded in other cases.  *Id*. at 6.  Moreover, the Notice sufficiently explains the substantial work of Co-Lead Counsel by setting forth: (i) the procedural history of the case; (ii) that Defendants filed motions to dismiss the Action, amounting to hundred of pages of briefing and affidavits; (iii) that Co-Lead Counsel reviewed and analyzed 45 million pages of documents produced by Defendants, including 28 million produced by PwC; (iv) that more than a dozen fact depositions had been taken by the time of the Settlement; (v) that a motion for class certification was filed and class discovery was conducted; and (vi) that Co-Lead Counsel engaged in substantial and repeated negotiations with counsel for PwC to reach the Settlement. *Id*. at 7-8.

Moreover, the Court reviewed the Notice prior to its issuance and found that it satisfied due process and Rule 23. Dubbs Decl. Ex. 1.  Accordingly, the Rothsteins' objection is without merit and should be overruled.

### C.  Karen Michaels Lacks Standing to Object and Her Objection to the Settlement and Fee Request Is Without Merit

Karen Michaels is an attorney in Texas who is represented by one of her colleagues, Jeffrey Weinstein. Dubbs Decl. Ex. 9; 11.  Mr. Weinstein, a "professional objector," has filed objections in at least four other class actions within the last two years**,** all of which have been overruled.  Dubbs Decl. Ex. 12.  Michaels raises nine different issues in a "kitchen sink" approach.

Most importantly, in addition to the lack of merit of her "objections," Michaels does not have standing to object as a member of the Settlement Class; she has not stated that she acquired any eligible AIG security during the period from Oct. 28, 1999 through April 1, 2005, inclusive (the "Class Period").  Accordingly, her objection must be rejected.

1.      **Michaels Lacks Standing to Object to the Settlement**

It is axiomatic that only class members have standing to object to a proposed class action settlement. *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229, 244 (2d Cir. 2007) (recognizing that "[b]ecause CareFirst is not a class member, it does not have an affected interest in the class Plaintiffs' claims against Medco so as to be able to assert its objections on behalf of its Plans.")

Michaels states that she "acquired a VALIC Tax Sheltered Annuity" account on or about December 1, 2002 as part of a divorce.  Her understanding is that AIG acquired VALIC, or the Variable Annuity Life Insurance Company.  Dubbs Decl. Ex. 9 at 1.  Leaving aside the fact that Michaels has not provided any proof that the VALIC annuity was originally purchased during the Class Period or that it was even invested in AIG securities, *such annuities are not securities eligible to participate in this Settlement*. *See* Dubbs Decl. Ex. 2  at 4. The only securities eligible for participation are the publicly traded securities issued by AIG itself.  *Id*. Annuities are contracts between an investor and an insurance company that provide a guaranteed income — here an agreement between Michaels and VALIC that was later, apparently, assumed by AIG.  As explained by the Securities and Exchange Commission, "A variable annuity is a contract between you and an insurance company, under which the insurer agrees to make periodic payments to you. . . .  A variable annuity offers a range of investment options. . . .  The investment options for a variable annuity are typically mutual funds that invest in stocks, bonds, money market instruments, or some combination of the three."  *See* http://www.sec.gov/investor/pubs/varannty.htm#wvar; Dubbs Decl. Ex. 23.  However, investors in mutual funds cannot make individual claims to settlements, ***because such investors do not directly invest in the mutual fund's investments*** (although the mutual fund itself may be a class member).  Thus, Michaels' objections must be overruled for her lack of standing.

In any event, none of her purported objections hold water.  Instead, they are a scattershot attempt to delay the Settlement.

### 2. Requirement That Class Members Provide Details of Ownership Does Not Deny Due Process

As discussed above with respect to Ms. De Caro, Ms. Michaels complains about the purported burden and "denial of due process" stemming from having to establish ownership of AIG securities to recover or to object. This objection is baseless. Ex. 9 at 1-2. All securities class actions reasonably require class members to make such showings. Here, Michaels has not only failed to provide details about the prices she (or her former husband) paid for AIG securities; she has failed to show that she purchased or acquired *any* AIG securities. And as explained above, her statement that the Settling Parties have access to the data about her investments is also not true. Michaels' annuity was apparently rolled into a UBS account. Only UBS and Michaels' have her information from that point forward.

### 3. Notice Was Disseminated in Compliance With the Court's Order

Second, Michaels states that she received the Notice "sometime less than two weeks before the deadline for exclusions and objections." She argues that the Notice was not provided to her within the deadlines set by the Court.

This misapprehends the Court's Preliminary Approval Order. The Order states, "Lead Plaintiff's counsel shall cause the Notice and the Proof of Claim, substantially in the forms annexed hereto as Exhibits 1 and 2, to be sent, by first-class mail, postage prepaid, on or before October 20, 2008 ("Notice Date"), to all Class Members at the address of each such person as set forth in the records of AIG or its transfer agent, or who otherwise can be identified through reasonable effort" and "Lead Plaintiff's counsel shall use reasonable efforts to give notice to nominee owners such as brokerage firms and other persons or entities who purchased AIG common stock during the Class Period as record owners but not as beneficial owners." Dubbs Decl. Ex. 1 ¶¶ 9; 12. The Court also approved the schedule for the settlement related events, which carefully avoided the holidays.

As explained by CCS, on October 20, 2008 notice packets were mailed to everyone that could be identified through reasonable effort at that time. Dubbs Decl. Ex. 2 ¶¶ 3-5 . CCS maintains a large list of

brokers and nominees and each, including UBS, were mailed a notice on October 20, 2008.  As more names and addresses were provided, more notice packets were promptly mailed. Dubbs Decl. Ex. 2 ¶¶ 7-9, 13-16. Because Michaels' broker was UBS, UBS had to provide her name and address and the timing of Michaels' receipt was dictated by UBS's response to the notice.  CCS also maintained an outreach program to make sure that non-responsive brokers were repeatedly contacted and urged to provide names and addresses.  Dubbs Decl. Ex. 2 ¶¶ 13-14.  Thus, CCS did everything possible to provide Michaels with Notice at the earliest possible time.

Further, Publication Notice was also transmitted over PR Newswire and Bloomberg News Service and published in the *Wall Street Journal* on October 29 and 30, 2008, as ordered by the Court.  As sophisticated attorneys familiar with these types of cases, Michaels and Weinstein should have been alerted to the Settlement and the deadlines by the Publication Notice long before she received individual notice.

In any event, given that Michaels is an attorney who works with her current counsel, Mr. Weinstein, who has considerable experience in objecting to class action settlements, it is disingenuous for her to argue that "the notice was received during the holiday season, significantly limiting Objector's opportunity to obtain necessary documents and obtain legal counsel to advise her on the settlement."  Ex. 9 at 3.  Her request that the Court postpone the Fairness Hearing to allow her time to analyze the settlement is baseless, unreasonable and prejudicial to the rest of the Settlement Class.

### 4.    The Class Definition Is Not Impermissibly <u>Vague or Uncertain</u>

Third, Michaels argues that the definition of the Settlement Class is not sufficiently "precise, objective and presently ascertainable," because it contains the phrase "and who were damaged thereby."  Ex. 9 at 3.  However, she cites no case law where a settlement class definition, or any securities class action definition, was invalidated on this basis.

In fact, several judges in this district have rejected this exact argument and approved securities class action settlements with nearly identical class definitions. *See In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *16 (S.D.N.Y. Apr. 6, 2006) (Kram, J.) (approving

settlement and overruling objection to the phrase "who were injured thereby"); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 340-41 (S.D.N.Y. 2005) (Cote, J.) (same).  *See also In re Veeco Instruments Inc. Sec. Litig.*, 235 F.R.D. 220, 237 (S.D.N.Y. 2006) (McMahon, J.) (certifying class whose definition contained the phrase "were damaged thereby"); *Teachers Ret. Sys. of La. v. ACL Ltd.*, No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *11 (S.D.N.Y. Dec. 27, 2004) (Preska, J.) (same).  Michaels' assertion that the class definition here requires a resolution of the merits is based on a myopic view of the purpose of the class definition.  In reality, the phrase is not ambiguous and poses no risk to the certainty of the class.  Indeed, in all securities fraud class actions, courts find that individual proof of damages is no bar to class certification.  *E.g.*, *Lapin v. Goldman Sachs & Co.*, -- F.R.D. --, 2008 WL 4222850, at *10 (S.D.N.Y. Sept. 15, 2008) (Sullivan, J.); *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 517 (S.D.N.Y. 2002) (Marrero, J.).

Further, all securities class actions eventually require putative class members to show injury and they do so by completing a claim form showing their investments in the securities at issue.  In this Settlement, and as explained in the Notice, the amount of each class member's recovery will be determined by the Plan of Allocation, which will also be approved by the Court.  The Claims Administer will then administer the Settlement and calculate the recovery for each class member's claim.  Again, the Court will approve those determinations.  Thus, this is not a situation where "mini trials" will be required to determine who is in the Settlement Class.

### 5.  The Timing of the Payment of Any Attorneys' Fees Is Proper

Equally baseless is Michaels saying that it is "illegal" for attorneys' fees to be paid to Co-Lead Counsel at the time the Court awards them, because the settlement has not yet been "actually paid to the class" as stated in the PSLRA.  Ex. 9 at 4.  Michaels cites no case standing for this proposition and, in fact, such payment provisions are regularly approved by courts in recognition of the fact that class counsel often litigate such cases for years without any remuneration at all.  As explained in *Hanson v. Acceleration Life Ins. Co.*, No. Civ. A3-97-152, 2000 WL 33340298, at *6 (D.N.D. June 21, 2000), the court

> without reservation approves an attorney's fee of 30 percent of the $14.7 million (plus interest) value of the settlement fund. Class Counsel shall

> divide the fee in accordance with their own arrangements. The court notes it
> has already approved a "quick-pay" procedure for payment of attorney's fees
> because of the extent of counsel's investment of time and costs in the case.

If there is a successful appeal of the judgment approving the Settlement and the Settlement is rejected,

counsel is obligated to return the awarded attorneys' fees and expenses, with interest.

The PSLRA provision cited by Michaels states that, "Total attorneys' fees and expenses awarded by

the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any

damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6). Michaels offers no

support for her narrow view that the PSLRA will be violated here if fees are paid as requested, because "[t]he

money was paid to a cash settlement account, in the Court's custody, so it was not paid "to the class." Ex. at

4. Pursuant to the Settlement, PwC has indeed paid **$97.5 million**[5] into an escrow fund for the benefit of the

Settlement Class. For the Settlement Class's protection, that fund is under the jurisdiction of the Court. None

of this means that the funds do not belong to the Settlement Class. The benefit conferred on the Class — the

measure of any attorneys' fees — is determined and concrete. In view of the fact that counsel for Michaels is

a "professional" objector in at least four cases in the last two years, it appears that this objection may be more

geared towards gaining influence with Co-Lead Counsel than improving the Settlement.

The overwhelming majority of cases awarding attorneys' fees in securities actions within the Second

Circuit base that award on a reasonable percentage of the common fund created by counsel. *See* Fee Br. at 3-

6. As noted by the Second Circuit in *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437-38 (2d

Cir. 2007):

> The fee restrictions described in the PSLRA do not apply in any context
> other than securities class actions, and, even if they did, it is not clear how
> they would apply. The statute speaks in terms of a percentage of damages
> "actually paid to the class." **But the entire fund created by the efforts of
> counsel presumably is "paid to the class,"** even if some of the funds are
> distributed under the Cy Pres Doctrine. The PSLRA would not allow for the
> computation of fees on the basis of such non-damages items as discounts on
> coupons received in settlement. A key consideration required by the PSLRA
> "is the result actually achieved for class members, a basic consideration in

---

[5] Michaels misstates the Settlement amount as $92 million.

> any case in which fees are sought on the basis of a benefit achieved for class members." *Advisory Comm. Notes* to Fed. R. Civ. P. 23, 2003 Amendments. **Arguably, the entire Settlement Fund is a "benefit achieved for class members."**

(Emphasis added.)  Accordingly, there is nothing improper about the timing of payment of any attorneys' fee awarded to Co-Lead Counsel.  Indeed, in view of the fact that counsel for Michaels is a "professional objector" in at least four cases in the last two years, it appears that this objection is no more than an attempt by him again to gain leverage over Co-Lead Counsel.

### 6.      The Process for District Court Review of Claims Is Reasonable and Appropriate

Fifth, Michaels takes issue with a portion of the administration process, namely the appealability of claims decisions.  In order to timely and efficiently distribute the funds to Settlement Class Members, the Settlement sets a procedure for notifying claimants of the rejection of their claim and of their ability to contest the rejection and ask for review by the Court.  Stipulation at 16.  Thus, if the dispute cannot be resolved between the claimant and the Clams Administrator, it will be presented to the Court for final determination.  However, the Settlement provides for no further appeal of such decisions.  This procedure ensures that a single dispute cannot hold-up the entire distribution to hundreds of thousands of class members.  Despite Michaels' protestations, it is reasonable to follow the administration review process set out in the Settlement.  Indeed, many other class action settlements have followed just such a procedure.  *See, e.g., In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. 02-1335 (D.N.H.) (D.E. #1067 at 29).

Moreover, any appeals of the claims administrators' decisions would not involve issues of law, but only the proper application of the Plan of Allocation, which would be within the discretion of the Court.  The Plan of Allocation, of course, is subject to approval of the Court and the Court's decision on whether to approve the Plan is appealable.

In analogous situations, courts have found that similar orders are inappropriate subjects of appeal.  For instance, in *ITT v. Vencap, Ltd.*, 519 F.2d 1001, 1020 (2d Cir. 1975), the Second Circuit dismissed a cross-appeal of an order authorizing investments in a receivership on the basis that the appellants "cannot now appeal from an order which has neither further modified the terms of the preliminary injunction nor the

powers of the receiver, but which merely permits an expenditure in accordance with the provisions of these previous orders." The cross-appellants' remedy was to have appealed the prior orders. Similarly, in *Powell v. Georgia-Pacific Corp.*, 90 F.3d 283, 284 (8th Cir. 1996), the Eighth Circuit dismissed an appeal from a fund disbursement order that followed the court's approval of the establishment of a scholarship program. The court explained that it lacked jurisdiction where "[t]he disbursement order, from which the plaintiffs appealed, is merely a 'housekeeping' order" and not a final order pursuant to 28 U.S.C. § 1291. *Id.* Appeal should have been taken from order establishing fund. *Id.*

Thus, this objection should be rejected as without merit.

### 7.    Notice Need Not Be Re-Issued if the Plan of Allocation Is Modified by the Court

Sixth, Michaels complains that the Notice advised the Settlement Class that the Court could modify the Plan of Allocation without additional notice to the Settlement Class. She maintains that a new notice should be sent and that Class Members should be given an additional opportunity to exclude themselves. Dubbs Decl. Ex. 9 at 5-6. (The Notice explains that Settlement Class Members could object to the Plan of Allocation, which would be reviewed by the Court at the Fairness Hearing.) Limiting notice of modifications is a common practice in securities class action settlements and minimizes the costs of notice, particularly in a large settlement such as this, where more than two million notices have already been mailed.

Michaels complains that the lack of additional notice denies class members due process and renders the Settlement "unfair, unreasonable, and inadequate." Ex. 9 at 5. Nothing could be further from the truth, and to require two million additional notices to be mailed at a cost of more than $1 million and an additional opt-out period to be provided would cause significant pecuniary harm and only unnecessarily delay payments to the Settlement Class.[6] Due process and Fed. R. Civ. P. Rule 23(c)(2)(B) require that a certified class to receive "the best notice that is practicable under the circumstances." Here, the Settlement Class has received individual notice of the proposed Plan of Allocation, notice of the Fairness Hearing, notice about how to

---

[6] As with the timing of the attorneys' fee objection, this request for additional costly notice also seems geared towards gaining influence with Co-Lead Counsel.

contact Co-Lead Counsel and notice about how to access documents filed in the case.  Dubbs Decl. Ex. 2-A. Anyone who is interested can attend the fairness hearing and keep apprised of developments in the Settlement, including any modifications to the Plan of Allocation, which would be published on Co-Lead Counsel's website and on CCS' website dedicated to this settlement.

Michaels' objection to this aspect of the Notice should be overruled.

### 8.      The Court's Ability to Adjust Claims on Equitable Grounds

In a similar vein, Michaels objects to the fact that in reviewing the proposed distribution of the Settlement, the Court can adjust the Claims Administrator's claims decisions on equitable grounds, but the Notice does not explain what those grounds might be.  Ex. 9 at 6.  "Equitable" means "dealing fairly and equally with all concerned."  Webster's Ninth Collegiate Dictionary.[7]  Equitable claims could arise in innumerable specific factual situations.  Michaels cannot reasonably expect the Notice to lay out all the potential scenarios that might require equitable adjustment by the Court.

Moreover, there are no "hidden criteria" that will be used against Settlement Class Members.  To the contrary, the Court is well experienced in dealing fairly with class members.  The Notice explains the Plan of Allocation and how to make a claim.  Ex. 2-A at 8-15.  These are the standards that will govern whether and how much potential Class Members can recover.  Claimants will be put on notice of any deficiencies in their claims and will be able to present their counterviews to the Court, if their disputes cannot be resolved earlier. Michaels' objection to the Court's ability to modify decisions by the Claims Administrator in the interest of fairness is wholly without merit.

### 9.      Lead Plaintiff Has Established that the Settlement Is Fair, Reasonable and Adequate

Michaels' eighth objection is that the parties have failed to prove that the Settlement is fair, reasonable and adequate.  Not surprisingly, Michaels provides no explanation of this purported failure with

---

[7] See also Black's Law Dictionary (6th ed. 1991)("Just; conformable to the principles of justice and right.")

respect to a $97.5 million settlement against an auditor, which is the eighth largest auditor settlement ever in securities class actions.  The Notice explains the terms of the Settlement, the reasons for the Settlement, the risks involved in continuing to litigate the PwC claims, and what might happen if there were no Settlement. Dubbs Decl. Ex. 2-A .  Lead Plaintiff's motion in support of approval of the Settlement and supporting memorandum of law, filed herewith, further substantiates that the Settlement is fair, reasonable and adequate. Michaels' objection is baseless.

### 10.   Co-Lead Counsel's Fee and Expense Request Is Reasonable

Lastly, Michaels' objects to Co-Lead Counsel's request for attorneys' fees and expenses, but states that she did not have enough time to fully evaluate the requests, therefore the Fairness Hearing should be postponed.  For instance, she thinks the $6 million expense cap "appears to be excessive."  Again, Michaels provides no explanation about why it "appears excessive."  The Notice properly explained the basis for the fee and expense request (which is only actually $4.9 million, not $6 million) and the extensive work done by Co-Lead Counsel.  We note that approximately 75% of our expense request is for reimbursement of expert fees.  Not surprisingly, it has been very expensive to properly review and analyze the tens of millions of pages of AIG workpapers produced by PwC.  However, a thorough review of these documents was essential to understand the reasons behind the GAAP violations underlying AIG's massive restatement.  *See, e.g., In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 500 (W.D. Pa. 2003) (in approving settlement and awarding fees, court was strongly persuaded in the merit of the settlement and fee and expense request by the complexity of the accounting issues involved and effort and expenses undertaken by plaintiffs).

Thus, there is absolutely no reason to postpone the hearing to give Michaels more time to review the fee and expense request.

In short, all of Michaels' objections are without merit and should be overruled.

### II.   NON-SETTLING GREENBERG DEFENDANTS' OBJECTION TO PART OF THE BAR ORDER IS WITHOUT MERIT

The objection by the non-settling defendants Maurice ("Hank") R. Greenberg, C.V. Starr & Co., Inc., Starr International Company, Inc. and Howard I. Smith ("Greenberg Defendants") to the Agreement of

Compromise and Settlement between Lead Plaintiff and PricewaterhouseCoopers LLP ("PwC") (the "Agreement") is groundless and should be overruled.

The Greenberg Defendants' only objection is to the wording of the bar order in the proposed "Order and Final Judgment as to PricewaterhouseCoopers LLP" (the "Proposed Bar Order")—which is incorporated into the Agreement as Exhibit D.  *See* Objection, at 1.  Moreover, they state only two reasons why they believe this wording is or may be "improper":  (1)  according to the Greenberg Defendants, the Proposed Bar Order "is not clearly limited to exclusively barring claims 'where the injury is the non-settling defendants' liability to the plaintiffs,'" *see* Objection at 1 (quoting *Gerber v. MTC Elec. Techs. Co.*, 329 F.3d 297, 307 (2d Cir. 2003) (defining the scope of such contribution claims as may be barred)), and (2) "[t]o the extent, if any, that the proposed bar order . . . exceeds the scope of a corresponding judgment reduction credit that the [Non-Settling] Defendants might receive with respect to a barred claim, the proposed bar [is] improper."

### A.  Consistent with *Gerber*, the Only Claims Barred Are Contribution Claims Where the Injury is Liability to the Plaintiffs

The Proposed Bar Order is paragraph 13 of the proposed Order and Final Judgment, which states:

> **The Released Persons are by virtue of the Agreement hereby released and discharged from all claims for contribution**, whether direct or derivative, that have been or may hereafter be brought by any person or entity, whether arising under state, federal or common law as claims, cross-claims, counterclaims, or third-party claims, **based upon, arising out of, relating to, or in connection with the Released Claims**.  **Accordingly, to the full extent provided by Section 21D(f)(&)(A) of the PSLRA, 15 U.S.C. § 78u-4(f)(7)(A), the Court hereby bars all claims for contribution** (a) against the Released Persons; and (b) by the Released Persons against any person or entity other than any person or entity whose liability to the Settlement Class has been extinguished pursuant to the Agreement ($97,500,000) (Emphasis added.)

Under this provision, the only contribution claims that are barred are those "based upon, arising out of, relating to, or in connection with the Released Claims."

"Released Claims" are defined, in turn, by paragraph 22 of the Agreement, as Claims that "Lead Plaintiff, the Settlement Class or Class Members . . . have or hereafter can, shall or may have against the Released Persons."

Therefore, the only kind of contribution claim that is barred by the Proposed Bar Order is a claim where the injury arises from liability to one or more plaintiffs herein.[8]

Moreover, if any further assurance of this limitation were needed, such assurance is provided by the fact that the scope of the Proposed Bar Order is limited, by its terms, to the "extent provided by [the PSLRA]" and Second Circuit case law.  The PSLRA provides that "[t]he [bar] order shall bar all future claims for contribution **arising out of the action**."  15 U.S.C. § 78u-4(f)(7)(A) (emphasis added).  Therefore, the contribution claims bared by the Proposed Bar Order are only such claims as are based on liability to the plaintiffs in this action.

**B.      The Scope of the Judgment Reduction Credit is
          the Same as the Scope of the Bar**

Provision for a judgment reduction credit is made by paragraph 16 of the Proposed Order and Judgment, which states:

> In accordance with the PSLRA, New York's General Obligations Law, Delaware's Uniform Contribution Among Tort-feasors Law, or any other state's contribution statute, and applicable law, **any final verdict or judgment obtained by or on behalf of Lead Plaintiffs, the Settlement Class or any Class Member against any person other than the Released Persons <u>relating to the Released Claims</u> shall be reduced** by the greater of (i) an amount that corresponds to the percentage of responsibility of the Released Persons, or (ii) the amount paid by or on behalf of the Released Persons in connection with the Agreement ($97,500,000).  (Emphasis added.)

Under this provision, if a judgment against the Non-Settling Defendants relates to a Released Claim, the Non-Settling Defendants will receive a judgment reduction credit regarding that judgment.  Moreover, as demonstrated, *supra*, the only claims that are barred by the Proposed Bar Order are those arising from or relating to Released Claims.  Therefore, the Proposed Bar Order provides that the Non-Settling Defendants will receive a judgment reduction credit for any claim barred by the Order.

---

[8] Another version of the bar order is set forth in paragraph 15.  Although the Greenberg Defendants also seek modification of this provision, paragraph 15 is *explicitly* limited to "claims based on any person or entity's liability to Lead Plaintiffs, the Settlement Class or Class Members."  No modification is needed.

Accordingly, there is no need to modify the PwC Bar Order and the Greenberg's objection should be overruled.

## CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court overrule all of the objections to the Settlement and to the attorneys' fee and expense request.

Dated:  New York, New York
        January 13, 2009

                                        **RICHARD CORDRAY,**
                                        **ATTORNEY GENERAL OF OHIO**

                                        **LABATON SUCHAROW LLP**

                                        By    /s/ Thomas A. Dubbs
                                              Thomas A. Dubbs (TD 9658)
                                              Louis Gottlieb (LG 9169)
                                              Nicole M. Zeiss (NZ 3894)
                                              Zachary M. Ratzman (ZR 0802)
Alan Kopit (Ohio Bar #0031965)
**HAHN LOESER & PARKS LLP**             140 Broadway
200 Public Square, Suite 2800          New York, New York  10005
Cleveland, Ohio  44114-2301            (212) 907-0700
(216) 621-0150                         (212) 818-0477 (Fax)
(216) 274-2478 (Fax)

*Special Counsel to the Attorney General of Ohio and*    *Co-Lead Counsel for Lead Plaintiff Ohio State Funds*
*the Ohio State Funds and Co-Lead Counsel for the*       *and Co-Lead Counsel for the Class*
*Class*