# Exhibit 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x
                                                            :
                                                            :
IN RE AMERICAN INTERNATIONAL                 :
GROUP, INC. SECURITIES LITIGATION            :      Master File No. 04 Civ. 8141 (JES) (AJP)
                                                            :
This Document Relates To:  All Actions            :
                                                            :
                                                            :
———————————————————————— x

STATE OF NEW YORK                )
                                              )  ss:
COUNTY OF PALM BEACH       )

Peter Craig, being duly sworn, deposes and states that:

1.      I submit this affidavit in order to provide the Court with information regarding the mailing of the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Fairness Hearing and Proof of Claim form (collectively, the "Notice Packet") and the publication of the Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice"). I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.      I am the Senior Project Administrator for Complete Claim Solutions, LLC ("CCS"). CCS was retained as the Administrator for the proposed Settlement with PricewaterhouseCoopers LLP ("PwC") to assist in the process of providing notice to the potential members of the Settlement Class in this Action and to process the Proofs of Claim. With respect to the Notice Packet, CCS was retained to cause the Notice Packet to be printed and thereafter mailed to potential members of the Settlement Class in this Action. A copy of the printed Notice Packet is attached hereto as Exhibit A.

1

3.      CCS maintains a database of 2,111 brokerage firms, banks and other financial institutions as published by Securities Dealers of North America, and Depository Trust Company ("DTC") participant members, to be used in notifying record holders of securities of proposed settlements.

4.      As in most securities class actions, a large majority of potential Settlement Class Members are "beneficial" owners of securities, who do not hold their securities in their own name. Instead, the securities are held through the above mentioned brokerage firms, banks and other financial institutions in the "street name" of those institutions and are held by these institutions on behalf of the beneficial owners. These institutions are the "nominee" record holders. As a result, the identities and addresses of the majority of the Settlement Class are not known to the parties or the Administrator. As Administrator and as ordered by the Court, CCS sought these institutions' assistance to obtain information about beneficial Settlement Class Members.

5.      On October 20, 2008, CCS mailed the Notice Packets to the 2,111 names and addresses, as referred to in ¶3 above, by standard first-class U.S. mail, postage prepaid, pursuant to the Preliminary Approval Order ("Order") dated October 14, 2008. Under the Order, the Notice was required to be mailed on or before October 20, 2008 to all Settlement Class Members who could be identified through reasonable effort.

6.      Pursuant to ¶10 of the Order, on October 29, 2008, CCS caused the Summary Notice to be published on PR Newswire and posted on Bloomberg News Service. On October 30, 2008, the Summary Notice was published in The Wall Street Journal. A copy of the published Summary Notice is attached hereto as Exhibit B.

7.      On or about November 10, 2008, CCS received from AIG's transfer agent, Compushare, a list consisting of all registered shareholders of AIG's common stock from October 28, 1999 through April 1, 2005. The list contained names and addresses, which comprised a total of 99,513 shareholders of record. CCS entered the data into a segregated database (the "CCS Mailing Database") to be used for mailing Notice Packets to Settlement Class members.

8.      CCS electronically scrubbed the data referred to in ¶7, above, to ensure adequate address formatting. In this process, CCS discovered 10 duplicative records, thereby resulting in 99,503 records for mailing.

9.      On November 17, 2008, CCS mailed the Notice Packets to the 99,503 names and addresses, as referred to in ¶¶7 and 8 above, by standard first-class U.S. mail, postage prepaid.

10.     On or about October 29, 2008, CCS posted the Notice Packet and Order on a website dedicated to the Settlement (www.AIGSecuritiesLitigationPwCSettlement.com) that contains basic information about the Settlement and ways to contact CCS and Counsel. The website contains links that permit any person, including potential Settlement Class Members with internet access, to view, download, and print a copy of the Notice Packet and Order thereby permitting potential Settlement Class Members to receive additional information about the settlement at their convenience. CCS also posted instructions on the website which enabled institutional claimants with large numbers of transactions to submit such information in electronic files.

11.     Beginning with the mailing of the Notice Packets on October 20, 2008, CCS has maintained a toll-free telephone number to provide pre-recorded information to potential Settlement Class Members and informational requests. The toll-free number also gives each

3

caller the option to speak directly with a live operator. Since October 20, 2008, CCS has received 6,173 calls, of which 5,495 potential Settlement Class Members requested to speak with a live operator for assistance, and 230 potential Settlement Class Members requested Notice Packets. Live operators have spoken to each of the 5,495 potential Settlement Class Members who requested assistance. Notice Packets were mailed to all those who requested them.

12.     CCS leases and maintains Post Office Boxes for the receipt of all undeliverable mail and written communications necessary to the administration of the Settlement. The Notice Packet, Summary Notice, and Website designate a Post Office Box for receipt of correspondence about the Settlement.

13.     After the initial Notice Packet mailing, CCS instituted an outreach program to the brokerage firms, banks and financial institutions that were nominees in an effort to ensure that Notice Packets were provided to their customers.

14.     As of January 9, 2009, in response to the Notice Packet mailing and outreach program, CCS has received an additional 1,537,834 names and addresses of potential Settlement Class Members from brokerage firms, banks, institutions and other nominees, in the form of disks, emails, labels and lists, requesting that Notice Packets be mailed to these individuals. CCS promptly disseminated Notice Packets to these potential Settlement Class Members. CCS has also received bulk requests from brokers and other nominees for 544,048 Notice Packets for them to forward to their customers. The copies were promptly supplied.

15.     As of January 9, 2009, the United States Postal Service ("USPS") had returned 101,164 Notice Packets as undeliverable without forwarding addresses. Of these, CCS was able to locate 32,882 new addresses through Accurint, an information supplier to which CCS

4

subscribes, and Notice Packets were promptly mailed to these potential Settlement Class Members. Additionally, the USPS returned 8,584 Notice Packets with forwarding addresses and they were promptly re-mailed to these potential Settlement Class Members.

16.     Through January 9, 2009, an aggregate of 2,225,192 Notice Packets have been mailed, pursuant to ¶¶ 9 and 12 of the Order.

17.     As of January 9, 2009, CCS had received 28,729 Proofs of Claim to be processed. Paragraph 17 of the Order requires that Proofs of Claim be postmarked no later than January 28, 2009.

18.     Pursuant to ¶19 of the Order, objections were required to be filed no later than December 30, 2008 with the Clerk of the Court and copies served on Lead Counsel for Lead Plaintiff and the Settlement Class and Counsel for Defendant PwC. CCS has received two (2) objections to the Settlement. Per Counsel's request, CCS contacted Shana de Caro in an effort to assist her with her claim form and any questions she may have. CCS was told by her partner that she was not interested in assistance and would rather wait for a response from the judge. A copy of each objection is attached as Exhibits C-1 and C-2, respectively.

19.     Pursuant to ¶15 of the Order, Requests for Exclusion from the Settlement Class were required to be postmarked no later than December 30, 2008. As of January 9, 2009, CCS has received 61 timely and valid Requests for Exclusion from the Settlement Class, 39 timely and invalid Requests for Exclusion from the Settlement Class, and 5 untimely Requests for Exclusion from the Settlement Class, which are attached hereto as Exhibits D, E, and F, respectively.

20.    CCS has provided Co-Lead Counsel with an invoice for unreimbursed out-of-pocket expenses incurred to date for printing, mailing, requested nominee expenses, and other miscellaneous expenses associated with the dissemination of the Notice Packets, a copy of which is attached hereto as Exhibit G.  With respect to the nominee expenses, as authorized in the Order, CCS has reimbursed nominees for reasonable expenses incurred in researching the identities of potential Settlement Class Members, mailing Notice Packets, printing labels, etc. CCS respectfully requests payment of these unreimbursed expenses, in the amount of $2,259,082.52.  (Also pursuant to the Order, CCS has already been reimbursed $445,134.00 for its initial costs and is not seeking payment for those initial costs.)

21.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____

Peter Craig

Sworn to before me this

13ᵗʰ day of January, 2009

Notary Public



ERIC P. LACHANCE
MY COMMISSION # DD 490949
EXPIRES: November 25, 2009
Bonded Thru Notary Public Underwriters

6

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | x | |
| IN RE AMERICAN INTERNATIONAL GROUP, INC. SECURITIES LITIGATION | : : : | Master File No. 04 Civ. 8141 (JES) (AJP) |
| | : | **NOTICE OF PROPOSED SETTLEMENT, MOTION** |
| This Document Relates To:  All Actions | : : | **FOR ATTORNEYS' FEES AND EXPENSES AWARD AND FAIRNESS HEARING** |
| | : : : | |
| | x | |

**If You Purchased or Otherwise Acquired Securities Issued by American International Group, Inc. During the Period From October 28, 1999 Through April 1, 2005, Inclusive, ("Class Period") and Were Damaged Thereby, You May Be Entitled to Share in a $97.5 Million Settlement With Defendant PricewaterhouseCoopers LLP.**

**PLEASE READ THIS NOTICE CAREFULLY.**

**A Federal Court Authorized This Notice. This Is Not A Solicitation. Your Legal Rights Are Affected Whether You Do Or Do Not Act.**

1.    **Statement of Plaintiff Recovery**: This Notice advises you of a proposed partial settlement (the "Settlement") consisting of $97.5 million in cash, plus interest as it accrues, of a consolidated class action lawsuit brought by the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio and Ohio Police & Fire Pension Fund (collectively, "Lead Plaintiff" or "the Ohio State Funds"), on behalf of the Settlement Class against PricewaterhouseCoopers LLP ("PwC") (the Lead Plaintiff and PwC collectively, the "Settling Parties") and 20 other defendants whose claims are not being settled.  This Settlement is a final resolution of the Claims brought on behalf of the Settlement Class against PwC.

The action alleges, among other things, that during the Class Period, defendants made materially false and misleading statements and omissions in connection with the involvement of American International Group, Inc. ("AIG") in an illegal market division scheme with Marsh McLennan ("Marsh") and others, as well as a far-reaching accounting fraud that led to AIG's $3.9 billion restatement or adjustment of earnings in May 2005. The Consolidated Third Amended Complaint ("Complaint") alleges violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder (the "Action").

The Settlement will resolve all claims against PwC and will create a Cash Settlement Account to pay the claims of investors who purchased or otherwise acquired AIG's publicly-traded common stock, debt and options during the Class Period.  (*See* below at page 4 for more information about eligible "AIG Securities.")  The Distribution Amount (the Cash Settlement Account less any Notice and Administrative Expenses, attorneys' fees and litigation expenses awarded to Lead Plaintiff's counsel, expenses awarded to Lead Plaintiff and certain Tax Expenses) will be distributed in accordance with a plan of allocation (the "Plan of Allocation").  Based on Lead Plaintiff's damages consultant's estimate of the number of shares of common stock entitled to participate in the Settlement, given the allocation of 5% of the recovery to debt purchasers and assuming that all shares entitled to participate do so, Lead Plaintiff estimates that the average recovery per damaged share would be approximately $0.06 per share, before deduction of any court-awarded fees and expenses.[1]  An individual Class Member's actual recovery will depend on many factors, for example: (1) the total number of claims submitted; (2) when the Class Member purchased AIG Securities during the Class Period; (3) the purchase price paid; (4) the type of security bought; and (5) whether those AIG Securities were held at the end of the Class Period or sold during the Class Period (and, if sold, when they were sold and the amount received).  *See* the Plan of Allocation beginning on page 8 for more information on your potential Recognized Loss.

---

[1] An allegedly damaged share might have been traded more than once during the Class Period, and the indicated average recovery would be the total for all purchasers of that share.

*Questions? Call Toll-Free (888) 356-0263*

2.      **Reasons for Settlement**: The Settlement resolves claims against PwC, AIG's outside auditor during the Class Period, for allegedly violating the federal securities laws by making false and misleading public statements about AIG and its financial condition. However, the Settlement is not and should not be construed as an admission of any fault, liability or wrongdoing whatsoever by PwC. In light of the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff believes that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class. Lead Plaintiff believes that the Settlement provides a substantial benefit in the form of $97.5 million in cash (less the various deductions described in this Notice), as compared to the risks and delays of proceeding with the Action against PwC. These risks include the fact that there is no assurance that Lead Plaintiff would recover as much as was achieved in this Settlement at a later stage in the litigation. Moreover, even if the case were to proceed and a later recovery obtained, it would take several more years of discovery, motion practice, trial and further appeals to obtain such a recovery, during which time PwC would have the opportunity to assert substantial defenses to the claims asserted against it.  The risks also include that PwC could prevail in the Action, in which case Lead Plaintiff would obtain no recovery at all from PwC.

3.      **Statement of Potential Outcome if the Case Against PwC Continued**: The Settling Parties do not agree on the average amount of damages per share that would be recoverable even if Lead Plaintiff was to prevail on the claims asserted against PwC.  PwC denies all liability.  In addition, the Settling Parties disagree on, among other things: (i) whether certain statements made by PwC were false; (ii) whether PwC knew, or was severely reckless in not knowing, that certain of its statements and omissions about AIG were false or misleading; (iii) whether the alleged misstatements and omissions were material to investors; and (iv) the amount of inflation, if any, caused by the alleged misrepresentations and omissions.

4.      **Statement of Attorneys' Fees and Expenses Sought**: Lead Plaintiff's counsel, Labaton Sucharow LLP and Hahn Loeser & Parks LLP, intend to apply for an award of attorneys' fees on behalf of all plaintiffs' counsel not to exceed 9% of the Cash Settlement Account, which will include interest as it accrues, and to seek reimbursement of litigation expenses paid and incurred in connection with the prosecution and resolution of the claims against PwC (the "Litigation Expenses"), in an amount not to exceed $6 million. In addition, Lead Plaintiff may ask the Court to reimburse it from the Cash Settlement Account for costs and expenses it incurred directly related to its representation of the Settlement Class, in an amount not to exceed $30,000.  If the Court approves Lead Plaintiff's counsel's fee and expense application and Lead Plaintiff's application, the average cost per share will be less than $0.01 per share.

5.      **Further Information**: Further information regarding the Settlement and this Notice may be obtained by contacting the claims Administrator: *In re AIG Securities Litigation – PwC Settlement*, c/o Complete Claim Solutions, LLC, P.O. Box 9417, Minneapolis, MN 55440-9417, (888) 356-0263, www.AIGSecuritiesLitigationPwCSettlement.com; or Counsel: Labaton Sucharow LLP, 140 Broadway, NY, NY  10005, (866) 779-0843, www.labaton.com.  **Please Do Not Call the Court or PwC With Questions About the Settlement.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY JANUARY 28, 2009** | The only way to get a payment. |
| **EXCLUDE YOURSELF BY DECEMBER 30, 2008** | Get no payment and remove yourself from the Settlement Class.  This is the only option that allows you to ever bring or be part of any *other* lawsuit against PwC and the other "Released Persons" about the "Released Claims." |
| **OBJECT BY DECEMBER 30, 2008** | Write to the Court about why you do not like the Settlement.  You will still be a member of the Class. |
| **GO TO A HEARING ON JANUARY 20, 2009** | Ask to speak in Court about the Settlement at the Fairness Hearing. |
| **DO NOTHING** | Get no payment.  Give up rights. |

## **TABLE OF CONTENTS**

Why did I get this notice?...........................................................................................................3

How do I know if I am part of this Settlement?........................................................................4

What recovery does the Settlement provide? .........................................................................4

Why is there a Settlement?  What are Lead Plaintiff's reasons for the Settlement? ..........................5

What might happen if there were no Settlement?......................................................................5

Do I have a lawyer in the case? How will the lawyers be paid?...................................................5

What rights am I giving up by agreeing to the Settlement?.........................................................6

What is this case about?..........................................................................................................7

What has happened in this case so far?....................................................................................7

How much will my payment be? ...............................................................................................8

How do I participate in the settlement? What do I need to do?...................................................14

What if I do not want to participate in the Settlement? How do I exclude myself? ..........................15

What if I want to object to the Settlement? When and where will the Court decide whether to
approve the Settlement? May I speak at the Hearing if I do not like the Settlement? ......................15

Special Notice to Securities Brokers and other Nominees...........................................................16

Can I see the Court file? Whom should I contact if I have questions? ...........................................16

---

## Why did I get this notice?

You or someone in your family may have purchased or acquired publicly-traded securities issued by AIG during the period from October 28, 1999 through April 1, 2005, inclusive. The Court sent you this Notice because, as a potential Class Member, you have a right to know about the proposed Settlement of the claims asserted in this Class Action against PwC and your options before the Court determines whether to approve the Settlement.  If the Court approves the Settlement, after all objections and appeals are resolved, a claims administrator (the "Administrator") will make payments pursuant to the terms of the Settlement.

The Court in charge of this case is the United States District Court for the Southern District of New York and the case is known as *In re American International Group, Inc. Securities Litigation*, Master File No. 04-8141 (JES). The Lead Plaintiff filed this lawsuit on behalf of itself and as representative of the Settlement Class.  The entities and people who are being sued, other than PwC are: AIG; Maurice R. Greenberg; Howard I. Smith; Martin J. Sullivan; Thomas R. Tizzio; Michael J. Castelli; Christian M. Milton; L. Michael Murphy; John A. Graf; Frank J. Hoenemeyer; Eli Broad; Starr International Company, Inc.; C.V. Starr & Co., Inc.; Richmond Insurance Company Ltd.; General Reinsurance Corp.; Ronald E. Ferguson; John B. Houldsworth; Richard Napier; Wachovia Securities, Inc.; Merrill Lynch & Co. (the "Non-Settling Defendants").

All the claims against the Non-Settling Defendants are continuing to be litigated.

*This* Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how you may receive your portion of the benefits. The purpose of this Notice is to inform you of the terms of the proposed Settlement and of a hearing to be held by the Court to consider the Settlement (the "Fairness Hearing").

The Fairness Hearing will be held at **3:00 pm on January 20, 2009** before the Honorable John E. Sprizzo, in the United States District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007, to determine:

(a) Whether the proposed Settlement is fair, reasonable and adequate and should be approved by the Court;

(b) Whether the claims against PwC should be dismissed with prejudice as set forth in the Agreement of Compromise and Settlement (the "Stipulation");

(c) Whether the proposed Settlement Class should be certified and Lead Plaintiff be appointed as Class Representative;

(d) Whether the proposed Plan of Allocation for distributing the Settlement to Class Members is fair and reasonable and should be approved;

(e) Whether the application by Lead Plaintiff's counsel for an award of attorneys' fees and reimbursement of litigation expenses should be approved; and

(f) Whether the application by Lead Plaintiff for reimbursement of its costs and expenses should be approved.

The issuance of this Notice is not an expression of the Court's opinion on the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement, payment will be made after all appeals, if any, are resolved and after the completion of all claims processing. Please be patient.

## How do I know if I am part of this Settlement?

You are part of this Settlement if you are within the definition of the Settlement Class and you do not take steps to exclude yourself. The Settlement Class covered by this settlement consists of: all persons who purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive, including all persons and entities who held the common stock of HSB Group, Inc. ("HSB") at the time HSB was acquired by AIG in a stock for stock transaction, and all persons and entities who held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock transaction, and who were damaged thereby, excluding persons who make timely and valid requests for exclusion from the class. (See the Plan of Allocation for more information about eligible securities.)

"AIG Securities" means any and all publicly-traded securities issued by American International Group, Inc., whether debt or equity securities, including, without limitation, AIG common stock, the Zero Coupon Convertible Senior Debentures referenced in paragraph 189 of the Complaint, the 0.5% Cash Exchangeable Equity-Linked Senior Notes referenced in paragraph 193 of the Complaint, the 2.85% Medium-Term Notes, Series F referenced in paragraph 203 of the Complaint, the 2.875% Notes (144A securities) referenced in paragraph 212 of the Complaint that were exchanged into registered like coupon bonds and the 4.25% Notes (144A securities) referenced in paragraph 217 of the Complaint that were exchanged into registered like coupon bonds. Options on AIG common stock are included in this definition.

Excluded from the Settlement Class are the defendants in the Action, members of the immediate families of the individual defendants, any parent, subsidiary, affiliate, officer, or director of defendant AIG, any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person. Also excluded from the Settlement Class are any persons who exclude themselves by timely filing a request for exclusion in accordance with the requirements set forth below. (See "What if I do not want to participate in the Settlement? How do I exclude myself?")

**RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A MEMBER OF THE SETTLEMENT CLASS OR ARE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.**

**IF YOU WISH TO RECEIVE PROCEEDS FROM THE SETTLEMENT,
YOU MUST SUBMIT A PROOF OF CLAIM FORM BY JANUARY 28, 2009**

## What recovery does the Settlement provide?

In exchange for the Settlement and dismissal of the Released Claims, PwC has agreed to fund a $97.5 million (before interest) account to be divided, after deduction of Court-awarded attorneys' fees and expenses, Lead Plaintiff expenses, Notice and Administrative Expenses, and any applicable taxes, ("Distribution Amount") among all Class Members who timely submit valid Proof of Claim forms that show a Recognized Loss. Your share of the fund will depend on several things, including: (1) the amount of Recognized Losses of other Class Members who file valid Proofs of Claim; (2) how many AIG Securities you bought; (3) how much you paid for them; (4) the type of security bought; (5) when you bought them; (6) whether or when you sold them (and, if so, for how much you sold them).

Your Recognized Loss will be calculated according to the formulas shown below in the Plan of Allocation. It is unlikely that you will get a payment for your entire Recognized Loss, given the number of potential Class Members with Recognized Losses. After

all Class Members have sent in their Proof of Claim forms, the payment you get will be a portion of the Distribution Amount equal to your Recognized Loss divided by the total of all Class Members' Recognized Losses and multiplied by the total Distribution Amount. (*See* the Plan of Allocation beginning on page 8 for more information.)

Once all the Proofs of Claim are processed and claims are calculated, Lead Plaintiff's counsel, without further notice to the Settlement Class, will apply to the Court for an order distributing the Distribution Amount to the members of the Settlement Class. Counsel will also ask the Court to approve payment of the Administrator's fees and expenses incurred in connection with administering the Settlement that have not already been reimbursed.

## Why is there a Settlement?  What are Lead Plaintiff's reasons for the Settlement?

Under the proposed Settlement, the Court will not decide the merits of the claims in the Action in favor of either the Lead Plaintiff or PwC.  By agreeing to a Settlement, both the Lead Plaintiff and PwC avoid the costs and risks of litigating the claims against PwC.  By accepting the Settlement, Class Members will be compensated immediately for the PwC claims.  In light of the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff believes that the proposed Settlement is fair, reasonable and adequate and in the best interest of Class Members.

Lead Plaintiff and Lead Plaintiff's counsel believe that the claims asserted against PwC have merit.  However, they recognize the risks of, expense of and delay associated with the continued prosecution of the claims against PwC in the Action. PwC has denied and continues to deny each and every allegation of liability or wrongdoing or damage to the Settlement Class or any member thereof, and believes that it acted properly and lawfully at all times, and believes that any claims against it are without merit.  Lead Plaintiff and their counsel have taken into account the issues that would have to be decided by a jury including: (i) whether each of the alleged misrepresentations and omissions made by PwC was false; (ii) if false, whether each of those misrepresentations and omissions by PwC was material; (iii) whether PwC acted knowingly or recklessly in making the alleged misrepresentations and omissions; and (iv) the amount of any damages, if any, caused by the alleged misrepresentations and omissions by PwC.  Lead Plaintiff and Lead Plaintiff's counsel have also considered the uncertain outcome and trial risk in complex lawsuits like this one.  Lead Plaintiff believes that a recovery now will provide an immediate benefit to Class Members, which is superior to the risk of proceeding with the claims against PwC.  Considering these factors and balancing them against the certain and substantial benefits that the Settlement Class will receive as a result of the Settlement, Lead Plaintiff and Lead Plaintiff's counsel determined that the Settlement described herein is fair, reasonable and adequate, and that it is in the best interests of the Settlement Class to settle the claims against PwC on the terms set forth in the Stipulation and this Notice.

## What might happen if there were no Settlement?

If there were no settlement of the claims against PwC and Lead Plaintiff failed to establish any essential legal or factual element of its claims, neither it nor the Settlement Class would recover anything from PwC. Also, if PwC was successful in proving any of its defenses, the Settlement Class likely would recover substantially less than the amount provided in the Settlement, if anything at all.

## Do I have a lawyer in the case? How will the lawyers be paid?

The Court appointed the law firms of Labaton Sucharow LLP in New York, New York and Hahn Loeser & Parks LLP in Cleveland, Ohio to represent the proposed class.  You will not be separately charged for the work done by the lawyers who worked on this lawsuit.  If you want to be represented by your own lawyer, you may hire one at your own expense.

The Court will determine the amount (if any) of Lead Plaintiff's attorneys' fees and expenses, which will be paid from the Cash Settlement Account.  Any attorneys' fees awarded to Lead Plaintiff's counsel will be distributed, in part, to additional counsel who worked on this lawsuit under the supervision and direction of Lead Plaintiff's counsel based upon the amount, quality and importance of work they performed.  Lead Plaintiff estimates that in the aggregate such amount will be less than 10% of the total attorneys' fees awarded by the Court.

Lead Plaintiff's counsel has not received any payment for its services in pursuing claims against PwC on behalf of the Settlement Class, nor has it been reimbursed for its considerable out-of-pocket Litigation Expenses. In this type of litigation, it is customary for counsel to be awarded a percentage of the settlement fund recovered as its attorneys' fees, and to receive reimbursement of the expenses advanced in the prosecution of the action. Lead Plaintiff's counsel intends to apply to the Court for an award of attorneys' fees not to exceed 9% of the Cash Settlement Account, including any interest, in connection with this Settlement. Lead Plaintiff's counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $6 million. In

5

addition, Lead Plaintiff the Ohio State Funds intends to apply for reimbursement of its costs and expenses incurred related to its representation of the Settlement Class in an amount not to exceed $30,000. If the applications for attorneys' fees and reimbursement of expenses is approved by the Court, the average cost per share would be less than $0.01.

The fee requested by Lead Plaintiff's counsel would compensate it for its efforts in achieving the Settlement for the benefit of the Settlement Class and for its risk in undertaking this representation on a contingency basis. The fee requested is within the range of fees awarded to plaintiffs' counsel under similar circumstances in litigation of this type. NEITHER THE COURT NOR THE DEFENDANTS HAVE EXPRESSED ANY OPINION ON THE APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES.

---

**What rights am I giving up by agreeing to the Settlement?**

---

If the Settlement is approved, the Court will enter a Final Judgment (the "Judgment") ending all the claims against PwC and precluding Class Members from continuing to litigate the claims against PwC. (The claims against the Non-Settling Defendants will continue.) The Judgment will (i) dismiss the claims against PwC with prejudice; and (ii) provide that Lead Plaintiff and all other Class Members, except those who validly and timely request to be excluded from the Settlement Class, shall, upon the Effective Date (as defined in the Stipulation) of the Settlement, on behalf of themselves and/or each of their respective divisions, agencies, instrumentalities, branches, subsidiaries, parent companies, affiliates, associates, representatives, predecessors, successors, heirs, owners, assigns, executors and/or administrators fully, finally and forever release, relinquish, acquit, and discharge the Released Persons from the Released Claims. The release also constitutes an express waiver and relinquishment, to the fullest extent permitted by law of: (a) the provisions, rights, and benefits of Section 1542 of the California Civil Code, which provides that: A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor; and (b) the provisions, right and benefits of any similar statute or common law of any other jurisdiction that may be, or may be asserted to be, applicable.

"Released Claims" means and includes any and all Claims, known or unknown, suspected or unsuspected, asserted or unasserted, that Lead Plaintiff, the Class or Class Members, and/or each of their respective divisions, agencies, instrumentalities, branches, subsidiaries, parent companies, affiliates, associates, representatives, predecessors, successors, heirs, owners, assigns, executors and/or administrators ever had, now have or hereafter can, shall or may have against the Released Persons, related in any way to any professional services that PwC performed or was engaged to perform for AIG that are raised or referred to in the Complaint or related in any way to the financial statements of AIG or any of its subsidiaries for fiscal years 1999 through 2004 or any restatement thereof, including, but not limited to, the Claims asserted against PwC in the Complaint.

The Stipulation defines "Claims" as any and all claims, rights or causes of action, demands, attorneys' fees, costs, obligations, controversies, debts, damages, losses or liabilities of any kind whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation (whether foreign or domestic), including known and unknown, accrued and not accrued, foreseen and unforeseen, matured and not matured.

The "Released Persons" means PricewaterhouseCoopers LLP ("PwC") and/or its divisions, subsidiaries, parent companies, affiliates, connected firms, associates, representatives, predecessors, successors, heirs, owners, assigns, executors, administrators, and/or its present, former or future directors, agents, partners, principals, officers, employees, trustees, servants, attorneys, shareholders and/or representatives of the foregoing, and each of them. "Released Persons" shall include PricewaterhouseCoopers International Limited, any member firm, network firm, specified subsidiary or connected firm of PricewaterhouseCoopers International Limited, and any other entity or partnership (whether or not incorporated) which carries on business under a name which includes all or part of the PricewaterhouseCoopers name or is otherwise within (directly or indirectly) the worldwide network of PricewaterhouseCoopers firms.

The Judgment will also provide that PwC fully, finally and forever releases, relinquishes, acquits and discharges the Lead Plaintiff, the Settlement Class, Class Members and Lead Plaintiff's counsel from any Claims which PwC ever had, now has or hereafter can, shall or may have against Lead Plaintiff and Lead Plaintiff's counsel, which arise out of or relate in any way to the institution or prosecution (to the Effective Date) of the Action.

Also, the Judgment will contain bar order provisions precluding the Non-Settling Defendants from being able to bring claims in the future seeking relief such as contribution and indemnification against the Released Persons. Also, the Non-Settling Defendants will be able to get a judgment credit related to this Settlement if the Action against them results in a judgment.

## What is this case about?

This Action arises from, among other things, allegedly material misstatements and omissions made by defendants PwC, AIG and others in connection with AIG's involvement in an illegal market division scheme with Marsh and others in the insurance industry, as well as a far-reaching accounting fraud scheme that led to AIG's $3.9 billion restatement or adjustment of earnings in May 2005. At the end of the Class Period, the price of AIG's stock dropped significantly when these frauds were disclosed, resulting in alleged damages to the Settlement Class.

Specifically, on October 14, 2004, there were disclosures concerning AIG's involvement in a market division scheme that included its payment of allegedly improper "steering" contingent commissions to, and illegal rigging of bids with, Marsh and others in the insurance industry. There were also disclosures in February, March and April 2005 of a massive accounting fraud at AIG that resulted in the Company restating or adjusting nearly four years of earnings and, *inter alia*, slashing net income by $3.9 billion.

The consequences of these disclosures includes AIG's payment of nearly $1.6 billion to settle claims relating to the market division and accounting fraud brought by federal and state regulators, including the Securities and Exchange Commission, Department of Justice, and the Office of the New York Attorney General. However, the government did not sue PwC, which still serves as AIG's outside auditor today.

Lead Plaintiff contends that, during the Class Period, PwC certified the accuracy and completeness of AIG's financial statements even though PwC knew – or was reckless in not knowing – that those financial statements were not in compliance with Generally Accepted Accounting Principles.

PwC denies all wrongdoing alleged by Lead Plaintiff and the Settlement is not and may not be construed or deemed to be evidence of, or an admission or a concession on the part of PwC, of any fault or liability whatsoever or of any infirmity in any defenses it has asserted or intended to assert, or of the merits of Lead Plaintiff's claims. PwC, while affirmatively denying wrongdoing, fault and liability, considers it desirable and in its best interest that the claims against PwC in the Action be dismissed under the terms of the proposed Settlement in order to avoid further expense, uncertainty and distraction, and protracted litigation.

## What has happened in this case so far?

After the first alleged disclosures about the market division fraud were reported to the public on October 14, 2004, ten class action complaints were filed against AIG and others (but not PwC), and the cases were transferred to Judge Laura Taylor Swain. The complaints included class periods of October 28, 1999 to October 15, 2004, and alleged Section 10(b) claims. After hearing fully-briefed motions regarding appointment of a lead plaintiff and lead counsel to pursue the proposed class action, Judge Swain, by order dated February 7, 2005, appointed the Ohio State Funds as Lead Plaintiff; appointed Labaton Sucharow (at the time known as Goodkind Labaton Rudoff & Sucharow LLP) and Hahn Loeser & Parks LLP as Lead Plaintiff's counsel.

On April 19, 2005, Lead Plaintiff filed a Consolidated First Amended Complaint, which included claims based on both the market division fraud and the accounting fraud, alleged a class period of October 28, 1999 through March 30, 2005, named additional defendants, including PwC, and added claims under Section 11 and 15 of the Securities Act.

On May 16, 2005, the San Francisco Employees' Retirement System filed a separate, purportedly new securities class action complaint against AIG and others that alleged causes of action based solely on the accounting frauds disclosed in the spring of 2005. After reviewing motions on the appointment of Lead Plaintiff related to this claim, the Court held a hearing on July 18, 2005 and found that the Ohio State Funds would serve as the Lead Plaintiff for all the claims at issue.

Between November and December 2005 defendants in the Action filed motions to dismiss the Action in its entirety, submitting hundreds of pages of briefing and affidavits. The Court denied all of these motions, except one, in April and May 2006. After the denial of the motions, Lead Plaintiff, the Ohio State Funds, and Lead Counsel began to conduct formal discovery into the facts of the case. (Prior to filing its first complaint, Lead Plaintiff's counsel had engaged in a thorough investigation of the publicly available information about the claims, including contact with former employees of AIG and the other defendants.) Defendants and approximately 42 non-parties have produced approximately 45 million pages of documents, which includes more than 28 million pages produced by PwC. Counsel for Lead Plaintiff has reviewed and analyzed virtually all of the documents produced to date. In addition, Lead Plaintiff has taken more than a dozen fact depositions to date.

On February 20, 2008, Lead Plaintiff moved to certify a litigation class in the Action. In connection with that motion, the Ohio State Funds produced more than 267,000 pages of documents to defendants, and more than 14 witnesses from the Ohio State

Funds and their 10 external investment advisers have been deposed.  On August 20, 2008, AIG submitted its opposition to class certification and on September 23, 2008, all non-settling defendants submitted their opposition papers.  Lead Plaintiff must reply to the opposition briefs and the Court has scheduled a hearing to determine whether the entire Action should be certified for litigation purposes.

As noted above, Lead Plaintiff and PwC have now reached an agreement to settle the claims against PwC in the Action on terms that are summarized here.  Lead Plaintiff and PwC, through their counsel, have engaged in substantial arm's-length negotiations in an effort to resolve all claims that have been or could have been asserted in the Action against PwC.  Lead Plaintiff's counsel and PwC's counsel have conducted numerous meetings and conferences, including multiple mediation sessions before a former federal judge who acted as an independent mediator, in which the terms of the Settlement detailed here were negotiated.

---

**How much will my payment be?**

---

### THE PROPOSED PLAN OF ALLOCATION – GENERAL PROVISIONS

PwC has agreed to pay $97.5 million in cash (the "Cash Settlement Account").  After approval of the Settlement by the Court and upon satisfaction of the other conditions to the Settlement, the Distibution Amount (the Cash Settlement Account less any taxes, court-awarded attorneys' fees and expenses, court-awarded Lead Plaintiff's expenses and administration costs), will be distributed to Class Members who timely submit valid Proofs of Claim establishing "Recognized Losses" according to the Plan of Allocation described below.

To the extent there are sufficient funds in the Distribution Amount, each Authorized Claimant will receive an amount equal to the Authorized Claimant's allowable Recognized Loss, as defined below.  If, however, the Distribution Amount is not sufficient to permit payment of the total of all Recognized Losses, then each Authorized Claimant will be paid the percentage of the Distribution Amount that each Authorized Claimant's Recognized Claim bears to the total of the claims of all Authorized Claimants ("pro rata share") that received either debt or equity securities.  You will be eligible to participate in the distribution only to the extent you have a net loss on your transactions in AIG debt securities, or on your combined transactions in AIG common stock and options.  Payment in this manner will be deemed conclusive against all Authorized Claimants.

For all purposes, the transaction date and not the settlement date shall be used as the date for determining inflation per share and eligibility to file a claim.  All purchases and sales of AIG Securities shall be accounted for and matched using the first-in-first-out (FIFO) method of accounting.  Gifts and transfers of securities are not eligible purchases. The covering purchase of a "short" sale is not an eligible purchase.

The Plan of Allocation is not intended to estimate the amount a Class Member might have been able to recover after a trial, nor is it to estimate the amount that will be paid to Authorized Claimants.  The Plan of Allocation is the basis upon which the Distribution Amount will be proportionately divided among all the Authorized Claimants.   The Court will be asked to approve the Administrator's determinations before the Distribution Amount is distributed to Authorized Claimants.   No distributions to Authorized Claimants who would receive less than $10.00 will be made, given the administrative expenses of processing and mailing such checks.

There will be no distribution of the Distribution Amount until a Plan of Allocation is finally approved and affirmed on appeal (if an appeal is filed) and the time for any petition for rehearing, appeal or review, whether by *certiorari* or otherwise, has expired.  PwC is not entitled to get back any of the settlement consideration after the Effective Date.  Moreover, the Released *Persons* have no liability, obligation or responsibility for the administration of the Settlement or disbursement of the Distribution Amount.

Each person wishing to participate in the distribution must timely submit a valid claim form and all required documentation **postmarked no later than January 28, 2009**, to the address listed below and set forth in the Proof of Claim form that accompanies this Notice. The Proof of Claim form includes a general release of each of the Released Defendant Parties. *See* the section called "How do I participate in the settlement? What do I need to do?" below.

The Court has reserved jurisdiction to allow, disallow or adjust on equitable grounds the Claim of any Class Member. The Court also reserves the right to modify the Plan of Allocation without further notice to Class Members.  Payment pursuant to the Plan of Allocation approved by the Court shall be conclusive against all Authorized Claimants.  No person shall have any claim against Lead Plaintiff, their counsel, the Administrator or other agents designated by counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.

## THE PROPOSED PLAN OF ALLOCATION - CALCULATION OF RECOGNIZED LOSS AMOUNT

### Calculation of Recognized Loss for AIG Common Stock Purchases

Calculation of Recognized Loss Claims for AIG common shares shall be as follows:

For shares purchased or acquired on or between October 28, 1999 through April 1, 2005, the following Recognized Losses shall be allowed:

    a. For each share sold on or between October 28, 1999 and October 13, 2004, the Recognized Loss shall be 10% of the difference between the inflation per share at the time of purchase for the applicable date of purchase less the inflation per share at the time of sale. Inflation per share shall be determined at each transaction date based on the percentage inflation applicable to that date as set forth in Table 1 times the price paid or received excluding any commission, fees or other adjustments;

    b. For each share sold on or between October 14, 2004 and April 1, 2005, the Recognized Loss shall be the inflation per share at the time of purchase for the applicable date of purchase less the inflation per share at the time of sale. Inflation per share shall be determined at each transaction date based on the percentage inflation applicable to that date as set forth in Table 1 times the price paid or received excluding any commission, fees or other adjustments; and

    c. For each share sold after April 1, 2005, the Recognized Loss shall be the inflation per share at the time of purchase. Inflation per share shall be determined at the purchase transaction date based on the percentage inflation applicable to that date as set forth in Table 1 times the purchase price excluding all fees, commissions and other adjustments.

In addition to the annexed Table 1 relating to Section 10(b) AIG common stock claims, the Recognized Loss for such shares purchased or acquired during the Class Period shall be limited (as provided for under the Private Securities Litigation Reform Act "PSLRA") to the smallest of the following: (i) the difference between the price paid and the price received (out-of-pocket investment loss) if sold on or before April 1, 2005; (ii) the difference between the price paid (excluding all fees and commissions) and the average closing price as set forth in Table 2 below if sold between April 4, 2005 and June 29, 2005; or (iii) the difference between the price per share paid and $53.70 per share if the shares were held on the close of business on June 29, 2005.

**Table 1: Inflation per Share Percentage and Averages Over Identified Time Periods**

| Period | Begin Date | End Date | Inflation Percentage | Avg. AIG Price | Avg. AIG Value | Avg. Inflation |
|--------|-----------|----------|----------------------|----------------|----------------|----------------|
| 1 | 10/28/99 | 2/7/01 | 9.62% | $ 80.22 | $ 72.50 | $ 7.72 |
| 2 | 2/8/01 | 4/1/01 | 11.14% | $ 81.28 | $ 72.22 | $ 9.05 |
| 3 | 4/2/01 | 4/25/01 | 13.37% | $ 78.39 | $ 67.91 | $ 10.48 |
| 4 | 4/26/01 | 10/13/04 | 14.82% | $ 67.81 | $ 57.76 | $ 10.05 |
| 5 | 10/14/04 | 10/14/04 | 12.69% | $ 60.00 | $ 52.39 | $ 7.61 |
| 6 | 10/15/04 | 3/16/05 | 11.18% | $ 64.84 | $ 57.59 | $ 7.25 |
| 7 | 3/17/05 | 3/29/05 | 8.50% | $ 57.77 | $ 52.86 | $ 4.91 |
| 8 | 3/30/05 | 3/30/05 | 6.00% | $ 57.16 | $ 53.73 | $ 3.43 |
| 9 | 3/31/05 | 3/31/05 | 3.33% | $ 55.41 | $ 53.56 | $ 1.85 |
| 10 | 4/1/05 | 4/3/05 | -3.85% | $ 50.95 | $ 52.91 | $ (1.96) |
| 11 | 4/4/05 | 6/29/05 | 0.00% | $ 53.75 | $ 53.75 | $ - |

**Table 2: PSLRA Loss Limitation Table for AIG Common Shares**

| Date | AIG Closing Price | Avg. AIG Closing Price |
|------|-------------------|------------------------|
| 4/1/2005 | $ 50.95 | $ 50.95 |
| 4/4/2005 | $ 53.30 | $ 52.13 |
| 4/5/2005 | $ 53.00 | $ 52.42 |
| 4/6/2005 | $ 52.99 | $ 52.56 |
| 4/7/2005 | $ 52.76 | $ 52.60 |
| 4/8/2005 | $ 51.91 | $ 52.49 |

| Date | AIG Closing Price | Avg. AIG Closing Price |
|------|-------------------|------------------------|
| 5/16/2005 | $ 52.81 | $ 52.33 |
| 5/17/2005 | $ 53.38 | $ 52.36 |
| 5/18/2005 | $ 53.25 | $ 52.39 |
| 5/19/2005 | $ 53.00 | $ 52.41 |
| 5/20/2005 | $ 53.76 | $ 52.45 |
| 5/23/2005 | $ 53.45 | $ 52.47 |

| Date | AIG Closing Price | Avg. AIG Closing Price |
|---|---|---|
| 4/11/2005 | $ 52.10 | $ 52.43 |
| 4/12/2005 | $ 53.20 | $ 52.53 |
| 4/13/2005 | $ 51.61 | $ 52.42 |
| 4/14/2005 | $ 51.39 | $ 52.32 |
| 4/15/2005 | $ 51.11 | $ 52.21 |
| 4/18/2005 | $ 51.26 | $ 52.13 |
| 4/19/2005 | $ 51.58 | $ 52.09 |
| 4/20/2005 | $ 51.01 | $ 52.01 |
| 4/21/2005 | $ 51.90 | $ 52.00 |
| 4/22/2005 | $ 50.35 | $ 51.90 |
| 4/25/2005 | $ 51.76 | $ 51.89 |
| 4/26/2005 | $ 51.07 | $ 51.85 |
| 4/27/2005 | $ 51.85 | $ 51.85 |
| 4/28/2005 | $ 51.14 | $ 51.81 |
| 4/29/2005 | $ 50.85 | $ 51.77 |
| 5/2/2005 | $ 53.44 | $ 51.84 |
| 5/3/2005 | $ 53.30 | $ 51.91 |
| 5/4/2005 | $ 54.37 | $ 52.01 |
| 5/5/2005 | $ 53.92 | $ 52.08 |
| 5/6/2005 | $ 54.14 | $ 52.16 |
| 5/9/2005 | $ 54.58 | $ 52.25 |
| 5/10/2005 | $ 53.27 | $ 52.29 |
| 5/11/2005 | $ 53.21 | $ 52.32 |
| 5/12/2005 | $ 52.48 | $ 52.33 |
| 5/13/2005 | $ 52.05 | $ 52.32 |

| Date | AIG Closing Price | Avg. AIG Closing Price |
|---|---|---|
| 5/24/2005 | $ 53.80 | $ 52.51 |
| 5/25/2005 | $ 54.08 | $ 52.55 |
| 5/26/2005 | $ 55.71 | $ 52.63 |
| 5/27/2005 | $ 56.40 | $ 52.72 |
| 5/31/2005 | $ 55.55 | $ 52.79 |
| 6/1/2005 | $ 56.10 | $ 52.86 |
| 6/2/2005 | $ 55.89 | $ 52.93 |
| 6/3/2005 | $ 55.09 | $ 52.98 |
| 6/6/2005 | $ 54.85 | $ 53.02 |
| 6/7/2005 | $ 55.23 | $ 53.07 |
| 6/8/2005 | $ 54.95 | $ 53.11 |
| 6/9/2005 | $ 55.55 | $ 53.16 |
| 6/10/2005 | $ 55.09 | $ 53.20 |
| 6/13/2005 | $ 55.50 | $ 53.24 |
| 6/14/2005 | $ 55.57 | $ 53.29 |
| 6/15/2005 | $ 55.41 | $ 53.33 |
| 6/16/2005 | $ 55.23 | $ 53.36 |
| 6/17/2005 | $ 55.55 | $ 53.40 |
| 6/20/2005 | $ 55.68 | $ 53.44 |
| 6/21/2005 | $ 56.29 | $ 53.49 |
| 6/22/2005 | $ 55.95 | $ 53.53 |
| 6/23/2005 | $ 55.20 | $ 53.56 |
| 6/24/2005 | $ 54.54 | $ 53.58 |
| 6/27/2005 | $ 55.03 | $ 53.60 |
| 6/28/2005 | $ 55.17 | $ 53.63 |
| 6/29/2005 | $ 58.48 | $ 53.70 |

## Calculation of Recognized Loss for AIG Call and Put Options

The AIG Options entitled to recover shall include all purchased AIG Call Options (excluding AIG Call Options purchased to cover or offset a previously sold, or written AIG Call Option) and all initially sold, or written, AIG Put Options (excluding those AIG Put Options sold, or written, to cover or otherwise offset a previously purchased AIG Put Option) during the period from October 28, 1999 through April 1, 2005.

Artificial inflation and Recognized Losses as to AIG Call Options and artificial deflation and Recognized Losses as to AIG Put Options will be computed based on the artificial inflation in AIG's common stock as described above. To determine artificial inflation for AIG Call Options and artificial deflation for AIG Put Options, Lead Plaintiff's damages consultant considered these securities' price changes that occurred in reaction to certain public announcements regarding AIG and then made adjustments for changes that were attributable to market forces unrelated to the alleged fraud in prices of such call and put options. Lead Plaintiff's damages consultant then developed formulas (see below) from which the Recognized Losses for AIG Call and Put Options may be calculated.

*AIG Call Options*

With respect to purchases and sales (covers) of AIG Call Options during the period from October 28, 1999 through April 1, 2005, the artificial inflation per Option on a given day shall be the dollar reduction in the value of the AIG Call Option with the same exercise (or strike price) and same date of expiration on that day as a result of the inflation in AIG's common share price at the close of trading. The dollar reduction in the value of Call Options will be calculated using the Black-Scholes call option pricing formula (using the implied volatility for an at-the-money call option, annual dividend yield, and the appropriate annual interest rate on that day as set forth in Summary Table 3 below) and the closing share price of AIG common stock on the transaction date ("AIG Price" as set forth in Summary Table 3) compared with the Black-Scholes call option pricing formula value for the Call Option using the uninflated share closing share price of AIG common stock ("AIG True Value" as set forth in Summary Table 3)

10

on that same date. (A more detailed version of Table 3 setting forth the closing price, volatility, interest rate and dividend yield assumptions by date is available for downloading at www.AIGSecuritiesLitigationPwCSettlement.com or www.labaton.com.)

A. For such Call Options which (1) expired prior to October 14, 2004; (2) were exercised prior to October 14, 2004; or (3) were sold (or the position was otherwise closed out) prior to October 14, 2004, the Recognized Loss shall be 10% times that number of options multiplied by the lesser of:

(1) the difference between artificial inflation per Call Option on the date of purchase and artificial inflation per Call Option on the date of expiration, exercise, or sale, as appropriate; or

(2) the difference between the purchase price per option and the sale price or value realized upon exercise or expiration per option ($0.00 if the call option expired worthless).

B. For such Call Options which (1) expired after October 13, 2004 and on or before April 1, 2005; (2) were exercised for cash (or the shares immediately sold) on or between October 14, 2004 and April 1, 2005; or (3) were sold (position closed out) on or between October 14, 2004 and April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

(1) the difference between artificial inflation per Call Option on the date of purchase and artificial inflation per Call Option on the date of expiration, exercise, or sale, as appropriate; or

(2) the difference between the purchase price per option and the sale price or value realized upon exercise or expiration per option ($0.00 if the call option expired worthless).

C. For such Call Options which (1) expired worthless after October 14, 2004 or (2) were retained at the end of trading on April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

(1) the artificial inflation per Call Option on the date of purchase; or

(2) the difference between the purchase price per option and the sale or realized proceeds price per option ($0.00 if the call option expired worthless).

*AIG Put Options*

With respect to AIG Put Options written or purchased (covered) during the period from October 28, 1999 through April 1, 2005, the artificial deflation per AIG Put Option on a given day shall be the dollar decrease in the value of an AIG Put Option with the same exercise price and expiration date as the subject option at the close of trading on that day as a result of the inflation in AIG's common share price. The dollar decrease (artificial deflation) in the value of the Put Option will be calculated using the Black-Scholes put option pricing formula (using the implied volatility for an at-the-money put option, annual dividend yield, and annual interest rate on that day set forth in Summary Table 3 below) and the closing share price of AIG common stock on the transaction date ("AIG Price" as set forth in Summary Table 3) compared with the Black-Scholes pricing formula value for the Put Option using the uninflated share closing share price of AIG common stock ("AIG True Value" as set forth in Summary Table 3) on that same date.

A. For such Put Options which (1) expired prior to October 14, 2004; (2) were exercised prior to October 14, 2004; or (3) were purchased/covered (position closed out) prior to October 14, 2004, the Recognized Loss shall be 10% times that number of options multiplied by the lesser of:

(1) the difference between artificial deflation per Put Option on the date the option was written and artificial deflation per Option on the date of expiration, exercise, or purchase, as appropriate; or

(2) the difference between the purchase price, exercise price, or expiration price per option paid ($0.00 if the put option expired worthless) and the written price per option received.

B. For such initially written (sold) Put Options which (1) expired after October 13, 2004 and on or before April 1, 2005; (2) were exercised on or between October 14, 2004 and April 1, 2005; or (3) were purchased/covered (position closed out) on or between October 14, 2004 and April 1, 2005, the Recognized Loss Claim shall be that number of options multiplied by the lesser of:

(1) the difference between artificial deflation per Put Option on the date the option was written and artificial deflation per Option on the date of expiration, exercise, or purchase, as appropriate; or

(2) the difference between the purchase price, exercise price, or expiration price per option paid ($0.00 if the put option expired worthless) and the written price per option received.

11

C. For such initially written (sold) Put Options which were retained at the end of trading on April 1, 2005, the Recognized Loss Claim shall be that number of options multiplied by the lesser of:

(1)   the artificial deflation per Put Option on the date the put option was written; or

(2)   the difference between the purchase price, exercise price, or expiration price per option paid ($0.00 if the put option expired worthless) and the written price per option received, if purchased (covered), expired, or exercised on or before June 29, 2005.

**Summary Version of Table 3**

| Start | End | Avg. AIG Price | Avg. AIG True Value | Avg. AIG Inflation | Avg. Call Volatility | Avg. Put Volatility | Avg. Interest Rate | Avg. Dividend Yield |
|---|---|---|---|---|---|---|---|---|
| 10/28/1999 | 12/31/1999 | $70.71 | $63.91 | $6.80 | 33.58% | 34.45% | 5.69% | 0.19% |
| 1/3/2000 | 4/2/2000 | $65.15 | $58.89 | $6.27 | 37.49% | 38.07% | 6.19% | 0.21% |
| 4/3/2000 | 7/2/2000 | $76.62 | $69.24 | $7.37 | 38.42% | 39.40% | 6.22% | 0.18% |
| 7/3/2000 | 10/1/2000 | $86.41 | $78.10 | $8.31 | 28.14% | 29.13% | 6.13% | 0.17% |
| 10/2/2000 | 12/31/2000 | $96.57 | $87.28 | $9.29 | 31.39% | 34.09% | 5.91% | 0.15% |
| 1/2/2001 | 2/7/2001 | $87.00 | $78.63 | $8.37 | 32.75% | 33.80% | 4.80% | 0.17% |
| 2/8/2001 | 4/1/2001 | $81.28 | $72.22 | $9.05 | 31.12% | 34.46% | 4.45% | 0.18% |
| 4/2/2001 | 4/25/2001 | $78.39 | $67.91 | $10.48 | 32.30% | 33.61% | 3.99% | 0.19% |
| 4/26/2001 | 7/1/2001 | $82.73 | $70.47 | $12.26 | 22.12% | 22.36% | 3.70% | 0.20% |
| 7/2/2001 | 7/25/2001 | $84.58 | $72.05 | $12.54 | 21.59% | 21.28% | 3.63% | 0.20% |
| 7/26/2001 | 9/30/2001 | $77.60 | $66.09 | $11.50 | 29.25% | 29.33% | 3.25% | 0.22% |
| 10/1/2001 | 1/1/2002 | $81.26 | $69.21 | $12.05 | 29.73% | 29.60% | 2.24% | 0.21% |
| 1/2/2002 | 3/31/2002 | $74.72 | $63.64 | $11.08 | 28.17% | 28.58% | 2.32% | 0.23% |
| 4/1/2002 | 6/30/2002 | $68.74 | $58.55 | $10.19 | 29.57% | 29.62% | 2.35% | 0.26% |
| 7/1/2002 | 9/30/2002 | $61.21 | $52.14 | $9.08 | 45.13% | 45.38% | 1.81% | 0.31% |
| 10/1/2002 | 12/31/2002 | $61.66 | $52.52 | $9.14 | 41.78% | 41.79% | 1.53% | 0.31% |
| 1/2/2003 | 3/31/2003 | $53.02 | $45.16 | $7.86 | 39.69% | 39.96% | 1.30% | 0.36% |
| 4/1/2003 | 6/30/2003 | $56.26 | $47.92 | $8.34 | 31.41% | 31.70% | 1.15% | 0.40% |
| 7/1/2003 | 9/30/2003 | $60.22 | $51.30 | $8.93 | 27.67% | 27.76% | 1.22% | 0.43% |
| 10/1/2003 | 12/31/2003 | $60.77 | $51.76 | $9.01 | 24.54% | 24.53% | 1.30% | 0.43% |
| 1/2/2004 | 3/31/2004 | $71.45 | $60.86 | $10.59 | 22.65% | 22.66% | 1.22% | 0.36% |
| 4/1/2004 | 6/30/2004 | $72.62 | $61.86 | $10.77 | 23.37% | 23.38% | 1.78% | 0.38% |
| 7/1/2004 | 9/30/2004 | $70.02 | $59.64 | $10.38 | 21.88% | 21.89% | 2.08% | 0.43% |
| 10/1/2004 | 10/13/2004 | $67.32 | $57.34 | $9.98 | 22.23% | 21.79% | 2.22% | 0.45% |
| 10/14/2004 | 10/14/2004 | $60.00 | $52.39 | $7.61 | 39.05% | 38.52% | 2.15% | 0.50% |
| 10/15/2004 | 12/31/2004 | $62.66 | $55.65 | $7.01 | 25.56% | 25.63% | 2.52% | 0.66% |
| 1/3/2005 | 2/13/2005 | $67.33 | $59.80 | $7.53 | 18.76% | 18.76% | 2.89% | 0.74% |
| 2/14/2005 | 3/15/2005 | $67.09 | $59.59 | $7.50 | 20.34% | 20.34% | 3.17% | 0.75% |
| 3/16/2005 | 3/29/2005 | $58.34 | $53.20 | $5.15 | 29.70% | 29.70% | 3.36% | 0.86% |
| 3/30/2005 | 4/4/2005 | $54.21 | $53.38 | $0.83 | 37.58% | 37.58% | 3.36% | 0.92% |

*Questions? Call Toll-Free (888) 356-0263*

**Calculation of Recognized Loss for AIG Debt Securities Purchases**

The Class Period for purchases of AIG debt securities is from October 28, 1999 through April 1, 2005.  AIG debt securities that matured, were called, were put or converted before October 13, 2004 were not damaged by the alleged fraud and, therefore, shall not be eligible for recovery under the Plan and all transactions in such securities shall be ignored.   The AIG debt securities outstanding as of October 13, 2004 and eligible to participate in recovery under the Plan are listed in Table 4 below.

The "AIG Debt Settlement Fund" shall be created by apportioning up to 5% of the Distribution Amount.  If the Total Recognized Losses for AIG debt securities eligible to participate under the Plan are equal to or less than the AIG Debt Settlement Fund, then such Total Recognized Losses shall be recoverable and the remaining portion, if any, of the AIG Debt Settlement Fund shall revert back to the Distribution Amount for recovery under the AIG Common Stock and AIG Call and Put Options provisions of this Plan.   If the Total Recognized Losses for AIG debt securities eligible to participate under the Plan are more than the AIG Debt Settlement Fund, such Total Recognized Losses shall be paid pro rata.

Calculation of Recognized Loss Claims for AIG debt securities shall be as follows:

For AIG debt securities purchased on or between October 28, 1999 and April 1, 2005, the following Recognized Losses shall be allowed:

    a.  For each unit sold on or between October 28, 1999 and October 13, 2004, the Recognized Loss shall be 5% of the difference between the purchase price paid and the sale price received (out-of-pocket investment loss);

    b.  For each unit sold on or between October 14, 2004 and March 14, 2005, the Recognized Loss shall be 10% of the difference between the purchase price paid and the sale price received (out-of-pocket investment loss); and

    c.  For each unit sold on or between March 15, 2005 and April 1, 2005 or held as of the close of business on April 1, 2005, the Recognized Loss shall be the greater of: (i) 15% of the difference between the purchase price paid and the sale price received (out-of-pocket investment loss), if sold before June 29, 2005; (ii) 15% of the difference between the purchase price paid and the average price as of June 29, 2005 as set forth in Table 5 below, if held as of the close of business on June 29, 2005; or (iii) inflation per unit at the time of purchase as set forth in Table 4.

In addition to the annexed Table 4 relating to AIG debt security claims, the Recognized Loss Claims for damages for such shares purchased during the Class Period shall be limited (as provided for under the PSLRA) to the smallest of the following: (i) the difference between the price paid and the price received (out-of-pocket investment loss) if sold on or before June 29, 2005; (ii) the difference between the price paid (excluding all fees and commissions) and the average closing price as set forth in Table 5 below if sold between April 4, 2005 and June 29, 2005; or (iii) the difference between the price paid and the average price as of June 29, 2005 as set forth in Table 5 below, if held as of the close of business on June 29, 2005.

Table 4: Inflation per Unit ($1,000 Par Value) Over Identified Time Periods

| Bond Description | Issue/Begin Date | End Date | Inflation Amount |
|---|---|---|---|
| Zero Coupon<br>Maturity Date: 11/9/31<br>(CUSIP No. 026874AP2) | 11/9/01 | 3/31/05 | $2.97 |
|  | 4/1/05 | 6/29/05 | $0.00 |

| Bond Description | Issue/Begin Date | End Date | Inflation Amount |
|---|---|---|---|
| Coupon: 0.5%<br>Maturity Date: 5/15/07<br>(CUSIP No. 026874AN7) | 5/11/00 | 2/7/01 | $2.63 |
|  | 2/8/01 | 4/1/01 | $3.05 |
|  | 4/2/01 | 4/25/01 | $3.66 |
|  | 4/26/01 | 3/31/05 | $4.06 |
|  | 4/1/05 | 6/29/05 | $0.00 |

| Bond Description | Issue/Begin Date | End Date | Inflation Amount |
|---|---|---|---|
| Coupon: 2.85%<br>Maturity Date: 12/1/05<br>(CUSIP No. 02687QBB3) | 12/2/02 | 3/31/05 | $2.32 |
|  | 4/1/05 | 6/29/05 | $0.00 |

| Bond Description | Issue/Begin Date | End Date | Inflation Amount |
|---|---|---|---|
| Coupon: 2.875%<br>Maturity Date: 5/15/08<br>(CUSIP No. 026874AQ0) | 5/15/03 | 3/31/05 | $7.95 |
|  | 4/1/05 | 6/29/05 | $0.00 |

**Table 4: Inflation per Unit ($1,000 Par Value) Over Identified Time Periods**

| Bond Description | Issue/Begin Date | End Date | Inflation Amount |
|---|---|---|---|
| Coupon: 2.875%<br>Maturity Date: 5/15/08<br>(ISIN No. USU02687AB48) | 5/15/03<br>4/1/05 | 3/31/05<br>6/29/05 | $7.95<br>$0.00 |

| Bond Description | Issue/Begin Date | End Date | Inflation Amount |
|---|---|---|---|
| Coupon: 2.875%<br>Maturity Date: 5/15/08<br>(CUSIP No. 026874AR8) | 4/20/04<br>4/1/05 | 3/31/05<br>6/29/05 | $7.95<br>$0.00 |

| Bond Description | Issue/Begin Date | End Date | Inflation Amount |
|---|---|---|---|
| Coupon: 4.25%<br>Maturity Date: 5/15/13<br>(CUSIP No. 026874AS6) | 5/14/03<br>4/1/05 | 3/31/05<br>6/29/05 | $13.88<br>$0.00 |

| Bond Description | Issue/Begin Date | End Date | Inflation Amount |
|---|---|---|---|
| Coupon: 4.25%<br>Maturity Date: 5/15/13<br>(ISIN No. USU02687AC21) | 5/14/03<br>4/1/05 | 3/31/05<br>6/29/05 | $13.88<br>$0.00 |

| Bond Description | Issue/Begin Date | End Date | Inflation Amount |
|---|---|---|---|
| Coupon: 4.25%<br>Maturity Date: 5/15/13<br>(CUSIP No. 026874AT4) | 4/20/04<br>4/1/05 | 3/31/05<br>6/29/05 | $13.88<br>$0.00 |

---

**How do I participate in the settlement? What do I need to do?**

---

The Court has certified this Action as a class action for purposes of this Settlement only. As discussed above, if you purchased or acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive (including if you held the common stock of HSB at the time HSB was acquired by AIG or held the common stock of AGC at the time AGC was acquired by AIG) and you were damaged and you are not one of the people specifically excluded by the definition of the Settlement Class, you are a Class Member unless you take steps to get out of the Settlement Class.

As a Class Member, you will be bound by the proposed Settlement provided for in the Stipulation if it is approved by the Court, as well as by any judgment or determination of the Court affecting the Settlement Class. Even if you do not submit a Proof of Claim form to receive a part of the recovery, unless otherwise provided by the Court, you will be forever barred from receiving any payments pursuant to the Settlement set forth in the Stipulation, but will, in all other respects, be subject to the provisions of the Stipulation, including the terms of any judgments entered and the releases given.

To qualify for a payment, you must timely send in a completed Proof of Claim form with supporting documents (DO NOT SEND ORIGINALS) to the Administrator. A Proof of Claim form is being circulated with this Notice. You may also get a Proof of Claim form on the Internet at the websites for the Administrator: www.AIGSecuritiesLitigationPwCSettlement.com, or Lead Plaintiff's counsel: www.labaton.com. Please read the instructions carefully, fill out the Proof of Claim form, include all the documents the form asks for, sign it, and mail it to the Administrator by first class mail, **postmarked no later than January 28, 2009.** The Administrator needs all of the information requested in the Proof of Claim in order to determine what you may be entitled to.

The Court may disallow or adjust the claim of any Class Member. The Court also may modify the Plan of Allocation without further notice to the Settlement Class. Each Claimant will be deemed to have submitted to the jurisdiction of the United States District Court for the Southern District of New York with respect to his, her or its Proof of Claim form.

If you do not wish to remain a Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section called, "What if I do not want to participate in the Settlement? How do I exclude myself?" below.

If you object to the Settlement or any of its terms, the proposed Plan of Allocation, Lead Plaintiff's counsel's application for attorneys' fees and reimbursement of Litigation Expenses, or Lead Plaintiff's application for expenses and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section called, "What if I

14

want to object to the Settlement? When and where will the Court decide whether to approve the Settlement? May I speak at the Hearing if I do not like the Settlement?" below.

---

### What if I do not want to participate in the Settlement? How do I exclude myself?

Each Class Member will be bound by all determinations and judgments in this Action concerning the Settlement, whether favorable or unfavorable, unless such person mails, by first class mail, a written request for exclusion from the Settlement Class, **postmarked no later than December 30, 2008**, addressed to In re AIG Securities Litigation – PwC EXCLUSIONS, c/o Complete Claim Solutions, LLC, P.O. Box 9417, Minneapolis, MN 55440-9417. No person may exclude himself, herself or itself from the Settlement Class after this deadline. You may not exclude yourself by telephone or e-mail.

In order to be valid, each request for exclusion must set forth the name and address of the person or entity requesting exclusion, must state that such person or entity "requests exclusion from the PwC Settlement Class in In re AIG Securities Litigation, Master File No. 04-8141 (JES)" and must be signed by such person or entity. The following information must also be provided: a daytime telephone number; date(s), price(s), and number(s) of shares of all purchases and sales of AIG Securities during the Class Period. Requests for exclusion will not be accepted if the requests do not include the required information or if the requests are not made within the time stated above, unless the requests for exclusion are otherwise accepted by the Court.

If a Class Member requests to be excluded from the Settlement Class, that Class Member will not receive any benefit provided for in the Stipulation and Agreement of Settlement.

---

### What if I want to object to the Settlement? When and where will the Court decide whether to approve the Settlement? May I speak at the Hearing if I do not like the Settlement?

No Class Member must attend the Fairness Hearing, but you can attend at your own expense. The Fairness Hearing will be held at 3:00 p.m. on January 20, 2009 before the Honorable John E. Sprizzo, in the United States District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007.

Any Class Member who does not request exclusion by December 30, 2008 may ask the Court to consider their objection to any of the matters to be considered at the Fairness Hearing (and may also appear at the Fairness Hearing) provided, however, that no such person shall be heard unless his, her or its objection is made in writing and is filed, together with copies of all other papers and briefs to be submitted to the Court at the Fairness Hearing, by him, her or it (including proof of all purchases and sales of AIG Securities during the Class Period) with the Clerk's Office at the United States District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007, **postmarked no later than December 30, 2008**, and is served on the same day, by first class mail, hand or overnight delivery to each of the following:

| | |
|---|---|
| Thomas A. Dubbs | Antony L. Ryan |
| Nicole M. Zeiss | Cravath, Swaine & Moore LLP |
| Labaton Sucharow LLP | Worldwide Plaza |
| 140 Broadway | 825 Eighth Avenue |
| New York, NY 10005 | New York, NY 10019 |
| | |
| Counsel for Lead Plaintiff and the Settlement Class | Attorneys for Defendant PwC |

You must include your name, address, telephone number, and your signature, identify the date(s), price(s), and number(s) of shares of all purchases, acquisitions, and sales of AIG Securities you made during the Class Period, and state the reasons why you object to the Settlement. This information is needed to demonstrate your membership in the Settlement Class. Only Class Members who have submitted their position in this manner will be entitled to object, unless the Court orders otherwise. You may file an objection without appearing at the Fairness Hearing. Class Members who approve of the Settlement do not need to appear at the Fairness Hearing.

While attendance at the Fairness Hearing is not necessary, persons wishing to be heard orally are required to indicate in their written objections their intention to appear at the Fairness Hearing. Persons who intend to object to the Settlement or any of its related matters and desire to present evidence at the Fairness Hearing must also include in their written objections the identity of any witnesses they may seek to call to testify and exhibits they may seek to introduce into evidence at the Fairness Hearing.

The Fairness Hearing may be rescheduled from time to time by the Court without further written notice to the Settlement Class. If you intend to attend the Fairness Hearing, you should confirm the date and time with Lead Plaintiff's counsel.

**UNLESS OTHERWISE ORDERED BY THE COURT, ANY SETTLEMENT CLASS MEMBER WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION.**

## Special Notice to Securities Brokers and other Nominees

If you purchased or acquired AIG Securities (as defined herein) during the Class Period for the beneficial interest of a person or organization other than yourself, you are directed (a) to provide the Administrator with lists of the names and last known addresses of the beneficial owners for whom you have purchased AIG Securities during the Class Period within seven (7) days of receipt of this Notice, or (b) to request additional copies of this Notice and Proof of Claim form within seven (7) days of receipt of this Notice.  If you elect to send this Notice and Proof of Claim form to beneficial owners, you are directed to mail this Notice and Proof of Claim within seven (7) days of receipt of the copies of this Notice from the Administrator, and, upon such mailing, you shall send a statement to the Administrator confirming that the mailing was made as directed. You shall be reimbursed from the Cash Settlement Account after receipt by the Administrator of proper documentation for the reasonable expenses of sending the Notices and Proofs of Claim to the beneficial owners. If you choose to follow the first alternative, you must retain the list of names and addresses so that it will be available for use in connection with future notice to the Settlement Class. Copies of this Notice may also be obtained from the Administrator or may be downloaded from Lead Plaintiffs' counsel's website at www.labaton.com.

## Can I see the Court file? Who should I contact if I have questions?

This Notice contains only a summary of the terms of the proposed Settlement.  For a more detailed statement of the matters involved in the Action, you are referred to the papers on file in the Action, including the Agreement of Compromise and Settlement, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007.

All inquiries concerning this Notice or the Proof of Claim form or any questions regarding the Settlement should be directed to:

| | |
|---|---|
| AIG Securities Litigation – PwC Settlement | Nicole M. Zeiss |
| c/o Complete Claim Solutions, LLC | Labaton Sucharow LLP |
| Administrator | 140 Broadway |
| P.O. Box 9417 | New York, NY 10005 |
| Minneapolis, MN 55440-9417 | (866) 779-0843 |
| Toll-Free: (888) 356-0263 | www.labaton.com |
| www.AIGSecuritiesLitigationPwCSettlement.com | |
| Email: info@AIGSecuritiesLitigationPwCSettlement.com | |

**PLEASE DO NOT CONTACT THE COURT OR PwC REGARDING THESE MATTERS.
THEY WILL NOT BE ABLE TO ANSWER YOUR QUESTIONS.**

DATED:  October 20, 2008

BY ORDER OF THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW YORK

**Table 5: PSLRA Loss Limitation Table for AIG Debt Securities**

| Coupon | Zero | 0.500% | 2.850% | 2.875% | 2.875% | 2.875% | 4.250% | 4.250% | 4.250% |
|---|---|---|---|---|---|---|---|---|---|
| Maturity Date | 11/9/2031 | 5/15/2007 | 12/1/2005 | 5/15/2008 | 5/15/2008 | 5/15/2008 | 5/15/2013 | 5/15/2013 | 5/13/2013 |
| Issue Date | 11/9/2001 | 5/11/2000 | 12/2/2002 | 5/15/2003 | 5/15/2003 | 4/20/2004 | 5/15/2003 | 5/15/2003 | 4/20/2004 |
| CUSIP/ISIN Number | 026874AP2 | 026874AN7 | 026870BB3 | 026874AQ0 | USU02687AB48 | 026874AR8 | 026874AS6 | USU02687AC21 | 026874AT4 |
| Series | Registered | Registered | Registered | 144A | Regulation S | Registered | 144A | Regulation S | Registered |
| Date | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price |
| 4/1/2005 | $65.63 | $91.88 | $99.54 | $95.07 | $95.07 | $95.07 | $94.25 | $94.25 | $94.25 |
| 4/4/2005 | $65.81 | $92.13 | $99.55 | $94.75 | $94.75 | $94.75 | $93.44 | $93.44 | $93.44 |
| 4/5/2005 | $65.83 | $92.17 | $99.55 | $94.76 | $94.76 | $94.76 | $93.58 | $93.58 | $93.58 |
| 4/6/2005 | $65.84 | $92.22 | $99.55 | $94.80 | $94.80 | $94.80 | $93.71 | $93.71 | $93.71 |
| 4/7/2005 | $65.85 | $92.25 | $99.55 | $94.82 | $94.82 | $94.82 | $93.74 | $93.74 | $93.74 |
| 4/8/2005 | $65.83 | $92.27 | $99.56 | $94.81 | $94.81 | $94.81 | $93.75 | $93.75 | $93.75 |
| 4/11/2005 | $65.84 | $92.29 | $99.56 | $94.82 | $94.82 | $94.82 | $93.78 | $93.78 | $93.78 |
| 4/12/2005 | $65.84 | $92.30 | $99.56 | $94.84 | $94.84 | $94.84 | $93.88 | $93.88 | $93.88 |
| 4/13/2005 | $65.85 | $92.29 | $99.56 | $94.87 | $94.87 | $94.87 | $93.88 | $93.88 | $93.88 |
| 4/14/2005 | $65.85 | $92.30 | $99.56 | $94.91 | $94.91 | $94.91 | $93.89 | $93.89 | $93.89 |
| 4/15/2005 | $65.85 | $92.32 | $99.57 | $94.97 | $94.97 | $94.97 | $93.95 | $93.95 | $93.95 |
| 4/18/2005 | $65.85 | $92.33 | $99.58 | $95.02 | $95.02 | $95.02 | $94.01 | $94.01 | $94.01 |
| 4/19/2005 | $65.86 | $92.35 | $99.58 | $95.07 | $95.07 | $95.07 | $94.08 | $94.08 | $94.08 |
| 4/20/2005 | $65.86 | $92.37 | $99.59 | $95.11 | $95.11 | $95.11 | $94.12 | $94.12 | $94.12 |
| 4/21/2005 | $65.86 | $92.37 | $99.59 | $95.12 | $95.12 | $95.12 | $94.14 | $94.14 | $94.14 |
| 4/22/2005 | $65.87 | $92.38 | $99.59 | $95.14 | $95.14 | $95.14 | $94.16 | $94.16 | $94.16 |
| 4/25/2005 | $65.88 | $92.39 | $99.59 | $95.16 | $95.16 | $95.16 | $94.19 | $94.19 | $94.19 |
| 4/26/2005 | $65.89 | $92.40 | $99.60 | $95.17 | $95.17 | $95.17 | $94.21 | $94.21 | $94.21 |
| 4/27/2005 | $65.91 | $92.41 | $99.60 | $95.18 | $95.18 | $95.18 | $94.23 | $94.23 | $94.23 |
| 4/28/2005 | $65.93 | $92.43 | $99.60 | $95.21 | $95.21 | $95.21 | $94.28 | $94.28 | $94.28 |
| 4/29/2005 | $65.93 | $92.44 | $99.60 | $95.22 | $95.22 | $95.22 | $94.31 | $94.31 | $94.31 |
| 5/2/2005 | $65.95 | $92.45 | $99.60 | $95.24 | $95.24 | $95.24 | $94.32 | $94.32 | $94.32 |
| 5/3/2005 | $65.96 | $92.46 | $99.60 | $95.25 | $95.25 | $95.25 | $94.34 | $94.34 | $94.34 |
| 5/4/2005 | $65.97 | $92.48 | $99.61 | $95.26 | $95.26 | $95.26 | $94.35 | $94.35 | $94.35 |
| 5/5/2005 | $65.98 | $92.50 | $99.61 | $95.28 | $95.28 | $95.28 | $94.38 | $94.38 | $94.38 |
| 5/6/2005 | $65.98 | $92.50 | $99.61 | $95.28 | $95.28 | $95.28 | $94.37 | $94.37 | $94.37 |
| 5/9/2005 | $65.99 | $92.51 | $99.61 | $95.28 | $95.28 | $95.28 | $94.37 | $94.37 | $94.37 |
| 5/10/2005 | $66.00 | $92.53 | $99.61 | $95.28 | $95.28 | $95.28 | $94.39 | $94.39 | $94.39 |
| 5/11/2005 | $66.00 | $92.54 | $99.61 | $95.28 | $95.28 | $95.28 | $94.40 | $94.40 | $94.40 |
| 5/12/2005 | $66.01 | $92.56 | $99.61 | $95.29 | $95.29 | $95.29 | $94.42 | $94.42 | $94.42 |
| 5/13/2005 | $66.02 | $92.58 | $99.61 | $95.30 | $95.30 | $95.30 | $94.44 | $94.44 | $94.44 |
| 5/16/2005 | $66.03 | $92.59 | $99.61 | $95.30 | $95.30 | $95.30 | $94.43 | $94.43 | $94.43 |

17

*Questions? Call Toll-Free (888) 356-0263*

Table 5: PSLRA Loss Limitation Table for AIG Debt Securities (continued)

| Coupon | Zero | 0.500% | 2.850% | 2.875% | 2.875% | 2.875% | 4.250% | 4.250% | 4.250% |
|---|---|---|---|---|---|---|---|---|---|
| Maturity Date | 11/9/2031 | 5/15/2007 | 12/1/2005 | 5/15/2008 | 5/15/2008 | 5/15/2008 | 5/15/2013 | 5/15/2013 | 5/13/2013 |
| Issue Date | 11/9/2001 | 5/11/2000 | 12/2/2002 | 5/15/2003 | 5/15/2003 | 4/20/2004 | 5/15/2003 | 5/15/2003 | 4/20/2004 |
| CUSIP/ISIN Number | 026874AP2 | 026874AN7 | 026870BB3 | 026874AQ0 | USU02687AB48 | 026874AR8 | 026874AS6 | USU02687AC21 | 026874AT4 |
| Series | Registered | Registered | Registered | 144A | Regulation S | Registered | 144A | Regulation S | Registered |
| Date | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price |
| 5/17/2005 | $66.03 | $92.61 | $99.61 | $95.31 | $95.31 | $95.31 | $94.43 | $94.43 | $94.43 |
| 5/18/2005 | $66.04 | $92.63 | $99.61 | $95.31 | $95.31 | $95.31 | $94.44 | $94.44 | $94.44 |
| 5/19/2005 | $66.04 | $92.63 | $99.61 | $95.32 | $95.32 | $95.32 | $94.44 | $94.44 | $94.44 |
| 5/20/2005 | $66.05 | $92.64 | $99.61 | $95.31 | $95.31 | $95.31 | $94.45 | $94.45 | $94.45 |
| 5/23/2005 | $66.05 | $92.65 | $99.61 | $95.32 | $95.32 | $95.32 | $94.47 | $94.47 | $94.47 |
| 5/24/2005 | $66.06 | $92.66 | $99.61 | $95.32 | $95.32 | $95.32 | $94.49 | $94.49 | $94.49 |
| 5/25/2005 | $66.06 | $92.68 | $99.61 | $95.33 | $95.33 | $95.33 | $94.51 | $94.51 | $94.51 |
| 5/26/2005 | $66.06 | $92.70 | $99.61 | $95.33 | $95.33 | $95.33 | $94.53 | $94.53 | $94.53 |
| 5/27/2005 | $66.07 | $92.71 | $99.61 | $95.33 | $95.33 | $95.33 | $94.55 | $94.55 | $94.55 |
| 5/31/2005 | $66.07 | $92.73 | $99.61 | $95.34 | $95.34 | $95.34 | $94.59 | $94.59 | $94.59 |
| 6/1/2005 | $66.08 | $92.75 | $99.61 | $95.36 | $95.36 | $95.36 | $94.64 | $94.64 | $94.64 |
| 6/2/2005 | $66.08 | $92.77 | $99.61 | $95.37 | $95.37 | $95.37 | $94.70 | $94.70 | $94.70 |
| 6/3/2005 | $66.08 | $92.79 | $99.61 | $95.38 | $95.38 | $95.38 | $94.74 | $94.74 | $94.74 |
| 6/6/2005 | $66.08 | $92.80 | $99.61 | $95.40 | $95.40 | $95.40 | $94.78 | $94.78 | $94.78 |
| 6/7/2005 | $66.09 | $92.81 | $99.61 | $95.41 | $95.41 | $95.41 | $94.82 | $94.82 | $94.82 |
| 6/8/2005 | $66.10 | $92.82 | $99.61 | $95.42 | $95.42 | $95.42 | $94.86 | $94.86 | $94.86 |
| 6/9/2005 | $66.10 | $92.82 | $99.61 | $95.43 | $95.43 | $95.43 | $94.89 | $94.89 | $94.89 |
| 6/10/2005 | $66.11 | $92.83 | $99.61 | $95.44 | $95.44 | $95.44 | $94.92 | $94.92 | $94.92 |
| 6/13/2005 | $66.12 | $92.83 | $99.61 | $95.45 | $95.45 | $95.45 | $94.93 | $94.93 | $94.93 |
| 6/14/2005 | $66.13 | $92.83 | $99.61 | $95.45 | $95.45 | $95.45 | $94.95 | $94.95 | $94.95 |
| 6/15/2005 | $66.14 | $92.84 | $99.61 | $95.46 | $95.46 | $95.46 | $94.96 | $94.96 | $94.96 |
| 6/16/2005 | $66.15 | $92.84 | $99.61 | $95.46 | $95.46 | $95.46 | $94.98 | $94.98 | $94.98 |
| 6/17/2005 | $66.15 | $92.85 | $99.61 | $95.47 | $95.47 | $95.47 | $95.00 | $95.00 | $95.00 |
| 6/20/2005 | $66.15 | $92.86 | $99.61 | $95.48 | $95.48 | $95.48 | $95.01 | $95.01 | $95.01 |
| 6/21/2005 | $66.15 | $92.87 | $99.61 | $95.48 | $95.48 | $95.48 | $95.03 | $95.03 | $95.03 |
| 6/22/2005 | $66.16 | $92.88 | $99.62 | $95.49 | $95.49 | $95.49 | $95.06 | $95.06 | $95.06 |
| 6/23/2005 | $66.17 | $92.88 | $99.62 | $95.50 | $95.50 | $95.50 | $95.09 | $95.09 | $95.09 |
| 6/24/2005 | $66.18 | $92.89 | $99.62 | $95.52 | $95.52 | $95.52 | $95.12 | $95.12 | $95.12 |
| 6/27/2005 | $66.19 | $92.89 | $99.62 | $95.53 | $95.53 | $95.53 | $95.15 | $95.15 | $95.15 |
| 6/28/2005 | $66.20 | $92.90 | $99.62 | $95.54 | $95.54 | $95.54 | $95.17 | $95.17 | $95.17 |
| 6/29/2005 | $66.20 | $92.91 | $99.62 | $95.55 | $95.55 | $95.55 | $95.19 | $95.19 | $95.19 |

*THIS PAGE LEFT BLANK*

*INTENTIONALLY*

In re AIG Securities Litigation – PwC Settlement
c/o Complete Claim Solutions, LLC
P.O. Box 9407
Minneapolis, MN  55440-9407

# IMPORTANT COURT DOCUMENTS

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| IN RE AMERICAN INTERNATIONAL GROUP, INC. SECURITIES LITIGATION | Master File No. 04 Civ. 8141 (JES) |
| --- | --- |

**PROOF OF CLAIM
GENERAL INSTRUCTIONS**

1. To receive a recovery from the Cash Settlement Account, created as a result of the settlement with defendant PricewaterhouseCoopers LLP, as a member of the Settlement Class in the class action lawsuit entitled *In re American International Group, Inc. Securities Litigation*, Master File No. 04 Civ. 8141 (JES) (the "Action"), you must complete and, on page 6, sign this Proof of Claim form. If you fail to submit a timely, properly completed and addressed Proof of Claim, your claim may be rejected and you may be precluded from any recovery from the Cash Settlement Account.

2. Submission of this Proof of Claim form, however, does not ensure that you will share in the Cash Settlement Account, even if you are a member of the Settlement Class.

3. **YOU MUST MAIL YOUR COMPLETED AND SIGNED PROOF OF CLAIM POSTMARKED NO LATER THAN JANUARY 28, 2009, ADDRESSED AS FOLLOWS**:

   *In re AIG Securities Litigation – PwC Settlement
   c/o Complete Claim Solutions, LLC
   P.O. Box 9417
   Minneapolis, MN 55440-9417*

   If you are NOT a member of the Settlement Class (as defined in the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Fairness Hearing) DO NOT submit this Proof of Claim form. You are not entitled to a recovery.

4. If you are a member of the Settlement Class and you have not timely and validly requested to be excluded from the Settlement Class, you will be bound by the terms of the Final Order and Judgment entered by the Court, WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM.

5. Separate Proofs of Claims must be filed for each differently named account or ownership (e.g., individual account, IRA account, joint account, etc.) However, joint tenants, co-owners or UGMA custodians should file a single claim.

**DEFINITIONS**

1. All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Fairness Hearing ("Notice") that accompanies this Proof of Claim form.

**IDENTIFICATION OF CLAIMANT**

1. You are a member of the Settlement Class if you purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive (the "Class Period") (including if you held the common stock of HSB Group, Inc. ("HSB") at the time HSB was acquired by American International Group, Inc. ("AIG") in a stock for stock transaction, or if you held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock transaction, and were damaged thereby. Excluded from the Settlement Class are (i) the Defendants, as named in the Consolidated Third Amended Class Action Complaint (the "Complaint") in this Action; (ii) the immediate families of the Individual Defendants, as named in the Complaint; (iii) any parent, subsidiary, affiliate, officer, or director of AIG; (iv) persons who timely and validly made requests for exclusion from the Settlement Class and did not thereafter rescind such requests; (v) any entity in which any excluded person has a controlling interest; and (vi) the legal representatives, heirs, successors and assigns of any excluded person.

2. "AIG Securities" are all publicly-traded securities issued by AIG, whether debt or equity securities, including, without limitation, AIG common stock, the Zero Coupon Convertible Senior Debentures referenced in paragraph 189 of the Complaint, the 0.5% Cash Exchangeable Equity-Linked Senior Notes referenced in paragraph 193 of the Complaint, the 2.85% Medium-Term Notes, Series F referenced in paragraph 203 of the Complaint, the 2.875% Notes (144A securities) referenced in paragraph 212 of the Complaint that were exchanged into registered like coupon bonds and the 4.25% Notes (144A securities) referenced in paragraph 217 of the Complaint that were exchanged into registered like coupon bonds. Options on AIG common stock are included in this definition. Please see Table 4 in the Notice for a list of the AIG bonds eligible for a recovery.

3.  If you held AIG Securities in your name, <u>you are the beneficial purchaser or acquirer <i>as well as</i> the record purchaser or acquirer</u>. If, however, you purchased or otherwise acquired AIG Securities during the Class Period through a third party, such as a nominee or brokerage firm, and the securities were registered in the name of that third party, <u>you are the beneficial purchaser or acquirer of these securities, <i>but the third party</i> is the record purchaser or acquirer of these securities</u>.

4.  Use Part I of this form entitled "Claimant Identification" to identify each beneficial purchaser or acquirer of AIG Securities that forms the basis of this claim, as well as the purchaser or acquirer of record if different. THIS CLAIM MUST BE SUBMITTED BY THE ACTUAL <u>BENEFICIAL PURCHASER(S)</u>, OR AUTHORIZED ACQUIRER(S) OR LEGAL REPRESENTATIVE(S) OF SUCH BENEFICIAL PURCHASER(S) OR ACQUIRER(S), OF THE AIG SECURITIES UPON WHICH THIS CLAIM IS BASED.

5.  All joint beneficial purchasers or acquirers must sign this claim. Executors, administrators, guardians, conservators and trustees must complete and sign this claim on behalf of Persons represented by them and their authority must accompany this claim and their titles or capacities must be stated. The Social Security (or taxpayer identification) number and telephone number of one of the beneficial owner(s) may be used in verifying this claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of your claim.

## INSTRUCTIONS FOR THE IDENTIFICATION OF TRANSACTION(S)

1.  Use Parts II through IV of this form to supply all required details of your transaction(s) in AIG Securities. If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form. Sign and print or type your name on each additional sheet.

2.  On the schedules, provide all of the requested information with respect to: (i) **all** of your holdings of AIG Securities as of the beginning of trading on October 28, 1999; (ii) **all** of your purchases, other acquisitions and sales of AIG Securities which took place at any time beginning October 28, 1999 through June 29, 2005, inclusive; and (iii) proof of your holdings of AIG Securities as of the close of trading on June 29, 2005, whether such purchases, acquisitions, sales or transactions resulted in a profit or a loss. Failure to report all such transactions may result in the rejection of your claim.

3.  List each purchase, acquisition, sale and transaction in the Class Period separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day and year of each such transaction you list. All holdings and transactions must be documented.

4.  Copies of broker confirmations, monthly account statements or other documentation of your purchases, acquisitions, sales or transactions in AIG Securities must be attached to your claim. **DO NOT SEND ORIGINALS**. Failure to provide this documentation could delay verification of your claim or result in rejection of your claim. The Parties and the Administrator do not independently have information about your investments in AIG Securities. The Administrator may also request additional information as needed to efficiently and reliably calculate your losses.

## ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.
## THANK YOU FOR YOUR PATIENCE.

Reminder Checklist:

1.  Please sign the above release and certification.

2.  Remember to attach supporting documentation.

3.  Do not send original or copies of stock certificates.

4.  Keep a copy of the completed claim form and documentation for your records.

5.  If you do not receive an acknowledgement postcard of receipt of your Claim Form within forty (40) days of your mailing the Proof of Claim, then please call the Administrator, toll-free, at 1-888-356-0263.

6.  If you move, please send the Administrator your new address:

In re AIG Securities Litigation - PwC Settlement
c/o Complete Claim Solutions, LLC
P.O. Box 9417
Minneapolis, MN 55440-9417
Phone: 1-888-356-0263
Email: info@AIGSecuritiesLitigationPwCSettlement.com
Website: www.AIGSecuritiesLitigationPwCSettlement.com

| Must be Postmarked No Later Than: January 28, 2009 | **UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** *In re AIG Securities Litigation - PwC Settlement* **No. 04-cv-8141 PROOF OF CLAIM FORM** | OFFICE USE ONLY |

**PART I: <u>CLAIMANT IDENTIFICATION</u>** - Complete either Section A or B - Please type or Print.

A.   Complete this Section ONLY if the Beneficial Owner is an individual, joint, or IRA account, proceed to C; otherwise proceed to B.

Last Name (Beneficial Owner)

First Name (Beneficial Owner)

Last Name (Joint Beneficial Owner, if applicable)

First Name (Joint Beneficial Owner)

Name of IRA Custodian, if applicable

If this account is an IRA, and if you would like any check that you MAY be eligible to receive made payable to the IRA account, please include "IRA" in the "Last Name" box above (e.g. Jones IRA).

B.   Complete this Section ONLY if the Beneficial Owner is an Entity; i.e., corporation, trust, estate, etc. and proceed to C.

Entity Name

Name of Representative, if applicable (Executor, administrator, trustee, c/o, etc.)

C.   Account/Mailing Information:

Specify one of the following:

☐ Individual(s)    ☐ Corporation    ☐ UGMA Custodian    ☐ IRA    ☐ Partnership    ☐ Estate    ☐ Trust

☐ Other:

Number and Street or P.O. Box

City

State          Zip Code

Foreign Province and Postal Code

Foreign Country

Telephone Number (Daytime)

Telephone Number (Evening)

Facsimile Number

E-Mail Address

Enter Taxpayer Identification Number below for the Beneficial Owner(s).

Social Security No. (for individuals)          or   Taxpayer Identification No.





**PART II:  SCHEDULE OF TRANSACTIONS IN AIG COMMON STOCK**

A.  **Number of shares of AIG common stock held** at the beginning of trading on **Oct. 28, 1999**
    *(If none, write "zero" or "0", if other than zero, must be documented):*

Number of Shares

B.  **Purchases or other acquisitions** (including through exchange of HSB stock or AGC stock) of AIG common stock on or after
    **Oct. 28, 1999** through and including **April 1, 2005** (in chronological order):

| Trade Dates of Purchase (list chronologically) Month/Day/Year | Number of Shares Purchased | Purchase Price Per Share | Total Amount Paid (excluding commissions, taxes & fees) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

C.  Total number of shares of common stock purchased from April 2, 2005 to June 29, 2005,
    long or short *(If none, write "zero" or "0", If other than zero, must be documented)*:

Number of Shares

D.  **Sales** on or after **Oct. 28, 1999** through and including **June 29, 2005** of AIG common stock (in chronological order):

| Trade Dates of Sales (list chronologically) Month/Day/Year | Number of Shares Sold | Sale Price Per Share | Total Amount Received (excluding commissions, taxes & fees) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

E.  **Number of shares of AIG common stock held** at close of trading on **June 29, 2005**
    *(If none, write "zero" or "0", if other than zero, must be documented):*

Number of Shares

**PART III:  SCHEDULE OF TRANSACTIONS IN AIG DEBT SECURITIES POSITIONS**

A.   Beginning and Ending Positions:  Please provide separately for each particular AIG bond/note the principal amounts thereof held at the close of business on **Oct. 27, 1999,** at the close of business on **April 1, 2005,** and at the close of business on **June 29, 2005**:

| Cusip (see Table 4) | Coupon Rate | Maturity Date | Principal amount of this particular bond/note held as of the close of business on Oct. 27, 1999 | Principal amount of this particular bond/note held as of the close of business on April 1, 2005 | Principal amount of this particular bond/note held as of the close of business on June 29, 2005 |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**PURCHASES AND SALES**

B.   Purchases/Acquisitions on or after **Oct. 28, 1999** through and including **April 1, 2005** of all AIG Bonds/Notes (in chronological order):

| Cusip (see Table 4) | Coupon Rate | Maturity Date | Trade Dates of Purchase (list chronologically) Month/ Day/ Year | Principal Amount | Purchase Price per $1000 of Principal Amount | Aggregate Cost |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

C.   Total number of Bonds/Notes purchased from April 2, 2005 through June 29, 2005:

| Cusip (see Table 4) | Coupon Rate | Maturity Date | Total Principal Amount of this particular bond/note purchased from April 2, 2005 through June 29, 2005 |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

D.   **Sales** on or after **Oct. 28, 1999** through and including **June 29, 2005** of all AIG Bonds/Notes (in chronological order):

| Cusip (see Table 4) | Coupon Rate | Maturity Date | Trade Dates of Sale (list chronologically) Month/ Day/ Year | Principal Amount | Sale Price per $1000 of Principal Amount | Aggregate Received |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

*If you require additional space, attach extra schedules in the same format as above. Sign and print your name on each additional page.*





**PART IV:  SCHEDULE OF TRANSACTIONS IN AIG OPTION SECURITIES AIG CALL OPTIONS**

A.  BEGINNING POSITION:  At the close of business on **Oct. 27, 1999,** I owned the following call options on AIG common stock (in chronological order):

| No. of Contracts | Ticker | Expiration Month & Year | Strike Price |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

B.  PURCHASES:  I made the following purchases of call options on AIG common stock on or after **Oct. 28, 1999** through and including **April 1, 2005** (in chronological order):

| Trade Dates of Purchase (list chronologically) Month/Day/Year | No. of Contracts | Ticker | Expiration Month & Year | Strike Price | Purchase Price Per Contract | Amount Paid | Insert an "E" if Exercised, an "X" if Expired or "S" for Sold | Exercise Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

C.  SALES:  I made the following sales of the above call options on AIG common stock which call options were purchased before April 1, 2005 **(include all such sales no matter when they occurred)** (in chronological order):

| Trade Dates of Sale (list chronologically) Month/Day/Year | No. of Contracts | Ticker | Expiration Month & Year | Strike Price | Sale Price Per Contract | Amount Received |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## AIG PUT OPTIONS

D.   BEGINNING POSITION:  At the close of business on **Oct. 27, 1999,** I was obligated on the following put options on AIG common stock (in chronological order):

| No. of Contracts | Ticker | Expiration Month & Year | Strike Price |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

E.   SALES (WRITING) OF PUT OPTIONS:  I wrote (sold) put options on AIG common stock on or after **Oct. 28, 1999** through and including **April 1, 2005** (in chronological order):

| Trade Date of Writing (Sale) (Month/Day/Year) | No. of Contracts | Ticker | Expiration Month & Year | Strike Price | Sale Price Per Contract | Amount Received (excluding commisisions taxes & fees | Insert an "E" if Exercised or an "X" if Expired | Assign Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |

F.   COVERING TRANSACTIONS (REPURCHASES): I made the following repurchases of the above put options on AIG common stock that I wrote (sold) before April 1, 2005 **(include all repurchases no matter when they occurred)** (in chronological order):

| Trade Date of Purchase (List Chronologically) (Month/Day/Year) | No. of Contracts | Ticker | Expiration Month & Year | Strike Price | Price Paid Per Contract | Aggregate Cost (excluding commisisions taxes & fees) |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

**YOU ARE NOT FINISHED, PLEASE READ THE RELEASE AND SIGN ON PAGE 6 BELOW.  FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**

**PART V:  SUBMISSION TO THE JURISDICTION OF THE COURT AND ACKNOWLEDGMENTS**

I (We) submit this Proof of Claim under the terms of the Agreement of Compromise and Settlement ("Agreement") described in the Notice. I (We) also submit to the jurisdiction of the United States District Court for the Southern District of New York with respect to my (our) claim as a member of the Settlement Class and for purposes of enforcing the release set forth herein. I (We) further acknowledge that I (we) will be bound by and subject to the terms of any Order and Final Judgment that may be entered in the Action. I (We) agree to furnish additional information to the Administrator to support this claim if requested to do so. I (We) have not submitted any other claim covering the same purchases, acquisitions, sales or holdings of AIG Securities during the Class Period and know of no other Person having done so on my (our) behalf.

**PART VI:  RELEASE**

1.  I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release and discharge from the Released Claims each and all of the Released Persons as those terms and terms related thereto are defined in the accompanying Notice.

2.  This release shall be of no force or effect unless and until the Court approves the Agreement and the Effective Date (as defined in the Agreement) has occurred.

3.  I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

4.  I (We) hereby warrant and represent that I (we) have included information about all of my (our) purchases, acquisitions, and sales and other transactions in AIG Securities which occurred during the Class Period and the number of shares of AIG Securities held by me (us) at the beginning of trading on October 28, 1999, and at the close of trading on June 29, 2005.

5.  I (We) hereby warrant and represent that I (we) am (are) not excluded from the Settlement Class as defined herein and in the Notice.

**PART VII:  CERTIFICATION**

UNDER THE PENALTY OF PERJURY, I (WE) CERTIFY THAT:

1.  The number shown on this form is my correct TIN; and

2.  I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1)(C) of the Internal Revenue Code because:  (a) I am (we are) exempt from backup withholding; or (b) I (we) have not been notified by the Internal Revenue Service that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the Internal Revenue Service has notified me (us) that I am (we are) no longer subject to backup withholding.

    NOTE:   If you have been notified by the Internal Revenue Service that you are subject to backup withholding, you must cross out Item 2 above. The Internal Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

3.  I declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct.

Executed this _____ day of _____, in _____ , _____ .
          (Month / Year)                    (City)                    (State / Country)

_____
Signature of Claimant

_____
(Print your name here)

_____
Signature of Joint Claimant, if any

_____
(Print your name here)

_____
Signature of person signing on behalf of Claimant

_____
(Print your name here)

_____

(Capacity of person(s) signing, *e.g.*, Beneficial Purchaser, Executor or Administrator)

# EXHIBIT B

THE WALL STREET JOURNAL    •  •  •  •    Thursday, October 30, 2008

# DEALS & DEAL MAKERS

## Lazard Swings to a Quarterly Loss

### MetLife Profit Falls; Hartford Posts Loss

*Lack of Trading Exposure Helps, but Takeover Charge Hurts Its Results*

BY DANA CIMILLUCA

---

### DEAL JOURNAL

*Breaking Insight from WSJ.com*

### Who's Who At Goldman

*New Partnership List Offers a Look Inside; Lowest Total Since '02*

BY HEIDI N. MOORE

The **Goldman Sachs** Group partnership list is out, and at 94 names it is the shortest since 2002, when 78 were named.

The biannual list provides a look inside the inner workings of one of Wall Street's leading investment banks and is a vestige of the Wall Street firm's partnership roots (it went public in 1999).

Partners share a big chunk of the firm's profit, and the list is an indicator of what niche is driving what Wall Street business. The years that the debt markets ruled the Street were reflected in the greater number of fixed-income professionals named partners.

This year, significant nods went to its investment-banking and private-equity and asset operations. The overseas contingent accounted for more than a third of new partners and included Declan Wyllie, head of operations in Europe, and L. Brooks Entwistle, a leader of its Indian operations.

Goldman also named both

---

co-heads of its private-equity group: Charles Baillie and J. Christopher A. Kojima, as well as Martin Hintze, head of private equity for German-speaking Europe.

### Merger Spreads Mystify Arbitragers

Add stock prices to the list of all indicators rendered meaningless by the financial crisis. The stocks of well-capitalized companies fall in tandem with the nearly insolvent, and the shares of companies with nearly ironclad merger or acquisition agreements plummet as sharply as those of companies whose deals are in trouble.

That last trend has left upside down the list of companies whose stocks trade at a discount, on the stock prices of merging companies. These investors, called merger arbitragers, follow the "spread" in a company's stock price to predict whether it is to be acquired. In normal markets, the wider the spread, the greater the perception a deal won't close. But look at the massive spreads on deals considered

Typical is **Rohm & Haas**, which is being acquired for $15.3 billion by **Dow Chemical**. This week, Rohm & Haas's stock was at $65.51, or nearly $13 less than the deal's $78-a-share price. Even with Rohm & Haas's shareholders voting in favor of the deal Wednesday, the stock fell 57 cents to $66.37.

Barr Pharmaceuticals is be-

---

ing acquired by **Teva Pharmaceutical Industries** for $7.46 billion. The original cash-and-stock deal, struck in July, valued Barr at $66.50 a share. The acquisition is on track, and the funding is secure, Teva announced this week. Yet Barr traded as low as $50.59 this week and closed Wednesday at $51, down 95 cents.

In these situations, and there are others, have arbitragers flummoxed. Some say the stock prices of all companies in deals are now linked, and that when one deal is perceived to be in trouble, the stocks of all suffer. Another theory is that hedge funds are being forced to sell the shares and turn cash to investors seeking to pull their money out in the down market. "All basically come out of the same pool ... they turn cash to investors seeking to pull their money out in the down market. All spooked everybody on every deal, and especially the high-quality deals," said one arbitrager.

The problem? No proof. "This suddenly doesn't matter ... and one could't point to any single fund that was liquidating. No one has any other explanation for what's happening, and no one knows who or what or any specifics," this arbitrager said.

*Read continuous updates on the light-hearted world of deal making, Deal Journal, free online at* **blogs.wsj.com/deals**

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. SECURITIES LITIGATION | Master File No. 04 Civ. 8141 (JES) (AJP) |
| This Document Relates To: All Actions | SUMMARY NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION |

TO: ALL PERSONS AND ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED PUBLICLY-TRADED SECURITIES ISSUED BY AMERICAN INTERNATIONAL GROUP, INC. ("AIG") DURING THE PERIOD FROM OCTOBER 28, 1999 THROUGH APRIL 1, 2005, INCLUSIVE, (THE "CLASS PERIOD") AND WHO WERE DAMAGED THEREBY.

YOU ARE HEREBY NOTIFIED that the above-captioned action (the "Action") has been certified as a class action for purposes of a proposed settlement and that Lead Plaintiff and one of the defendants, PricewaterhouseCoopers LLP, have entered into a proposed settlement that would cause a Cash Settlement Account of $97.5 million to resolve certain claims asserted in the Action. The Action is continuing as to all defendants other than PricewaterhouseCoopers LLP. A hearing will be held before the Honorable John E. Sprizzo, in the United States District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007 at 3:00 p.m. on January 20, 2009 to determine whether the proposed settlement should be approved by the Court as fair, reasonable and adequate, to consider certification of the proposed Settlement Class, to consider the application of Lead Plaintiff's counsel for attorneys' fees and reimbursement of litigation expenses and to consider the application of Lead Plaintiff for the reimbursement of costs and expenses. The Court may change the date of the hearing without providing additional notice.

IF YOU PURCHASED OR ACQUIRED AMERICAN INTERNATIONAL GROUP, INC. ("AIG") SECURITIES DURING THE CLASS PERIOD DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT AND YOU MAY BE ENTITLED TO SHARE IN THE CASH SETTLEMENT ACCOUNT. If you have not yet received the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Proof of Claim and Release form ("Claim Form"), you may obtain copies of these documents by contacting: In re AIG Securities Litigation - PwC Settlement, c/o Complete Claim Solutions, LLC, P.O. Box 3457, Minneapolis, MN 55403-0457 or calling 1-888-350-0265. Copies of the Notice and Proof of Claim Form may also be downloaded from: www.AIGSecuritiesLitigation-PwCSettlement.com or www.labaton.com. If you are a member of the Settlement Class, in order to be eligible to share in the distribution of the Cash Settlement Account, you must submit a Proof of Claim Form postmarked no later than January 28, 2009, establishing that you are entitled to a recovery. You will be bound by any judgment entered in the Action whether or not you make a Claim.

IF YOU DO NOT WANT TO BE A PART OF THE SETTLEMENT CLASS, YOU MUST REQUEST EXCLUSION IN WRITING. If you wish to be excluded from the Settlement Class, you must file a request for exclusion postmarked no later than December 30, 2008, in the manner and form set forth in the Notice. All members of the Settlement Class who do not request exclusion in the manner and form set forth in the Notice will be bound by any judgment entered in the Action.

Any objection to the proposed Settlement, Plan of Allocation, application for attorneys' fees and reimbursement of litigation expenses or the costs and expense application of Lead Plaintiff must be filed with the Court and delivered to counsel for the parties postmarked no later than December 30, 2008 in the manner and form set forth in the Notice.

PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE.

APPROVED ON:  October 14, 2008.

BY ORDER OF THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Legal Notice

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. SECURITIES LITIGATION | Master File No. 04 Civ. 8141 (JES) (AJP) |
| | **SUMMARY NOTICE OF PENDENCY AND** |
| This Document Relates To: All Actions | **PROPOSED SETTLEMENT OF CLASS ACTION** |

**TO: ALL PERSONS OR ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED PUBLICLY-TRADED SECURITIES ISSUED BY AMERICAN INTERNATIONAL GROUP, INC. DURING THE PERIOD FROM OCTOBER 28, 1999, THROUGH APRIL 1, 2005, INCLUSIVE, (THE "CLASS PERIOD") AND WHO WERE DAMAGED THEREBY.**

YOU ARE HEREBY NOTIFIED that the above-captioned action (the "Action") has been certified as a class action for purposes of a proposed settlement and that Lead Plaintiff and one of the defendants, PricewaterhouseCoopers LLP, have entered into a proposed settlement that would create a Cash Settlement Account of $97.5 million to resolve certain claims asserted in the Action. The Action is continuing as to all defendants other than PricewaterhouseCoopers LLP. A hearing will be held before the Honorable John E. Sprizzo, in the United States District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007 at 3:00 p.m. on January 20, 2009 to determine whether the proposed settlement should be approved by the Court as fair, reasonable and adequate, to consider certification of the proposed Settlement Class, to consider the application of Lead Plaintiff's counsel for attorneys' fees and reimbursement of litigation expenses and to consider the application of Lead Plaintiff for the reimbursement of costs and expenses. The Court may change the date of the hearing without providing additional notice.

IF YOU PURCHASED OR ACQUIRED AIG SECURITIES DURING THE CLASS PERIOD DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT AND YOU MAY BE ENTITLED TO SHARE IN THE CASH SETTLEMENT ACCOUNT. If you have not yet received the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Fairness Hearing (the "Notice") and/or Proof of Claim Form, you may obtain copies of these documents by contacting: *In re American International Group, Inc. Securities Litigation- PwC Settlement*, c/o Complete Claim Solutions, LLC, P.O. Box 9417, Minneapolis, MN 55440-9417 or toll-free 1-888-356-0263. Copies of the Notice and Proof of Claim Form may also be downloaded from: www.AIGSecuritiesLitigationPwCSettlement.com or www.labaton.com. If you are a member of the Settlement Class, in order to be eligible to share in the distribution of the net Cash Settlement Account, you must submit a Proof of Claim Form postmarked no later than January 28, 2009, establishing that you are entitled to a recovery. You will be bound by any judgment entered in the Action whether or not you make a Claim.

If you desire to be excluded from the Settlement Class, you must file a request for exclusion postmarked no later than December 30, 2008, in the manner and form explained in the Notice. All members of the Settlement Class who do not request exclusion will be bound by any judgment entered in the Action.

Any objection to the proposed Settlement, Plan of Allocation, application for attorneys' fees and reimbursement of litigation expenses or the cost and expense application of Lead Plaintiff must be filed with the Court and delivered to counsel for the parties no later than December 30, 2008 in the manner and form set forth in the Notice.

PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE.

DATED:   October 14, 2008

BY ORDER OF THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**EXHIBIT C-1**

# DE CARO & KAPLEN, LLP

*Counselors at Law*

**427 BEDFORD ROAD**
**SUITE 260**
**PLEASANTVILLE, NEW YORK 10570**
———
**(212) 732-2262**
mvk.brainlaw@verizon.net

MICHAEL V. KAPLEN\*
SHANA DE CARO

\*ADMITTED NEW YORK
AND FLORIDA BAR

\*CERTIFIED CIVIL TRIAL ADVOCATE
NATIONAL BOARD OF TRIAL ADVOCACY

\*CHAIR, NYS TRAUMATIC BRAIN INJURY
SERVICES COORDINATING COUNCIL

December 4, 2008

Hon. John E. Sprizzo
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

**Re: In Re American International Group,. Inc. Securities Litigation**
**04 Civ. 8141 (JES) (AJP)**

**Class action member: Shana De Caro**
**Claimant ID no. 04030070**

Honorable Justice Sprizzo:

I have just received and reviewed the Notice of Proposed Settlement and the Proof of Claim Form which forms a part of this document.

I object to the use of this form as overly complex and designed with the sole intent of reducing and/or eliminating legitimate claimants from receiving a portion of the settlement proceeds.

The shares of stock owned by SHANA DE CARO have been purchased over a considerable period of time through the AIG dividend reinvestment program. To ask the claimant to review years of records to determine the exact dates and shares purchased when the computer

DE CARO & KAPLEN, LLP

systems in place at AIG and their transfer agents have easy access to this same information places an unfair burden upon any claimant.

If the settlement and its proposed distribution is intended to be a good faith effort to compensate claimants, then the Proof of Claim form must be simplified with the requirement that the defendant and its agents search their own records and provide the necessary purchase information.

Under the circumstances, claimant objects to the current Proof of Claim form and proposed distribution.

Respectfully yours,

SHANA DE CARO

cc: Thomas A. Dubbs
    Nicole M. Zeiss
    Labato  Sucharow LLP
    140 Broadway
    New York, NY 10005

    Antony L. Ryan
    Cravath, Swaine & Moore LLP
    Worldwide Plaza
    825 Eighth Avenue
    New York, NY 10019

2

WESTCHESTER NY 105

DE CARO & KAPLEN, LLP
427 Bedford Road, Suite 260
Pleasantville, NY 10570

Antony L. Ryan
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

# EXHIBIT C-2

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE AMERICAN INTERNATIONAL
GROUP INC. SECURITIES LITIGATION

MASTER FILE NO. 04 CIV. 8141 (JES)

### KAREN MICHAELS[1]
### OBJECTION TO PROPOSED SETTLEMENT;
### OBJECTION TO CLASS CERTIFICATION;
### OBJECTION TO APPLICATION FOR ATTORNEY FEES AND EXPENSES
### NOTICE OF INTENTION TO APPEAR; AND
### REQUEST TO SPEAK AT THE HEARING

To The Honorable John E. Sprizzo:

Comes Now Karen Michaels ("Objector"), and files these Objections to the Proposed Settlement, Objections to Class Certification, Objections to Application for Attorney Fees and Expenses, and Notice of Intent to Appear and Request to Speak at the Hearing, and would show as follows:

### I. Identification of Objector

Under penalty of perjury of the laws of the United States, I declare that:

> I received the notice in this case sometime after approximately December 19, 2008. The notice was addressed as follows:

> 104026
> Claimant ID No. 26089249
> KAREN J MICHAELS
> ROLLOVER IRA
> P.O. BOX 9677
> TYLER, TX 75711-2677

> That is my correct address. My telephone number is 903-534-0440. I acquired a VALIC Tax Sheltered Annuity Acct #8695884 on or about December 1, 2002 as part of my divorce. I understand that AIG acquired VALIC. I rolled my AIG securities over to a UBS account in or about January 2004. I am unable to determine the exact date or price of the securities because, despite diligent effort, I have been unable to obtain the requisite documents either from my files or my broker. However, upon information and belief the specific date and price of the sale are in the records of AIG.

Signed: *Karen Michaels*

Karen Michaels

Objector objects to any requirements that she provide more detail regarding her ownership of covered securities for the following reasons.

**Page 1**

First, the preliminary approval order, p. 7, provides that objections "must contain proof of purchases of AIG Securities during the Class Period and price(s) paid." Yet the class is defined as persons who purchased *or otherwise acquired* AIG Securities. Objector acquired the securities; she did not purchase them. Thus, the requirement does not apply to her.

Second, the requirement for dates and prices to prove standing constitutes a denial of due process. A member of the class will have her rights determined by the proposed judgment whether or not they know the information requested. If they are unable to obtain any part of the information, then they will be included in the judgment but denied the right to be heard and object. Thus, it would be a denial of due process to deny Objector standing to object simply because she does not know the prices of the AIG securities.

Third, the severe time constraints placed on Objector, as described below, made the request for any additional information unreasonable.

Finally, the settling parties apparently already know that Objector is a member of the class, or have access to information necessary to make that determination. They sent her notice and assigned her a Claimant ID number. If they needed any additional information, they could obtain it from AIG's records. Thus, they already have sufficient information to determine whether Objector is in the class, or can obtain it from AIG's records, so placing this additional burden on objector is not reasonable.

## 2. Notice of Intention to Appear

Counsel Jeffrey L. Weinstein, subject to permission by the Court, and Objector's local counsel intend to appear on behalf of Objector at the hearing.

## 3. Request to Speak at the Hearing

Objector requests that her Counsel be allowed to appear at the final approval hearing to talk about these objections and to otherwise participate in the final approval hearing.

## 4. Objections to Certification of the Settlement Class

Objector objects to the certification of the settlement class for the following reasons.

### 4.1 Notice

Notice to Objector, and perhaps other class members, was inadequate and does not appear to have been made within the deadlines set by the Court. Objector has had the PO Box to which the notice was sent for eight or nine years, and believes that is the address in AIG's records.

Objector did not receive the notice in the mail until sometime less than two weeks before the deadline for exclusions and objections, two months after the notice was supposed to be sent.

First, it does not appear that the settling parties complied with the Court's notice requirements. The Preliminary Approval Order, p. 4, requires notice to be mailed by October 20, 2008. Given the date of receipt by Objector, it is clear that the settling parties did not mail the notice to her on or before October 20, as required by the Court.

Second, Objector objects to the insufficient time in which she was given to review the settlement and determine whether to participate in the settlement, exclude herself, or object. The Court's Preliminary Order correctly provides for at least two months between notice and the deadlines for filing an objection or exclusion. Yet, Objector received less than two weeks. That is insufficient time to review the settlement and evaluate her options. Making matters worse, the notice was received during the holiday season, significantly limiting Objector's opportunity to obtain necessary documents and obtain legal counsel to advise her on the settlement.

Objector respectfully requests that the Court postpone the fairness hearing and allow Objector sufficient time to analyze the settlement and either object, exclude herself, or withdraw her objection. Moreover, the Court should determine whether the late notice to Objector was an isolated event. If it was not, then the parties, at their expense not to be taken from the settlement fund, should send out a new notice to the class members with new deadlines.

Given the time constraints placed on Objector, she and her counsel have had insufficient time to review and analyze the proposed settlement and request for attorneys' fees and expenses. Thus, Objector reserves the right to amend, add to, or withdraw these objections upon further analysis.

## 4.2   Class definition

Rule 23 and due process require that the class definition be precise, objective and presently ascertainable. Manual For Complex Litigation 4th, p. 270. The order defining the class must avoid terms that depend on resolution of the merits. *Id*. To determine if an individual is a class member, a court must be able to do so by reference to the class definition and without inquiry into any sort of fact-finding on the merits of the case. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). The class definition here is not precise, objective or presently ascertainable, includes terms that depend on the resolution of the merits, and requires an inquiry as to the facts regarding whether each potential class member was "damaged."

Here the Settlement Agreement defines the class as:

"Settlement Class" means, for purposes of this Agreement only, all persons who purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive (the "Class Period"), ..., *and who were damaged thereby* ...

Page 3

Settlement Agreement p. 10, emphasis added. The settlement does not appear to define what "damages" a potential class member must have suffered to be in the class, or how such a determination would be made. The allegation of damages was a central element needed to prove Plaintiff's cause of action and this definition appears to require that very analysis.

Because the class definition here (1) does not provide a precise, objective and presently ascertainable way to identify class members, (2) requires a "mini trial" to determine whether a particular person was "damaged" and, therefore, is in the class, and (3) requires the Court to address the central issue of liability, the class definition is not appropriate and the Court should not certify the class.

## 5.  Objections to the Approval of the Settlement

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement, for the following reasons.

### 5.1 Inadequate notice

The settling parties failed to provide adequate notice to Objector and possibly other class members, as set out above. Thus, Objector reserves the right, if the Court grants a new deadline for objections, to raise additional objections to the settlement.

### 5.2 Payment of attorneys' fees

The settlement illegally provides that the attorney's get paid during any appeal of a judgment approving the settlement, even when the class has received no payments.

> Immediately after the Court enters an order approving the Attorneys' Fees and Expenses Award, Lead Plaintiff's counsel may withdraw the Court-awarded attorneys' fees and expenses from the Cash Settlement Account …

Settlement Agreement p. 19. That provision conflicts with the Private Securities Litigation Reform Act, which provides:

> Restrictions on payment of attorneys' fees and expenses
> Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest *actually paid to the class*.

15 USCA § 77z-1 §6 (emphasis added). "Actually paid" means actually paid, not a judgment ordering payment in the future. Moreover, the original payment of the $92 million to the cash settlement account does not apply because it was not paid "to the class." The money was paid to a cash settlement account, in the Court's custody, so it was not paid "to the class:"

"Cash Settlement Account" means a segregated interest-bearing escrow account established pursuant to the terms of an escrow agreement to be entered into by Lead Plaintiff and PwC. The Cash Settlement Account shall be maintained as a Qualified Settlement Fund, as defined in Section I below. *All monies in the Cash Settlement Account, including all interest accruing thereon, shall be deemed to be in the custody of the Court and will remain subject to the jurisdiction of the Court until such time as they are paid out* as (i) Notice and Administrative Expenses, (ii) Attorneys' Fees and Expenses Award, (iii) payment to the Lead Plaintiff of its reasonable costs and expenses (including lost wages), to the extent approved by the Court, (iv) Tax Expenses on the Cash Settlement Account or (v) distributions to Authorized Claimants after the Effective Date of this Agreement.

Settlement Agreement p. 5-6 (emphasis added). The provision even refers to the later pay out to the class, so the payment into the settlement fund does not constitute payment to the class. Thus, the Court cannot approve the Settlement Agreement because approval would violate 15 USCA § 77z-1 §6.

### 5.3 Denial of appeal rights

The parties ask the Court to strip the Court of Appeals of its statutory jurisdiction by approving a settlement that would prevent any appeal of the Court's final decision on a class member's claim:

> If a dispute concerning a claim cannot be otherwise resolved, Lead Plaintiff's counsel shall thereafter present the request for review to the Court for summary resolution, *without any right of appeal or review.*

Settlement Agreement p. 16 (emphasis added). When the Court enters final decision on a class member's individual claim, the class member has the statutory right to appeal that decision to the Court of Appeals. 28 U.S.C.A. § 1291. The Court lacks the authority to approve a settlement that takes that right away.

### 5.4 Changes to the Plan of Allocation

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because it allows the Court to amend the Plan of Allocation without notice to class members: "The Court also reserves the right to modify the Plan of Allocation without further notice to Class Members." Final Notice, p. 8. The parties attempt to avoid the obvious due process problems with that by claiming at page 13 of the settlement agreement that the Plan of Allocation is not a part of the settlement. The provision that allows changes to the Plan of Allocation without notice to class members denies due process and renders the settlement unfair, unreasonable, and inadequate.

As a matter of law, the plan of allocation of the settlement proceeds is a material term to a class action settlement. A settlement that gives preferential treatment to some class members at the expense of others is not fair, reasonable, or adequate. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-628 (1997). Thus, to determine whether the settlement is fair, reasonable, or adequate, the Court must consider the plan of allocation as a material part of the settlement. The plan of allocation is so important, the Manual for Complex Litigation 4th lists it as the first item for consideration:

> Rule 23(e)(1)(C) establishes that the settlement must be fair, reasonable, and adequate. *Fairness calls for a comparative analysis of the treatment of class members vis-à-vis each other* ...

Manual For Complex Litigation 4th, §21.62, p. 315 (emphasis added).

This rule of law makes sense. For example, assume a class member reviews the settlement and the proposed plan of allocation and determines he will receive $1000 under the settlement, so decides to participate. But if the Court later amends the Plan of Allocation, without notice, and the class member will now receive a lesser amount, he will have waived his right to object or exclude himself and will not have any opportunity to be heard on the Court's decision to cut his recovery. That is inherently unfair and a denial of due process.

Just as the Court lacks the authority to alter other parts of the Settlement, without notice to the Class, so too the Court cannot alter the Plan of Allocation, one of the most important aspects of the settlement. Thus, the Court cannot approve the settlement with this provision included.

### 5.5 Claims determinations based on equitable grounds

According to the Notice, "The Court has reserved jurisdiction to allow, disallow or adjust on equitable grounds the Claim of any Class Member." Final Notice, p. 8. Yet there is no provision in the settlement, and no notice to class members, as to what equitable grounds will be used.

Thus, class members have no way of knowing what arguments may be used to deny their claim even though they are otherwise entitled to recovery under the settlement. For instance, a class member could opt to be included in the settlement, assuming he is entitled to recovery, but later, after the deadline passes for objecting or opting out, find out that the Court will deny valid claims based on laches. That would effectively change the terms of the settlement after the time for objecting or opting out had passed.

On the other hand, those class members that are unable to technically qualify for a payment, despite being in the class, do not know what arguments they could make to obtain payment any way. A lawyer who knows what the notice means when it says "equitable grounds" may be able to make an argument to obtain payment, but a lay person may have no clue as to what "equitable grounds" may be or which the Court might be willing to entertain. Basing payments on hidden criteria that are not disclosed to class members is unfair and inadequate.

**5.6    The parties failed to meet their burden of proof that the total settlement to the class would be fair, reasonable, or adequate.**

Objector objects to the settlement because the parties have failed to meet their burden to prove that the amount of the settlement is fair, reasonable, and adequate.  The burden of proof is on the settlement parties, not objectors:

> At the fairness hearing, the proponents of the settlement must show that the proposed settlement is 'fair, reasonable, and adequate.'

MANUAL FOR COMPLEX LITIGATION 4th, §21.634, p. 322.

**6.    Objection to Class Counsel's request for attorneys' fees and expenses**

Objector objects to Class Counsels' request for attorneys' fees and expenses.  Based on the lack of adequate notice, set out above, Objector has not had sufficient time to evaluate the fee request. For instance, the $6 million in expenses appears to be excessive, but given the untimely notice, Objector was denied the opportunity to review the alleged support for that request in time to determine whether to object to all or some parts of that request.  Objector requests that the Court postpone the January 20, 2009 hearing to allow class members adequate time to review the fee and expense requests.

Wherefore, Objector prays that the Court disapprove the proposed settlement, application for attorneys' fees, and application for incentive awards, and grant Objector such other and further relief as to which she may be entitled.

ROBERT E. MARGULIES, ESQ.

MARGULIES WIND
A Professional Corporation
Harborside Plaza 10
3 Second Street – Suite 1201
Jersey City, NJ 07311
201-333-0400
201-333-1110-fax

JEFFREY L. WEINSTEIN
JEFFREY L. WEINSTEIN, P.C.
Texas State Bar No. 21096450
518 East Tyler Street
Athens, TX  75751
903/677-5333
903/677-3657 – facsimile
*Subject to Court Approval Pro Hac Vice*

**ATTORNEYS FOR OBJECTOR**