UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re AMERICAN INTERNATIONAL GROUP, INC. SECURITIES LITIGATION<br><br>This Document Relates To:  All Actions | <u>ECF CASE</u><br><br>Master File No. 04 Civ. 8141 (DAB)<br><br>Oral Argument Requested |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION OF LEAD PLAINTIFF AND DEFENDANT PRICEWATERHOUSECOOPERS LLP FOR FINAL APPROVAL OF PROPOSED SETTLEMENT WITH PRICEWATERHOUSECOOPERS LLP**


LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
(212) 907-0700
(212) 818-0477 (Fax)

*Lead Counsel for Lead Plaintiff*
*Ohio State Funds and the Class*

HAHN LOESER & PARKS LLP
3300 BP Tower
200 Public Square
Cleveland, Ohio 44114-2301
(216) 621-0150
(212) 274-2478 (Fax)

*Special Counsel to the Attorney General of Ohio*
*and the Ohio State Funds and*
*Co-Lead Counsel for the Class*


CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
(212) 474-3700 (Fax)

*Attorneys for Defendant*
*PricewaterhouseCoopers LLP*


May 17, 2010

**Table of Contents**

Page

Table of Authorities ........................................................................................................................ ii

Preliminary Statement ......................................................................................................................1

Procedural History ...........................................................................................................................2

Argument .........................................................................................................................................4

I.   CERTIFICATION OF THE SETTLEMENT CLASS IS CONSISTENT WITH
     RULE 23 AND AMCHEM v. WINDSOR. ...........................................................................5

     A.   The Intra-Class Conflicts That Prevented Certification in Amchem v.
          Windsor Are Absent in this Case. ............................................................................5

     B.   The Predominance Issues that Narrowed the Scope of the Litigation Class
          Do Not Prevent Certification of a Broader Settlement Class. .................................6

     C.   The Different Context of a Settlement Can Lead to a Different Decision on
          Certifying a Settlement Class From a Litigation Class. ..........................................9

II.  SETTLEMENT OF COMPLEX LITIGATION IS ENCOURAGED, AND
     FINAL APPROVAL OF THE SETTLEMENT CLASS WOULD BE
     EFFICIENT. ........................................................................................................................10

     A.   The Policy of Encouraging Settlement Weighs in Favor of Certifying the
          Settlement Class. ....................................................................................................11

     B.   Certifying the Settlement Class Is Efficient ..........................................................12

Conclusion .....................................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................. passim

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006), *aff'd in part, vacated in part on other grounds*, 443 F.3d
   253 (2d. Cir. 2006) .............................................................................................................8

*Denney v. Jenkins & Gilchrist*,
   230 F.R.D. 317 (S.D.N.Y. 2005) ............................................................................... passim

*Gerber v. MTC Elec. Techs. Co.*,
   329 F.3d 297, 305 (2d Cir. 2003) .....................................................................................13

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................10, 11

*In re Initial Public Offering Sec. Litig.*,
   227 F.R.D. 65 (S.D.N.Y. 2004), *rev'd on other grounds*, 471 F.3d 24 (2d Cir. 2006) .............7

*In re Initial Public Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) .........................................................................................8

*In re Initial Public Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ............................................................................... passim

*In re J.P. Morgan Chase Cash Balance Litig.*,
   255 F.R.D. 130 (S.D.N.Y. 2009) ................................................................................. 9-10

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ...............................................................................................8

*Klein v. PDG Remediation, Inc.*,
   No. 95 CIV 4954 (DAB), 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) ..............................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ....................................................................................11, 12, 13

**Statutes & Rules**

Fed. R. Civ. P. 23 ............................................................................................................. passim

Fed. R. Civ. P. 23(a) .................................................................................................3, 5, 6

Fed. R. Civ. P. 23(a)(4)..................................................................................................5

Fed. R. Civ. P. 23(b)(3)........................................................................................ passim

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................................9

Fed. R. Civ. P. 23(e) ................................................................................................1, 11

Fed. R. Civ. P. 23(e)(4)................................................................................................13

Rule 10b-5, 17 C.F.R. § 240.10b-5 ...............................................................................4

Securities Act of 1933, 15 U.S.C. § 11......................................................................4, 7

Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b).....................................4, 9

## Other Authorities

William B. Rubenstein, Alba Conte & Herbert B. Newberg, Newberg on Class Actions
    § 11.27 (4th ed. 2002).............................................................................................9

Manual for Complex Litigation, Fourth § 22.921 (2004)...............................................8

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio and Ohio Police & Fire Pension Fund (collectively "Lead Plaintiff"), and Defendant PricewaterhouseCoopers LLP ("PwC") move for final approval of the settlement with PwC and certification of a class for purposes of settlement with PwC.

## Preliminary Statement

On February 22, 2010, the Court issued an opinion certifying a litigation class in this action. (Dkt. No. 534, attached hereto as Ex. A ("Litigation Class Opinion").) Since the litigation class that the Court certified was somewhat narrower in scope than the class preliminarily certified for the settlement with PwC, Lead Plaintiff and PwC withdrew the original motion for final approval of the settlement to consider carefully the implications of the Litigation Class Opinion for the settlement. Having done so, Lead Plaintiff and PwC have decided to proceed with the original settlement. In this Memorandum, we set forth the reasons why the Court has the authority to approve, and should approve, the original settlement.

Lead Plaintiff has previously moved for final approval of the settlement with PwC (Dkt. No. 464, attached hereto as Ex. B), and Lead Plaintiff and PwC have responded to the handful of objections received by the Court after notice was provided to the proposed class (Dkt. Nos. 465 and 461, attached hereto as Exs. C and D). Lead Plaintiff and PwC do not repeat here those arguments for final approval of the settlement, and respectfully refer the Court to their previously filed papers.

The recent Litigation Class Opinion granted Lead Plaintiff's contested motion for certification of a litigation class against the non-settling defendants. (Ex. A.) In that Opinion, the Court made certain modifications narrowing the scope of the class that was proposed in the

Third Amended Complaint, was the basis of the settlement between Lead Plaintiff and PwC, and was preliminarily approved by the Court for purposes of the settlement with PwC.

The Litigation Class Opinion confirms that, notwithstanding the narrowing of the litigation class, certification of the full class is appropriate for purposes of the proposed settlement with PwC.  *First*, certification of the proposed settlement class is consistent with Rule 23 of the Federal Rules of Civil Procedure and the standards set out by the Supreme Court in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).  The intra-class conflicts that led the Supreme Court to deny certification of a settlement class in *Amchem* are absent in this case.  The predominance issues that caused this Court in the Litigation Class Opinion to narrow the scope of the litigation class present only trial manageability issues, and therefore do not preclude certification of a broader settlement class.  Indeed, a ruling on certification of a litigation class cannot control settlement class certification, as a decision to certify a litigation class is inherently preliminary and subject to revision until final judgment.

*Second*, the full class should be certified as a settlement class here because the law favors settlement, particularly in complex class actions like this one.  Practically speaking, class actions are difficult to settle unless settling defendants, such as PwC, can gain assurance that they are obtaining a release from liability from all putative plaintiffs, even those whose potential claims against them are weak or subject to valid defenses.  Moreover, approval of the settlement with PwC and certification of the full settlement class is efficient because there is no need for another opt-out and objection period, and the three remaining objectors, out of a potential class of over two million, have raised no meritorious objections to the settlement.

**Procedural History**

In an order dated October 14, 2008 (Dkt. No. 444, attached hereto as Ex. E ("Preliminary Approval Order")), the late Judge Sprizzo preliminarily approved the proposed

settlement between Lead Plaintiff and PwC.  The Preliminary Approval Order granted preliminary approval of the proposed settlement with PwC and preliminarily certified a class for the purposes of settlement only under Rule 23(a) and Rule 23(b)(3).  (*Id.* ¶¶ 2-5.)  Further, the Order approved the forms and methods of notice and established procedures and deadlines for Class Members to exclude themselves from the settlement.  (*Id.* ¶¶ 6-18.)  In addition to publication notice, more than two million copies of the notice packet were mailed to potential class members.  (Affidavit of Peter Craig, Dkt. No. 472-3, ¶¶ 6, 16.)

On January 13, 2009, Lead Plaintiff moved to approve the Proposed Settlement with PwC.  In its memorandum in support of the motion, Lead Plaintiff demonstrated that the settlement is fair, adequate and reasonable.  (*See* Ex. B at 4-14.)  Lead Plaintiff further demonstrated that the settlement class meets the requirements of Rule 23(a) and Rule 23(b)(3), and should receive final approval.  (*Id*. at 14-21.)

Only four members of the proposed class—none of them a public pension fund or other institutional investor—objected to the settlement with PwC.  On January 13, 2009, Lead Plaintiff demonstrated that none of these objections has merit.  (Ex. C.)  One of the objectors has since withdrawn her objection.  (Dkt. No. 535.)  In addition, the Greenberg Group of Defendants made a limited objection to the bar order in the preliminarily approved settlement.  The Greenberg Group has since reached a conditional settlement with Lead Plaintiff and has been dismissed without prejudice from this action (Dkt. No. 521), and counsel for the Greenberg Group has represented to counsel for PwC and Lead Plaintiffs that it is no longer pressing its limited objection.

On February 22, 2010, prior to addressing Lead Plaintiff's motion for final approval of the proposed settlement with PwC, the Court decided Lead Plaintiff's motion for certification of a litigation class, which Defendant AIG contested.  The Court certified a

3

litigation class, albeit one narrower in scope than the class preliminarily certified for settlement. (Ex. A.) In the Litigation Class Opinion, the Court modified the class definition in two respects: (1) to exclude all bondholders and (2) to exclude two of the six dates across which purchasers or acquirors of AIG stock must hold stock to be class members. (Ex. A at 86, 88-89.)[1]

On March 19, 2010, the original motion for approval of the proposed settlement with PwC was voluntarily withdrawn without prejudice, to allow Lead Plaintiff and PwC to prepare papers that address the effect of the Litigation Class Opinion on final approval of the settlement with PwC. (*See* Dkt. No. 539.) This renewed motion now follows.

**Argument**

In connection with final approval of the settlement with PwC, this Court has the authority under Rule 23 and governing Supreme Court precedent to certify the full class for settlement purposes only. (*See infra* Part I.) Certification of the full settlement class best accords with the policies favoring settlement of class actions and principles of judicial efficiency. (*See infra* Part II.)

---

[1] As the Court noted, Lead Plaintiff has conceded that on this record "in-and-out traders"—shareholders who did not hold their shares across one of the disclosure dates—should be excluded from the class. (Ex. A at 45 n.9.) PwC agrees. The Court's exclusion from the Litigation Class of in-and-out-traders who did not hold AIG stock over at least one of the disclosure dates was already accomplished with respect to the Settlement Class by the requirement that class members "were damaged thereby". (*See* Ex. E ¶ 2.)

The Court also ruled that Lead Plaintiff lacks standing to bring claims under Section 11 of the Securities Act of 1933 because Lead Plaintiff did not purchase any of the AIG bonds at issue until March 15, 2005. (Ex. A at 14-23.) That ruling is of no moment to certification of the settlement class as to PwC. The Court ruled that Lead Plaintiff does have standing to bring a claim under Section 10(b) and Rule 10b-5 of the Exchange Act, and each member of the proposed class with a Section 11 claim remains a class member for the Section 10(b) bond claim.

**I.      CERTIFICATION OF THE SETTLEMENT CLASS IS CONSISTENT WITH RULE 23 AND *AMCHEM v. WINDSOR*.**

**A.      The Intra-Class Conflicts That Prevented Certification in *Amchem v. Windsor* Are Absent in This Case.**

The grounds for denying settlement class certification in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), are not present here. In *Amchem*, the Supreme Court affirmed the Third Circuit's decision reversing certification of a settlement class, because serious intra-class conflicts barred the settlement class from satisfying the "adequacy of representation" requirement of Rule 23(a)(4) and the "predominance" requirement of Rule 23(b)(3).

The intra-class conflicts that barred the *Amchem* settlement class from satisfying Rule 23(a) are absent from the settlement class here. In *Amchem*, the settlement class sought to represent everyone in the United States who had been exposed to asbestos but who had not yet filed an individual lawsuit. 521 U.S. at 602. Included in the settlement class were people who were currently impaired from asbestos exposure as well as those who had been exposed but were not yet suffering any impairments from the exposure. *Id.* at 603. The Court explained that the interests of these two groups were antagonistic and created incurable intra-class conflicts: "[F]or the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future." *Id.* at 626.

Here, this Court has already addressed and rejected similar arguments. (*See* Ex. A at 28-37, 40-41 (rejecting AIG's argument that class certification was improper because Lead Plaintiff's interest in maximizing recovery was adverse to the interests of other class members).) Thus, the Rule 23(a) concerns of *Amchem* do not weigh against certification of the settlement class here.

The predominance problems in *Amchem* do not weigh against certification of the settlement class here either. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. In *Amchem*, the Court held that a general interest in the fairness of the settlement is not a factor "pertinent to the predominance inquiry" because "a fair compromise" does not "assure the class cohesion that legitimizes representative action". *Id.* at 622-23. The Court ruled that class cohesion was absent because of intra-class conflicts—the same conflicts that precluded certification under Rule 23(a). *See id.* at 624-25 ("The exposure-only plaintiffs . . . share little in common, either with each other or with the presently injured class members.") (quotations omitted).

In this case, by contrast, this Court has already rejected the argument that intra-class conflicts prevent class certification. (*See* Ex. A at 28-37, 40-41.) Accordingly, certification of the settlement class as to PwC is appropriate under the controlling standards of *Amchem*.

### B. The Predominance Issues That Narrowed the Scope of the Litigation Class Do Not Prevent Certification of a Broader Settlement Class.

This Court may certify the settlement class that has been preliminarily certified notwithstanding the predominance issues that caused the Court to narrow membership in the litigation class. In the Litigation Class Opinion, the Court reasoned that Lead Plaintiff could not gain the benefit of the fraud-on-the-market presumption of reliance with respect to the claims relating to the bonds because the Court found that the bonds did not trade on an efficient market. (*See* Ex. A at 63.) The Court also ruled that defendants had rebutted the fraud-on-the-market presumption with respect to March 30 and 31, 2005, two of the six dates across which purchasers or acquirors of AIG stock must hold stock to be class members. (*Id.* at 86, 88-89.) However, the

6

lack of a fraud-on-the-market presumption does not bar certification of the settlement class here because a court need not consider "intractable management problems" when considering settlement class certification. *Amchem*, 521 U.S. at 620.

Following *Amchem*, courts in this Circuit have approved settlements with settlement classes broader than litigation classes previously certified in the same action. For example, in *In re Initial Public Offering Securities Litigation*, 226 F.R.D. 186, 194-97 (S.D.N.Y. 2005) (Scheindlin, J.), the court certified for settlement purposes a class that included two groups the court had previously excluded from the litigation class. There, the court in a previous decision had carved out of the litigation class, on the ground of Rule 23(b)(3) predominance, plaintiffs asserting Section 11 claims who purchased their shares after untraceable shares entered the market. *In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 117-20 (S.D.N.Y. 2004), *rev'd on other grounds*, 471 F.3d 24 (2d Cir. 2006). Nonetheless, the court subsequently approved a settlement that included those same plaintiffs in the settlement class. The court reasoned that, "although litigants frequently conceive of 'predominance' and 'manageability' as separate requirements of Rule 23(b)(3), they are not". *IPO Sec. Litig.*, 226 F.R.D. at 195 n.51. Therefore, "the removal of [manageability] from consideration [can] alleviate[] [a] predominance defect". *Id*. Accordingly, the court explained, "when the problem of manageability at trial—which, in the case of Section 11 tracing, would have required individual proceedings to determine traceability—is removed, the predominance defect is no longer fatal". *Id.* Similarly, the court had excluded from the litigation class stock purchasers whose trading behavior made it *likely* (but not certain) that they had actual knowledge of the alleged scheme. *IPO Sec. Litig.*, 227 F.R.D. at 99-103. Here too, the court certified the broader settlement class, reasoning that:

7

> "[T]he legal question for excluded plaintiffs and members of the litigation classes is identical: did they know of the alleged fraud? It is only the process of determining the answer to that question, and thus ascertaining which class members might be eligible for recovery, that renders some members unsuitable for inclusion in the litigation class." *IPO Sec. Litig.*, 226 F.R.D. at 196.

*See also In re Initial Public Offering Sec. Litig.*, 260 F.R.D. 81, 116 & n.308 (S.D.N.Y. 2009) (adhering to 2005 decision on scope of settlement class).

Likewise, in *Denney v. Jenkins & Gilchrist*, 230 F.R.D. 317, 334-36 (S.D.N.Y. 2005) (Scheindlin, J.), *affirmed in part, vacated in part on other grounds*, 443 F.3d 253 (2d Cir. 2006), the district court certified a settlement class over concerns that the class failed the predominance requirement. The court rejected the predominance concerns because the class was a "settlement-only class" and the need to apply "many different states' laws" concerned "the feasibility of managing the trial". 230 F.R.D. at 335; *accord In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004) (citing *Amchem* for the proposition that "when dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class"); Manual for Complex Litigation, Fourth § 22.921, at 452 n.1477 (2004) (citing *Amchem* for the same proposition). On appeal, the Second Circuit referred to the "well-reasoned analysis of the Rule 23 requirements" in this portion of the district court's opinion, *see Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (citing *Denney*, 230 F.R.D. at 330-39), and did not disturb that portion of the district court's ruling.

The same principles as in *IPO Securities Litigation* and *Denney* apply here. The issues of predominance that this Court ruled required exclusion from the litigation class of two groups of plaintiffs—(1) bondholders and (2) shareholders who held across March 30 or March 31, 2005, but not across any of the four other disclosure dates—do not prevent inclusion

8

of those plaintiffs in the settlement class.  As with the issue of traceability in *IPO Securities Litigation*, 226 F.R.D. at 195, the Court's rulings regarding the applicability and scope of the fraud-on-the-market presumption here do not mean that the excluded groups of plaintiffs are not "eligible for recovery" against PwC, *see id*. at 196.  Those plaintiffs could still bring separate, individual actions with Section 10(b) claims against PwC, subject to each plaintiff's establishing reliance on an individual, rather than market-wide, basis.  The Court's ruling that such plaintiffs must prove reliance individually means that common questions of law and fact do not predominate for a litigated class action.  *See* Fed. R. Civ. P. 23(b)(3).  Thus, the Court's ruling on the applicability of the fraud-on-the-market presumption with respect to those plaintiffs does not affect the suitability of a settlement resolving those plaintiffs' claims by including them as part of a broader settlement class.

### C. The Different Context of a Settlement Can Lead to a Different Decision on Certifying a Settlement Class From a Litigation Class.

Moreover, the scope of the litigation class is preliminary and does not control the decision on how broad the settlement class may be.  Under Rule 23, a court must make class action determinations in the context in which those class issues arise.  "Class action determinations are made in the context of all the circumstances of the case as it is then postured." 4 William B. Rubenstein, Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.27 (4th ed. 2002).  When applied in the context of a settlement, Rule 23 criteria may therefore lead to a different result from when those criteria are applied in contested litigation.  *Id*.

Similarly, because class certification depends on the context in which it arises, the Federal Rules provide that a district court may alter or amend class certification anytime prior to the entry of final judgment.  *See* Fed. R. Civ. P. 23(c)(1)(C).  Courts in this District have stated that "[c]ourts are required to reassess their [class certification] rulings as the case develops, and

9

must define, redefine, subclass, and decertify as appropriate in the progression of the case from assertion to facts". *In re J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. 130, 133 (S.D.N.Y. 2009) (Cote, J.) (internal quotations omitted).  Thus, for example, the definition of the litigation class in this case could be amended if Lead Plaintiff or AIG were to put forth additional evidence that would support changing the scope of the class certified in the Litigation Class Opinion.

It follows that the Litigation Class Opinion need not control on this motion for final approval of the settlement with PwC.  The Rule 23(b)(3) predominance factors that led to the Court's decision on the scope of the litigation class cut differently in the context of settlement.  The Court should evaluate the Rule 23 factors for purposes of a settlement with PwC only.  As in *IPO* and *Denney*, the Court can, and should, approve a settlement class broader in scope than the previously certified litigation class.

## II.   SETTLEMENT OF COMPLEX LITIGATION IS ENCOURAGED, AND FINAL APPROVAL OF THE SETTLEMENT CLASS WOULD BE EFFICIENT.

Approval of the settlement with PwC and certification of the settlement class in this complex class action is consistent with the sound judicial policy of this Circuit, which encourages compromise and conservation of judicial resources.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (Lynch, J.).  In this case, settlement was the product of compromise reached after arm's-length negotiations and meaningful discovery by counsel experienced in federal securities class actions.  (Ex. B, at 9-13.)

Moreover, there are only three objectors, out of more than two million putative class members, and none of the grounds in their objections involves the issues decided by this Court in its Litigation Class Opinion.  In addition, only 61 timely and valid requests for exclusion were received (overall, there were 100 timely and 5 untimely requests), representing

10

26,098 shares of stock—which is approximately one one-thousandth of 1% (0.001%) of the total number of shares of AIG common stock. (Affidavit of Peter Craig, Dkt. No. 472-3, ¶ 19.) Approving the settlement and certifying the settlement class will be judicially efficient.

### A. The Policy of Encouraging Settlement Weighs in Favor of Certifying the Settlement Class.

There is a long-standing policy in federal courts favoring settlement. The Federal Rules of Civil Procedure require court review of settlements in the class action context. Fed. R. Civ. P. 23(e). The decision to approve a class settlement and certify the settlement class is committed to the discretion of the district court, which has "a duty to class members to ensure that the proposed settlement is 'fair, reasonable and adequate'". *IPO Sec. Litig.*, 226 F.R.D. at 189. That discretion, however, should take into account the "strong judicial policy in favor of settlements, particularly in the class action context". *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quotations omitted); *see also Global Crossing*, 225 F.R.D. at 455 ("[T]his Court will take into consideration [the policy in favor of settlement] in exercising its discretion.").

As the *Global Crossing* court stated, "[F]ederal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources." *Id.* The settlement here resulted from compromise between Lead Plaintiffs and PwC, and is fair, reasonable and adequate. (*See* Ex. B, at 4-6.) Moreover, the costs of continuing this litigation weigh in favor of settlement. *See Klein v. PDG Remediation, Inc.*, No. 95 CIV 4954 (DAB), 1999 WL 38179, at *2 (S.D.N.Y. Jan. 28, 1999). If the full settlement class as to PwC is not certified, both Lead Plaintiff and PwC could walk away from the settlement. If that were to occur, and the settling parties could not agree on new terms, there would be additional fact and expert discovery, summary judgment and *Daubert* motions, trial

11

preparation and trial itself, followed perhaps by an appeal.  Consequently, the complexity, expense and duration of the litigation weigh in favor of approving the settlement and certifying the full settlement class.

Moreover, as a practical matter a settling class-action defendant such as PwC must be able fully to extinguish its liability as part of classwide settlement.  "Broad class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country.  Practically speaking, class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability."  *Wal-Mart*, 396 F.3d at 106 (internal quotation marks and alterations omitted).  Here, if settlement were possible only on the basis of the certified litigation class, PwC would face exposure to individual claims by bondholders and by shareholders who held across March 30 or March 31, 2005, but not across one of the other four disclosure dates.  PwC negotiated with Lead Plaintiff, the class representative, at arm's length and in good faith for a settlement.  From PwC's perspective, in exchange for paying $97.5 million, it expected to receive releases from all persons who purchased or otherwise acquired AIG Securities during the Class Period and were damaged thereby, regardless of whether or not those individuals could gain the benefit of the fraud-on-the-market presumption of reliance.

      **B.**    **Certifying the Settlement Class Is Efficient.**

Certification of the full settlement class as to PwC would be the most efficient result for the settling parties, for class members and for the Court.  The objections to the settlement from the three remaining objectors lack merit and are easily dismissed.  Furthermore,

certification of the full settlement class would ensure that there would be no need for a pointless additional round of notice and opt-outs as to the settlement with PwC.[2]

The objections to the settlement are few and without merit. Over two million notice packets were sent to putative class members, but only four objections were received from putative class members. (*See* Ex. C.) Lead Plaintiff demonstrates in previously filed papers that, of the four objections, two simply take issue with securities class actions in general, and may be disregarded. (*Id.* at 2-3.) The other two objections were filed by "professional objectors", one of whom (Karen Michaels) has since withdrawn her objection. (Dkt. No. 535.) These objections likewise have no merit. (*See* Ex. C, at 3-14.)

The Greenberg Group filed a limited objection to the bar order in the proposed Order and Final Judgment as to PricewaterhouseCoopers LLP. (Dkt. No. 457.) This objection is without merit because, as PwC demonstrated in its response (Ex. D), the proposed bar order comports with the precedent in this Circuit on bar orders in securities class actions. *See Gerber v. MTC Elec. Techs. Co.*, 329 F.3d 297, 305 (2d Cir. 2003). In any event, the Greenberg Group has since entered into a conditional settlement with Lead Plaintiff, and pending satisfaction of the conditions of that settlement has been dismissed from this action without prejudice. (*See*

---

[2] For the reasons stated above in note 1, Lead Plaintiff and PwC believe that the Litigation Class Opinion created no relevant change in the definition of the Settlement Class. Class members received notice of the preliminary approval of the settlement with PwC, and no additional notice or further opportunity to object or opt out is necessary. *See Denney*, 230 F.R.D. at 329, 344-46 (in evaluating the need for further notice, courts look to whether there have been any "'changes in the information available to class members since expiration of the first opportunity to request exclusion'") (quoting Advisory Committee notes to Fed. R. Civ. P. 23(e)(4), formerly numbered as 23(e)(3)); *see also Wal-Mart*, 396 F.3d at 114-15 (holding that a second opt-out opportunity was not required in connection with a settlement where the class members had already been given an opportunity to opt out of the class when the class had been certified and class members were given notice of the proposed settlement and an opportunity to object to it).

Dkt. No. 521.)  Counsel for the Greenberg Group has informed counsel for Lead Plaintiff and counsel for PwC that the Greenberg Group is no longer pressing its objection.  Accordingly, there is no obstacle to certification of the full settlement class as to PwC.

## Conclusion

For the reasons stated herein and in the papers previously filed in support of the Settlement Agreement, Lead Plaintiff and PwC respectfully request the Court to enter the accompanying Proposed Order and Final Judgment as to PricewaterhouseCoopers LLP, and respectfully request certification of the settlement class, as defined in the Preliminary Approval Order.  (*See* Ex. E ¶ 2.)

In addition, for the reasons set forth in the previously filed papers, Lead Plaintiff respectfully requests the Court to enter the accompanying Proposed Order Approving the Plan of Allocation, and Co-Lead Counsel respectfully request the Court to grant their Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and Lead Plaintiff's Request for Reimbursement of Expenses and enter the Proposed Order accompanying that motion (Dkt. No. 466).  As before, PwC takes no position on those requests.

May 17, 2010                                                                  Respectfully submitted,


| LABATON SUCHAROW LLP | CRAVATH, SWAINE & MOORE LLP |
|---|---|
| by   s/ Thomas A. Dubbs  <br>     Thomas A. Dubbs  <br>     Louis Gottlieb | by   s/ Thomas G. Rafferty  <br>     Thomas G. Rafferty  <br>     Antony L. Ryan  <br>     Samira Shah |
| 140 Broadway  <br>   New York, NY 10005  <br>     (212) 907-0700 | Worldwide Plaza  <br>   825 Eighth Avenue  <br>     New York, NY 10019  <br>     (212) 474-1000 |
| *Lead Counsel for Lead Plaintiff*  <br>*Ohio State Funds and the Class* | *Attorneys for Defendant*  <br>*PricewaterhouseCoopers LLP* |

Alan S. Kopit (*pro hac vice*)
HAHN LOESER & PARKS LLP
3300 BP Tower
   200 Public Square
      Cleveland, Ohio 44114
         (216) 621-0150

*Special Counsel to the Attorney General of Ohio*
*and the Ohio State Funds and*
*Co-Lead Counsel for the Class*

15