# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————— x
                                         :

                                         :           ECF CASE

IN RE AMERICAN INTERNATIONAL GROUP,  :
INC. SECURITIES LITIGATION           :       Master File No. 04 Civ. 8141 (DC) (AJP)
                                           :

This Document Relates To:  All Actions    :       <u>Oral Argument Requested</u>
                                         :
——————————————————————— x

 

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR APPROVAL OF PROPOSED SETTLEMENT WITH DEFENDANT**
<u>**PRICEWATERHOUSECOOPERS LLP**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

    A.    Preliminary Approval and the Pre-Hearing Notice Program ............................... 2

ARGUMENT ........................................................................................................................... 4

II.    THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE AND
    REASONABLE, AND SHOULD THEREFORE BE APPROVED ............................... 4

    A.    The Settlement Is Entitled to a Presumption of Fairness ................................... 6

    B.    The Settlement Satisfies the *Grinnell* Factors ................................................... 7

        1.    Ongoing Litigation Would Be Complex, Expensive, and Lengthy ..................... 7

        2.    The Lack of Settlement Class Opposition ............................................. 8

        3.    The Settling Parties' Decision to Settle Is Well Informed .................................... 9

        4.    There Were Significant Risks in Establishing PwC's Liability ........................... 10

        5.    The Class Faced Risks in Establishing Damages ................................................ 12

        6.    The Settlement Amount Is More Than Reasonable ............................................. 13

III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............................. 14

    A.    Standards Applicable to Class Certification ..................................................... 14

    B.    This Action Meets the Requirements of Rule 23(a) .......................................... 15

        1.    Rule 23(a)(1): The Class Is Numerous ............................................... 15

        2.    Rule 23(a)(2): Questions of Law and Fact Are Common ................................... 15

        3.    Rule 23(a)(3): Plaintiffs' Claims Are Typical ..................................................... 16

        4.    Rule 23(a)(4): The Ohio State Funds Will Adequately Protect the Class .......... 17

    C.    This Action Meets the Requirements of Rule 23(b)(3) ...................................... 18

        1.    Common Questions of Law or Fact Predominate ................................................ 18

        2.    A Class Action Is a Superior Mechanism ........................................................... 20

        3.    Co-Lead Counsel Should Be Appointed Class Counsel ..................................... 20

IV.    THE PLAN OF ALLOCATION SHOULD BE APPROVED ..................................... 21

CONCLUSION ...................................................................................................................... 23

## TABLE OF AUTHORITIES

**CASES**

*Affiliated Ute Citizens v. United States,*
    406 U.S. 128 (1972) ............................................................................... 19

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................... 18

*In re Apollo Group, Inc. Sec. Litig.,*
    No. CV 04-2147, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) ............................... 12

*AUSA Life Ins. Co. v. Ernst & Young,*
    No. 00-9472, 2002 WL 1467546 (2d Cir. July 8, 2002) ....................................... 12

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
    222 F.3d 52 (2d Cir. 2000) ...................................................................... 17

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988) ............................................................................... 19

*Becher v. Long Island Lighting Co.,*
    64 F. Supp. 2d 174 (E.D.N.Y. 1999) ............................................................. 7

*In re Blech Sec. Litig.,*
    187 F.R.D. 97 (S.D.N.Y. 1999) ................................................................. 20

*Cammer v. Bloom,*
    711 F. Supp. 1264 (D.N.J. 1989) ............................................................... 19

*Carson v. American Brands, Inc.,*
    450 U.S. 79 (1981) .................................................................................. 5

*Cinelli v. MCS Claim Servs., Inc.,*
    236 F.R.D. 118 (E.D.N.Y. 2006) ............................................................... 10

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) .............................................................. passim

*Cromer Fin. Ltd. v. Berger,*
    205 F.R.D. 113 (S.D.N.Y. 2001) ............................................................... 20

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.,*
    248 F.R.D. 483 (E.D. Mich. 2008) .............................................................. 7

*Dietrich v. Bauer,*
    192 F.R.D. 119 (S.D.N.Y. 2000) ............................................................... 18

ii

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) .................................................................................................... 15

*In re Flag Telecom Holdings Ltd., Sec. Litig.*,
    245 F.R.D. 147 (S.D.N.Y. 2007) .............................................................................. 16

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... passim

*Gordon Partners v. Blumenthal*,
    No. 02-7377 (LAK) (AJP), 2007 WL 431864 (S.D.N.Y. Feb. 9, 2007) ................................. 13

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) .............................................................................. 21

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................. 8

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    210 F.R.D. 476 (S.D.N.Y. 2002) ...................................................................... 14, 15

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ................................................................................ 7

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................................ 15

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000) ................................................................................ 4, 9

*Klein ex rel. IRA v. PDG Remediation, Inc.*,
    No. 95 Civ. 4954 (DAB), 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) ..................................... 8

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................ 6, 12

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) .................................................................................. 14

*Marisol A. ex rel v. Giuliani*,
    185 F.R.D. 152 (S.D.N.Y. 1999) .............................................................................. 9

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) ................................................................................ 18

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................. 9

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) .................................................................................. 13

*In re NTL, Inc. Sec. Litig.,*
   No. 02 Civ. 3013 (LAK) (AJP), 2006 WL 330113 (S.D.N.Y. Feb. 14, 2006) ........................ 14

*In re Omnicom Group, Inc. Sec. Litig.,*
   541 F. Supp. 2d 546 (S.D.N.Y. 2008) ................................................................................. 13

*In re Oxford Health Plans, Inc. Sec. Litig.,*
   191 F.R.D. 369 (S.D.N.Y. 2000) .......................................................................... 15, 16, 19

*In re PaineWebber Ltd. P'ships Litig.,*
   171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................................ 12

*In re Prudential Ins. Co. Am. Sales Practices Litig.,*
   148 F.3d 283 (3d Cir. 1998) ................................................................................................. 7

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,*
   No. 94 Civ. 5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ........................................ 9

*Robbins v. Koger Props., Inc.,*
   116 F.3d 1441 (11th Cir. 1997) .......................................................................................... 12

*Robinson v. Metro-North Commuter R.R.,*
   267 F.3d 147 (2d Cir. 2001) ............................................................................................... 16

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N.,*
   No. 01 Civ. 11814, 2003 WL 21058090 (S.D.N.Y. May 15, 2003) ..................................... 11

*Teamsters Local 445 Freight Div. Pension Fund v. Bombadier, Inc.,*
   No. 05 Civ. 1898 (SAS), 2006 WL 2161887 (S.D.N.Y. Aug. 1, 2006) .......................... 14, 19

*In re Telik, Inc. Sec. Litig.,*
   No. 07 Civ. 4819 (CM), 2008 WL 4198516 (S.D.N.Y. Sept. 10, 2008) ............................... 20

*United States v. New York City Bd. of Educ.,*
   85 F. Supp. 2d 130 (E.D.N.Y. 2000) ..................................................................................... 6

*In re Veeco Instruments, Inc. Sec. Litig.,*
   235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................................................ 16

*In re Visa Check/MasterMoney Antitrust Litig.,*
   280 F.3d 124 (2d Cir. 2001) .......................................................................................... 15, 19

*In re Vivendi Universal, S.A.,*
   242 F.R.D. 76 (S.D.N.Y. 2007) ..................................................................................... 18, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005) ................................................................................... 4, 5, 6, 13

*Winkler v. NRD Mining, Ltd.,*
   198 F.R.D. 355 (E.D.N.Y. Mar. 31, 2000) .......................................................................... 12

iv

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 ........................................................................................................ 16, 19

## DOCKETED CASES

*In re AIG ERISA Litig.*,
    No. 04 Civ. 9387 (JES) ................................................................................. 14

*In re Bristol-Myers-Squibb Sec.Litig.*,
    No. 00-1990 (D.N.J.)..................................................................................... 21

*In Re Countrywide Fin. Corp. Sec. Litig.*,
    No. 07-05295 (C.D. Cal.) .............................................................................. 21

*In re HealthSouth Corp. Sec. Litig.*,
    CV-03-BE-1500-S (N.D. Ala.) ...................................................................... 21

*Ohio Public Employees Ret. Sys. et al. v. Freddie Mac*,
    No. 03 Civ. 4261 (S.D.N.Y.)........................................................................ 17

*In re Vesta Ins. Group Sec. Litig.*,
    No. 98-1407 (N.D. Ala.)................................................................................ 21

*In re Waste Mgmt., Inc. Sec. Litig.*,
    No. H-99-2183 (S.D. Tex.)............................................................................ 21

## STATUTES

Fed. R. Civ. P. 23(e) ................................................................................... 4, 15, 18, 20

Fed. R. Civ. P. 23(g)(1)(B) ...................................................................................... 21

## PRELIMINARY STATEMENT

Pursuant to Rules 23(a), (b)(3) and (e) of the Federal Rules of Civil Procedure, the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio and the Ohio Police & Fire Pension Fund (collectively, "Lead Plaintiff" or the "Ohio State Funds"), as Court-appointed Lead Plaintiff in this case, respectfully submits this memorandum of law in support of:

> (1) final approval of the proposed settlement (the "Settlement") of claims against Defendant PricewaterhouseCoopers LLP ("PwC") in this proposed class action ("Action"), as set forth in the Agreement of Compromise and Settlement dated September 29, 2008 (the "Stipulation"), for $97.5 million;

> (2) certification of a settlement class (the "Settlement Class") of all persons who purchased or otherwise acquired the publicly traded securities of Defendant American International Group, Inc. ("AIG" or the "Company") during the period from Oct. 28, 1999 through April 1, 2005, inclusive (the "Class Period"),[1] and appointment of the Ohio State Funds as Class Representatives; and

> (3) approval of the proposed plan for the allocation of the net proceeds of the Settlement (the "Plan of Allocation").

The $97.5 million proposed Settlement with PwC, which served (and still serves today) as the independent auditor of AIG during the Class Period, is an outstanding result for the class and would be the *eighth largest settlement* entered into by an accounting firm to settle a securities fraud class action. If approved, the proposed Settlement will resolve all claims against PwC alleged in the Action and release all related claims.

This Action arises from, *inter alia*, material misstatements and omissions allegedly made by defendants[2] in connection with: (i) AIG's involvement in an illegal market division scheme with the Marsh & McLennan Companies, Inc. ("Marsh") and others in the insurance industry; (ii) a far-reaching accounting fraud scheme that led to AIG's massive $3.9 billion restatement of earnings in May 2005; and (iii) a market manipulation claim with respect to AIG and Defendant Maurice R. ("Hank") Greenberg. The price of AIG's stock fell at various times when the market division and accounting frauds were disclosed, resulting in

---

[1] Excluded from the Settlement Class are the defendants in the Action ("Defendants") and various entities and persons connected to them.

[2] All defendants other than PwC are referred to herein as the "Non-Settling Defendants."

significant damages to the class. Lead Plaintiff contends that during the Class Period, PwC certified that it had conducted its audits in accordance with Generally Accepted Auditing Standards ("GAAS") and had expressed its opinion that AIG's financial statements were presented in accordance with Generally Accepted Accounting Principles ("GAAP"), even though PwC knew – or was reckless in not knowing – that that was not the case. *See generally*, Consolidated Third Amended Complaint ("Complaint"), D.E. # 308.

Since its appointment as Lead Plaintiff on February 7, 2005, the Ohio State Funds have diligently pursued the claims against PwC. The Settlement follows nearly four years of litigation that included:

- Fully-briefed motion practice, on two separate occasions, to determine the lead plaintiff;

- Motions to dismiss filed by more than 20 defendants, all of which (except one) the Court denied in April and May 2006;

- The production and review of nearly 45 million pages of documents by defendants and non-parties, including more than 28 million pages produced by PwC; and

- More than 40 depositions conducted to date during class and fact discovery.[3]

The Settlement was reached after extensive arm's-length negotiations by experienced counsel who possessed a firm understanding of the settling parties' respective claims and defenses informed by more than two years of fact discovery in the Action, and after several in-person and telephonic negotiations and two full-day mediation sessions with the assistance of a renowned independent and impartial mediator, former federal judge Layn R. Phillips.

In view of the substantial recovery and the risks that Lead Plaintiff would face in trying to obtain a greater recovery for the Settlement Class through continued litigation and trial of the PwC claims, this Settlement constitutes an excellent result that should readily be approved by the Court as fair, reasonable and adequate.

### A.    Preliminary Approval and the Pre-Hearing Notice Program

In its Preliminary Approval Order, dated October 14, 2008, in addition to preliminarily approving the

---

[3] For a full recitation of the procedural and litigation history of the Action, the Court is respectfully referred to the Dubbs Decl.

Settlement, the Court also approved the Notice of Proposed Settlement, Motion for Attorneys' Fees and

Expenses Award and Fairness Hearing ("Notice"), Proof of Claim form ("Proof of Claim") and Summary

Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice") for dissemination to the

Settlement Class.  A copy of the Preliminary Approval Order is attached as Exhibit 1 to the accompanying

Declaration of Thomas A. Dubbs, dated January 13, 2008 (the "Dubbs Decl.").[4]   Copies of the printed

notices, including the Proof of Claim form, are attached as Exs. A and B to the Affidavit of Peter Craig, dated

January 13, 2009 ("CCS Aff.").  *See* Dubbs Decl. Ex. 2.  The Court also approved Complete Claim Solutions,

LLC ("CCS") as the Administrator of the Settlement and set a hearing for January 20, 2009 (the "Fairness

Hearing") to consider the fairness, reasonableness and adequacy of the Settlement and the Plan of Allocation.

In compliance with the Preliminary Approval Order, under the supervision of counsel, the

Administrator mailed copies of the Notice and Proof of Claim to (i) all potential members of the Settlement

Class who could be reasonably identified and (ii) known brokers/nominees who may have purchased AIG

Securities[5] for the beneficial interest of individual investors.  *See* Dubbs Decl. Ex. 2 ¶¶ 3-16.  To date, the

Administrator has mailed more than two million notice packets containing the Notice and Proof of Claim

forms to potential Settlement Class Members and brokers/nominees.  *Id.* ¶ 16.

In addition, the Publication Notice was published in *The Wall Street Journal* and transmitted over PR

Newswire and Bloomberg News Services on separate days, within 14 days of October 20, 2008.  *Id.* ¶ 6.  The

Notice and Proof of Claim form were also posted on Co-Lead Counsel's website and the Administrator's

website for easy downloading by interested investors.  Dubbs Decl. ¶ 13.

---

[4] All exhibits referenced in Lead Plaintiff's submissions in connection with approval of the Settlement
are annexed to the Dubbs Decl.  For clarity, citations to exhibits that themselves have attached exhibits, will
be referenced as "Ex. ___ - ___."  The first numerical reference refers to the designation of the entire exhibit
attached to the Dubbs Decl. and the second reference refers to the exhibit designation within the exhibit itself.

[5] As explained in the Notice, "AIG Securities" are all publicly-traded securities issued by AIG, whether
debt or equity securities, such as AIG common stock, options on AIG common stock, Zero Coupon
Convertible Senior Debentures, 0.5% Cash Exchangeable Equity-Linked Senior Notes, 2.85% Medium-Term
Notes, Series F, 2.875% Notes (144A securities) that were exchanged into registered like coupon bonds and
4.25% Notes (144A securities) that were exchanged into registered like coupon bonds.  *See* Ex. 2-A at 4.

The Notice described, *inter alia*, the claims asserted in this Action, the contentions of the settling parties, the course of litigation, the terms of the Settlement with PwC, the Plan of Allocation, the right to object to the Settlement and the right to seek to be excluded from the Settlement Class.  The deadline for objecting or seeking exclusion was December 30, 2008.  The Notice also advised potential Settlement Class members of the scheduled Fairness Hearing, and of Co-Lead Counsel's intention to seek an award of attorneys' fees that would not exceed 9% of the gross settlement fund ("Cash Settlement Account") and reimbursement of expenses not to exceed $6 million, plus interest. (In fact, as set forth in the Memorandum of Law in Support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and Lead Plaintiff's Request for Reimbursement of Expenses, Counsel are requesting only 6% of the gross settlement fund as attorneys' fees and only approximately $4.87 million in reimbursement of expenses.) In addition, the Notice informed Settlement Class members that Lead Plaintiff could seek up to $30,000 for its reasonable costs and expenses.

In light of the outstanding result and the opportunity for an immediate cash recovery for hundreds of thousands of Settlement Class members, Lead Plaintiff now respectfully asks this Court to: (1) enter the proposed Order and Final Judgment as to PricewaterhouseCoopers LLP ("Judgment"), submitted herewith; (2) finally certify the proposed Settlement Class; and (3) enter the proposed Order Approving Plan of Allocation, also submitted herewith.

## <u>ARGUMENT</u>

## II.     <u>THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE, AND SHOULD THEREFORE BE APPROVED</u>

A settlement of claims brought by a class is subject to approval by the Court after reasonable notice and a hearing.  Fed. R. Civ. P. 23(e).  A settlement will be approved if it is "fair, adequate, and reasonable, and not a product of collusion."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  This determination falls within a court's sound discretion.  *See Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000).  In exercising such discretion, a court should be mindful of the "strong judicial policy in favor of settlements, particularly in the class action context."  *Wal-Mart*, 396 F.3d at 116 (quoting *In re PaineWebber*

*Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D.

436, 455 (S.D.N.Y. 2004) (Lynch, J.) ("[F]ederal courts favor settlement, especially in complex and large-

scale disputes, so as to encourage compromise and conserve judicial and private resources. Accordingly, this

Court will take into consideration such public policy concerns in exercising its discretion.").

A court determines the fairness of a settlement by looking at both its terms and the negotiation

process leading up to it. *See Wal-Mart*, 396 F.3d at 116. With respect to process, a class action settlement

enjoys a strong "presumption of fairness" where it is the product of arm's-length negotiations conducted by

experienced, capable counsel after meaningful discovery. *Id.*; *see also Global Crossing*, 225 F.R.D. at 461.

With respect to the substantive terms of a settlement, the standards governing approval are well-established.

Courts in this Circuit examine the fairness, adequacy and reasonableness of a class action settlement utilizing

the "*Grinnell* factors," to the extent they are applicable:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class
> to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4)
> the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of
> maintaining the class action through the trial; (7) the ability of the defendants to withstand a
> greater judgment; (8) the range of reasonableness of the settlement fund in light of the best
> possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the
> attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 454 (2d Cir. 1974)). To

support a finding that a settlement is fair, not every factor must weigh in favor of the settlement, but "rather

the court should consider the totality of these factors in light of the particular circumstances." *Global

Crossing*, 225 F.R.D. at 456.[6]

Moreover, in applying the *Grinnell* factors, a court should not substitute its judgment for those of the

parties who negotiated the settlement, or conduct a "mini-trial" of the merits of the action. *See Carson v.

American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("Courts judge the fairness of a proposed compromise by

weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered

in the settlement … . They do not decide the merits of the case or resolve unsettled legal questions."). "[T]he

---

[6] Here, the ability of PwC to withstand a greater judgment was not an issue in negotiating the Settlement.

essence of a settlement agreement is compromise. … a yielding of absolutes and an abandoning of highest hopes." *United States v. New York City Bd. of Educ.*, 85 F. Supp. 2d 130, 157 (E.D.N.Y. 2000), *vacated on other grounds*, *Brennan v. New York City Bd. of Educ.*, 260 F.3d 123 (2d Cir. 2001).  As such, a court must assess the settlement as presented, without modifying its terms and without substituting its "business judgment for that of counsel, absent evidence of fraud or overreaching."  *Global Crossing*, 225 F.R.D. at 455.

As discussed below, Lead Plaintiff submits that the proposed Settlement with PwC is eminently fair, reasonable and adequate.  All settling parties have thoroughly weighed the strengths and weaknesses of the claims and defenses and, after extensive litigation efforts and negotiations facilitated by a former federal judge, have reached an informed and carefully crafted compromise.

A. **The Settlement Is Entitled to a Presumption of Fairness**

As noted above, a strong presumption of fairness attaches to a class action settlement reached in arm's-length negotiations among able counsel after meaningful discovery.  *See Wal-Mart*, 396 F.3d at 116. "'[G]reat weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) (McMahon, J.).

A presumption of fairness is appropriate here.  As is discussed in detail in the Dubbs Decl. ¶¶ 34-86, by the time the settling parties reached the Settlement, Lead Plaintiff had: opposed motions to dismiss by more than 20 defendants, including PwC; completed class discovery, involving more than two dozen depositions, including depositions of three experts; moved for class certification and produced an expert declaration concerning market efficiency and loss causation; and completed a substantial amount of fact discovery, including the review and analysis of nearly 45 million pages of documents (more than 28 million of which were produced by PwC alone) and the depositions of more than a dozen fact witnesses. Co-Lead Counsel has also spent considerable time consulting with insurance experts and accounting experts in formulating their litigation and mediation strategies.  After briefing the dispositive motions, completing the discovery described above, and preparing for mediation, the settling parties participated in conferences and two days of intense mediation before a highly experienced, impartial and independent mediator, Judge

Phillips.  Thus, at the time the agreement in principle was reached, Lead Plaintiff and Co-Lead Counsel were fully aware of the strengths and weaknesses of the claims against PwC.

Further, Judge Phillips' active supervision and facilitation of the parties' negotiations also strongly supports a presumption that the Settlement is fair.  *See In re Delphi Corp. Securities, Derivative & "ERISA"*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (speaking of Judge Phillips, "the Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions, who acted as Special Master in the settlement negotiations."); *see generally*, *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194 & n.42 (S.D.N.Y. 2005) (Scheindlin, J.) (where negotiations were facilitated by former judge, settlement was "clearly the result of arm's-length bargaining"); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 181 (E.D.N.Y. 1999) (approving settlement facilitated by an "arms-length negotiations before a respected neutral mediator").

Indeed, there is no suggestion that collusion played any part in reaching this Settlement.  To the contrary, counsel for both sides were determined and zealous in their representation of their clients.  *See Global Crossing*, 225 F.R.D. at 461 (approving a settlement upon finding that "[b]oth sides have been represented well [by counsel].")  Therefore, the Court should accord a presumption of fairness to the Settlement in considering the substantive *Grinnell* factors discussed below.

**B.**      **The Settlement Satisfies the *Grinnell* Factors**

        **1.**      **Ongoing Litigation Would Be Complex, Expensive, and Lengthy**

This litigation has been challenging and complex, and vigorously prosecuted and defended.  *See generally* Dubbs Decl.  Without the Settlement, the prosecution of the claims against PwC would require extensive additional fact and expert discovery, the inevitable *Daubert* motions, summary judgment briefing, and, of course, trial preparation and a trial, which would likely last for more than a month.  These efforts would require additional large expenditures over an extended period, after which the Settlement Class might obtain a result far less beneficial than the one provided by the Settlement.  *See In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement favored where "trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties

and the court"). If this case were to proceed to trial, the jury would have to assimilate intricate facts and complex accounting rules in order to understand the nexus between PwC's conduct, the alleged securities laws violations and the Class's injury. Accordingly, a favorable outcome for the Settlement Class was far from assured.

Moreover, in light of the vigorously contested nature of the PwC claims and the complexity of the accounting and contingent commission/bid-rigging issues in this case, a judgment favorable to the Settlement Class would undoubtedly have been the subject of post-trial motions and appeals. By contrast, the Settlement offers the certainty of a prompt payout from the Cash Settlement Account. *See Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) (Holwell, J.) ("Further litigation would necessarily involve further costs [and] justice may best be served with a fair settlement today as opposed to an uncertain future settlement or trial of this action."); *Klein ex rel. IRA v. PDG Remediation, Inc.*, No. 95 Civ. 4954 (DAB), 1999 WL 38179, at *2 (S.D.N.Y. Jan. 28, 1999) (Batts, J.) (considering complexity, expense and duration of litigation, settlement that "offer[ed] Class members the benefit of immediate recovery as opposed to an uncertain award several years from now" was preferred outcome). Accordingly, the first *Grinnell* factor favors approval.

### 2. The Lack of Settlement Class Opposition

Despite the dissemination of more than **two million** notice packets, only **four** "objections" by putative Settlement Class members to the Settlement and/or the proposed award of attorneys' fees and expenses have been filed or received. Of these, two are more properly characterized as general criticism of securities class actions as a whole and they do not raise any issues specific to this Settlement. The remaining two objections were filed by counsel who are "professional objectors," one of whom represents an "objector" who lacks standing to object because she is not a Settlement Class Member. All of the "objections" are annexed to the Dubbs Decl. as Exhibits 7 to 10 and none cast doubt on whether the Settlement should be approved. Significantly, the settling parties have not received **even one** objection to the Settlement or to the attorneys' fee request by an institutional investor, and no one has objected to the Plan of Allocation or to Lead Plaintiff's request for reimbursement of expenses. Maurice ("Hank") R. Greenberg and certain related

defendants also object to limited portions of the "bar order" in the proposed Judgment. All of these "objections" are addressed in Lead Plaintiff's Memorandum of Law in Response to Objections Concerning the Proposed Settlement With Defendant PricewaterhouseCoopers LLP, filed herewith.

Both the Notice and Publication Notice also advised members of the Settlement Class of their right to request exclusion from the Settlement Class and the procedures for doing so. To date, 100 timely and 5 untimely requests for exclusion have been received. Dubbs Decl. Ex. 2 ¶19; Ex. 2-D, E, F. However, 39 of the timely requests were not documented as required and are therefore invalid.

*In all, 61 timely and valid requests for exclusion were received, representing 26,098 shares of stock (which is only approximately .001005% of the total number of shares of AIG common stock outstanding as of April 1, 2005 (2,594,907,032 shares)* .[7]

In sum, "'the absence of objectants may itself be taken as evidencing the fairness of a settlement'." *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003) (Leisure, J.) (*citing Ross v. A.H. Robins Co.*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988)) (Motley, J.); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) (approving settlement where only 20 objectors appeared from group of 14,156 claimants); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478-80 (S.D.N.Y. 1998) (Sweet J.) (approving settlement where "miniscule" percentage of the class objected).

### 3.    The Settling Parties' Decision to Settle Is Well Informed

Courts consider the stage of the proceedings and the amount of discovery completed to assess whether the parties had sufficient information to make informed decisions with respect to settlement. *See Marisol A. ex rel v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y. 1999) (Ward, J.), *aff'd sub nom. Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000). Here, there can be no question that Lead Plaintiff and Co-Lead

---

[7] After reviewing the number of exclusion requests, counsel for the settling parties have determined that the provisions of the Supplemental Agreement, referenced in the Stipulation of Settlement, concerning termination of the Settlement if a certain threshold of exclusions were received, have not been met.

Counsel agreed to mediate, and later entered into the Settlement, only after developing a thorough understanding of the strengths and weaknesses of the claims asserted in the Action.

As detailed in the Dubbs Decl. (¶¶ 70-72), even aside from formal discovery, counsel conducted an extensive investigation over the span of 2 years to, among other things, locate and interview numerous former AIG employees and knowledgeable persons within the insurance industry. Numerous potential witnesses were located and contacted. Lead Plaintiff also served document requests on each of the Defendants and served more than 50 additional document subpoenas on non-parties, including Marsh, other insurance brokers and other companies within the insurance industry. Overall, by the time the Settlement was reached approximately 45 million pages of documents were produced and reviewed by Co-Lead Counsel. The parties also served and responded to interrogatories and requests for admission. More than a dozen depositions were taken of fact witnesses. Dubbs Decl. ¶¶ 73-86.

Lead Plaintiff's and Co-Lead Counsel's understanding of the claims against PwC was further informed by hundreds of pages of briefing on each of the Defendants' motions to dismiss and by Lead Plaintiff's motion for class certification, as well as the mediation preparation and the mediation itself. Dubbs Decl. ¶¶ 41-69, 87. Accordingly, Lead Plaintiff and Co-Lead Counsel had a very well-founded understanding of the merits of the claims, warranting approval of the Settlement. *See Global Crossing*, 225 F.R.D. at 458 (plaintiffs "had the requisite information to make informed decisions about the relative benefits of litigating or settling" where they reviewed documents concurrently with settlement discussions). Lead Plaintiff's fully informed decision to enter into the Settlement favors approval.

### 4. There Were Significant Risks in Establishing PwC's Liability

In analyzing the risks concerning liability, the Court need not "decide the merits of the case or resolve unsettled legal questions." *Cinelli v. MCS Claim Servs., Inc.*, 236 F.R.D. 118, 121 (E.D.N.Y. 2006). Rather, the Court weighs the likelihood of success on the merits against the relief brought by the Settlement. *Id.* Courts routinely approve settlements where plaintiffs would have faced significant legal and factual obstacles to establishing liability. *See Global Crossing*, 225 F.R.D. at 459.

The claims against PwC presented significant risks. Issues of proof in such a case are complicated by the fact that the fraud alleged is, at its crux, a violation of complex accounting rules, which might not be easily understood by a jury. For example, certain PwC claims arose out of complicated reinsurance transactions typically involving off-shore reinsurance companies and actuarial calculations in analyzing the risk or lack of risk in those transactions. Dubbs Decl. ¶¶ 93-94. Moreover, the vast number of different accounting issues would also have been a significant hurdle to be overcome with the jury. (AIG's restatement affected more than **two-dozen different types** of transactions.) Further, there were significant challenges to tying PwC to AIG's false statements related to the contingent commission and bid-rigging allegations, which were not restated.

Proving PwC's scienter to the jury would also have been challenging for the Settlement Class. To establish liability, a plaintiff must show at least severe recklessness on the part of the auditor. An auditor's recklessness can be demonstrated by a showing that it, *inter alia*, ignored red flags during the course of its audit. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N.*, No. 01 Civ. 11814, 2003 WL 21058090, at *11 (S.D.N.Y. May 15, 2003) ("Allegations that multiple red-flags were ignored in performing the audits can reasonably support an inference of intent."). Lead Plaintiff believed it had persuasive evidence of PwC's knowledge of the alleged fraud and numerous "red flags" showing the deficiencies of its audits. However PwC would have argued that, at most, the evidence showed negligence, which is not actionable under the securities laws.[8] The jury likely would have been confronted with contrary testimony from both fact and expert witnesses about the meaning of the documentary evidence, the accounting rules and the role of an outside auditor. Moreover, it must be noted that the government and regulators have **not** sued PwC for its part in the alleged fraud at AIG. Dubbs Decl. ¶¶ 92-95. Further, after a public request for proposal ("RFP") process overseen by Arthur Levitt, Jr., former Chairman of the United States Securities and Exchange

---

[8] PwC would also have pointed to AIG's Form 10-K for the year 2004 and argued that prior management concealed material facts not only from investors, but from PwC itself. *See, e.g.,* 2004 Form 10-K at 33, "Such determination was based, in part, on arrangements and documents, including put agreements requiring an AIG subsidiary to purchase the Richmond shares, that appear not to have been previously disclosed to appropriate AIG financial personnel or AIG's independent auditors."

Commission, AIG's independent corporate governance consultant, PwC was hired to continue as AIG's outside auditor.  *Id*. at ¶ 92.

Thus, it was far from clear that the jury would have found PwC liable.  Dubbs Decl. ¶¶ 90-97.  There was also a further risk that any finding against PwC could have been overturned on appeal.  Numerous cases continue to demonstrate the enormous risks associated with prosecuting securities class actions.[9]

Given the uncertain prospects of success at trial and on any appeal as to the claims against PwC, settlement at this time is highly beneficial to the Settlement Class.  The Settlement will provide tangible and certain relief to the Settlement Class now, and "without subjecting them to the risks, complexity,  duration and expense of continuing litigation."  *Global Crossing*, 225 F.R.D. at 456-57; *see also Maley*, 186 F. Supp. 2d at 362 ("Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay of trial.  These factors weigh in favor of the proposed Settlement.").

### 5.        The Class Faced Risks in Establishing Damages

Damages issues in securities litigation are often reduced to a "battle of the experts," which could lead the jury in this Action to minimize the Settlement Class's proffered losses caused by PwC's participation in the alleged fraud.  *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) (Stein, J.) (noting unpredictability of outcome of a battle of damage experts), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  While no expert reports on damages have been produced at this stage of the case, the Non-Settling Defendants' expert declarations produced as part of class certification discovery are illustrative of the challenges that the Settlement Class would have had to overcome to recover from PwC.  Dubbs Decl. ¶¶ 96-97.

For example, Defendants' experts are prepared to testify that AIG's stock drops following disclosures could not be used to show loss causation.  *Id*. ¶ 96.    Lead Plaintiff and Co-Lead Counsel strongly believe

---

[9]    For example, earlier this year, a jury verdict for the plaintiffs was overturned by the trial court on loss causation grounds in *In re Apollo Group, Inc. Securities Litigation*, No. CV 04-2147, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008).  *See also AUSA Life Ins. Co. v. Ernst & Young*, No. 00-9472, 2002 WL 1467546 (2d Cir. July 8, 2002) (affirming district court's dismissal after a full bench trial); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y. Mar. 31, 2000) (granting defendants' motion for judgment as a matter of law after jury verdict for plaintiffs); *Robbins v. Koger Props., Inc.,* 116 F.3d 1441 (11th Cir. 1997) (jury damages award of more than $81 million for plaintiffs reversed on appeal for failure to prove loss causation).

that loss causation and resulting damages can be established with respect to the PwC claims (and all other claims as well). *See* "Declaration of John D. Finnerty, Ph.D. in Support of Lead Plaintiff's Motion for Class Certification" and "Rebuttal Declaration of John D. Finnerty." Ph.D. *Id.* ¶ 97; D.E. #356 at Ex. 2; #446 at Ex. 26.

However, Lead Plaintiff recognizes that at summary judgment or trial the finder of fact could credit PwC's experts over those of the Settlement Class and determine that the class suffered no (or only modest) recoverable damages. *See, e.g., Gordon Partners v. Blumenthal*, No. 02-7377 (LAK) (AJP), 2007 WL 431864 (S.D.N.Y. Feb. 9, 2007) (Peck J.) (granting motion for summary judgment for, *inter alia*, failure to demonstrate loss causation); *In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554 (S.D.N.Y. 2008) (Pauley, J.) (same). This *Grinnell* factor strongly favors approval of the Settlement.

### 6.  The Settlement Amount Is More Than Reasonable

The eighth and ninth *Grinnell* factors, the range of reasonableness of the recovery also strongly weigh in favor of approving the Settlement.  The $97.5 million Settlement is a very significant recovery that falls well within the range of reasonableness when weighing potential recoveries and all the risks of proceeding with the claims against PwC.  *See Wal-Mart*, 396 F.3d at 119 ("there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion") (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Based on a comprehensive review of settlements in securities cases, our understanding is that the proposed Settlement would be the eighth largest settlement ever by an auditor in a securities class action and the fourth largest settlement ever by an auditor in a securities class action where the auditor had not been sued by the government in connection with the audits at issue.  To further put the significance of the Settlement into perspective, the most recent annual study by Cornerstone Research[10] found that the median of all

---

[10] In addition to providing expert testimony and financial analysis, Cornerstone, together with Stanford Law School, cosponsors the Securities Class Action Clearinghouse, a leading source of data and analysis on federal securities fraud class action litigation. *See* http://securities.stanford.edu/.

securities class action settlements in 2007 was $9 million. (The Cornerstone report also indicates that through 2007, cases litigated by Labaton Sucharow LLP secured the highest median percentage of recovery among major firms.) *See* Cornerstone Research, *Securities Class Action Settlements: 2007 Review and Analysis*, at 2 and 14, Dubbs Decl. Ex. 14. Likewise, a recent study by NERA Economic Consulting reported that between 2002 and 2007 the median settlement amount in securities fraud class actions was $6.8 million and the median in 2007 was $9.6 million. *See* Stephanie Plancich, Brian Saxton & Svetlana Starykh, *Recent Trends in Shareholder Class Actions: Filings Return to 2005 Levels as Subprime Cases Take Off; Average Settlements Hit New High* (NERA Dec. 2007), Dubbs Decl. Ex. 15 at 13-14.

Viewed in light of the significant risks discussed above and in the Dubbs Decl. ¶¶ 90-97, and compared to the size of median securities class action settlements, the Settlement clearly represents an excellent result for the Settlement Class. In sum, Lead Plaintiff and Co-Lead Counsel submit that the Settlement is eminently fair, adequate and reasonable in light of the best possible recovery and all of the risks of litigation, and should be approved. The last two *Grinnell* factors clearly weigh in favor of approval.

## III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

On July 1, 2008, Judge Sprizzo preliminarily certified a settlement class in *In re AIG ERISA Litigation*, No. 04 Civ. 9387 (JES) (AJP) (S.D.N.Y.), a related litigation with nearly identical underlying facts (*i.e.*, class members' alleged injuries from both the Market Division and Accounting Frauds), and time periods, as in this case. The ERISA Class was finally certified (and the settlement approved) by Judge Duffy on October 8, 2008. Just as the ERISA Class was certified for settlement purposes in that related case, this Court should certify the settlement class here.

### A.    Standards Applicable to Class Certification

In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification. *In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013 (LAK) (AJP), 2006 WL 330113, at *4 (S.D.N.Y. Feb. 14, 2006) (Peck, J.) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). This "liberal standard is in accord with this Circuit's preference for the use of class actions in securities law claims." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210

F.R.D. 476, 479 (S.D.N.Y. 2002) (Scheindlin, J.)  Accordingly, doubts as to whether or not to certify a class action should be resolved "in favor of allowing the class to go forward."  *Id.*  In determining class certification, "the question is not whether the plaintiff or plaintiffs . . . will prevail on the merits, but rather whether the requirements of Rule 23 are met."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir. 2001) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)).

 **B.**  **This Action Meets the Requirements of Rule 23(a)**

  **1.**  **Rule 23(a)(1): The Class Is Numerous**

 Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. This rule does not require that joinder of all parties be impossible, only that it be difficult or inconvenient.  *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 84 (S.D.N.Y. 2007) (Scheindlin, J.).  Although "precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts, numbers in excess of forty generally satisfy the numerosity requirement."  *Id.*

 Here, there can be no dispute that the putative class satisfies numerosity and consists of (at least) tens of thousands of investors.  As of September 30, 2004, a date within the Class Period, AIG had more than *2.6 billion* shares of common stock outstanding.  AIG common stock was actively traded on the New York Stock Exchange throughout the Class Period, with more than *7.6 billion* shares traded during the Class Period.  *See* Complaint ¶153.  Common sense dictates that these shares were purchased by (at least) tens of thousands of investors, making joinder impracticable.  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) (Brieant, J.) ("[B]ecause Oxford stock was traded in high volume during the class period, the precise number of class members could be, and very likely is, numbered in the thousands.").  Indeed, to date more than 28,729 investors have sent in claim forms to the Administrator.  Dubbs Decl. Ex. 2 ¶ 17. Accordingly, the numerosity factor is satisfied.

  **2.**  **Rule 23(a)(2): Questions of Law and Fact Are Common**

 Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality does not mean that all class members must make identical claims and arguments,

but only that "plaintiff's grievances share a common question of law or fact." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001). And "[w]here, as here, there exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail." *Oxford*, 191 F.R.D. at 374 (finding commonality with respect to securities claims).

Common questions of both law and fact abound in this case. The central questions of whether PwC made material misstatements of fact and/or omissions in documents filed publicly with the SEC, and whether PwC did so with the requisite mental state, are the same for each class member. Therefore, the claims of each class member arise from the same operative facts and share the same legal theories. *See, e.g., In re Flag Telecom Holdings Ltd., Sec. Litig.*, 245 F.R.D. 147, 158 (S.D.N.Y. 2007) (Conner, J.) (finding common issues as to violations of federal securities laws, misrepresentations and omissions of material fact, scienter, and damages satisfy commonality); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (Cote, J.) (certifying class with claims against issuer, officers, auditors and underwriters where "nature and extent of the misrepresentations, of the accounting fraud and of the *quid pro quo* relationship pose common questions of fact. . . .) As the court stated in *Oxford*, "[w]here the facts alleged show that [d]efendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met." 191 F.R.D. at 374.

### 3.  Rule 23(a)(3): Plaintiffs' Claims Are Typical

Rule 23(a)(3), the typicality requirement, is satisfied when the plaintiff shows that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol*, 126 F.3d at 376. Typicality does not require, however, "that the situations of the named representative and the class members [be] identical." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (McMahon, J.). Rather, this requirement is satisfied so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *WorldCom,* 219 F.R.D. at 280 (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1993)). Moreover, the typicality and

commonality requirements "tend to merge" in securities cases, suggesting that typicality generally will be found if commonality is found. *Marisol*, 126 F.3d at 376.

Here, Lead Plaintiff's claims are identical to those of the other members of the class. Lead Plaintiff, like all class members, purchased AIG's publicly traded securities at artificially inflated prices during the Class Period and claim to have suffered damages because of PwC's alleged material misstatements and omissions. Dubbs Decl. ¶¶ 17-19. Accordingly, the legal theories and evidence Lead Plaintiff will advance to prove its claims will simultaneously advance the claims of other class members. The typicality requirement is met.

### 4. Rule 23(a)(4): The Ohio State Funds Will Adequately Protect the Class

Rule 23(a)(4), the adequacy of representation requirement, entails two showings: (i) class counsel must be qualified, experienced and generally able to conduct the litigation; and (ii) the representative plaintiff's interests must not be antagonistic to those of the remainder of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). *First,* Labaton Sucharow and Hahn Loeser, Court-appointed Co-Lead Counsel for Lead Plaintiff, are amply qualified, experienced and able to conduct this litigation vigorously and effectively, and have zealously and ably represented Lead Plaintiff on behalf of the proposed class for the last three and one-half years. Dubbs Decl. Ex 19; 20-C; *see also* Section C(3) *infra*.

*Second,* there is no conflict or antagonism between the claims of the proposed class representative and those of the other members of the proposed class. Moreover, the Ohio State Funds – three large institutional investors with collective assets of approximately $130 billion and proven track records of successfully pursuing securities class claims (including a $410 million settlement in *Ohio Public Employees Retirement System et al. v. Freddie Mac*, No. 03 Civ. 4261 (S.D.N.Y.), approved by Judge Sprizzo in October 2006) – are committed to monitoring Lead Counsel and prosecuting this action vigorously, as indicated by their direct involvement in the litigation to date (and also in the mediation that led to this settlement). Dubbs Decl. ¶¶ 17-23.

Given that no conflicts exist between Lead Plaintiff's interests and those of other class members, and their counsel are able and competent lawyers in this area of practice, the adequacy of representation requirement is met.

### C.  This Action Meets the Requirements of Rule 23(b)(3)

#### 1.  Common Questions of Law or Fact Predominate

Rule 23(b)(3) sets forth two requirements, the first being that the questions of law or fact common to the members of the class must "predominate" over any questions affecting only individual members.  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  The Supreme Court expressly recognized that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud[.]"  *Id.* at 625.

The Second Circuit has stated that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  This is undoubtedly true here.

For example, the common questions of law and fact noted above clearly predominate over any conceivable individual question, because PwC's alleged false statements affected all class members in the same manner (*i.e.*, through documents publicly filed with the SEC) and generalized proof will be necessary with respect to the issues of whether: (1) PwC made misleading statements and/or omissions; (2) such misstatements and/or omissions were material to AIG's investors; and (3) PwC possessed the requisite scienter.  *See Dietrich v. Bauer*, 192 F.R.D. 119, 127-28 (S.D.N.Y. 2000) (Sweet, J.) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues.").  In other words, all class members suffered the same kinds of harm, pursuant to the same legal theories, and arising out of the same alleged common course of conduct.  *See In re Vivendi Universal, S.A.*,

242 F.R.D. 76, 90-91 (S.D.N.Y. 2007) (Holwell, J.) (finding predominance satisfied by allegations of defendants' false and misleading statements, scienter, reliance and causation); *WorldCom,* 219 F.R.D. at 288 (in certifying claims against auditors and others, reasoning that "[a] description of the statutes and their elements illustrates why the common questions will overwhelm the proof and legal issues at trial.").[11]

Moreover, whether any class member relied on a particular misrepresentation or omission does not raise individual issues in this case because reliance is presumed pursuant to (i) *Basic*'s fraud on the market doctrine, and (ii) *Affiliated Ute*'s presumption of reliance on material omissions, with either presumption sufficient to satisfy this element. The fraud on the market doctrine, as enunciated by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), dispenses with the requirement that an investor prove awareness or reliance of a particular statement. *Id.* at 241-42. In order to be entitled to the *Basic* presumption of reliance, the market for the security must be "efficient." *Id.* at 247. Here, the Court can *presume* that AIG common stock traded in an efficient market because it traded on the New York Stock Exchange. *See*, *e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v. Bombadier, Inc.*, No. 05 Civ. 1898 (SAS), 2006 WL 2161887, at *8 (S.D.N.Y. Aug. 1, 2006) (Scheindlin, J.) ("If, for example, a security is listed on the NYSE, AMEX, NASDAQ, or a similar national market, the market for that security is presumed to be efficient."). Moreover, the market for AIG Securities meets the efficiency factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989).[12]

Similarly, reliance is presumed to the extent that the claims are based on omissions of material facts. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972) ("[P]ositive proof of reliance is not a

---

[11]   Indeed, the sole question of law or fact here that is not subject to "generalized proof" is the amount of each Class member's damages, which can be calculated relatively easily. Individual questions of damages, however, are obviously found in every securities class action and are no bar to class certification. *See, e.g., Visa Check*, 280 F.3d at 136; *Oxford*, 191 F.R.D. at 378.

[12]   AIG Securities were listed and actively traded on the NYSE, with more than 7.6 billion shares of common stock changing hands during the Class Period. *See* Complaint ¶ 153. As a regulated issuer, AIG regularly made public filings with the SEC. It actively communicated with the market through established market communications mechanisms and was actively followed and reported on by major securities brokerages and analysts. *Id.* at ¶¶ 179-221, 812-1018.

prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.").

### 2. A Class Action Is a Superior Mechanism

Finally, Rule 23(b)(3) also requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy.  This is self-evident here.  Courts find that the superiority requirement is satisfied where:

> The potential class members are both significant in number and geographically dispersed.  The interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions.

*Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001) (Cote, J.).  Here, Settlement Class members who have been injured number in (at least) the tens of thousands, but very few were damaged to a degree that would induce them to institute litigation on their own behalf.  *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) (Sweet, J.).  (In fact, to date only a single class member has filed an individual case.)

Further, certification of the Settlement Class is the superior method to facilitate the resolution of Lead Plaintiff's claims.  Without the settlement class device, PwC could not obtain a class-wide release, and therefore would have little, if any, incentive to enter into the Settlement.  Moreover, certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.  *See In re Telik, Inc. Sec. Litig.*, No. 07 Civ. 4819 (CM), 2008 WL 4198516, at *12 (S.D.N.Y. Sept. 10, 2008) (McMahon, J.).  Resolution of Lead Plaintiff's claims against PwC through the proposed Settlement Class is plainly superior to any other available method of resolution.

For all of the foregoing reasons, this Court should find that this Settlement Class meets the requirements of both Rule 23(a) and 23(b) and should certify the Settlement Class.

### 3. Co-Lead Counsel Should Be Appointed Class Counsel

Rule 23(g)(1) of the Federal Rules states that "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  Lead Plaintiff respectfully requests that Labaton Sucharow and Hahn Loeser, Court-appointed Co-Lead Counsel for Lead Plaintiff, be appointed class counsel for the Settlement Class.  As discussed above, these firms will continue to fairly and adequately represent the Settlement Class.

Proposed class counsel are knowledgeable about the applicable law and experienced in handling class actions, have performed substantial work in vigorously pursuing the Settlement Class's claims here, and have committed substantial resources to representing the Settlement Class.  *See* Fed. R. Civ. P. 23(g)(1)(B).

Labaton Sucharow is among the nation's preeminent law firms in this area of practice and has served as lead or co-lead counsel on behalf of major institutional investors in numerous class actions since the enactment of the Private Securities Litigation Reform Act ("PSLRA"), including *In Re Countrywide Financial Corporation Securities Litigation*, No. 07-05295 (C.D. Cal.) (representing New York State and Local Retirement Systems, the New York State Common Retirement Fund, and New York City Pension Funds); *In re HealthSouth Corporation Securities Litigation*, CV-03-BE-1500-S (N.D. Ala.) (representing New Mexico State Investment Council and the Educational Retirement Board of New Mexico); *In re Waste Management, Inc. Securities Litigation*, No. H-99-2183 (S.D. Tex.) (representing Connecticut Retirement Plans and Trust Funds); *In re Bristol-Myers-Squibb Securities Litigation*, No. 00-1990 (D.N.J.) (representing Amalgamated Bank); and *In re Vesta Insurance Group Securities Litigation*, No. 98-1407 (N.D. Ala.) (representing Florida State Board of Administration).  Dubbs Decl. Ex. 19.

Hahn Loeser, one of Ohio's largest and most respected law firms, is eminently (and equally) qualified to serve as class counsel and represent the interests of Lead Plaintiff and the class.  Hahn Loeser has served as lead counsel in, and has also defended, many class actions in the securities area, as well as in the areas of banking law, privacy, real estate, and antitrust law.   Dubbs Decl. Ex. 20 - C.

## IV.    THE PLAN OF ALLOCATION SHOULD BE APPROVED

"When formulated by competent and experienced class counsel," a plan for allocation of net settlement proceeds "need have only a reasonable, rational basis."  *Global Crossing*, 225 F.R.D. at 462.  A reasonable plan may consider the relative strength and values of different categories of claims.  *Id.*; *see also In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 595-96 (S.D.N.Y. 1992) (plan of allocation that distributes greater part of settlement proceeds to those most injured is reasonable).

Lead Plaintiff respectfully submits that the Plan of Allocation, fully described in the Notice, should be approved as it provides a fair and equitable method of dividing the Settlement funds among Settlement Class

members who submit timely and valid Proof of Claim forms ("Authorized Claimants"), consistent with governing law. The Settlement Class was informed that they had an opportunity to object to the Plan of Allocation no later than December 30, 2008 and to date, Lead Plaintiff and Co-Lead Counsel are aware of ***no such objections***. Dubbs Decl. ¶99; Exs. 7-10. The Plan of Allocation is predicated on: (1) the Supreme Court's decision in *Dura Pharmaceuticals* and its progeny; (2) the timing of the alleged corrective disclosures during the Class Period; and (3) the type of security purchased. It was developed by the Settlement Class's non-testifying damages experts, Dr. Scott D. Hakala and Frank C. Torchio, both of whom have considerable experience in developing plans of allocation for settlements in securities class actions. Dubbs Decl. ¶ 108.

As explained in the Notice, the Plan of Allocation apportions the recovery among Settlement Class members who purchased or acquired AIG's publicly traded common stock, call options, put options and bonds during the Class Period. Those who purchased common stock and options will recover a larger portion of the Settlement than those who purchased the bonds, in recognition of the particular risks involved in establishing loss causation and market efficiency for the bonds. Specifically, Authorized Claimants with respect to the bonds will share in up to 5% of the amount that will be distributed to all Settlement Class members. Dubbs Decl. ¶ 110. The Plan distributes the recovery according to when Settlement Class members acquired or sold their AIG Securities—taking into account the strength of potential claims relevant to these time periods. The Plan also limits Settlement Class members' recoveries to their out-of-pocket loss. *Id*.

Under the Plan of Allocation, each Authorized Claimant is entitled to recover her Recognized Loss to the extent that the Net Settlement Fund is sufficient. If there are not sufficient funds, Authorized Claimants will be entitled to receive their *pro rata* share of the Fund, *i.e.* the percentage of their Recognized Loss determined by the ratio of the total Recognized Losses of all Authorized Claimants to the value of the Net Settlement Amount. The Plan of Allocation therefore represents a fair and equitable method for allocating the Net Settlement Fund among Authorized Claimants and should be approved by the Court.

**CONCLUSION**

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court (1) enter the proposed

Judgment; (2) certify the Settlement Class and (2) enter the proposed Order Approving Plan of Allocation.

Dated:  New York, New York
       January 13, 2009

                                      **RICHARD CORDRAY,**
                                      **ATTORNEY GENERAL OF OHIO**

                                      **LABATON SUCHAROW LLP**

                                      By    /s/ Thomas A. Dubbs
                                            Thomas A. Dubbs (TD 9658)
                                          Louis Gottlieb (LG 9169)
                                          Nicole M. Zeiss (NZ 3894)
                                          Zachary M. Ratzman (ZR 0802)

Alan Kopit (Ohio Bar #0031965)                             140 Broadway
**HAHN LOESER & PARKS LLP**                        New York, New York  10005
200 Public Square, Suite 2800                         (212) 907-0700
Cleveland, Ohio  44114-2301                         (212) 818-0477 (Fax)
(216) 621-0150
(216) 274-2478 (Fax)

*Special Counsel to the Attorney General of Ohio and*    *Co-Lead Counsel for Lead Plaintiff Ohio State Funds*
*the Ohio State Funds and Co-Lead Counsel for the*    *and Co-Lead Counsel for the Class*
*Class*