**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————— x
                                          :
                                          :    <u>**ECF CASE**</u>
                                          :
IN RE AMERICAN INTERNATIONAL              :
GROUP, INC. SECURITIES LITIGATION         :    Master File No. 04 Civ. 8141 (DAB) (AJP)
                                          :
This Document Relates To:  All Actions    :    <u>Oral Argument Requested</u>
                                          :
——————————————————— x

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH**
<u>**AMERICAN INTERNATIONAL GROUP, INC.**</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

I.      PRELIMINARY STATEMENT ................................................................ 1

II.     BRIEF PROCEDURAL HISTORY ........................................................... 4

        A.      Overview of Claims ..................................................................... 4

        B.      First Lead Plaintiff Motion .......................................................... 5

        C.      Second Lead Plaintiff Motion ...................................................... 6

        D.      Discovery ..................................................................................... 6

        E.      Class Discovery and Class Certification...................................... 6

        F.      Settlement Negotiations and the Proposed Settlement ................ 7

III.    ARGUMENT ............................................................................................. 8

        A.      The Proposed Settlement Fully Satisfies the Criteria for
                Preliminary Approval.................................................................... 8

                1.      Factors to Be Considered ................................................. 8

                2.      The Proposed Settlement Is the Result of Well Grounded,
                        Good Faith, Arm's-Length Negotiations Between
                        Experienced Counsel ...................................................... 10

                3.      The Proposed Settlement Falls Well Within the Range of
                        Reasonableness and Warrants Notice and a Hearing on
                        Final Approval ................................................................ 10

                4.      The $725 Million Settlement Has No Obvious Deficiencies.................... 11

IV.     THE COURT SHOULD PRELIMINARILY CERTIFY THE
        SETTLEMENT CLASS ............................................................................ 12

        A.      Standards Applicable to Class Certification ............................... 13

        B.      This Action Meets the Requirements of Rule 23(a) ................... 14

                1.      Rule 23(a)(1): The Class Is So Numerous that Joinder of
                        All Members Is Impracticable ........................................ 14

                2.      Rule 23(a)(2): Questions of Law or Fact Are Common to
                        the Class .......................................................................... 15

3.      Rule 23(a)(3): Plaintiffs' Claims Are Typical of the Claims of Other Class Members ...................................................................... 16

4.      Rule 23(a)(4): The Ohio State Funds Will Adequately Protect the Interests of the Class............................................................ 17

C.      This Action Meets the Requirements of Rule 23(b)(3) ........................................ 18

1.      Questions of Law or Fact Common to the Class Predominate Over Any Questions Affecting Only Individual Members.................................................................... 18

2.      A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy........................... 20

D.      Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g)........................................................................................................................ 21

V.      THE COURT SHOULD APPROVE THE FORM OF THE NOTICES AND PLAN FOR PROVIDING NOTICE TO THE CLASS ......................................... 23

VI.      CONCLUSION................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                        **PAGE(s)**

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128 (1972) ...............................................................................20

*Amchem Prods. Inc.  v. Windsor*,
    521 U.S. 591 (1997) ...............................................................................18

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) .....................................................................17

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ...............................................................................20

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999).............................................................21

*Chin v. RCN Corp.*,
08 Civ 7349, 2010 WL 1257586 (S.D.N.Y. Mar. 12, 2010) ...................................11

*Cromer Fin. Ltd. v. Berger*,
    205 F.R.D. 113 (S.D.N.Y. 2001)...........................................................20

*In re Currency Conversion Fee Antitrust Litig.*,
    MDL Nos. 1409, M 21-95, 2006 WL 3253037,  (S.D.N.Y. Nov. 8, 2006) .......................8-9

*DeMarco v. Nat'l Collector's Mint, Inc.*,
    229 F.R.D. 73 (S.D.N.Y. 2005) ...................................................... 15-16

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ...................................................................13

*Dietrich v. Bauer*,
    192 F.R.D. 119 (S.D.N.Y. 2000)...........................................................19

*In re Flag Telecom Holdings Ltd., Sec. Litig.*,
    245 F.R.D. 147 (S.D.N.Y. 2007) *aff'd* 574 F.3d 29 (2dCir. 2009) ........................16

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................18

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    210 F.R.D. 476 (S.D.N.Y. 2002)...........................................................13

*In re Indep. Energy Holdings PLC Sec. Litig.*,
 302 F. Supp. 2d 180 (S.D.N.Y. 2003) ................................................23

*In re Initial Pub. Offering Sec. Litig.*,
 243 F.R.D. 79 (S.D.N.Y. 2007)..........................................................14

*In re Marsh & McLennan Co. Inc. Sec. Litig.*,
 04 Civ. 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................................11, 17-18

*Moore v. PaineWebber, Inc.*,
 306 F.3d 1247 (2d Cir. 2002) ..............................................................18

*In re NASDAQ Market-Makers Antitrust Litig.*,
 176 F.R.D. 99 (S.D.N.Y. 1997)............................................................9

*In re NTL, Inc. Sec. Litig.*,
 No. 02 Civ. 3013, 2006 WL 330113 (S.D.N.Y. Feb. 14, 2006) ...........................................12

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 191 F.R.D. 369 (S.D.N.Y. 2000).......................................................14, 15, 16, 19

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
 163 F.R.D. 200 (S.D.N.Y. 1995)..........................................................11

*In re Qiao Xing Sec. Litig.*,
 No. 07-Civ-7097  2008 WL 872298 (S.D.N.Y. 2008)....................................................13, 24

*Robidoux v. Celani*,
 987 F.2d 931 (2d Cir. 1993) ..............................................................16

*Robinson v. Metro-North Commuter R.R.*,
 267 F.3d 147 (2d Cir. 2001) ..............................................................15

*In re Scor Holding (Switzerland) AG Litig.*,
 537 F. Supp. 2d 556 (S.D.N.Y. 2008) ..............................................................16

*In re State St. Bank & Trust Co. ERISA Litig.*,
 No. 07 Civ. 8488, 2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009) ...........................................9

*In re Stock Exchanges Options Trading Antitrust Litig.*,
 No. 99 Civ. 0962 (RCC), 2005 WL 1635158 (S.D.N.Y. July 8, 2005) ..............................13

*In re Sumitomo Copper Litig.*,
 189 F.R.D. 274 (S.D.N.Y. 1999)..........................................................11

*Teamsters Local 445 Freight Div. Pension Fund v. Bombadier, Inc.*,
 No. 05 Civ. 1898 (SAS), 2006 WL 2161887 (S.D.N.Y. Aug. 1, 2006)................................20

*In re Telik, Inc. Sec. Litig.*,
    No. 07 Civ. 4819 (CM), 2008 WL 4198516 (S.D.N.Y. Sept. 10, 2008)...............................21

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006)............................................................................................16

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ...........................................................................................13, 19

*In re Vivendi Univ. S.A.*,
    242 F.R.D. 76 (S.D.N.Y. 2007)............................................................................................19

*In re Walmart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..............................................................................................8, 10

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003)..........................................................................................16

## STATUTES

15 U.S.C. § 77k.............................................................................................................................4

15 U.S.C. § 77o.............................................................................................................................4

15 U.S.C. § 78u-4 *et seq* ..............................................................................................................1

15 U.S.C. § 78u-4(a)...................................................................................................................23

15U.S.C. § 78j(b)..........................................................................................................................4

15 U.S.C. § 78t(a)..........................................................................................................................4

15 U.S.C. § 78t-1...........................................................................................................................4

17 C.F.R. § 240.10b-5...................................................................................................................4

Fed. R. Civ. P. 23(a)(2)...............................................................................................................13

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................................................21

Fed. R. Civ. P. 23(e)(1)...............................................................................................................21

Fed. R. Civ. P. 23(g)(1)(A)..........................................................................................................19

## OTHER AUTHORITIES

3 Newberg on Class Actions § 7:33 (4th ed. 2002 ) ...................................................................13

Manual for Complex Litigation, Third § 30.41 (1995).................................................................9

Manual for Complex Litigation, Fourth § 21.632 (2004)..............................................................13

## I.   **PRELIMINARY STATEMENT**

The Ohio Public Employees Retirement System, State Teachers Retirement System of

Ohio and the Ohio Police & Fire Pension Fund (collectively, "Lead Plaintiff" or the "Ohio State

Funds"), as Court-appointed Lead Plaintiff in this case, submits this memorandum of law in

support of the Ohio State Funds' unopposed motion, pursuant to Fed. R. Civ. P. 23(a), (b)(3) and

(e), for:

- Preliminary approval of the proposed $725 million settlement (the "Settlement") of claims against Defendant American International Group, Inc. ("AIG" or the "Company") in this class action ("Action"), as set forth in the Agreement of Compromise and Settlement dated November 30, 2010 (the "Agreement"), submitted contemporaneously herewith;

- Preliminary certification of a settlement class (the "Settlement Class") of all persons or entities who purchased or otherwise acquired the publicly traded securities of AIG during the period from October 28, 1999 through April 1, 2005 (the "Class Period"), inclusive, as well as all persons and entities who held the common stock of HSB Group, Inc. ("HSB") at the time HSB was acquired by AIG in a stock for stock transaction, and all persons and entities who held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock transaction, and were damaged thereby[1];

- Appointment of the Ohio State Funds as Settlement Class Representatives and Lead Counsel as Settlement Class Counsel; and

- Approval of the form, substance and the requirements of the proposed notice of settlement and summary notice, appended as Exhibits 1 and 3 to the proposed Preliminary Approval Order, and the means and methods for disseminating notice, as comporting with due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 78u-4 *et seq*.

The $725 million proposed settlement with AIG is an outstanding result for the proposed

Settlement Class and would bring to a close six years of hard-fought litigation between Lead

---

[1]   Excluded from the class are the Defendants, members of the immediate families of the Individual Defendants, any parent, subsidiary, affiliate, officer, or director of defendant AIG, any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person and any person who makes a valid and timely request for exclusion from the Settlement Class and does not thereafter rescind such a request.

Plaintiff and AIG.[2]  Indeed, standing alone the Settlement would be the ***13th largest*** securities class action settlement since the passage of the PSLRA, according to the latest quarterly report of the Securities Class Action Services.  (When combined with Lead Plaintiff's $97.5 million settlement with PricewaterhouseCoopers LLP ("PwC" and the "PwC Settlement") and the $115 million contingent settlement with Maurice R. Greenberg and related defendants, it would be the ***10th largest*** securities class action settlement.)  The proposed resolution meets all of the requirements for preliminary approval.

Lead Plaintiff respectfully proposes the following schedule for the various Settlement events, based upon the terms of the Agreement:

- Mailing of individual Notices to all Class Members who can be identified through reasonable effort (the "Notice Date"):  *15 days after signing of the Preliminary Approval Order.*

- Publication of the summary notice in *The Wall Street Journal* and over PR Newswire:  *within 14 days of the Notice Date.*

- Deadline for submission of requests for exclusion from the Settlement Class or objections to the Settlement, Plan of Allocation, or motions for fees and expenses:  *23 days before the Fairness Hearing.*

- Deadline for filing motions in support of the Settlement and request for attorneys' fees and expenses:  *40 days before the Fairness Hearing.*

- Fairness Hearing: At the Court's convenience, but no sooner than: February 28, 2011.

- Deadline for submission of Proofs of Claim: *postmarked 100 days after the Notice Date.*

---

[2]   The Settlement would release all claims that Lead Plaintiff has alleged against AIG and certain related Defendants, including Eli Broad, John A. Graf, Martin J. Sullivan, Thomas R. Tizzio, Wachovia Securities, Inc., and Merrill Lynch & Co.  The Settlement would also release, with certain exceptions, any claims against those same Defendants that relate in any way to the claims alleged by Lead Plaintiff or to transactions in AIG securities during the Class Period.  In addition, the proposed judgment contains bar provisions that would preclude claims by non-settling persons seeking contribution or indemnity from the released persons arising out of or relating to the claims or allegations asserted by plaintiffs in the Action.  The judgment contains a provision that would give the non-settling defendants a judgment credit pursuant to the PSLRA.

As the Court is aware, this Action arises from, *inter alia*, material misstatements and omissions allegedly made by AIG in connection with the Company's involvement in an allegedly illegal market division scheme with Marsh & McLennan Companies ("Marsh") and others in the insurance industry, as well as an alleged accounting fraud that led to AIG's $3.9 billion restatement and adjustment of earnings in May 2005.  Lead Plaintiff alleges that the price of AIG's stock fell at various times during the Class Period when these alleged frauds were disclosed to the market, resulting in significant damages to the Settlement Class.

The Settlement follows  nearly six years of litigation that included:

- Fully-briefed motion practice, on two separate occasions, to determine the lead plaintiff in this case;

- Motions to dismiss filed by AIG and more than 20 other defendants, all of which (except one) the Court denied in April and May 2006;

- Fact and expert discovery related to class certification, followed by a contested motion for class certification involving four days of legal argument and hearings;

- The review and analysis of more than 53.6 million pages produced by all of the parties and non-parties, including more than 12 million pages of documents produced by AIG; and

- 97 depositions of fact and expert witnesses.

Thus, the strengths and weaknesses of the claims and defenses were well understood by the setting parties.  Moreover, the Settlement was the product of numerous informal and formal discussions, face-to-face meetings, and mediations (with three different mediators) over the past five years.  Under these circumstances, Lead Plaintiff respectfully requests that this Court enter the proposed Preliminary Approval Order, preliminarily approving the Settlement, preliminarily certifying the Settlement Class for purposes of the Agreement only, and allowing the dissemination of Notice to the Settlement Class.

## II.     BRIEF PROCEDURAL HISTORY

### A.     Overview of Claims

The Consolidated Third Amended Complaint ("Complaint") asserted claims under

Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and

77o, and Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78j(b), 78t(a) and 78t-1, and Rule 10b-5 promulgated thereunder, 17 C.F.R.

§ 240.10b-5, against 22 defendants.  Lead Plaintiff has reached settlements or contingent

settlements with all defendants in the Action.  If ultimately approved by the Court, these

settlements could total approximately $1 billion for the Settlement Class.[3]

By order filed February 22, 2010, the Court certified the Action for litigation purposes as

a class action.  (Feb. 22, 2010 Order Docket Entry #534 at 90 ("Class Certification Order").)

Both Lead Plaintiff and AIG requested that the United States Court of Appeals for the Second

Circuit review the Class Certification Order.  AIG's request for review was granted, and Lead

Plaintiff's request was denied.  At the time the Settlement was reached, no briefing was filed,

and on August 30, 2010 the parties filed a stipulation withdrawing the appeal pursuant to Local

Rule 42.1, without prejudice to AIG's right to reinstate.

The claims against AIG generally arise from: (1) disclosures on October 14 and 15, 2004

of AIG's alleged involvement in a market division scheme that included its payment of improper

"steering" contingent commissions to, and alleged illegal rigging of bids with, Marsh and others

in the insurance industry (the "Market Division Fraud"); and (2) disclosures in March and April

2005 of an alleged accounting fraud at AIG that resulted in the Company restating nearly four

---

[3]     In addition to the $97.5 million PwC Settlement and the $115 million contingent settlement with Maurice
R. Greenberg, Howard I. Smith, Christian M. Milton, Michael J. Castelli, C.V. Starr & Co., Inc., and Starr
International Company, Inc., Lead Plaintiff also has reached a $72 million settlement with defendant General

years of earnings and adjusting earnings for a fifth year, which, *inter alia*, slashed net income by

$3.9 billion and shareholders' equity by $2.7 billion (the "Accounting Frauds").

Lead Plaintiff also asserted claims against AIG and Defendant Greenberg arising from

the alleged manipulation of the market in which AIG common stock trades by purchasing

millions of shares of the Company's stock in order to inflate its stock price (the "Market

Manipulation Fraud").

### B.      First Lead Plaintiff Motion

After the Market Division Fraud was revealed to the public on October 14, 2004, ten

class action complaints were filed against AIG and others, and the cases were transferred to

Judge Laura Taylor Swain.  The complaints included class periods of October 28, 1999 to

October 15, 2004, and alleged Section 10(b) and 20(a) claims.

After hearing fully-briefed motions regarding appointment of a lead plaintiff and lead

counsel, Judge Swain, by order dated February 7, 2005, appointed the Ohio State Funds as Lead

Plaintiff, and appointed Labaton Sucharow LLP (at the time known as Goodkind Labaton Rudoff

& Sucharow LLP) and Hahn Loeser & Parks LLP as Lead Counsel.

On April 19, 2005, Lead Plaintiff filed the First Amended Complaint, which included

claims based on the Market Division Fraud, the Accounting Frauds, and the Market

Manipulation Fraud.  The First Amended Complaint alleged a class period of October 28, 1999

through March 30, 2005; named additional defendants; and added claims under Section 11 and

15 of the Securities Act.

---

Reinsurance Corporation ("Gen Re").  On September 10, 2010, the Court dismissed all claims in the Action against
Gen Re.  On October 21, 2010 Lead Plaintiff filed a notice of appeal from the dismissal.

### C.    Second Lead Plaintiff Motion

On May 16, 2005, the San Francisco Employees' Retirement System filed a separate, purportedly "new" securities class action complaint against AIG and others that alleged causes of action based solely on the Accounting Frauds disclosed in the Spring of 2005.[4]   At a June 16, 2005 pre-motion conference, Judge Sprizzo asked for briefing on the issue of appointing a lead plaintiff with respect to the claims relating to the Accounting Fraud.  After the issue was fully briefed, the Court held a hearing on July 18, 2005, wherein the Court found that the Ohio State Funds would serve as the Lead Plaintiff for *all* the claims at issue – *i.e.*, the Market Division Fraud disclosed in October 2004, the Accounting Frauds disclosed in the Spring of 2005 and the Market Manipulation claims.

### D.    Discovery

Fact discovery in the case, which began in May 2006 after the Court denied all but one of the defendants' motions to dismiss, is now complete.  Over the span of more than four years, the parties and non-parties have produced more than 53.6 million pages of documents—12 million of which were produced by AIG.  Lead Plaintiff has reviewed and analyzed all of the documents produced and the parties conducted 97 fact and expert depositions.

### E.    Class Discovery and Class Certification

On February 20, 2008, Lead Plaintiff moved for certification of a litigation class.  In connection with that motion, the Ohio State Funds produced more than 267,000 pages of documents.  More than 20 witnesses from the Funds and their external investment advisers were deposed.

---

[4]   In late May 2005, Judge Swain recused herself from this case, and it was transferred to Judge John E. Sprizzo on or about June 9, 2005.

The motion was vigorously opposed by defendants and the Court heard extensive oral argument and testimony over a period of more than six months. In its February 22, 2010 Class Certification Order, the Court certified a litigation class. (Class Certification Order at 90.)

### F.    Settlement Negotiations and the Proposed Settlement

The $725 million Settlement with AIG is the result of numerous formal and informal discussions and mediation sessions over the past five years. At different points in time, several mediators, including Hon. Layn R. Phillips (Ret.), served as mediators in an effort to resolve the claims against AIG. The settling parties were able to reach the proposed Settlement in the most recent series of mediation sessions with Judge Phillips during the summer of 2010. All of these negotiations were well-informed by the years of litigation and discovery discussed above.

In exchange for the Settlement and dismissal of the Released Claims, AIG has agreed to pay $175 million in cash into an escrow account (the "Escrow Account") within ten business days of preliminary approval of the Settlement. AIG has also agreed to pay an additional $550 million in cash if it, on behalf of the U.S. Treasury, is able to raise the funds through the sale of AIG registered common stock by means of a "Qualified Offering."[5]

More specifically, AIG's payment of $550 million in cash into the Escrow Account is conditioned on AIG consummating a Qualified Offering, or a series of offerings, in which it raises net proceeds of at least $550 million at any time before the Court enters the proposed Order and Final Judgment (the "Final Judgment") approving the Settlement ("Final Judgment Date"). AIG will use its best efforts to consummate a Qualified Offering, but the decision as to whether market conditions or pending or contemplated corporate transactions make it commercially reasonable to proceed with such an offering are subject to AIG's unilateral

discretion.  However, if AIG effects a registered secondary offering of common stock on behalf

of the U.S. Treasury, resulting in the U.S. Treasury receiving proceeds of at least equal to $550

million, AIG shall be obligated to fund the Escrow Account with the $550 million in cash in

addition to the $175 million paid after preliminary approval.  AIG may also elect to fund the

Escrow Account with cash in advance of the Final Judgment Date through other means.

If AIG has not funded the Escrow Account with the full $725 million in cash by the Final

Judgment Date, Lead Plaintiff can take certain actions.  It can (1) terminate the Settlement, (2)

extend by up to a year the amount of time AIG has to make a Qualified Offering or fund the

balance, or (3) take unrestricted transferable AIG common stock valued at $550 million (the

"Settlement Stock") instead of cash.  At the Fairness Hearing, the settling parties will ask the

Court to consider whether the Settlement Stock should be exempt from the registration and

prospectus delivery requirements of the securities laws, pursuant to Section 3(a)(10) of the

Securities Act of 1933, as amended.

## III.    **ARGUMENT**

### A.    **The Proposed Settlement Fully Satisfies the Criteria for Preliminary Approval**

#### 1.    **Factors to Be Considered**

There can be no doubt that this Settlement should be preliminarily approved.  Rule 23(e)

of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims

brought on a class basis.  Approval of a proposed settlement is within the discretion of the

district court.  In exercising such discretion, a court should be mindful of the "strong judicial

---

[5]    The Agreement defines a Qualified Offering as "an offering of its common stock, or a series of such offerings, in which [AIG] raises net proceeds of at least $550 million at any time before the Final Approval Date . . . ."  Agreement § I(A)(2).

policy in favor of settlements, particularly in the class action context."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

Once a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval [by] mak[ing] 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, MDL Nos. 1409, M 21-95, 2006 WL 3253037, at *5 (S.D.N.Y. Nov. 8, 2006) (Pauley, J.) (citation omitted); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (Sweet, J.) ("Preliminary approval of a proposed settlement is the first step in a two-step process required before a class action may be settled . . . .  In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.") (citations omitted).

The Court's role at the present juncture is narrow:  to determine whether the Settlement is the product of an informed, arm's-length negotiation and free of obvious deficiencies and, thus, whether it is within the *range* of what might later be found fair, reasonable and adequate.  *Id*. at 102.  "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.  *See id.* (citing Manual for Complex Litigation, third §30.41); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (Pollack, J.) (at preliminary approval stage, "the Court need only find that the proposed settlement fits 'within the range of possible approval'") (citation omitted); *In re State St. Bank & Trust Co. ERISA Litig.*, No. 07 Civ. 8488, 2009 WL 3458705, at *1 (S.D.N.Y. Oct. 28, 2009) (Holwell, J.) ("Preliminary approval is 'at most a determination that there is what might be

9

termed "probable cause" to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness.'").

Here, the circumstances underlying the proposed Settlement strongly support preliminary approval.

2.      **The Proposed Settlement Is the Result of Well Grounded, Good Faith, Arm's-Length Negotiations Between Experienced Counsel**

A proposed class action settlement will enjoy a presumption of fairness where the settlement is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex class litigation. *Wal-Mart Stores,* 396 F.3d at 116.

Here, the proposed Settlement is without question the product of extensive arm's-length negotiations that occurred over approximately five years between counsel for the settling parties, the Office of the Attorney General for the State of Ohio and principals at AIG. The Settlement was reached at a point where Lead Plaintiff had a thorough understanding of the strengths and weaknesses of the claims against AIG based on its litigation of the claims for the past six years and completion of fact discovery. In short, there is no evidence indicating that the Settlement is anything other than the product of informed and non-collusive negotiations among experienced counsel. Thus, it deserves preliminary approval.

3.      **The Proposed Settlement Falls Well Within the Range of Reasonableness and Warrants Notice and a Hearing on Final Approval**

The proposed Settlement, which if approved will recover $725 million in cash or cash and stock for allegedly injured investors, would be the *__13th largest__* such settlement since the passage of the PSLRA (when combined with the $97.5 million PwC Settlement and the $115 million contingent settlement with Maurice R. Greenberg and related defendants, it would be the *__10th largest__* securities class action settlement.), the largest recovery in any securities class action

since the financial crisis began in September 2008, and is certainly within the range of reasonableness.

In considering whether to enter into the Settlement, Lead Plaintiff, represented by counsel highly experienced in securities litigation (*see* Section IV.D, *infra*) and the Ohio Attorney General's Office, weighed the value of this substantial, immediate recovery with the prospect that significant proceedings remained ahead, including extensive expert discovery on complex issues of accounting, insurance, loss causation and damages, the inevitable *Daubert* motions, summary judgment briefing and, of course, trial preparation and a trial.  Lead Plaintiff also considered the risks inherent in litigating a securities class action, given that such cases are by their nature legally and factually complex.  *See In re Marsh & McLennan Co. Inc. Sec. Litig.*, 04 Civ. 8144, 2009 WL 5178546, at * 5 (S.D.N.Y. Dec. 23, 2009) (McMahon, J.) ("[I]n evaluating the settlement of a securities class action, [courts] have long recognized that such litigation is notably difficult and notoriously uncertain.") (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (Pollack, J.)).

In sum, Lead Plaintiff has a solid understanding of the claims against AIG and the litigation risks associated therewith, and is confident that the Settlement is within the range of reasonableness.

### 4.     The $725 Million Settlement Has No Obvious Deficiencies

There are no "grounds to doubt [the Settlement's] fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives . . . or excessive compensation for attorneys . . . ."  *Chin v. RCN Corp.*, 08 Civ 7349, 2010 WL 1257586, at * 2 (S.D.N.Y. Mar. 12, 2010) (Fox, J); *see also In re Prudential,* 163 F.R.D. at 209.  The Ohio State Funds, like all other Settlement Class members, will receive their *pro rata* distribution from the net settlement fund in accordance with the proposed Plan of Allocation, which will be reviewed by the Court in

connection with the final approval motion.  Lead Counsel will seek compensation for the Ohio

State Funds' and the Ohio Attorney General's Office's costs and expenses (pursuant to the

PSLRA, 15 U.S.C. §78u-4(a)(4)) and reasonable attorneys' fees and reimbursement of Lead

Counsel's litigation expenses through future motions submitted to the Court.

        In sum, nothing in the course of the settlement negotiations or the terms of the Settlement

itself raises any doubt as to its fairness.  Rather, the substantial recovery for the Settlement Class,

the arm's-length nature of the negotiations, the participation over the course of five years of three

independent mediators – all extremely experienced – and the participation of sophisticated

counsel throughout the litigation and settlement process, compels the finding that the proposed

Settlement is sufficiently fair, reasonable and adequate to justify dissemination of the Notice to

the Class and the scheduling of a final approval hearing.

## IV.     THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

        The Settlement Class here is the same as that proposed as part of the PwC Settlement.  It

is also substantially similar to the settlement class that Judge Sprizzo certified *In re AIG ERISA

Litig.*, No. 04 Civ. 9387 (S.D.N.Y.), a related litigation with nearly identical underlying facts

(*i.e.*, the class members' injuries stemmed from the Market Division Fraud and the Accounting

Frauds) as in this Action.[6]  Under these circumstances, and for the additional reasons set forth

below, Lead Plaintiff submits that it is appropriate to certify the Settlement Class for purposes of

the proposed Settlement.

_____

        [6]    Judge Sprizzo granted preliminary approval of this settlement on July 1, 2008, *In re AIG ERISA Litig.*, No. 04-9387 (S.D.N.Y. July 3, 2008) (order preliminarily approving settlement), and he granted final approval on October 8, 2008, *In re AIG ERISA Litig.*, No. 04-9387 (S.D.N.Y. Oct. 8, 2008) (order granting final judgment). Moreover, in its February 22, 2010 Class Certification Order, this Court certified a litigation class in the Action pursuant to Fed. R. Civ. P. 23(a) and (b)(3).  (Class Certification Order at 90.)  The litigation class differs from the Settlement Class in that the proposed class, for purposes of the Settlement only, does not exclude: (1) "in-and-out"

A.      <u>**Standards Applicable to Class Certification**</u>

In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification.  *In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013, 2006 WL 330113, at *4 (S.D.N.Y. Feb. 14, 2006) (Peck, Magistrate J.) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).  This "liberal standard is in accord with this Circuit's preference for the use of class actions in securities law claims."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002) (Scheindlin, J.).  Accordingly, doubts as to whether or not to certify a class action should be resolved "in favor of allowing the class to go forward."  *Id.*  In determining class certification, "the question is not whether the plaintiff or plaintiffs . . . will prevail on the merits, but rather whether the requirements of Rule 23 are met."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir. 2001) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)).

Because Lead Plaintiff seeks certification of a settlement class in the context of preliminary approval, the Court need only preliminarily certify the Settlement Class now, with a more thorough inquiry into the issues – to the extent raised by those with standing – to be heard at the hearing for final approval.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding that "conditional certification survives the 2003 amendments to Rule 23(c)(1)"); *see also In re Qiao Xing Sec. Litig.*, No. 07 Civ. 7097, 2008 WL 872298, at *1 (S.D.N.Y. Apr. 2, 2008) (Cote, J.) (certifying class on a preliminary basis until final determination at fairness hearing); *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 Civ. 0962, 2005 WL 1635158, at *5 (S.D.N.Y. July 8, 2005) (Casey, J.) ("In the context of

---

purchasers; (2)  purchasers of AIG options and certain AIG notes; or (3) purchasers over the March 30 and 31, 2005 disclosure dates.

settlement, courts often provisionally certify the class along with preliminary approval of the settlement."); Manual for Complex Litigation, fourth § 21.632 ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."); 3 Newberg on Class Actions § 7:33 (4th ed.) ("Provisional class certification may also be granted for settlement purposes . . . .").

**B.     This Action Meets the Requirements of Rule 23(a)**

**1.     Rule 23(a)(1): The Class Is So Numerous
that Joinder of All Members Is Impracticable**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.  This rule does not require that joinder of all parties be impossible, only that it be difficult or inconvenient.  *In re Initial Pub. Offering Sec. Litig.,* 243 F.R.D. 79, 84 (S.D.N.Y. 2007) (Scheindlin, J.).  Although "precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts, numbers in excess of forty generally satisfy the numerosity requirement."  *Id.*

Here, consistent with the Court's findings in certifying the litigation class (*see* Class Certification Order at 23-24), there can be no dispute that the putative class satisfies numerosity and consists of (at least) hundreds of thousands of investors.  In connection with preliminary approval of the PwC Settlement, more than 2,225,192 notices were mailed to putative class members.  (*See* Decl. of Thomas A. Dubbs in Support of Proposed Class Settlement, Plan of Allocation and Award of Attorneys' Fees and Expenses, Ex. 2 ¶ 16 Docket Entry #472.)  As of September 30, 2004, a date within the Class Period, AIG had more than *2.6 billion* shares of common stock outstanding.  AIG common stock was actively traded on the New York Stock Exchange throughout the Class Period, with more than *7.6 billion* shares traded during the Class Period.  Common sense dictates that these shares were purchased by hundreds of thousands of

14

investors, making joinder impracticable. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) (Brieant, J.) ("[B]ecause Oxford stock was traded in high volume during the class period, the precise number of class members could be, and very likely is, numbered in the thousands.").

**2.      Rule 23(a)(2): Questions of Law
or Fact Are Common to the Class**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality does not mean that all class members must make identical claims and arguments, but only that "plaintiffs' grievances share a common question of law or fact." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).  "[I]t is sufficient if a single common issue is shared by the class." *DeMarco v. Nat'l Collector's Mint, Inc.*, 229 F.R.D. 73, 80 (S.D.N.Y. 2005) (McMahon, J.).  And "[w]here, as here, there exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail." *Oxford*, 191 F.R.D. at 374 (finding commonality with respect to securities claims).

There are many common questions of both law and fact at issue here, as the Court found in certifying the litigation class.  (*See* Class Certification Order at 24-25.)  The central questions of whether the alleged misstatements were false and material, whether AIG acted with the requisite state of mind and whether the alleged fraud caused damages are all the same for each class member.  Therefore, the existence and nature of AIG's alleged liability will be common to all class members, and the claims of each class member arise from the same operative facts and share the same legal theories. *See, e.g.*, *In re Flag Telecom Holdings Ltd., Sec. Litig.*, 245 F.R.D. 147, 158 (S.D.N.Y. 2007) (Conner, J.), *aff'd* 574 F.3d 29 (2d Cir. 2009) (finding common issues as to violations of federal securities laws, misrepresentations and omissions of material fact,

15

scienter, and damages satisfy commonality).  As the court stated in *Oxford*, "[w]here the facts as alleged show that [d]efendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met."  191 F.R.D. at 374.

### 3.    Rule 23(a)(3): Plaintiffs' Claims Are Typical of the Claims of Other Class Members

Rule 23(a)(3), the typicality requirement, is satisfied when the plaintiff shows that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 571 (S.D.N.Y. 2008) (Cote, J.) (quoting *Cent. States S.E. & S.W. Areas Health and Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229, 245 (2d Cir. 2007)).  Typicality does not require, however, "that the situations of the named representative and the class members be identical."  *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (McMahon, J.).  Rather, so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (Cote, J.) (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1993)), "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims," *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).  Indeed, the typicality and commonality requirements "tend to merge into one another as both 'serve as guideposts for determining whether the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'"  *SCOR*, 537 F. Supp. 2d at 571 (internal citations omitted).

Here, as this Court has ruled previously (*see* Class Certification Order at 25-37), Lead Plaintiff's claims are typical of those of the other members of the Settlement Class.  Lead

Plaintiff, like all class members, purchased AIG's publicly traded securities at allegedly artificially inflated prices during the Class Period and claims to have suffered damages because of AIG's alleged material misconduct. Accordingly, the legal theories and evidence Lead Plaintiff will advance to prove its claims will simultaneously advance the claims of other class members. The typicality requirement is met.

### 4. Rule 23(a)(4): The Ohio State Funds Will Adequately Protect the Interests of the Class

Rule 23(a)(4), the adequacy of representation requirement, entails two showings: (i) class counsel must be qualified, experienced and generally able to conduct the litigation; and (ii) the representative plaintiff's interests must not be antagonistic to those of the remainder of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). As the Court previously ruled in appointing Lead Plaintiff class representative of the litigation class and Lead Counsel Class Counsel for the litigation class (*see* Class Certification Order at 37-38), each are clearly adequate representatives of the proposed Settlement Class.

*First,* Labaton Sucharow and Hahn Loeser, Court-appointed Lead Counsel for Lead Plaintiff, are amply qualified, experienced and able to conduct this litigation vigorously and effectively, and have zealously and ably represented Lead Plaintiff on behalf of the proposed class for the last six years. (*See* Dubbs Decl., Exhibits 1 and 2; Section IV.D *infra*.]).[7]

*Second,* there is no conflict or antagonism between the claims of the proposed class representative and those of the other members of the proposed class. The Ohio State Funds are three large institutional investors with collective assets of more than $100 billion and proven track records of successfully pursuing securities class claims, including (1) a $475 million settlement in *In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*, 07-cv-9633

(S.D.N.Y. 2009) (Rakoff, J.)); (2) a $410 million settlement in *Ohio Pub. Emp. Ret. Sys. et al. v. Freddie Mac*, No. 03 Civ. 4261 (S.D.N.Y.), approved by Judge Sprizzo in October 2006; (3) a $400 million settlement in *In re Marsh & McLennan Co. Inc. Sec. Litig.*, No. 04-cv-08144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) (McMahon, J.); and (4) a $325 million settlement in *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) (Lynch, J.).  They are committed to monitoring Lead Counsel and prosecuting this action vigorously, as indicated by their numerous appearances before this Court and the Ohio Attorney General's personal involvement in the settlement negotiations that led to this Settlement.

Given that no conflicts exist between Lead Plaintiff's interests and those of other class members, and their counsel are able and highly experienced lawyers in this area of practice, the adequacy of representation requirement is met.

### C.      This Action Meets the Requirements of Rule 23(b)(3)

#### 1.      Questions of Law or Fact Common to the Class Predominate Over Any Questions Affecting Only Individual Members

Rule 23(b)(3) sets forth two requirements, the first being that the questions of law or fact common to the members of the class must "predominate" over any questions affecting only individual members.  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  The Supreme Court expressly recognized that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud . . . ."  *Id.* at 625.

---

7    As a result of the 2003 amendments to the Federal Rules, the issue of appropriate class counsel is guided by Rule 23(g) rather than Rule 23(a)(4).  Accordingly, this issue is addressed in greater detail in Section IV.D below.

The Second Circuit has stated that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). This is undoubtedly true here.

As the Court found in certifying the litigation class (*see* Class Certification Order at 39-42), the common questions of law and fact noted above clearly predominate over any conceivable individual question, because AIG's alleged fraudulent conduct affected all class members in the same manner (*i.e.*, through AIG documents publicly filed with the SEC) and generalized proof will be necessary with respect to the issues of whether: (1) AIG's alleged misstatements were false and material; (2) AIG possessed the requisite scienter; (3) loss causation can be established; and (4) AIG's investors relied on AIG's conduct. *See Dietrich v. Bauer*, 192 F.R.D. 119, 127-28 (S.D.N.Y. 2000) (Sweet, J.) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues."). In other words, all class members suffered the same kinds of harm, pursuant to the same legal theories, and arising out of the same alleged common course of conduct. *See In re Vivendi Univ. S.A.*, 242 F.R.D. 76, 90-91 (S.D.N.Y. 2007) (Holwell, J.) (finding predominance satisfied by allegations of defendants' false and misleading statements, scienter, reliance and causation).[8]

---

[8]   The sole question of law or fact here that is not subject to "generalized proof" is the amount of each Class member's damages, which can be calculated relatively easily. Indeed, individual questions of damages are found in every securities class action and are no bar to class certification. *See, e.g.*, *Visa Check*, 280 F.3d at 136; *Oxford*, 191 F.R.D. at 378.

Moreover, whether any class member relied on AIG's conduct does not raise individual issues in this case because reliance is presumed pursuant to (i) *Basic*'s fraud on the market doctrine, and (ii) *Affiliated Ute*'s presumption of reliance on material omissions, with either presumption sufficient to satisfy this element. This is also consistent with the Court's Class Certification Order.

The fraud-on-the-market doctrine, as enunciated by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), dispenses with the requirement that an investor prove awareness or reliance of a particular statement. *Id.* at 241-42. In order to be entitled to the *Basic* presumption of reliance, the market for the security must be "efficient." *Id.* at 247. In the Class Certification Order, the Court found that the fraud-on-the-market presumption was applicable to AIG's common stock. (*See* Class Certification Order at 86.) Indeed, the Court can *presume* that AIG common stock traded in an efficient market because it is traded on the New York Stock Exchange. *See, e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v. Bombadier, Inc.*, No. 05 Civ. 1898, 2006 WL 2161887, at *8 (S.D.N.Y. Aug. 1, 2006) (Scheindlin, J.) ("If, for example, a security is listed on the NYSE, AMEX, NASDAQ, or a similar national market, the market for that security is presumed to be efficient.").[9]

### 2.	A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy

Finally, Rule 23(b)(3) also requires that the action be superior to other available methods for the fair and efficient adjudication of the controversy. This is self-evident here. Courts find that the superiority requirement is satisfied where:

---

[9]	Similarly, reliance is presumed to the extent that the claims are based on omissions of material facts. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972) ("[P]ositive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.").

The potential class members are both significant in number and geographically dispersed.  The interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions.

*Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001) (Cote, J.).

Here, the utility of presenting the claims asserted through the class action method is substantial since the Settlement Class members who have been injured number in the hundreds of thousands, but very few may have been damaged to a degree that would induce them to institute litigation on their own behalf.  *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) (Sweet, J.).

Further, certification of the Settlement Class is the superior method to facilitate the resolution of Lead Plaintiff's claims.  Without the settlement class device, AIG could not obtain a class-wide release, and therefore would have little, if any, incentive to enter into the Settlement.  Moreover, certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.  *See In re Telik, Inc. Sec. Litig.*, No. 07 Civ. 4819, 2008 WL 4198516, at *12 (S.D.N.Y. Sept. 10, 2008) (McMahon, J.).  Resolution of Lead Plaintiff's claims against AIG through the proposed Settlement Class is plainly superior to any other available method of resolution.

For all of the foregoing reasons, this Court should find that this Settlement Class meets the requirements of both 23(a) and 23(b) and should certify the Settlement Class.

## D.      Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g)

Rule 23(g)(1) of the Federal Rules states that "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  Lead Plaintiff respectfully requests that the Court appoint Labaton Sucharow and Hahn Loeser, Court-appointed Lead Counsel for Lead Plaintiff,

as class counsel for the Settlement Class, as it did with respect to the litigation class in this action.  (*See* Class Certification Order at 89.)  As discussed above, these firms will continue to fairly and adequately represent the class.  Proposed Class counsel are knowledgeable about the applicable law and experienced in handling class actions, have performed substantial work in vigorously pursuing the class's claims here, and have committed substantial resources to representing the class.  *See* Fed. R. Civ. P. 23(g)(1)(A).

Labaton Sucharow is among the nation's preeminent law firms in this area of practice and has served as lead or co-lead counsel on behalf of major institutional investors in numerous class actions since the enactment of the PSLRA, including *In re HealthSouth Corp. Sec. Litig.*, CV-03-BE-1500-S (N.D. Ala.) (representing New Mexico State Investment Council and the Educational Retirement Board of New Mexico); *In re Broadcom Corp. Class Action Litig.*, No. 06-5036 (C.D. Cal.) (representing New Mexico State Investment Council); *In re Waste Mgmt. Inc. Sec. Litig.*, No. H-99-2183 (S.D. Tex.) (representing Connecticut Retirement Plans and Trust Funds); *In re Bristol-Myers-Squibb Sec. Litig.*, No. 00-1990 (D.N.J.) (representing Amalgamated Bank); and *In re Vesta Ins. Group Sec. Litig.*, No. 98-1407 (N.D. Ala.) (representing Florida State Board of Administration).  (*See* Dubbs Decl., Exhibit 1).

Hahn Loeser, one of Ohio's largest and most respected law firms, is eminently (and equally) qualified to serve as class counsel and represent the interests of Lead Plaintiff and the class.  (*See* Dubbs Decl., Exhibit 2).  Hahn Loeser has served as lead counsel in, and has defended, many class actions in the securities area, as well as in the areas of banking law, privacy, real estate, and antitrust law.

**V.   THE COURT SHOULD APPROVE THE FORM OF THE**
 <u>**NOTICES AND PLAN FOR PROVIDING NOTICE TO THE CLASS**</u>

The Court should also approve the form and content of the proposed Notice and

Summary Notice.  (*See* Exhibits 1 and 3, annexed to the proposed Preliminary Approval Order.)

Each is written in clear, straightforward language, and the Notice uses a format that clearly sets

out the relevant information.  Consistent with Rules 23(c)(2)(B) and 23(e)(B), the Notice

objectively apprises class members of the nature of the action, the definition of the class sought

to be certified, the class claims and issues, that a class member may enter an appearance through

counsel if desired, that the Court will exclude from the class any class member who requests

exclusion (and sets forth the procedures and deadline for doing so), the binding effect of a

judgment on class members under Rule 23(c)(3), how to object to the Settlement, and how to

make a claim.

The Notice also satisfies the separate disclosure requirements imposed by the PSLRA.

The Notice states the amount of the settlement proposed to be distributed to the parties,

determined in the aggregate and on an average per share basis; provides a statement from each

party concerning the issues about which the parties disagree; states the amount of attorney's fees

and expenses (both on an aggregate and average per share basis) that Lead Counsel will seek,

with a brief explanation supporting such fees and expenses[10]; provides the names, addresses, and

a toll-free telephone number for Lead Counsel, who will be available to answer questions from

class members; provides a brief statement explaining the reasons why the parties are proposing

the Settlement; and includes a cover page summarizing all of this information.  *See* 15 U.S.C. §

---

[10]   Lead Counsel will provide certain information to the Court at the Fairness Hearing regarding this proposed Settlement, including the name of the claims administrator, the amount of the expenses for which Lead Counsel and Lead Plaintiff seek reimbursement, and the amount of attorney's fees that Lead Counsel seeks.

78u-4(a)(7); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184-85 (S.D.N.Y. 2003) (Scheindlin, J.) (discussing PSLRA notice requirements and approving notice).

Additionally, both the Notice and summary Notice disclose the date, time and location of the Fairness Hearing and the procedures and deadlines for the submission of Proof of Claim forms or an AIG Release Form ("Release Form"),[11] for use by Class Members who already have submitted a Proof of Claim form in connection with the PwC Settlement, and objections to any aspect of the Settlement, the Plan of Allocation, or any request for attorney's fees and expenses. These disclosures are thorough and should be approved by the Court.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Here, the proposed notice plan readily meets these standards. Lead Plaintiff, through an experienced settlement and claims administrator to be proposed for approval by the Court, will cause the Notice, including the Plan of Allocation and either the Proof of Claim form or Release Form (as applicable), to be sent by first class mail to every class member who can be identified through reasonable effort. This will be accomplished principally by using record holder data that has been produced already by the transfer agent for AIG in the PwC Settlement and by reaching out to broker-dealers for the last-known names and addresses of potential class members and shareholders. The Summary Notice, which summarizes the essential Settlement terms and informs readers how to obtain the full Notice, will be published once in the *Wall Street Journal* and disseminated over *PR Newswire*. This notice

---

[11]   The proposed forms of the Proof of Claim and Release Form are annexed as Exhibits 3 and 4 to the proposed Preliminary Approval Order.

program clearly satisfies the requirements of Rule 23 and due process and should be approved by the Court. *See In re Qiao Xing Sec. Litig.*, 2008 WL 872298 at * 1.

## VI.   **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court preliminarily certify the proposed Settlement Class, grant preliminary approval to the proposed Settlement, approve the forms and methods of notice, and issue the proposed Preliminary Approval Order submitted herewith.

Dated: New York, New York
      November 30, 2010

 

RICHARD CORDRAY,
**ATTORNEY GENERAL OF OHIO**

**LABATON SUCHAROW LLP**

By _____

Alan S. Kopit, Esq. (Ohio Bar #0031965)
**HAHN LOESER & PARKS LLP**
200 Public Square, Suite 2800
Cleveland, Ohio  44114-2301
(216) 621-0150
(216) 274-2478 (Fax)

*Special Counsel to the Attorney General of Ohio
and the Ohio State Funds and Lead Counsel for
the Class*

     Thomas A. Dubbs (TD 9658)
     Louis Gottlieb (LG 9169)
     Nicole M. Zeiss (NZ 3894)
     Thomas G. Hoffman (TG 0330)
140 Broadway
New York, New York  10005
(212) 907-0700
(212) 818-0477 (Fax)

*Lead Counsel for Lead Plaintiff Ohio State Funds
and Lead Counsel for the Class*