# Exhibit 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re AMERICAN INTERNATIONAL GROUP, INC.  SECURITIES LITIGATION | ECF CASE<br><br>Master File No. 04 Civ. 8141 (DAB) (AJP) |

---

## AGREEMENT OF COMPROMISE AND SETTLEMENT

This Agreement of Compromise and Settlement ("Agreement") is entered into among the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio and Ohio Police & Fire Pension Fund (collectively, "Lead Plaintiff"), on behalf of the Settlement Class (as defined below), and American International Group, Inc. ("AIG" and, Lead Plaintiff and AIG collectively, the "Settling Parties"), by and through their respective counsel.

### RECITALS

WHEREAS:

1.       Beginning on October 15, 2004, at least ten class actions alleging violations of federal securities laws by AIG and others were filed in this Court.  By Order dated February 8, 2005, the Court consolidated these actions under the caption *In re American International Group, Inc. Securities Litigation*, Master File No. 04 Civ. 8141.  By Order dated February 8, 2005, the Court also appointed the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio and Ohio Police & Fire Pension Fund to serve as lead plaintiff in the consolidated action; and by the same Order the Court approved the selection of Goodkind Labaton Rudoff & Sucharow LLP (now Labaton Sucharow LLP) and Hahn Loeser & Parks LLP as co-lead counsel ("Lead Counsel").

2.      The Consolidated Amended Class Action Complaint, filed April 19, 2005; the Consolidated Second Amended Class Action Complaint, filed September 27, 2005; and the Consolidated Third Amended Class Action Complaint, filed December 15, 2006, generally alleged, among other things, violations of the federal securities laws by AIG, certain former members of AIG's senior management and others in connection with AIG's filings with the Securities and Exchange Commission and press releases.

3.      There has been extensive discovery in the Action (as defined below) so far. In the course of this litigation, AIG has produced and made available to Lead Plaintiff approximately 12 million pages of documents, and the total document production by parties and non-parties exceeds 53.6 million pages. Lead Counsel represents that it has reviewed and analyzed all of the documents produced. The parties have conducted 97 depositions.

4.      This Agreement constitutes a compromise of matters that are in dispute between the Settling Parties. AIG is entering into this Agreement solely to eliminate the uncertainty, burden and expense of further protracted litigation. AIG has denied and continues to deny each and every allegation of liability or wrongdoing or damage to the Settlement Class or Settlement Class Members. AIG believes that it acted properly and lawfully at all times, and believes that any Claims against it are without merit. This Agreement, whether or not consummated, any proceedings related to this Agreement, or any of the terms of this Agreement, are not intended to constitute, nor should they be construed as, any admission of liability or wrongdoing in any respect. Neither this Agreement, nor the fact of its execution, nor any of its provisions, shall be offered or received in evidence in any action or proceeding of any nature or otherwise referred to or used in any manner in any court or other tribunal, except in a proceeding to enforce the terms of this Agreement.

5.    Lead Plaintiff believes that the claims asserted in the Action have merit and the evidence developed to date supports the claims asserted. However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of the proceedings necessary to prosecute the Action against AIG through trial and appeals. Lead Plaintiff and Lead Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. Lead Plaintiff and Lead Counsel are also mindful of the inherent problems of proof of, and the possible defenses to, the violations asserted in the Action. They believe that the settlement set forth in this Agreement confers substantial benefits upon the Settlement Class. Based on their evaluation, Lead Plaintiff and Lead Counsel have determined that the settlement set forth in this Agreement is in the best interests of Lead Plaintiff and the Settlement Class.

6.    The Settling Parties have participated in multiple mediation sessions over the past five years with several mediators, including the Hon. Layn R. Phillips (Ret.), and were able to reach the settlement set forth in this Agreement in the most recent series of mediation sessions with Judge Phillips.

7.    The Settling Parties have included a bar order as a negotiated item in this Agreement. AIG faces potential claims, for contribution, indemnification or otherwise, by or on behalf of co-defendants in the Action and other persons that are not parties to this Agreement, arising out of or relating to the acts and transactions that are the subject of the Action.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Settling Parties, through their respective attorneys, subject to approval by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Settling Parties from this Agreement, that all Released Claims (as defined below) as against

all Released Persons (as defined below) shall be finally and fully compromised, settled, released and dismissed, with prejudice and without costs, upon and subject to the following terms and conditions.

## DEFINITIONS

1.      "AIG Securities" means any and all publicly-traded securities issued by American International Group, Inc., including equity, fixed income and all other securities.

2.      "Action" means all actions consolidated under the caption *In re American International Group, Inc. Securities Litigation*, Master File No. 04 Civ. 8141 (DAB) (AJP).

3.      "Administrator" means such entity as shall be appointed by the Court in the Hearing Order to assist in administering the settlement pursuant to this Agreement.

4.      "Attorneys' Fees and Expenses Award" means the amounts awarded to Lead Counsel to compensate all plaintiffs' counsel for their fees and expenses in connection with investigating, prosecuting and/or settling the Action, as provided for in Section V below.

5.      "Authorized Claimant" means a claimant whose Proof of Claim is allowed by the Court. Authorized Claimants shall not include the Named Defendants, members of the immediate families of the Named Defendants, any parent, subsidiary, affiliate, officer, or director of defendant AIG, any entity in which any of the foregoing has a controlling interest, or the legal representatives, heirs, successors and assigns of any of the foregoing.

6.      "Claims" means any and all claims, demands, actions, causes of action, obligations, debts, judgments and liabilities of any kind, nature and description, whether at law or in equity or upon any legal or equitable theory, whether contractual, common law or statutory, whether arising under federal, state, common or foreign law, whether based on allegedly intentional, negligent or reckless conduct, whether asserted or unasserted as claims, cross-claims, counterclaims or third-party claims in any pleadings in this Court, in any federal or state court, or

in any other court, arbitration proceeding, administrative agency or other forum in the United States or elsewhere, whether foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, that are related in any way to the allegations, transactions, facts, matters or occurrences that gave rise to the claims alleged in the Action or that could have been advanced in the Action.

7.     "Class Period" means the period of time from October 28, 1999, through April 1, 2005, inclusive.

8.     "Complaint" means the Consolidated Third Amended Class Action Complaint in the Action, dated December 15, 2006.

9.     "Distribution Amount" means the Settlement Amount (as defined below), plus all interest or other income earned thereon, less any expenses relating to the liquidation of the Settlement Stock (as defined below) less any Tax Expenses, less all Notice and Administrative Expenses, less the Attorneys' Fees and Expenses Award to the extent approved by the Court, less any award to the Lead Plaintiff and/or to the Office of the Attorney General of Ohio of their reasonable costs and expenses (including lost wages) pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(a)(4) ("PSLRA"), if and only to the extent approved by the Court upon separate application by Lead Plaintiff, and less any other payment authorized by the Court to be paid from those funds.

10.     "Effective Date" means the date when all of the following shall have occurred: (1) the Notice is provided to the Settlement Class in a manner and form approved by the Court; (2) the Fairness Hearing is held and the Final Judgment is entered by the Court; and (3) the Final Judgment is finally affirmed on appeal and/or is no longer subject to appeal or

certiorari, and the time for any petition for reargument, appeal, or review, by certiorari or otherwise, has expired, under the Federal Rules of Civil and/or Appellate Procedure.

11.     "Escrow Account" means a segregated interest-bearing escrow account established pursuant to the terms of an escrow agreement to be entered into by Lead Plaintiff and AIG. The Escrow Account shall be maintained as a Qualified Settlement Fund, as defined in Section I below. All monies in the Escrow Account, including all interest accruing thereon, shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as they are paid out as (i) Notice and Administrative Expenses; (ii) Attorneys' Fees and Expenses Award; (iii) payment to the Lead Plaintiff and/or the Office of the Attorney General of Ohio of their reasonable costs and expenses (including lost wages) pursuant to the PSLRA, if and only to the extent approved by the Court upon separate application by Lead Plaintiff; (iv) Tax Expenses on the Escrow Account; or (v) distributions to Authorized Claimants after the Effective Date of this Agreement.

12.     "Escrow Agent" means the financial institution designated by Lead Counsel to receive, hold, invest and disburse the Escrow Account pursuant to the terms of this Agreement.

13.     "Execution Date" means the date on which this Agreement is filed with the Court.

14.     "Fair Fund" means the $800 million fund deposited by AIG with the Court Registry Investment System on March 3, 2006 under the designation "SEC v. American International Group, Inc., 06 Civ. 1000 (LAP)," pursuant to the final judgment entered, on February 17, 2006, by the United States District Court for the Southern District of New York against AIG.

15. "Fairness Hearing" means the hearing to be held by the Court to make a final decision pursuant to Rule 23 of the Federal Rules of Civil Procedure as to whether this Agreement is fair, reasonable and adequate.

16. "Final Approval Date" means the date on which the Final Judgment (as defined below) is issued by the Court.

17. "Final Judgment" means the order and the judgment to be entered by the Court, pursuant to the Federal Rules of Civil Procedure, finally approving this Agreement, and dismissing the Action as to the Released Persons on the merits and with prejudice.

18. "Hearing Order" means the order preliminarily approving this Agreement and directing the Notice to be provided to the Settlement Class.

19. "Hearing Order Date" means the date on which the Hearing Order is issued by the Court.

20. "Lead Counsel" means the law firms of Labaton Sucharow LLP and Hahn Loeser & Parks LLP.

21. "Named Defendants" means the defendants named in the Complaint (*i.e.*, American International Group, Inc., Maurice R. Greenberg, Howard I. Smith, Martin J. Sullivan, Thomas R. Tizzio, Michael J. Castelli, Christian M. Milton, L. Michael Murphy, John A. Graf, Frank J. Hoenemeyer, Eli Broad, Starr International Company, Inc., C.V. Starr & Co., Inc., Union Excess Reinsurance Company, Ltd., Richmond Insurance Company Ltd., PricewaterhouseCoopers LLP, General Reinsurance Corp., Ronald E. Ferguson, John B. Houldsworth, Richard Napier, Wachovia Securities, Inc., and Merrill Lynch & Co.).

22.    "Net Proceeds" means the Settlement Amount (as defined below) minus any expenses incurred by Lead Plaintiff relating to the liquidation of the Settlement Stock and minus any payments made to the Administrator for Notice and Administrative Expenses.

23.    "Notice" means the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Fairness Hearing, which is to be provided to the Settlement Class as specified in Section III below.

24.    "Notice and Administrative Expenses" means all expenses incurred by Lead Plaintiff in connection with the preparation, printing and mailing of the Notice to the Settlement Class, and all expenses of settlement administration, including without limitation escrow fees and any expenses relating to the liquidation of the Settlement Stock; provided, however, that Notice and Administrative Expenses shall not include the amount of the Attorneys' Fees and Expenses Award.

25.    "Person" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives and assignees.

26.    "Plan of Allocation" means the terms and procedures for allocating the Distribution Amount among, and distributing the Distribution Amount to, Authorized Claimants, as proposed in the Notice, or such other plan of allocation as the Court shall approve.

27.    "Proof of Claim" means the form which is to be sent to Settlement Class Members substantially in the form attached hereto as Exhibit A.

- 8 -

28.     "Released AIG Claims" means any Claims which AIG ever had, now has or hereafter can, shall or may have against any of the Released Plaintiff Parties, which arise out of or relate in any way to the institution or prosecution (to the Effective Date) of the Action, except a claim to enforce the releases or other terms and conditions contained in this Agreement or any court order (including but not limited to the Final Judgment) entered pursuant thereto.

29.     "Released Claims" means and includes any and all Claims, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, suspected or unsuspected, existing now or to be created in the future, whether unasserted or asserted in the Complaint, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere, and whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, that Lead Plaintiff, the Settlement Class or Settlement Class Members, and/or each of their respective present, former and future parents, subsidiaries, agencies, connected firms, instrumentalities, branches, divisions and affiliates, the present, former or future employees, members, partners, principals, associates, officers and directors, attorneys, advisors, trustees, administrators, fiduciaries, consultants, representatives, accountants and auditors, insurers, attorneys, and agents or each of them, and the predecessors, estates, heirs, owners, executors, trusts, trustees, administrators, successors and assigns of each, ever had, now have or hereafter can, shall or may have against the Released Persons, (a) arising out of, in any way related to, or in connection with the allegations, transactions, facts, matters or occurrences that gave rise to the claims alleged in the Action, and are or could have been advanced in the Action, and/or (b) in any way arise out of, are based upon, relate to or concern the purchase, acquisition, disposition or sale of, or other transaction in AIG Securities during the Class Period, including without

limitation, claims that arise out of or relate to any disclosures, Securities and Exchange

Commission filings, press releases, registration statements, offering memoranda or other public

statements by AIG during the Class Period. "Released Claims" do not include: (a) the claims

being prosecuted in a derivative capacity on behalf of AIG in *American International Group,*

*Inc. Consolidated Derivative Litigation*, C.A. No. 769-VCS (Del. Ch.); *In re American*

*International Group, Inc. Derivative Litigation*, No. 04-CV-8406 (S.D.N.Y.); *Teachers*

*Retirement System of La. v. Cantwell, et al.*, No. 650064/2009 (N.Y. Sup. Ct., N.Y. Cty.);

*Bassman v. Greenberg*, No. 05-CV-7022 (S.D.N.Y.); and *Kleinhandler v. Greenberg*, No. 05-

CV-6417 (S.D.N.Y.); (b) the claims being prosecuted in *State of Ohio* v. *American International*

*Group, et al.*, No. 07-633857 (Court of Common Pleas, Cuyahoga County, Ohio), *In re*

*American International Group, Inc. 2008 Securities Litigation*, No. 08-cv-4772 (S.D.N.Y.); *In re*

*American International Group, Inc. 2007 Derivative Litigation*, No. 07-cv-10464 (S.D.N.Y.); (c)

the claims and/or distributions in connection with the fair fund created in *SEC* v. *American*

*International Group, Inc.*, 06 Civ. 1000 (S.D.N.Y.) (LAP) and/or *In Re AIG ERISA Litigation*,

04 Civ. 9387 (S.D.N.Y) (JES); or (d) the claims in the Action against any of the Named

Defendants other than the Released Persons.

      30.    "Released Persons" means Eli Broad, John A. Graf, Martin J. Sullivan,

Thomas R. Tizzio, Wachovia Securities, Inc., Merrill Lynch & Co., AIG and their present,

former and future parents, subsidiaries, agencies, business units, connected firms,

instrumentalities, branches, divisions and affiliates; and the present, former or future employees,

members, partners, principals, associates, officers and directors, advisors, trustees,

administrators, fiduciaries, consultants, representatives, accountants and auditors, insurers,

attorneys, and agents of each of them; and the predecessors, estates, heirs, owners, executors,

trusts, trustees, administrators, successors and assigns of each of them.   However, Released

Persons specifically does not include: Maurice R. Greenberg, Howard I. Smith, Michael J.

Castelli, Christian M. Milton, L. Michael Murphy, Starr International Company, Inc., C.V. Starr

& Co., Inc., Union Excess Reinsurance Company, Ltd., PricewaterhouseCoopers LLP, General

Reinsurance Corp., Ronald E. Ferguson, John B. Houldsworth, and Richard Napier.

31.     "Released Plaintiff Parties" means any and all of the Lead Plaintiff, the

Settlement Class, Settlement Class Members and all plaintiff's counsel, and/or each of their

respective divisions, agencies, instrumentalities, branches, subsidiaries, parent companies,

affiliates, associates, representatives, predecessors, successors, heirs, owners, assigns, executors

and/or administrators.

32.     "Settlement Class" means, for purposes of this Agreement only, and

consistent with the class definition contained in the Complaint, all persons who purchased or

otherwise acquired AIG Securities during the Class Period, as well as all persons and entities

who held the common stock of HSB Group, Inc. ("HSB") at the time HSB was acquired by AIG

in a stock for stock transaction, and all persons and entities who held the common stock of

American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for

stock transaction, and were damaged thereby, excluding persons who make a request for

exclusion from the Settlement Class in the manner and within the time period provided by

Section IV below and/or by order of the Court and do not thereafter rescind such requests.

33.     "Settlement Class Member" means a member of the Settlement Class.

34.     "Tax Expenses" means (i) all taxes on the income earned in the Escrow

Account, and (ii) fees and expenses incurred in connection with such taxation (including, without

limitation, any tax penalties and expenses of tax attorneys and accountants).

## AGREEMENT

## I.    TERMS AND CONDITIONS OF THE SETTLEMENT

### A.    <u>Payment</u>

1.    By no later than ten (10) business days after the Hearing Order Date, AIG shall make payment by wire transfer to the Escrow Account in the amount of $175 million.

2.    AIG's obligation to fund the remainder of the Settlement Amount is conditioned on AIG having consummated an offering of its common stock, or a series of such offerings, in which it raises net proceeds of at least $550 million at any time before the Final Approval Date (a "Qualified Offering"). AIG shall fund the Escrow Account with the proceeds realized from any such Qualified Offering, up to $550 million, prior to the Final Approval Date. AIG shall use its best efforts, consistent with the fiduciary duties of its management and Board of Directors, to consummate a Qualified Offering, but the decision as to whether market conditions or pending or contemplated corporate transactions make it commercially reasonable to proceed with such an offering shall be within AIG's unilateral discretion.

3.    In the event that AIG effects a registered secondary offering of common stock on behalf of the U.S. Treasury resulting in the U.S. Treasury receiving proceeds of at least $550 million, then market access shall be deemed to have been demonstrated, AIG shall be deemed to have consummated a Qualified Offering and AIG shall fund the Escrow Account with $550 million prior to the Final Approval Date.

4.    If AIG has not funded the Escrow Account with $725,000,000 (the "Settlement Amount") by the Final Approval Date, Lead Plaintiff may, within ten (10) calendar days of the Final Approval Date, elect to:

(a)    Terminate this Agreement, and return the Settling Parties to the positions they had in the litigation as of July 19, 2010;

- 12 -

    (b)    Take unrestricted, transferable AIG common stock valued at $550 million (the "Settlement Stock"), under the conditions set forth in Paragraph I.B below; or

    (c)    Extend the period for AIG to make a Qualified Offering or otherwise fund the Escrow Account with the Settlement Amount for up to one year after the Final Approval Date, with payment into the Escrow Account to occur within a reasonable period of time following the consummation of a Qualified Offering, provided that, at any time during the year, Lead Plaintiff may elect to:

        (i)    Take the Settlement Stock, under the conditions set forth in Paragraph I.B. below, on two (2) business days' notice, in full satisfaction of AIG's obligation to fund the Escrow Account with the Settlement Amount, or

        (ii)    Terminate this Agreement, on twenty-one (21) calendar days' notice, and return the Settling Parties to the positions they had in the litigation as of July 19, 2010,

but if AIG takes steps to consummate a Qualified Offering within twenty-one (21) calendar days of the Final Approval Date, then Lead Plaintiff may not demand stock or terminate this Agreement pursuant to this Paragraph unless such Qualified Offering is terminated.

    5.    AIG may, at any time, in its sole discretion, raise sufficient funds to pay the Settlement Amount in cash and deposit such funds in the Escrow Account.

**B.**     <u>Settlement Stock:</u>

1.     AIG shall fund the Escrow Account with the Settlement Stock within ten (10) calendar days of Lead Plaintiff's election to take the Settlement Stock pursuant to Paragraphs I.A.4.b or I.A.4.c.i, provided AIG is able to obtain all necessary approvals to issue the Settlement Stock.

2.     The market value of the Settlement Stock shall be determined using the volume weighted average closing price for the ten (10) trading days preceding the Final Approval Date (the "Pricing Period").

3.     In the event that AIG issues one or more Forms 8-K during the Pricing Period or during the two-week period preceding the Pricing Period, Lead Plaintiff may elect, within ten (10) calendar days of the issuance of any such Form 8-K, to have the Pricing Period deferred until two (2) weeks after such Form 8-K is filed.

4.     In the event that AIG issues one or more Forms 8-K within twelve (12) weeks of Lead Plaintiff's receipt of the Settlement Stock, Lead Plaintiff may elect, within ten (10) calendar days of the issuance of such a Form 8-K, to have any unsold stock re-priced before sale, with the Pricing Period starting two (2) weeks after any such Form 8-K is filed.

5.     The Settling Parties shall use their best efforts to make sure that the Settlement Stock receives the exemption from registration available under Section 3(a)(10) of the Securities Act of 1933, including by asking the Court to make the necessary findings for approval referenced in SEC Division of Corporation Finance: Revised Staff Legal Bulletin No. 3 (CF) (June 18, 2008).  In the event the exemption under Section 3(a)(10) is not available, AIG shall use its best efforts to deliver fully transferable, unrestricted stock for the Settlement Stock.

6.     If Lead Plaintiff's sale of Settlement Stock results in proceeds that exceed $550 million, then any such proceeds in excess of $550 million shall be returned to AIG.

7.    In the event that, after the Final Approval Date, but before any stock or cash is distributed to Authorized Claimants, Lead Plaintiff has received the Settlement Stock, but, for any reason, the settlement set forth in this Agreement does not become effective, then Lead Plaintiff shall return to AIG any unsold Settlement Stock and the net amount Lead Plaintiff actually received in the sale of any Settlement Stock (*i.e.*, the sale price minus any transaction costs), minus any Notice and Administrative Expenses (not to include attorneys' fees), with no further obligation to AIG.

**C.    Qualified Settlement Fund**

1.    The Settling Parties agree that the Escrow Account is intended to be a single Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that the Administrator shall be the "administrator" of the Escrow Account within the meaning of Treasury Regulation § 1.468B-2(k)(3) and shall be responsible for filing tax returns and all other documents required by the Internal Revenue Service or any state or local taxing authority in connection with the Escrow Account and for paying from the Escrow Account any Tax Expenses with respect to the Escrow Account. The Settling Parties agree that all of the Escrow Account shall be treated as a single Qualified Settlement Fund from the earliest date possible, and agree to any relation-back election required to treat any and all of the Escrow Account as a Qualified Settlement Fund from the earliest date possible. AIG agrees to provide promptly to the Administrator the statement described in Treasury Regulation § 1.468B-3(e).

2.    All Tax Expenses shall be paid out of the Escrow Account; in all events the Released Persons shall not have any liability or responsibility for the Tax Expenses or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority in connection with Tax Expenses. Tax Expenses shall be treated as, and considered to be, a cost of administration of this Agreement and shall be paid out of the Escrow

Account in a timely manner without prior order from the Court, and the Administrator shall be obligated to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts; the Released Persons are not responsible and shall have no liability therefor or for any reporting requirements that may relate thereto.

3.     All monies deposited in the Escrow Account shall be invested in securities backed by the full faith and credit of the United States Government.

4.     Lead Counsel shall be solely responsible for supervising the administration of the settlement set forth in this Agreement and the Escrow Account pursuant to the terms of this Agreement and under the supervision of the Court. Subject to the Court's jurisdiction, the Escrow Account shall be maintained by the Escrow Agent in a manner consistent with the provisions of this Agreement and the escrow agreement. The Escrow Agent shall not disburse any amounts from the Escrow Account except as authorized by this Agreement and/or any orders of the Court. The Escrow Account shall not be available to creditors of the Escrow Agent. Except for its obligation to cooperate to the extent necessary and practicable in the production of information with respect to the identification of Settlement Class Members from AIG's shareholder transfer records, as provided herein, neither AIG nor its counsel shall have any liability, obligation, responsibility for or involvement in the administration of the settlement set forth in this Agreement, the Escrow Account, the allocation of the Distribution Amount among Authorized Claimants, or the review or challenging of claims of Settlement Class Members.

5.     The allocation of the Distribution Amount among Authorized Claimants shall be subject to a reasonable Plan of Allocation proposed by Lead Counsel and approved by the Court. Such a Plan of Allocation is a matter separate and apart from this Agreement, and any

decision of the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed settlement set forth in this Agreement.

6.      Prior to the Effective Date, Lead Counsel may make withdrawals not to exceed, in the aggregate, $2.5 million from the Escrow Account to pay reasonable Notice and Administrative Expenses.

7.      In the event that this Agreement is terminated (*i.e.*, under Paragraph I.A.4 or Section X) or is not consummated for any reason, any cash or securities in the Escrow Account, plus any accrued interest earned in the Escrow Account, less any Notice and Administrative Expenses (not including attorneys' fees) and Tax Expenses actually and reasonably incurred in connection with this Agreement, shall be returned within ten (10) business days.

### D.    **Plan of Allocation**

1.      Lead Plaintiff shall propose in the Notice the Plan of Allocation and shall seek approval of the Court for such Plan of Allocation at the Fairness Hearing. Such Plan of Allocation shall ensure that (a) if an Authorized Claimant received a payment from the Fair Fund ("Fair Fund Distribution"), the Recognized Loss of the Authorized Claimant under the Plan of Allocation shall be reduced by seven-eighths (7/8th) of its Fair Fund Distribution(s) ("Fair Fund Ratio Amount"); and (b) no Authorized Claimant receives a distribution that exceeds 100% of such Authorized Claimant's Recognized Loss as defined in the Plan of Allocation, reduced by the Fair Fund Ratio Amount(s) of any Fair Fund Distribution(s) the Authorized Claimant received. AIG and the Administrator shall both make reasonable efforts to obtain data from the Fair Fund's administrator concerning the distribution amounts that claimants received from the Fair Fund. The Administrator shall also require claimants to indicate the amounts they received from the Fair Fund. In case of a discrepancy concerning Fair Fund Distribution amounts,

information about the amount of any Fair Fund Distribution obtained from the Fair Fund's administrator shall prevail over information provided by a claimant and will be used. The proposed Plan of Allocation may be modified by Lead Counsel without further notice to Settlement Class Members (but subject to Court approval) unless a Settlement Class Member requests individual personal notice of such modifications no later than thirty (30) days prior to the Fairness Hearing. Approval of the proposed Plan of Allocation set forth in the Notice is not a condition to the Effective Date.

2.      All distributions to Authorized Claimants shall be from the Distribution Amount pursuant to the Plan of Allocation approved by the Court.

3.      To receive a distribution from the Distribution Amount, a Settlement Class Member must be an Authorized Claimant.

4.      Each Settlement Class Member who wishes to receive a distribution from the Distribution Amount must complete and submit a Proof of Claim (i) by first-class mail, such that it is postmarked no later than the date set forth in the Notice, or (ii) so that it is actually received at the address on the Proof of Claim form by the date stated in the Notice, unless that date is extended by order of the Court. The address to which the Proof of Claim must be mailed shall be stated in the Proof of Claim form itself and shall also be printed in the Notice.

5.      All Proof of Claim forms must be supported by such documents and other information as called for in the Proof of Claim. The Administrator may submit requests to waive *de minimis* or formal or technical defects in any Proofs of Claim to Hon. Layn R. Phillips who shall determine whether to allow the Administrator to waive any such defects.

6.      The Proof of Claim shall be substantially in the form of Exhibit A attached hereto and shall include an individual release in favor of the Released Persons, which must be

executed by each Authorized Claimant in order for such Authorized Claimant to receive a distribution in accordance with the Plan of Allocation. Any Settlement Class Member who fails to execute the individual release referred to herein shall nevertheless be bound by the release.

7.    The validity of each Proof of Claim filed shall initially be determined by the Administrator in accordance with the Plan of Allocation approved by the Court. The Administrator shall promptly advise the claimant in writing if the Administrator determines to reject the claim. Neither Lead Counsel, nor its designees or agents, the Released Persons, or their respective counsel, shall have any liability arising out of such determination. If any claimant whose claim has been rejected in whole or in part desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of the Administrator's mailing of the writing rejecting the claimant's claim, serve upon the Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court for summary resolution, without any right of appeal or review. Any such claimant shall be responsible for his, her or its own costs, including, without limitation, attorneys' fees incurred in pursuing any such dispute.

8.    All initial determinations as to the validity of a Proof of Claim, the amount of any claims and the calculation of the extent to which each Authorized Claimant shall participate in the Distribution Amount, the preparation and mailing of distributions to Authorized Claimants, and the distribution of the Distribution Amount shall be made by the Administrator. The administration of the Distribution Amount, and decisions on all disputed questions of law and fact with respect to the validity of any Proof of Claim or regarding the rejection or amount of

any claim, shall remain under the jurisdiction of the Court.   All Settlement Class Members and

Settling Parties expressly waive trial by jury (to the extent any such right may exist) and any

right of appeal or review with respect to such determinations.

9.    Unless otherwise ordered by the Court, any Settlement Class Member who

fails to submit a valid and timely Proof of Claim shall be barred from receiving a distribution

from the Distribution Amount.  Any Settlement Class Member who fails to submit a valid and

timely Proof of Claim shall nevertheless be bound by the release and by all proceedings, orders

and judgments in the Action even if he, she or it does not receive a distribution from the

Distribution Amount and/or has pending, or subsequently initiates, any litigation, arbitration or

other proceeding, or has any Claim, against any or all of the Released Persons that is, or relates

in any way to, any Released Claim.

10.    In the event that AIG does not exercise its right of termination of this

Agreement, and the Agreement is not otherwise terminated, the Distribution Amount shall be

distributed pursuant to the Plan of Allocation, which shall provide that no Authorized Claimant

shall receive more than 100% of its Recognized Loss, after deduction of any Fair Fund Ratio

Amount(s) received.  No distributions to Authorized Claimants shall be made prior to the

Effective Date.

11.    Prior to the distribution of the Distribution Amount, Lead Counsel shall

present for the review of the Court an accounting by the Claims Administrator of all the receipts

to and disbursements from the Escrow Account and the proposed distribution of the Distribution

Amount to Authorized Claimants.  No such distribution shall be made in the absence of an order

approving the accounting and the proposed distribution.

12.     No Person shall have any Claim against Lead Plaintiff, Lead Counsel, the Administrator or any of their respective agents, or against the Released Persons and/or their respective counsel, with respect to or arising out of any distributions or lack thereof made under the Plan of Allocation, this Agreement or orders of the Court.

13.     It is understood and agreed to by the Settling Parties that, notwithstanding any other provision of this Agreement, the proposed Plan of Allocation is not a part of this Agreement and no orders or proceedings relating to the Plan of Allocation shall operate to modify, terminate or cancel this Agreement or affect the finality of the Final Judgment or any other orders entered by the Court giving effect or pursuant to this Agreement.

14.     The Released Persons and/or their counsel shall have no role in, responsibility for, or liability with respect to the Plan of Allocation, the form, substance, method or manner of allocation, administration, or distribution of the Distribution Amount, any tax liability that a Settlement Class Member may incur as a result of this Agreement or as a result of any action taken pursuant to this Agreement, the administration or processing of claims, including, without limitation, determinations as to the validity of any Proof of Claim, the amounts of claims or distribution of the Distribution Amount, or the maintenance of the Escrow Account as a Qualified Settlement Fund.

15.     In the event that AIG does not exercise its right of termination of this Agreement, Settlement Class Members shall look solely to the Distribution Amount for settlement and satisfaction of all Released Claims.  Except as expressly provided by this Agreement, the Plan of Allocation, or an order of the Court, no Settlement Class Member shall have any interest in the Escrow Account.

16.     If there are funds remaining in the Escrow Account following distribution(s) to all Authorized Claimants pursuant to the Plan of Allocation, payment(s) of any further Notice and Administration Expenses and Tax Expenses, and any other payments authorized by the Court, then the Administrator shall notify AIG, Lead Plaintiff, and Hon. Layn R. Phillips of the amount of such remaining funds.   No later than thirty (30) calendar days after the amount remaining in the Escrow Account is calculated and submitted to Hon. Layn R. Phillips, each of the Settling Parties may make an application to Hon. Layn R. Phillips to designate where the remaining funds will be allocated.  If any such applications are denied in whole or in part, or if no party makes any such application, all remaining funds shall be donated to non-sectarian, not-for-profit 501(c)(3) organization(s) designated by Hon. Layn R. Phillips after consideration of recommendations from Lead Plaintiff and AIG, subject to approval of the Court.

## II.   RETENTION OF AN ADMINISTRATOR AND EQUITY MANAGER

1.     Lead Plaintiff shall request the Court to appoint an Administrator to help implement this Agreement.  The Administrator shall perform the following functions in furtherance of this Agreement: (i) mailing or arranging for the mailing of the Notice to Settlement Class Members; (ii) answering inquiries from Settlement Class Members and/or forwarding such inquiries to Lead Counsel or its designee(s), which shall be forwarded to counsel for AIG as appropriate; (iii) receiving and maintaining on behalf of the Court any requests for exclusion from the Settlement Class made by putative Settlement Class Members; (iv) receiving and processing Proofs of Claim; (v) mailing or causing to be mailed to Authorized Claimants their distributions under this Agreement; and (vi) otherwise assisting the Court and Lead Counsel with administration of the settlement pursuant to this Agreement.  The Released

Persons shall have no responsibility with respect to the tasks enumerated or described in this Section II.

2.      In the event that Lead Plaintiff elects to take the Settlement Stock under this Agreement, Lead Plaintiff may request the Court to appoint an Equity Manager to oversee the liquidation of the Settlement Stock in a manner designed to maximize its value to the extent reasonably possible, and promptly deposit all proceeds thereof in the Escrow Account. The Equity Manager shall be entitled to a reasonable fee for these services, to be paid out of the Escrow Account. At such time when the Settlement Stock has been liquidated and all the proceeds are deposited in the Escrow Account, the position of Equity Manager shall terminate. The Equity Manager shall not be liable to anyone for any action taken or omitted by them relating to the liquidation of the Settlement Stock except on a finding by the Court that the Equity Manager acted, or omitted an act, in bad faith or reckless disregard of its fiduciary duties.

3.      Notwithstanding Paragraph II.2 above, in the event that Lead Plaintiff elects to take the Settlement Stock under this Agreement, Lead Plaintiff shall determine, in its sole discretion, whether to deliver the Settlement Stock to the Equity Manager for liquidation as described in Paragraph II.2 above or deliver the Settlement Stock directly to the Authorized Claimants (after the Effective Date and upon completion of claims administration and after an award to Lead Counsel pursuant to Paragraph V.1 below), subject to the oversight of the Court.

III.    NOTICE TO THE SETTLEMENT CLASS

1.      Lead Plaintiff shall cause the Administrator to mail, by first-class mail, postage prepaid, a copy of the Notice and Proof of Claim to each putative member of the Settlement Class who can be identified by reasonable effort, including by making best efforts to use the transfer record information previously provided by AIG in connection with the settlement of the Settlement Class's claims against PricewaterhouseCoopers LLP ("the PwC Settlement").

- 23 -

The Notice shall be substantially in the form attached hereto as Exhibit B.  Lead Plaintiff and the Administrator shall cause the Notice to be published on their respective websites.  Subject to the requirements of the Hearing Order, Lead Counsel shall submit to the Court affidavits demonstrating the adequacy of its efforts to provide notice to the putative Settlement Class Members.

2.      If necessary, despite Lead Counsel making best efforts to use the transfer record information previously provided by AIG in connection with the PwC Settlement, AIG shall provide to Lead Counsel, at no cost, information obtainable by reasonable efforts identifying, by name and address, the persons and entities who were holders of AIG securities during the Class Period, including banks, brokerage firms, institutions and other nominees and record owners, in searchable electronic form.  Otherwise, the Released Persons shall have no responsibilities with respect to the tasks enumerated or described in this Section III.

## IV.    REQUESTS FOR EXCLUSION

1.      Putative Settlement Class Members requesting exclusion from the Settlement Class shall mail by first-class mail or otherwise deliver a written request for exclusion to the Administrator care of the address provided in the Notice.  The request for exclusion must contain the following information: (i) name; (ii) address; (iii) telephone number; (iv) all dates on which AIG equity shares were purchased or otherwise acquired during the Class Period and the number of AIG equity shares purchased or acquired on each such date; (v) the price(s) or other consideration paid or received for such AIG equity shares; (vi) all dates on which AIG equity shares were sold during the Class Period and the number of AIG equity shares sold on each such date; and (vii) documentation sufficient to establish the accuracy of the information identified in (iv)-(vi).  Unless otherwise ordered by the Court, any member of the Settlement Class that does not submit a timely written exclusion request containing all of the information required by this

Paragraph shall be bound by this Agreement, even if he, she or it has pending, or subsequently

initiates, litigation, arbitration or any other proceeding, or has any Claim against any Released

Person relating to any Released Claim.  Lead Counsel and AIG's counsel shall jointly request

that the deadline for submitting exclusion requests shall be set twenty-three (23) calendar days

prior to the Fairness Hearing.

        2.      The Administrator shall scan and send electronically copies of all

exclusion requests in PDF format (or such other format as shall be agreed) to Lead Counsel and

counsel for AIG expeditiously after the Administrator receives such a request.  The

Administrator also shall determine the number of shares held over the relevant disclosure dates

by any putative Settlement Class Members properly requesting exclusion from the Settlement

Class and shall report that number and the supporting documentation to Lead Counsel and

counsel for AIG within two (2) business days of receiving any such exclusion requests.

        3.      Within three (3) calendar days after the deadline for submitting exclusion

requests in Paragraph IV.1, or any other or subsequent deadline for submitting exclusion requests

that the Court may order, the Administrator shall report the number of shares held over the

relevant disclosure dates by all putative Settlement Class Members that have properly requested

exclusion from the Settlement Class and the supporting documentation for each such request for

exclusion (the "Administrator's Report") to Lead Counsel and counsel for AIG.

        4.      As part of the motion papers in support of the proposed settlement set

forth is this Agreement, Lead Counsel shall provide a list of all the persons who have properly

requested exclusion from the Settlement Class and all of the information provided to the

Administrator under Paragraph IV.1 of this Agreement for those persons requesting exclusion,

and shall certify that all exclusion requests received have been copied and provided to AIG's

counsel.

## V.   ATTORNEYS' FEES AND EXPENSES

1.   Lead Counsel shall apply to the Court for an Attorneys' Fees and

Expenses Award to be paid out of the Escrow Account.  Immediately after the Court enters an

order approving the Attorneys' Fees and Expenses Award, Lead Counsel may withdraw the

Court-awarded attorneys' fees and expenses from the Escrow Account.  The Escrow Account

shall be the sole source of attorneys' fees and expenses and Lead Plaintiffs and the Settlement

Class shall have no recourse against AIG (or the Released Persons) for any such attorneys' fees

and expenses.  AIG (and the Released Persons) shall have no responsibility for and no liability

whatsoever with respect to any payment of attorneys' fees and expenses made to Lead Counsel.

2.   Refunds or repayments of the Attorneys' Fees and Expenses Award shall

be made to the Escrow Account (plus accrued interest thereon at the same net rate as is earned by

the Escrow Account) if and when: (a) the Attorneys' Fees and Expenses Award is reduced,

vacated, or reversed, without remand, by order of the United States Court of Appeals for the

Second Circuit or by final, non-appealable, order of the United States District Court of the

Southern District of New York; (b) the Effective Date does not occur; (c) the Agreement is

terminated or cancelled for any reason; (d) the Agreement is voided by any party; (e) the

Attorneys' Fees and Expenses Award order does not become final; or (f) the Agreement is not

approved, or is reversed, or modified, without remand, by order of the United States Court of

Appeals for the Second Circuit or by final, non-appealable, order of the United States District

Court of the Southern District of New York.  The full amount of the Attorneys' Fees and

Expenses Award, or the amount by which any such award is reduced, or modified, without

remand, by order of the United States Court of Appeals for the Second Circuit or by final, non-

appealable, order of the United States District Court of the Southern District of New York, shall

be paid to the Escrow Account within fifteen (15) business days of the date of the event requiring

the refund and repayment as set forth in this Paragraph. Repayments pursuant to this Paragraph

shall include interest at the same net rate earned by the Escrow Account.

       3.     When an obligation to refund or repay the Attorneys' Fees and Expenses

Award arises under the preceding Paragraph, (a) Labaton Sucharow LLP shall be obligated to

refund or repay to the Escrow Account the portion of the Attorneys' Fees and Expenses Award

(plus accrued interest thereon at the same net rate as is earned by the Escrow Account) it and all

other Plaintiff's counsel, excluding Hahn Loeser & Parks LLP, was paid from the Escrow

Account; and (b) Hahn Loeser & Parks LLP shall be obligated to refund or repay to the Escrow

Account the portion of the Attorneys' Fees and Expenses Award (plus accrued interest thereon at

the same net rate as is earned by the Escrow Account) it was paid from the Escrow Account.

The obligations in this Paragraph and Paragraph 2 of this Section shall survive, and remain in

full force and effect and be binding in all respects on Lead Counsel, even if the Agreement is

terminated, the Agreement is not approved or the Effective Date does not occur.

       4.     AIG (and the Released Persons) shall have no responsibility for or liability

whatsoever with respect to the allocation of the Attorneys' Fees and Expenses Award among

counsel for the Settlement Class and/or any other person who may assert some claim thereto.

The Attorneys' Fees and Expenses Award shall be payable solely from the Escrow Account.

The Released Persons shall have no other or further obligation to pay any Settlement Class

Member or Lead Plaintiff's counsel for fees or expenses in connection with the Action or this

Agreement, except as expressly provided for in this Agreement.

5. The Court's decision granting in whole or in part the application by Lead Counsel for attorneys' fees and expenses are not conditions of the Agreement or to entry of the Final Order and Judgment. The request by Lead Counsel for attorneys' fees and expenses is to be considered by the Court separately from the Court's consideration of the question whether the Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class. Any orders or proceedings relating to any request by Lead Counsel for attorneys' fees and expenses or any appeal from any order or proceedings relating thereto shall not affect the validity or finality of the proposed settlement, operate to terminate or cancel the Agreement, and/or affect or delay either the Effective Date or the finality of the Final Order and Judgment approving the settlement. Lead Plaintiff (either on their own behalf or on behalf of the Settlement Class) and Lead Counsel may not cancel or terminate the Agreement or the Settlement based on this Court's or any appellate court's ruling with respect to any application for an Attorneys' Fees and Expenses Award.

## VI. RELEASE

1. This Agreement covers the Claims, known or unknown, suspected or unsuspected, asserted or unasserted, of the Settlement Class, against the Released Persons, based on the allegations of the Complaint, including, without limitation, the Claims asserted against the Released Persons in the Complaint. Effective upon the date of entry of the Final Judgment, as limited by the rights of the Settling Parties set forth in Section X below, Lead Plaintiff, the Settlement Class and Settlement Class Members, through their counsel, hereby dismiss with prejudice all Claims contained in the Complaint against the Released Persons. Effective upon the Effective Date, Lead Plaintiff, the Settlement Class and Settlement Class Members hereby fully, finally and forever release, relinquish, acquit, and discharge the Released Persons from the Released Claims. Such release shall be expressly conditional upon the payment by AIG of the

- 28 -

Settlement Amount. Nothing contained herein shall release AIG from any obligations under this Agreement.

2.      Effective upon the Effective Date, with respect to any and all Released Claims, the Lead Plaintiff, the Settlement Class and Settlement Class Members hereby expressly waive the provisions, rights and benefits of California Civil Code § 1542 and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

3.      The Lead Plaintiff, the Settlement Class or Settlement Class Members may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Lead Plaintiff, the Settlement Class and Settlement Class Members hereby fully, finally and forever settle and release any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, without limitation, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

4.      Effective upon the Effective Date, AIG hereby fully, finally and forever releases, relinquishes, acquits and discharges the Released Plaintiff Parties from the Released

AIG Claims. Nothing contained herein shall release Lead Plaintiff and Lead Counsel from any

obligations under this Agreement.

## VII.   REPRESENTATIONS

1.      Lead Plaintiff and AIG represent and warrant that they are authorized to

execute, deliver, and perform this Agreement and that this Agreement constitutes a legal, valid,

and binding obligation and that it is enforceable against each of them in accordance with its

terms.

2.      Lead Plaintiff and AIG represent and warrant that (i) they have not sold,

assigned, transferred or otherwise disposed of any of the claims, cross-claims, demands or rights

that are the subject of this Agreement, and (ii) they shall take all necessary action to effectuate

the terms of this Agreement.

## VIII.   LIMITATION ON CLAIMS AGAINST RELEASED PERSONS

The following bar order and judgment reduction provision shall, as a condition for the

settlement, be included in substantially the following form in the Final Judgment:

1.      To the full extent provided by Section 21D-4(f)(7)(A) of the Private

Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(f)(7)(A), and all other

applicable laws, the non-settling defendants and all other Persons, including but not limited to

any other Person previously or subsequently named as a defendant or third-party in this action

(collectively "Non-Settling Persons"), are hereby permanently BARRED, ENJOINED AND

RESTRAINED from commencing, prosecuting, or asserting any claim for contribution or

indemnity against the Released Persons arising out of or relating to the claims or allegations

asserted by plaintiffs in the Action, and from commencing, prosecuting, or asserting any other

claim against the Released Persons where the injury to the Non-Settling Person is, the Non-

Settling Person's actual or risked liability to the putative plaintiff class arising out of or relating

to the claims or allegations asserted by plaintiffs in the Action, whether arising under state, federal or foreign law and however designated, including claims, cross-claims, counterclaims, or third-party claims, whether asserted in the Action, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.

2.      To the full extent provided by Section 21D-4(f)(7)(A) of the PSLRA, 15 U.S.C. § 78u-4(f)(7)(A), and all other applicable laws, the Released Persons are hereby permanently BARRED, ENJOINED AND RESTRAINED from commencing, prosecuting, or asserting any claim for contribution or indemnity against the Non-Settling Persons or any other Released Person arising out of or relating to the claims or allegations asserted by plaintiffs in the Action, and from commencing, prosecuting, or asserting any other claim against a Non-Settling Person or a Released Person where the injury to the Released Person bringing the claim is, the Released Person's actual or risked liability to the putative plaintiff class arising out of or relating to the claims or allegations asserted by the class in the Action, whether arising under state, federal or foreign law and however designated, including claims, cross-claims, counterclaims, or third-party claims, whether asserted in the Action, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.

3.      The Non-Settling Persons against whom a judgment, if any, is rendered in the Action will be entitled (collectively) to a judgment credit pursuant to 15 U.S.C. §78u-4(f)(7)(B).

4.      The Released Persons are hereby released and discharged from any liability to Lead Plaintiff, the Settlement Class, or any Settlement Class Member under New

York's General Obligation Law, § 15 108; Delaware's Uniform Contribution Among Tortfeasors Law, 10 Del. C. § 6304; or any other state's contribution bar statute, and applicable case law.

5.      The Final Judgment shall also contain a provision that permanently bars and enjoins: (a) the Released Plaintiff Parties from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration or other proceeding or order in any jurisdiction against the Released Persons that is based upon, arises out of or relates to any of the Released Claims; and (b) the Released Persons from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration or other proceeding or order in any jurisdiction against the Released Plaintiff Parties that is based upon, arises out of or relates to the Released AIG Claims.

6.      The Final Judgment shall not bar, extinguish, reduce or limit any rights, claims or defenses asserted: (a) in *State of Ohio* v. *American International Group, et al.*, No. 07-633857 (Court of Common Pleas, Cuyahoga County, Ohio), *In re American International Group, Inc. 2008 Securities Litigation*, No. 08-cv-4772 (S.D.N.Y.); *In re American International Group, Inc. 2007 Derivative Litigation*, No. 07-cv-10464 (S.D.N.Y.); (b) in *American International Group, Inc. Consolidated Derivative Litigation*, C.A. No. 769-VCS (Del. Ch.); *In re American International Group, Inc. Derivative Litigation*, No. 04-CV-8406 (S.D.N.Y.); *Teachers Retirement System of La.* v. *Cantwell, et al.*, No. 650064/2009 (N.Y. Sup. Ct., N.Y. Cty.); *Bassman* v. *Greenberg*, No. 05-CV-7022 (S.D.N.Y.); and *Kleinhandler* v. *Greenberg*, No. 05-CV-6417 (S.D.N.Y.); (c) in connection with the fair fund created in *SEC* v. *American International Group, Inc.*, 06 Civ. 1000 (S.D.N.Y.) (LAP) and/or *In Re AIG ERISA Litigation*, 04 Civ. 9387 (S.D.N.Y) (JES); or (d) in the Action against any of the Named Defendants other

than the Released Persons; nor shall anything in the Final Judgment bar, extinguish, reduce or

limit any rights, claims or defenses that are based on or arise from the settlement agreement

dated March 24, 2010 between AIG, the State of Ohio and others in *State of Ohio v. AIG*, No.

CV 07 633857 (Ohio Ct. Com. Pl.).

## IX.    COMPROMISE; NO ADMISSION OF WRONGDOING

1.    This Agreement constitutes a compromise of matters that are in dispute

between the Settling Parties. AIG is entering into this Agreement solely to eliminate the

uncertainty, burden and expense of further protracted litigation. AIG has denied and continues to

deny each and every allegation of liability or wrongdoing or damage to the Settlement Class or

Settlement Class Members, and believes that it acted properly and lawfully at all times, and

believes that any Claims against it are without merit.

2.    Whether or not the Agreement is approved by the Court and whether or

not the Agreement is consummated, the facts and terms of the settlement and this Agreement

(including all exhibits hereto), as well as all negotiations, discussions, acts performed,

agreements, drafts, documents signed and proceedings in connection with the settlement:

(a)    shall not be described as, construed as, interpreted as, or offered or

received against any of the Released Persons as evidence of and/or deemed to be evidence of any

presumption, concession or admission by any of the Released Persons as to: (i) the truth of any

fact alleged in the Complaint; (ii) the validity of any claim that has been or could have been

asserted in the Action or in any other litigation; (iii) the deficiency of any defense that has been

or could have been asserted in the Action or in any other litigation; and/or (iv) any liability,

negligence, fault, or wrongdoing on their part;

(b)    shall not be described as, construed as, interpreted as or offered or

received against Lead Plaintiff or any Settlement Class Member as evidence of any infirmity in

- 33 -

the claims of said Lead Plaintiff and the Settlement Class or that damages recoverable from the Released Persons would not have exceeded the Settlement Amount;

(c)     shall not be described as, construed as, interpreted as, offered or received against any of the Released Persons, Lead Plaintiff and/or any Settlement Class Member as an admission or concession that the consideration to be given in the Agreement represents the amount which could be or would have been awarded to said Lead Plaintiff or Settlement Class Members after trial; and

(d)     shall not be offered or received against any of the Settling Parties in any other civil, criminal or administrative action or proceeding, or in any court or other tribunal, except in connection with any action, litigation or proceeding to enforce the terms of this Agreement.

3.     Notwithstanding the provisions of Paragraph IX.2, but subject to the requirements of Paragraph XI.E.2, any of the Released Persons may file, cite and/or refer to the facts and terms of the settlement and this Agreement (including all exhibits hereto), as well as all negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the settlement, in any other action or proceeding that may be brought against them in any forum in order to effectuate the liability protection granted hereunder or to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release and discharge, good faith settlement, judgment bar or reduction, any theory of claim preclusion or issue preclusion or any similar defense or counterclaim.

## X.     MODIFICATION OR TERMINATION OF AGREEMENT

1.     This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties or their successors-in-interest.  Signatures sent by facsimile or PDF format shall be deemed originals.

2.     This Agreement may not be terminated by the Settling Parties except as provided in Paragraph I.A.4 and this Section X.

3.     Lead Plaintiff and AIG shall each, in their separate discretion, have the right to terminate this Agreement by providing written notice of their election to do so to the other Settling Party hereto within thirty (30) calendar days of (a) the Court's declining to enter the proposed Hearing Order, attached as Exhibit C in any material respect; (b) the Court's refusal to approve this Agreement in any material respect; (c) the Court's declining to enter the proposed Final Judgment, attached as Exhibit D, in any material respect; or (d) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

4.     This Agreement may be terminated at the option and in the sole discretion of AIG in the event that putative Settlement Class Members (investors who, but for their exclusion requests would be Settlement Class Members) who were purchasers of, in the aggregate, an amount of AIG equity securities in excess of the Termination Threshold, as such term is defined in the Supplemental Agreement executed simultaneously herewith by the Settling Parties, have properly elected to exclude themselves in accordance with the requirements for requesting exclusion provided in the Notice to be disseminated. The Supplemental Agreement shall not be filed with the Court unless and until the Court requires the Settling Parties to file the Supplemental Agreement. It is expressly understood and agreed by the Settling Parties that the only persons and entities who may submit exclusion requests that count towards the Termination Threshold are those persons and entities who, but for their exclusion requests, would be Settlement Class Members. As set forth in paragraph 152 of the Complaint, "[e]xcluded from the Class are the Defendants [in the Action], members of the immediate families of the

Individual Defendants, any parent, subsidiary, affiliate, officer, or director of defendant AIG, any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person." Notwithstanding the above, if any action that would be barred by the releases contemplated by this Agreement is commenced against AIG in any court prior to the Effective Date and, following a motion by AIG to dismiss or stay that action, such action is not dismissed or stayed, then the number of shares purchased or otherwise acquired during the Class Period and held over the relevant disclosure dates by the plaintiff(s), petitioner(s) or claimant(s) in such action shall be counted toward the Termination Threshold, and, if the Termination Threshold is exceeded, AIG will, in its sole discretion, have the option to terminate this Agreement. If AIG so elects to terminate the Agreement on this basis, Lead Counsel may, within eleven (11) calendar days of receipt of such notice of termination (or such longer period as shall be agreed upon in writing between Lead Counsel and counsel for AIG), attempt to cause the plaintiff(s), petitioner(s) or claimant(s) in such action(s) to dismiss or discontinue the action(s) or claim(s) with prejudice. If, within the eleven (11) calendar day period (or later if agreed upon in writing), Lead Counsel succeeds in causing the dismissal or discontinuance of a sufficient number of such actions or claims that the Termination Threshold would not be triggered as specified above, then any termination of this Agreement by AIG on this basis shall automatically be deemed to be a nullity.

       5.      With respect to exclusion requests from the Settlement Class by investors, who but for their exclusion requests would be Settlement Class Members, AIG shall have up to 5:00 p.m. Eastern Time seven (7) calendar days after its receipt of the Administrator's Report regarding exclusion requests to give notice in writing to Lead Counsel that AIG elects to exercise its option to terminate this Agreement. If AIG so elects to terminate this Agreement, Lead

Counsel may, within eleven (11) calendar days of receipt of such notice of termination (or such longer period as shall be agreed upon in writing between Lead Counsel and counsel for AIG), review the validity of any exclusion request and may attempt to cause retraction of any exclusion request. If, within the eleven (11) calendar day period (or later if agreed upon in writing), Lead Counsel succeeds in causing the filing of binding retractions of a sufficient number of exclusion requests such that the Termination Threshold would not be triggered as specified above, then any termination of this Agreement by AIG shall automatically be deemed to be a nullity. To retract an exclusion request, a Settlement Class Member must file a written notice with the Court stating the Settlement Class Member's desire to retract his, her or its exclusion request and that Settlement Class Member's desire to be bound by any judgment or settlement in this action; provided further, that the filing of such written notice may be effected by Lead Counsel with the consent of AIG, which consent shall be given if Lead Plaintiff represents to AIG that it has no reason to believe that the Class Member's written notice of retraction is invalid or not binding and AIG presents no facts that refute Lead Plaintiff's representation.

   6. If the Court, for any reason, upon review of objections to the Plan of Allocation, affords Settlement Class Members another opportunity to file requests for exclusion after the deadline set forth herein, then notwithstanding any other terms or provisions of this Agreement, following the close of such renewed period to file requests for exclusion, AIG shall have the right pursuant to this Section X, including but not limited to Paragraphs 5 and 6 of this Section X, to withdraw from and terminate this Agreement.

   7. If AIG or Lead Plaintiff exercise their respective rights of termination for any of the reasons in this Section X, then (a) this Agreement shall be terminated without prejudice, and none of its terms shall be effective or enforceable, except to the extent that any

Tax Expenses and/or Notice and Administrative Expenses have been actually or reasonably paid or incurred; (b) the Settling Parties shall revert to their litigation positions as of July 19, 2010; (c) any judgment(s) or order(s) entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*; and (d) Lead Plaintiff shall return to AIG any monies remaining in the Escrow Account, plus any accrued interest earned in the Escrow Account, within fifteen (15) business days of such termination.

8.      If any of the Settling Parties hereto engages in a material breach of the terms hereof, any other Settling Party may terminate this Agreement on notice to the breaching party or sue for enforcement.

9.      No findings or conclusions by the Court pursuant to Section 21D(c)(1) of the Exchange Act, 15 U.S.C. § 78u-4(c)(1) shall operate to modify, terminate, or cancel this Agreement or affect the finality of the Final Judgment or any other orders entered by the Court giving effect or pursuant to this Agreement, nor shall any such findings or conclusions affect or delay the Effective Date.

## XI.    MISCELLANEOUS PROVISIONS

### A.    <u>Choice of Law</u>

Except to the extent federal law applies, this Agreement and ancillary agreements shall be governed by and construed in accordance with the laws of the State of New York, excluding New York's conflict of laws provisions.

### B.    <u>Retention of Jurisdiction</u>

The administration and consummation of this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement and for the purpose of entering orders providing for the Attorneys' Fees and Expenses Award and enforcing the terms of this Agreement.  All

Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement.

### C.  **Waiver of Breach**

The waiver by one Settling Party of any breach of this Agreement by any other Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

### D.  **Headings; Words**

The headings herein are included for the purpose of convenience only and are not meant to have legal effect.  Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context indicates is appropriate.

### E.  **Confidentiality**

1.    Except as provided in this Paragraph XI.E, or as may otherwise be required by law, the Settling Parties and their counsel shall use their best efforts to keep the contents of this Agreement and all related negotiations confidential until the Execution Date. This provision will not prevent the parties from communicating the terms of the settlement to their advisors and complying with their disclosure obligations.

2.    In addition, whether or not the Agreement is approved by the Court and whether or not the Agreement is consummated, the Settling Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the Agreement confidential.

3.    In consideration for this Agreement, Lead Plaintiff and Lead Counsel agree that they shall not share any documents or work product concerning the prosecution of any Claim against the Released Persons with any party, person or entity, including, without limitation, any of the parties in any of the actions pending in the United States District Court for

the Southern District of New York or the Court of Chancery of the State of Delaware related to

AIG; provided that if Lead Plaintiff or Lead Counsel is compelled, by subpoena or other form of

judicial or other compulsory process or disclosure pursuant to state law, to disclose such

documents or work product, such person shall as promptly as possible provide written notice,

and include a copy of the subpoena or other process, to counsel for AIG.

F.   **Notices to Lead Plaintiff and/or AIG**

All notices required or permitted under this Agreement shall be in writing and delivered

by any method providing proof of delivery, including facsimile.  Any notice shall be deemed to

have been given on the date of delivery.  Notices shall be delivered to the Settling Parties at the

following addresses unless and until a different address has been designated by a Settling Party:

> AIG:          Paul, Weiss, Rifkind, Wharton & Garrison LLP
>               1285 Avenue of the Americas
>               New York, NY 10019
>               Attention: Daniel J. Kramer, Esq., Daniel J. Leffell, Esq.
>               (212) 757-3990 (fax)
>               dkramer@paulweiss.com
>               dleffell@paulweiss.com
>
> Lead Plaintiff:  Labaton Sucharow LLP
>               140 Broadway
>               New York, NY 10005
>               Attention: Thomas A. Dubbs, Esq., Louis Gottlieb, Esq.
>               and Thomas G. Hoffman, Jr., Esq.
>               (212) 818-0477 (fax)
>               tdubbs@labaton.com
>               lgottlieb@labaton.com
>               thoffman@labaton.com

G.   **Integration**

Subject to Paragraph XI.H, this Agreement constitutes the entire agreement of the

Settling Parties with respect to its subject matter, and supersedes any and all prior statements,

representations, promises or other agreements, written or oral, with respect to the subject matter

of this Agreement. In entering into this Agreement, no Settling Party has relied upon any representation, warranty or inducement not set forth expressly herein.

### H.    Confidentiality Survives

All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Agreement.

### I.    Successors

This Agreement shall be binding upon and inure to the benefit of the Settling Parties hereto and their respective heirs, successors and assigns, and upon any corporation, limited liability partnership, government or any political subdivision or agency thereof, or other entity into or with which either Settling Party hereto may merge, combine or consolidate.

### J.    Incorporation by Reference

The Supplemental Agreement and all of the Exhibits to be attached hereto shall be incorporated by reference as though fully set forth herein.

### K.    Rule of Construction

The Settling Parties have jointly drafted this Agreement, and, accordingly, any presumption or other rule of construction that any ambiguities be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

### L.    Computing Time Periods

Except with respect to the time periods in Paragraphs IV.3, X.5 and X.6, unless otherwise specified, in computing any period of time prescribed or allowed by this Agreement or by order of the court, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period shall run until the end of the next day that is not one of the aforementioned days. As used in this Paragraph, "legal holiday"

- 41 -

includes New Year's Day, the observance of the Birthday of Martin Luther King, Jr., Presidents'

Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day,

Thanksgiving Day, Christmas Day, and any other day appointed as a federal or New York State

holiday.

**M.      Third Party Beneficiaries**

Except for the provisions in Section VI relating to the Released Persons and Lead

Counsel, nothing contained in this Agreement is intended to confer upon any Person other than

the Settling Parties any benefit, release, right or remedy under or by reason of this Agreement.

**N.      Tax Consequences**

No opinion or advice concerning the tax consequences of the proposed settlement to

individual Settlement Class Members is being given or will be given by the Settling Parties or

their Counsel; nor is any representation or warranty in this regard made by virtue of this

Agreement.  Each Settlement Class Member's tax obligations, and the determination thereof, are

the sole responsibility of the Settlement Class Member, and it is understood that the tax

consequences may vary depending on the particular circumstances of each individual Settlement

Class Member.

**O.      Document Return and Destruction**

Except for attorney notes, publicly available documents and information, pleadings, court

submissions and transcripts of depositions, Lead Counsel agrees to make best efforts to return to

AIG, at AIG's option, all discovery obtained from AIG within sixty (60) days after the Effective

Date or certify destruction of such discovery.

**P.      Counterparts**

This Agreement may be executed in counterparts, including by signature transmitted by

facsimile or email.  Each counterpart when so executed shall be deemed to be an original, and all

such counterparts together shall constitute the same instrument. A complete set of original executed counterparts shall be filed with the Court.

**Q.     Preliminary Approval of Agreement**

Subject to the Court's availability and approval, the Settling Parties and their respective counsel shall use their best efforts to submit the necessary papers for preliminary approval of this Agreement, including the proposed Hearing Order, attached as Exhibit C, on or before November 30, 2010.

**R.     Authority To Execute Agreement**

The undersigned signatories represent that they have authority to execute this Agreement on behalf of their clients.

**S.     Resolution of Disputes**

The Settling Parties agree that if any disputes between them arise out of the negotiation of this Agreement or the Agreement itself, such disputes shall be resolved by Hon. Layn R. Phillips (Ret.), first by means of mediation and, if unsuccessful, then Judge Phillips will resolve the disputes as sole arbitrator, to the full extent provided by law. If Judge Phillips is not available, the Settling Parties will use their best efforts to agree upon a replacement arbitrator, and if the Settling Parties are unable to agree on a replacement arbitrator, they will seek relief from the Court.

**T.     Press Releases**

The Settling Parties will exchange any proposed press releases relating to the Settlement for review and comment and will make reasonable efforts to make such exchange 24 hours, but in no event less than 12 hours, before such press release is made. The Settling Parties are not obligated to accept proposed comments made by the other Settling Party. This provision shall remain in effect until two business days following the Final Approval Date.

IN WITNESS WHEREOF, this Agreement has been executed by the Settling Parties by their duly authorized representatives signing below.

Dated:  November 30, 2010

LABATON SUCHAROW LLP

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

_____
Thomas A. Dubbs

_____
Daniel J. Kramer

140 Broadway
New York, NY 10005
(212) 907-0700

1285 Avenue of the Americas
New York, NY 10019
(212) 373-3020

COUNSEL FOR LEAD PLAINTIFF AND
THE CLASS

COUNSEL FOR AMERICAN
INTERNATIONAL GROUP, INC.

HAHN LOESER & PARKS LLP

_____
Alan S. Kopit

200 Public Square
Cleveland, OH 44114
(216) 621-0150

COUNSEL FOR LEAD PLAINTIFF AND
THE CLASS

IN WITNESS WHEREOF, this Agreement has been executed by the Settling Parties by
their duly authorized representatives signing below.

Dated:  November 30, 2010

LABATON SUCHAROW LLP

_____
Thomas A. Dubbs

140 Broadway
New York, NY 10005
(212) 907-0700

COUNSEL FOR LEAD PLAINTIFF AND
THE CLASS

HAHN LOESER & PARKS LLP

_____
Alan S. Kopit

200 Public Square
Cleveland, OH 44114
(216) 621-0150

COUNSEL FOR LEAD PLAINTIFF AND
THE CLASS

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

_____
Daniel J. Kramer

1285 Avenue of the Americas
New York, NY 10019
(212) 373-3020

COUNSEL FOR AMERICAN
INTERNATIONAL GROUP, INC.

- 44 -

**Exhibit A**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. SECURITIES LITIGATION | Master File No. 04 Civ. 8141 (DAB) |

**PROOF OF CLAIM**

**GENERAL INSTRUCTIONS**

1.      To receive a recovery from the Escrow Account, created as a result of the settlement (the "Settlement") with defendant American International Group, Inc. ("AIG"), as a member of the Settlement Class in the class action lawsuit entitled *In re American International Group, Inc. Securities Litigation*, Master File No. 04 Civ. 8141 (DAB) (the "Action"), you must complete and, on page 16 below, sign this Proof of Claim form.  If you fail to submit a timely, properly completed and addressed Proof of Claim, your claim may be rejected and you may be precluded from any recovery from the Escrow Account.  **If you received a distribution(s) from the Fair Fund and do not provide the amount of any and all of your Fair Fund distribution(s), unless the information is otherwise available, your claim will be DEFICIENT; if such deficiency is not corrected, and the Claims Administrator does not otherwise obtain the Fair Fund distribution data, your claim will be REJECTED.**

2.      If you have already submitted a Proof of Claim form ("PwC Claim" form) in connection with the previously announced settlement with defendant PricewaterhouseCoopers LLP (the "PwC Settlement"), DO NOT complete this Proof of Claim.  Instead, you must complete and submit the Release Form that will be mailed to you.  If you have not received a Release Form yet, please contact the Administrator at _____.  (However, if you have

additional transactional information related to your purchases, acquisitions or sales of AIG Securities that you did not submit on your PwC Claim form that you would like considered in the calculation of your claim in this Settlement with AIG please complete and submit this entire Proof of Claim form.)

3.      Submission of this Proof of Claim form does not ensure that you will share in the Escrow Account, even if you are a member of the Settlement Class.

4.      **YOU MUST MAIL YOUR COMPLETED AND SIGNED PROOF OF CLAIM POSTMARKED NO LATER THAN _____, 2011, ADDRESSED AS FOLLOWS**:

> *In re AIG Securities Litigation – Company Settlement*
> c/o _____
> P.O. _____
> _____

**DO NOT MAIL your Proof of Claim to the Court or to counsel for the Settling Parties.**

If you are NOT a member of the Settlement Class (as defined in the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Fairness Hearing ("Notice")) DO NOT submit this Proof of Claim form.  You are not entitled to a recovery.

5.      If you are a member of the Settlement Class and you have not timely and validly requested to be excluded from the Settlement Class, you will be bound by the terms of the Order and Final Judgment entered by the Court, WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM.

6.      Separate Proofs of Claim must be filed for each differently named or owned account (e.g., individual account, IRA account, joint account, etc.).  However, joint tenants, co-owners or UGMA custodians should file a single claim.

**DEFINITIONS**

1.      All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Notice that accompanies this Proof of Claim form.

**IDENTIFICATION OF CLAIMANT**

1.      You are a member of the Settlement Class if you purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive (the "Class Period") (including if you held the common stock of HSB Group, Inc. ("HSB")  at the time HSB was acquired by AIG in a stock for stock transaction, or if you held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock transaction, and were damaged thereby.  Excluded from the Settlement Class are (i) the Named Defendants; (ii) members of the immediate families of the individual defendants, as named in the Consolidated Third Amended Class Action Complaint in this Action; (iii) any parent, subsidiary, affiliate, officer, or director of AIG; (iv) persons or entities who timely and validly made requests for exclusion from the Settlement Class and did not thereafter rescind such requests; (v) any entity in which any excluded person or entity has a controlling interest; and (vi) the legal representatives, heirs, successors and assigns of any excluded person or entity.

2.      "AIG Securities" are all publicly-traded securities issued by AIG, whether debt or equity securities.  Options on AIG common stock are included in this definition.  Please see Table 4 in the Notice for a list of the AIG bonds eligible for a recovery.

3.      If you held AIG Securities in your name, you are the beneficial purchaser or acquirer as well as the record purchaser or acquirer.  If, however, you purchased or otherwise acquired AIG Securities during the Class Period through a third party, such as a nominee or brokerage firm, and the securities were registered in the name of that third party, you are the

beneficial purchaser or acquirer of these securities, *but the third party* is the record purchaser or acquirer of these securities.

4.     Use Part I of this form entitled "Claimant Identification" to identify each beneficial purchaser or acquirer of AIG Securities that forms the basis of this claim, as well as the purchaser or acquirer of record if different.  THIS CLAIM MUST BE SUBMITTED BY THE ACTUAL <u>BENEFICIAL</u> PURCHASER(S), OR AUTHORIZED ACQUIRER(S) OR LEGAL REPRESENTATIVE(S) OF SUCH BENEFICIAL PURCHASER(S) OR ACQUIRER(S), OF THE AIG SECURITIES UPON WHICH THIS CLAIM IS BASED.

5.     All joint beneficial purchasers or acquirers must sign this claim.  Executors, administrators, guardians, conservators and trustees must complete and sign this claim on behalf of persons or entities represented by them and their authority must accompany this claim and their titles or capacities must be stated.  The Social Security (or taxpayer identification) number and telephone number of one of the beneficial owner(s) may be used in verifying this claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of your claim.

**INSTRUCTIONS FOR THE IDENTIFICATION OF TRANSACTION(S)**

1.     If you have already submitted a complete Proof of Claim form in connection with the PwC Settlement setting forth all your purchases, acquisitions and sales of AIG Securities during the Class Period, DO NOT do so again.

2.     If you have NOT already submitted a Proof of Claim form in connection with the PwC Settlement or if your PwC Claim form did NOT set forth all your purchases, acquisitions and sales of AIG Securities during the Class Period and you would like additional transactions to be considered in this Settlement, use Parts II through IV of this form to supply all required details of all your transaction(s) in AIG Securities.  If you need more space or additional

schedules, attach separate sheets giving all of the required information in substantially the same form.  Sign and print or type your name on each additional sheet.

3.      On the schedules, provide all of the requested information with respect to: (i) ***all*** of your holdings of AIG Securities as of the beginning of trading on October 28, 1999; (ii) ***all*** of your purchases, other acquisitions and sales of AIG Securities which took place at any time beginning October 28, 1999 through June 29, 2005, inclusive (or through December 15, 2010 for sales of AIG debt securities); and (iii) proof of your holdings of AIG Securities as of the close of trading on June 29, 2005 (or as of the close of trading on December 15, 2010 for AIG debt securities), whether such purchases, acquisitions, sales or transactions resulted in a profit or a loss.  Failure to report all such transactions may result in the rejection of your claim.

4.      List each purchase, acquisition, sale and transaction in the Class Period separately and in chronological order, by trade date, beginning with the earliest.  You must accurately provide the month, day and year of each such transaction you list.  All holdings and transactions must be documented.

5.      Copies of broker confirmations, monthly account statements or other documentation of your purchases, acquisitions, sales or transactions in AIG Securities must be attached to your claim.  **DO NOT SEND ORIGINALS**.  Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.  The Parties and the Administrator do not independently have information about your investments in AIG Securities. The Administrator may also request additional information as needed to efficiently and reliably calculate your losses.

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

*In re AIG Securities Litigation – Company Settlement*
**No. 04-cv-8141**
**PROOF OF CLAIM FORM**

Must be Postmarked No Later Than:
_____, 2011

Please Type or Print

**PART I:**    **CLAIMANT IDENTIFICATION**

_____

Beneficial Owner's Name *(as it appears on your brokerage statement)*

_____

Joint Beneficial Owner's Name *(as it appears on your brokerage statement)*

_____

Street Address

_____        _____

City                              State              Zip Code

_____        _____

Foreign Province          Foreign Country

_____        _____

Social Security Number    or    Taxpayer Identification Number

Check appropriate box:
☐ Individual or Sole Proprietor  ☐ Pension Plan  ☐ Corporation  ☐ Partnership
☐ Trust        ☐    IRA    ☐ UGMA Custodian  ☐ Other _____

_____  _____ (Day)        _____  _____ (Evening)
Area Code  Telephone Number        Area Code    Telephone Number

_____        _____

e-mail address                          Facsimile Number

Were your shares held in "street name" (*i.e.,* in the name of a stock broker or other nominee)?  If so, that broker or nominee is the record owner and you are required to fill in the following line.

- 6 -

Record Owner's Name (if different from beneficial owner listed above); e.g. brokerage firm, bank, nominee, etc.

**PART II:**     **SCHEDULE OF TRANSACTIONS IN AIG COMMON STOCK**

    A.     **Number of shares of AIG common stock held** at the beginning of trading on **October 28, 1999**: _____

    B.     **Purchases or other acquisitions** (including through exchange of HSB stock or AGC stock) of AIG common stock on or after **October 28, 1999** through and including **April 1, 2005** (in chronological order):

| Trade Date<br>Month Day Year | Number of Shares<br>Purchased or Acquired | Total Purchase Price* |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |
| 4. _____ | _____ | _____ |
| 5. _____ | _____ | _____ |

    C.     **Sales** on or after **October 28, 1999** through and including **June 29, 2005** of AIG common stock (in chronological order):

| Trade Date<br>Month Day Year | Number of<br>Shares Sold | Total Sales Price* |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |
| 4. _____ | _____ | _____ |
| 5. _____ | _____ | _____ |

    D.     **Number of shares of AIG common stock held** at close of trading on **June 29, 2005**: _____

**\* Excluding taxes, fees and commissions.**

- 7 -

**PART III:**     **SCHEDULE OF TRANSACTIONS IN AIG DEBT SECURITIES**

**POSITIONS**

A.     **Beginning and Ending Positions**:  I owned the following principal amounts of AIG Bonds/Notes held at the close of business on **Oct. 27, 1999,** at the close of business on **April 1, 2005,** at the close of business on **June 29, 2005,** and at the close of business on **December 15, 2010** (please provide separately for each particular AIG Bond/Note):

| Coupon Rate | Maturity Date | Cusip | Principal amount of this particular bond/note held as of the close of business on Oct. 27, 1999 | Principal amount of this particular bond/note held as of the close of business on  April 1, 2005 | Principal amount of this particular bond/note held as of the close of business on June 29, 2005 | Principal amount of this particular bond/note held as of the close of business on December 15, 2010 |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

**PURCHASES AND SALES**

B.     **Purchases/Acquisitions**:  I made the following purchases or acquisitions of AIG Bonds/Notes on or after **Oct. 28, 1999** through and including **April 1, 2005** (in chronological order):

| Coupon Rate/Maturity | Trade Date Month/ Day/ Year | Principal Amount | Cusip | Purchase Price per $1000 of Principal Amount* | Aggregate Cost* |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

**\* Excluding taxes, fees and commissions.**

C.    **Sales:**  I made the following sales of AIG Bonds/Notes on or after **Oct. 28, 1999** through and including **December 15, 2010** (in chronological order):

| Coupon Rate/Maturity | Trade Date Month/ Day/ Year | Principal Amount | Cusip | Sale Price per $1000 of Principal Amount* | Aggregate Received* |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

*If you require additional space, attach extra schedules in the same format as above.  Sign and print your name on each additional page.*

**PART IV:**    **SCHEDULE OF TRANSACTIONS IN AIG OPTION SECURITIES**

**AIG CALL OPTIONS**

A.    **Beginning Position**: At the close of business on **Oct. 27, 1999,** I owned the following call options on AIG common stock (in chronological order):

| Date of Purchase (Month/Day/Year) | No. of Contracts | Cusip | Expiration Month & Year/Strike Price (e.g. May 2004/$45) | Purchase Price Per Contract | Amount Paid | Insert an "E" if Exercised or an "X" if Expired | Exercise Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

B.    **Purchases**:  I made the following purchases of call options on AIG common stock on or after **Oct. 28, 1999** through and including **April 1, 2005** (in chronological order):

| Date of Purchase (Month/Day/Year) | No. of Contracts | Cusip | Expiration Month & Year/Strike Price of Options (e.g. May 2004/$45) | Purchase Price Per Contract | Amount Paid* | Insert an "E" if Exercised or an "X" if Expired | Exercise Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

    **\* Excluding taxes, fees and commissions.**

C.    **Sales**:  I made the following sales of the above call options on AIG common stock which call options were purchased before **April 1, 2005 (include all such sales no matter when they occurred)** (in chronological order):

| Date of Sales (Month/Day/Year) | No. of Contracts | Cusip | Expiration Month & Year / Strike Price (e.g. May 2004/$45) | Sale Price Per Contract | Amount Received* |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

    **\* Excluding taxes, fees and commissions.**

**<u>AIG PUT OPTIONS</u>**

D.    **Beginning Position**:  At the close of business on **Oct. 27, 1999,** I was obligated on the following put options on AIG common stock (in chronological order):

| No. of Contracts | Expiration Month & Year /Strike Price (e.g. May 2004/$45) | Cusip | Sale Price Per Contract | Amount Received* | Insert an "A" if Assigned or an "X" if Expired | Assign Date (Month/Day/Year) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

E.   **Sales (writing) of Put Options**:  I wrote (sold) put options on AIG common stock on or after **Oct. 28, 1999** through and including **April 1, 2005** (in chronological order):

| Date of Writing (Sale) (Month/Day/Year) | No. of Contracts | Cusip | Expiration Month & Year /Strike Price (e.g. May 2004/$45) | Sale Price Per Contract | Amount Received* | Insert an "A" if Assigned or an "X" if Expired | Assign Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

* **Excluding taxes, fees and commissions.**

F.   **Covering Transactions (Repurchases)**:  I made the following repurchases of the above put options on AIG common stock that I wrote (sold) before **April 1, 2005 (include all repurchases no matter when they occurred)** (in chronological order):

| Date of Purchase (List Chronologically) (Month/Day/Year) | No. of Contracts | Cusip | Expiration Month & Year/ Strike Price (e.g. May 2004/$45) | Price Paid Per Contract* | Aggregate Cost* |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

* **Excluding taxes, fees and commissions.**

**PART V:**     <u>**PRIOR DISTRIBUTIONS FROM THE FAIR FUND**</u>

A.     **Definition:     The "Fair Fund" means the $800 million fund deposited by AIG with the Court Registry Investment System on March 3, 2006 under the designation "SEC v. American International Group, Inc., 06 Civ. 1000 (LAP)," pursuant to the final judgment entered, on February 17, 2006, by the United States District Court for the Southern District of New York against AIG.**

B.     **Amount Received:**

Did you receive a distribution from the Fair Fund?  (**YES/NO**)  _____

If you answered **YES**, what was the amount of each distribution you received from the Fair Fund? _____

**Notice**:  **If you received a distribution from the Fair Fund and do not provide the amount of any and all of your Fair Fund distribution(s), unless the information is otherwise available, your claim will be DEFICIENT; if such deficiency is not corrected, and the Claims Administrator does not otherwise obtain the Fair Fund distribution data, your claim will be REJECTED.**

**YOU ARE NOT FINISHED, PLEASE READ THE RELEASE AND SIGN ON PAGE 16 BELOW.  FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**

**PART VI:     SUBMISSION TO THE JURISDICTION OF THE COURT <u>AND ACKNOWLEDGMENTS</u>**

I (We) submit this Proof of Claim under the terms of the Agreement of Compromise and Settlement, dated November 30, 2010 ("Agreement") described in the Notice.  I (We) also submit to the jurisdiction of the United States District Court for the Southern District of New York with respect to my (our) claim as a member of the Settlement Class and for purposes of enforcing the release set forth herein.  I (We) further acknowledge that I (we) will be bound by and subject to the terms of any Final Judgment that may be entered in the Action.  I (We) agree to furnish additional information to the Administrator to support this claim if requested to do so. I (We) have not submitted any other claim in this Settlement covering the same purchases,

- 12 -

acquisitions, sales or holdings of AIG Securities during the Class Period and know of no other persons or entities having done so on my (our) behalf.

**PART VII:** <u>**RELEASE**</u>

1.  I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release and discharge from the Released Claims each and all of the Released Persons as those terms are defined in the accompanying Notice.

2.  This release shall be of no force or effect unless and until the Court approves the Agreement, the Effective Date (as defined in the Agreement) has occurred and AIG has funded the Settlement as set forth in the Agreement.

3.  Effective upon the Effective Date, with respect to any and all Released Claims, I (we) hereby expressly waive the provisions, rights and benefits of California Civil Code § 1542 and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

4.  I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

5.  I (We) hereby warrant and represent that I (we) have included information about all of my (our) purchases, acquisitions, and sales and other transactions in AIG Securities which occurred during the Class Period (October 28, 1999 through April 1, 2005, inclusive) and the number of shares or units of AIG Securities held by me (us) at the requested periods of time.

- 13 -

## SUBSTITUTE FORM W-9

Request for Taxpayer Identification Number ("TIN") and Certification

PART 1

NAME: _____

Check appropriate box:

| ☐ Individual/Sole Proprietor | | ☐ Pension Plan |
|---|---|---|
| ☐ Corporation | ☐ Partnership | ☐ Trust |
| ☐ IRA | ☐ Other | |

Enter TIN on appropriate line.

For individuals, this is your social security number ("SSN").

For sole proprietors, you must show your individual name, but you may also enter your business or "doing business as" name.  You may enter either your SSN or your Employer Identification Number.

__ __ __ - __ __ - __ __ __ __         or         __ __ - __ __ __ __ __ __ __
Social Security Number                               Employer Identification Number

PART 2

For Payees Exempt from Backup Withholding

If you are exempt from backup withholding, enter your correct TIN in Part 1 and write "exempt" on the following line: _____.

- 14 -

**PART VIII:   <u>CERTIFICATION</u>**

UNDER THE PENALTY OF PERJURY, I (WE) CERTIFY THAT:

1.      I (We) have read the contents of the Notice and the Proof of Claim, including the releases provided for in the Settlement;

2.      I (We) hereby warrant and represent that I (we) am (are) Settlement Class Member(s), as defined in the Notice, and am (are) not excluded from the Settlement Class as defined herein and in the Notice;

3.      I (We) own(ed) the AIG Securities identified in the Proof of Claim, or that, in signing and submitting this Proof of Claim, I (we) have the authority to act on behalf of the owner(s) thereof;

4.      I (We) hereby warrant and represent that the amount that I (we) have reported in Part V of this form concerning distributions from the Fair Fund is accurate.

5.      I (We) desire to participate in the settlement described in the Notice and agree to the terms and conditions thereof;

6.      I (We) waive trial by jury, to the extent it exists, and agree to the Court's summary disposition of the determination of the validity or amount of the claim made by this Proof of Claim;

7.      The number shown on this form is my correct TIN;

8.      I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1)(C) of the Internal Revenue Code because:  (a) I am (we are) exempt from backup withholding; or (b) I (we) have not been notified by the Internal Revenue Service that I am (we are) subject to backup withholding as a result of a failure to report all

interest or dividends; or (c) the Internal Revenue Service has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE:      If you have been notified by the Internal Revenue Service that you are subject to backup withholding, you must cross out the above paragraph.  The Internal Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

9.      I (We) declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct and that the documents submitted herewith are true and genuine.

Executed this _____ day of _____, in _____, _____.
                                                   (Month / Year)                    (City)                 (State / Country)


_____
(Sign your name here)

_____
(Type or print your name here)

_____
(Signature of Joint Claimant, if any)

_____
(Print your name here)

_____
(Capacity of person(s) signing, *e.g.*, Beneficial Purchaser, Executor or Administrator)

**ACCURATE CLAIMS PROCESSING TAKES A**
**SIGNIFICANT AMOUNT OF TIME.**
**THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1.  Please sign the above release and certification.

2.  Remember to attach supporting documentation.

3.  Do not send original or copies of stock certificates.

4.  Keep a copy of the completed claim form and documentation for your records.

5.  If you do not receive an acknowledgment postcard of receipt of your claim form within forty (40) days of your mailing the form, then please call the Administrator, toll-free, at _____.

6.  If you move, please send the Administrator your new address: In re AIG Securities Litigation – Company Settlement, c/o _____, P.O. Box _____, _____, (800) _____, www._____.

**Exhibit B**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
:
IN RE AMERICAN INTERNATIONAL     :     Master File No. 04 Civ. 8141 (DAB) (AJP)
GROUP, INC. SECURITIES LITIGATION :
:     **NOTICE OF PROPOSED**
:     **SETTLEMENT, MOTION FOR**
:     **ATTORNEYS' FEES AND EXPENSES**
:     **AWARD AND FAIRNESS HEARING**
———————————————————————— x

**If You Purchased or Otherwise Acquired Securities Issued by
American International Group, Inc. ("AIG") During the Period from October 28, 1999
through April 1, 2005, Inclusive, ("Class Period") and Were Damaged Thereby,
You May Be Entitled to Share in a $725 Million Settlement with
<u>American International Group, Inc.</u>**

**PLEASE READ THIS NOTICE CAREFULLY.
A Federal Court Authorized This Notice. This Is Not A Solicitation.
Your Legal Rights Are Affected Whether You Do Or Do Not Act.**

1.    <u>**Statement of Plaintiff Recovery**</u>:    This Notice advises you of a proposed
partial settlement (the "Settlement") consisting of $175 million in cash, plus interest as it
accrues, and $550 million in cash or AIG common stock (which may be sold in order to provide
an all cash recovery for Settlement Class Members) for a total payment by AIG of $725 million
(the "Settlement Amount"), of a consolidated class action lawsuit brought by the Ohio Public
Employees Retirement System, State Teachers Retirement System of Ohio and Ohio Police &
Fire Pension Fund (collectively, "Lead Plaintiff" or "the Ohio State Funds"), on behalf of the
Settlement Class against AIG and other defendants. This Settlement is a final resolution of the
Claims brought on behalf of the Settlement Class against AIG and certain related defendants.

This AIG Settlement is separate from the settlement with defendant PricewaterhouseCoopers
LLP, previously announced ("PwC Settlement").

The action alleges, among other things, that during the Class Period, defendants made materially
false and misleading statements and omissions in connection with the involvement of AIG in an
allegedly illegal market division scheme with Marsh & McLennan Companies ("Marsh") and
others, as well as an alleged accounting fraud that led to AIG's $3.9 billion restatement or
adjustment of earnings in May 2005.  The action also alleges certain market manipulation claims.
The Consolidated Third Amended Complaint ("Complaint") alleges violations of Sections 11
and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b), 20(a), and 20A of
the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated
thereunder (the "Action").

1

The Settlement will resolve all claims against AIG and certain related defendants and will create a settlement fund to pay the claims of investors who purchased or otherwise acquired AIG's publicly-traded common stock, debt and options during the Class Period. (*See* below at page 7 for more information about eligible "AIG Securities.")  The Distribution Amount (the Settlement Amount less any Notice and Administrative Expenses, attorneys' fees and litigation expenses awarded to Lead Plaintiff's counsel, expenses awarded to Lead Plaintiff and Tax Expenses) will be distributed in accordance with a proposed plan of allocation (the "Plan of Allocation"), which is described herein.  Based on Lead Plaintiff's damages consultant's estimate of the number of shares of common stock entitled to participate in the Settlement, given the allocation of 5% of the recovery to debt purchasers and assuming that all shares entitled to participate do so, Lead Plaintiff estimates that the average recovery per damaged share would be approximately $____per share, before deduction of any court-awarded fees and expenses.[1]  An individual Class Member's actual recovery will depend on many factors, for example: (1) the total number of claims submitted; (2) when the Settlement Class Member purchased AIG Securities during the Class Period; (3) the purchase price paid; (4) the type of security bought; and (5) whether those AIG Securities were held at the end of the Class Period or sold during the Class Period (and, if sold, when they were sold and the amount received).  *See* the Plan of Allocation beginning on page 15 for more information on your potential Recognized Loss.

2. **Reasons for Settlement**: The Settlement resolves claims against AIG for allegedly violating the federal securities laws by allegedly failing to disclose the truth about certain of its business practices and financial results and for damages allegedly caused by these practices and by market manipulation of AIG's securities. However, the Settlement is not and should not be construed as an admission of any fault, liability or wrongdoing whatsoever by AIG. In light of the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff believes that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class. Lead Plaintiff believes that the Settlement provides a substantial benefit in the form of $175 million in cash, plus $550 million in cash or AIG common stock (which may be sold in order to provide an all cash recovery for Settlement Class Members), less the various deductions described in this Notice, as compared to the risks and delays of proceeding with the Action against AIG. These risks include the fact that there is no assurance that Lead Plaintiff would recover as much as was achieved in this Settlement at a later stage in the litigation. Moreover, even if the case were to proceed and a later recovery obtained, it would take several more years of expert discovery, motion practice, trial and further appeals to obtain such a recovery, during which time AIG would have the opportunity to assert substantial defenses to the claims asserted against it.  The risks also include that AIG could prevail in all or part of the Action, in which case Lead Plaintiff may obtain no recovery at all from AIG.

3. **Statement of Potential Outcome if the Case Against AIG Continued**: Lead Plaintiff and AIG (collectively, the "Settling Parties") do not agree on the average amount of damages per share that would be recoverable even if Lead Plaintiff was to prevail on the claims asserted against AIG.  AIG denies all liability.  In addition, the Settling Parties disagree on,

---

[1] An allegedly damaged share might have been traded more than once during the Class Period, and the indicated average recovery per share would be the total for all purchasers of that share.

2

**Questions? Call Toll-Free (800) _____**

among other things: (i) whether certain statements made by AIG were false; (ii) whether AIG knew, or was severely reckless in not knowing, that certain of its statements and omissions about AIG's business and financial results were false or misleading; (iii) whether the alleged misstatements and omissions were material to investors; (iv) whether AIG engaged in actions constituting market manipulation of its securities; (v) the amount of inflation, if any, caused by the alleged misrepresentations and omissions; (vi) the amount of damages, if any, caused by the alleged market manipulation of AIG's securities (vii) the appropriate economic models for determining the amounts by which AIG's securities were allegedly artificially inflated (if at all) during the Class Period, (viii) the effect of various market forces influencing the trading prices of AIG's securities during the Class Period, and (ix) whether a class should have been certified for purposes other than the Settlement.

4.     **<u>Statement of Attorneys' Fees and Expenses Sought</u>**: Lead Plaintiff's counsel, Labaton Sucharow LLP and Hahn Loeser & Parks LLP (collectively, "Lead Counsel"), intend to apply for an award of attorneys' fees on behalf of all plaintiffs' counsel of _____% of the Escrow Account, plus interest as it accrues, and to seek reimbursement of litigation expenses paid and incurred in connection with the prosecution and resolution of the claims against AIG (the "Litigation Expenses"), in an amount not to exceed $____ million.  Lead Counsel represents that this is consistent with a fee agreement entered into between Lead Counsel and the Ohio Attorney General on behalf of the Ohio State Funds.  In addition, Lead Plaintiff will, by separate application, ask the Court to reimburse it and/or the Office of the Attorney General of Ohio from the Settlement Amount for costs and expenses they incurred directly related to their representation of the Settlement Class, in an amount not to exceed $ _____.  If the Court approves Lead Plaintiff's counsel's fee and expense application and Lead Plaintiff's application for reimbursement, the average cost per share will be _____ per share.

5.     **<u>Further Information</u>**: Further information regarding the Settlement and this Notice may be obtained by contacting the Administrator: *In re AIG Securities Litigation - Company Settlement*, c/o _____, P.O. Box ____, _____, (800) __-____, www._____; or Counsel: Labaton Sucharow LLP, 140 Broadway, NY, NY  10005, (866) 779-0843, www.labaton.com.  **Please Do Not Call the Court or AIG With Questions About the Settlement.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY** _____ | The way to get a payment.  However, if you already submitted a claim form in the PwC Settlement, you do not have to do so again. Instead, you must complete a Release Form. |
| **EXCLUDE YOURSELF BY** _____ | Get no payment and remove yourself from the Settlement Class. This is the only option that allows you to ever bring or be part of any *other* lawsuit against AIG and the other "Released Persons" about the "Released Claims." |
| **OBJECT BY** _____ | Write to the Court about why you do not like the Settlement. You will still be a member of the Settlement Class. |
| **GO TO A HEARING ON** _____ | Ask to speak in Court about the Settlement at the Fairness Hearing. |
| **DO NOTHING** | Get no payment.  Give up rights. |

# TABLE OF CONTENTS

Why did I get this notice?............................................................................................x

How do I know if I am part of this Settlement?.........................................................x

What recovery does the Settlement provide?.............................................................x

Why is there a Settlement?  What are Lead Plaintiff's reasons for the Settlement ......................x

What might happen if there were no Settlement?........................................................x

Do I have a lawyer in the case? How will the lawyers be paid?....................................x

What rights am I giving up by agreeing to the Settlement?.........................................x

What is this case about?.............................................................................................x

What has happened in this case so far?......................................................................x

How much will my payment be? ...............................................................................x

How do I participate in the settlement? What do I need to do?...................................x

What if I already submitted a claim form in the PwC Settlement? ..............................x

What if I do not want to participate in the Settlement? How do I exclude myself?.......................x

What if I want to object to the Settlement? When and where will the Court decide whether to approve the Settlement? May I speak at the Hearing if I do not like the Settlement?...............................................................................................................x

Special Notice to Securities Brokers and other Nominees ..........................................x

Can I see the Court file? Whom should I contact if I have questions?.........................x

**Questions? Call Toll-Free (800) _____**

| **Why did I get this notice?** |
| --- |

You or someone in your family may have purchased or acquired publicly-traded securities issued by AIG during the period from October 28, 1999 through April 1, 2005, inclusive. The Court sent you this Notice because, as a potential Settlement Class Member, you have a right to know about the proposed Settlement of the claims asserted in this Class Action against AIG and your options before the Court determines whether to approve the Settlement.  If the Court approves the Settlement, after all objections and appeals are resolved, a claims administrator (the "Administrator") will make payments pursuant to the terms of the Settlement.

The Court in charge of this case is the United States District Court for the Southern District of New York and the case is known as *In re American International Group, Inc. Securities Litigation*, Master File No. 04-8141 (DAB). Lead Plaintiff filed this lawsuit on behalf of itself and as representative of the Settlement Class.

Lead Plaintiff has reached settlements or contingent settlements with all defendants in the Action, including, as previously noticed, defendant PricewaterhouseCoopers LLP.  If approved by the Court, these settlements could total more than $1 billion for the Settlement Class.  However, none of these additional settlements has been finally approved by the Court.[2]

The Settlement with AIG will also release all claims against defendants John A. Graf, Eli Broad, Martin J. Sullivan, Thomas R. Tizzio, Wachovia Securities, Inc. and Merrill Lynch & Co.

This Notice explains the lawsuit, the Settlement with AIG, your legal rights, what benefits are available, who is eligible for them, and how you may receive your portion of the benefits. The purpose of this Notice is to inform you of the terms of the proposed Settlement and of a hearing to be held by the Court to consider the Settlement (the "Fairness Hearing").

The Fairness Hearing will be held at _:__ _m on _____ __, 2011 before the Honorable Deborah A. Batts, in the United States District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007, to determine:

> (a)     Whether the proposed Settlement is fair, reasonable and adequate and should be approved by the Court;

> (b)     Whether the claims against AIG and related defendants should be dismissed with prejudice as set forth in the Agreement of Compromise and Settlement, dated November 30, 2010 (the "Stipulation");

> (c)     Whether the proposed Settlement Class should be certified and Lead Plaintiff be appointed as Class Representative and Lead Plaintiff's counsel be appointed Class Counsel;

---

[2] In addition to the PwC Settlement, Lead Plaintiff has reached a $115 million contingent settlement with Maurice R. Greenberg, Howard I. Smith, Christian M. Milton, Michael J. Castelli, C.V. Starr & Co., Inc., and Starr International Company, Inc.  Lead Plaintiff also has reached a $72 million settlement with defendant General Reinsurance Corporation ("Gen Re") in 2009.  On September 10, 2010, the Court dismissed all claims in the Action against Gen Re.  On October 21, 2010, Lead Plaintiff filed a notice of appeal from the dismissal.

**Questions? Call Toll-Free (800) _____**

(d)      Whether the proposed Plan of Allocation for distributing the Settlement to Settlement Class Members is fair and reasonable and should be approved;

(e)      Whether the application by Lead Plaintiff's counsel for an award of attorneys' fees and reimbursement of litigation expenses should be approved; and

(f)      Whether, pursuant to Section 3(a)(10) of the Securities Act of 1933, as amended, the terms and conditions of the Settlement are fair to potential recipients of Settlement Stock issued in connection with this Settlement and that the issuance, sale, exchange or distribution of such stock is not subject to the registration requirements under the Securities Act of 1933 and prospectus delivery requirements of the securities laws.

The issuance of this Notice is not an expression of the Court's opinion on the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement.  If the Court approves the Settlement, payment will be made after all appeals, if any, are resolved and after the completion of all claims processing.  Please be patient.

---

**How do I know if I am part of this Settlement?**

---

You are part of this Settlement if you are within the definition of the Settlement Class and you do not take steps to exclude yourself.  The Settlement Class covered by this settlement consists of: all persons and entities who purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive, as well as all persons and entities who held the common stock of HSB Group, Inc. ("HSB")  at the time HSB was acquired by AIG in a stock for stock transaction, and all persons and entities who held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock transaction, and who were damaged thereby, excluding persons who make timely and valid requests for exclusion from the class.  (*See* the Plan of Allocation for more information about eligible securities.)

"AIG Securities" means any and all publicly-traded securities issued by American International Group, Inc., whether debt or equity securities.  Options on AIG common stock are also eligible for a recovery in the Settlement.

Excluded from the Settlement Class are the defendants in the Action, members of the immediate families of the individual defendants, any parent, subsidiary, affiliate, officer, or director of defendant AIG, any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person. Also excluded from the Settlement Class are any persons who exclude themselves by timely filing a request for exclusion in accordance with the requirements set forth below. (*See* "What if I do not want to participate in the Settlement? How do I exclude myself?")

**RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A MEMBER OF THE SETTLEMENT CLASS OR ARE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.**

**Questions? Call Toll-Free (800) _____**

**TO RECEIVE PROCEEDS FROM THE SETTLEMENT, YOU MUST SUBMIT A PROOF OF CLAIM OR RELEASE FORM BY _____ __, 2011**

| **What recovery does the Settlement provide?** |
| --- |

In exchange for the Settlement and dismissal of the Released Claims, AIG has agreed to pay $175 million in cash into an escrow account (the "Escrow Account") within ten business days of preliminary approval of the Settlement.  AIG has also agreed to pay an additional $550 million in cash, if it is able to raise the funds through the sale of stock as described below.  Alternatively, if it does not raise the funds, Lead Plaintiff may, but it is not required to, elect to have AIG deliver $550 million in unrestricted, transferable AIG common stock, in order to consummate the Settlement.  In all, AIG is obligated to pay consideration in the amount of $725 million for settlement of the claims.

More specifically, AIG's payment of $550 million in cash into the Escrow Account is conditioned on AIG consummating an offering of its common stock (a "Qualified Offering"), or a series of offerings, in which it raises net proceeds of at least $550 million at any time before the Court enters the proposed Order and Final Judgment (the "Final Judgment") approving the Settlement ("Final Judgment Date").  AIG will use its best efforts to consummate a Qualified Offering, but the decision as to whether market conditions or pending or contemplated corporate transactions make it commercially reasonable to proceed with such an offering are subject to AIG's unilateral discretion.  However, if AIG effects a registered secondary offering of common stock on behalf of the U.S. Treasury, resulting in the U.S. Treasury receiving proceeds of at least equal to $550 million, AIG shall be obligated to fund the Escrow Account with the $550 million in cash in addition to the $175 million paid after preliminary approval.  AIG may also elect to fund the Escrow Account with cash in advance of the Final Judgment Date through other means.

If AIG has not funded the Escrow Account with the full $725 million in cash by the Final Judgment Date, the Lead Plaintiff can take certain actions.  It can terminate the Settlement, extend the amount of time AIG has to make a Qualified Offering and fund the balance, or take unrestricted transferable AIG common stock valued at $550 million (the "Settlement Stock") instead of cash.  In the event that AIG issues Settlement Stock, the issuance will not be subject to registration and prospectus delivery requirements of the securities laws, provided that the Court determines, at the Fairness Hearing described above, that the Settlement Stock is exempt from such requirements because the Settlement is fair.

If Lead Plaintiff decides to take the Settlement Stock instead of cash, Lead Plaintiff may request that the Court appoint an Equity Manager to oversee the liquidation of the Settlement Stock in a manner designed to maximize its value to the extent reasonably possible, and promptly deposit all proceeds thereof in the Escrow Account.  The Equity Manager will be entitled to a reasonable fee for these services.  The Equity Manager will not be liable to anyone for any action taken or omitted by them relating to the liquidation of the Settlement Stock except on a finding by the Court that the Equity Manager acted, or omitted an act, in bad faith or reckless disregard of its fiduciary duties.  However, Lead Plaintiff will determine, in its sole discretion, whether to

deliver the Settlement Stock to the Equity Manager for liquidation or deliver the Settlement Stock directly to Authorized Claimants.

The Settlement Amount will be divided, after deduction of Court-awarded attorneys' fees and expenses, Notice and Administrative Expenses, any applicable taxes, and any other expenses and awards the Court may order ("Distribution Amount"), among all Settlement Class Members who timely submit valid Proof of Claim forms that show a Recognized Loss. Your share of the Distribution Amount will depend on several things, including: (1) the amount of Recognized Losses of other Settlement Class Members who file valid Proofs of Claim; (2) how many AIG Securities you bought; (3) how much you paid for them; (4) the type of security bought; (5) when you bought them; and (6) whether or when you sold them (and, if so, for how much you sold them).

Your Recognized Loss will be calculated according to the formula shown below in the Plan of Allocation.  It is unlikely that you will get a payment for your entire Recognized Loss, given the number of potential Settlement Class Members with Recognized Losses.  After all Settlement Class Members have sent in their Proof of Claim forms, the payment you get will be a portion of the Distribution Amount equal to your Recognized Loss divided by the total of all Settlement Class Members' Recognized Losses and multiplied by the total Distribution Amount.  If you received any payment from the fair fund created in *SEC v. American International Group, Inc.*, 06 Civ. 1000 (S.D.N.Y.) (LAP) ("Fair Fund Distribution"), your Recognized Loss will be reduced by seven-eights (7/8th) of your Fair Fund Distribution ("Fair Fund Ratio Amount").  In no event will you recover more than your Recognized Loss reduced by your Fair Fund Ratio Amount.  No one will receive a distribution from the Settlement that exceeds 100% of their total Recognized Loss(es).  (*See* the Plan of Allocation beginning on page 15 for more information.)

Once all the Proofs of Claim are processed and claims are calculated, Lead Plaintiff's counsel, without further notice to the Settlement Class, will apply to the Court for an order distributing the Distribution Amount to the members of the Settlement Class.  Counsel will also ask the Court to approve payment of the Administrator's fees and expenses incurred in connection with administering the Settlement that have not already been reimbursed.

### Why is there a Settlement?  What are Lead Plaintiff's reasons for the Settlement?

Under the proposed Settlement, the Court will not decide the merits of the claims in the Action in favor of either the Lead Plaintiff or AIG.  By agreeing to a Settlement, both the Lead Plaintiff and AIG avoid the costs and risks of litigating the claims in the Action.  By accepting the Settlement, Settlement Class Members will be compensated immediately for the AIG claims.  In light of the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff believes that the proposed Settlement is fair, reasonable and adequate and in the best interest of the Settlement Class Members.

Lead Plaintiff and Lead Plaintiff's counsel believe that the claims asserted against AIG have merit.  However, they recognize the risks of, expense of and delay associated with the continued prosecution of the claims against AIG in the Action.  AIG has denied and continues to deny each and every allegation of liability or damage to the Settlement Class or any member thereof.  Lead

Plaintiff and their counsel have taken into account the issues that would have to be decided by a jury including:  (i) whether each of the alleged misrepresentations and omissions made by AIG was false; (ii) if false, whether each of those alleged misrepresentations and omissions by AIG was material; (iii) whether AIG acted knowingly or recklessly in making the alleged misrepresentations and omissions; (iii) whether AIG engaged in market manipulation of its securities; and (iv) the amount of damages, if any, caused by the alleged misrepresentations and omissions by AIG or the alleged market manipulation.

Lead Plaintiff and Lead Plaintiff's counsel have also considered the uncertain outcome and trial risk in complex lawsuits like this one.  Lead Plaintiff believes that a recovery now will provide an immediate benefit to the Settlement Class Members, which is superior to the risk of proceeding with the claims against AIG.  In addition, there was a risk that any future judgment against AIG would be reduced by as much as $800 million resulting from AIG's February 2006 settlement with the Securities and Exchange Commission.  Considering these factors and balancing them against the certain and substantial benefits that the Settlement Class will receive as a result of the Settlement, Lead Plaintiff and Lead Plaintiff's counsel determined that the Settlement described herein is fair, reasonable and adequate, and that it is in the best interests of the Settlement Class to settle the claims against AIG on the terms set forth in the Stipulation and this Notice.

## What might happen if there were no settlement?

If there were no settlement of the claims against AIG and Lead Plaintiff failed to establish any essential legal or factual element of its claims, neither it nor the Settlement Class would recover anything from AIG.  Also, if AIG was successful in proving any of its defenses, the Settlement Class likely would recover substantially less than the amount provided in the Settlement, if anything at all.

## Do I have a lawyer in the case? How will the lawyers be paid?

The Court appointed the law firms of Labaton Sucharow LLP in New York, New York and Hahn Loeser & Parks LLP in Cleveland, Ohio to represent the proposed class.  You will not be separately charged for the work done by the lawyers who worked on this lawsuit.  If you want to be represented by your own lawyer, you may hire one at your own expense.

The Court will determine the amount (if any) of Lead Plaintiff's attorneys' fees and expenses, which will be paid from the Settlement Amount.  Any attorneys' fees awarded to Lead Plaintiff's counsel will be distributed, in part, to additional counsel who worked on this lawsuit under the supervision and direction of Lead Plaintiff's counsel based upon the amount, quality and importance of work they performed.  Lead Plaintiff estimates that in the aggregate such amount will be less than [_____]% of the total attorneys' fees awarded by the Court.

Lead Plaintiff's counsel has not received any payment for its services in pursuing claims against AIG on behalf of the Settlement Class, nor has it been reimbursed for its considerable litigation expenses. In this type of litigation, it is customary for counsel to be awarded a percentage of the

settlement fund recovered as its attorneys' fees, and to receive reimbursement of the expenses advanced in the prosecution of the action. Lead Plaintiff's counsel intends to apply to the Court for an award of attorneys' fees of _____% of the Escrow Account, including any accumulated interest, in connection with this Settlement. Lead Plaintiff's counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $____million.  If the applications for attorneys' fees and reimbursement of expenses is approved by the Court, the average cost per share would be less than $_____ per share.

The fee requested by Lead Plaintiff's counsel would compensate it for its efforts in achieving the Settlement for the benefit of the Settlement Class and willingness to undertake this representation on a contingency basis. The fee requested is within the range of fees awarded to plaintiffs' counsel under similar circumstances in litigation of this type.  NEITHER THE COURT NOR THE DEFENDANTS HAVE EXPRESSED ANY OPINION ON THE APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES.

---

### What rights am I giving up by agreeing to the Settlement?

---

If the Settlement is approved, the Court will enter an Order and Final Judgment (the "Final Judgment") ending all the claims against AIG and precluding Settlement Class Members from continuing to litigate the claims against AIG and the Released Persons.  The Final Judgment will (i) dismiss the claims against AIG with prejudice; and (ii) provide that Lead Plaintiff and all other Settlement Class Members, except those who validly and timely request to be excluded from the Settlement Class, shall, upon the Effective Date (as defined in the Stipulation of the Settlement), on behalf of themselves and their respective heirs, executors, administrators, successors and assigns and all persons acting in concert with any such person shall have fully, finally and forever released, relinquished, acquitted and discharged the Released Persons from the Released Claims. The release also constitutes an express waiver and relinquishment, to the fullest extent permitted by law, of the provisions, rights and benefits of California Civil Code § 1542, and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

"Released Claims" means and includes any and all Claims, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, suspected or unsuspected, existing now or to be created in the future, whether unasserted or asserted in the Complaint, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere, and whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, that Lead Plaintiff, the Settlement Class or Settlement Class Members, and/or each of their respective present, former and future parents, subsidiaries, agencies, connected firms, instrumentalities, branches, divisions and affiliates, the present, former or future employees, members, partners, principals, associates, officers and directors, attorneys, advisors, trustees, administrators, fiduciaries, consultants,

representatives, accountants and auditors, insurers, attorneys, and agents or each of them, and the predecessors, estates, heirs, owners, executors, trusts, trustees, administrators, successors and assigns of each, ever had, now have or hereafter can, shall or may have against the Released Persons, (a) arising out of, in any way related to, or in connection with the allegations, transactions, facts, matters or occurrences that gave rise to the claims alleged in the Action, and are or could have been advanced in the Action, and/or (b) in any way arise out of, are based upon, relate to or concern the purchase, acquisition, disposition or sale of, or other transaction in AIG Securities during the Class Period, including without limitation, claims that arise out of or relate to any disclosures, Securities and Exchange Commission filings, press releases, registration statements, offering memoranda or other public statements by AIG during the Class Period.

The Stipulation defines "Claims" as any and all claims, demands, actions, causes of action, obligations, debts, judgments and liabilities of any kind, nature and description, whether at law or in equity or upon any legal or equitable theory, whether contractual, common law or statutory, whether arising under federal, state, common or foreign law, whether based on allegedly intentional, negligent or reckless conduct, whether asserted or unasserted as claims, cross-claims, counterclaims or third-party claims in any pleadings in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency or other forum in the United States or elsewhere, whether foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, that are related in any way to the allegations, transactions, facts, matters or occurrences that gave rise to the claims alleged in the Action or that could have been advanced in the Action.

The "Released Persons" means Eli Broad, John A. Graf, Martin J. Sullivan, Thomas R. Tizzio, Wachovia Securities, Inc., Merrill Lynch & Co., AIG and their present, former and future parents, subsidiaries, agencies, business units, connected firms, instrumentalities, branches, divisions and affiliates; and the present, former or future employees, members, partners, principals, associates, officers and directors, advisors, trustees, administrators, fiduciaries, consultants, representatives, accountants and auditors, insurers, attorneys, and agents of each of them; and the predecessors, estates, heirs, owners, executors, trusts, trustees, administrators, successors and assigns of each of them.

The Final Judgment will also provide that AIG fully, finally and forever releases, relinquishes, acquits and discharges the Lead Plaintiff, the Settlement Class, Settlement Class Members and Lead Plaintiff's counsel ("Released Plaintiff Parties") from any Claims which AIG ever had, now has or hereafter can, shall or may have against any of the Released Plaintiff Parties, which arise out of or relate in any way to the institution or prosecution (to the Effective Date) of the Action except a claim to enforce the releases or other terms and conditions contained in the Stipulation or any court order entered pursuant thereto.

Also, the Final Judgment will contain bar order provisions precluding the non-settling defendants from being able to bring claims in the future seeking relief such as contribution and indemnification against the Released Persons.  Also, the non-settling defendants will be entitled to a judgment credit related to this Settlement if the Action against them results in a judgment.

**Questions? Call Toll-Free (800) _____**

## What is this case about?

This Action arises from, among other things, allegedly material misstatements and omissions made by defendant AIG and others in connection with AIG's involvement in an allegedly illegal market division scheme with Marsh and others in the insurance industry, as well as an alleged accounting fraud scheme related to AIG's $3.9 billion restatement or adjustment of earnings in May 2005.  Lead Plaintiff alleges that, at the end of the Class Period, the price of AIG's stock dropped significantly when these frauds were disclosed, resulting in alleged damages to the Settlement Class.

Specifically, Lead Plaintiff alleges that, on October 14 and 15, 2004, there were disclosures concerning AIG's involvement in a market division scheme that included its payment of allegedly improper "steering" contingent commissions to, and illegal rigging of bids with, Marsh and others in the insurance industry.  Lead Plaintiff also claims that there were disclosures in March and April 2005 of a massive accounting fraud at AIG that resulted in the Company restating or adjusting nearly four years of earnings and, *inter alia*, slashing net income by $3.9 billion.  In addition, the Complaint alleges that AIG manipulated the price of its stock during the Class Period through a stock repurchase program.

Lead Plaintiff alleges that the consequences of the disclosures referenced above included AIG's payment of more than $1.6 billion to settle claims and pay fines relating to, among other things, the alleged market division and accounting fraud brought by federal and state regulators, including the Securities and Exchange Commission, Department of Justice, and the Office of the New York Attorney General.

AIG denies all civil liability and the Settlement is not and may not be construed or deemed to be evidence of, or an admission or a concession on the part of AIG, of any fault or liability whatsoever or of any infirmity in any defenses it has asserted or intended to assert, or of the merits of Lead Plaintiff's claims.  AIG, while affirmatively denying liability, considers it desirable and in its best interest that the claims against AIG in the Action be dismissed under the terms of the proposed Settlement in order to avoid further expense, uncertainty and distraction, and protracted litigation.

## What has happened in this case so far?

After the first alleged disclosures about the market division fraud were reported to the public on October 14, 2004, ten class action complaints were filed against AIG and others, and the cases were transferred to Judge Laura Taylor Swain.  The complaints included class periods of October 28, 1999 to October 15, 2004, and alleged Section 10(b) claims.  After hearing fully-briefed motions regarding appointment of a lead plaintiff and lead counsel to pursue the proposed class action, Judge Swain, by order dated February 7, 2005, appointed the Ohio State Funds as Lead Plaintiff; and appointed Labaton Sucharow (at the time known as Goodkind Labaton Rudoff & Sucharow LLP) and Hahn Loeser & Parks LLP as Lead Plaintiff's counsel.

On April 19, 2005, Lead Plaintiff filed a Consolidated First Amended Complaint, which included claims based on both the alleged market division fraud and the alleged accounting fraud, alleged a class period of October 28, 1999 through March 30, 2005, named additional defendants and added claims under Section 11 and 15 of the Securities Act.

On May 16, 2005, the San Francisco Employees' Retirement System filed a separate, purportedly new securities class action complaint against AIG and others that alleged causes of action based solely on the alleged accounting frauds disclosed in the Spring of 2005. After reviewing motions on the appointment of Lead Plaintiff related to this claim, the Court held a hearing on July 18, 2005 and found that the Ohio State Funds would serve as the Lead Plaintiff for all the claims at issue.

Between November and December 2005 defendants in the Action filed motions to dismiss the Action in its entirety, submitting hundreds of pages of briefing and affidavits. The Court denied all of these motions, except one, in April and May 2006. After the denial of the motions, Lead Plaintiff, the Ohio State Funds, and Lead Counsel began to conduct formal discovery into the facts of the case. (Prior to filing its first complaint, Lead Plaintiff's counsel had engaged in a thorough investigation of the publicly available information about the claims, including contact with former employees of AIG and other defendants.) Defendants, including AIG, and approximately 42 non-parties have produced more than 53.3 million pages of documents. Lead Counsel represents that it has reviewed and analyzed virtually all of the documents produced to date. In addition, the parties have taken 97 depositions to date.

On February 20, 2008, Lead Plaintiff moved to certify a litigation class in the Action. In connection with that motion, the Ohio State Funds produced more than 267,000 pages of documents to defendants, and more than 14 witnesses from the Ohio State Funds and their 10 external investment advisers were deposed. On August 20, 2008, AIG submitted its opposition to class certification and on September 23, 2008, all other defendants submitted their opposition papers. Lead Plaintiff replied to the opposition briefs and the Court held hearings and examined expert witness to determine whether the entire Action should be certified for litigation purposes. By order filed February 22, 2010, the Court certified the Action for litigation purposes as a class action on behalf of a class that differs from the Settlement Class. Both Lead Plaintiff and AIG requested that the United States Court of Appeals for the Second Circuit review the Court's certification order. AIG's request for review was granted, and Lead Plaintiff's request was denied. However, at the time the Settlement was reached no briefing was filed, and the Second Circuit had not issued a decision.

As noted above, Lead Plaintiff and AIG have now reached an agreement to settle the claims against AIG in the Action on terms that are summarized here. Lead Plaintiff and AIG, through their counsel, have engaged in substantial arm's-length negotiations in an effort to resolve all claims that have been or could have been asserted in the Action against AIG. Lead Plaintiff and AIG have conducted numerous conferences, including several mediation sessions over the past five years before three different independent mediators (two of them former federal judges) in which the terms of the Settlement detailed here were negotiated.

---

**How much will my payment be?**

---

## THE PROPOSED PLAN OF ALLOCATION – GENERAL PROVISIONS

AIG has agreed to pay $725 million in cash and/or stock (the "Settlement Amount"). After approval of the Settlement by the Court and upon satisfaction of the other conditions to the Settlement, the Distribution Amount (the Settlement Amount less any Tax Expenses, court-awarded attorney's fees and expenses, Notice and Administrative Expenses, and any other expenses and awards the Court may order), will be distributed to Settlement Class Members who timely submit either valid Proofs of Claim or Release Forms (as the case may be) establishing "Recognized Losses" according to the Plan of Allocation described below.  If Lead Plaintiff elects to take stock to consummate the Settlement, and elects not to liquidate the stock prior to distribution, eligible claims will be paid in stock and cash.

To the extent there are sufficient funds in the Distribution Amount, each Authorized Claimant will receive an amount equal to the Authorized Claimant's allowable Recognized Loss, as defined below, reduced by the Fair Fund Ratio Amount of any Fair Fund Distribution that such Authorized Claimant received from the fair fund created in *SEC v. American International Group, Inc*., 06 Civ. 1000 (S.D.N.Y.) (LAP).  No one will receive a distribution from the Settlement that exceeds 100% of their total Recognized Loss(es).  If, however, the Distribution Amount is not sufficient to permit payment of the total of all Recognized Losses, then each Authorized Claimant will be paid the percentage of the Distribution Amount that each Authorized Claimant's Recognized Loss (less any Fair Fund Ratio Amount) bears to the total of all the Recognized Losses (less all Fair Fund Ratio Amounts) of all Authorized Claimants.  You will be eligible to participate in the distribution only to the extent you have a net loss on your transactions in AIG debt securities, or on your combined transactions in AIG common stock and options.  Payment in this manner will be deemed conclusive against all Authorized Claimants.  In no event will any Authorized Claimant receive an amount greater than its Recognized Loss less any Fair Fund Ratio Amount it received.

For all purposes, the transaction date and not the settlement date shall be used as the date for determining inflation per share and eligibility to file a claim.  All purchases and sales of AIG Securities shall be accounted for and matched using the first-in-first-out (FIFO) method of accounting.  Gifts and transfers of securities are not eligible purchases. The covering purchase of a "short" sale is not an eligible purchase.

The Plan of Allocation is not intended to estimate the amount a Settlement Class Member might have been able to recover after a trial, nor is it intended to estimate the amount that will be paid to Authorized Claimants.  The Plan of Allocation is the basis upon which the Distribution Amount will be proportionately divided among the Authorized Claimants.  The Court will be asked to approve the Administrator's determinations before the Distribution Amount is distributed to Authorized Claimants.  No distributions to Authorized Claimants who would receive less than $10.00 will be made, given the administrative expenses of processing and mailing such checks.  In the event AIG stock is distributed to Authorized Claimants, no distribution of partial shares will be made.

If funds remain in the Escrow Account after all distributions, AIG might request return of the leftover amount.  If AIG does not make such a request, or if AIG's request is denied as to some or all funds, then the remaining funds will be given to non-sectarian, not-for-profit organization(s) chosen by Hon. Layn R. Phillips based on suggestions by Lead Plaintiff and AIG.

There will be no distribution of the Distribution Amount until a Plan of Allocation is finally approved and affirmed on appeal (if an appeal is filed) and the time for any petition for rehearing, appeal or review, whether by *certiorari* or otherwise, has expired.  The Released Persons have no liability, obligation or responsibility for the administration of the Settlement or disbursement of the Distribution Amount.

Each person wishing to participate in the distribution must timely submit a valid claim form and all required documentation or Release Form (as the case may be) **no later than _____, 2011**, to the address listed below and set forth in the Proof of Claim form or Release Form that accompanies this Notice. The Proof of Claim form and Release Form include a general release of each of the Released Defendant Parties. *See* the section called "How do I participate in the settlement? What do I need to do?" below.

The Court has reserved jurisdiction to allow, disallow or adjust on equitable grounds the Authorized Claim of any Settlement Class Member. The Court also reserves the right to modify the Plan of Allocation without further notice to Settlement Class Members.  Payment pursuant to the Plan of Allocation approved by the Court shall be conclusive against all Authorized Claimants.  No person shall have any claim against Lead Plaintiff, their counsel, the Claims Administrator, the Equity Manger, the Escrow Agent or other agents designated by counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.

## THE PROPOSED PLAN OF ALLOCATION - CALCULATION OF RECOGNIZED LOSS AMOUNT

### Calculation of Recognized Loss for AIG Common Stock Purchases

     A.    For shares purchased on or between October 28, 1999 through April 1, 2005, the following Recognized Losses shall be allowed, subject to the limitations set forth in Section II:

          1.    For each share that was (a) sold on or between October 28, 1999 and October 13, 2004, (b) purchased on or after October 15, 2004 and sold on or before March 16, 2005, or (c) purchased on or after March 17, 2005, and sold on or before March 29, 2005, the Recognized Loss shall be 10% of the difference between the inflation per share at the time of purchase, for the applicable date of purchase, less the inflation per share at the time of sale, subject to a limit of $0.20 per share.  Inflation per share shall be determined at each transaction date based on the percentage inflation applicable to that date as set forth in Table 1 times the price paid or received, excluding any commission, fees or other adjustments;

**Questions? Call Toll-Free (800) _____**

2.      For each share not covered by 1 above and sold on or before April 1, 2005, the Recognized Loss shall be the inflation per share at the time of purchase, for the applicable date of purchase, less the inflation per share at the time of sale.  Inflation per share shall be determined at each transaction date based on the percentage inflation applicable to that date as set forth in Table 1 times the price paid or received, excluding any commission, fees or other adjustments; and

3.      For each share not covered by 1 above and sold after April 1, 2005, the Recognized Loss shall be the inflation per share at the time of purchase. Inflation per share shall be determined at each purchase transaction date based on price paid or received, excluding any commission, fees or other adjustments.

B.     The following limitations on a Recognized Loss shall be applied:

1.      In addition to the annexed Table 1 relating to Section 10(b) AIG common stock claims, the Recognized Loss for such shares purchased during the Class Period shall be limited (as provided for under Private Securities Litigation Reform Act of 1995 "PSLRA") to the smallest of the following: (i) the difference between the price paid and the price received (out-of-pocket investment loss) if sold on or before April 1, 2005; (ii) the difference between the price paid (excluding all fees and commissions) and the average closing price as set forth in Table 2 below, if sold between April 4, 2005 and June 29, 2005; or (iii) the difference between the price per share paid and $53.70 per share if the shares were held on the close of business on June 29, 2005.

2.      If a claimant received a Fair Fund Distribution(s), such claimant's total Recognized Loss(es) shall be reduced by seven-eighths (7/8th) of its Fair Fund Distribution(s) (the Fair Fund Ratio Amount(s)).

3.      In no event will a claimant receive a distribution from the Settlement that exceeds 100% of the claimant's total Recognized Loss(es), reduced by the Fair Fund Ratio Amount(s).  You will be eligible for a recovery under the Plan only to the extent you have a net loss on your combined transactions in AIG common stock and options.

Table 1:  Inflation per Share Percentage and Averages Over Identified Time Periods

| Period | Start Date | End Date | Inflation Percentage | Avg.Price | Avg.Value | Avg.Inflaton |
|---|---|---|---|---|---|---|
| 1 | 28-Oct-99 | 7-Feb-01 | 13.9% | $80.21 | $69.07 | $11.14 |
| 2 | 8-Feb-01 | 1-Apr-01 | 16.1% | $81.28 | $68.19 | $13.09 |
| 3 | 2-Apr-01 | 25-Apr-01 | 18.2% | $78.39 | $64.11 | $14.28 |
| 4 | 26-Apr-01 | 13-Oct-04 | 21.2% | $67.81 | $53.43 | $14.37 |
| 5 | 14-Oct-04 | 14-Oct-04 | 14.2% | $60.00 | $51.50 | $8.50 |
| 6 | 15-Oct-04 | 16-Mar-05 | 11.2% | $64.84 | $57.59 | $7.25 |
| 7 | 17-Mar-05 | 29-Mar-05 | 8.5% | $57.77 | $52.86 | $4.91 |
| 8 | 30-Mar-05 | 30-Mar-05 | 6.0% | $57.16 | $53.73 | $3.43 |
| 9 | 31-Mar-05 | 31-Mar-05 | 3.3% | $55.41 | $53.56 | $1.85 |
| 10 | 1-Apr-05 | 3-Apr-05 | -3.8% | $50.95 | $52.91 | $(1.96) |
| 11 | 4-Apr-05 | Current | 0.0% | $52.30 | $52.30 | $- |

Table 2:  PSLRA Loss Limitation Table for AIG Common Shares

| Date | AIG Closing Price | Avg. AIG Closing Price | Date | AIG Closing Price | Avg. AIG Closing Price |
|---|---|---|---|---|---|
| 4/1/2005 | $50.95 | $50.95 | 5/16/2005 | $52.81 | $52.33 |
| 4/4/2005 | $53.30 | $52.13 | 5/17/2005 | $53.38 | $52.36 |
| 4/5/2005 | $53.00 | $52.42 | 5/18/2005 | $53.25 | $52.39 |
| 4/6/2005 | $52.99 | $52.56 | 5/19/2005 | $53.00 | $52.41 |
| 4/7/2005 | $52.76 | $52.60 | 5/20/2005 | $53.76 | $52.45 |
| 4/8/2005 | $51.91 | $52.49 | 5/23/2005 | $53.45 | $52.47 |
| 4/11/2005 | $52.10 | $52.43 | 5/24/2005 | $53.80 | $52.51 |
| 4/12/2005 | $53.20 | $52.53 | 5/25/2005 | $54.08 | $52.55 |
| 4/13/2005 | $51.61 | $52.42 | 5/26/2005 | $55.71 | $52.63 |
| 4/14/2005 | $51.39 | $52.32 | 5/27/2005 | $56.40 | $52.72 |
| 4/15/2005 | $51.11 | $52.21 | 5/31/2005 | $55.55 | $52.79 |
| 4/18/2005 | $51.26 | $52.13 | 6/1/2005 | $56.10 | $52.86 |
| 4/19/2005 | $51.58 | $52.09 | 6/2/2005 | $55.89 | $52.93 |
| 4/20/2005 | $51.01 | $52.01 | 6/3/2005 | $55.09 | $52.98 |
| 4/21/2005 | $51.90 | $52.00 | 6/6/2005 | $54.85 | $53.02 |
| 4/22/2005 | $50.35 | $51.90 | 6/7/2005 | $55.23 | $53.07 |
| 4/25/2005 | $51.76 | $51.89 | 6/8/2005 | $54.95 | $53.11 |
| 4/26/2005 | $51.07 | $51.85 | 6/9/2005 | $55.55 | $53.16 |
| 4/27/2005 | $51.85 | $51.85 | 6/10/2005 | $55.09 | $53.20 |
| 4/28/2005 | $51.14 | $51.81 | 6/13/2005 | $55.50 | $53.24 |
| 4/29/2005 | $50.85 | $51.77 | 6/14/2005 | $55.57 | $53.29 |
| 5/2/2005 | $53.44 | $51.84 | 6/15/2005 | $55.41 | $53.33 |
| 5/3/2005 | $53.30 | $51.91 | 6/16/2005 | $55.23 | $53.36 |
| 5/4/2005 | $54.37 | $52.01 | 6/17/2005 | $55.55 | $53.40 |
| 5/5/2005 | $53.92 | $52.08 | 6/20/2005 | $55.68 | $53.44 |
| 5/6/2005 | $54.14 | $52.16 | 6/21/2005 | $56.29 | $53.49 |
| 5/9/2005 | $54.58 | $52.25 | 6/22/2005 | $55.95 | $53.53 |
| 5/10/2005 | $53.27 | $52.29 | 6/23/2005 | $55.20 | $53.56 |

**Questions? Call Toll-Free (800) _____**

| Date | AIG Closing Price | Avg. AIG Closing Price |
|------|------|------|
| 5/11/2005 | $53.21 | $52.32 |
| 5/12/2005 | $52.48 | $52.33 |
| 5/13/2005 | $52.05 | $52.32 |
|  |  |  |

| Date | AIG Closing Price | Avg. AIG Closing Price |
|------|------|------|
| 6/24/2005 | $54.54 | $53.58 |
| 6/27/2005 | $55.03 | $53.60 |
| 6/28/2005 | $55.17 | $53.63 |
| 6/29/2005 | $58.48 | $53.70 |

## Calculation of Recognized Loss for AIG Call and Put Options

The AIG Options entitled to recover shall include all purchased AIG Call Options (excluding AIG Call Options purchased to cover or offset a previously sold, or written AIG Call Option) and all initially sold, or written, AIG Put Options (excluding those AIG Put Options sold, or written, to cover or otherwise offset a previously purchased AIG Put Option) during the period from October 28, 1999 through April 1, 2005.

Artificial inflation and Recognized Losses as to AIG Call Options and artificial deflation and Recognized Losses as to AIG Put Options will be computed based on the artificial inflation in AIG's common stock as described above. To determine artificial inflation for AIG Call Options and artificial deflation for AIG Put Options, Lead Plaintiff's damages consultant considered these securities' price changes that occurred in reaction to certain public announcements regarding AIG and then made adjustments for changes that were attributable to market forces unrelated to the alleged fraud in prices of such call and put options. Lead Plaintiff's damages consultant then developed formulas (see below) from which the Recognized Losses for AIG Call and Put Options may be calculated.

If a claimant received a Fair Fund Distribution(s), such claimant's total Recognized Loss(es) hereunder shall be reduced by seven-eighths (7/8th) of its Fair Fund Distribution(s) (the Fair Fund Ratio Amount(s)). In no event will a claimant receive a distribution from the Settlement that exceeds 100% of the claimant's total Recognized Loss(es), reduced by the Fair Fund Ratio Amount(s). You will be eligible for a recovery under the Plan only to the extent you have a net loss on your combined transactions in AIG common stock and options.

## AIG Call Options

With respect to purchases and sales (covers) of AIG Call Options during the period from October 28, 1999 through April 1, 2005, the artificial inflation per Option on a given day shall be the dollar reduction in the value of the AIG Call Option with the same exercise (or strike price) and same date of expiration on that day as a result of the inflation in AIG's common share price at the close of trading. The dollar reduction in the value of Call Options will be calculated using the Black-Scholes call option pricing formula (using the implied volatility for an at-the-money call option, annual dividend yield, and the appropriate annual interest rate on that day as set forth in Summary Table 3 below) and the closing share price of AIG common stock on the transaction date ("AIG Price" as set forth in Summary Table 3) compared with the Black-Scholes call option pricing formula value for the Call Option using the uninflated share closing share price of AIG

19

common stock ("AIG True Value" as set forth in Summary Table 3) on that same date. (A more detailed version of Summary Table 3 setting forth the closing price, volatility, interest rate and dividend yield assumptions by date is available for downloading at www. _____ or www.labaton.com.)

A.    For such Call Options which (1) expired, were exercised or were sold (or the position was otherwise closed out) prior to October 14, 2004; (2) were purchased on or after October 15, 2004 and expired, were exercised or were sold (or the position was otherwise closed out) sold on or before March 16, 2005, or (3) were purchased on or after March 17, 2005, and expired, were exercised or were sold (or the position was otherwise closed out) on or before March 29, 2005, the Recognized Loss shall be 10% times that number of options multiplied by the lesser of:

1.    the difference between artificial inflation per Call Option on the date of purchase and artificial inflation per Call Option on the date of expiration, exercise, or sale, as appropriate; or

2.    the difference between the purchase price per option and the sale price or value realized upon exercise or expiration per option ($0.00 if the call option expired worthless).

B.    For such Call Options not covered by A above which (1) expired after October 13, 2004 and on or before April 1, 2005; (2) were exercised for cash (or the shares immediately sold) on or between October 14, 2004 and April 1, 2005; or (3) were sold (position closed out) on or between October 14, 2004 and April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

1.    the difference between artificial inflation per Call Option on the date of purchase and artificial inflation per Call Option on the date of expiration, exercise, or sale, as appropriate; or

2.    the difference between the purchase price per option and the sale price or value realized upon exercise or expiration per option ($0.00 if the call option expired worthless).

C.    For such Call Options not covered by A above which (1) expired worthless after October 14, 2004 or (2) were retained at the end of trading on April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

1.    the artificial inflation per Call Option on the date of purchase; or

2.    the difference between the purchase price per option and the sale or realized proceeds price per option ($0.00 if the call option expired worthless).

**AIG Put Options**

   With respect to AIG Put Options written or purchased (covered) during the period from October 28, 1999 through April 1, 2005, the artificial deflation per AIG Put Option on a given day shall be the dollar decrease in the value of an AIG Put Option with the same exercise price and expiration date as the subject option at the close of trading on that day as a result of the inflation in AIG's common share price. The dollar decrease (artificial deflation) in the value of the Put Option will be calculated using the Black-Scholes put option pricing formula (using the implied volatility for an at-the-money put option, annual dividend yield, and annual interest rate on that day set forth in Summary Table 3 below) and the closing share price of AIG common stock on the transaction date ("AIG Price" as set forth in Summary Table 3) compared with the Black-Scholes pricing formula value for the Put Option using the uninflated share closing share price of AIG common stock ("AIG True Value" as set forth in Summary Table 3) on that same date.

   D. For such Put Options which (1) expired, were exercised or were purchased/covered (position closed out) prior to October 14, 2004, (2) were written on or after October 15, 2004 and expired, were exercised or were purchased/covered (position closed out) on or before March 16, 2005, or (3) were written on or after March 17, 2005, and expired, were exercised or were purchased/covered (position closed out) on or before March 29, 2005 the Recognized Loss shall be 10% times that number of options multiplied by the lesser of:

     1. the difference between artificial deflation per Put Option on the date the option was written and artificial deflation per Option on the date of expiration, exercise, or purchase, as appropriate; or

     2. the difference between the purchase price, exercise price, or expiration price per option paid ($0.00 if the put option expired worthless) and the written price per option received.

   E. For such initially written (sold) Put Options not covered by A above which (1) expired after October 13, 2004 and on or before April 1, 2005; (2) were exercised on or between October 14, 2004 and April 4, 2005; or (3) were purchased/covered (position closed out) on or between October 14, 2004 and April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

     1. the difference between artificial deflation per Put Option on the date the option was written and artificial deflation per Option on the date of expiration, exercise, or purchase, as appropriate; or

     2. the difference between the purchase price, exercise price, or expiration price per option paid ($0.00 if the put option expired worthless) and the written price per option received.

F. For such initially written (sold) Put Options not covered by A above which were retained at the end of trading on April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

1. the artificial deflation per Put Option on the date the put option was written; or

2. the difference between the purchase price, exercise price, or expiration price per option paid ($0.00 if the put option expired worthless) and the written price per option received, if purchased (covered), expired, or exercised on or before June 29, 2005.

**Summary Version of Table 3**

| Start | End | Avg. AIG Price | Avg. AIG True Value | Avg. AIG Inflation | Avg. Call Volatility | Avg. Put Volatility | Avg. Interest Rate | Avg. Dividend Yield |
|---|---|---|---|---|---|---|---|---|
| 10/28/1999 | 12/31/1999 | $70.71 | $60.88 | $9.83 | 33.58% | 34.45% | 5.69% | 0.19% |
| 1/3/2000 | 4/2/2000 | $65.15 | $56.09 | $9.06 | 37.49% | 38.07% | 6.19% | 0.21% |
| 4/3/2000 | 7/2/2000 | $76.62 | $65.97 | $10.65 | 38.42% | 39.40% | 6.22% | 0.18% |
| 7/3/2000 | 10/1/2000 | $86.41 | $74.40 | $12.01 | 28.14% | 29.13% | 6.13% | 0.17% |
| 10/2/2000 | 12/31/2000 | $96.57 | $83.15 | $13.42 | 31.39% | 34.09% | 5.91% | 0.15% |
| 1/2/2001 | 2/7/2001 | $87.00 | $74.91 | $12.09 | 32.75% | 33.80% | 4.80% | 0.17% |
| 2/8/2001 | 4/1/2001 | $81.28 | $68.19 | $13.09 | 31.12% | 34.46% | 4.45% | 0.18% |
| 4/2/2001 | 4/25/2001 | $78.39 | $64.11 | $14.28 | 32.30% | 33.61% | 3.99% | 0.19% |
| 4/26/2001 | 7/1/2001 | $82.73 | $65.19 | $17.54 | 22.12% | 22.36% | 3.70% | 0.20% |
| 7/2/2001 | 7/25/2001 | $84.58 | $66.65 | $17.93 | 21.59% | 21.28% | 3.63% | 0.20% |
| 7/26/2001 | 9/30/2001 | $77.60 | $61.15 | $16.45 | 29.25% | 29.33% | 3.25% | 0.22% |
| 10/1/2001 | 1/1/2002 | $81.26 | $64.03 | $17.23 | 29.73% | 29.60% | 2.24% | 0.21% |
| 1/2/2002 | 3/31/2002 | $74.72 | $58.88 | $15.84 | 28.17% | 28.58% | 2.32% | 0.23% |
| 4/1/2002 | 6/30/2002 | $68.74 | $54.17 | $14.57 | 29.57% | 29.62% | 2.35% | 0.26% |
| 7/1/2002 | 9/30/2002 | $61.21 | $48.23 | $12.98 | 45.13% | 45.38% | 1.81% | 0.31% |
| 10/1/2002 | 12/31/2002 | $61.66 | $48.59 | $13.07 | 41.78% | 41.79% | 1.53% | 0.31% |
| 1/2/2003 | 3/31/2003 | $53.02 | $41.78 | $11.24 | 39.69% | 39.96% | 1.30% | 0.36% |
| 4/1/2003 | 6/30/2003 | $56.26 | $44.33 | $11.93 | 31.41% | 31.70% | 1.15% | 0.40% |
| 7/1/2003 | 9/30/2003 | $60.22 | $47.45 | $12.77 | 27.67% | 27.76% | 1.22% | 0.43% |
| 10/1/2003 | 12/31/2003 | $60.77 | $47.89 | $12.88 | 24.54% | 24.53% | 1.30% | 0.43% |
| 1/2/2004 | 3/31/2004 | $71.45 | $56.30 | $15.15 | 22.65% | 22.66% | 1.22% | 0.36% |
| 4/1/2004 | 6/30/2004 | $72.62 | $57.22 | $15.40 | 23.37% | 23.38% | 1.78% | 0.38% |
| 7/1/2004 | 9/30/2004 | $70.02 | $55.18 | $14.84 | 21.88% | 21.89% | 2.08% | 0.43% |
| 10/1/2004 | 10/13/2004 | $67.32 | $53.05 | $14.27 | 22.23% | 21.79% | 2.22% | 0.45% |
| 10/14/2004 | 10/14/2004 | $60.00 | $51.50 | $8.50 | 39.05% | 38.52% | 2.15% | 0.50% |
| 10/15/2004 | 12/31/2004 | $62.66 | $55.64 | $7.02 | 25.56% | 25.63% | 2.52% | 0.66% |

**Questions? Call Toll-Free (800) _____**

| Start | End | Avg. AIG Price | Avg. AIG True Value | Avg. AIG Inflation | Avg. Call Volatility | Avg. Put Volatility | Avg. Interest Rate | Avg. Dividend Yield |
|---|---|---|---|---|---|---|---|---|
| 1/3/2005 | 2/13/2005 | $67.33 | $59.79 | $7.54 | 18.76% | 18.76% | 2.89% | 0.74% |
| 2/14/2005 | 3/15/2005 | $67.09 | $59.58 | $7.51 | 20.34% | 20.34% | 3.17% | 0.75% |
| 3/16/2005 | 3/29/2005 | $58.34 | $53.38 | $4.96 | 29.70% | 29.70% | 3.36% | 0.86% |
| 3/30/2005 | 4/4/2005 | $54.21 | $53.38 | $0.83 | 37.58% | 37.58% | 3.36% | 0.92% |
| 4/5/2005 | 6/29/2005 | $53.76 | $53.76 | $- | 27.80% | 27.80% | 3.34% | 1.02% |

## Calculation of Recognized Loss for AIG Debt Securities Purchases

The Class Period for purchases of AIG debt securities is from October 28, 1999 through April 1, 2005. AIG debt securities that have matured, were called, put or converted were not damaged by the alleged fraud and, therefore, shall not be eligible for recovery under the Plan and all transactions in such securities shall be ignored. The AIG debt securities outstanding as of October 13, 2004 and eligible to participate in recovery under the Plan are listed in Table 4 below. You will be eligible for recovery under the Plan only to the extent you have a net loss on your transactions in AIG debt securities.

The "AIG Debt Settlement Fund" shall be created by apportioning up to 5% of the Distribution Amount. If the Total Recognized Losses for AIG debt securities eligible to participate under the Plan are equal to or less than the AIG Debt Settlement Fund, then such Total Recognized Losses shall be recoverable and the remaining portion, if any, of the AIG Debt Settlement Fund shall revert back to the Distribution Amount for recovery under the AIG Common Stock and AIG Call and Put Options provisions of this Plan. If the Total Recognized Losses for AIG debt securities eligible to participate under the Plan are more than the AIG Debt Settlement Fund, such Total Recognized Losses shall be paid pro rata.

If a claimant received a Fair Fund Distribution(s), such claimant's total Recognized Loss(es) hereunder shall be reduced by seven-eighths (7/8th) of its Fair Fund Distribution(s) (the Fair Fund Ratio Amount(s)). In no event will a claimant receive a distribution from the Settlement that exceeds 100% of the claimant's total Recognized Loss(es), reduced by the Fair Fund Ratio Amount(s).

## Calculation of Recognized Loss for AIG debt securities shall be as follows:

For AIG debt securities purchased on or between October 28, 1999 and April 1, 2005, the following the Recognized Losses shall be allowed:

a.      For each unit sold on or between October 28, 1999 and October 13, 2004, the Recognized Loss shall be 5% of the difference between the purchase price paid and the sale price received (out-of-pocket investment loss);

b.      For each unit sold on or between October 14, 2004 and March 14, 2005, the Recognized Loss shall be 10% of the difference between the purchase price paid and the sale price received (out-of-pocket investment loss);

c.      For each unit sold on or between March 15, 2005 and April 1, 2005, the Recognized Loss shall be 15% of the difference between the purchase price paid and the sale price received (out-of-pocket investment loss);

d.      For each unit sold on or between April 2, 2005 and June 29, 2005, the Recognized Loss shall be 15% of the lesser of: (i) the difference between the purchase price paid and the sale price received (out-of-pocket investment loss); or (ii) the difference between the purchase price paid and the average price on date of sale in Table 5 below;

e.      For each unit sold on or between June 30, 2005 and December 15, 2010, the Recognized Loss shall be 15% of the lesser of: (i) the difference between the purchase price paid and the sale price received (out-of-pocket investment loss); or (ii) the difference between the purchase price paid and the average price as of June 29, 2005 as set forth in Table 5 below; and

f.      For each unit held as of the close of business on April 1, 2005 and not sold as of December 15, 2010, the Recognized Loss shall be 15% of the difference between the purchase price paid and the average price as of June 29, 2005 as set forth in Table 5 below.

g.      For each unit that was (a) sold on or between October 28, 1999 and October 13, 2004, (b) purchased on or after October 15, 2004 and sold on or before March 16, 2005, or (c) purchased on or after March 17, 2005, and sold on or before March 29, 2005, the Recognized Loss shall be subject to a further limit of 0.5% of the purchase price.

The Recognized Loss for damages for units purchased during the Class Period shall be further limited (as provided for under the PSLRA) to the smallest of the following: (i) the difference between the price paid and the price received (out-of-pocket investment loss) if sold on or before June 29, 2005; (ii) the difference between the price paid (excluding all fees and commissions) and the average closing price as set forth in Table 5 below if sold between April 4, 2005 and December 15, 2010; or (iii) the difference between the price paid and the average price as of June 29, 2005 as set forth in Table 5 below, if held as of the close of business on June 29, 2005.

| Table 4: AIG Debt Securities Eligible to Participate | | |
|---|---|---|
| **Coupon** | **Maturity Date** | **CUSIP or ISIN** |
| Zero | 9-Nov-31 | CUSIP No. 026874AP2 |
| 0.5% | 15-May-07 | CUSIP No. 026874AN7 |
| 2.85% | 1-Dec-05 | CUSIP No. 02687QBB3 |
| 2.875% | 15-May-08 | CUSIP No. 026874AQ0 |
| 2.875% | 15-May-08 | ISIN No. USU02687AB48 |
| 2.875% | 15-May-08 | CUSIP No. 026874AR8 |
| 4.25% | 15-May-13 | CUSIP No. 026874AS6 |
| 4.25% | 15-May-13 | ISIN No. USU02687AC21 |
| 4.25% | 15-May-13 | CUSIP No. 026874AT4 |

**Questions? Call Toll-Free (800) _____**

**Table 5: PSLRA Loss Limitation Table for AIG Debt Securities**

| Coupon | Zero | 0.500% | 2.850% | 2.875% | 2.875% | 2.875% | 4.250% | 4.250% | 4.250% |
|---|---|---|---|---|---|---|---|---|---|
| Maturity Date | 11/9/2031 | 5/15/2007 | 12/1/2005 | 5/15/2008 | 5/15/2008 | 5/15/2008 | 5/15/2013 | 5/15/2013 | 5/13/2013 |
| Issue Date | 11/9/2001 | 5/11/2000 | 12/2/2002 | 5/15/2003 | 5/15/2003 | 4/20/2004 | 5/15/2003 | 5/15/2003 | 4/20/2004 |
| CUSIP/ISIN Number | 026874AP2 | 026874AN7 | 02687QBB3 | 026874AQ0 | USU02687AB48 | 026874AR8 | 026874AS6 | USU02687AC21 | 026874AT4 |
| Series | Registered | Registered | Registered | 144A | Regulation S | Registered | 144A | Regulation S | Registered |
| Date | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price |
| 4/1/2005 | $65.63 | $91.88 | $99.54 | $95.07 | $95.07 | $95.07 | $94.25 | $94.25 | $94.25 |
| 4/4/2005 | $65.81 | $92.13 | $99.55 | $94.75 | $94.75 | $94.75 | $93.44 | $93.44 | $93.44 |
| 4/5/2005 | $65.83 | $92.17 | $99.55 | $94.76 | $94.76 | $94.76 | $93.58 | $93.58 | $93.58 |
| 4/6/2005 | $65.84 | $92.22 | $99.55 | $94.80 | $94.80 | $94.80 | $93.71 | $93.71 | $93.71 |
| 4/7/2005 | $65.85 | $92.25 | $99.55 | $94.82 | $94.82 | $94.82 | $93.74 | $93.74 | $93.74 |
| 4/8/2005 | $65.83 | $92.27 | $99.56 | $94.81 | $94.81 | $94.81 | $93.75 | $93.75 | $93.75 |
| 4/11/2005 | $65.84 | $92.29 | $99.56 | $94.82 | $94.82 | $94.82 | $93.78 | $93.78 | $93.78 |
| 4/12/2005 | $65.84 | $92.30 | $99.56 | $94.84 | $94.84 | $94.84 | $93.88 | $93.88 | $93.88 |
| 4/13/2005 | $65.85 | $92.29 | $99.56 | $94.87 | $94.87 | $94.87 | $93.88 | $93.88 | $93.88 |
| 4/14/2005 | $65.85 | $92.30 | $99.56 | $94.91 | $94.91 | $94.91 | $93.89 | $93.89 | $93.89 |
| 4/15/2005 | $65.85 | $92.32 | $99.57 | $94.97 | $94.97 | $94.97 | $93.95 | $93.95 | $93.95 |
| 4/18/2005 | $65.85 | $92.33 | $99.58 | $95.02 | $95.02 | $95.02 | $94.01 | $94.01 | $94.01 |
| 4/19/2005 | $65.86 | $92.35 | $99.58 | $95.07 | $95.07 | $95.07 | $94.08 | $94.08 | $94.08 |
| 4/20/2005 | $65.86 | $92.37 | $99.59 | $95.11 | $95.11 | $95.11 | $94.12 | $94.12 | $94.12 |
| 4/21/2005 | $65.86 | $92.37 | $99.59 | $95.12 | $95.12 | $95.12 | $94.14 | $94.14 | $94.14 |
| 4/22/2005 | $65.87 | $92.38 | $99.59 | $95.14 | $95.14 | $95.14 | $94.16 | $94.16 | $94.16 |
| 4/25/2005 | $65.88 | $92.39 | $99.59 | $95.16 | $95.16 | $95.16 | $94.19 | $94.19 | $94.19 |
| 4/26/2005 | $65.89 | $92.40 | $99.60 | $95.17 | $95.17 | $95.17 | $94.21 | $94.21 | $94.21 |
| 4/27/2005 | $65.91 | $92.41 | $99.60 | $95.18 | $95.18 | $95.18 | $94.23 | $94.23 | $94.23 |
| 4/28/2005 | $65.93 | $92.43 | $99.60 | $95.21 | $95.21 | $95.21 | $94.28 | $94.28 | $94.28 |
| 4/29/2005 | $65.93 | $92.44 | $99.60 | $95.22 | $95.22 | $95.22 | $94.31 | $94.31 | $94.31 |
| 5/2/2005 | $65.95 | $92.45 | $99.60 | $95.24 | $95.24 | $95.24 | $94.32 | $94.32 | $94.32 |
| 5/3/2005 | $65.96 | $92.46 | $99.60 | $95.25 | $95.25 | $95.25 | $94.34 | $94.34 | $94.34 |
| 5/4/2005 | $65.97 | $92.48 | $99.61 | $95.26 | $95.26 | $95.26 | $94.35 | $94.35 | $94.35 |
| 5/5/2005 | $65.98 | $92.50 | $99.61 | $95.28 | $95.28 | $95.28 | $94.38 | $94.38 | $94.38 |
| 5/6/2005 | $65.98 | $92.50 | $99.61 | $95.28 | $95.28 | $95.28 | $94.37 | $94.37 | $94.37 |
| 5/9/2005 | $65.99 | $92.51 | $99.61 | $95.28 | $95.28 | $95.28 | $94.37 | $94.37 | $94.37 |
| 5/10/2005 | $66.00 | $92.53 | $99.61 | $95.28 | $95.28 | $95.28 | $94.39 | $94.39 | $94.39 |
| 5/11/2005 | $66.00 | $92.54 | $99.61 | $95.28 | $95.28 | $95.28 | $94.40 | $94.40 | $94.40 |
| 5/12/2005 | $66.01 | $92.56 | $99.61 | $95.29 | $95.29 | $95.29 | $94.42 | $94.42 | $94.42 |
| 5/13/2005 | $66.02 | $92.58 | $99.61 | $95.30 | $95.30 | $95.30 | $94.44 | $94.44 | $94.44 |
| 5/16/2005 | $66.03 | $92.59 | $99.61 | $95.30 | $95.30 | $95.30 | $94.43 | $94.43 | $94.43 |
| 5/17/2005 | $66.03 | $92.61 | $99.61 | $95.31 | $95.31 | $95.31 | $94.43 | $94.43 | $94.43 |
| 5/18/2005 | $66.04 | $92.63 | $99.61 | $95.31 | $95.31 | $95.31 | $94.44 | $94.44 | $94.44 |
| 5/19/2005 | $66.04 | $92.63 | $99.61 | $95.32 | $95.32 | $95.32 | $94.44 | $94.44 | $94.44 |
| 5/20/2005 | $66.05 | $92.64 | $99.61 | $95.31 | $95.31 | $95.31 | $94.45 | $94.45 | $94.45 |
| 5/23/2005 | $66.05 | $92.65 | $99.61 | $95.32 | $95.32 | $95.32 | $94.47 | $94.47 | $94.47 |

**Questions? Call Toll-Free (800) _____**

| Date | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price |
|---|---|---|---|---|---|---|---|---|---|
| 5/24/2005 | $66.06 | $92.66 | $99.61 | $95.32 | $95.32 | $95.32 | $94.49 | $94.49 | $94.49 |
| 5/25/2005 | $66.06 | $92.68 | $99.61 | $95.33 | $95.33 | $95.33 | $94.51 | $94.51 | $94.51 |
| 5/26/2005 | $66.06 | $92.70 | $99.61 | $95.33 | $95.33 | $95.33 | $94.53 | $94.53 | $94.53 |
| 5/27/2005 | $66.07 | $92.71 | $99.61 | $95.33 | $95.33 | $95.33 | $94.55 | $94.55 | $94.55 |
| 5/31/2005 | $66.07 | $92.73 | $99.61 | $95.34 | $95.34 | $95.34 | $94.59 | $94.59 | $94.59 |
| 6/1/2005 | $66.08 | $92.75 | $99.61 | $95.36 | $95.36 | $95.36 | $94.64 | $94.64 | $94.64 |
| 6/2/2005 | $66.08 | $92.77 | $99.61 | $95.37 | $95.37 | $95.37 | $94.70 | $94.70 | $94.70 |
| 6/3/2005 | $66.08 | $92.79 | $99.61 | $95.38 | $95.38 | $95.38 | $94.74 | $94.74 | $94.74 |
| 6/6/2005 | $66.08 | $92.80 | $99.61 | $95.40 | $95.40 | $95.40 | $94.78 | $94.78 | $94.78 |
| 6/7/2005 | $66.09 | $92.81 | $99.61 | $95.41 | $95.41 | $95.41 | $94.82 | $94.82 | $94.82 |
| 6/8/2005 | $66.10 | $92.82 | $99.61 | $95.42 | $95.42 | $95.42 | $94.86 | $94.86 | $94.86 |
| 6/9/2005 | $66.10 | $92.82 | $99.61 | $95.43 | $95.43 | $95.43 | $94.89 | $94.89 | $94.89 |
| 6/10/2005 | $66.11 | $92.83 | $99.61 | $95.44 | $95.44 | $95.44 | $94.92 | $94.92 | $94.92 |
| 6/13/2005 | $66.12 | $92.83 | $99.61 | $95.45 | $95.45 | $95.45 | $94.93 | $94.93 | $94.93 |
| 6/14/2005 | $66.13 | $92.83 | $99.61 | $95.45 | $95.45 | $95.45 | $94.95 | $94.95 | $94.95 |
| 6/15/2005 | $66.14 | $92.84 | $99.61 | $95.46 | $95.46 | $95.46 | $94.96 | $94.96 | $94.96 |
| 6/16/2005 | $66.15 | $92.84 | $99.61 | $95.46 | $95.46 | $95.46 | $94.98 | $94.98 | $94.98 |
| 6/17/2005 | $66.15 | $92.85 | $99.61 | $95.47 | $95.47 | $95.47 | $95.00 | $95.00 | $95.00 |
| 6/20/2005 | $66.15 | $92.86 | $99.61 | $95.48 | $95.48 | $95.48 | $95.01 | $95.01 | $95.01 |
| 6/21/2005 | $66.15 | $92.87 | $99.61 | $95.48 | $95.48 | $95.48 | $95.03 | $95.03 | $95.03 |
| 6/22/2005 | $66.16 | $92.88 | $99.62 | $95.49 | $95.49 | $95.49 | $95.06 | $95.06 | $95.06 |
| 6/23/2005 | $66.17 | $92.88 | $99.62 | $95.50 | $95.50 | $95.50 | $95.09 | $95.09 | $95.09 |
| 6/24/2005 | $66.18 | $92.89 | $99.62 | $95.52 | $95.52 | $95.52 | $95.12 | $95.12 | $95.12 |
| 6/27/2005 | $66.19 | $92.89 | $99.62 | $95.53 | $95.53 | $95.53 | $95.15 | $95.15 | $95.15 |
| 6/28/2005 | $66.20 | $92.90 | $99.62 | $95.54 | $95.54 | $95.54 | $95.17 | $95.17 | $95.17 |
| 6/29/2005 | $66.20 | $92.91 | $99.62 | $95.55 | $95.55 | $95.55 | $95.19 | $95.19 | $95.19 |

## How do I participate in the settlement? What do I need to do?

The Court has certified the Settlement Class for purposes of this Settlement only.  As discussed above, if you purchased or acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive and you were damaged and you are not one of the people specifically excluded by the definition of the Settlement Class, you are a Settlement Class Member unless you take steps to get out of the Settlement Class.

As a Settlement Class Member, you will be bound by the proposed Settlement provided for in the Stipulation if it is approved by the Court, as well as by any judgment or determination of the Court affecting the Settlement Class. Even if you do not submit a Proof of Claim form or Release Form to receive a part of the recovery, unless otherwise provided by the Court, you will be forever barred from receiving any payments pursuant to the Settlement set forth in the Stipulation, but will, in all other respects, be subject to the provisions of the Stipulation, including the terms of any judgments entered and the releases given.

To qualify for a payment if you did NOT submit a Proof of Claim in the PwC Settlement, you must timely send in a completed Proof of Claim form with supporting documents (DO NOT SEND ORIGINALS) to the Administrator.  DO NOT SEND Proof of Claim forms to counsel for the Settling Parties or the Court.  A Proof of Claim form is being circulated with this Notice.  You may also get a Proof of Claim form on the Internet at the websites for the Administrator: www._____.com, or Lead Plaintiff's counsel: www.labaton.com.  Please read the instructions carefully, fill out the Proof of Claim form, include all the documents the form asks for, sign it, and mail it to the Administrator by first class mail, **postmarked no later than _____, 2011**.  The Administrator needs all of the information requested in the Proof of Claim in order to determine what you may be entitled to.

If you already submitted a Proof of Claim form in the PwC Settlement, the trading information you already supplied will be used to determine your claim in this Settlement.  DO NOT submit another Proof of Claim.  Instead, you will receive a Release Form that must be completed and signed in order for you to recover. (*See* "What if I already submitted a claim form in the PwC Settlement?")  However, if you have additional transactional information that you did not submit on your PwC Proof of Claim form that you would like considered in the calculation of your claim in this Settlement with AIG, submit a Proof of Claim in this Settlement.

The Court may disallow or adjust the claim of any Settlement Class Member. The Court also may modify the Plan of Allocation without further notice to the Settlement Class.  Each Claimant will be deemed to have submitted to the jurisdiction of the United States District Court for the Southern District of New York with respect to his, her or its Proof of Claim form.

If you do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section called, "What if I do not want to participate in the Settlement? How do I exclude myself?" below.

If you object to the Settlement or any of its terms, the proposed Plan of Allocation, Lead Plaintiff's counsel's application for attorneys' fees and reimbursement of litigation expenses, or Lead Plaintiff's application for expenses and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section called, "What if I want to object to the Settlement? When and where will the Court decide whether to approve the Settlement? May I speak at the Hearing if I do not like the Settlement" below.

## What if I already submitted a claim form in the PwC Settlement?

If you have already submitted a Proof of Claim form in connection with the previously announced PwC Settlement, DO NOT complete a new Proof of Claim form now.  The trading information you already provided will be used to determine your claim in this settlement with AIG.  Instead, you must complete and submit a Release Form and mail it to the Administrator by first class mail, **postmarked no later than _____, 2011,** in order to recover.  Alternatively, you may submit your Release Form through the Administrator's website, _____.

The deadline for Proof of Claim forms in the PwC Settlement was January 28, 2009.  If you submitted your PwC Proof of Claim form on time, you should have received a postcard

**Questions? Call Toll-Free (800) _____**

acknowledgment of receipt by March 16, 2009 and you will be mailed a Release Form.  If you have not received a post card or Release Form by _____, 2011, please contact the Administrator at _____.

---

**What if I do not want to participate in the Settlement? How do I exclude myself?**

---

Each Settlement Class Member will be bound by all determinations and judgments in this Action concerning the Settlement, whether favorable or unfavorable, unless such person mails, by first class mail, a written request for exclusion from the Settlement Class, postmarked no later than _____, 2011, addressed to *In re AIG Securities Litigation – Company EXCLUSIONS*, c/o _____.  No person may exclude himself, herself or itself from the Settlement Class after this deadline. You may not exclude yourself by telephone or e-mail.

In order to be valid, each request for exclusion must set forth the name and address of the person or entity requesting exclusion, must state that such person or entity "requests exclusion from the AIG Settlement Class in In re AIG Securities Litigation, Master File No. 04-8141 (DAB)" and must be signed by such person or entity. The following information **must also** be provided: your name, your address, your daytime telephone number; and documents establishing the date(s), price(s), and number(s) of shares of all purchases, other acquisitions, and sales of AIG Securities during the Class Period. Requests for exclusion will NOT be accepted if the requests do not include the required information, are undocumented or if the requests are not made within the time stated above, unless the requests for exclusion are otherwise accepted by the Court.

If a Settlement Class Member requests to be excluded from the Settlement Class, that Class Member will not receive any benefit provided for in the Stipulation.

If a Settlement Class Member requests exclusion from the Settlement Class and later seeks to pursue an action against AIG and to obtain discovery taken by Lead Counsel, Lead Plaintiff will in all likelihood seek advance payment on behalf of the Settlement Class for the reasonable costs (including the value of Lead Counsel's time, *i.e.*, "lodestar") related to such discovery.  If Lead Plaintiff and any such person or entity are unable to agree upon the amount of such compensation, Lead Plaintiff will in all likelihood make a motion requesting payment.  If Lead Plaintiff elects to do so, it will request, for example, an order from the Court providing that such a person or entity that timely and validly excludes itself from the Settlement Class and subsequently files a claim against AIG related to the matters covered by the Settlement shall be required to compensate the Settlement Class for the costs (including lodestar) associated with any deposition transcripts (including exhibits) it receives in connection with such legal proceeding if the depositions were taken as part of discovery in the Action.  Likewise, Lead Plaintiff may make a motion if any such person or entity seeks access to the electronic document repository, currently hosting more than 53.5 million pages of documents, that was established and maintained in significant part by Lead Plaintiff.  Lead Plaintiff may seek an order requiring such person or entity to compensate the Settlement Class a reasonable amount for the costs (including lodestar) associated with establishing and maintaining the electronic document repository since August 2006.

Lead Plaintiff may request that the amount of such compensation shall be determined by the Court based on the size of the claim being asserted, using the number of allegedly damaged shares owned by the excluded Class Member, and the cost to the Settlement Class of obtaining the discovery being sought, which shall include Lead Counsel's lodestar and expenses directly or indirectly related to that discovery.  Discovery in the Action included 97 depositions, based upon, *inter alia*, the review and analysis of the 53.5 million pages of documents mentioned above.  Lead Counsel represents that the aggregate amount of Lead Counsel's lodestar attributable to discovery efforts alone is tens of millions of dollars.

AIG is not required to join in any such application.

**What if I want to object to the Settlement? When and where will the Court decide whether to approve the Settlement? May I speak at the Hearing if I do not like the Settlement?**

No Settlement Class Member must attend the Fairness Hearing, but you can attend at your own expense.

Any Settlement Class Member who does not request exclusion by _____, 2011 may ask the Court to consider their objection to any of the matters to be considered at the Fairness Hearing (and may also appear at the Fairness Hearing) provided, however, that no such person shall be heard unless his, her or its objection is made in writing and is filed, together with copies of all other papers and briefs to be submitted to the Court at the Fairness Hearing, by him, her or it (including documentation of all purchases, acquisitions and sales of AIG Securities during the Class Period) with the Clerk's Office at the United States District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007, postmarked no later than _____, 2011, and is served on the same day, by first class mail, hand or overnight delivery to each of the following:

| | |
|---|---|
| Thomas A. Dubbs | Daniel J. Kramer |
| Louis Gottlieb | Daniel J. Leffell |
| Labaton Sucharow LLP | Paul, Weiss, Rifkind, Wharton & |
| 140 Broadway | Garrison LLP |
| New York, NY 10005 | 1285 Avenue of the Americas |
| | New York, NY 10019 |
| *Counsel for Lead Plaintiff and* | |
| *the Settlement Class* | *Counsel for AIG* |

You must include your name, address, telephone number, and your signature, document the date(s), price(s), and number(s) of shares of all purchases, acquisitions, and sales of AIG Securities you made during the Class Period, and state the reasons why you object to the Settlement.  This information is needed to demonstrate your membership in the Settlement Class. Only Settlement Class Members who have submitted their position in this manner will be entitled to object, unless the Court orders otherwise. **The Settling Parties may seek further information, including testimony, about your objection prior to the Fairness Hearing.**  You

**Questions? Call Toll-Free (800) _____**

may file an objection without appearing at the Fairness Hearing. Settlement Class Members who approve of the Settlement do not need to appear at the Fairness Hearing.

While attendance at the Fairness Hearing is not necessary, persons wishing to be heard orally are required to indicate in their written objections their intention to appear at the Fairness Hearing. Persons who intend to object to the Settlement or any of its related matters and desire to present evidence at the Fairness Hearing must also include in their written objections the identity of any witnesses they may seek to call to testify and exhibits they may seek to introduce into evidence at the Fairness Hearing.

The Fairness Hearing may be rescheduled from time to time by the Court without further written notice to the Settlement Class. If you intend to attend the Fairness Hearing, you should confirm the date and time with Lead Plaintiff's counsel.

**UNLESS OTHERWISE ORDERED BY THE COURT, ANY SETTLEMENT CLASS MEMBER WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION.**

| **Special Notice to Securities Brokers and other Nominees** |
|---|

If you purchased AIG Securities (as defined herein) during the Class Period for the beneficial interest of a person or organization other than yourself, you are directed (a) to provide the Administrator with lists of the names and last known addresses of the beneficial owners for whom you have purchased AIG Securities during the Class Period within seven (7) days of receipt of this Notice, or (b) to request additional copies of this Notice and Proof of Claim form within seven (7) days of receipt of this Notice and to send the Notice and Proof of Claim to the beneficial owners.  If you elect to send this Notice and Proof of Claim form to beneficial owners, you are directed to mail this Notice and Proof of Claim within seven (7) days of receipt of the copies of this Notice from the Administrator, and, upon such mailing, you shall send a statement to the Administrator confirming that the mailing was made as directed. If you comply with the requirements above, you shall be reimbursed from the Cash Settlement Account after receipt by the Administrator of proper documentation for the reasonable expenses of sending the Notices and Proofs of Claim to the beneficial owners. If you choose to follow the first alternative, you must retain the list of names and addresses so that it will be available for use in connection with future notice to the Settlement Class. Copies of this Notice may also be obtained from the Administrator or may be downloaded from Lead Plaintiffs' counsel's website at www.labaton.com.

| **Can I see the Court file? Who should I contact if I have questions?** |
|---|

This Notice contains only a summary of the terms of the proposed Settlement.  For a more detailed statement of the matters involved in the Action, you are referred to the papers on file in the Action, including the Agreement of Compromise and Settlement and the Court's February 22, 2010 Order granting certification of a litigation class, which may be inspected during regular

**Questions? Call Toll-Free (800) _____**

office hours at the Office of the Clerk, United States District Court for the District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007.

All inquiries concerning this Notice, the Proof of Claim form, the Release Form or any questions regarding the Settlement should be directed to:

AIG Securities Litigation - Company
c/o _____
Administrator
P.O. Box _____
_____
Toll Free: (800) _____
www._____

**PLEASE DO NOT CONTACT THE COURT OR AIG REGARDING THESE MATTERS. THEY WILL NOT BE ABLE TO ANSWER YOUR QUESTIONS.**

DATED:   _____

BY ORDER OF THE UNITED STATES DISTRICT COURT DISTRICT OF NEW YORK

# Exhibit C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE AMERICAN INTERNATIONAL
GROUP, INC.  SECURITIES LITIGATION

ECF CASE

Master File No. 04 Civ. 8141 (DAB) (AJP)

---

## [PROPOSED] PRELIMINARY APPROVAL ORDER

WHEREAS:

A.     A consolidated class action is pending in this Court entitled In re

American International Group, Inc. Securities Litigation, No. 04 Civ. 8141 (DAB) (AJP)

(S.D.N.Y.) (the "Action");

B.     The Ohio Public Employees Retirement System, State Teachers

Retirement System of Ohio and Ohio Police & Fire Pension Fund (collectively, "Lead Plaintiff")

on behalf of the Settlement Class, and American International Group, Inc. ("AIG"), by and

through their respective counsel, have entered into a settlement of the claims asserted against

AIG in the Action, on the terms and conditions that are set forth in an Agreement of Compromise

and Settlement (the "Agreement"), dated as of November 30, 2010;

C.     Lead Plaintiff and AIG (collectively, the "Settling Parties") have moved,

pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an Order preliminarily

approving the Agreement; certification by the Court of a Settlement Class solely for the purposes

of settlement; and providing for notice to potential members of the Settlement Class; and

D.      The Court has read and considered the Agreement and exhibits thereto, including the proposed Notice, the proposed Summary Notice, the proposed Proof of Claim and Release Form, and the proposed Final Judgment, and found that substantial and sufficient grounds exist for entering this Order;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      The Court, for purposes of this Order, adopts all defined terms as set forth in the Agreement.  Any inconsistencies between the Agreement and the Notice will be controlled by the language of the Agreement.

2.      The Court hereby certifies the following class for the purposes of settlement only (the "Settlement Class"), pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure:  all persons and entities who purchased or otherwise acquired AIG Securities during the period of time from October 28, 1999 through April 1, 2005, inclusive (the "Class Period"), as well as all persons and entities who held the common stock of HSB Group, Inc. ("HSB") at the time HSB was acquired by AIG in a stock for stock transaction, and all persons and entities who held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock transaction, and were damaged thereby. Excluded from the Settlement Class are (i) the Named Defendants; (ii) the immediate families of the Individual Defendants, as named in the Consolidated Third Amended Class Action Complaint, dated December 15, 2006 (the "Complaint") in this Action; (iii) any parent, subsidiary, affiliate, officer, or director of AIG; (iv) any putative Settlement Class Members who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice and do not thereafter rescind such request; (v) any entity in which any

excluded person has a controlling interest; and (vi) the legal representatives, heirs, successors and assigns of any excluded person.

3.     Solely for purposes of the proposed settlement of this Action as against the Released Persons (and without any adjudication on the merits), the Court preliminarily finds that the prerequisites to class action certification under Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure have been satisfied for the Settlement Class defined herein, in that:

(a)     the Settlement Class Members are so numerous that joinder of all Settlement Class Members is impracticable;

(b)     there are questions of law and fact common to the Settlement Class Members;

(c)     Lead Plaintiff's claims are typical of the Settlement Class's claims;

(d)     Lead Plaintiff and Lead Counsel have fairly and adequately represented and protected the interests of the Settlement Class;

(e)     the questions of law and fact common to the Settlement Class Members predominate over any individual questions; and

(f)     a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering that the claims of Settlement Class Members in the Action are substantially similar and would, if tried, involve substantially identical proofs and may therefore be efficiently litigated and resolved on an aggregate basis as a class action; the amounts of the claims of many of the Settlement Class Members are too small to justify the expense of individual actions; and it does not appear that there is any intent among Settlement Class Members in individually controlling the litigation of their claims.

4.     The Court hereby finds, preliminarily and solely for purposes of the Agreement and effectuating the proposed Agreement, that Lead Plaintiff is an adequate representative of the Settlement Class and certifies it as class representative for the Settlement Class.  The Court certifies Lead Counsel, Labaton Sucharow LLP and Hahn Loeser & Parks LLP, as Settlement Class Counsel.

5.     The Court preliminarily approves the Agreement as being fair, reasonable and adequate, and in the best interests of the Settlement Class, subject to further consideration at a hearing to be held before this Court on [___] at [___:___ _].m. (the "Fairness Hearing") to determine whether the proposed settlement of the Action on the terms and conditions provided for in the Agreement is fair, reasonable and adequate, and in the best interests of the Settlement Class and should be approved by the Court; whether an Order and Final Judgment substantially in the form attached to the Agreement as Exhibit D should be entered dismissing the Action with prejudice against the Released Persons; whether the Settlement Class should be finally certified; whether the proposed plan of allocation is reasonable and should be approved; whether Lead Counsel's application for an Attorneys' Fees and Expenses Award should be granted; whether Lead Plaintiff's application for reimbursement of costs and expenses incurred by it and/or the Office of the Attorney General of Ohio as a result of Lead Plaintiff's representation of the Settlement Class should be approved; whether, pursuant to Section 3(a)(10) of the Securities Act of 1933, as amended (codified at 15 U.S.C. § 77c(a)(10)), the terms and conditions of the Settlement are fair to potential recipients of Settlement Stock; and to consider any other matters that may properly be brought before the Court in connection with the settlement of this Action.

6.     The Court recognizes and acknowledges that at the Fairness Hearing, pursuant to Section 3(a)(10) of the Securities Act of 1933, as amended (codified at 15 U.S.C. §

77c(a)(10)), the Court will determine whether any Settlement Stock to be issued, sold, exchanged or distributed as part of the settlement may be distributed to Settlement Class Members and to Plaintiffs' counsel without registration and compliance with the prospectus delivery requirements of the securities laws.  If the proposed settlement of this Action is approved, such shares will be exempt from registration under the Securities Act of 1933, as amended, pursuant to Section 3(a)(10) thereunder, and the Court further recognizes and acknowledges that AIG will rely on the Section 3(a)(10) exemption based on any such final approval of the proposed settlement by this Court.

7. The Court approves the form of the Notice and approves for publication the form of the Summary Notice, attached hereto as Exhibits 1 and 2 and finds that the mailing and distribution of the Notice and publishing of the Summary Notice meet the requirements of Rule 23 and due process, and:  (i) is the best notice practicable under the circumstances; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, of the effect of the proposed settlement (including the releases contained therein) and of their rights to object to the proposed settlement, exclude themselves from the Settlement Class and appear at the Fairness Hearing; (iii) shall constitute due and sufficient notice to all persons entitled to notice; (iv) is adequate notice under Section 3(a)(10) of the Securities Act of 1933, as amended; and (v) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, and all other applicable laws and rules.  The Court also approves, as to the form and content, the Proof of Claim and Release Form attached hereto as Exhibits 3 and 4.

8. The Court approves the appointment of _____ as the Administrator.

9.     If necessary, despite Lead Counsel making best efforts to use the transfer record information previously provided by AIG in connection with the PwC Settlement, AIG shall provide to Lead Counsel, at no cost, information obtainable by reasonable efforts identifying, by name and address, the persons and entities who were holders of AIG securities during the Class Period, including banks, brokerage firms, institutions and other nominees and record owners, in searchable electronic form.

10.    Lead Counsel shall cause the Notice, the Proof of Claim and the Release Form (as applicable), substantially in the forms annexed hereto as Exhibits 1, 3 and 4, to be mailed, by first-class mail, postage prepaid, on or before [__] ("Notice Date"), to all Settlement Class Members at the address of each such person as set forth in the records of AIG or its transfer agent, or who otherwise can be identified through reasonable effort.  Lead Counsel shall, at or before the Fairness Hearing, file with the Court proof of mailing of the Notices, Proofs of Claim and Release Forms.

11.    Lead Counsel shall cause the Summary Notice, substantially in the form annexed hereto as Exhibit 2, to be published in *The Wall Street Journal* and on PR Newswire and Bloomberg News Service, once each on separate days, within fourteen (14) calendar days of the Notice Date.  Lead Counsel shall, at or before the Fairness Hearing, file with the Court proof of publication of the Summary Notice.

12.    Lead Counsel and the Administrator shall cause the Notice to be published on their respective websites.

13.    Lead Counsel, or its agents, shall be responsible for the receipt of all Proofs of Claim, Release Forms, objections and requests for exclusion and, until further order of the Court, shall preserve all Proofs of Claim, Release Forms, objections and requests for

exclusion from putative Settlement Class Members, nominees or any other person in response to the Notice.

14.     Lead Counsel shall use reasonable efforts to give notice to nominee owners such as brokerage firms and other persons or entities who purchased AIG Securities during the Class Period as record owners but not as beneficial owners.  Such nominees who hold or held AIG Securities for beneficial owners who are Settlement Class Members are directed (a) to provide the Administrator with lists of the names and last known addresses of the beneficial owners for whom they purchased AIG Securities during the Class Period within seven (7) calendar days of receipt of the Notice, or (b) to send the Notice and Proof of Claim to the beneficial owners.  If the nominee owner elects to send the Notice and Proof of Claim to the beneficial owners, the nominee owner is directed (i) to request additional copies of the Notice and Proof of Claim within seven (7) calendar days of receipt of the Notice, and (ii) to mail the Notice and Proof of Claim within seven (7) calendar days of receipt of the copies of the Notice from the Administrator, and upon such mailing the nominee owner shall send a statement to the Administrator confirming that the mailing was made as directed.  Upon full compliance with this Order, such nominees may seek reimbursement of their reasonable expenses actually incurred in complying with this Order by providing the Administrator with proper documentation supporting the expenses for which reimbursement is sought.  Such properly documented reasonable expenses incurred by nominees in compliance with the terms of this Order shall be paid from the Escrow Account.

15.     The Administrator and AIG are directed to make reasonable efforts to obtain information about prior distributions from the fair fund created in *SEC v. American International Group, Inc.*, 06 Civ. 1000 (S.D.N.Y.) (LAP) ("Fair Fund") from the Fair Fund's

administrator.  In addition, the Administrator shall require claimants to indicate the amounts they received from the Fair Fund.  In case of a discrepancy, information about the amount of any Fair Fund Distribution obtained from the Fair Fund's administrator shall prevail over information provided by an Authorized Claimant.

16.     The reasonable costs of notification to Settlement Class Members of the Agreement, including printing, mailing and publication of all required notices, shall be paid out of the Escrow Account.  In accordance with Paragraph I.C.6 of the Agreement, Lead Counsel may draw up to $2,500,000 from the Escrow Account to pay the reasonable costs of notice and settlement administration without further Order of the Court.

17.     Lead Counsel and its agents are authorized and directed to undertake the actions contemplated by Subsection I.C. of the Agreement, including the payment or reimbursement of any Tax Expenses out of the Escrow Account and the preparation of tax returns, without further Order of the Court.

18.     All putative members of the Settlement Class who do not request exclusion from the Settlement Class at least twenty-three (23) calendar days prior to the Fairness Hearing, and in the form and manner set forth in the Notice: (a) shall be deemed to have waived their rights to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) will be bound by the Agreement, and by any proceeding, judgment, order or determination of the Court affecting the Settlement Class; and (d) will be barred from commencing, maintaining or prosecuting any of the Released Claims against each and all of the Released Persons, as more fully described in the Notice.  Any request for exclusion that does not comply with the prerequisites for exclusion will be invalid.

19.    Putative Settlement Class Members who are excluded from the Settlement Class shall not be entitled to receive any payment out of the Escrow Account as described in the Agreement and Notice.

20.    Any Settlement Class Member who wishes to participate in the distribution(s) from the Escrow Account must complete and submit either a Proof of Claim or Release Form depending upon whether the Settlement Class Member previously submitted a Proof of Claim in connection with the proposed settlement with defendant PricewaterhouseCoopers LLP, in accordance with the instructions contained therein.  Unless otherwise ordered by the Court, all Proofs of Claim and Release Forms (as applicable) must be completed and submitted no later than one hundred (100) calendar days from the Notice Date. Unless otherwise ordered by the Court, any Settlement Class Member who does not complete and submit a valid Proof of Claim or Release Form (as applicable) within the time provided:  (a) shall be deemed to have waived his, her or its right to; (b) shall forever be barred from participating in any distributions therefrom; (c) shall be bound by the Agreement, and by any proceeding, judgment, order or determination of the Court affecting the Settlement Class; and (d) will be barred from commencing, maintaining or prosecuting any of the Released Claims against each and all of the Released Persons, as more fully described in the Notice..

21.    Lead Counsel shall submit papers in support of final approval of the Agreement and its application for an Attorneys' Fees and Expenses Award by no later than forty (40) calendar days prior to the Fairness Hearing.  Any reply papers, if necessary, shall be submitted no later than nine (9) calendar days prior to the Fairness Hearing.

22.    Any putative Settlement Class Member who has not requested exclusion from the Settlement Class may appear at the Fairness Hearing to show cause why the proposed

Agreement should not be approved as fair, reasonable and adequate and why a judgment should not be entered thereon; *provided*, *however*, that no putative Settlement Class Member shall be heard or entitled to contest the approval of the terms and conditions of the Agreement and the Final Judgment to be entered approving the same unless no later than twenty-three (23) calendar days prior to the Fairness Hearing, such putative Settlement Class Member has served by hand, mail or by overnight delivery written objections and copies of any supporting papers and briefs (which must contain documentation of all transactions in AIG Securities during the Class Period and price(s) paid) upon each of the following:

| | |
|---|---|
| Thomas A. Dubbs | Daniel J. Kramer |
| Louis Gottlieb | Daniel J. Leffell |
| Labaton Sucharow LLP | Paul, Weiss, Rifkind, Wharton & |
| 140 Broadway | Garrison LLP |
| New York, NY 10005 | 1285 Avenue of the Americas |
| | New York, NY 10019 |
| | |
| *Lead Counsel for Lead Plaintiff and the* | *Counsel for American International* |
| *Settlement Class* | *Group, Inc.* |

and has filed said objections, papers and briefs, showing due proof of service upon Lead Counsel and AIG's counsel, with the Clerk of the United States District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007-1312.  Persons who intend to object to the Agreement and desire to present evidence at the Fairness Hearing must include in their written objections the identity of any witnesses they may seek to call to testify and exhibits they may seek to introduce into evidence at the Fairness Hearing.  Any party has the right to object to any testimony or other evidence which a person objecting to the Agreement seeks to introduce.

23. Unless this Court otherwise directs, no Settlement Class Member or other person shall be entitled to object to the Agreement, or the Final Judgment to be entered herein, or otherwise be heard, except by serving and filing written objections as described above.  Any person who does not object in the manner prescribed above shall be deemed to have waived such

objection in this or any other action or proceeding and shall be bound by all the terms and provisions of the Agreement and by all proceedings, orders and judgment in the Action.

24.     The Court expressly reserves the right to do the following without further notice to the Settlement Class Members: (i) adjourn the Fairness Hearing, or any adjournment thereof; (ii) approve the Agreement with modification(s) approved by the Settling Parties; and (iii) modify the Plan of Allocation.

25.     Neither AIG nor AIG's counsel shall have any responsibility for any Plan of Allocation of the Escrow Account or any application for an Attorneys' Fees and Expenses Award submitted by Lead Counsel, and such matters will be considered separately from the fairness, reasonableness and adequacy of the Agreement.  Lead Counsel shall be responsible for the apportionment of fees and expenses amongst Lead Plaintiff's counsel.

26.     Pending final determination of whether the Agreement should be approved, Lead Plaintiff, all putative Settlement Class Members, and each of them, and anyone who acts or purports to act on their behalf, shall not institute, commence or prosecute any action which asserts the Released Claims against the Released Persons.

27.     Subject to Paragraph XI.S of the Agreement, the administration of the proposed Agreement and the determination of all disputed questions of law and fact with respect to the validity of any claim or right of any person to participate in the distribution of the Escrow Account shall be under the authority of this Court.

28.     The Court retains jurisdiction over the Action to consider all further matters arising out of or connected with the Agreement.

Dated: New York, New York
     [___], 2010

_____

The Honorable Deborah A. Batts
United States District Court for the Southern
District of New York

# Exhibit C-1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

——————————————————— x
:
:
IN RE AMERICAN INTERNATIONAL     :     Master File No. 04 Civ. 8141 (DAB) (AJP)
GROUP, INC. SECURITIES LITIGATION  :
:     **NOTICE OF PROPOSED**
:     **SETTLEMENT, MOTION FOR**
:     **ATTORNEYS' FEES AND EXPENSES**
:     <u>**AWARD AND FAIRNESS HEARING**</u>
——————————————————— x

**If You Purchased or Otherwise Acquired Securities Issued by
American International Group, Inc. ("AIG") During the Period from October 28, 1999
through April 1, 2005, Inclusive, ("Class Period") and Were Damaged Thereby,
You May Be Entitled to Share in a $725 Million Settlement with
<u>American International Group, Inc.</u>**

**PLEASE READ THIS NOTICE CAREFULLY.
A Federal Court Authorized This Notice. This Is Not A Solicitation.
Your Legal Rights Are Affected Whether You Do Or Do Not Act.**

      1.    <u>**Statement of Plaintiff Recovery**</u>:    This Notice advises you of a proposed partial settlement (the "Settlement") consisting of $175 million in cash, plus interest as it accrues, and $550 million in cash or AIG common stock (which may be sold in order to provide an all cash recovery for Settlement Class Members) for a total payment by AIG of $725 million (the "Settlement Amount"), of a consolidated class action lawsuit brought by the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio and Ohio Police & Fire Pension Fund (collectively, "Lead Plaintiff" or "the Ohio State Funds"), on behalf of the Settlement Class against AIG and other defendants. This Settlement is a final resolution of the Claims brought on behalf of the Settlement Class against AIG and certain related defendants.

This AIG Settlement is separate from the settlement with defendant PricewaterhouseCoopers LLP, previously announced ("PwC Settlement").

The action alleges, among other things, that during the Class Period, defendants made materially false and misleading statements and omissions in connection with the involvement of AIG in an allegedly illegal market division scheme with Marsh & McLennan Companies ("Marsh") and others, as well as an alleged accounting fraud that led to AIG's $3.9 billion restatement or adjustment of earnings in May 2005.  The action also alleges certain market manipulation claims. The Consolidated Third Amended Complaint ("Complaint") alleges violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder (the "Action").

The Settlement will resolve all claims against AIG and certain related defendants and will create a settlement fund to pay the claims of investors who purchased or otherwise acquired AIG's publicly-traded common stock, debt and options during the Class Period. (*See* below at page 7 for more information about eligible "AIG Securities.")  The Distribution Amount (the Settlement Amount less any Notice and Administrative Expenses, attorneys' fees and litigation expenses awarded to Lead Plaintiff's counsel, expenses awarded to Lead Plaintiff and Tax Expenses) will be distributed in accordance with a proposed plan of allocation (the "Plan of Allocation"), which is described herein.  Based on Lead Plaintiff's damages consultant's estimate of the number of shares of common stock entitled to participate in the Settlement, given the allocation of 5% of the recovery to debt purchasers and assuming that all shares entitled to participate do so, Lead Plaintiff estimates that the average recovery per damaged share would be approximately $____per share, before deduction of any court-awarded fees and expenses.[1]  An individual Class Member's actual recovery will depend on many factors, for example: (1) the total number of claims submitted; (2) when the Settlement Class Member purchased AIG Securities during the Class Period; (3) the purchase price paid; (4) the type of security bought; and (5) whether those AIG Securities were held at the end of the Class Period or sold during the Class Period (and, if sold, when they were sold and the amount received).  *See* the Plan of Allocation beginning on page 15 for more information on your potential Recognized Loss.

2. **Reasons for Settlement**: The Settlement resolves claims against AIG for allegedly violating the federal securities laws by allegedly failing to disclose the truth about certain of its business practices and financial results and for damages allegedly caused by these practices and by market manipulation of AIG's securities. However, the Settlement is not and should not be construed as an admission of any fault, liability or wrongdoing whatsoever by AIG. In light of the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff believes that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class. Lead Plaintiff believes that the Settlement provides a substantial benefit in the form of $175 million in cash, plus $550 million in cash or AIG common stock (which may be sold in order to provide an all cash recovery for Settlement Class Members), less the various deductions described in this Notice, as compared to the risks and delays of proceeding with the Action against AIG. These risks include the fact that there is no assurance that Lead Plaintiff would recover as much as was achieved in this Settlement at a later stage in the litigation. Moreover, even if the case were to proceed and a later recovery obtained, it would take several more years of expert discovery, motion practice, trial and further appeals to obtain such a recovery, during which time AIG would have the opportunity to assert substantial defenses to the claims asserted against it.  The risks also include that AIG could prevail in all or part of the Action, in which case Lead Plaintiff may obtain no recovery at all from AIG.

3. **Statement of Potential Outcome if the Case Against AIG Continued**: Lead Plaintiff and AIG (collectively, the "Settling Parties") do not agree on the average amount of damages per share that would be recoverable even if Lead Plaintiff was to prevail on the claims asserted against AIG.  AIG denies all liability.  In addition, the Settling Parties disagree on,

---

[1] An allegedly damaged share might have been traded more than once during the Class Period, and the indicated average recovery per share would be the total for all purchasers of that share.

**Questions? Call Toll-Free (800) _____**

among other things: (i) whether certain statements made by AIG were false; (ii) whether AIG knew, or was severely reckless in not knowing, that certain of its statements and omissions about AIG's business and financial results were false or misleading; (iii) whether the alleged misstatements and omissions were material to investors; (iv) whether AIG engaged in actions constituting market manipulation of its securities; (v) the amount of inflation, if any, caused by the alleged misrepresentations and omissions; (vi) the amount of damages, if any, caused by the alleged market manipulation of AIG's securities (vii) the appropriate economic models for determining the amounts by which AIG's securities were allegedly artificially inflated (if at all) during the Class Period, (viii) the effect of various market forces influencing the trading prices of AIG's securities during the Class Period, and (ix) whether a class should have been certified for purposes other than the Settlement.

4.     **<u>Statement of Attorneys' Fees and Expenses Sought</u>**: Lead Plaintiff's counsel, Labaton Sucharow LLP and Hahn Loeser & Parks LLP (collectively, "Lead Counsel"), intend to apply for an award of attorneys' fees on behalf of all plaintiffs' counsel of _____% of the Escrow Account, plus interest as it accrues, and to seek reimbursement of litigation expenses paid and incurred in connection with the prosecution and resolution of the claims against AIG (the "Litigation Expenses"), in an amount not to exceed $____ million.  Lead Counsel represents that this is consistent with a fee agreement entered into between Lead Counsel and the Ohio Attorney General on behalf of the Ohio State Funds.  In addition, Lead Plaintiff will, by separate application, ask the Court to reimburse it and/or the Office of the Attorney General of Ohio from the Settlement Amount for costs and expenses they incurred directly related to their representation of the Settlement Class, in an amount not to exceed $ _____.  If the Court approves Lead Plaintiff's counsel's fee and expense application and Lead Plaintiff's application for reimbursement, the average cost per share will be _____ per share.

5.     **<u>Further Information</u>**: Further information regarding the Settlement and this Notice may be obtained by contacting the Administrator: *In re AIG Securities Litigation - Company Settlement*, c/o _____, P.O. Box ____, _____, (800) __-____, www._____; or Counsel: Labaton Sucharow LLP, 140 Broadway, NY, NY  10005, (866) 779-0843, www.labaton.com.  **Please Do Not Call the Court or AIG With Questions About the Settlement.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY** _____ | The way to get a payment.  However, if you already submitted a claim form in the PwC Settlement, you do not have to do so again. Instead, you must complete a Release Form. |
| **EXCLUDE YOURSELF BY** _____ | Get no payment and remove yourself from the Settlement Class. This is the only option that allows you to ever bring or be part of any *other* lawsuit against AIG and the other "Released Persons" about the "Released Claims." |
| **OBJECT BY** _____ | Write to the Court about why you do not like the Settlement. You will still be a member of the Settlement Class. |
| **GO TO A HEARING ON** _____ | Ask to speak in Court about the Settlement at the Fairness Hearing. |
| **DO NOTHING** | Get no payment.  Give up rights. |

**Questions? Call Toll-Free (800) _____**

# TABLE OF CONTENTS

Why did I get this notice?......................................................................................................x

How do I know if I am part of this Settlement?.....................................................................x

What recovery does the Settlement provide?.........................................................................x

Why is there a Settlement?  What are Lead Plaintiff's reasons for the Settlement ........................x

What might happen if there were no Settlement?...................................................................x

Do I have a lawyer in the case? How will the lawyers be paid?.......................................................x

What rights am I giving up by agreeing to the Settlement?...........................................................x

What is this case about?........................................................................................................x

What has happened in this case so far?..................................................................................x

How much will my payment be? ...........................................................................................x

How do I participate in the settlement? What do I need to do?......................................................x

What if I already submitted a claim form in the PwC Settlement? .................................................x

What if I do not want to participate in the Settlement? How do I exclude myself?......................x

What if I want to object to the Settlement? When and where will the Court decide whether to approve the Settlement? May I speak at the Hearing if I do not like the Settlement?..........................................................................................................................x

Special Notice to Securities Brokers and other Nominees ...........................................................x

Can I see the Court file? Whom should I contact if I have questions?.............................................x

| **Why did I get this notice?** |
| --- |

You or someone in your family may have purchased or acquired publicly-traded securities issued by AIG during the period from October 28, 1999 through April 1, 2005, inclusive. The Court sent you this Notice because, as a potential Settlement Class Member, you have a right to know about the proposed Settlement of the claims asserted in this Class Action against AIG and your options before the Court determines whether to approve the Settlement.  If the Court approves the Settlement, after all objections and appeals are resolved, a claims administrator (the "Administrator") will make payments pursuant to the terms of the Settlement.

The Court in charge of this case is the United States District Court for the Southern District of New York and the case is known as *In re American International Group, Inc. Securities Litigation*, Master File No. 04-8141 (DAB). Lead Plaintiff filed this lawsuit on behalf of itself and as representative of the Settlement Class.

Lead Plaintiff has reached settlements or contingent settlements with all defendants in the Action, including, as previously noticed, defendant PricewaterhouseCoopers LLP.  If approved by the Court, these settlements could total more than $1 billion for the Settlement Class.  However, none of these additional settlements has been finally approved by the Court.[2]

The Settlement with AIG will also release all claims against defendants John A. Graf, Eli Broad, Martin J. Sullivan, Thomas R. Tizzio, Wachovia Securities, Inc. and Merrill Lynch & Co.

This Notice explains the lawsuit, the Settlement with AIG, your legal rights, what benefits are available, who is eligible for them, and how you may receive your portion of the benefits. The purpose of this Notice is to inform you of the terms of the proposed Settlement and of a hearing to be held by the Court to consider the Settlement (the "Fairness Hearing").

The Fairness Hearing will be held at _:__ _m on _____ __, 2011 before the Honorable Deborah A. Batts, in the United States District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007, to determine:

> (a)     Whether the proposed Settlement is fair, reasonable and adequate and should be approved by the Court;

> (b)     Whether the claims against AIG and related defendants should be dismissed with prejudice as set forth in the Agreement of Compromise and Settlement, dated November 30, 2010 (the "Stipulation");

> (c)     Whether the proposed Settlement Class should be certified and Lead Plaintiff be appointed as Class Representative and Lead Plaintiff's counsel be appointed Class Counsel;

---

[2] In addition to the PwC Settlement, Lead Plaintiff has reached a $115 million contingent settlement with Maurice R. Greenberg, Howard I. Smith, Christian M. Milton, Michael J. Castelli, C.V. Starr & Co., Inc., and Starr International Company, Inc.  Lead Plaintiff also has reached a $72 million settlement with defendant General Reinsurance Corporation ("Gen Re") in 2009.  On September 10, 2010, the Court dismissed all claims in the Action against Gen Re.  On October 21, 2010, Lead Plaintiff filed a notice of appeal from the dismissal.

**Questions? Call Toll-Free (800) _____**

(d)      Whether the proposed Plan of Allocation for distributing the Settlement to Settlement Class Members is fair and reasonable and should be approved;

(e)      Whether the application by Lead Plaintiff's counsel for an award of attorneys' fees and reimbursement of litigation expenses should be approved; and

(f)      Whether, pursuant to Section 3(a)(10) of the Securities Act of 1933, as amended, the terms and conditions of the Settlement are fair to potential recipients of Settlement Stock issued in connection with this Settlement and that the issuance, sale, exchange or distribution of such stock is not subject to the registration requirements under the Securities Act of 1933 and prospectus delivery requirements of the securities laws.

The issuance of this Notice is not an expression of the Court's opinion on the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement, payment will be made after all appeals, if any, are resolved and after the completion of all claims processing. Please be patient.

---

**How do I know if I am part of this Settlement?**

---

You are part of this Settlement if you are within the definition of the Settlement Class and you do not take steps to exclude yourself. The Settlement Class covered by this settlement consists of: all persons and entities who purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive, as well as all persons and entities who held the common stock of HSB Group, Inc. ("HSB") at the time HSB was acquired by AIG in a stock for stock transaction, and all persons and entities who held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock transaction, and who were damaged thereby, excluding persons who make timely and valid requests for exclusion from the class. (*See* the Plan of Allocation for more information about eligible securities.)

"AIG Securities" means any and all publicly-traded securities issued by American International Group, Inc., whether debt or equity securities. Options on AIG common stock are also eligible for a recovery in the Settlement.

Excluded from the Settlement Class are the defendants in the Action, members of the immediate families of the individual defendants, any parent, subsidiary, affiliate, officer, or director of defendant AIG, any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person. Also excluded from the Settlement Class are any persons who exclude themselves by timely filing a request for exclusion in accordance with the requirements set forth below. (*See* "What if I do not want to participate in the Settlement? How do I exclude myself?")

**RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A MEMBER OF THE SETTLEMENT CLASS OR ARE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.**

7

**Questions? Call Toll-Free (800) _____**

**TO RECEIVE PROCEEDS FROM THE SETTLEMENT, YOU MUST SUBMIT A
PROOF OF CLAIM OR RELEASE FORM BY _____ __, 2011**

| **What recovery does the Settlement provide?** |
| --- |

In exchange for the Settlement and dismissal of the Released Claims, AIG has agreed to pay
$175 million in cash into an escrow account (the "Escrow Account") within ten business days of
preliminary approval of the Settlement.  AIG has also agreed to pay an additional $550 million in
cash, if it is able to raise the funds through the sale of stock as described below.  Alternatively, if
it does not raise the funds, Lead Plaintiff may, but it is not required to, elect to have AIG deliver
$550 million in unrestricted, transferable AIG common stock, in order to consummate the
Settlement.  In all, AIG is obligated to pay consideration in the amount of $725 million for
settlement of the claims.

More specifically, AIG's payment of $550 million in cash into the Escrow Account is
conditioned on AIG consummating an offering of its common stock (a "Qualified Offering"), or
a series of offerings, in which it raises net proceeds of at least $550 million at any time before the
Court enters the proposed Order and Final Judgment (the "Final Judgment") approving the
Settlement ("Final Judgment Date").  AIG will use its best efforts to consummate a Qualified
Offering, but the decision as to whether market conditions or pending or contemplated corporate
transactions make it commercially reasonable to proceed with such an offering are subject to
AIG's unilateral discretion.  However, if AIG effects a registered secondary offering of common
stock on behalf of the U.S. Treasury, resulting in the U.S. Treasury receiving proceeds of at least
equal to $550 million, AIG shall be obligated to fund the Escrow Account with the $550 million
in cash in addition to the $175 million paid after preliminary approval.  AIG may also elect to
fund the Escrow Account with cash in advance of the Final Judgment Date through other means.

If AIG has not funded the Escrow Account with the full $725 million in cash by the Final
Judgment Date, the Lead Plaintiff can take certain actions.  It can terminate the Settlement,
extend the amount of time AIG has to make a Qualified Offering and fund the balance, or take
unrestricted transferable AIG common stock valued at $550 million (the "Settlement Stock")
instead of cash.  In the event that AIG issues Settlement Stock, the issuance will not be subject to
registration and prospectus delivery requirements of the securities laws, provided that the Court
determines, at the Fairness Hearing described above, that the Settlement Stock is exempt from
such requirements because the Settlement is fair.

If Lead Plaintiff decides to take the Settlement Stock instead of cash, Lead Plaintiff may request
that the Court appoint an Equity Manager to oversee the liquidation of the Settlement Stock in a
manner designed to maximize its value to the extent reasonably possible, and promptly deposit
all proceeds thereof in the Escrow Account.  The Equity Manager will be entitled to a reasonable
fee for these services.  The Equity Manager will not be liable to anyone for any action taken or
omitted by them relating to the liquidation of the Settlement Stock except on a finding by the
Court that the Equity Manager acted, or omitted an act, in bad faith or reckless disregard of its
fiduciary duties.  However, Lead Plaintiff will determine, in its sole discretion, whether to

deliver the Settlement Stock to the Equity Manager for liquidation or deliver the Settlement Stock directly to Authorized Claimants.

The Settlement Amount will be divided, after deduction of Court-awarded attorneys' fees and expenses, Notice and Administrative Expenses, any applicable taxes, and any other expenses and awards the Court may order ("Distribution Amount"), among all Settlement Class Members who timely submit valid Proof of Claim forms that show a Recognized Loss. Your share of the Distribution Amount will depend on several things, including: (1) the amount of Recognized Losses of other Settlement Class Members who file valid Proofs of Claim; (2) how many AIG Securities you bought; (3) how much you paid for them; (4) the type of security bought; (5) when you bought them; and (6) whether or when you sold them (and, if so, for how much you sold them).

Your Recognized Loss will be calculated according to the formula shown below in the Plan of Allocation.  It is unlikely that you will get a payment for your entire Recognized Loss, given the number of potential Settlement Class Members with Recognized Losses.  After all Settlement Class Members have sent in their Proof of Claim forms, the payment you get will be a portion of the Distribution Amount equal to your Recognized Loss divided by the total of all Settlement Class Members' Recognized Losses and multiplied by the total Distribution Amount.  If you received any payment from the fair fund created in *SEC v. American International Group, Inc.*, 06 Civ. 1000 (S.D.N.Y.) (LAP) ("Fair Fund Distribution"), your Recognized Loss will be reduced by seven-eights (7/8th) of your Fair Fund Distribution ("Fair Fund Ratio Amount").  In no event will you recover more than your Recognized Loss reduced by your Fair Fund Ratio Amount.  No one will receive a distribution from the Settlement that exceeds 100% of their total Recognized Loss(es).  (*See* the Plan of Allocation beginning on page 15 for more information.)

Once all the Proofs of Claim are processed and claims are calculated, Lead Plaintiff's counsel, without further notice to the Settlement Class, will apply to the Court for an order distributing the Distribution Amount to the members of the Settlement Class.  Counsel will also ask the Court to approve payment of the Administrator's fees and expenses incurred in connection with administering the Settlement that have not already been reimbursed.

---

**Why is there a Settlement?  What are Lead Plaintiff's reasons for the Settlement?**

---

Under the proposed Settlement, the Court will not decide the merits of the claims in the Action in favor of either the Lead Plaintiff or AIG.  By agreeing to a Settlement, both the Lead Plaintiff and AIG avoid the costs and risks of litigating the claims in the Action.  By accepting the Settlement, Settlement Class Members will be compensated immediately for the AIG claims.  In light of the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff believes that the proposed Settlement is fair, reasonable and adequate and in the best interest of the Settlement Class Members.

Lead Plaintiff and Lead Plaintiff's counsel believe that the claims asserted against AIG have merit.  However, they recognize the risks of, expense of and delay associated with the continued prosecution of the claims against AIG in the Action.  AIG has denied and continues to deny each and every allegation of liability or damage to the Settlement Class or any member thereof.  Lead

9

**Questions? Call Toll-Free (800) _____**

Plaintiff and their counsel have taken into account the issues that would have to be decided by a jury including: (i) whether each of the alleged misrepresentations and omissions made by AIG was false; (ii) if false, whether each of those alleged misrepresentations and omissions by AIG was material; (iii) whether AIG acted knowingly or recklessly in making the alleged misrepresentations and omissions; (iii) whether AIG engaged in market manipulation of its securities; and (iv) the amount of damages, if any, caused by the alleged misrepresentations and omissions by AIG or the alleged market manipulation.

Lead Plaintiff and Lead Plaintiff's counsel have also considered the uncertain outcome and trial risk in complex lawsuits like this one. Lead Plaintiff believes that a recovery now will provide an immediate benefit to the Settlement Class Members, which is superior to the risk of proceeding with the claims against AIG. In addition, there was a risk that any future judgment against AIG would be reduced by as much as $800 million resulting from AIG's February 2006 settlement with the Securities and Exchange Commission. Considering these factors and balancing them against the certain and substantial benefits that the Settlement Class will receive as a result of the Settlement, Lead Plaintiff and Lead Plaintiff's counsel determined that the Settlement described herein is fair, reasonable and adequate, and that it is in the best interests of the Settlement Class to settle the claims against AIG on the terms set forth in the Stipulation and this Notice.

---

**What might happen if there were no settlement?**

---

If there were no settlement of the claims against AIG and Lead Plaintiff failed to establish any essential legal or factual element of its claims, neither it nor the Settlement Class would recover anything from AIG. Also, if AIG was successful in proving any of its defenses, the Settlement Class likely would recover substantially less than the amount provided in the Settlement, if anything at all.

---

**Do I have a lawyer in the case? How will the lawyers be paid?**

---

The Court appointed the law firms of Labaton Sucharow LLP in New York, New York and Hahn Loeser & Parks LLP in Cleveland, Ohio to represent the proposed class. You will not be separately charged for the work done by the lawyers who worked on this lawsuit. If you want to be represented by your own lawyer, you may hire one at your own expense.

The Court will determine the amount (if any) of Lead Plaintiff's attorneys' fees and expenses, which will be paid from the Settlement Amount. Any attorneys' fees awarded to Lead Plaintiff's counsel will be distributed, in part, to additional counsel who worked on this lawsuit under the supervision and direction of Lead Plaintiff's counsel based upon the amount, quality and importance of work they performed. Lead Plaintiff estimates that in the aggregate such amount will be less than [_____]% of the total attorneys' fees awarded by the Court.

Lead Plaintiff's counsel has not received any payment for its services in pursuing claims against AIG on behalf of the Settlement Class, nor has it been reimbursed for its considerable litigation expenses. In this type of litigation, it is customary for counsel to be awarded a percentage of the

settlement fund recovered as its attorneys' fees, and to receive reimbursement of the expenses advanced in the prosecution of the action. Lead Plaintiff's counsel intends to apply to the Court for an award of attorneys' fees of _____% of the Escrow Account, including any accumulated interest, in connection with this Settlement. Lead Plaintiff's counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $____million.  If the applications for attorneys' fees and reimbursement of expenses is approved by the Court, the average cost per share would be less than $_____ per share.

The fee requested by Lead Plaintiff's counsel would compensate it for its efforts in achieving the Settlement for the benefit of the Settlement Class and willingness to undertake this representation on a contingency basis. The fee requested is within the range of fees awarded to plaintiffs' counsel under similar circumstances in litigation of this type.  NEITHER THE COURT NOR THE DEFENDANTS HAVE EXPRESSED ANY OPINION ON THE APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES.

| **What rights am I giving up by agreeing to the Settlement?** |
| --- |

If the Settlement is approved, the Court will enter an Order and Final Judgment (the "Final Judgment") ending all the claims against AIG and precluding Settlement Class Members from continuing to litigate the claims against AIG and the Released Persons.  The Final Judgment will (i) dismiss the claims against AIG with prejudice; and (ii) provide that Lead Plaintiff and all other Settlement Class Members, except those who validly and timely request to be excluded from the Settlement Class, shall, upon the Effective Date (as defined in the Stipulation of the Settlement), on behalf of themselves and their respective heirs, executors, administrators, successors and assigns and all persons acting in concert with any such person shall have fully, finally and forever released, relinquished, acquitted and discharged the Released Persons from the Released Claims. The release also constitutes an express waiver and relinquishment, to the fullest extent permitted by law, of the provisions, rights and benefits of California Civil Code § 1542, and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

"Released Claims" means and includes any and all Claims, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, suspected or unsuspected, existing now or to be created in the future, whether unasserted or asserted in the Complaint, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere, and whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, that Lead Plaintiff, the Settlement Class or Settlement Class Members, and/or each of their respective present, former and future parents, subsidiaries, agencies, connected firms, instrumentalities, branches, divisions and affiliates, the present, former or future employees, members, partners, principals, associates, officers and directors, attorneys, advisors, trustees, administrators, fiduciaries, consultants,

representatives, accountants and auditors, insurers, attorneys, and agents or each of them, and the predecessors, estates, heirs, owners, executors, trusts, trustees, administrators, successors and assigns of each, ever had, now have or hereafter can, shall or may have against the Released Persons, (a) arising out of, in any way related to, or in connection with the allegations, transactions, facts, matters or occurrences that gave rise to the claims alleged in the Action, and are or could have been advanced in the Action, and/or (b) in any way arise out of, are based upon, relate to or concern the purchase, acquisition, disposition or sale of, or other transaction in AIG Securities during the Class Period, including without limitation, claims that arise out of or relate to any disclosures, Securities and Exchange Commission filings, press releases, registration statements, offering memoranda or other public statements by AIG during the Class Period.

The Stipulation defines "Claims" as any and all claims, demands, actions, causes of action, obligations, debts, judgments and liabilities of any kind, nature and description, whether at law or in equity or upon any legal or equitable theory, whether contractual, common law or statutory, whether arising under federal, state, common or foreign law, whether based on allegedly intentional, negligent or reckless conduct, whether asserted or unasserted as claims, cross-claims, counterclaims or third-party claims in any pleadings in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency or other forum in the United States or elsewhere, whether foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, that are related in any way to the allegations, transactions, facts, matters or occurrences that gave rise to the claims alleged in the Action or that could have been advanced in the Action.

The "Released Persons" means Eli Broad, John A. Graf, Martin J. Sullivan, Thomas R. Tizzio, Wachovia Securities, Inc., Merrill Lynch & Co., AIG and their present, former and future parents, subsidiaries, agencies, business units, connected firms, instrumentalities, branches, divisions and affiliates; and the present, former or future employees, members, partners, principals, associates, officers and directors, advisors, trustees, administrators, fiduciaries, consultants, representatives, accountants and auditors, insurers, attorneys, and agents of each of them; and the predecessors, estates, heirs, owners, executors, trusts, trustees, administrators, successors and assigns of each of them.

The Final Judgment will also provide that AIG fully, finally and forever releases, relinquishes, acquits and discharges the Lead Plaintiff, the Settlement Class, Settlement Class Members and Lead Plaintiff's counsel ("Released Plaintiff Parties") from any Claims which AIG ever had, now has or hereafter can, shall or may have against any of the Released Plaintiff Parties, which arise out of or relate in any way to the institution or prosecution (to the Effective Date) of the Action except a claim to enforce the releases or other terms and conditions contained in the Stipulation or any court order entered pursuant thereto.

Also, the Final Judgment will contain bar order provisions precluding the non-settling defendants from being able to bring claims in the future seeking relief such as contribution and indemnification against the Released Persons. Also, the non-settling defendants will be entitled to a judgment credit related to this Settlement if the Action against them results in a judgment.

**What is this case about?**

This Action arises from, among other things, allegedly material misstatements and omissions made by defendant AIG and others in connection with AIG's involvement in an allegedly illegal market division scheme with Marsh and others in the insurance industry, as well as an alleged accounting fraud scheme related to AIG's $3.9 billion restatement or adjustment of earnings in May 2005. Lead Plaintiff alleges that, at the end of the Class Period, the price of AIG's stock dropped significantly when these frauds were disclosed, resulting in alleged damages to the Settlement Class.

Specifically, Lead Plaintiff alleges that, on October 14 and 15, 2004, there were disclosures concerning AIG's involvement in a market division scheme that included its payment of allegedly improper "steering" contingent commissions to, and illegal rigging of bids with, Marsh and others in the insurance industry. Lead Plaintiff also claims that there were disclosures in March and April 2005 of a massive accounting fraud at AIG that resulted in the Company restating or adjusting nearly four years of earnings and, *inter alia*, slashing net income by $3.9 billion. In addition, the Complaint alleges that AIG manipulated the price of its stock during the Class Period through a stock repurchase program.

Lead Plaintiff alleges that the consequences of the disclosures referenced above included AIG's payment of more than $1.6 billion to settle claims and pay fines relating to, among other things, the alleged market division and accounting fraud brought by federal and state regulators, including the Securities and Exchange Commission, Department of Justice, and the Office of the New York Attorney General.

AIG denies all civil liability and the Settlement is not and may not be construed or deemed to be evidence of, or an admission or a concession on the part of AIG, of any fault or liability whatsoever or of any infirmity in any defenses it has asserted or intended to assert, or of the merits of Lead Plaintiff's claims. AIG, while affirmatively denying liability, considers it desirable and in its best interest that the claims against AIG in the Action be dismissed under the terms of the proposed Settlement in order to avoid further expense, uncertainty and distraction, and protracted litigation.

**What has happened in this case so far?**

After the first alleged disclosures about the market division fraud were reported to the public on October 14, 2004, ten class action complaints were filed against AIG and others, and the cases were transferred to Judge Laura Taylor Swain. The complaints included class periods of October 28, 1999 to October 15, 2004, and alleged Section 10(b) claims. After hearing fully-briefed motions regarding appointment of a lead plaintiff and lead counsel to pursue the proposed class action, Judge Swain, by order dated February 7, 2005, appointed the Ohio State Funds as Lead Plaintiff; and appointed Labaton Sucharow (at the time known as Goodkind Labaton Rudoff & Sucharow LLP) and Hahn Loeser & Parks LLP as Lead Plaintiff's counsel.

On April 19, 2005, Lead Plaintiff filed a Consolidated First Amended Complaint, which included claims based on both the alleged market division fraud and the alleged accounting fraud, alleged a class period of October 28, 1999 through March 30, 2005, named additional defendants and added claims under Section 11 and 15 of the Securities Act.

On May 16, 2005, the San Francisco Employees' Retirement System filed a separate, purportedly new securities class action complaint against AIG and others that alleged causes of action based solely on the alleged accounting frauds disclosed in the Spring of 2005.  After reviewing motions on the appointment of Lead Plaintiff related to this claim, the Court held a hearing on July 18, 2005 and found that the Ohio State Funds would serve as the Lead Plaintiff for all the claims at issue.

Between November and December 2005 defendants in the Action filed motions to dismiss the Action in its entirety, submitting hundreds of pages of briefing and affidavits.  The Court denied all of these motions, except one, in April and May 2006.  After the denial of the motions, Lead Plaintiff, the Ohio State Funds, and Lead Counsel began to conduct formal discovery into the facts of the case. (Prior to filing its first complaint, Lead Plaintiff's counsel had engaged in a thorough investigation of the publicly available information about the claims, including contact with former employees of AIG and other defendants.)  Defendants, including AIG, and approximately 42 non-parties have produced more than 53.3 million pages of documents.  Lead Counsel represents that it has reviewed and analyzed virtually all of the documents produced to date.  In addition, the parties have taken 97 depositions to date.

On February 20, 2008, Lead Plaintiff moved to certify a litigation class in the Action.  In connection with that motion, the Ohio State Funds produced more than 267,000 pages of documents to defendants, and more than 14 witnesses from the Ohio State Funds and their 10 external investment advisers were deposed.  On August 20, 2008, AIG submitted its opposition to class certification and on September 23, 2008, all other defendants submitted their opposition papers.  Lead Plaintiff replied to the opposition briefs and the Court held hearings and examined expert witness to determine whether the entire Action should be certified for litigation purposes.  By order filed February 22, 2010, the Court certified the Action for litigation purposes as a class action on behalf of a class that differs from the Settlement Class.  Both Lead Plaintiff and AIG requested that the United States Court of Appeals for the Second Circuit review the Court's certification order.  AIG's request for review was granted, and Lead Plaintiff's request was denied.  However, at the time the Settlement was reached no briefing was filed, and the Second Circuit had not issued a decision.

As noted above, Lead Plaintiff and AIG have now reached an agreement to settle the claims against AIG in the Action on terms that are summarized here. Lead Plaintiff and AIG, through their counsel, have engaged in substantial arm's-length negotiations in an effort to resolve all claims that have been or could have been asserted in the Action against AIG.  Lead Plaintiff and AIG have conducted numerous conferences, including several mediation sessions over the past five years before three different independent mediators (two of them former federal judges) in which the terms of the Settlement detailed here were negotiated.

| How much will my payment be? |
| --- |

### THE PROPOSED PLAN OF ALLOCATION – GENERAL PROVISIONS

AIG has agreed to pay $725 million in cash and/or stock (the "Settlement Amount"). After approval of the Settlement by the Court and upon satisfaction of the other conditions to the Settlement, the Distribution Amount (the Settlement Amount less any Tax Expenses, court-awarded attorney's fees and expenses, Notice and Administrative Expenses, and any other expenses and awards the Court may order), will be distributed to Settlement Class Members who timely submit either valid Proofs of Claim or Release Forms (as the case may be) establishing "Recognized Losses" according to the Plan of Allocation described below.  If Lead Plaintiff elects to take stock to consummate the Settlement, and elects not to liquidate the stock prior to distribution, eligible claims will be paid in stock and cash.

To the extent there are sufficient funds in the Distribution Amount, each Authorized Claimant will receive an amount equal to the Authorized Claimant's allowable Recognized Loss, as defined below, reduced by the Fair Fund Ratio Amount of any Fair Fund Distribution that such Authorized Claimant received from the fair fund created in *SEC v. American International Group, Inc*., 06 Civ. 1000 (S.D.N.Y.) (LAP).  No one will receive a distribution from the Settlement that exceeds 100% of their total Recognized Loss(es).  If, however, the Distribution Amount is not sufficient to permit payment of the total of all Recognized Losses, then each Authorized Claimant will be paid the percentage of the Distribution Amount that each Authorized Claimant's Recognized Loss (less any Fair Fund Ratio Amount) bears to the total of all the Recognized Losses (less all Fair Fund Ratio Amounts) of all Authorized Claimants.  You will be eligible to participate in the distribution only to the extent you have a net loss on your transactions in AIG debt securities, or on your combined transactions in AIG common stock and options.  Payment in this manner will be deemed conclusive against all Authorized Claimants.  In no event will any Authorized Claimant receive an amount greater than its Recognized Loss less any Fair Fund Ratio Amount it received.

For all purposes, the transaction date and not the settlement date shall be used as the date for determining inflation per share and eligibility to file a claim.  All purchases and sales of AIG Securities shall be accounted for and matched using the first-in-first-out (FIFO) method of accounting.  Gifts and transfers of securities are not eligible purchases. The covering purchase of a "short" sale is not an eligible purchase.

The Plan of Allocation is not intended to estimate the amount a Settlement Class Member might have been able to recover after a trial, nor is it intended to estimate the amount that will be paid to Authorized Claimants.  The Plan of Allocation is the basis upon which the Distribution Amount will be proportionately divided among the Authorized Claimants.  The Court will be asked to approve the Administrator's determinations before the Distribution Amount is distributed to Authorized Claimants.  No distributions to Authorized Claimants who would receive less than $10.00 will be made, given the administrative expenses of processing and mailing such checks.  In the event AIG stock is distributed to Authorized Claimants, no distribution of partial shares will be made.

If funds remain in the Escrow Account after all distributions, AIG might request return of the leftover amount.  If AIG does not make such a request, or if AIG's request is denied as to some or all funds, then the remaining funds will be given to non-sectarian, not-for-profit organization(s) chosen by Hon. Layn R. Phillips based on suggestions by Lead Plaintiff and AIG.

There will be no distribution of the Distribution Amount until a Plan of Allocation is finally approved and affirmed on appeal (if an appeal is filed) and the time for any petition for rehearing, appeal or review, whether by *certiorari* or otherwise, has expired.  The Released Persons have no liability, obligation or responsibility for the administration of the Settlement or disbursement of the Distribution Amount.

Each person wishing to participate in the distribution must timely submit a valid claim form and all required documentation or Release Form (as the case may be) **no later than _____, 2011**, to the address listed below and set forth in the Proof of Claim form or Release Form that accompanies this Notice. The Proof of Claim form and Release Form include a general release of each of the Released Defendant Parties. *See* the section called "How do I participate in the settlement? What do I need to do?" below.

The Court has reserved jurisdiction to allow, disallow or adjust on equitable grounds the Authorized Claim of any Settlement Class Member. The Court also reserves the right to modify the Plan of Allocation without further notice to Settlement Class Members.  Payment pursuant to the Plan of Allocation approved by the Court shall be conclusive against all Authorized Claimants.  No person shall have any claim against Lead Plaintiff, their counsel, the Claims Administrator, the Equity Manger, the Escrow Agent or other agents designated by counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.

## THE PROPOSED PLAN OF ALLOCATION - CALCULATION OF RECOGNIZED LOSS AMOUNT

### Calculation of Recognized Loss for AIG Common Stock Purchases

A.    For shares purchased on or between October 28, 1999 through April 1, 2005, the following Recognized Losses shall be allowed, subject to the limitations set forth in Section II:

1.    For each share that was (a) sold on or between October 28, 1999 and October 13, 2004, (b) purchased on or after October 15, 2004 and sold on or before March 16, 2005, or (c) purchased on or after March 17, 2005, and sold on or before March 29, 2005, the Recognized Loss shall be 10% of the difference between the inflation per share at the time of purchase, for the applicable date of purchase, less the inflation per share at the time of sale, subject to a limit of $0.20 per share.  Inflation per share shall be determined at each transaction date based on the percentage inflation applicable to that date as set forth in Table 1 times the price paid or received, excluding any commission, fees or other adjustments;

**Questions? Call Toll-Free (800) _____**

2.  For each share not covered by 1 above and sold on or before April 1, 2005, the Recognized Loss shall be the inflation per share at the time of purchase, for the applicable date of purchase, less the inflation per share at the time of sale.  Inflation per share shall be determined at each transaction date based on the percentage inflation applicable to that date as set forth in Table 1 times the price paid or received, excluding any commission, fees or other adjustments; and

3.  For each share not covered by 1 above and sold after April 1, 2005, the Recognized Loss shall be the inflation per share at the time of purchase. Inflation per share shall be determined at each purchase transaction date based on price paid or received, excluding any commission, fees or other adjustments.

B.  The following limitations on a Recognized Loss shall be applied:

1.  In addition to the annexed Table 1 relating to Section 10(b) AIG common stock claims, the Recognized Loss for such shares purchased during the Class Period shall be limited (as provided for under Private Securities Litigation Reform Act of 1995 "PSLRA") to the smallest of the following: (i) the difference between the price paid and the price received (out-of-pocket investment loss) if sold on or before April 1, 2005; (ii) the difference between the price paid (excluding all fees and commissions) and the average closing price as set forth in Table 2 below, if sold between April 4, 2005 and June 29, 2005; or (iii) the difference between the price per share paid and $53.70 per share if the shares were held on the close of business on June 29, 2005.

2.  If a claimant received a Fair Fund Distribution(s), such claimant's total Recognized Loss(es) shall be reduced by seven-eighths (7/8th) of its Fair Fund Distribution(s) (the Fair Fund Ratio Amount(s)).

3.  In no event will a claimant receive a distribution from the Settlement that exceeds 100% of the claimant's total Recognized Loss(es), reduced by the Fair Fund Ratio Amount(s).  You will be eligible for a recovery under the Plan only to the extent you have a net loss on your combined transactions in AIG common stock and options.

**Table 1:  Inflation per Share Percentage and Averages Over Identified Time Periods**

| Period | Start Date | End Date | Inflation Percentage | Avg.Price | Avg.Value | Avg.Inflaton |
|---|---|---|---|---|---|---|
| 1 | 28-Oct-99 | 7-Feb-01 | 13.9% | $80.21 | $69.07 | $11.14 |
| 2 | 8-Feb-01 | 1-Apr-01 | 16.1% | $81.28 | $68.19 | $13.09 |
| 3 | 2-Apr-01 | 25-Apr-01 | 18.2% | $78.39 | $64.11 | $14.28 |
| 4 | 26-Apr-01 | 13-Oct-04 | 21.2% | $67.81 | $53.43 | $14.37 |
| 5 | 14-Oct-04 | 14-Oct-04 | 14.2% | $60.00 | $51.50 | $8.50 |
| 6 | 15-Oct-04 | 16-Mar-05 | 11.2% | $64.84 | $57.59 | $7.25 |
| 7 | 17-Mar-05 | 29-Mar-05 | 8.5% | $57.77 | $52.86 | $4.91 |
| 8 | 30-Mar-05 | 30-Mar-05 | 6.0% | $57.16 | $53.73 | $3.43 |
| 9 | 31-Mar-05 | 31-Mar-05 | 3.3% | $55.41 | $53.56 | $1.85 |
| 10 | 1-Apr-05 | 3-Apr-05 | -3.8% | $50.95 | $52.91 | $(1.96) |
| 11 | 4-Apr-05 | Current | 0.0% | $52.30 | $52.30 | $- |

**Table 2:  PSLRA Loss Limitation Table for AIG Common Shares**

| Date | AIG Closing Price | Avg. AIG Closing Price | Date | AIG Closing Price | Avg. AIG Closing Price |
|---|---|---|---|---|---|
| 4/1/2005 | $50.95 | $50.95 | 5/16/2005 | $52.81 | $52.33 |
| 4/4/2005 | $53.30 | $52.13 | 5/17/2005 | $53.38 | $52.36 |
| 4/5/2005 | $53.00 | $52.42 | 5/18/2005 | $53.25 | $52.39 |
| 4/6/2005 | $52.99 | $52.56 | 5/19/2005 | $53.00 | $52.41 |
| 4/7/2005 | $52.76 | $52.60 | 5/20/2005 | $53.76 | $52.45 |
| 4/8/2005 | $51.91 | $52.49 | 5/23/2005 | $53.45 | $52.47 |
| 4/11/2005 | $52.10 | $52.43 | 5/24/2005 | $53.80 | $52.51 |
| 4/12/2005 | $53.20 | $52.53 | 5/25/2005 | $54.08 | $52.55 |
| 4/13/2005 | $51.61 | $52.42 | 5/26/2005 | $55.71 | $52.63 |
| 4/14/2005 | $51.39 | $52.32 | 5/27/2005 | $56.40 | $52.72 |
| 4/15/2005 | $51.11 | $52.21 | 5/31/2005 | $55.55 | $52.79 |
| 4/18/2005 | $51.26 | $52.13 | 6/1/2005 | $56.10 | $52.86 |
| 4/19/2005 | $51.58 | $52.09 | 6/2/2005 | $55.89 | $52.93 |
| 4/20/2005 | $51.01 | $52.01 | 6/3/2005 | $55.09 | $52.98 |
| 4/21/2005 | $51.90 | $52.00 | 6/6/2005 | $54.85 | $53.02 |
| 4/22/2005 | $50.35 | $51.90 | 6/7/2005 | $55.23 | $53.07 |
| 4/25/2005 | $51.76 | $51.89 | 6/8/2005 | $54.95 | $53.11 |
| 4/26/2005 | $51.07 | $51.85 | 6/9/2005 | $55.55 | $53.16 |
| 4/27/2005 | $51.85 | $51.85 | 6/10/2005 | $55.09 | $53.20 |
| 4/28/2005 | $51.14 | $51.81 | 6/13/2005 | $55.50 | $53.24 |
| 4/29/2005 | $50.85 | $51.77 | 6/14/2005 | $55.57 | $53.29 |
| 5/2/2005 | $53.44 | $51.84 | 6/15/2005 | $55.41 | $53.33 |
| 5/3/2005 | $53.30 | $51.91 | 6/16/2005 | $55.23 | $53.36 |
| 5/4/2005 | $54.37 | $52.01 | 6/17/2005 | $55.55 | $53.40 |
| 5/5/2005 | $53.92 | $52.08 | 6/20/2005 | $55.68 | $53.44 |
| 5/6/2005 | $54.14 | $52.16 | 6/21/2005 | $56.29 | $53.49 |
| 5/9/2005 | $54.58 | $52.25 | 6/22/2005 | $55.95 | $53.53 |
| 5/10/2005 | $53.27 | $52.29 | 6/23/2005 | $55.20 | $53.56 |

18

**Questions? Call Toll-Free (800) _____**

| Date | AIG Closing Price | Avg. AIG Closing Price |
|------|-------------------|------------------------|
| 5/11/2005 | $53.21 | $52.32 |
| 5/12/2005 | $52.48 | $52.33 |
| 5/13/2005 | $52.05 | $52.32 |
| | | |

| Date | AIG Closing Price | Avg. AIG Closing Price |
|------|-------------------|------------------------|
| 6/24/2005 | $54.54 | $53.58 |
| 6/27/2005 | $55.03 | $53.60 |
| 6/28/2005 | $55.17 | $53.63 |
| 6/29/2005 | $58.48 | $53.70 |

## Calculation of Recognized Loss for AIG Call and Put Options

The AIG Options entitled to recover shall include all purchased AIG Call Options (excluding AIG Call Options purchased to cover or offset a previously sold, or written AIG Call Option) and all initially sold, or written, AIG Put Options (excluding those AIG Put Options sold, or written, to cover or otherwise offset a previously purchased AIG Put Option) during the period from October 28, 1999 through April 1, 2005.

Artificial inflation and Recognized Losses as to AIG Call Options and artificial deflation and Recognized Losses as to AIG Put Options will be computed based on the artificial inflation in AIG's common stock as described above.  To determine artificial inflation for AIG Call Options and artificial deflation for AIG Put Options, Lead Plaintiff's damages consultant considered these securities' price changes that occurred in reaction to certain public announcements regarding AIG and then made adjustments for changes that were attributable to market forces unrelated to the alleged fraud in prices of such call and put options.  Lead Plaintiff's damages consultant then developed formulas (see below) from which the Recognized Losses for AIG Call and Put Options may be calculated.

If a claimant received a Fair Fund Distribution(s), such claimant's total Recognized Loss(es) hereunder shall be reduced by seven-eighths (7/8th) of its Fair Fund Distribution(s) (the Fair Fund Ratio Amount(s)).  In no event will a claimant receive a distribution from the Settlement that exceeds 100% of the claimant's total Recognized Loss(es), reduced by the Fair Fund Ratio Amount(s).  You will be eligible for a recovery under the Plan only to the extent you have a net loss on your combined transactions in AIG common stock and options.

## AIG Call Options

With respect to purchases and sales (covers) of AIG Call Options during the period from October 28, 1999 through April 1, 2005, the artificial inflation per Option on a given day shall be the dollar reduction in the value of the AIG Call Option with the same exercise (or strike price) and same date of expiration on that day as a result of the inflation in AIG's common share price at the close of trading.  The dollar reduction in the value of Call Options will be calculated using the Black-Scholes call option pricing formula (using the implied volatility for an at-the-money call option, annual dividend yield, and the appropriate annual interest rate on that day as set forth in Summary Table 3 below) and the closing share price of AIG common stock on the transaction date ("AIG Price" as set forth in Summary Table 3) compared with the Black-Scholes call option pricing formula value for the Call Option using the uninflated share closing share price of AIG

common stock ("AIG True Value" as set forth in Summary Table 3) on that same date. (A more detailed version of Summary Table 3 setting forth the closing price, volatility, interest rate and dividend yield assumptions by date is available for downloading at www. _____ or www.labaton.com.)

A.      For such Call Options which (1) expired, were exercised or were sold (or the position was otherwise closed out) prior to October 14, 2004; (2) were purchased on or after October 15, 2004 and expired, were exercised or were sold (or the position was otherwise closed out) sold on or before March 16, 2005, or (3) were purchased on or after March 17, 2005, and expired, were exercised or were sold (or the position was otherwise closed out) on or before March 29, 2005, the Recognized Loss shall be 10% times that number of options multiplied by the lesser of:

1.      the difference between artificial inflation per Call Option on the date of purchase and artificial inflation per Call Option on the date of expiration, exercise, or sale, as appropriate; or

2.      the difference between the purchase price per option and the sale price or value realized upon exercise or expiration per option ($0.00 if the call option expired worthless).

B.      For such Call Options not covered by A above which (1) expired after October 13, 2004 and on or before April 1, 2005; (2) were exercised for cash (or the shares immediately sold) on or between October 14, 2004 and April 1, 2005; or (3) were sold (position closed out) on or between October 14, 2004 and April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

1.      the difference between artificial inflation per Call Option on the date of purchase and artificial inflation per Call Option on the date of expiration, exercise, or sale, as appropriate; or

2.      the difference between the purchase price per option and the sale price or value realized upon exercise or expiration per option ($0.00 if the call option expired worthless).

C.      For such Call Options not covered by A above which (1) expired worthless after October 14, 2004 or (2) were retained at the end of trading on April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

1.      the artificial inflation per Call Option on the date of purchase; or

2.      the difference between the purchase price per option and the sale or realized proceeds price per option ($0.00 if the call option expired worthless).

**AIG Put Options**

With respect to AIG Put Options written or purchased (covered) during the period from October 28, 1999 through April 1, 2005, the artificial deflation per AIG Put Option on a given day shall be the dollar decrease in the value of an AIG Put Option with the same exercise price and expiration date as the subject option at the close of trading on that day as a result of the inflation in AIG's common share price. The dollar decrease (artificial deflation) in the value of the Put Option will be calculated using the Black-Scholes put option pricing formula (using the implied volatility for an at-the-money put option, annual dividend yield, and annual interest rate on that day set forth in Summary Table 3 below) and the closing share price of AIG common stock on the transaction date ("AIG Price" as set forth in Summary Table 3) compared with the Black-Scholes pricing formula value for the Put Option using the uninflated share closing share price of AIG common stock ("AIG True Value" as set forth in Summary Table 3) on that same date.

D.     For such Put Options which (1) expired, were exercised or were purchased/covered (position closed out) prior to October 14, 2004, (2) were written on or after October 15, 2004 and expired, were exercised or were purchased/covered (position closed out) on or before March 16, 2005, or (3) were written on or after March 17, 2005, and expired, were exercised or were purchased/covered (position closed out) on or before March 29, 2005 the Recognized Loss shall be 10% times that number of options multiplied by the lesser of:

1.     the difference between artificial deflation per Put Option on the date the option was written and artificial deflation per Option on the date of expiration, exercise, or purchase, as appropriate; or

2.     the difference between the purchase price, exercise price, or expiration price per option paid ($0.00 if the put option expired worthless) and the written price per option received.

E.     For such initially written (sold) Put Options not covered by A above which (1) expired after October 13, 2004 and on or before April 1, 2005; (2) were exercised on or between October 14, 2004 and April 4, 2005; or (3) were purchased/covered (position closed out) on or between October 14, 2004 and April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

1.     the difference between artificial deflation per Put Option on the date the option was written and artificial deflation per Option on the date of expiration, exercise, or purchase, as appropriate; or

2.     the difference between the purchase price, exercise price, or expiration price per option paid ($0.00 if the put option expired worthless) and the written price per option received.

**Questions? Call Toll-Free (800) _____**

F.    For such initially written (sold) Put Options not covered by A above which were retained at the end of trading on April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

   1.    the artificial deflation per Put Option on the date the put option was written; or

   2.    the difference between the purchase price, exercise price, or expiration price per option paid ($0.00 if the put option expired worthless) and the written price per option received, if purchased (covered), expired, or exercised on or before June 29, 2005.

**Summary Version of Table 3**

| Start | End | Avg. AIG Price | Avg. AIG True Value | Avg. AIG Inflation | Avg. Call Volatility | Avg. Put Volatility | Avg. Interest Rate | Avg. Dividend Yield |
|---|---|---|---|---|---|---|---|---|
| 10/28/1999 | 12/31/1999 | $70.71 | $60.88 | $9.83 | 33.58% | 34.45% | 5.69% | 0.19% |
| 1/3/2000 | 4/2/2000 | $65.15 | $56.09 | $9.06 | 37.49% | 38.07% | 6.19% | 0.21% |
| 4/3/2000 | 7/2/2000 | $76.62 | $65.97 | $10.65 | 38.42% | 39.40% | 6.22% | 0.18% |
| 7/3/2000 | 10/1/2000 | $86.41 | $74.40 | $12.01 | 28.14% | 29.13% | 6.13% | 0.17% |
| 10/2/2000 | 12/31/2000 | $96.57 | $83.15 | $13.42 | 31.39% | 34.09% | 5.91% | 0.15% |
| 1/2/2001 | 2/7/2001 | $87.00 | $74.91 | $12.09 | 32.75% | 33.80% | 4.80% | 0.17% |
| 2/8/2001 | 4/1/2001 | $81.28 | $68.19 | $13.09 | 31.12% | 34.46% | 4.45% | 0.18% |
| 4/2/2001 | 4/25/2001 | $78.39 | $64.11 | $14.28 | 32.30% | 33.61% | 3.99% | 0.19% |
| 4/26/2001 | 7/1/2001 | $82.73 | $65.19 | $17.54 | 22.12% | 22.36% | 3.70% | 0.20% |
| 7/2/2001 | 7/25/2001 | $84.58 | $66.65 | $17.93 | 21.59% | 21.28% | 3.63% | 0.20% |
| 7/26/2001 | 9/30/2001 | $77.60 | $61.15 | $16.45 | 29.25% | 29.33% | 3.25% | 0.22% |
| 10/1/2001 | 1/1/2002 | $81.26 | $64.03 | $17.23 | 29.73% | 29.60% | 2.24% | 0.21% |
| 1/2/2002 | 3/31/2002 | $74.72 | $58.88 | $15.84 | 28.17% | 28.58% | 2.32% | 0.23% |
| 4/1/2002 | 6/30/2002 | $68.74 | $54.17 | $14.57 | 29.57% | 29.62% | 2.35% | 0.26% |
| 7/1/2002 | 9/30/2002 | $61.21 | $48.23 | $12.98 | 45.13% | 45.38% | 1.81% | 0.31% |
| 10/1/2002 | 12/31/2002 | $61.66 | $48.59 | $13.07 | 41.78% | 41.79% | 1.53% | 0.31% |
| 1/2/2003 | 3/31/2003 | $53.02 | $41.78 | $11.24 | 39.69% | 39.96% | 1.30% | 0.36% |
| 4/1/2003 | 6/30/2003 | $56.26 | $44.33 | $11.93 | 31.41% | 31.70% | 1.15% | 0.40% |
| 7/1/2003 | 9/30/2003 | $60.22 | $47.45 | $12.77 | 27.67% | 27.76% | 1.22% | 0.43% |
| 10/1/2003 | 12/31/2003 | $60.77 | $47.89 | $12.88 | 24.54% | 24.53% | 1.30% | 0.43% |
| 1/2/2004 | 3/31/2004 | $71.45 | $56.30 | $15.15 | 22.65% | 22.66% | 1.22% | 0.36% |
| 4/1/2004 | 6/30/2004 | $72.62 | $57.22 | $15.40 | 23.37% | 23.38% | 1.78% | 0.38% |
| 7/1/2004 | 9/30/2004 | $70.02 | $55.18 | $14.84 | 21.88% | 21.89% | 2.08% | 0.43% |
| 10/1/2004 | 10/13/2004 | $67.32 | $53.05 | $14.27 | 22.23% | 21.79% | 2.22% | 0.45% |
| 10/14/2004 | 10/14/2004 | $60.00 | $51.50 | $8.50 | 39.05% | 38.52% | 2.15% | 0.50% |
| 10/15/2004 | 12/31/2004 | $62.66 | $55.64 | $7.02 | 25.56% | 25.63% | 2.52% | 0.66% |

22

| Start | End | Avg. AIG Price | Avg. AIG True Value | Avg. AIG Inflation | Avg. Call Volatility | Avg. Put Volatility | Avg. Interest Rate | Avg. Dividend Yield |
|---|---|---|---|---|---|---|---|---|
| 1/3/2005 | 2/13/2005 | $67.33 | $59.79 | $7.54 | 18.76% | 18.76% | 2.89% | 0.74% |
| 2/14/2005 | 3/15/2005 | $67.09 | $59.58 | $7.51 | 20.34% | 20.34% | 3.17% | 0.75% |
| 3/16/2005 | 3/29/2005 | $58.34 | $53.38 | $4.96 | 29.70% | 29.70% | 3.36% | 0.86% |
| 3/30/2005 | 4/4/2005 | $54.21 | $53.38 | $0.83 | 37.58% | 37.58% | 3.36% | 0.92% |
| 4/5/2005 | 6/29/2005 | $53.76 | $53.76 | $- | 27.80% | 27.80% | 3.34% | 1.02% |

## Calculation of Recognized Loss for AIG Debt Securities Purchases

The Class Period for purchases of AIG debt securities is from October 28, 1999 through April 1, 2005.  AIG debt securities that have matured, were called, put or converted were not damaged by the alleged fraud and, therefore, shall not be eligible for recovery under the Plan and all transactions in such securities shall be ignored.  The AIG debt securities outstanding as of October 13, 2004 and eligible to participate in recovery under the Plan are listed in Table 4 below.  You will be eligible for recovery under the Plan only to the extent you have a net loss on your transactions in AIG debt securities.

The "AIG Debt Settlement Fund" shall be created by apportioning up to 5% of the Distribution Amount.  If the Total Recognized Losses for AIG debt securities eligible to participate under the Plan are equal to or less than the AIG Debt Settlement Fund, then such Total Recognized Losses shall be recoverable and the remaining portion, if any, of the AIG Debt Settlement Fund shall revert back to the Distribution Amount for recovery under the AIG Common Stock and AIG Call and Put Options provisions of this Plan.  If the Total Recognized Losses for AIG debt securities eligible to participate under the Plan are more than the AIG Debt Settlement Fund, such Total Recognized Losses shall be paid pro rata.

If a claimant received a Fair Fund Distribution(s), such claimant's total Recognized Loss(es) hereunder shall be reduced by seven-eighths (7/8th) of its Fair Fund Distribution(s) (the Fair Fund Ratio Amount(s)).  In no event will a claimant receive a distribution from the Settlement that exceeds 100% of the claimant's total Recognized Loss(es), reduced by the Fair Fund Ratio Amount(s).

## Calculation of Recognized Loss for AIG debt securities shall be as follows:

For AIG debt securities purchased on or between October 28, 1999 and April 1, 2005, the following the Recognized Losses shall be allowed:

a.      For each unit sold on or between October 28, 1999 and October 13, 2004, the Recognized Loss shall be 5% of the difference between the purchase price paid and the sale price received (out-of-pocket investment loss);

b.      For each unit sold on or between October 14, 2004 and March 14, 2005, the Recognized Loss shall be 10% of the difference between the purchase price paid and the sale price received (out-of-pocket investment loss);

c.      For each unit sold on or between March 15, 2005 and April 1, 2005, the Recognized Loss shall be 15% of the difference between the purchase price paid and the sale price received (out-of-pocket investment loss);

d.      For each unit sold on or between April 2, 2005 and June 29, 2005, the Recognized Loss shall be 15% of the lesser of: (i) the difference between the purchase price paid and the sale price received (out-of-pocket investment loss); or (ii) the difference between the purchase price paid and the average price on date of sale in Table 5 below;

e.      For each unit sold on or between June 30, 2005 and December 15, 2010, the Recognized Loss shall be 15% of the lesser of: (i) the difference between the purchase price paid and the sale price received (out-of-pocket investment loss); or (ii) the difference between the purchase price paid and the average price as of June 29, 2005 as set forth in Table 5 below; and

f.      For each unit held as of the close of business on April 1, 2005 and not sold as of December 15, 2010, the Recognized Loss shall be 15% of the difference between the purchase price paid and the average price as of June 29, 2005 as set forth in Table 5 below.

g.      For each unit that was (a) sold on or between October 28, 1999 and October 13, 2004, (b) purchased on or after October 15, 2004 and sold on or before March 16, 2005, or (c) purchased on or after March 17, 2005, and sold on or before March 29, 2005, the Recognized Loss shall be subject to a further limit of 0.5% of the purchase price.

The Recognized Loss for damages for units purchased during the Class Period shall be further limited (as provided for under the PSLRA) to the smallest of the following: (i) the difference between the price paid and the price received (out-of-pocket investment loss) if sold on or before June 29, 2005; (ii) the difference between the price paid (excluding all fees and commissions) and the average closing price as set forth in Table 5 below if sold between April 4, 2005 and December 15, 2010; or (iii) the difference between the price paid and the average price as of June 29, 2005 as set forth in Table 5 below, if held as of the close of business on June 29, 2005.

| Table 4: AIG Debt Securities Eligible to Participate | | |
|---|---|---|
| **Coupon** | **Maturity Date** | **CUSIP or ISIN** |
| Zero | 9-Nov-31 | CUSIP No. 026874AP2 |
| 0.5% | 15-May-07 | CUSIP No. 026874AN7 |
| 2.85% | 1-Dec-05 | CUSIP No. 02687QBB3 |
| 2.875% | 15-May-08 | CUSIP No. 026874AQ0 |
| 2.875% | 15-May-08 | ISIN No. USU02687AB48 |
| 2.875% | 15-May-08 | CUSIP No. 026874AR8 |
| 4.25% | 15-May-13 | CUSIP No. 026874AS6 |
| 4.25% | 15-May-13 | ISIN No. USU02687AC21 |
| 4.25% | 15-May-13 | CUSIP No. 026874AT4 |

24

**Table 5: PSLRA Loss Limitation Table for AIG Debt Securities**

| Coupon | Zero | 0.500% | 2.850% | 2.875% | 2.875% | 2.875% | 4.250% | 4.250% | 4.250% |
|---|---|---|---|---|---|---|---|---|---|
| Maturity Date | 11/9/2031 | 5/15/2007 | 12/1/2005 | 5/15/2008 | 5/15/2008 | 5/15/2008 | 5/15/2013 | 5/15/2013 | 5/13/2013 |
| Issue Date | 11/9/2001 | 5/11/2000 | 12/2/2002 | 5/15/2003 | 5/15/2003 | 4/20/2004 | 5/15/2003 | 5/15/2003 | 4/20/2004 |
| CUSIP/ISIN Number | 026874AP2 | 026874AN7 | 02687QBB3 | 026874AQ0 | USU02687AB48 | 026874AR8 | 026874AS6 | USU02687AC21 | 026874AT4 |
| Series | Registered | Registered | Registered | 144A | Regulation S | Registered | 144A | Regulation S | Registered |
| Date | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price |
| 4/1/2005 | $65.63 | $91.88 | $99.54 | $95.07 | $95.07 | $95.07 | $94.25 | $94.25 | $94.25 |
| 4/4/2005 | $65.81 | $92.13 | $99.55 | $94.75 | $94.75 | $94.75 | $93.44 | $93.44 | $93.44 |
| 4/5/2005 | $65.83 | $92.17 | $99.55 | $94.76 | $94.76 | $94.76 | $93.58 | $93.58 | $93.58 |
| 4/6/2005 | $65.84 | $92.22 | $99.55 | $94.80 | $94.80 | $94.80 | $93.71 | $93.71 | $93.71 |
| 4/7/2005 | $65.85 | $92.25 | $99.55 | $94.82 | $94.82 | $94.82 | $93.74 | $93.74 | $93.74 |
| 4/8/2005 | $65.83 | $92.27 | $99.56 | $94.81 | $94.81 | $94.81 | $93.75 | $93.75 | $93.75 |
| 4/11/2005 | $65.84 | $92.29 | $99.56 | $94.82 | $94.82 | $94.82 | $93.78 | $93.78 | $93.78 |
| 4/12/2005 | $65.84 | $92.30 | $99.56 | $94.84 | $94.84 | $94.84 | $93.88 | $93.88 | $93.88 |
| 4/13/2005 | $65.85 | $92.29 | $99.56 | $94.87 | $94.87 | $94.87 | $93.88 | $93.88 | $93.88 |
| 4/14/2005 | $65.85 | $92.30 | $99.56 | $94.91 | $94.91 | $94.91 | $93.89 | $93.89 | $93.89 |
| 4/15/2005 | $65.85 | $92.32 | $99.57 | $94.97 | $94.97 | $94.97 | $93.95 | $93.95 | $93.95 |
| 4/18/2005 | $65.85 | $92.33 | $99.58 | $95.02 | $95.02 | $95.02 | $94.01 | $94.01 | $94.01 |
| 4/19/2005 | $65.86 | $92.35 | $99.58 | $95.07 | $95.07 | $95.07 | $94.08 | $94.08 | $94.08 |
| 4/20/2005 | $65.86 | $92.37 | $99.59 | $95.11 | $95.11 | $95.11 | $94.12 | $94.12 | $94.12 |
| 4/21/2005 | $65.86 | $92.37 | $99.59 | $95.12 | $95.12 | $95.12 | $94.14 | $94.14 | $94.14 |
| 4/22/2005 | $65.87 | $92.38 | $99.59 | $95.14 | $95.14 | $95.14 | $94.16 | $94.16 | $94.16 |
| 4/25/2005 | $65.88 | $92.39 | $99.59 | $95.16 | $95.16 | $95.16 | $94.19 | $94.19 | $94.19 |
| 4/26/2005 | $65.89 | $92.40 | $99.60 | $95.17 | $95.17 | $95.17 | $94.21 | $94.21 | $94.21 |
| 4/27/2005 | $65.91 | $92.41 | $99.60 | $95.18 | $95.18 | $95.18 | $94.23 | $94.23 | $94.23 |
| 4/28/2005 | $65.93 | $92.43 | $99.60 | $95.21 | $95.21 | $95.21 | $94.28 | $94.28 | $94.28 |
| 4/29/2005 | $65.93 | $92.44 | $99.60 | $95.22 | $95.22 | $95.22 | $94.31 | $94.31 | $94.31 |
| 5/2/2005 | $65.95 | $92.45 | $99.60 | $95.24 | $95.24 | $95.24 | $94.32 | $94.32 | $94.32 |
| 5/3/2005 | $65.96 | $92.46 | $99.60 | $95.25 | $95.25 | $95.25 | $94.34 | $94.34 | $94.34 |
| 5/4/2005 | $65.97 | $92.48 | $99.61 | $95.26 | $95.26 | $95.26 | $94.35 | $94.35 | $94.35 |
| 5/5/2005 | $65.98 | $92.50 | $99.61 | $95.28 | $95.28 | $95.28 | $94.38 | $94.38 | $94.38 |
| 5/6/2005 | $65.98 | $92.50 | $99.61 | $95.28 | $95.28 | $95.28 | $94.37 | $94.37 | $94.37 |
| 5/9/2005 | $65.99 | $92.51 | $99.61 | $95.28 | $95.28 | $95.28 | $94.37 | $94.37 | $94.37 |
| 5/10/2005 | $66.00 | $92.53 | $99.61 | $95.28 | $95.28 | $95.28 | $94.39 | $94.39 | $94.39 |
| 5/11/2005 | $66.00 | $92.54 | $99.61 | $95.28 | $95.28 | $95.28 | $94.40 | $94.40 | $94.40 |
| 5/12/2005 | $66.01 | $92.56 | $99.61 | $95.29 | $95.29 | $95.29 | $94.42 | $94.42 | $94.42 |
| 5/13/2005 | $66.02 | $92.58 | $99.61 | $95.30 | $95.30 | $95.30 | $94.44 | $94.44 | $94.44 |
| 5/16/2005 | $66.03 | $92.59 | $99.61 | $95.30 | $95.30 | $95.30 | $94.43 | $94.43 | $94.43 |
| 5/17/2005 | $66.03 | $92.61 | $99.61 | $95.31 | $95.31 | $95.31 | $94.43 | $94.43 | $94.43 |
| 5/18/2005 | $66.04 | $92.63 | $99.61 | $95.31 | $95.31 | $95.31 | $94.44 | $94.44 | $94.44 |
| 5/19/2005 | $66.04 | $92.63 | $99.61 | $95.32 | $95.32 | $95.32 | $94.44 | $94.44 | $94.44 |
| 5/20/2005 | $66.05 | $92.64 | $99.61 | $95.31 | $95.31 | $95.31 | $94.45 | $94.45 | $94.45 |
| 5/23/2005 | $66.05 | $92.65 | $99.61 | $95.32 | $95.32 | $95.32 | $94.47 | $94.47 | $94.47 |

**Questions? Call Toll-Free (800) _____**

| Date | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price |
|---|---|---|---|---|---|---|---|---|---|
| 5/24/2005 | $66.06 | $92.66 | $99.61 | $95.32 | $95.32 | $95.32 | $94.49 | $94.49 | $94.49 |
| 5/25/2005 | $66.06 | $92.68 | $99.61 | $95.33 | $95.33 | $95.33 | $94.51 | $94.51 | $94.51 |
| 5/26/2005 | $66.06 | $92.70 | $99.61 | $95.33 | $95.33 | $95.33 | $94.53 | $94.53 | $94.53 |
| 5/27/2005 | $66.07 | $92.71 | $99.61 | $95.33 | $95.33 | $95.33 | $94.55 | $94.55 | $94.55 |
| 5/31/2005 | $66.07 | $92.73 | $99.61 | $95.34 | $95.34 | $95.34 | $94.59 | $94.59 | $94.59 |
| 6/1/2005 | $66.08 | $92.75 | $99.61 | $95.36 | $95.36 | $95.36 | $94.64 | $94.64 | $94.64 |
| 6/2/2005 | $66.08 | $92.77 | $99.61 | $95.37 | $95.37 | $95.37 | $94.70 | $94.70 | $94.70 |
| 6/3/2005 | $66.08 | $92.79 | $99.61 | $95.38 | $95.38 | $95.38 | $94.74 | $94.74 | $94.74 |
| 6/6/2005 | $66.08 | $92.80 | $99.61 | $95.40 | $95.40 | $95.40 | $94.78 | $94.78 | $94.78 |
| 6/7/2005 | $66.09 | $92.81 | $99.61 | $95.41 | $95.41 | $95.41 | $94.82 | $94.82 | $94.82 |
| 6/8/2005 | $66.10 | $92.82 | $99.61 | $95.42 | $95.42 | $95.42 | $94.86 | $94.86 | $94.86 |
| 6/9/2005 | $66.10 | $92.82 | $99.61 | $95.43 | $95.43 | $95.43 | $94.89 | $94.89 | $94.89 |
| 6/10/2005 | $66.11 | $92.83 | $99.61 | $95.44 | $95.44 | $95.44 | $94.92 | $94.92 | $94.92 |
| 6/13/2005 | $66.12 | $92.83 | $99.61 | $95.45 | $95.45 | $95.45 | $94.93 | $94.93 | $94.93 |
| 6/14/2005 | $66.13 | $92.83 | $99.61 | $95.45 | $95.45 | $95.45 | $94.95 | $94.95 | $94.95 |
| 6/15/2005 | $66.14 | $92.84 | $99.61 | $95.46 | $95.46 | $95.46 | $94.96 | $94.96 | $94.96 |
| 6/16/2005 | $66.15 | $92.84 | $99.61 | $95.46 | $95.46 | $95.46 | $94.98 | $94.98 | $94.98 |
| 6/17/2005 | $66.15 | $92.85 | $99.61 | $95.47 | $95.47 | $95.47 | $95.00 | $95.00 | $95.00 |
| 6/20/2005 | $66.15 | $92.86 | $99.61 | $95.48 | $95.48 | $95.48 | $95.01 | $95.01 | $95.01 |
| 6/21/2005 | $66.15 | $92.87 | $99.61 | $95.48 | $95.48 | $95.48 | $95.03 | $95.03 | $95.03 |
| 6/22/2005 | $66.16 | $92.88 | $99.62 | $95.49 | $95.49 | $95.49 | $95.06 | $95.06 | $95.06 |
| 6/23/2005 | $66.17 | $92.88 | $99.62 | $95.50 | $95.50 | $95.50 | $95.09 | $95.09 | $95.09 |
| 6/24/2005 | $66.18 | $92.89 | $99.62 | $95.52 | $95.52 | $95.52 | $95.12 | $95.12 | $95.12 |
| 6/27/2005 | $66.19 | $92.89 | $99.62 | $95.53 | $95.53 | $95.53 | $95.15 | $95.15 | $95.15 |
| 6/28/2005 | $66.20 | $92.90 | $99.62 | $95.54 | $95.54 | $95.54 | $95.17 | $95.17 | $95.17 |
| 6/29/2005 | $66.20 | $92.91 | $99.62 | $95.55 | $95.55 | $95.55 | $95.19 | $95.19 | $95.19 |

## How do I participate in the settlement? What do I need to do?

The Court has certified the Settlement Class for purposes of this Settlement only.  As discussed above, if you purchased or acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive and you were damaged and you are not one of the people specifically excluded by the definition of the Settlement Class, you are a Settlement Class Member unless you take steps to get out of the Settlement Class.

As a Settlement Class Member, you will be bound by the proposed Settlement provided for in the Stipulation if it is approved by the Court, as well as by any judgment or determination of the Court affecting the Settlement Class. Even if you do not submit a Proof of Claim form or Release Form to receive a part of the recovery, unless otherwise provided by the Court, you will be forever barred from receiving any payments pursuant to the Settlement set forth in the Stipulation, but will, in all other respects, be subject to the provisions of the Stipulation, including the terms of any judgments entered and the releases given.

To qualify for a payment if you did NOT submit a Proof of Claim in the PwC Settlement, you must timely send in a completed Proof of Claim form with supporting documents (DO NOT SEND ORIGINALS) to the Administrator.  DO NOT SEND Proof of Claim forms to counsel for the Settling Parties or the Court.  A Proof of Claim form is being circulated with this Notice. You may also get a Proof of Claim form on the Internet at the websites for the Administrator: www._____.com, or Lead Plaintiff's counsel: www.labaton.com.  Please read the instructions carefully, fill out the Proof of Claim form, include all the documents the form asks for, sign it, and mail it to the Administrator by first class mail, **postmarked no later than _____, 2011**.  The Administrator needs all of the information requested in the Proof of Claim in order to determine what you may be entitled to.

If you already submitted a Proof of Claim form in the PwC Settlement, the trading information you already supplied will be used to determine your claim in this Settlement.  DO NOT submit another Proof of Claim.  Instead, you will receive a Release Form that must be completed and signed in order for you to recover. (*See* "What if I already submitted a claim form in the PwC Settlement?")  However, if you have additional transactional information that you did not submit on your PwC Proof of Claim form that you would like considered in the calculation of your claim in this Settlement with AIG, submit a Proof of Claim in this Settlement.

The Court may disallow or adjust the claim of any Settlement Class Member. The Court also may modify the Plan of Allocation without further notice to the Settlement Class.  Each Claimant will be deemed to have submitted to the jurisdiction of the United States District Court for the Southern District of New York with respect to his, her or its Proof of Claim form.

If you do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section called, "What if I do not want to participate in the Settlement? How do I exclude myself?" below.

If you object to the Settlement or any of its terms, the proposed Plan of Allocation, Lead Plaintiff's counsel's application for attorneys' fees and reimbursement of litigation expenses, or Lead Plaintiff's application for expenses and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section called, "What if I want to object to the Settlement? When and where will the Court decide whether to approve the Settlement? May I speak at the Hearing if I do not like the Settlement" below.

---

**What if I already submitted a claim form in the PwC Settlement?**

---

If you have already submitted a Proof of Claim form in connection with the previously announced PwC Settlement, DO NOT complete a new Proof of Claim form now.  The trading information you already provided will be used to determine your claim in this settlement with AIG.  Instead, you must complete and submit a Release Form and mail it to the Administrator by first class mail, **postmarked no later than _____, 2011,** in order to recover.  Alternatively, you may submit your Release Form through the Administrator's website, _____.

The deadline for Proof of Claim forms in the PwC Settlement was January 28, 2009.  If you submitted your PwC Proof of Claim form on time, you should have received a postcard

**Questions? Call Toll-Free (800) _____**

acknowledgment of receipt by March 16, 2009 and you will be mailed a Release Form.  If you have not received a post card or Release Form by _____, 2011, please contact the Administrator at _____.

---

### What if I do not want to participate in the Settlement? How do I exclude myself?

---

Each Settlement Class Member will be bound by all determinations and judgments in this Action concerning the Settlement, whether favorable or unfavorable, unless such person mails, by first class mail, a written request for exclusion from the Settlement Class, postmarked no later than _____, 2011, addressed to *In re AIG Securities Litigation – Company EXCLUSIONS*, c/o _____.  No person may exclude himself, herself or itself from the Settlement Class after this deadline. You may not exclude yourself by telephone or e-mail.

In order to be valid, each request for exclusion must set forth the name and address of the person or entity requesting exclusion, must state that such person or entity "requests exclusion from the AIG Settlement Class in In re AIG Securities Litigation, Master File No. 04-8141 (DAB)" and must be signed by such person or entity. The following information **must also** be provided: your name, your address, your daytime telephone number; and documents establishing the date(s), price(s), and number(s) of shares of all purchases, other acquisitions, and sales of AIG Securities during the Class Period. Requests for exclusion will NOT be accepted if the requests do not include the required information, are undocumented or if the requests are not made within the time stated above, unless the requests for exclusion are otherwise accepted by the Court.

If a Settlement Class Member requests to be excluded from the Settlement Class, that Class Member will not receive any benefit provided for in the Stipulation.

If a Settlement Class Member requests exclusion from the Settlement Class and later seeks to pursue an action against AIG and to obtain discovery taken by Lead Counsel, Lead Plaintiff will in all likelihood seek advance payment on behalf of the Settlement Class for the reasonable costs (including the value of Lead Counsel's time, *i.e.*, "lodestar") related to such discovery.  If Lead Plaintiff and any such person or entity are unable to agree upon the amount of such compensation, Lead Plaintiff will in all likelihood make a motion requesting payment.  If Lead Plaintiff elects to do so, it will request, for example, an order from the Court providing that such a person or entity that timely and validly excludes itself from the Settlement Class and subsequently files a claim against AIG related to the matters covered by the Settlement shall be required to compensate the Settlement Class for the costs (including lodestar) associated with any deposition transcripts (including exhibits) it receives in connection with such legal proceeding if the depositions were taken as part of discovery in the Action.  Likewise, Lead Plaintiff may make a motion if any such person or entity seeks access to the electronic document repository, currently hosting more than 53.5 million pages of documents, that was established and maintained in significant part by Lead Plaintiff.  Lead Plaintiff may seek an order requiring such person or entity to compensate the Settlement Class a reasonable amount for the costs (including lodestar) associated with establishing and maintaining the electronic document repository since August 2006.

**Questions? Call Toll-Free (800) _____**

Lead Plaintiff may request that the amount of such compensation shall be determined by the Court based on the size of the claim being asserted, using the number of allegedly damaged shares owned by the excluded Class Member, and the cost to the Settlement Class of obtaining the discovery being sought, which shall include Lead Counsel's lodestar and expenses directly or indirectly related to that discovery.  Discovery in the Action included 97 depositions, based upon, *inter alia*, the review and analysis of the 53.5 million pages of documents mentioned above.  Lead Counsel represents that the aggregate amount of Lead Counsel's lodestar attributable to discovery efforts alone is tens of millions of dollars.

AIG is not required to join in any such application.

---

**What if I want to object to the Settlement? When and where will the Court decide whether to approve the Settlement? May I speak at the Hearing if I do not like the Settlement?**

---

No Settlement Class Member must attend the Fairness Hearing, but you can attend at your own expense.

Any Settlement Class Member who does not request exclusion by _____, 2011 may ask the Court to consider their objection to any of the matters to be considered at the Fairness Hearing (and may also appear at the Fairness Hearing) provided, however, that no such person shall be heard unless his, her or its objection is made in writing and is filed, together with copies of all other papers and briefs to be submitted to the Court at the Fairness Hearing, by him, her or it (including documentation of all purchases, acquisitions and sales of AIG Securities during the Class Period) with the Clerk's Office at the United States District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007, postmarked no later than _____, 2011, and is served on the same day, by first class mail, hand or overnight delivery to each of the following:

Thomas A. Dubbs                                   Daniel J. Kramer
Louis Gottlieb                                    Daniel J. Leffell
Labaton Sucharow LLP                              Paul, Weiss, Rifkind, Wharton &
140 Broadway                                      Garrison LLP
New York, NY 10005                                1285 Avenue of the Americas
                                                  New York, NY 10019
*Counsel for Lead Plaintiff and*
*the Settlement Class*                            *Counsel for AIG*

You must include your name, address, telephone number, and your signature, document the date(s), price(s), and number(s) of shares of all purchases, acquisitions, and sales of AIG Securities you made during the Class Period, and state the reasons why you object to the Settlement.  This information is needed to demonstrate your membership in the Settlement Class. Only Settlement Class Members who have submitted their position in this manner will be entitled to object, unless the Court orders otherwise**. The Settling Parties may seek further information, including testimony, about your objection prior to the Fairness Hearing.**  You

**Questions? Call Toll-Free (800) _____**

may file an objection without appearing at the Fairness Hearing. Settlement Class Members who approve of the Settlement do not need to appear at the Fairness Hearing.

While attendance at the Fairness Hearing is not necessary, persons wishing to be heard orally are required to indicate in their written objections their intention to appear at the Fairness Hearing. Persons who intend to object to the Settlement or any of its related matters and desire to present evidence at the Fairness Hearing must also include in their written objections the identity of any witnesses they may seek to call to testify and exhibits they may seek to introduce into evidence at the Fairness Hearing.

The Fairness Hearing may be rescheduled from time to time by the Court without further written notice to the Settlement Class. If you intend to attend the Fairness Hearing, you should confirm the date and time with Lead Plaintiff's counsel.

**UNLESS OTHERWISE ORDERED BY THE COURT, ANY SETTLEMENT CLASS MEMBER WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION.**

| **Special Notice to Securities Brokers and other Nominees** |
| --- |

If you purchased AIG Securities (as defined herein) during the Class Period for the beneficial interest of a person or organization other than yourself, you are directed (a) to provide the Administrator with lists of the names and last known addresses of the beneficial owners for whom you have purchased AIG Securities during the Class Period within seven (7) days of receipt of this Notice, or (b) to request additional copies of this Notice and Proof of Claim form within seven (7) days of receipt of this Notice and to send the Notice and Proof of Claim to the beneficial owners.  If you elect to send this Notice and Proof of Claim form to beneficial owners, you are directed to mail this Notice and Proof of Claim within seven (7) days of receipt of the copies of this Notice from the Administrator, and, upon such mailing, you shall send a statement to the Administrator confirming that the mailing was made as directed. If you comply with the requirements above, you shall be reimbursed from the Cash Settlement Account after receipt by the Administrator of proper documentation for the reasonable expenses of sending the Notices and Proofs of Claim to the beneficial owners. If you choose to follow the first alternative, you must retain the list of names and addresses so that it will be available for use in connection with future notice to the Settlement Class. Copies of this Notice may also be obtained from the Administrator or may be downloaded from Lead Plaintiffs' counsel's website at www.labaton.com.

| **Can I see the Court file? Who should I contact if I have questions?** |
| --- |

This Notice contains only a summary of the terms of the proposed Settlement.  For a more detailed statement of the matters involved in the Action, you are referred to the papers on file in the Action, including the Agreement of Compromise and Settlement and the Court's February 22, 2010 Order granting certification of a litigation class, which may be inspected during regular

office hours at the Office of the Clerk, United States District Court for the District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007.

All inquiries concerning this Notice, the Proof of Claim form, the Release Form or any questions regarding the Settlement should be directed to:

> AIG Securities Litigation - Company
> c/o _____
> Administrator
> P.O. Box _____
> _____
> Toll Free: (800) _____
> www._____

**PLEASE DO NOT CONTACT THE COURT OR AIG REGARDING THESE MATTERS. THEY WILL NOT BE ABLE TO ANSWER YOUR QUESTIONS.**

DATED:  _____

> BY ORDER OF THE UNITED STATES DISTRICT COURT DISTRICT OF NEW YORK

# Exhibit C-2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— x
                                      :

IN RE AMERICAN INTERNATIONAL      :     Master File No. 04 Civ. 8141 (DAB) (AJP)
GROUP, INC. SECURITIES LITIGATION   :

                                        :     **SUMMARY NOTICE OF PENDENCY**
                                        :     **AND PROPOSED SETTLEMENT OF**
                                        :     **CLASS ACTION WITH DEFENDANT**
                                        :     **AIG**
———————————————————— x

**PROPOSED AIG CLASS SETTLEMENT IS $725 MILLION.**
<u>**TOTAL SETTLEMENTS FOR CLASS MEMBERS COULD EXCEED $1 BILLION.**</u>[1]

**TO:**   **ALL PERSONS OR ENTITIES WHO PURCHASED OR OTHERWISE**
       **ACQUIRED PUBLICLY-TRADED SECURITIES ISSUED BY AMERICAN**
       **INTERNATIONAL GROUP, INC. DURING THE PERIOD FROM OCTOBER 28,**
       **1999 THROUGH APRIL 1, 2005, INCLUSIVE, (THE "CLASS PERIOD") AND**
       **WHO WERE DAMAGED THEREBY.**

YOU ARE HEREBY NOTIFIED that in the above-captioned action (the "Action") the

Court has preliminarily certified a settlement class for purposes of a proposed partial settlement

only and that the Ohio Public Employees Retirement System, State Teachers Retirement System

of Ohio and Ohio Police & Fire Pension Fund (collectively, "Lead Plaintiff") and American

International Group, Inc. ("AIG") have entered into a proposed partial settlement (the

"Settlement") of $725 million to resolve all claims asserted in the Action against AIG and certain

related defendants.  The settlement consists of $175 million in cash, plus interest as it accrues,

and $550 million in cash or AIG common stock (which may be sold in order to provide an all

cash recovery for Settlement Class Members).  A hearing will be held before the Honorable

---

[1] Lead Plaintiff has entered into settlement agreements or contingent settlement agreements with all defendants in the Action, which have a combined settlement value of $1.0095 billion.  On November 30, 2010, the Court held a fairness hearing on Lead Plaintiff's proposed $97.5 million settlement with AIG auditor PricewaterhouseCoopers LLP.  Lead Plaintiff has also reached a $115 million contingent settlement agreement with former AIG CEO Maurice "Hank" Greenberg and related defendants, which has not yet been filed with the Court.  Finally, Lead Plaintiff has reached a proposed $72 million settlement with General Reinsurance Corporation ("Gen Re").  On September 10, 2010, the Court issued an Order dismissing the class claims against Gen Re.  On October 21, 2010, Lead Plaintiff filed a notice indicating that it will appeal the Court's September 10th Order.

Deborah A. Batts, in the United States District Court for the Southern District of New York,

United States Courthouse, 500 Pearl Street, New York, New York 10007 at _____ __.m. on

_____, 2010 to determine whether the proposed Settlement with AIG should

be approved by the Court as fair, reasonable and adequate, to consider final certification of the

proposed Settlement Class, to consider the application of Lead Plaintiff's counsel for attorneys'

fees and reimbursement of litigation expenses and to consider the application of Lead Plaintiff

for the reimbursement of costs and expenses.  The Court may change the date of the hearing

without providing additional notice to the Settlement Class Members.

        IF YOU PURCHASED OR ACQUIRED AIG SECURITIES DURING THE CLASS

PERIOD DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED BY THE

SETTLEMENT AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT

PROCEEDS.  If you are a Settlement Class Member and did not submit a Proof of Claim in

connection with the previously announced settlement with defendant PricewaterhouseCoopers

LLP (the "PwC Settlement"), in order to be eligible to share in the distribution of the net

proceeds of the Settlement, you must submit a Proof of Claim no later than _____,

2010, establishing that you are entitled to a recovery.  This is also the deadline for submitting a

new Proof of Claim if you did not include all Class Period transactions on your PwC Proof of

Claim that you would like considered in the calculation of your claim in this Settlement with

AIG.  If you are a Settlement Class Member and already filed a complete Proof of Claim in the

PwC Settlement, you must submit a Release Form no later than _____, 2010.  You

will be bound by any judgment entered in the Action whether or not you make a Claim or submit

a Release Form.  If you have not yet received the Notice of  Proposed Settlement, Motion for

Attorneys' Fees and Expenses Award and Fairness Hearing (the "Notice"), Proof of Claim form

2

and/or Release Form, you may obtain copies of these documents by contacting: *In re American International Group, Inc. Securities Litigation- Company*, c/o _____, 800-_____.  Copies of the Notice, Proof of Claim form and Release Form may also be downloaded from: _____ or www.labaton.com.

Inquiries, other than requests for information about the status of a claim, may also be made to Lead Counsel:

**LABATON SUCHAROW LLP**
Thomas A. Dubbs, Esq.
Louis Gottlieb, Esq.
140 Broadway
New York, New York 10005
[_____]
www.labaton.com

If you desire to be excluded from the Settlement Class, you must file a request for exclusion by _____, 2010, in the manner and form explained in the Notice.  If you request exclusion from the Settlement Class and later seek to pursue your own action against AIG and to obtain discovery taken by Lead Counsel (such as deposition transcripts), then Lead Plaintiff will in all likelihood seek to file a motion with the District Court to obtain advance payment of reasonable compensation for the Settlement Class for the costs (including the value of Lead Counsel's time, *i.e.* "lodestar") related to such discovery.  All members of the Settlement Class who do not request exclusion will be bound by any judgment entered in the Action.

Any objection to the proposed Settlement, Plan of Allocation, application for attorneys' fees and reimbursement of litigation expenses or the cost and expense application of Lead Plaintiff must be filed with the Court and delivered to counsel for the parties no later than _____, 2010 at the addresses provided in, and in the manner and form set forth in the Notice.

3

PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE
REGARDING THIS NOTICE.

DATED: _____

                                                       BY ORDER OF THE
                                                       UNITED STATES DISTRICT COURT
                                                       SOUTHERN DISTRICT OF NEW YORK

# Exhibit C-3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. SECURITIES LITIGATION | Master File No. 04 Civ. 8141 (DAB) |

**PROOF OF CLAIM**

**GENERAL INSTRUCTIONS**

1.      To receive a recovery from the Escrow Account, created as a result of the settlement (the "Settlement") with defendant American International Group, Inc. ("AIG"), as a member of the Settlement Class in the class action lawsuit entitled *In re American International Group, Inc. Securities Litigation*, Master File No. 04 Civ. 8141 (DAB) (the "Action"), you must complete and, on page 16 below, sign this Proof of Claim form.  If you fail to submit a timely, properly completed and addressed Proof of Claim, your claim may be rejected and you may be precluded from any recovery from the Escrow Account.  **If you received a distribution(s) from the Fair Fund and do not provide the amount of any and all of your Fair Fund distribution(s), unless the information is otherwise available, your claim will be DEFICIENT; if such deficiency is not corrected, and the Claims Administrator does not otherwise obtain the Fair Fund distribution data, your claim will be REJECTED.**

2.      If you have already submitted a Proof of Claim form ("PwC Claim" form) in connection with the previously announced settlement with defendant PricewaterhouseCoopers LLP (the "PwC Settlement"), DO NOT complete this Proof of Claim.  Instead, you must complete and submit the Release Form that will be mailed to you.  If you have not received a Release Form yet, please contact the Administrator at _____.  (However, if you have

additional transactional information related to your purchases, acquisitions or sales of AIG Securities that you did not submit on your PwC Claim form that you would like considered in the calculation of your claim in this Settlement with AIG please complete and submit this entire Proof of Claim form.)

3.     Submission of this Proof of Claim form does not ensure that you will share in the Escrow Account, even if you are a member of the Settlement Class.

4.     **YOU MUST MAIL YOUR COMPLETED AND SIGNED PROOF OF CLAIM POSTMARKED NO LATER THAN _____, 2011, ADDRESSED AS FOLLOWS**:

> *In re AIG Securities Litigation – Company Settlement*
> c/o _____
> P.O. _____
> _____

**DO NOT MAIL your Proof of Claim to the Court or to counsel for the Settling Parties.**

If you are NOT a member of the Settlement Class (as defined in the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Fairness Hearing ("Notice")) DO NOT submit this Proof of Claim form.  You are not entitled to a recovery.

5.     If you are a member of the Settlement Class and you have not timely and validly requested to be excluded from the Settlement Class, you will be bound by the terms of the Order and Final Judgment entered by the Court, WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM.

6.     Separate Proofs of Claim must be filed for each differently named or owned account (e.g., individual account, IRA account, joint account, etc.).  However, joint tenants, co-owners or UGMA custodians should file a single claim.

- 2 -

**DEFINITIONS**

1.      All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Notice that accompanies this Proof of Claim form.

**IDENTIFICATION OF CLAIMANT**

1.      You are a member of the Settlement Class if you purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive (the "Class Period") (including if you held the common stock of HSB Group, Inc. ("HSB")  at the time HSB was acquired by AIG in a stock for stock transaction, or if you held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock transaction, and were damaged thereby.  Excluded from the Settlement Class are (i) the Named Defendants; (ii) members of the immediate families of the individual defendants, as named in the Consolidated Third Amended Class Action Complaint in this Action; (iii) any parent, subsidiary, affiliate, officer, or director of AIG; (iv) persons or entities who timely and validly made requests for exclusion from the Settlement Class and did not thereafter rescind such requests; (v) any entity in which any excluded person or entity has a controlling interest; and (vi) the legal representatives, heirs, successors and assigns of any excluded person or entity.

2.      "AIG Securities" are all publicly-traded securities issued by AIG, whether debt or equity securities.  Options on AIG common stock are included in this definition.  Please see Table 4 in the Notice for a list of the AIG bonds eligible for a recovery.

3.      If you held AIG Securities in your name, you are the beneficial purchaser or acquirer as well as the record purchaser or acquirer.  If, however, you purchased or otherwise acquired AIG Securities during the Class Period through a third party, such as a nominee or brokerage firm, and the securities were registered in the name of that third party, you are the

beneficial purchaser or acquirer of these securities, *but the third party* is the record purchaser or acquirer of these securities.

4.      Use Part I of this form entitled "Claimant Identification" to identify each beneficial purchaser or acquirer of AIG Securities that forms the basis of this claim, as well as the purchaser or acquirer of record if different.   THIS CLAIM MUST BE SUBMITTED BY THE ACTUAL BENEFICIAL PURCHASER(S), OR AUTHORIZED ACQUIRER(S) OR LEGAL   REPRESENTATIVE(S)   OF   SUCH   BENEFICIAL   PURCHASER(S)   OR ACQUIRER(S), OF THE AIG SECURITIES UPON WHICH THIS CLAIM IS BASED.

5.      All joint beneficial purchasers or acquirers must sign this claim.  Executors, administrators, guardians, conservators and trustees must complete and sign this claim on behalf of persons or entities represented by them and their authority must accompany this claim and their titles or capacities must be stated.  The Social Security (or taxpayer identification) number and telephone number of one of the beneficial owner(s) may be used in verifying this claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of your claim.

**INSTRUCTIONS FOR THE IDENTIFICATION OF TRANSACTION(S)**

1.      If you have already submitted a complete Proof of Claim form in connection with the PwC Settlement setting forth all your purchases, acquisitions and sales of AIG Securities during the Class Period, DO NOT do so again.

2.      If you have NOT already submitted a Proof of Claim form in connection with the PwC Settlement or if your PwC Claim form did NOT set forth all your purchases, acquisitions and sales of AIG Securities during the Class Period and you would like additional transactions to be considered in this Settlement, use Parts II through IV of this form to supply all required details of all your transaction(s) in AIG Securities.  If you need more space or additional

- 4 -

schedules, attach separate sheets giving all of the required information in substantially the same form.  Sign and print or type your name on each additional sheet.

3.       On the schedules, provide all of the requested information with respect to: (i) *all* of your holdings of AIG Securities as of the beginning of trading on October 28, 1999; (ii) *all* of your purchases, other acquisitions and sales of AIG Securities which took place at any time beginning October 28, 1999 through June 29, 2005, inclusive (or through December 15, 2010 for sales of AIG debt securities); and (iii) proof of your holdings of AIG Securities as of the close of trading on June 29, 2005 (or as of the close of trading on December 15, 2010 for AIG debt securities), whether such purchases, acquisitions, sales or transactions resulted in a profit or a loss.  Failure to report all such transactions may result in the rejection of your claim.

4.       List each purchase, acquisition, sale and transaction in the Class Period separately and in chronological order, by trade date, beginning with the earliest.  You must accurately provide the month, day and year of each such transaction you list.  All holdings and transactions must be documented.

5.       Copies of broker confirmations, monthly account statements or other documentation of your purchases, acquisitions, sales or transactions in AIG Securities must be attached to your claim.  **DO NOT SEND ORIGINALS**.  Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.  The Parties and the Administrator do not independently have information about your investments in AIG Securities. The Administrator may also request additional information as needed to efficiently and reliably calculate your losses.

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

*In re AIG Securities Litigation – Company Settlement*
**No. 04-cv-8141**
**PROOF OF CLAIM FORM**

Must be Postmarked No Later Than:
_____, 2011

Please Type or Print

**PART I:**   **CLAIMANT IDENTIFICATION**

_____

Beneficial Owner's Name *(as it appears on your brokerage statement)*

_____

Joint Beneficial Owner's Name *(as it appears on your brokerage statement)*

_____

Street Address

_____       _____

City                                             State                    Zip Code

_____       _____

Foreign Province                      Foreign Country

_____       _____

Social Security Number      or    Taxpayer Identification Number

Check appropriate box:
☐ Individual or Sole Proprietor  ☐ Pension Plan  ☐ Corporation  ☐ Partnership
☐ Trust       ☐       IRA      ☐ UGMA Custodian   ☐ Other _____

_____ _____ (Day)      _____ _____ (Evening)
Area Code   Telephone Number          Area Code    Telephone Number

_____       _____

e-mail address                                   Facsimile Number

Were your shares held in "street name" (*i.e.,* in the name of a stock broker or other nominee)?  If so, that broker or nominee is the record owner and you are required to fill in the following line.

_____
Record Owner's Name (if different from beneficial owner listed above); e.g. brokerage firm, bank, nominee, etc.

**PART II:**    **SCHEDULE OF TRANSACTIONS IN AIG COMMON STOCK**

    A.    **Number of shares of AIG common stock held** at the beginning of trading on **October 28, 1999**: _____

    B.    **Purchases or other acquisitions** (including through exchange of HSB stock or AGC stock) of AIG common stock on or after **October 28, 1999** through and including **April 1, 2005** (in chronological order):

| Trade Date<br>Month Day Year | Number of Shares<br>Purchased or Acquired | Total Purchase Price* |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |
| 4. _____ | _____ | _____ |
| 5. _____ | _____ | _____ |

    C.    **Sales** on or after **October 28, 1999** through and including **June 29, 2005** of AIG common stock (in chronological order):

| Trade Date<br>Month Day Year | Number of<br>Shares Sold | Total Sales Price* |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |
| 4. _____ | _____ | _____ |
| 5. _____ | _____ | _____ |

    D.    **Number of shares of AIG common stock held** at close of trading on **June 29, 2005**: _____

**\* Excluding taxes, fees and commissions.**

- 7 -

**PART III:**     <u>**SCHEDULE OF TRANSACTIONS IN AIG DEBT SECURITIES**</u>

<u>**POSITIONS**</u>

A.     **Beginning and Ending Positions**:  I owned the following principal amounts of AIG Bonds/Notes held at the close of business on **Oct. 27, 1999,** at the close of business on **April 1, 2005,** at the close of business on **June 29, 2005,** and at the close of business on **December 15, 2010** (please provide separately for each particular AIG Bond/Note):

| Coupon Rate | Maturity Date | Cusip | Principal amount of this particular bond/note held as of the close of business on Oct. 27, 1999 | Principal amount of this particular bond/note held as of the close of business on April 1, 2005 | Principal amount of this particular bond/note held as of the close of business on June 29, 2005 | Principal amount of this particular bond/note held as of the close of business on December 15, 2010 |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

<u>**PURCHASES AND SALES**</u>

B.     **Purchases/Acquisitions**:  I made the following purchases or acquisitions of AIG Bonds/Notes on or after **Oct. 28, 1999** through and including **April 1, 2005** (in chronological order):

| Coupon Rate/Maturity | Trade Date Month/ Day/ Year | Principal Amount | Cusip | Purchase Price per $1000 of Principal Amount* | Aggregate Cost* |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**\* Excluding taxes, fees and commissions.**

- 8 -

C.  **Sales:**  I made the following sales of AIG Bonds/Notes on or after **Oct. 28, 1999** through and including **December 15, 2010** (in chronological order):

| Coupon Rate/Maturity | Trade Date Month/ Day/ Year | Principal Amount | Cusip | Sale Price per $1000 of Principal Amount* | Aggregate Received* |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

*If you require additional space, attach extra schedules in the same format as above.  Sign and print your name on each additional page.*

**PART IV:**    **SCHEDULE OF TRANSACTIONS IN AIG OPTION SECURITIES**

**AIG CALL OPTIONS**

A.  **Beginning Position**:  At the close of business on **Oct. 27, 1999,** I owned the following call options on AIG common stock (in chronological order):

| Date of Purchase (Month/Day/Year) | No. of Contracts | Cusip | Expiration Month & Year/Strike Price (e.g. May 2004/$45) | Purchase Price Per Contract | Amount Paid | Insert an "E" if Exercised or an "X" if Expired | Exercise Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

B.    **Purchases**:  I made the following purchases of call options on AIG common stock on or after **Oct. 28, 1999** through and including **April 1, 2005** (in chronological order):

| Date of Purchase (Month/Day/Year) | No. of Contracts | Cusip | Expiration Month & Year/Strike Price of Options (e.g. May 2004/$45) | Purchase Price Per Contract | Amount Paid* | Insert an "E" if Exercised or an "X" if Expired | Exercise Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

   **\* Excluding taxes, fees and commissions.**

C.    **Sales**:  I made the following sales of the above call options on AIG common stock which call options were purchased before **April 1, 2005 (include all such sales no matter when they occurred)** (in chronological order):

| Date of Sales (Month/Day/Year) | No. of Contracts | Cusip | Expiration Month & Year / Strike Price (e.g. May 2004/$45) | Sale Price Per Contract | Amount Received* |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

   **\* Excluding taxes, fees and commissions.**

### **AIG PUT OPTIONS**

D.    **Beginning Position**:  At the close of business on **Oct. 27, 1999,** I was obligated on the following put options on AIG common stock (in chronological order):

| No. of Contracts | Expiration Month & Year /Strike Price (e.g. May 2004/$45) | Cusip | Sale Price Per Contract | Amount Received* | Insert an "A" if Assigned or an "X" if Expired | Assign Date (Month/Day/Year) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

- 10 -

E. **Sales (writing) of Put Options**:  I wrote (sold) put options on AIG common stock on or after **Oct. 28, 1999** through and including **April 1, 2005** (in chronological order):

| Date of Writing (Sale) (Month/Day/ Year) | No. of Contracts | Cusip | Expiration Month & Year /Strike Price (e.g. May 2004/$45) | Sale Price Per Contract | Amount Received* | Insert an "A" if Assigned or an "X" if Expired | Assign Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**\* Excluding taxes, fees and commissions.**

F. **Covering Transactions (Repurchases)**:  I made the following repurchases of the above put options on AIG common stock that I wrote (sold) before **April 1, 2005 (include all repurchases no matter when they occurred)** (in chronological order):

| Date of Purchase (List Chronologically) (Month/Day/Year) | No. of Contracts | Cusip | Expiration Month & Year/ Strike Price (e.g. May 2004/$45) | Price Paid Per Contract* | Aggregate Cost* |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

**\* Excluding taxes, fees and commissions.**

**PART V:**  **PRIOR DISTRIBUTIONS FROM THE FAIR FUND**

A.  **Definition:    The "Fair Fund" means the $800 million fund deposited by AIG with the Court Registry Investment System on March 3, 2006 under the designation "SEC v. American International Group, Inc., 06 Civ. 1000 (LAP)," pursuant to the final judgment entered, on February 17, 2006, by the United States District Court for the Southern District of New York against AIG.**

B.  **Amount Received:**

Did you receive a distribution from the Fair Fund?  (**YES/NO**)  _____

If you answered **YES**, what was the amount of each distribution you received from the Fair Fund? _____

**Notice**:  **If you received a distribution from the Fair Fund and do not provide the amount of any and all of your Fair Fund distribution(s), unless the information is otherwise available, your claim will be DEFICIENT; if such deficiency is not corrected, and the Claims Administrator does not otherwise obtain the Fair Fund distribution data, your claim will be REJECTED.**

**YOU ARE NOT FINISHED, PLEASE READ THE RELEASE AND SIGN ON PAGE 16 BELOW.  FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**

**PART VI:    SUBMISSION TO THE JURISDICTION OF THE COURT AND ACKNOWLEDGMENTS**

I (We) submit this Proof of Claim under the terms of the Agreement of Compromise and Settlement, dated November 30, 2010 ("Agreement") described in the Notice.  I (We) also submit to the jurisdiction of the United States District Court for the Southern District of New York with respect to my (our) claim as a member of the Settlement Class and for purposes of enforcing the release set forth herein.  I (We) further acknowledge that I (we) will be bound by and subject to the terms of any Final Judgment that may be entered in the Action.  I (We) agree to furnish additional information to the Administrator to support this claim if requested to do so. I (We) have not submitted any other claim in this Settlement covering the same purchases,

- 12 -

acquisitions, sales or holdings of AIG Securities during the Class Period and know of no other persons or entities having done so on my (our) behalf.

**PART VII:**   **RELEASE**

1.      I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release and discharge from the Released Claims each and all of the Released Persons as those terms are defined in the accompanying Notice.

2.      This release shall be of no force or effect unless and until the Court approves the Agreement, the Effective Date (as defined in the Agreement) has occurred and AIG has funded the Settlement as set forth in the Agreement.

3.      Effective upon the Effective Date, with respect to any and all Released Claims, I (we) hereby expressly waive the provisions, rights and benefits of California Civil Code § 1542 and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

4.      I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

5.      I (We) hereby warrant and represent that I (we) have included information about all of my (our) purchases, acquisitions, and sales and other transactions in AIG Securities which occurred during the Class Period (October 28, 1999 through April 1, 2005, inclusive) and the number of shares or units of AIG Securities held by me (us) at the requested periods of time.

- 13 -

**SUBSTITUTE FORM W-9**

Request for Taxpayer Identification Number ("TIN") and Certification

PART 1

NAME: _____

Check appropriate box:

| | | | | |
|---|---|---|---|---|
| ☐ | Individual/Sole Proprietor | | ☐ | Pension Plan |
| ☐ | Corporation | ☐ Partnership | ☐ | Trust |
| ☐ | IRA | ☐ Other | | |

Enter TIN on appropriate line.

For individuals, this is your social security number ("SSN").

For sole proprietors, you must show your individual name, but you may also enter your business or "doing business as" name.  You may enter either your SSN or your Employer Identification Number.

__ __ __ - __ __ - __ __ __ __           or           __ __ - __ __ __ __ __ __ __
Social Security Number                                Employer Identification Number

PART 2

For Payees Exempt from Backup Withholding

If you are exempt from backup withholding, enter your correct TIN in Part 1 and write "exempt" on the following line: _____.

**PART VIII:   <u>CERTIFICATION</u>**

UNDER THE PENALTY OF PERJURY, I (WE) CERTIFY THAT:

1.      I (We) have read the contents of the Notice and the Proof of Claim, including the releases provided for in the Settlement;

2.      I (We) hereby warrant and represent that I (we) am (are) Settlement Class Member(s), as defined in the Notice, and am (are) not excluded from the Settlement Class as defined herein and in the Notice;

3.      I (We) own(ed) the AIG Securities identified in the Proof of Claim, or that, in signing and submitting this Proof of Claim, I (we) have the authority to act on behalf of the owner(s) thereof;

4.      I (We) hereby warrant and represent that the amount that I (we) have reported in Part V of this form concerning distributions from the Fair Fund is accurate.

5.      I (We) desire to participate in the settlement described in the Notice and agree to the terms and conditions thereof;

6.      I (We) waive trial by jury, to the extent it exists, and agree to the Court's summary disposition of the determination of the validity or amount of the claim made by this Proof of Claim;

7.      The number shown on this form is my correct TIN;

8.      I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1)(C) of the Internal Revenue Code because:  (a) I am (we are) exempt from backup withholding; or (b) I (we) have not been notified by the Internal Revenue Service that I am (we are) subject to backup withholding as a result of a failure to report all

interest or dividends; or (c) the Internal Revenue Service has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE:       If you have been notified by the Internal Revenue Service that you are subject to backup withholding, you must cross out the above paragraph.  The Internal Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

9.      I (We) declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct and that the documents submitted herewith are true and genuine.

Executed this _____ day of _____, in _____, _____.
                     (Month / Year)             (City)       (State / Country)

_____
(Sign your name here)

_____
(Type or print your name here)

_____
(Signature of Joint Claimant, if any)

_____
(Print your name here)

_____
(Capacity of person(s) signing, *e.g.*, Beneficial Purchaser, Executor or Administrator)

**ACCURATE CLAIMS PROCESSING TAKES A**
**SIGNIFICANT AMOUNT OF TIME.**
**THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1. Please sign the above release and certification.

2. Remember to attach supporting documentation.

3. Do not send original or copies of stock certificates.

4. Keep a copy of the completed claim form and documentation for your records.

5. If you do not receive an acknowledgment postcard of receipt of your claim form within forty (40) days of your mailing the form, then please call the Administrator, toll-free, at _____.

6. If you move, please send the Administrator your new address: In re AIG Securities Litigation – Company Settlement, c/o _____, P.O. Box _____, _____, (800) _____, www._____.

# Exhibit C-4

*AIG*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
*IN RE AMERICAN INTERNATIONAL GROUP, INC. SECURITIES LITIGATION*
*Company Settlement*
Master File No. 04 Civ. 8141 (DAB)

| | |
|---|---|
| «barcode» — «Seq_no»<br>«barcode» — «Seq_no»<br>«name1»<br>«name2»<br>«name3»<br>«addr1»<br>«addr2»<br>«city», «state»  «zip5»<br>«country_name» | **Please correct the name or address if different from information on left:** |

## RELEASE FORM

**This Release Form is <u>ONLY</u> to be used by persons or entities that have <u>ALREADY</u> submitted a Proof of Claim form ("PwC Claim" form) in connection with the previously announced settlement with defendant PricewaterhouseCoopers LLP (the "PwC Settlement").** If you submitted a PwC Claim form, it will be used to calculate your claim in connection with the above referenced settlement and you must sign and return this Release Form. (However, if you have additional transactional information related to your purchases, acquisitions or sales of AIG Securities that you did <u>not</u> submit on your PwC Claim form that you would like considered in the calculation of your claim in this Settlement with AIG, please complete and submit a new Proof of Claim form. If you would like a Proof of Claim form, please contact the Administrator at _____. )

I (We) submit this Release Form under the terms of the Agreement of Compromise and Settlement, dated November 30, 2010 ("Agreement") described in the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Fairness Hearing. I (We) also submit to the jurisdiction of the United States District Court for the Southern District of New York with respect to my (our) claim as a member of the Settlement Class and for purposes of enforcing the release set forth herein. I (We) further acknowledge that I (we) will be bound by and subject to the terms of any Order and Final Judgment that may be entered in the Action. I (We) agree to furnish additional information to the Administrator to support our claim if requested to do so. I (We) have not submitted any other claim in this Settlement and know of no other Person having done so on my (our) behalf.

I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release and discharge from the Released Claims each and all of the Released Persons as those terms and terms related thereto are defined in the accompanying Notice. This release shall be of no force or effect unless and until the Court approves the Agreement, the Effective Date (as defined in the Agreement) has occurred and AIG has funded the Settlement as set forth in the Agreement.

Effective upon the Effective Date, with respect to any and all Released Claims, I (we) hereby expressly waive the provisions, rights and benefits of California Civil Code § 1542 and any provisions, rights and benefits conferred by any

law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

I (We) have read the contents of the Notice and the Release Form, including the releases provided for in the Settlement;

I (We) hereby warrant and represent that I (we) am (are) Settlement Class Member(s), as defined in the Notice, and am (are) not excluded from the Settlement Class as defined in the Notice;

I (We) own(ed) the AIG Securities identified in the Proof of Claim previously submitted in the PWC Settlement, or that, in signing and submitting that Proof of Claim, I (we) had the authority to act on behalf of the owner(s) thereof;

I (We) desire to participate in the settlement described in the Notice and agree to the terms and conditions thereof;

I (we) waive trial by jury, to the extent it exists, and agree to the Court's summary disposition of the determination of the validity or amount of the claim made by the Proof of Claim previously submitted in the PWC Settlement;

I (We) certify that the number shown on the Proof of Claim previously submitted in the PWC Settlement is my correct TIN;

I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1)(C) of the Internal Revenue Code because:  (a) I am (we are) exempt from backup withholding; or (b) I (we) have not been notified by the Internal Revenue Service that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the Internal Revenue Service has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE:  If you have been notified by the Internal Revenue Service that you are subject to backup withholding, you must cross out the above paragraph.  The Internal Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

**PRIOR DISTRIBUTIONS FROM THE FAIR FUND**

Definition:  The "Fair Fund" means the $800 million fund deposited by AIG with the Court Registry Investment System on March 3, 2006 under the designation "SEC v. American International Group, Inc., 06 Civ. 1000 (LAP)," pursuant to the final judgment entered, on February 17, 2006, by the United States District Court for the Southern District of New York against AIG.

Did you receive a distribution from the Fair Fund?  (YES/NO)  _____

If you answered YES, what was the amount of the distribution you received from the Fair Fund?

Amount Received:  _____

**SUPPLEMENTAL TRANSACTIONAL INFORMATION FOR AIG DEBT SECURITIES**

The Plan of Allocation in this Settlement with AIG requires certain additional information about your transactions in AIG Debt Securities.  If you purchased or sold AIG Debt Securities, you must provide the following information.

I held the following principal amounts of AIG Bond/Notes at the close of business on December 15, 2010:

| Coupon Rate | Maturity Date | Cusip | Principal amount of this particular bond/note held as of the close of business on December 15, 2010 |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I made the following sales of AIG Bonds/Notes on or after April 2, 2005 through and including December 15, 2010:

| Coupon Rate/Maturity | Trade Date Month/ Day/ Year | Principal Amount | Cusip | Sale Price per $1000 of Principal Amount* | Aggregate Received* |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

I (We) declare under penalty of perjury under the laws of the United States of America that the information supplied by the undersigned is true and correct.

Executed this _____ day of _____, in _____, _____.

(Month / Year)          (City)          (State / Country)

_____

(Sign your name here)                                    (Print your name here)

_____

(Signature of Joint Claimant, if any)                    (Print your name here)

_____

(Capacity of person(s) signing, e.g. Beneficial Purchaser, Executor, or Administrator)

1.  To qualify for a payment from the Escrow Account, created as a result of the partial settlement (the "Settlement") with defendant American International Group, Inc. ("AIG"), as a member of the Settlement Class in the class action lawsuit entitled In re American International Group, Inc. Securities Litigation, Master File No. 04 Civ. 8141 (DAB) (the "Action"), you must sign this Release Form and return it to the

address listed below.  If you fail to submit a timely, properly signed Release Form, your claim may be rejected and you may be precluded from any recovery from the Escrow Account. ***If you received a distribution from the Fair Fund and do not provide the amount of your Fair Fund distribution(s), unless the information is otherwise available, your claim will be DEFICIENT; if such deficiency is not corrected, and the Claims Administrator does not otherwise obtain the Fair Fund distribution data, your claim will be REJECTED***.

2.  Submission of this Release Form, however, does not ensure that you will share in the Escrow Account, even if you are a member of the Settlement Class.

3.  This Release Form must be mailed no later than _____ to:

***IN RE AIG SECURITIES LITIGATION  -  Company Settlement***
***c/o*** _____
P.O. Box XXXXX
_____, _____ -_____ – xxxx

**DO NOT MAIL your Release Form to the Court or to counsel for the Settling Parties.**

4.  If you are NOT a member of the Settlement Class (as defined in the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Fairness Hearing) DO NOT submit this Release Form.  You are not entitled to a recovery.

5.  If you are a member of the Settlement Class and you have not timely and validly requested to be excluded from the Settlement Class, you will be bound by the terms of the Order and Final Judgment entered by the Court, WHETHER OR NOT YOU SUBMIT A RELEASE FORM.

**Exhibit D**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE AMERICAN INTERNATIONAL
GROUP, INC. SECURITIES LITIGATION

ECF CASE

Master File No. 04 Civ. 8141 (DAB) (AJP)

### [PROPOSED] ORDER AND FINAL JUDGMENT AS TO
### AMERICAN INTERNATIONAL GROUP, INC.

WHEREAS:

A.      On November 30, 2010, the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio and Ohio Police & Fire Pension Fund (collectively, "Lead Plaintiff"), on behalf of the Settlement Class, and American International Group, Inc. ("AIG" and, Lead Plaintiff and AIG collectively, the "Settling Parties"), entered into an Agreement of Compromise and Settlement (the "Agreement" or "Settlement") in the above-captioned class action (the "Action");

B.      Pursuant to the Preliminary Approval Order entered [__] (the "Hearing Order"), the Court scheduled a hearing for [___], at [__:__ _] (the "Fairness Hearing"):  (a) to determine whether the proposed settlement of the Action on the terms and conditions provided for in the Agreement is fair, reasonable and adequate, and should be approved by the Court; and (b) to determine whether a Final Judgment substantially in the form attached to the Agreement as Exhibit D should be entered herein.  The Court ordered that the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Fairness Hearing (the "Notice") and a Proof of Claim or Release Form, in the forms attached to the Hearing Order as Exhibits 1, 3, and 4, be mailed by first-class mail, postage prepaid, on or before [__] to all putative Settlement

Class Members at the address of each such Person as set forth in the records of AIG or its

transfer agent, or who otherwise could be identified through reasonable effort, and that a

Summary Notice, in the form attached to the Hearing Order as Exhibit 2, be published in *The

Wall Street Journal*, and on PR Newswire and Bloomberg News Service, once each on separate

days, within fourteen (14) days of the mailing of the Notice;

        C.      As attested by the affidavit of [__] of [__], filed with this Court on [__],

the provisions of the Hearing Order as to notice were complied with;

        D.      On _____, Lead Plaintiff moved for final approval of the

Agreement as set forth in the Hearing Order.  The Fairness Hearing was duly held before this

Court on _____, at which time all interested persons were afforded the opportunity to

be heard;

        E.      The Notice and the Summary Notice advised putative Settlement Class

Members of the date, time, place and purpose of the Fairness Hearing.  The Notice further

advised that any objections to the Agreement were required to be filed with the Court by [__];

        F.      This Court has duly considered Lead Plaintiff's motion, the affidavits and

memorandum of law submitted in support thereof, and all of the submissions and arguments

presented with respect to the proposed Agreement;

        NOW, THEREFORE, IT IS HEREBY ORDERED:

        1.      This Judgment incorporates by reference the definitions in the Agreement,

and all capitalized terms used herein shall have the same meanings as set forth in the Agreement.

2.      This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all putative Settlement Class Members.

3.      The Court finds only for the purpose of effectuating this Settlement and only as pertains to the claims asserted against the Released Persons by Lead Plaintiff and the Settlement Class that the prerequisites for a class action under Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure have been satisfied in that:  (i) the number of Settlement Class Members is so numerous that joinder of all such members is impracticable; (ii) there are questions of law and fact common to the Settlement Class; (iii) the claims of the class representatives are typical of the claims of the Settlement Class they seek to represent; (iv) the class representatives have and will fairly and adequately represent the interests of the Settlement Class; (v) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting only individual members of the Settlement Class; and (vi) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

4.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure and for the purposes of effectuating the Settlement only, this Court hereby finally certifies a class of all persons and entities who purchased or otherwise acquired AIG Securities during the period of time from October 28, 1999, through April 1, 2005, inclusive (the "Class Period"), as well as all persons and entities who held the common stock of HSB Group, Inc. ("HSB") at the time HSB was acquired by AIG in a stock for stock transaction, and all persons and entities who held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock transaction, and were damaged thereby (the "Settlement Class"). Excluded from the Settlement Class are (i) the Defendants, as named in the Consolidated Third

Amended Class Action Complaint, dated December 15, 2006 (the "Complaint") in this Action; (ii) the immediate families of the Individual Defendants, as named in the Complaint; (iii) any parent, subsidiary, affiliate, officer, or director of AIG; (iv) persons who made requests for exclusion from the Settlement Class in the manner and within the time period provided by Section IV of the Agreement and/or by order of the Court and did not thereafter rescind such requests, such excluded persons being listed on Exhibit A hereto; (v) any entity in which any excluded person has a controlling interest; and (vi) the legal representatives, heirs, successors and assigns of any excluded person.

5.      The Court hereby finds and concludes that pursuant to Rule 23 of the Federal Rules of Civil Procedure and solely for purposes of the Settlement, Lead Plaintiff is an adequate class representative and certifies it as class representative for the Settlement Class.

6.      This Judgment is binding on all members of the Settlement Class, other than those Persons listed in Exhibit A hereto who have filed timely and valid requests to be excluded from the Settlement Class.

7.      The proposed settlement of the Action on the terms and conditions set forth in the Agreement is in all respects fair, reasonable and adequate, is in the best interests of the Settlement Class and should be approved, especially in light of the benefits to the Settlement Class and the complexity, expense and possible duration of further litigation against AIG, the risks of establishing liability and damages and the costs of continued litigation.

8.      The notification provided for and given to the putative Settlement Class Members was in compliance with the Hearing Order, and said notification:  (a) constituted the best notice practicable under the circumstances; (b) constituted notice that was reasonably calculated under the circumstances to apprise the putative Settlement Class Members of the

pendency of the Action, of the effect of the Settlement (including the releases provided for

therein), of Lead Counsel's Motion for an Attorneys' Fees and Expenses Award, of their right to

object to the Settlement and/or Lead Counsel's Motion for an Attorneys' Fees and Expenses

Award, of their right to exclude themselves from the Settlement Class, and of their right to

appear at the Fairness Hearing; (c) constituted due, adequate and sufficient notice to all persons

or entities entitled to receive notice of the proposed Settlement; (d) constituted adequate notice

under Section 3(a)(10) of the Securities Act of 1933, as amended, and (e) was in full compliance

with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and

Section 21D(a)(7) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C.

§ 78u-4(a)(7).

IT IS FURTHER ORDERED, ADJUDGED AND DECREED as follows:

9.    The Agreement is hereby approved as fair, reasonable, adequate, and in

the best interests of the Settlement Class Members, and shall be consummated in accordance

with the terms and provisions of the Agreement.

10.    The Complaint is hereby dismissed in its entirety as to AIG, Eli Broad,

John A. Graf, Martin J. Sullivan, Thomas R. Tizzio, Wachovia Securities, Inc., and Merrill

Lynch & Co., with prejudice and without costs to any party.

11.    The Court finds, pursuant to Section 3(a)(10) of the Securities Act of

1933, as amended (codified at 15 U.S.C. § 77c(a)(10)), that any issuance, sale, exchange or

distribution of Settlement Stock under the Agreement is an issuance, sale, exchange or

distribution in exchange for bona fide securities, claims, or property interests, that the procedural

and substantive terms and conditions of the exchange are fair to those to whom securities will be

issued, that this determination of fairness is based on the Fairness Hearing, and that all potential

recipients of Settlement Stock had adequate notice of and opportunity to be heard at the Fairness

Hearing regarding the fairness of this exchange.  Accordingly, pursuant to Section 3(a)(10) of the

Securities Act of 1933, as amended, any Settlement Stock to be issued, sold , exchanged or

distributed as part of the Settlement may be distributed to Settlement Class Members and to

Plaintiffs' counsel without registration under the Securities Act of 1933 and compliance with the

prospectus delivery requirements of the securities laws.  The Court was advised prior to the

Fairness Hearing that the issuer (AIG) would rely on the exemption from registration included in

Section 3(a)(10) based on this Court's approval of the Settlement.

12.     The Court further finds, pursuant to Section (c)(1) of the PSLRA, 15

U.S.C. § 78u-4(c)(1), that during the course of the Action, the Settling Parties and their

respective counsel at all times complied with the requirements of Federal Rule of Civil

Procedure 11.

13.     Upon the Effective Date, Lead Plaintiff, the Settlement Class and each

Settlement Class Member (other than those listed on Exhibit A hereto), on behalf of themselves

and their respective heirs, executors, administrators, successors and assigns and all persons

acting in concert with any such person shall have fully, finally and forever released, relinquished,

acquitted and discharged the Released Persons from the Released Claims.  This release is

expressly contingent upon the payment by AIG of the Settlement Amount, as set forth in the

Agreement.

14.     Effective upon the Effective Date, with respect to any and all Released

Claims, the Lead Plaintiff, the Settlement Class and Settlement Class Members shall have fully,

finally and forever waived the provisions, rights and benefits of California Civil Code § 1542

and any provisions, rights and benefits conferred by any law of any state or territory of the

United States or principle of common law which is similar, comparable or equivalent to

California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his favor at the time of executing
> the release, which if known by him must have materially affected
> his settlement with the debtor.

15.     The Lead Plaintiff, the Settlement Class or Settlement Class Members

may hereafter discover facts in addition to or different from those that they now know or believe

to be true with respect to the subject matter of the Released Claims, but the Lead Plaintiff, the

Settlement Class and Settlement Class Members shall have, upon the Effective Date, fully,

finally and forever settled and released any and all Released Claims, known or unknown,

suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden,

which now exist, or heretofore have existed upon any theory of law or equity now existing or

coming into existence in the future, including, without limitation, conduct which is negligent,

reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard

to the subsequent discovery or existence of such different or additional facts.

16.     To the full extent provided by Section 21D-4(f)(7)(A) of the PSLRA, 15

U.S.C. § 78u-4(f)(7)(A), and all other applicable laws, the non-settling defendants and all other

Persons, including but not limited to any other Person previously or subsequently named as a

defendant or third-party in this action (collectively "Non-Settling Persons"), are hereby

permanently BARRED, ENJOINED AND RESTRAINED from commencing, prosecuting, or

asserting any claim for contribution or indemnity against the Released Persons arising out of or

relating to the claims or allegations asserted by plaintiffs in the Action, and from commencing,

prosecuting, or asserting any other claim against the Released Persons where the injury to the

Non-Settling Person is the Non-Settling Person's actual or risked liability to the putative plaintiff

class arising out of or relating to the claims or allegations asserted by plaintiffs in the Action, whether arising under state, federal or foreign law and however designated, including claims, cross-claims, counterclaims, or third-party claims, whether asserted in the Action, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.

17.    To the full extent provided by Section 21D-4(f)(7)(A) of the PSLRA, 15 U.S.C. § 78u-4(f)(7)(A), and all other applicable laws, the Released Persons are hereby permanently BARRED, ENJOINED AND RESTRAINED from commencing, prosecuting, or asserting any claim for contribution or indemnity against the Non-Settling Persons or any other Released Person arising out of or relating to the claims or allegations asserted by plaintiffs in the Action, and from commencing, prosecuting, or asserting any other claim against a Non-Settling Person or a Released Person where the injury to the Released Person bringing the claim is that Released Person's actual or risked liability to the putative plaintiff class arising out of or relating to the claims or allegations asserted by the class in the Action, whether arising under state, federal or foreign law and however designated, including claims, cross-claims, counterclaims, or third-party claims, whether asserted in the Action, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.

18.    Any final verdict or judgment obtained by or on behalf of Lead Plaintiff, the Settlement Class or any Settlement Class Member shall be reduced by the greater of (i) an amount that corresponds to the percentage of responsibility of the Released Persons, or (ii) the Settlement Amount.

19.    The Released Persons are hereby released and discharged from any liability to Lead Plaintiff, the Settlement Class, or any Settlement Class Member under New York's General Obligation Law, § 15 108; Delaware's Uniform Contribution Among Tortfeasors Law, 10 Del. C. § 6304; or any other state's contribution bar statute, and applicable case law.

20.    The Released Plaintiff Parties are hereby permanently BARRED, ENJOINED AND RESTRAINED from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration or other proceeding or order in any jurisdiction against the Released Persons that is based upon, arises out of or relates to any of the Released Claims.

21.    The Released Persons are hereby permanently BARRED, ENJOINED AND RESTRAINED from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration or other proceeding or order in any jurisdiction against the Released Plaintiff Parties that is based upon, arises out of or relates to the Released AIG Claims.

22.    Nothing herein shall bar, extinguish, reduce or limit any rights, claims or defenses asserted in:  (a) *State of Ohio v. American International Group, et al.*, No. 07-633857 (Court of Common Pleas, Cuyahoga County, Ohio), *In re American International Group, Inc. 2008 Securities Litigation*, No. 08-cv-4772 (S.D.N.Y.); *In re American International Group, Inc. 2007 Derivative Litigation*, No. 07-cv-10464 (S.D.N.Y.); (b) in *American International Group, Inc. Consolidated Derivative Litigation*, C.A. No. 769-VCS (Del. Ch.), *In re American International Group, Inc. Derivative Litigation*, No. 04-CV-8406 (S.D.N.Y.), *Teachers Retirement System of La. v. Cantwell*, et al., No. 650064/2009 (N.Y. Sup. Ct., N.Y. Cty.), *Bassman v. Greenberg*, No. 05-CV-7022 (S.D.N.Y.), and *Kleinhandler v. Greenberg*, No. 05-

CV-6417 (S.D.N.Y.); (c) in connection with the fair fund created in *SEC v. American International Group, Inc.*, 06 Civ. 1000 (S.D.N.Y.) (LAP) and/or *In Re AIG ERISA Litigation*, 04 Civ. 9387 (S.D.N.Y) (JES); or (d) in the Action against any of the Named Defendants other than the Released Persons; nor shall anything in the Final Judgment bar, extinguish, reduce or limit any rights, claims or defenses that are based on or arise from the settlement agreement dated March 24, 2010 between AIG, the State of Ohio and others in *State of Ohio v. AIG*, No. CV 07 633857 (Ohio Ct. Com. Pl.).

23.     Upon the Effective Date, AIG, on behalf of itself and its respective heirs, executors, administrators, successors and assigns and all persons acting in concert with any such person, shall have fully, finally and forever released and discharged each and every one of the Released AIG Claims against the Released Plaintiff Parties and shall forever be enjoined from instituting, maintaining or prosecuting any or all of the Released AIG Claims.

24.     Each Settlement Class Member other than those listed on Exhibit A hereto (whether or not such Settlement Class Member executes and delivers a Proof of Claim or Release Form) and all of their respective predecessors, successors, representatives, affiliates, agents, heirs, executors, trustees, personal representatives, estates, administrators, and assigns; and any other person or entity who has the right, ability, standing or capacity to assert prosecute or maintain any of the Released Claims belonging to a Settlement Class Member to obtain the proceeds of any recovery therefor but only with respect to the Released Claims, is bound by this Final Judgment, including, without limitation, the releases set forth in the Agreement.

25.     This Final Judgment and the Agreement, and all papers related thereto are not, and shall not be:

(a)      described as, construed as, interpreted as, or offered or received against any of the Released Persons as an admission of any liability or wrongdoing whatsoever, whether in this or any other proceeding;

(b)      described as, construed as, interpreted as, or offered or received against any of the Released Persons, whether in this or any other proceeding, as evidence of and/or deemed to be evidence of any presumption, concession or admission by any of the Released Persons as to: (i) the truth of any fact alleged in the Complaint; (ii) the validity of any claim that has been or could have been asserted in the Action or in any other litigation; (iii) the deficiency of any defense that has been or could have been asserted in the Action or in any other litigation; and/or (iv) any liability, negligence, fault, or wrongdoing on their part;

(c)      described as, construed as, interpreted as or offered or received against Lead Plaintiff or any Settlement Class Member, whether in this or any other proceeding, as evidence of any infirmity in the claims of said Lead Plaintiff and the Settlement Class or that damages recoverable from the Released Persons would not have exceeded the Settlement Amount, whether in this or any other proceeding;

(d)      described as, construed as, interpreted as, offered or received against any of the Released Persons, Lead Plaintiff and/or any Settlement Class Member, whether in this or any other proceeding, as an admission or concession that the consideration to be given in the this Final Judgment or the Agreement represents the amount which could be or would have been awarded to said Lead Plaintiff or Settlement Class Members after trial, whether in this or any other proceeding; and

(e)      offered or received against any of the Settling Parties in any other civil,

criminal or administrative action or proceeding, or in any court or other tribunal, except

in connection with any action, litigation or proceeding to enforce the terms of the

Agreement or this Final Judgment.

26.      The administration of the Agreement, and the decision of all disputed

questions of law and fact with respect to the validity of any claim or right of any person to

participate in the distribution of funds from the Escrow Account, shall remain under the authority

of this Court.

27.      In the event that the Agreement does not become consummated in

accordance with the terms of the Agreement, then this Judgment shall be rendered null and void

to the extent provided by and in accordance with the Agreement and shall be vacated, and in

such event, all orders entered and releases delivered in connection herewith shall be null and

void to the extent provided by and in accordance with the Agreement.

28.      Any Court order regarding the Plan of Allocation or the Attorneys' Fees

and Expenses Award shall in no way disturb or affect this Judgment and shall be considered

separate from this Judgment.

29.      No Person shall have any Claim against Lead Plaintiff, Lead Plaintiff's

counsel, the Administrator or any of their respective agents, or against the Released Persons

and/or their respective counsel, with respect to or arising out of any distributions or lack thereof

made under the Plan of Allocation, the Agreement or orders of the Court.

30.      Without affecting the finality of this Judgment in any way, this Court

hereby retains continuing jurisdiction over (a) implementation of this Agreement and any award

or distribution of the Escrow Account, including interest earned thereon; (b) disposition of the

Escrow Account; (c) hearing and determining applications for attorneys' fees, costs, interest and reimbursement of expenses in the Action; and (d) all parties hereto for the purpose of construing, enforcing and administering the Agreement.

31.     If the Effective Date does not occur or the Agreement is terminated, then this Final Judgment (and any orders of the Court relating to this Settlement) shall be vacated, rendered null and void and be of no further force except as otherwise provided by the Agreement.

32.     There being no just reason to delay entry of this judgment, the Clerk of the Court is ordered, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, to enter this Judgment forthwith.

Dated:  New York, New York

_____

_____
The Honorable Deborah A. Batts
United States District Court for the Southern
District of New York