USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/2/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
In re AMERICAN INTERNATIONAL GROUP,
INC. SECURITIES LITIGATION

04 Civ. 8141 (DAB)
MEMORANDUM AND ORDER

------------------------------------x

INTRODUCTION AND SUMMARY

On November 30, 2010, the Court held a Fairness Hearing to consider the final certification of the Settlement Class, as well as the substantive and procedural fairness of the terms of the Settlement on the Joint Motion of Lead Plaintiff and Defendant PricewaterhouseCoopers LLP for Final Approval of Proposed Settlement with PricewaterhouseCoopers LLP.  As set out in the Court's Order and Final Judgment as to PricewaterhouseCoopers LLP, dated December 2, 2010, the Court finally certified the Settlement Class and approved the Settlement in full.  At the hearing, the Court certified the class, approved the settlement and attorneys fees and expenses and Lead Plaintiffs' expenses orally, and indicated that it would file this Memorandum and Order, setting out the Court's rationale for final certification the Class and approval of the Settlement.

Lead Plaintiffs Ohio Public Employees Retirement System ("OPERS"), State Teachers Retirement System of Ohio ("STRS Ohio"), and Ohio Police & Fire Pension Fund ("OP&F") (collectively, "Lead Plaintiffs"), filed this class action against Defendants American

International Group ("AIG"), its former Chairman and CEO Maurice "Hank" Greenberg, its outside auditors PricewaterhouseCoopers LLP ("PwC"), and numerous other corporate and individual defendants associated with AIG (hereinafter "Defendants") for violations of Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77o, Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a) and 78t-1, and SEC Rule 10b-5.

The action arises from, <u>inter alia</u>, material misstatements and omissions allegedly made by defendants in connection with (i) AIG's involvement in an illegal market division scheme with the Marsh & McLennan Companies, Inc. ("Marsh") and others in the insurance industry; (ii) a far-reaching accounting fraud scheme that led to AIG's massive $3.9 billion restatement of earnings in May 2005; and (iii) a market manipulation claim with respect to AIG and Defendant Maurice R. ("Hank") Greenberg. The price of AIG's stock fell at various times when the market division and accounting frauds were disclosed, resulting in significant damages to the class. Lead Plaintiffs contend that during the class period, PwC certified that it had conducted its audits in accordance with Generally Accepted Auditing Standards ("GAAS") and had expressed its opinion that AIG's financial statements were presented in accordance with Generally Accepted Accounting Principles ("GAAP"), even though PwC knew-or was reckless in not knowing-that that was not the case. Both Parties

recognize the significant risk involved if the litigation continued. PwC denies and continues to deny any and all allegations of wrongdoing.

In an Order dated October 14, 2008, the late Judge Sprizzo preliminarily approved the proposed settlement between Lead Plaintiffs and PwC.  The Preliminary Approval Order preliminarily certified a class for the purposes of settlement only.  On January 13, 2009, Lead Plaintiffs moved to approve the Proposed Settlement with PwC.  On February 22, 2010, this Court found claims based on ownership of AIG bonds deficient and certified a litigation class narrower in scope than the class preliminarily certified for settlement.  On March 19, 2010, the original motion for approval of the proposed settlement with PwC was voluntarily withdrawn, without prejudice, to allow Lead Plaintiffs and PwC to address the effect of the Litigation Class Opinion on final approval of the settlement with PwC.  (Mem. Of Law p. 2-3.)  Now before the Court is the renewed motion of Lead Plaintiffs and PwC for final approval of the settlement with PwC.

For purposes of this Settlement, the class of Plaintiffs consists of persons who purchased or otherwise acquired AIG securities during the period from October 28, 1999 through April 1, 2005, and who were damaged thereby.  (Mem. of Law Ex. B, p. 1.)  Defendants and certain entities and persons connected to them are excluded from the Settlement Class.  Id.

The Settlement follows nearly five years of litigation, which included two rounds of motion practice to determine the Lead Plaintiffs, Motions to Dismiss filed by more than 20 defendants, production and review of nearly 45 million pages of documents by defendants, including more than 28 million pages produced by PwC, and more than forty depositions. (Mem. of Law Ex. B, p. 2.) The Settlement was reached after several in-person and telephonic negotiations, and two full-day mediation sessions with the assistance of an independent and impartial mediator, former federal judge Layn R. Phillips. (Id.)

In accordance with the Court's preliminary approval Order of October 14, 2008, notice and Proof of Claim forms were sent to (i) all potential members of the Settlement Class who could be identified and (ii) known brokers/nominees who may have purchased AIG Securities for the beneficial interest of individual investors. (Mem. of Law Ex. B, p. 3.)

The response to the Settlement has been extremely positive. Class Notices were mailed to more than two million potential Settlement Class members and brokers/nominees. (Drubbs Decl. Ex. 2 ¶ 16.) In addition, the Publication Notice was published in The Wall Street Journal and transmitted over PR Newswire and Bloomberg News Services on separate days, within fourteen days of October 20, 2008.

4

(Id. ¶ 16.)  There were only three objectors,[1] out of more than two million putative class members.  (Joint Mem., p. 11.)  There were only 105 requests for exclusion received, out of which 61 were timely and valid.  (Id.)

The terms and administration of the Settlement Agreement, approved by the Court, are summarized as follows:

The Settlement creates a Gross Settlement Fund of $97.5 million. Co-Lead Counsel are authorized to seek an award of attorneys' fees that would not exceed 9% of the Gross Settlement Fund, and reimbursement of expenses not to exceed $6 million, plus interest. (In fact, they seek an award of fees amounting to 6% of the Gross Settlement fund and $4,878,836.07 in expenses.)  Lead Plaintiffs may, and do now, seek up to $30,000 for reasonable costs and expenses.  The Settlement Fund is to be distributed pursuant to the Plan of Allocation, which apportions the recovery among Settlement Class members who purchased or acquired AIG's publicly traded common stock, call options, put options and bonds during the Class Period.  Those who purchased common stock and options will recover a larger portion of the Settlement than those who purchased the bonds, in recognition

---

[1] One objector, Karen Michaels, withdrew her objection on May 20, 2009.  (Docket #511.)  Additionally, certain non-settling defendants (the "Greenberg Defendants") had objected to the Bar Order included in the Settlement.  Counsel for PwC informed the Court at the Nov. 30, 2010 hearing that the Objection had been withdrawn.

of the particular risks involved in establishing loss causation and market efficiency for the bonds. Specifically, Authorized Claimants with respect to the bonds will share in up to 5% of the amount that will be distributed to the Settlement Class members. (Mem. of Law Ex. B, p. 22.)

Under the Plan of Allocation, each Authorized Claimant is entitled to recover her recognized loss to the extent that the Net Settlement Fund is sufficient. If there are not sufficient funds, Authorized Claimants will be entitled to receive their pro rata share of the Fund, i.e. the percentage of their Recognized Loss determined by the ratio of the total Recognized Losses of all Authorized Claimants to the value of the Net Settlement Amount. (Id.)

THE ROTHSTEIN OBJECTION

At the November 30, 2010 hearing, Albert Bacharach, attorney for objectors the Rothstein Family, appeared and was permitted to speak. Mr. Bacharach argued, for the first time, that the Notice provided to class members in this case was insufficient due to the failure of Lead Plaintiffs and PwC to provide a prediction of the damages available had Plaintiffs prevailed at trial. The Private Securities Litigation Reform Act of 1995 (the "PSLRA") does not, as Mr. Bacharach contended, unambiguously require such an estimate. Where, as here, the parties disagree as to the amount of damages available had Plaintiffs prevailed at trial, the statute requires only that each party make a

statement "concerning the issue or issues on which the parties disagree." 15 U.S.C. § 78u-4(a)(7)(B).

The Notice distributed in this case states that Lead Plaintiffs and PwC disagree on whether statements by PwC were false, whether PwC knew or should have known that its statements about AIG were false or misleading, whether the alleged misrepresentations were material, and the amount of damages, if any, those misrepresentations caused. (Dubbs Decl. Ex. A, p. 2.) Courts within the Second Circuit have repeatedly approved settlements involving notice forms with nearly identical language. See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig., No. 02 Civ. 3400 (CM) (S.D.N.Y. Nov. 8, 2010); In re Marsh & McLennon Companies, Inc. Sec. Litig., No. 04 Civ. 8144 (CM) (S.D.N.Y. Nov. 10, 2009); In re Comverse Technology, Inc. Sec. Litig., No. 06 Civ. 1825 (NGG) (E.D.N.Y. Apr. 2, 2010); In re Bisys Sec. Litig., No. 04 Civ. 3840 (LAK) (S.D.N.Y. July 16, 2007).

Furthermore, In re Veritas Software Corp. Sec. Litig., 496 F.3d 962 (9th Cir. 2007), the only precedent Mr. Bacharach cites to support his proposition, does not address the "Statement of potential outcome of case" required in § 78u-4(a)(7)(B). Instead, the case involved the statement of the amount to be distributed on a per-share basis after settlement that § 78u-4(a)(7)(A) requires. Id. at 969. The Court in Veritas found that the notice at issue affirmatively mislead class members about the value of their recovery by implying that the

recovery-per-share estimate was based on 100% of the class filing claims, when in fact the number was based on a significantly smaller percentage of claimants. Id. at 971. Here, there was no such misrepresentation.

The Notice distributed to potential class members was "sufficient" and "comprehensible" to allow those class members to "evaluate proposed settlements intelligently." See In re Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 184 (S.D.N.Y. 2003) (finding that minor, technical violations of the PSLRA's notice requirement did not justify upsetting a notice procedure that informed class members adequately). Accordingly, the Objection is overruled.

<u>CLASS CERTIFICATION</u>

In order to finally certify the Class as defined by the Court's October 14, 2008 Order, the Court will consider the criteria of Federal Rule of Civil Procedure 23(a) and (b).

| COURT FINDING | EVIDENCE FROM SUBMISSION | LEGAL REQUIREMENT |
|---|---|---|
| The class is so numerous that joinder of all members is impracticable. | The putative class consists of (at least) tens of thousand of investors, with more than 7.6 billion shares traded during the Class period. (Ex. B, p. 15.) | The four prerequisites of Rule 23(a) are that: (1) the class be so numerous that joinder of all members is impracticable; |

| | | |
|---|---|---|
| The Court finds that there are questions of law or fact common to the class.<br><br>The Court also finds that under Rule 23(b)(3), these questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. | The central questions of whether PwC made material misstatements of fact and/or omissions in documents filed publicly with the SEC, and whether PwC did so with the requisite mental state, are the same for each class member.  (Ex. B at 16.) | (2) there be questions of law or fact common to the class; |
| The Court finds that the claims or defenses of the representative parties are typical of the claims or defenses of the class. | Lead Plaintiffs, like all class members, purchased AIG's publicly traded securities at artificially inflated prices during the Class Period and claims to have suffered damages because of PwC's alleged material misstatements and omissions. Accordingly, the legal theories and evidence Lead Plaintiffs will advance to prove its claims will | (3) the claims or defenses of the representative parties be typical of the claims or defenses of the class; and |

| | | |
|---|---|---|
| | simultaneously advance the claims of other class members. (Ex. B at 17.) | |
| The Court finds that the representative parties will fairly and adequately protect the interests of the class. | Labaton Sucharow and Hahn Loeser are amply qualified, experienced and able to conduct this litigation vigorously and effectively, and have zealously and ably represented Lead Plaintiffs on behalf of the proposed class for the last three and one-half years. (Ex. B at 17.)<br><br>There is no conflict or antagonism between the claims of the proposed class representative and those of the other members of the proposed class. The Ohio State Funds-three large institutional investors-are committed to monitoring Lead Counsel and prosecuting this action vigorously, as indicated by their direct involvement in the litigation to date. (Ex. B. At 17.) | (4) the representative parties will fairly and adequately protect the interests of the class. |

> Having received only three objections to the class certification, and finding all of the criteria set forth in Rule 23 has been satisfied, THE CLASS CERTIFICATION IS HEREBY FINALLY CONFIRMED.  Labaton Sucharow and Hahn Loeser are hereby appointed class counsel for the Settlement Class.

---

**FAIRNESS**

Under Rule 23(e), to grant final approval of a settlement, the Court must determine whether the proposed settlement is fair, reasonable and adequate. In making this determination, the Court must review both the procedural and substantive fairness of a proposed settlement. To find a settlement procedurally fair, the Court must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations, and that Plaintiffs' Counsel possessed the experience and ability, and engaged in the discovery necessary for effective representation of the class's interests. To find a settlement substantively fair, the Court reviews the 9 Grinnell Factors. City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

| COURT FINDING | EVIDENCE FROM SUBMISSION | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **PROCEDURAL FAIRNESS** The settlement resulted from "arm's length negotiations." Class Counsel possessed the requisite amount of experience and ability, and the parties engaged in the discovery necessary for effective representation of the Class's interests. | By the time of settlement, Lead Plaintiffs had opposed motions to dismiss by more than 20 defendants, including PwC; completed class discovery involving more than two dozen depositions, including three expert depositions; moved for class certification and produced an expert declaration concerning market | D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001), citing Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982). The procedural fairness questions may also satisfy (depending on the facts), Grinnell Factor 3 (The Stage of the Proceedings and Amount of Discovery Completed) and Goldberger Factors 1 (Time and Labor Expended by |

| | | |
|---|---|---|
| | efficiency and loss causation; and completed a substantial amount of fact discovery, including the review and analysis of nearly 45 million pages of documents (more than 28 million of which were produced by PwC alone) and the depositions of more than a dozen fact witnesses. The parties attended a two-day mediation before a former federal judge. Both sides were determined and zealous in their representation of their clients. (Ex. B at 6-7.) The Court finds procedural fairness is not only met, but also Grinnell Factor 3 and Goldberger Factors 1 and 4 are met as well. | Counsel) & 4 (Quality of the Representation)] City of Detroit v. Grinnell Corp., 495 F.2d 448,463 (2d Cir. 1974). |
| SUBSTANTIVE FAIRNESS Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the 9 Grinnell factors.<br><br>(1) Litigation is complex, and would likely be costly and lengthy in duration. The Court finds | This litigation has been challenging and complex, and vigorously prosecuted and defended. | Grinnell Factor 1: The complexity, expense and likely duration of the litigation. |

| Grinnell Factor 1 and Goldberger Factor 2 satisfied on these facts. | Without the Settlement, the prosecution of claims against PwC would have required additional fact and expert discovery, summary judgment briefing, trial preparation, and trial (which would likely last for more than one month). These efforts would require additional large expenditures over an extended period, after which the Settlement Class might obtain a result far less beneficial than the one provided by the Settlement. (Ex. B at 7.) | [Also satisfies Goldberger Factor 2: The magnitude and complexities of the litigation.] |
|---|---|---|
| (2) The reaction of the class to the settlement has been positive. | Despite the dissemination of more than two million notice packets, only four "objections" have been filed or received. Only 105 requests for exclusion were filed or received, 61 of which were valid and timely. (Ex. B at 8-9.) | Grinnell Factor 2: The reaction of the class to the settlement. |
| (3) Proceedings have progressed and sufficient discovery has been completed to understand Plaintiffs' claims | The Court already found Grinnell Factor 3 to be satisfied earlier, under the procedural fairness section. | Grinnell Factor 3: The stage of the proceedings and the amount of discovery completed. |

13

| | | |
|---|---|---|
| and negotiate settlement terms. | | |
| (4), (5), and (6) The risks of litigation including establishing liability, establishing damages, and maintaining the class action through trial are significant. | Risks of litigation were significant. The claims against PwC involved the violation of complex accounting rules which might not be easily understood by a jury. Further, there were significant challenges to tying PwC to AIG's false statements related to the contingent commission and bid-rigging allegations, and to proving PwC acted with scienter. There was a further risk that any finding of liability against PwC could be overturned on appeal. (Ex. B at 11-12.) | Grinnell Factor 4: The risks of establishing liability. |
| | Plaintiffs would have faced significant risk in establishing damages. Defendants would put forth experts on loss causation, which a factfinder could credit at trial or on summary judgment to reach the conclusion that Plaintiffs suffered no damages. (Ex. B at 12-13.) | Grinnell Factor 5: The risks of establishing damages. |

14

| | | |
|---|---|---|
| | | Grinnell Factor 6: The risk of maintaining the class action through the trial. [The Court's findings on Grinnell Factors 4, 5 and 6 also satisfy Goldberger Factor 3: The risk of the litigation] |
| (7) Defendants' ability to withstand a judgment greater than the settlement is unknown by Plaintiffs. | Factor 7 weighs neither for nor against approval. | Grinnell Factor 7: The ability of the Defendant to withstand greater judgment. |
| (8) and (9) The settlement is reasonable in light of: (a) Plaintiffs' best possible recovery, and (b) the attendant risks of litigation. | The $97.5 million Settlement is a very significant recovery. It would be the eighth largest settlement ever by an auditor in a securities class action and the fourth largest settlement every by an auditor who was not also sued by the Government. (Ex. B at 13-14.) | Grinnell Factor 8: The range of reasonableness of the Settlement Fund in light of the best possible recovery. |
| | In light of the risks of litigation listed above, the recovery is reasonable and substantial. (Ex. B at 13-14.) | Grinnell Factor 9: The range of reasonableness of the Settlement Fund to a possible recovery in light of all the |

15

|   |   | attendant risks of litigation. |
|---|---|---|
| Having considered the procedural and substantive factors, the Court find the proposed settlement to be fair, reasonable and adequate under Rule 23 and THE SETTLEMENT IS HEREBY APPROVED. |||

| ATTORNEYS' FEES AND EXPENSES, LEAD PLAINTIFFS' EXPENSES |||
|---|---|---|
| To ensure the appropriateness of attorneys' fees and costs, the Court will now review the six Goldberger criteria. Goldberger v. Int. Resources, 209 F.3d 43, 50 (2d Cir. 2000).<br><br>ATTORNEYS' FEES<br><br>The Second Circuit has recognized that a district court may calculate reasonable attorney fees by either the lodestar method or the percentage method. Goldberger, 209 F.3d at 50. The proposed attorneys' fee, calculated here according to the percentage method, is |   |   |

| | | |
|---|---|---|
| reasonable. No matter which method is chosen, District Courts should be guided by the six traditional Goldberger criteria in determining a reasonable common fund fee. Goldberger v. Integrated Resources, Inc., 209 F .3d 43, 50 (2d Cir. 2000). The six Goldberger Factors are: | | |
| (1) Counsel has expended considerable time and labor on behalf of Plaintiffs. | The Court's earlier findings regarding procedural fairness also satisfy Godlberger Factor 1. | Goldberger Factor 1: The requested fee in relation to the settlement. |
| (2) The litigation is complex and of large magnitude. | The Court's earlier findings satisfying Grinnell factor 1 also satisfy Goldberger Factor 2. | Goldberger Factor 2: The magnitude and complexities of the litigation. |
| (3) The risks of litigation for Plaintiffs are substantial. | The Court's earlier findings satisfying Grinnell Factors 4, 5, and 6 also satisfy Goldberger factor 3. | Goldberger Factor 3: The risk of litigation. |
| (4) Representation of class counsel is of high quality. | Labaton Sucharow has many years of experience in complex federal civil litigation, | Goldberger Factor 4: The quality of representation. |

17

| | particularly the litigation of securities and other class actions. Hahn Loeser has served as Lead Counsel in, and has also defended, many class actions in the securities area. (Fees Mem. at 12.) | Goldberger Factor 5: The requested fee in relation to the settlement. |
|---|---|---|
| (5) The requested attorneys' fees are reasonable in relation to Parties' settlement.<br><br>(6) Requested attorneys' fees are not contrary to public policy | The fees requested amount to 6% of the recovery and a lodestar multiplier of only .54. (Fees Mem. at 13.)<br><br>Here, a class action was the only way that investors could obtain compensation from PwC, since no governmental entity or regulator has filed claims against PwC relating to its audits of AIG. As a practical matter, such lawsuits can be maintained only if competent counsel may be retained to prosecute them. (Fees Mem. at 13-14.) | Goldberger Factor 6: Public policy considerations |
| ATTORNEY EXPENSES<br>The Court finds that expenses in this matter are reasonable | $4,878,836.07 in out-of-pocket expenses was 'incidental and necessary to the representation' of the class. The out-of-pocket expenses | "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as |

| | | |
|---|---|---|
| | included expert and consultant fee, costs of establishing and using an electronic database to conduct discovery, photocopying, postage, and transportation. (Fees Mem. at 16-17.) | long as they were 'incidental and necessary to the representation' of those clients." <u>In re Independent Energy Holdings PLC Sec. Litig.</u>, 302 F. Supp. 2d 180, 183 (S.D.N.Y. 2003) |
| Having conducted the <u>Goldberger</u> analysis, the Court finds the requested attorneys' fees of 6% of the Settlement Fund to be reasonable and the attorneys' fees are HEREBY APPROVED. Likewise, the Court finds attorneys' expenses of $4,878,836.07 reasonable and those expenses are HEREBY APPROVED. | | |
| <u>LEAD PLAINTIFFS' EXPENSES</u><br><br>The Court finds that expenses for Lead Plaintiffs are reasonable. | Lead Plaintiffs seek an award of $30,000 to Lead Plaintiffs to compensate them for the time and effort they devoted on behalf of a class. Here, OPERS and STRS Ohio have devoted at least 675 hours to the litigation, including meetings with counsel, time devoted to responding to extensive document requests and interrogatories and producing more than 260,000 pages of documents, | The Court may award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4); <u>In re Flag Telecom Holdings, Ltd. Sec. Litig.</u>, No. 02 Civ. 3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010). |

| | preparation for and attendance at ten class discovery depositions, review of court filings, and correspondence and telephone conversations with counsel. (Fees Mem. at 19-20.) | |
|---|---|---|
| The Court finds the requested expenses of $30,000 for Lead Plaintiffs to be reasonable and the those expenses are HEREBY APPROVED. | | |

The Fairness Hearing of November 30, 2010, the Order and Final Judgment as to PricewaterhouseCoopers LLP, the Order Approving Plan of Allocation, and the Order Approving Co-Lead Counsel's Motion for an Award of Attorney's Fees and Reimbursement of Expenses and Lead Plaintiff's Request for Reimbursement of Expenses signed by the Court December 2, 2010 and this Memorandum and Order constitute the Court's findings and rulings in this matter.

SO ORDERED.

Dated: New York, New York
       December 2, 2010

                                                *Deborah A. Batts*
                                                Deborah A. Batts
                                                U.S. District Judge