**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————— x
                                     :
                                     :    <u>**ECF CASE**</u>

IN RE AMERICAN INTERNATIONAL   :
GROUP, INC. SECURITIES LITIGATION  :    Master File No. 04 Civ. 8141 (DAB) (AJP)
                                     :

This Document Relates To:  All Actions    :    <u>Oral Argument Requested</u>
                                     :

——————————————————————— x

 

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH**
**MAURICE R. GREENBERG, HOWARD I. SMITH, CHRISTIAN M. MILTON,**
**MICHAEL J. CASTELLI, C.V. STARR & CO., INC.**
**<u>AND STARR INTERNATIONAL COMPANY, INC.</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   BRIEF PROCEDURAL HISTORY ................................................................... 4

      A.    Overview of Claims ................................................................................. 4

      B.    Discovery ................................................................................................. 5

      C.    Class Discovery and Class Certification .................................................. 5

      D.    Settlement Negotiations and the Proposed Settlement ........................... 6

III.  ARGUMENT ..................................................................................................... 6

      A.    The Proposed Settlement Fully Satisfies the Criteria for
            Preliminary Approval ............................................................................... 6

            1.    Factors to Be Considered ............................................................. 6

            2.    The Proposed Settlement Is the Result of Well Grounded,
                  Good Faith, Arm's-Length Negotiations Between
                  Experienced Counsel ..................................................................... 7

            3.    The Proposed Settlement Falls Well Within the Range of
                  Reasonableness and Warrants Notice and a Hearing on
                  Final Approval .............................................................................. 7

            4.    The $115 Million Settlement Has No Obvious Deficiencies ...... 9

IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE
      SETTLEMENT CLASS ...................................................................................... 10

      A.    This Action Meets the Requirements of Rule 23(a) ................................ 10

            1.    Rule 23(a)(1): The Class Is So Numerous that Joinder of
                  All Members Is Impracticable ...................................................... 10

            2.    Rule 23(a)(2): Questions of Law or Fact Are Common to
                  the Class ........................................................................................ 11

            3.    Rule 23(a)(3): Plaintiffs' Claims Are Typical of the Claims
                  of Other Class Members ................................................................ 11

            4.    Rule 23(a)(4): The Ohio State Funds Will Adequately
                  Protect the Interests of the Class .................................................. 12

B.    This Action Meets the Requirements of Rule 23(b)(3) ........................................ 13

    1.    Questions of Law or Fact Common to the Class Predominate Over Any Questions Affecting Only Individual Members ................................................................. 13

    2.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy ........................... 14

C.    Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g) ................................................................................................... 15

V.    THE COURT SHOULD APPROVE THE FORM OF THE NOTICES AND PLAN FOR PROVIDING NOTICE TO THE CLASS ......................................... 15

VI.    CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*In re American Int'l Group Sec. Litig.*,
    No. 04 Civ. 9387, 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) ...........................................10

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) ...............................................................................................12

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999)........................................................................................14

*In re Currency Fee Antitrust Litig.*,
    MDL Nos. 1409, M 21-95, 2006 WL 3253037 (S.D.N.Y. Nov. 8, 2006) ...........................7

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) .............................................................................................10

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................................8, 12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)..............................................................................16

*In re Marsh & McLennan Co. Inc. Sec. Litig.*,
    04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)..................................8, 12

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997)..........................................................................................9

*In re Telik, Inc. Sec. Litig.*,
    No. 07 Civ. 4819 (CM), 2008 WL 4198516 (S.D.N.Y. Sept. 10, 2008)...............................14

*In re Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .............................................................................................6, 7

## STATUTES

15 U.S.C. § 77k.................................................................................................................4

15 U.S.C. § 77o.................................................................................................................4

15 U.S.C. § 78u-4 *et seq* .................................................................................................2

15 U.S.C. § 78u-4(a)(4) ....................................................................................................9

15 U.S.C. § 78u-4(a)(7) ....................................................................................................16

15U.S.C. § 78t-1 .............................................................................................................4

15 U.S.C. § 78t(a) ...........................................................................................................4

15 U.S.C. § 78j(b) ...........................................................................................................4

17 C.F.R. § 240.10b-5 ......................................................................................................4

Fed. R. Civ. P. 23(a) ........................................................................................................1

Fed. R. Civ. P. 23(a)(2) ...................................................................................................11

Fed. R. Civ. P. 23(a)(3) ...................................................................................................11

Fed. R. Civ. P. 23(a)(4) ...................................................................................................12

Fed. R. Civ. P. 23(b)(3) ...............................................................................................1, 13

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................................................16

Fed. R. Civ. P. 23(e) ....................................................................................................1, 6

Fed. R. Civ. P. 23(e)(1) ...................................................................................................17

Fed. R. Civ. P. 23(g)(1) ...................................................................................................15

## I.    **PRELIMINARY STATEMENT**

The Ohio Public Employees Retirement System, State Teachers Retirement System of

Ohio and the Ohio Police & Fire Pension Fund (collectively, "Lead Plaintiff" or the "Ohio State

Funds"), as Court-appointed Lead Plaintiff in this case, submits this memorandum of law in

support of the Ohio State Funds' unopposed motion, pursuant to Fed. R. Civ. P. 23(a), (b)(3) and

(e), for:

- Preliminary approval of the proposed $115 million contingent settlement (the
  "Settlement") of claims against Maurice R. Greenberg, Howard I. Smith, Christian
  M. Milton, Michael J. Castelli, C.V. Starr & Co., Inc. ("C.V. Starr") and Starr
  International Company, Inc. ("SICO") (collectively, the "Starr Defendants" and,
  collectively with Lead Plaintiff, the "Settling Parties") in this class action
  ("Action"), as set forth in the Contingent Agreement of Compromise and
  Settlement dated August 10, 2009 (the "Agreement"),[1] annexed as Exhibit 3 to the
  Declaration of Thomas A. Dubbs ("Dubbs Decl."), dated Jan. 6, 2011, submitted
  herewith;

- Preliminary certification of a settlement class (the "Settlement Class") of all
  persons or entities who purchased or otherwise acquired the publicly traded
  securities of American International Group, Inc. ("AIG") during the period from
  October 28, 1999 through April 1, 2005 (the "Class Period"), inclusive, as well as
  all persons and entities who held the common stock of HSB Group, Inc. ("HSB")
  at the time HSB was acquired by AIG in a stock for stock transaction, and all
  persons and entities who held the common stock of American General
  Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock
  transaction, and were damaged thereby[2];

---

[1]    In order to avoid the risk that Lead Plaintiff would have to try a case against AIG without the Starr
Defendants being present, *i.e.,* the risk that AIG would assert the "empty chair" defense by blaming parties not
present at the trial for the Company's alleged misconduct, the Settling Parties have agreed that final approval of this
Settlement is contingent upon the entry of an order by this Court granting final approval of the separate settlement
agreement between Lead Plaintiff and AIG (the "AIG Settlement"), which was submitted to the Court for
preliminary approval on November 30, 2010.  *See* Agreement at ¶ I.A ("The Settling Parties agree that this
Agreement shall only become effective once the Lead Plaintiff has resolved its claims against AIG, by settlement
agreement, judicial decision or otherwise.  Once that condition precedent has been met, the rights and obligations of
the Settling Parties pursuant to this Agreement will automatically take effect.").  The Settlement also contains terms
making it subject to termination if the AIG Settlement is not approved <u>and</u>, subsequently, the Court were to make
certain rulings on the issues of *respondeat superior* or judgment reduction during the course of continued litigation.
*See* Agreement at ¶ X.5.

[2]    Excluded from the class are the Defendants, members of the immediate families of the Individual
Defendants, any parent, subsidiary, affiliate, officer, or director of defendant AIG, any entity in which any excluded
person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person

- Appointment of the Ohio State Funds as Class Representatives and Lead Counsel as Class Counsel, for purposes of the Settlement; and

- Approval of the form, substance and the requirements of the proposed notice of settlement and summary notice, appended as Exhibits 1 and 2 to the proposed Preliminary Approval Order, and the means and methods for disseminating notice, as comporting with due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 78u-4 *et seq*.

The $115 million proposed Settlement with the Starr Defendants is an outstanding result for the proposed Settlement Class and would bring to a close five years of hard-fought litigation between Lead Plaintiff and the Starr Defendants.[3]  Indeed, when combined with the $725 million AIG Settlement and the $97.5 million settlement with PricewaterhouseCoopers LLP ("PwC" and the "PwC Settlement"), it would be the ***10th largest*** securities class action settlement.  The proposed resolution meets all of the requirements for preliminary approval.

Lead Plaintiff respectfully proposes the following schedule for the various Settlement events, based upon the terms of the Agreement:

- Mailing of individual Notices to all Class Members who can be identified through reasonable effort (the "Notice Date"):  *15 days after signing of the Preliminary Approval Order.*

- Publication of the summary notice in *The Wall Street Journal* and over *PR Newswire and Bloomberg News Service*:  *within 14 days of the Notice Date.*

---

and any person who makes a valid and timely request for exclusion from the Settlement Class and does not thereafter rescind such a request.

[3]    The Settlement would release all claims that Lead Plaintiff has alleged against the Starr Defendants.  The Settlement would also release, with certain stated exceptions, any claims against the Starr Defendants that relate in any way to the claims alleged by Lead Plaintiff or to transactions in AIG securities during the Class Period.  On October 2, 2009, this Court so-ordered a stipulation providing for the voluntary dismissal, without prejudice, of the Starr Defendants.  (Docket # 521.)  At the preliminary approval hearing, the Settling Parties expect to stipulate to bringing the Starr Defendants back into the case for the purpose of finalizing the Settlement.

In addition, the proposed judgment contains bar provisions that would preclude claims by non-settling persons seeking contribution or indemnity from the released persons arising out of or relating to the claims or allegations asserted by plaintiffs in the Action.  The proposed judgment also contains a provision that would give the non-settling defendants a judgment credit pursuant to the PSLRA.

•        Deadline for submission of requests for exclusion from the Settlement Class or objections to the Settlement, Plan of Allocation, or motions for fees and expenses: *23 days before the Fairness Hearing.*

•        Deadline for filing motions in support of the Settlement and request for attorneys' fees and expenses: *40 days before the Fairness Hearing.*

•        Fairness Hearing: At the Court's convenience, but no sooner than: *immediately following the Fairness Hearing on the AIG Settlement.*

•        Deadline for submission of Proofs of Claim: *postmarked 100 days after the Notice Date.*

As the Court is aware, this Action arises from, *inter alia*, material misstatements and omissions allegedly made by Defendants in connection with an allegedly illegal market division scheme with Marsh & McLennan Companies ("Marsh") and others in the insurance industry; and an alleged accounting fraud that led to AIG's $3.9 billion restatement and adjustment of earnings in May 2005. Lead Plaintiff alleges that the price of AIG's stock fell at various times during the Class Period when these alleged frauds were disclosed to the market, resulting in significant damages to the Settlement Class.

The Settlement follows nearly five years of litigation that included:

•   Fully-briefed motion practice, on two separate occasions, to determine the lead plaintiff in this case;

•   Motions to dismiss filed by more than 20 defendants, all of which (except one) the Court denied in April and May 2006;

•   Fact and expert discovery related to class certification, followed by a contested motion for class certification;

•   The review and analysis of a total of more than 53.6 million pages produced by all of the parties and non-parties, including nearly 835,000 pages of documents produced by the Starr Defendants; and

- 56 depositions of fact and expert witnesses.[4]

Thus, the strengths and weaknesses of the claims and defenses were well understood by the Settling Parties.  Moreover, the Settlement was the product of numerous informal and formal discussions, face-to-face meetings, and two mediation sessions, one each in the Spring and Summer of 2009 with the Honorable Layn R. Phillips, a former federal district court judge, serving as mediator.  Under these circumstances, Lead Plaintiff respectfully requests that this Court enter the proposed Preliminary Approval Order, preliminarily approving the Settlement, preliminarily certifying the Settlement Class for purposes of the Agreement only, and allowing the dissemination of notice to the Settlement Class.

## II.    BRIEF PROCEDURAL HISTORY

### A.    Overview of Claims

The Consolidated Third Amended Class Action Complaint ("Complaint") asserted claims under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o, and Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a) and 78t-1, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against 22 defendants.  Lead Plaintiff has reached settlements or contingent settlements with AIG, PwC and the Starr Defendants totaling $937.5 million for the Settlement Class.

The claims against the Starr Defendants generally arise from: (1) disclosures on October 14 and 15, 2004 of the Starr Defendants' alleged involvement in a market division scheme that included the payment of improper "steering" contingent commissions to, and alleged illegal

---

[4]    After reaching the proposed Settlement, Lead Plaintiff subsequently took 43 more depositions in the case, including those of Starr Defendants Greenberg, Smith and Castelli.

rigging of bids with, Marsh and others in the insurance industry ("Market Division Fraud"); and (2) disclosures in March and April 2005 of an alleged accounting fraud at AIG that resulted in the Company restating nearly four years of earnings and adjusting earnings for a fifth year, which, *inter alia*, slashed AIG's net income by $3.9 billion and shareholders' equity by $2.7 billion ("Accounting Frauds").  Lead Plaintiff also asserted claims against Defendant Greenberg (and AIG) arising from the alleged manipulation of the market in which AIG common stock trades by purchasing millions of shares of the Company's stock in order to inflate its stock price ("Market Manipulation Fraud").

       **B.**    <u>**Discovery**</u>

Fact discovery in the case, which began in May 2006 after the Court denied all but one of the Defendants' motions to dismiss, is now complete.  Over the span of more than four years, the parties and non-parties produced more than 53.6 million pages of documents—835,000 of which were produced by the Starr Defendants.  Lead Plaintiff reviewed and analyzed all of the documents produced and the parties had conducted 56 depositions of fact and expert witnesses by the time the Settling Parties reached the proposed Settlement.

       **C.**    <u>**Class Discovery and Class Certification**</u>

On February 20, 2008, Lead Plaintiff moved for certification of a litigation class.  The motion was vigorously opposed by Defendants.  Opposition briefs were filed by the Starr Defendants and Defendants AIG, Gen Re, L. Michael Murphy, Merrill Lynch & Co., Inc. and Wachovia Securities, Inc.

In connection with that motion, the parties engaged in additional discovery.  The Ohio State Funds produced more than 267,000 pages of documents.  More than 20 witnesses from the Funds and their external investment advisers were deposed.  Both the Starr Defendants and AIG put forth expert witnesses on the issue of loss causation to counter the expert report submitted by

Lead Plaintiff's loss causation expert, Dr. John D. Finnerty.  All of these experts were also deposed by the parties.

In February 2009, the Court heard extensive oral argument over two days, including argument on issues of adequacy, typicality, and loss causation.  In August 2009, the Court heard two more days of testimony and legal argument relating to class certification, including argument on issues of loss causation, statistical significance and market efficiency.  Then, by order filed February 22, 2010, the Court certified a litigation class in the Action.  (Feb. 22, 2010 Order [Docket Entry #534], at 90 ("Class Certification Order")).

> **D.** **Settlement Negotiations and the Proposed Settlement**

The $115 million Settlement with the Starr Defendants is the result of numerous formal and informal discussions and two full-day mediation sessions during the Spring and Summer of 2009, in which former U.S. District Court Judge Layn Phillips served as mediator.  All of these negotiations were well-informed by the years of litigation and discovery discussed above.

## III.    ARGUMENT

> **A.** **The Proposed Settlement Fully Satisfies the Criteria for Preliminary Approval**

> > **1.** **Factors to Be Considered**

There can be no doubt that this Settlement should be preliminarily approved.  Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis.  Approval of a proposed settlement is within the discretion of the district court.  In exercising such discretion, a court should be mindful of the "strong judicial policy in favor of settlements, particularly in the class action context."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  Once a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval

[by] mak[ing] 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, MDL Nos. 1409, M 21-95, 2006 WL 3253037, at *5 (S.D.N.Y. Nov. 8, 2006) (Pauley, J.) (citation omitted).[5]

Here, the circumstances underlying the proposed Settlement strongly support preliminary approval.

### 2. The Proposed Settlement Is the Result of Well Grounded, Good Faith, Arm's-Length Negotiations Between Experienced Counsel

A proposed class action settlement will enjoy a presumption of fairness where the settlement is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex class litigation. *Wal-Mart*, 396 F.3d at 116.

Here, the proposed Settlement is without question the product of extensive arm's-length negotiations between counsel for the Settling Parties. The Settlement was reached at a point where Lead Plaintiff had a thorough understanding of the strengths and weaknesses of the claims against the Starr Defendants based on its litigation of the claims for five years and the completion of document discovery. In short, there is no evidence indicating that the Settlement is anything other than the product of informed and non-collusive negotiations among experienced counsel. Thus, it deserves preliminary approval.

### 3. The Proposed Settlement Falls Well Within the Range of Reasonableness and Warrants Notice and a Hearing on Final Approval

In considering whether to enter into the Settlement, Lead Plaintiff, represented by counsel highly experienced in securities litigation (*see* Section IV.C, *infra*), weighed the value of this

---

[5] The standards for preliminary approval are set out more fully in Lead Plaintiff's memoranda of law in support of its motions for preliminary approval of its settlements with PwC and AIG. *See* Pls.' Mem. of Law (Oct. 3, 2008) [Docket # 441] ("PwC Settlement Preliminary Approval Motion"), at 5-6; Pls.' Mem. of Law (Nov. 30, 2010) [Docket # 566] ("AIG Settlement Preliminary Approval Motion"), at 8-10.

substantial, immediate recovery with the prospect that significant proceedings remained ahead,

including extensive expert discovery on complex issues of accounting, insurance, loss causation

and damages, the inevitable *Daubert* motions, summary judgment briefing and, of course, trial

preparation and a trial.  Lead Plaintiff also considered the risks inherent in litigating a securities

class action, given that such cases are by their nature legally and factually complex.  *See In re*

*Marsh & McLennan Cos., Inc. Sec. Litig.*, 04 Civ. 8144(CM), 2009 WL 5178546, at *5

(S.D.N.Y. Dec. 23, 2009) (McMahon, J.) ("[I]n evaluating the settlement of a securities class

action, [courts] have long recognized that such litigation is notably difficult and notoriously

uncertain.").

Four of the six Starr Defendants were senior officers of AIG.  From the perspective that

the $115 million settlement with the Starr Defendants is primarily a settlement with these four

persons, it is one of the largest ever paid by individual defendants, who typically do not settle

securities claims for significant amounts.[6]  Likewise, from the perspective that the Settlement is

primarily with defendants SICO and C.V. Starr, against whom Lead Plaintiff asserted only

"control person" claims under Section 20(a) of the Exchange Act and Section 15 of the

Securities Act (largely based upon compensation plans created by those Defendants for the

benefit of AIG executives) the recovery is unprecedented.  In virtually all cases, control person

claims are asserted (and settled) only in conjunction with other Exchange Act or Securities Act

claims (such as claims under Section 10(b) or Section 11, respectively).  Where, as here, control

person claims are asserted independently, they appear to have little settlement value.

---

[6] Indeed, the highest such settlement with a single individual defendant was $45 million (by Bernard Ebbers in the *WorldCom* case, *see* Press Release, SEC, U.S. Reached Settlement Regarding Ebber's Restitution Obligations (June 30, 2005), available at http://www.justice.gov/usao/nys/worldcom/ebberssettlementpr;pdf), and the next highest was $30 million (by Gary Winnick in the *Global Crossing* case, *see In re Global Crossing Sec. & ERISA LItig*. 225 F.R.D. 436, 447 (S.D.N.Y. 2004).

In sum, at the time the Settling Parties reached the proposed Settlement, Lead Plaintiff had a solid understanding of the claims against the Starr Defendants and the litigation risks associated therewith, and is confident that the Settlement is within the range of reasonableness.

**4.      The $115 Million Settlement Has No Obvious Deficiencies**

There are no grounds to doubt that the proposed Settlement is the product of serious, informed, non-collusive negotiations and has no obvious deficiencies, such as preferential treatment to the class representatives or segments of the class.  *See In re Nasdaq Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("The standards for preliminary approval are met in this case. The settlements are the result of serious negotiation; no favoring of class representatives or any segment of the class is evident.").  The Ohio State Funds, like all other Settlement Class Members, will receive their *pro rata* distribution from the net settlement fund in accordance with the proposed Plan of Allocation, which will be reviewed by the Court in connection with the final approval motion.  Lead Counsel will seek compensation for the Ohio State Funds' and the Ohio Attorney General's Office's costs and expenses (pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4)) and reasonable attorneys' fees and reimbursement of Lead Counsel's litigation expenses through future motions submitted to the Court.

In sum, nothing in the course of the settlement negotiations or the terms of the Settlement itself raises any doubt as to its fairness.  Rather, the substantial recovery for the Settlement Class, the arm's-length nature of the negotiations, the participation of a former federal judge as an independent mediator and the participation of sophisticated counsel throughout the litigation and settlement process, compels the finding that the proposed Settlement is sufficiently fair, reasonable and adequate to justify dissemination of the Notice to the Class and the scheduling of a final approval hearing.

## IV.    THE COURT SHOULD PRELIMINARILY CERTIFY
## THE SETTLEMENT CLASS

Because Lead Plaintiff seeks certification of a settlement class in the context of preliminary approval, the Court need only preliminarily certify the Settlement Class now, with a more thorough inquiry into the issues – to the extent raised by those with standing – to be heard at the hearing for final approval.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding that "conditional certification survives the 2003 amendments to Rule 23(c)(1)).[7]

The Settlement Class here is defined in the same way as it was for the PwC Settlement and the AIG Settlement.  The Court previously approved the Settlement Class definition.  (*See* PwC Settlement Approval Order at *1.)  Under these circumstances, and for the additional reasons set forth below, Lead Plaintiff submits that it is appropriate to certify the Settlement Class for purposes of the proposed Settlement.

### A.    This Action Meets the Requirements of Rule 23(a)

#### 1.    Rule 23(a)(1): The Class Is So Numerous that Joinder of All Members Is Impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.  Here, consistent with the Court's findings in certifying both the litigation class (Class Certification Order at 23-24) and the settlement class for the PwC Settlement (PwC Settlement Approval Order at *15), the putative class consists of hundreds of thousands of investors and there can be no dispute that the putative class satisfies numerosity.

---

[7]    The standards applicable to class certification are set forth more fully in the Court's December 2, 2010 Order approving the PwC Settlement.  *See In re American Int'l Group Sec. Litig.*, No. 04 Civ. 9387, 2010 WL 5060697, at *14-15 (S.D.N.Y. Dec. 2, 2010) ("PwC Settlement Approval Order").

### 2.    Rule 23(a)(2): Questions of Law
or Fact Are Common to the Class

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."

Fed. R. Civ. P. 23(a)(2).

Here, the existence and nature of the Starr Defendants' alleged liability will be common

to all Class Members, and the claims of each Class Member arise from the same operative facts

and share the same legal theories.  As the Court found in certifying both the litigation class and

the settlement class for the PwC Settlement, there are many common questions of both law and

fact at issue, including the central questions of whether the alleged misstatements were false and

material, whether the Starr Defendants acted with the requisite state of mind and whether the

alleged fraud caused damages.  (*See* Class Certification Order at 24-25; PwC Settlement

Approval Order at *15 ("Common questions of both law and fact abound in this case.").)

### 3.    Rule 23(a)(3): Plaintiffs' Claims Are
Typical of the Claims of Other Class Members

Rule 23(a)(3), the typicality requirement, is satisfied when the plaintiff shows that "each

class member's claim arises from the same course of events, and each class member makes

similar legal arguments to prove the defendant's liability."

Here, Lead Plaintiff, like all Class Members, purchased AIG's publicly traded securities

at allegedly artificially inflated prices during the Class Period and claims to have suffered

damages because of the Starr Defendants' alleged fraudulent conduct.  Accordingly, the legal

theories and evidence Lead Plaintiff will advance to prove its claims will simultaneously

advance the claims of other Class Members.

Thus, as this Court has ruled previously, Lead Plaintiff's claims are typical of those of the

other members of the Settlement Class.  (Class Certification Order at 25-37; PwC Settlement

Approval Order at *17.)

11

###### 4. Rule 23(a)(4): The Ohio State Funds Will Adequately Protect the Interests of the Class

Rule 23(a)(4), the adequacy of representation requirement, entails two showings: (i) class counsel must be qualified, experienced and generally able to conduct the litigation; and (ii) the representative plaintiff's interests must not be antagonistic to those of the remainder of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Here, Labaton Sucharow LLP and Hahn Loeser & Parks LLP, Court-appointed Lead Counsel for Lead Plaintiff, are amply qualified, experienced and able to conduct this litigation vigorously and effectively, and have zealously and ably represented Lead Plaintiff on behalf of the proposed class for the last six years.  (*See* Dubbs Decl., Exs. 1 & 2; Section IV.C *infra*.)[8]

In addition, there is no conflict or antagonism between the claims of the proposed class representative and those of the other members of the proposed class.  The Ohio State Funds are three large institutional investors with collective assets of more than $100 billion and proven track records of successfully pursuing securities class claims, including: (1) a $475 million settlement in *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation*, 07-cv-9633 (S.D.N.Y. 2009) (Rakoff, J.); (2) a $410 million settlement in *Ohio Public Employees Retirement System et al. v. Freddie Mac*, No. 03 Civ. 4261 (S.D.N.Y.), approved by Judge Sprizzo in October 2006; (3) a $400 million settlement in *In re Marsh & McLennan Co. Inc. Sec. Litig.*, No. 04-cv-08144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) (McMahon, J.); and (4) a $325 million settlement in *In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. 436 (S.D.N.Y. 2004) (Lynch, J.).  They are committed to monitoring Lead Counsel and prosecuting this action vigorously, as indicated by their numerous appearances before this Court.

---

[8]    As a result of the 2003 amendments to the Federal Rules, the issue of appropriate class counsel is guided by Rule 23(g) rather than Rule 23(a)(4).  Accordingly, this issue is addressed in greater detail in Section IV.C below.

Given that no conflicts exist between Lead Plaintiff's interests and those of other Class Members, and their counsel are able and highly experienced lawyers in this area of practice, the adequacy of representation requirement is met.

Thus, as the Court previously ruled in appointing Lead Plaintiff class representative of both the litigation class and the settlement class for the PwC Settlement, and in appointing Lead Counsel Class Counsel for both the litigation class and the settlement class for the PwC Settlement, each are clearly adequate representatives of the proposed Settlement Class. (*See* Class Certification Order at 37-38; PwC Settlement Approval Order at *17-18.)

 **B.**  **This Action Meets the Requirements of Rule 23(b)(3)**

   **1.**  **Questions of Law or Fact Common**
       **to the Class Predominate Over Any**
       **Questions Affecting Only Individual Members**

Rule 23(b)(3) sets forth two requirements, the first being that the questions of law or fact common to the members of the class must "predominate" over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3).

Here, the Starr Defendants' alleged fraudulent conduct affected all Class Members in the same manner (*i.e.*, through AIG documents publicly filed with the SEC) and generalized proof will be necessary with respect to the issues of whether: (1) the Starr Defendants' alleged misstatements were false and material; (2) the Starr Defendants' possessed the requisite scienter; (3) loss causation can be established; and (4) AIG's investors relied on the Starr Defendants' conduct.

Thus, as the Court found in certifying both the litigation class and the settlement class for the PwC Settlement, common questions of law and fact clearly predominate over any

conceivable individual question.  (*See* Class Certification Order at 39-42; PwC Settlement

Approval Order at *18-19.)

### 2.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy

Finally, Rule 23(b)(3) requires that the class action be superior to other available methods

for the fair and efficient adjudication of the controversy.

Here, the utility of presenting the claims asserted through the class action method is

substantial since the Settlement Class Members who have been injured number in the hundreds

of thousands, but very few have been damaged to a degree that would induce them to institute

litigation on their own behalf.  *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999)

(Sweet, J.).

Further, certification of the Settlement Class is the superior method to facilitate the

resolution of Lead Plaintiff's claims.  Without the settlement class device, the Starr Defendants

could not obtain a class-wide release, and therefore would have little, if any, incentive to enter

into the Settlement.  Moreover, certification of a class for settlement purposes will allow the

Settlement to be administered in an organized and efficient manner.  *See In re Telik, Inc. Sec.

Litig.*, No. 07 Civ. 4819, 2008 WL 4198516, at *12 (S.D.N.Y. Sept. 10, 2008) (McMahon, J.).

Resolution of Lead Plaintiff's claims against the Starr Defendants through the proposed

Settlement Class is plainly superior to any other available method of resolution.

Thus, as the Court found in certifying both the litigation class and the settlement class for

the PwC Settlement (PwC Settlement Approval Order at *20), resolution of Lead Plaintiff's

claims against the Starr Defendants through the proposed Settlement is plainly superior to any

other available method of resolution.  (*See* Class Certification Order at 86-87.)

For all of the foregoing reasons, this Court should find that this Settlement Class meets the requirements of both 23(a) and 23(b) and should certify the Settlement Class.

### C.    Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g)

Rule 23(g)(1) of the Federal Rules states that "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).

Lead Plaintiff respectfully requests that the Court appoint Labaton Sucharow LLP and Hahn Loeser & Parks LLP, Court-appointed Lead Counsel for Lead Plaintiff, as class counsel for the Settlement Class, as it did with respect to both the litigation class in this action and the settlement class for the PwC Settlement.  (*See* Class Certification Order at 89; PwC Settlement Approval Order at *20-21.)

## V.    THE COURT SHOULD APPROVE THE FORM OF THE NOTICES AND PLAN FOR PROVIDING NOTICE TO THE CLASS

The Court should also approve the form and content of the proposed Notice and Summary Notice.  (*See* Exs. 1 & 2, annexed to the proposed Preliminary Approval Order.)  Each is written in clear, straightforward language, and the Notice uses a format that clearly sets out the relevant information.  Consistent with Rules 23(c)(2)(B) and 23(e)(B), the Notice objectively apprises Class Members of the nature of the Action, the definition of the class sought to be certified, the class claims and issues, that a Class Member may enter an appearance through counsel if desired, that the Court will exclude from the Settlement Class any Class Member who requests exclusion (and sets forth the procedures and deadline for doing so), the binding effect of a judgment on Class Members under Rule 23(c)(3), how to object to the Settlement, and how to make a claim.

The Notice also satisfies the separate disclosure requirements imposed by the PSLRA.
The Notice states the amount of the Settlement proposed to be distributed to Class Members,
determined in the aggregate and on an average per share basis; provides a statement from the
Settling Parties concerning the issues about which they disagree; states the amount of attorney's
fees and expenses (both on an aggregate and average per share basis) that Lead Counsel will
seek, with a brief explanation supporting such fees and expenses[9]; provides the names, addresses,
and a toll-free telephone number for Lead Counsel, who will be available to answer questions
from Class Members; provides a brief statement explaining the reasons why the Settling Parties
are proposing the Settlement; and includes a cover page summarizing all of this information.  *See*
15 U.S.C. § 78u-4(a)(7); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d
180, 184-85 (S.D.N.Y. 2003) (Scheindlin, J.) (discussing PSLRA notice requirements and
approving notice).

Additionally, both the Notice and Summary Notice disclose the date, time and location of
the Fairness Hearing and the procedures and deadlines for the submission of Proof of Claim
forms or a Release Form,[10] for use by Class Members who already have submitted a Proof of
Claim form in connection with the PwC Settlement, and objections to any aspect of the
Settlement, the Plan of Allocation, or any request for attorney's fees and expenses.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable
under the circumstances, including individual notice to all members who can be identified
through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e) requires the court

---

[9]    At the Preliminary Approval Hearing regarding this proposed Settlement, Lead Counsel will provide
certain information to the Court relating to the Notice, including the name of the claims administrator and the
amount of the fee award and expense reimbursement that Lead Counsel will seek.

[10]    The proposed forms of the Proof of Claim and Release Form are annexed as Exhibits 3 and 4 to the
proposed Preliminary Approval Order.  *See also* Dubbs Decl., Ex. 3-B & 3-F.

to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Here, the proposed notice plan readily meets these standards. Lead Plaintiff, through an experienced settlement and claims administrator, will cause the Notice, including the Plan of Allocation and either the Proof of Claim form or Release Form (as applicable), to be sent by first class mail to every Class Member who can be identified through reasonable effort. This will be accomplished principally by using record holder data that has been produced already by the transfer agent for AIG in the PwC Settlement and by reaching out to broker-dealers for the last-known names and addresses of potential class members and shareholders. The Summary Notice, which summarizes the essential Settlement terms and informs readers how to obtain the full Notice, will be published once in the *Wall Street Journal* and disseminated over PR Newswire and Bloomberg News Service.

This Court approved a substantially similar notice program in connection with the PwC Settlement. (PwC Settlement Approval Order at *8.) Thus, this notice program clearly satisfies the requirements of Rule 23 and due process and should be approved by the Court.

**VI.**    **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court preliminarily

certify the proposed Settlement Class, grant preliminary approval to the proposed contingent

Settlement, approve the forms and methods of notice, and issue the proposed Preliminary

Approval Order submitted herewith.

Dated:  New York, New York
        January 6, 2011

                                                    **RICHARD CORDRAY,**
                                                    **ATTORNEY GENERAL OF OHIO**

                                                    **LABATON SUCHAROW LLP**


                                                    By    /s/ Thomas A. Dubbs
Alan S. Kopit, Esq. (Ohio Bar #0031965)                  Thomas A. Dubbs (TD 9658)
**HAHN LOESER & PARKS LLP**                              Louis Gottlieb (LG 9169)
200 Public Square, Suite 2800                            Nicole M. Zeiss (NZ 3894)
Cleveland, Ohio  44114-2301                              Thomas G. Hoffman (TG 0330)
(216) 621-0150                                      140 Broadway
(216) 274-2478 (Fax)                               New York, New York  10005
                                                   (212) 907-0700
*Special Counsel to the Attorney General of Ohio*  (212) 818-0477 (Fax)
*and the Ohio State Funds and Lead Counsel for*
*the Class*                                        *Lead Counsel for Lead Plaintiff Ohio State Funds*
                                                   *and Lead Counsel for the Class*