```
         121veaigc

 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    IN RE AMERICAN INTERNATIONAL
      GROUP, INC. SECURITIES
 4    LITIGATION,

 5
                                              04 CV 8141(DAB)
 6

 7    ------------------------------x

 8                                            January 31, 2012

 9                                            11:00 a.m.

10    Before:

11                     HON. DEBORAH A. BATTS,

12                                            District Judge

13                           APPEARANCES

14    LABATON SUCHAROW
           Attorneys for Ohio State Funds
15    BY:  THOMAS A. DUBBS
           LOUIS GOTTLIEB
16         NICOLE M. ZEISS

17    MIKE DEWINE
           OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF OHIO
18    BY:  DENNIS P. SMITH JR.
           Assistant Attorney General
19
      HAHN LOESER
20         Attorneys for Ohio State Funds
      BY:  ALAN S. KOPIT
21
      PAUL WEISS RIFKIND WHARTON & GARRISON, LLP
22         Attorneys for Defendants
      BY:  DANIEL J. KRAMER
23         MARK T. CIANI

24    MICHAEL W. LEAHY
           Attorney for AIG
25
      STEVE A. MILLER, Objector
```

121veaigc

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1               THE COURT:  Good morning.  Please be seated.
2               IN the matter of American International Group
3    Securities Litigation.  On behalf of the plaintiffs we have
4    Mr. Thomas Dubbs?
5               MR. DUBBS:  Good morning, your honor.
6               THE COURT:  Good morning.
7               Mr. Louis Gottlieb?
8               MR. GOTTLIEB:  Good morning, your honor.
9               THE COURT:  Ms. Nicole Zeiss?
10              MS. ZEISS:  Good morning, your honor.
11              THE COURT:  Assistant Attorney General Dennis Smith.
12              MR. SMITH:  Good morning, your honor.
13              THE COURT:  Nice to see you.
14              And Mr. Alan Kopit.  Is it Kopit or Kopit?
15              MR. KOPIT:  Kopit.
16              THE COURT:  Good morning to you as well.
17              On behalf of AIG, we have Mr. Daniel Kramer?
18              MR. KRAMER:  Good morning, your honor.
19              THE COURT:  Mr. Mark Ciani?
20              MR. CIANI:  Good morning, your honor.
21              THE COURT:  And AIG counsel Michael Leahy?
22              MR. LEAHY:  Good morning, your honor.
23              THE COURT:  Good morning.
24              And seated at the last table we have Mr. Steve Miller,
25   who is an objector, is that correct?

1        MR. MILLER:  That's right, your Honor.  Good morning.

2        THE COURT:  Good morning.

3        The Court has reviewed the detailed submissions of the
4   parties and is familiar with the facts of this case, as well as
5   the issues.  Quite frankly, the plaintiffs' proposed materials
6   seem to be quite in order, and I'm having this opportunity to
7   hear from Mr. Miller, who is at this point the sole objector to
8   the settlement as proposed.

9        So, Mr. Miller, let me turn the floor over to you.

10       MR. MILLER:  Thank you, your Honor.  Where would you
11  like me to address the Court?

12       THE COURT:  If you do not have a microphone at your
13  table, would you use the lecturn, please.

14       MR. MILLER:  Sure.  Is this fine?

15       THE COURT:  That's good.

16       MR. MILLER:  For the record, let me state that my name
17  is Steve Miller.  I'm the trustee on behalf of the Steve A.
18  Miller, PC, profit sharing plan, the profit sharing plan that's
19  a class member and, as the Court pointed out, the sole objector
20  in this matter apparently at this point.  I'm also an attorney
21  at law, your Honor.

22       I stand by the written objection that I filed or
23  served and filed in December, and I have reviewed and seen
24  submissions since then, including recent supplemental
25  declaration or affidavit.  Because of that, I'll limit my oral

1   remarks today to just two areas, the claims process and the
2   attorneys fees.
3           With respect to the claims process, I am unpersuaded
4   by the submissions I've seen to date.  And maybe there will be
5   more discussion about it today, but the claims made process
6   seems needlessly cumbersome in this case.  It seems to me,
7   based on my review of the record, that AIG has the means and
8   resources to identify class members and to identify their
9   investments in this matter.  And there should not be a
10  requirement -- I think it is needlessly cumbersome to require
11  class members to have to submit supplemental information in
12  their claim to file a claim, such as confirmations for things
13  of that like.
14          In my case, the profit sharing plans case, it was an
15  easy task, I concede to that, because it was a single buy/sell
16  transaction.  But I -- and I only represented the profit
17  sharing plan here, but I suggest to the Court that there may be
18  many class member investors who are unable to assemble the
19  documents because of lapse of time, inability to get documents
20  assembled, to be able to press a legitimate claim.
21          THE COURT:  Have you heard from anyone in that
22  situation?
23          MR. MILLER:  No.  No, I have not.
24          THE COURT:  The fact that, if I'm not mistaken, I
25  don't believe that anyone has made it clear either to

1  plaintiff, the defendant or the administrator that they're

2  having a problem, I'm sort of thinking, are we dealing with a

3  speculative situation in terms of that objection?

4          MR. MILLER:  Well, I'm not prepared to say it's

5  speculative, but I feel like it's a legitimate concern.

6          THE COURT:  It's a legitimate concern if it has

7  affected someone in this case, this is true.  But to the extent

8  that I am not aware of anyone having that issue, I don't know

9  that it is something that I should address, because I don't

10 have the specific facts to deal with it.

11         Mr. Dubbs, Mr. Gottlieb, are you aware of anyone who

12 has had that problem that Mr. Miller has set forth?

13         MR. GOTTLIEB:  Your Honor, we are not aware of anybody

14 who has had that problem.  That's the short answer.

15         THE COURT:  All right.  Okay.  Then I think that on

16 the facts of this case, or maybe I should say on the lack of

17 facts in this case that make that a relevant objection, I'm

18 going to overrule that one.

19         MR. MILLER:  Okay, your Honor.

20         THE COURT:  Will you move on to whatever else you

21 have.

22         MR. MILLER:  The other area that I'd like to address

23 orally is the attorneys fees.  And I stand again by the

24 objection that I asserted, in reciting that I believe in this

25 case a 13.25 percent fee request is excessive, in light of the

1    standards in this circuit, as well as the PSLRA.

2            And as we know, at the end of the day, regardless of
3    how the district court gets to the fee award -- that is,
4    through either a lodestar analysis or percentage of the fund
5    analysis or some cross check or combination thereof -- but at
6    the end of the day, by statute, the fee awarded must be a
7    reasonable percentage.  There is not a stated amount in the
8    statute.

9            I have suggested, your Honor, that based on the
10   research I've done in this circuit, that a 13.25 percent fee
11   application in a mega fund case such as this is high; that a
12   more appropriate award would be in the 4 to, say, 6 percent
13   range.  I suggested 3 to 4 percent, but that's not necessarily
14   hard and fast.  I cited authority for that in the written
15   objection.

16           I also note that there was a response made by class
17   counsel to my objection on that point and pointed out that
18   based on their lodestar submissions, that 13.25 percent is
19   fairly equivalent to the lodestar, and that a reduction of that
20   would be a reduction in lodestar.  But I note that in the
21   record of this case, a year ago in the PriceWaterhouseCoopers
22   settlement, that class counsel's fee lodestar was cut in half,
23   and a 6 percent figure was used.

24           So I'm having a hard time reconciling the argument
25   today about cutting lodestar to make it a fair percentage under

1  the PSLRA when it's already been done in this case in the
2  PriceWaterhouseCoopers settlement.  So I still stand, your
3  Honor, by my objection that the fees are too high and should be
4  cut according to the arguments and standards that I've argued.
5           That's the sum and total of my objection.  I
6  appreciate the Court's indulgence and the privilege to speak.
7           THE COURT:  Thank you, Mr. Miller.
8           Mr. Dubbs?
9           MR. DUBBS:  Your Honor, with the Court's permission,
10 Mr. Gottlieb will respond.
11          THE COURT:  Yes.
12          MR. GOTTLIEB:  I'll be brief, your Honor.
13          I think that we have submitted the declarations of
14 Professor John Coffey, who did a careful analysis of cases of
15 similar size as this case, has considered the results achieved
16 and has determined and stated that he believes that
17 13.25 percent and lodestar is fair.
18          We also rely upon the declaration of Dennis Smith from
19 the Ohio Attorney General's office.  The Ohio Attorney General
20 has reviewed our submission and also believes that it is
21 appropriate to submit that 13-and-a-quarter percent request,
22 which is just slightly less than lodestar, to the Court.
23          And with respect to PWC application, that was simply a
24 different case, different time in the case.  Recovery was
25 different.  The amount of lodestar that was worked on to that

121veaigc

1   point in time was different and not comparable.
2           If the Court has any other questions, I'd be happy to
3   address it.
4           THE COURT:  I don't, Mr. Gottlieb.  Thank you.
5           MR. GOTTLIEB:  Thank you very much, your Honor.
6           THE COURT:  The only issue that the Court wishes to
7   raise at this point is the question of any remainder of funds
8   once all the payouts have been made.  I agree that returning
9   any money to AIG does not make sense, and so that possibility I
10  am denying.  But, again, the suggestion that it be contributed
11  to an appropriate organization selected by the mediator is
12  perfectly appropriate and I will agree with that.
13          In order not to belabor this further, let me just say
14  that aside from that, I am going to approve the settlement and
15  I'm going to approve the attorneys fees, and that a written and
16  detailed opinion will follow shortly.
17          Is there anything else that we need to address in this
18  case at this time?
19          MR. DUBBS:  I believe not, your Honor.  And under the
20  operative documents, if given this approval, we understand that
21  AIG will fund the settlement or the remaining part of the
22  settlement shortly.
23          And I have nothing further.  Thank you, your Honor.
24          THE COURT:  All right.  Anything else from anyone?
25          MR. KRAMER:  No, your Honor.  Thank you.

121veaigc

1       THE COURT:  All right.  This matter is adjourned.
2       (Adjourned)