USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/3/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE AMERICAN INTERNATIONAL
GROUP, INC. SECURITIES LITIGATION

ECF CASE

Master File No. 04 Civ. 8141 (DAB)(AJP)

/DAB/
2/3/12

~~[PROPOSED]~~ PRELIMINARY APPROVAL ORDER

WHEREAS:

A.      A consolidated class action is pending in this Court entitled In re
American International Group, Inc. Securities Litigation, No. 04 Civ. 8141 (DAB) (AJP)
(S.D.N.Y.) (the "Action");

B.      The Ohio Public Employees Retirement System, State Teachers
Retirement System of Ohio and Ohio Police & Fire Pension Fund (collectively, "Lead Plaintiff")
on behalf of the Settlement Class, and Maurice R. Greenberg, Howard I. Smith, Christian M.
Milton, Michael J. Castelli, C.V. Starr & Co., Inc., and Starr International Company, Inc.
(collectively, the "Starr Defendants") (Lead Plaintiff and the Starr Defendants collectively, the
"Settling Parties"), by and through their respective counsel, have entered into a settlement of the
claims asserted against the Starr Defendants in the Action, on the terms and conditions that are
set forth in the Contingent Agreement of Compromise and Settlement (the "Agreement" or
"Settlement"), dated August 10, 2009;

C.      Lead Plaintiff and the Starr Defendants have moved, pursuant to Rule
23(e) of the Federal Rules of Civil Procedure, for an Order preliminarily approving the

Agreement; certification by the Court of a Settlement Class solely for the purposes of settlement;

and providing for notice to potential members of the Settlement Class; and

D.     The Court has read and considered the Agreement and exhibits thereto,

including the proposed Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses

Award and Fairness Hearing ("Notice"), the proposed Summary Notice, the proposed Proof of

Claim form, the proposed Release Form, and the proposed Order and Final Judgment as to Starr

Defendants, and found that substantial and sufficient grounds exist for entering this Order;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     The Court, for purposes of this Order, adopts all defined terms as set forth

in the Agreement.  Any inconsistencies between the Agreement and the Notice will be controlled

by the language of the Agreement.

2.     The Court hereby certifies the following class for the purposes of

settlement only (the "Settlement Class"), pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal

Rules of Civil Procedure:  all persons and entities who purchased or otherwise acquired AIG

Securities during the period of time from October 28, 1999 through April 1, 2005, inclusive (the

"Class Period"), as well as all persons and entities who held the common stock of HSB Group,

Inc. ("HSB") at the time HSB was acquired by American International Group, Inc. ("AIG") in a

stock for stock transaction, and all persons and entities who held the common stock of American

General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock

transaction, and were damaged thereby.  Excluded from the Settlement Class are (i) the

Defendants, as named in the Consolidated Third Amended Class Action Complaint (the

"Complaint") in this Action; (ii) members of the immediate families of the Individual

Defendants, as named in the Complaint; (iii) any parent, subsidiary, affiliate, officer, or director

of AIG; (iv) any entity in which any excluded person has a controlling interest; (v) the legal representatives, heirs, successors and assigns of any excluded person; and (vi) Persons who timely and validly made requests for exclusion from the Settlement Class and did not thereafter rescind such requests.

3.     Solely for purposes of the proposed Settlement of this Action as against the Starr Released Persons (and without any adjudication on the merits), the Court preliminarily finds that the prerequisites to class action certification under Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure have been satisfied for the Settlement Class defined herein, in that:

(a)     the members of the Settlement Class are so numerous that joinder of all Class Members is impracticable;

(b)     there are questions of law and fact common to the Class Members;

(c)     Lead Plaintiff's claims are typical of the Settlement Class's claims;

(d)     Lead Plaintiff and its counsel have fairly and adequately represented and protected the interests of the Settlement Class;

(e)     the questions of law and fact common to the Class Members predominate over any individual questions; and

(f)     a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering that the claims of Class Members in the Action are substantially similar and would, if tried, involve substantially identical proofs and may therefore be efficiently litigated and resolved on an aggregate basis as a class action; the amounts of the claims of many of the Class Members are too small to

justify the expense of individual actions; and it does not appear that there is any intent among Class Members in individually controlling the litigation of their claims.

4.      The Court hereby finds, preliminarily and solely for purposes of the Agreement and effectuating the proposed Agreement, that Lead Plaintiff is an adequate representative of the Settlement Class and certifies it as class representative for the Settlement Class.  The Court certifies Lead Counsel Labaton Sucharow LLP and Hahn Loeser & Parks LLP as Class Counsel.

5.      The Court preliminarily approves the Agreement as being fair, reasonable and adequate, and in the best interests of the Settlement Class, subject to further consideration at a hearing to be held before this Court on June 28, 2012 at 4:00 p.m. (the "Fairness Hearing") to determine whether the proposed Settlement of the Action on the terms and conditions provided for in the Agreement is fair, reasonable and adequate and should be approved by the Court; whether an Order and Final Judgment substantially in the form attached to the Agreement as Exhibit D should be entered dismissing the Action with prejudice against the Starr Released Persons; whether the Settlement Class should be finally certified; whether the proposed plan of allocation is reasonable and should be approved; whether Lead Counsel's application for an Attorneys' Fees and Expenses Award should be granted; and whether Lead Plaintiff's application for reimbursement of costs and expenses incurred by it and/or the Office of the Attorney General of Ohio as a result of Lead Plaintiff's representation of the Settlement Class should be approved.

6.      The Court approves the form of the Notice and approves for publication the form of the Summary Notice, attached hereto as Exhibits 1 and 2, and finds that the mailing and distribution of the Notice and publishing of the Summary Notice meet the requirements of

Rule 23 and due process, and: (i) is the best notice practicable under the circumstances; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, of the effect of the proposed Settlement (including the releases contained therein) and of their rights to object to the proposed Settlement, exclude themselves from the Settlement Class and appear at the Fairness Hearing; (iii) shall constitute due and sufficient notice to all persons entitled to notice; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, and all other applicable laws and rules.  The Court also approves, as to the form and content, the Proof of Claim form and the Release Form, attached hereto as Exhibits 3 and 4.

7.      The Court approves the appointment of Rust Consulting, Inc. as the Administrator.

8.      If necessary, despite Lead Counsel making best efforts to use the transfer record information previously provided by AIG in connection with the previously announced settlement with defendant PricewaterhouseCoopers LLP (the "PwC Settlement"), AIG shall provide to Lead Counsel, at no cost, information obtainable by reasonable efforts identifying, by name and address, the persons and entities who were holders of AIG Securities during the Class Period, including banks, brokerage firms, institutions and other nominees and record owners, in searchable electronic form.

9.      Lead Counsel shall cause the Notice, the Proof of Claim and the Release Form (as applicable), substantially in the forms annexed hereto as Exhibits 1, 3 and 4, to be mailed, by first-class mail, postage prepaid, on or before fourteen (14) business days after the date of entry of this Order ("Notice Date"), to all Class Members at the address of each such

person as set forth in the records of AIG or its transfer agent, or who otherwise can be identified through reasonable effort.  Lead Counsel shall, at or before the Fairness Hearing, file with the Court proof of dissemination of the Notices, Proof of Claim form and the Release Form.

10.    Lead Counsel shall cause the Summary Notice, substantially in the form annexed hereto as Exhibit 2, to be published in *The Wall Street Journal* and on PR Newswire and Bloomberg News Service, once each on separate days, within fourteen (14) calendar days of the Notice Date.  Lead Counsel shall, at or before the Fairness Hearing, file with the Court proof of publication of the Summary Notice.

11.    Lead Counsel and the Administrator shall cause the Notice to be published on their respective websites.

12.    Lead Counsel, or its agents, shall be responsible for the receipt of all Proofs of Claim, Release Forms, objections and requests for exclusion and, until further order of the Court, shall preserve all Proofs of Claim, Release Forms, objections and requests for exclusion from putative Class Members, nominees or any other person in response to the Notice.

13.    Lead Counsel shall use reasonable efforts to give notice to nominee owners such as brokerage firms and other persons or entities who purchased AIG Securities during the Class Period as record owners but not as beneficial owners.  Such nominees who hold or held AIG Securities for beneficial owners who are members of the Settlement Class are directed (a) to provide the Administrator with lists of the names and last known addresses of the beneficial owners for whom they purchased AIG Securities during the Class Period within seven (7) calendar days of receipt of the Notice, or (b) to send the Notice and Proof of Claim to the beneficial owners.  If the nominee owner elects to send the Notice and Proof of Claim to the beneficial owners, the nominee owner is directed (i) to request additional copies of the Notice

and Proof of Claim within seven (7) calendar days of receipt of the Notice, and (ii) to mail the Notice and Proof of Claim within seven (7) calendar days of receipt of the copies of the Notice from the Administrator, and upon such mailing the nominee owner shall send a statement to the Administrator confirming that the mailing was made as directed.   Upon full compliance with this Order, such nominees may seek reimbursement of their reasonable expenses actually incurred in complying with this Order by providing the Administrator with proper documentation supporting the expenses for which reimbursement is sought.  Such properly documented reasonable expenses incurred by nominees in compliance with the terms of this Order shall be paid from the Cash Settlement Account.

14.     The reasonable costs of notification to Class Members of the Agreement, including printing, mailing and publication of all required notices, shall be paid out of the Cash Settlement Account.  In accordance with Paragraph I.B.4 of the Agreement, Lead Counsel may draw up to $2,500,000 from the Cash Settlement Account to pay the reasonable costs of notice and settlement administration without further Order of the Court.

15.     Lead Counsel and its agents are authorized and directed to undertake the actions contemplated by paragraph I.B. of the Agreement, including the payment or reimbursement of any Tax Expenses out of the Cash Settlement Account and the preparation of tax returns, without further Order of the Court.

16.     All putative members of the Settlement Class who do not request exclusion from the Settlement Class at least thirty-four (34) calendar days prior to the Fairness Hearing, and in the form and manner set forth in the Notice: (a) shall be deemed to have waived their rights to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) will be bound by the

Agreement, and by any proceeding, judgment, order or determination of the Court affecting the

Settlement Class; and (d) will be barred from commencing, maintaining or prosecuting any of

the Starr Released Claims against each and all of the Starr Released Persons, as more fully

described in the Notice. Any request for exclusion that does not comply with the prerequisites

for exclusion will be invalid.

17.     Putative Class Members who are excluded from the Settlement Class shall

not be entitled to receive any payment out of the Cash Settlement Account as described in the

Agreement and Notice.

18.     Any Class Member who wishes to participate in the distribution(s) from

the Cash Settlement Account must complete and submit either a Proof of Claim or Release Form

depending upon whether the Class Member previously submitted a Proof of Claim in connection

with the PwC Settlement and/or in connection with the settlement with defendant AIG, in

accordance with the instructions contained therein. Unless otherwise ordered by the Court, all

Proofs of Claim and Release Forms (as applicable) must be completed and submitted no later

than one hundred (100) calendar days from the Notice Date. Unless otherwise ordered by the

Court, any Class Member who does not complete and submit a valid Proof of Claim or Release

Form (as applicable) within the time provided: (a) shall be deemed to have waived his, her or its

right to a distribution from the Distribution Amount; (b) shall forever be barred from

participating in any distributions therefrom; (c) shall be bound by the Agreement, and by any

proceeding, judgment, order or determination of the Court affecting the Settlement Class; and (d)

will be barred from commencing, maintaining or prosecuting any of the Starr Released Claims

against each and all of the Starr Released Persons, as more fully described in the Notice.

-8-

19.     Lead Counsel shall submit papers in support of final approval of the Agreement and its application for an Attorneys' Fees and Expenses Award by no later than sixty (60) calendar days prior to the Fairness Hearing.  Any reply papers, if necessary, shall be submitted no later than fifteen (15) calendar days prior to the Fairness Hearing.

20.     Any putative member of the Settlement Class who has not requested exclusion from the Settlement Class may appear at the Fairness Hearing to show cause why the proposed Agreement should not be approved as fair, reasonable and adequate and why a judgment should not be entered thereon; *provided, however,* that no putative member of the Settlement Class shall be heard or entitled to contest the approval of the terms and conditions of the Agreement and the Final Judgment to be entered approving the same unless no later than thirty-four  (34) calendar days prior to the Fairness Hearing, such putative Class Member has served by hand, mail or by overnight delivery written objections and copies of any supporting papers and briefs (which must contain documentation of all transactions in AIG Securities during the Class Period and price(s) paid) upon each of the following:

Thomas A. Dubbs, Esq.
Louis Gottlieb, Esq.
Labaton Sucharow LLP
140 Broadway
New York, NY 10005

*Lead Counsel for Lead Plaintiff and the Settlement Class*

Vincent A. Sama, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598

*Counsel for Howard I Smith*

David Boies, Esq.
Robert J. Dwyer, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022

*Counsel for Maurice R. Greenberg,
C.V. Starr, & Co., Inc. and Starr
International Company, Inc.*

Frederick P Hafetz, Esq.
Noah E. Shelanski, Esq.
Hafetz Necheles & Rocco
500 5th Ave, 29th Floor
New York, NY 10110

*Counsel for Christian M. Milton*

Charles I. Poret, Esq.
Benjamin E. Rosenberg, Esq.
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797

*Counsel for Michael J. Castelli*

and has filed said objections, papers and briefs, showing due proof of service upon Lead Counsel

and the Starr Defendants' counsel, with the Clerk of the United States District Court for the

Southern District of New York, 500 Pearl Street, New York, NY 10007-1312.  Persons who

intend to object to the Agreement and desire to present evidence at the Fairness Hearing must

include in their written objections the identity of any witnesses they may seek to call to testify

and exhibits they may seek to introduce into evidence at the Fairness Hearing.  Objections not

received thirty-four (34) calendar days prior to the Fairness Hearing will not be considered by

the Court.  No one will be heard at the Fairness Hearing who has not sought and been granted by

the Court permission to speak ten (10) calendar days prior to the Fairness Hearing.  Any party

has the right to object to any testimony or other evidence which a person objecting to the

Agreement seeks to introduce.

   21. No member of the Settlement Class or other person shall be entitled to

object to the Agreement, or the Final Judgment to be entered herein, or otherwise be heard,

except by serving and filing written objections as described above.  Any person who does not

object in the manner prescribed above shall be deemed to have waived such objection in this or

any other action or proceeding and shall be bound by all the terms and provisions of the

Agreement and by all proceedings, orders and judgment in the Action.

   22. The Court expressly reserves the right to do the following without further

notice to members of the Settlement Class: (i) adjourn the Fairness Hearing, or any adjournment

-10-

thereof; (ii) approve the Agreement with modification(s) approved by the Settling Parties; and (iii) modify the Plan of Allocation.

23.     Neither the Starr Defendants nor their counsel shall have any responsibility for any Plan of Allocation of the Cash Settlement Account or any application for an Attorneys' Fees and Expenses Award submitted by Lead Counsel, and such matters will be considered separately from the fairness, reasonableness and adequacy of the Agreement.  Lead Counsel shall be responsible for the apportionment of fees and expenses amongst Lead Counsel.

24.     Pending final determination of whether the Agreement should be approved, the Lead Plaintiff, all putative Class Members, and each of them, and anyone who acts or purports to act on their behalf, shall not institute, commence or prosecute any action which asserts the Starr Released Claims against the Starr Released Persons.

25.     The administration of the proposed Settlement and the determination of all disputed questions of law and fact with respect to the validity of any claim or right of any person to participate in the distribution of the Cash Settlement Account shall be under the authority of this Court.

26.     The Court retains jurisdiction over the Action to consider all further matters arising out of or connected with the Settlement.

Dated: New York, New York

February _____ 3 ___, 2012

_Deborah A. Batts_
The Honorable Deborah A. Batts
United States District Court for the Southern
District of New York

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————— x
                                  :

IN RE AMERICAN INTERNATIONAL      :    Master File No. 04 Civ. 8141 (DAB) (AJP)
GROUP, INC. SECURITIES LITIGATION  :

                                    :    **NOTICE OF PROPOSED**
                                    :    **SETTLEMENT, MOTION FOR**
                                    :    **ATTORNEYS' FEES AND EXPENSES**
                                    :    <u>**AWARD AND FAIRNESS HEARING**</u>

———————————————— x

**If You Purchased or Otherwise Acquired Securities Issued by
American International Group, Inc. ("AIG") During the Period from October 28, 1999
Through April 1, 2005, Inclusive, (the "Class Period") and Were Damaged Thereby,
You May Be Entitled to Share in a $115 Million Settlement with
Maurice R. Greenberg, Howard I. Smith, Christian M. Milton, Michael J. Castelli,
C.V. Starr & Co., Inc., and Starr International Company, Inc.
<u>(collectively, "the Starr Defendants")</u>**

**PLEASE READ THIS NOTICE CAREFULLY.
A Federal Court Authorized This Notice. This Is Not A Solicitation.
Your Legal Rights Are Affected Whether You Do Or Do Not Act.**

1.    **Statement of Plaintiff Recovery**:    This Notice advises you of a proposed partial settlement (the "Settlement") consisting of $115 million in cash, plus interest as it accrues (the "Settlement Amount") in a consolidated class action lawsuit (the "Action") brought by the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio and Ohio Police & Fire Pension Fund (collectively, "Lead Plaintiff" or "the Ohio State Funds"), on behalf of the Settlement Class against Maurice R. Greenberg, Howard I. Smith, Christian M. Milton, Michael J. Castelli, C.V. Starr & Co., Inc., and Starr International Company, Inc. (collectively, "the Starr Defendants"), among others. If approved by the Court, this Settlement would finally resolve the Claims brought on behalf of the Settlement Class against the Starr Defendants.

The Settlement is separate from a related previously-announced settlement in the Action between Lead Plaintiff and AIG (the "Company Settlement"), which was approved by the Court on _____, 2012. The Settlement is also separate from a related previously-announced settlement with defendant PricewaterhouseCoopers LLP, (the "PwC Settlement"), which was approved by the Court on December 2, 2010. In addition, Lead Plaintiff reached another separate settlement with defendant General Reinsurance Corporation ("Gen Re") on February 24, 2009 ("Gen Re Settlement"), however on September 10, 2010, the Court declined to preliminarily approve the Gen Re Settlement and dismissed all claims in the Action against Gen Re. On October 21, 2010, Lead Plaintiff filed a notice of appeal from the dismissal. On January 9, 2012, the United States Court of Appeals for the Second Circuit heard oral argument on the appeal.

**Questions? Call Toll-Free (800) _____**

1

The Action alleges, among other things, that during the Class Period, the Starr Defendants made materially false and misleading statements and omissions in connection with the involvement of AIG in an allegedly illegal market division scheme with Marsh & McLennan Companies ("Marsh") and others, as well as an alleged accounting fraud that led to AIG's $3.9 billion restatement or adjustment of earnings in May 2005. The Action also alleges certain market manipulation claims. The Consolidated Third Amended Complaint ("Complaint") alleges violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

The Settlement will resolve all claims against the Starr Defendants and will create a settlement fund to pay the claims of investors who purchased or otherwise acquired AIG's publicly-traded common stock, debt and options during the Class Period. (*See* below at pages [    ] for more information about eligible "AIG Securities.") The Distribution Amount (the Settlement Amount less any Notice and Administrative Expenses, attorneys' fees and litigation expenses awarded to Lead Plaintiff's counsel, expenses awarded to Lead Plaintiff and Tax Expenses) will be distributed in accordance with a proposed plan of allocation (the "Plan of Allocation"), which is described herein. Based on Lead Plaintiff's damages consultant's estimate of the number of shares of common stock entitled to participate in the Settlement, given the allocation of 5% of the recovery to debt purchasers and assuming that all shares entitled to participate do so, Lead Plaintiff estimates that the average recovery per damaged share would be approximately $0.07 per share, before deduction of any court-awarded fees and expenses.[1] An individual Settlement Class Member's actual recovery will depend on many factors, for example: (1) the total number of claims submitted; (2) when the Settlement Class Member purchased AIG Securities during the Class Period; (3) the purchase price paid; (4) the type of security bought; and (5) whether those AIG Securities were held at the end of the Class Period or sold during the Class Period (and, if sold, when they were sold and the amount received). *See* the Plan of Allocation beginning on page _____ for more information on your potential Recognized Loss.

**Reasons for Settlement**: The Settlement resolves claims against the Starr Defendants for allegedly violating the federal securities laws by allegedly failing to disclose the truth about certain of AIG's business practices and financial results and for damages allegedly caused by these practices and by market manipulation of AIG's securities. However, the Settlement is not and should not be construed as an admission of any fault, liability or wrongdoing whatsoever by the Starr Defendants. In light of the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff believes that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class. Lead Plaintiff believes that the Settlement provides a substantial benefit in the form of $115 million, less the various deductions described in this Notice, as compared to the risks and delays of proceeding with the Action against the Starr Defendants. These risks include the fact that there is no assurance that Lead Plaintiff would recover as much as was achieved in this Settlement at a later stage in the litigation. Moreover, even if the case were to proceed and a later recovery obtained, it would take several more years of expert discovery, motion practice, trial and further appeals to obtain

---

[1] An allegedly damaged share might have been traded more than once during the Class Period, and the indicated average recovery per share would be the total for all purchasers of that share.

**Questions? Call Toll-Free (800) _____**

such a recovery, during which time the Starr Defendants would have the opportunity to assert substantial defenses to the claims asserted against them.  The risks also include that the Starr Defendants could prevail in all or part of the Action, in which case Lead Plaintiff may obtain less or no recovery at all from the Starr Defendants.

**Statement of Potential Outcome if the Case Against the Starr Defendants Continued**: Lead Plaintiff and the Starr Defendants (collectively, the "Settling Parties") do not agree on the average amount of damages per share that would be recoverable even if Lead Plaintiff was to prevail on the claims asserted against the Starr Defendants.  The Starr Defendants deny all liability.  In addition, the Settling Parties disagree on, among other things: (i) whether certain statements made or controlled by the Starr Defendants were false; (ii) whether the Starr Defendants knew, or were severely reckless in not knowing, that certain of their and AIG's statements and omissions about AIG's business and financial results were false or misleading; (iii) whether the alleged misstatements and omissions were material to investors; (iv) whether the alleged market manipulation of AIG's securities was improper; (v) the amount of inflation, if any, caused by the alleged misrepresentations and omissions; (vi) the amount of damages, if any, caused by the alleged market manipulation of AIG's securities; (vii) the appropriate economic models for determining the amounts by which AIG's securities were allegedly artificially inflated (if at all) during the Class Period, (viii) the effect of various market forces influencing the trading prices of AIG's securities during the Class Period, and (ix) whether a class should have been certified for purposes other than the Settlement.

**Statement of Attorneys' Fees and Expenses Sought**: Lead Plaintiff's counsel, Labaton Sucharow LLP and Hahn Loeser & Parks LLP (collectively, "Lead Counsel"), intend to apply for an award of attorneys' fees on behalf of all plaintiffs' counsel of 13.25% of the Cash Settlement Account and to seek reimbursement of litigation expenses paid and incurred in connection with the prosecution and resolution of the claims against the Starr Defendants (the "Litigation Expenses"), in an amount not to exceed $1 million.  In addition, Lead Plaintiff will, by separate application, ask the Court to reimburse it from the Settlement Amount for costs and expenses it incurred directly related to its representation of the Settlement Class, in an amount not to exceed $50,000.  If the Court approves Lead Plaintiff's counsel's fee and expense application and Lead Plaintiff's application for reimbursement, the average cost per share will be approximately $0.01 per share.

**Further Information**: Further information regarding the Settlement and this Notice may be obtained by contacting the Administrator: *In re AIG Securities Litigation – Starr Defendants Settlement*, c/o Rust Consulting, Inc., P.O. Box ____, _____, (800) __-____, www._____; or Counsel: Labaton Sucharow LLP, 140 Broadway, NY, NY 10005, (866) 779-0843, www.labaton.com.  **Please Do Not Call the Court With Questions About the Settlement.**

**Questions? Call Toll-Free (800) _____**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY** _____ | The way to get a payment. However, if you already submitted a claim form in the PwC and/or Company Settlements, you do not have to do so again. Instead, you must complete a Release Form. |
| **EXCLUDE YOURSELF BY MAY 25, 2012** | Get no payment and remove yourself from the Settlement Class. This is the only option that allows you to ever bring or be part of any *other* lawsuit against the Starr Defendants and the other "Starr Released Persons" about the "Starr Released Claims." |
| **OBJECT BY MAY 25, 2012** | Write to the Court about why you do not like the Settlement. You will still be a member of the Settlement Class. |
| **GO TO A HEARING ON JUNE 28, 2012** | Ask to speak in Court about the Settlement at the Fairness Hearing. |
| **DO NOTHING** | Get no payment.  Give up rights. |

**Questions? Call Toll-Free (800) _____**

## TABLE OF CONTENTS

Why did I get this notice?..............................................................................................................x

How do I know if I am part of this Settlement?.........................................................................x

What recovery does the Settlement provide?............................................................................x

Why is there a Settlement?  What are Lead Plaintiff's reasons for the Settlement ........................x

What might happen if there were no Settlement? ......................................................................x

Do I have a lawyer in the case? How will the lawyers be paid?....................................................x

What rights am I giving up by agreeing to the Settlement?..........................................................x

What is this case about?.............................................................................................................x

What has happened in this case so far?.......................................................................................x

How much will my payment be? ...............................................................................................x

How do I participate in the settlement? What do I need to do?......................................................x

What if I already submitted a claim form in the PwC and/or Company
Settlements?.............................................................................................................................x

What if I do not want to participate in the Settlement? How do I exclude myself?.......................x

What if I want to object to the Settlement? When and where will the Court decide
whether to approve the Settlement? May I speak at the Hearing if I do not like the
Settlement?..............................................................................................................................x

Special Notice to Securities Brokers and other Nominees ...........................................................x

Can I see the Court file? Whom should I contact if I have questions?...........................................x

**Questions? Call Toll-Free (800) _____**

| **Why did I get this notice?** |
| --- |

You or someone in your family may have purchased or acquired publicly-traded securities issued by AIG during the period from October 28, 1999 through April 1, 2005, inclusive. The Court sent you this Notice because, as a potential Settlement Class Member, you have a right to know about the proposed Settlement of the claims asserted in this Class Action against the Starr Defendants and your options before the Court determines whether to approve the Settlement. If the Court approves the Settlement, after all objections and appeals are resolved, a claims administrator (the "Administrator") will make payments pursuant to the terms of the Settlement.

The Court in charge of this case is the United States District Court for the Southern District of New York and the case is known as *In re American International Group, Inc. Securities Litigation*, Master File No. 04-8141 (DAB). Lead Plaintiff filed this lawsuit on behalf of itself and as representative of the Settlement Class.

This Notice explains the lawsuit, the Settlement with the Starr Defendants, your legal rights, what benefits are available, who is eligible for them, and how you may receive your portion of the benefits. The purpose of this Notice is to inform you of the terms of the proposed Settlement and of a hearing to be held by the Court to consider the Settlement (the "Fairness Hearing").

The Fairness Hearing will be held at 4:00 p.m. on June 28, 2012 before the Honorable Deborah A. Batts, in the United States District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007, to determine:

      (a)    Whether the proposed Settlement is fair, reasonable and adequate and should be approved by the Court;

      (b)    Whether the claims against the Starr Defendants should be dismissed with prejudice as set forth in the Contingent Agreement of Compromise and Settlement, dated August 10, 2009 (the "Stipulation");[2]

      (c)    Whether the proposed Settlement Class should be certified and Lead Plaintiff be appointed as Class Representative and Lead Plaintiff's counsel be appointed Class Counsel;

      (d)    Whether the proposed Plan of Allocation for distributing the Settlement to Settlement Class Members is fair and reasonable and should be approved;

      (e)    Whether the application by Lead Plaintiff's counsel for an award of attorneys' fees and reimbursement of litigation expenses should be approved; and

---

[2] The proposed Settlement was originally contingent upon, among other things, court-approval of the Company Settlement. Because the Court has now approved the Company Settlement, all of the contingencies have been satisfied and the proposed Settlement is no longer contingent.

**Questions? Call Toll-Free (800) _____**

       (f)     Whether the application by Lead Plaintiff for reimbursement of its costs and expenses should be approved.

The issuance of this Notice is not an expression of the Court's opinion on the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement, payment will be made after all appeals, if any, are resolved and after the completion of all claims processing. Please be patient.

---

**How do I know if I am part of this Settlement?**

---

You are part of this Settlement if you are within the definition of the Settlement Class and you do not take steps to exclude yourself. The Settlement Class covered by this settlement consists of: all persons and entities who purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive, including all persons and entities who held the common stock of HSB Group, Inc. ("HSB") at the time HSB was acquired by AIG in a stock for stock transaction, and all persons and entities who held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock transaction, and who were damaged thereby, excluding persons who make timely and valid requests for exclusion from the class. (*See* the Plan of Allocation for more information about eligible securities.)

"AIG Securities" means any and all publicly-traded securities issued by American International Group, Inc., whether debt or equity securities. Options on AIG common stock are also eligible for a recovery in the Settlement.

Excluded from the Settlement Class are the defendants in the Action, members of the immediate families of the individual defendants, any parent, subsidiary, affiliate, officer, or director of defendant AIG, any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person. Also excluded from the Settlement Class are any persons who exclude themselves by timely filing a request for exclusion in accordance with the requirements set forth below. (*See* "What if I do not want to participate in the Settlement? How do I exclude myself?")

**RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A MEMBER OF THE SETTLEMENT CLASS OR ARE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.**

**TO RECEIVE PROCEEDS FROM THE SETTLEMENT, YOU MUST SUBMIT A PROOF OF CLAIM OR RELEASE FORM BY _____ __, 2012**

---

**What recovery does the Settlement provide?**

---

In exchange for the Settlement and dismissal of the Released Claims, the Starr Defendants have paid $115 million in cash into an escrow account that will earn interest for the benefit of the Settlement Class.

**Questions? Call Toll-Free (800) _____**

The Settlement Amount will be divided, after deduction of Court-awarded attorneys' fees and expenses, Lead Plaintiff's expenses, Notice and Administrative Expenses, any applicable taxes, and any other expenses and awards the Court may order ("Distribution Amount"), among all Settlement Class Members who timely submit valid Proof of Claim forms that show a Recognized Loss. Your share of the Distribution Amount will depend on several things, including: (1) the amount of Recognized Losses of other Settlement Class Members who file valid Proofs of Claim; (2) how many AIG Securities you bought; (3) how much you paid for them; (4) the type of security bought; (5) when you bought them; and (6) whether or when you sold them (and, if so, for how much you sold them).

Your Recognized Loss will be calculated according to the formula shown below in the Plan of Allocation. It is unlikely that you will get a payment for your entire Recognized Loss, given the number of potential Settlement Class Members with Recognized Losses. After all Settlement Class Members have sent in their Proof of Claim forms, the payment you get will be a portion of the Distribution Amount equal to your Recognized Loss divided by the total of all Settlement Class Members' Recognized Losses and multiplied by the total Distribution Amount. (*See* the Plan of Allocation beginning on page ___ for more information.)

Once all the Proofs of Claim are processed and claims are calculated, Lead Plaintiff's counsel, without further notice to the Settlement Class, will apply to the Court for an order distributing the Distribution Amount to the members of the Settlement Class. Counsel will also ask the Court to approve payment of the Administrator's fees and expenses incurred in connection with administering the Settlement that have not already been reimbursed.

## Why is there a Settlement?  What are Lead Plaintiff's reasons for the Settlement?

Under the proposed Settlement, the Court will not decide the merits of the claims in the Action in favor of either the Lead Plaintiff or the Starr Defendants. By agreeing to a Settlement, both the Lead Plaintiff and the Starr Defendants avoid the costs and risks of litigating the claims against the Starr Defendants. By accepting the Settlement, Settlement Class Members will be compensated immediately for the claims against Starr Defendants. In light of the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff believes that the proposed Settlement is fair, reasonable and adequate and in the best interest of Settlement Class Members.

Lead Plaintiff and Lead Plaintiff's counsel believe that the claims asserted against the Starr Defendants have merit. However, they recognize the risks of, expense of and delay associated with the continued prosecution of the claims against the Starr Defendants in the Action. The Starr Defendants have denied and continue to deny each and every allegation of liability or damage to the Settlement Class or any member thereof. Lead Plaintiff and their counsel have taken into account the issues that would have to be decided by a jury including: (i) whether each of the alleged misrepresentations and omissions made by certain of the Starr Defendants were false; (ii) if false, whether each of those alleged misrepresentations and omissions were material; (iii) whether the Starr Defendants acted knowingly or recklessly in making the alleged misrepresentations and omissions; (iii) whether the Starr Defendants engaged in market manipulation of AIG's securities and (iv) the amount of any damages, if any, caused by the

alleged misrepresentations and omissions by the Starr Defendants or the alleged market manipulation.

Lead Plaintiff and Lead Plaintiff's counsel have also considered the uncertain outcome and trial risk in complex lawsuits like this one. Lead Plaintiff believes that a recovery now will provide an immediate benefit to Settlement Class Members, which is superior to the risk of proceeding with the claims against the Starr Defendants. Considering these factors and balancing them against the certain and substantial benefits that the Settlement Class will receive as a result of the Settlement, Lead Plaintiff and Lead Plaintiff's counsel determined that the Settlement described herein is fair, reasonable and adequate, and that it is in the best interests of the Settlement Class to settle the claims against the Starr Defendants on the terms set forth in the Stipulation and this Notice.

| **What might happen if there were no Settlement?** |
| --- |

If there were no settlement of the claims against the Starr Defendants and Lead Plaintiff failed to establish any essential legal or factual element of its claims, neither it nor the Settlement Class would recover anything from the Starr Defendants. Also, if the Starr Defendants were successful in proving any of their defenses, the Settlement Class likely would recover substantially less than the amount provided in the Settlement, if anything at all.

| **Do I have a lawyer in the case? How will the lawyers be paid?** |
| --- |

The Court appointed the law firms of Labaton Sucharow LLP in New York, New York and Hahn Loeser & Parks LLP in Cleveland, Ohio to represent the proposed class. You will not be separately charged for the work done by the lawyers who worked on this lawsuit. If you want to be represented by your own lawyer, you may hire one at your own expense.

The Court will determine the amount (if any) of Lead Plaintiff's attorneys' fees and expenses, which will be paid from the Settlement Amount. Any attorneys' fees awarded to Lead Plaintiff's counsel will be distributed, in part, to additional counsel who worked on this lawsuit under the supervision and direction of Lead Plaintiff's counsel based upon the amount, quality and importance of work they performed. Lead Plaintiff estimates that in the aggregate such amount will be less than 10% of the total attorneys' fees awarded by the Court.

Lead Plaintiff's counsel has not received any payment for its services in pursuing claims against the Starr Defendants on behalf of the Settlement Class, nor has it been reimbursed for its considerable litigation expenses. In this type of litigation, it is customary for counsel to be awarded a percentage of the settlement fund recovered as its attorneys' fees, and to receive reimbursement of the expenses advanced in the prosecution of the action. Lead Plaintiff's counsel intends to apply to the Court for an award of attorneys' fees of 13.25% of the Cash Settlement Account in connection with this Settlement. Lead Plaintiff's counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $1 million. If the applications for attorneys' fees and reimbursement of expenses is approved by the Court, the average cost per share would be approximately $0.01 per share.

**Questions? Call Toll-Free (800) _____**

The fee requested by Lead Plaintiff's counsel would compensate it for its efforts in achieving the Settlement for the benefit of the Settlement Class and willingness to undertake this representation on a contingency basis. The fee requested is within the range of fees awarded to plaintiffs' counsel under similar circumstances in litigation of this type. NEITHER THE COURT NOR THE DEFENDANTS HAVE EXPRESSED ANY OPINION ON THE APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES.

---

**What rights am I giving up by agreeing to the Settlement?**

---

If the Settlement is approved, the Court will enter an Order and Final Judgment as to Starr Defendants ("the Final Judgment") ending all the claims against the Starr Defendants and precluding Settlement Class Members from continuing to litigate the claims against the Starr Defendants and the Starr Released Persons.  The Final Judgment will: (i) dismiss the claims against the Starr Defendants with prejudice; and (ii) provide that Lead Plaintiff and all other Settlement Class Members, except those who validly and timely request to be excluded from the Settlement Class, shall, upon the Effective Date (as defined in the Stipulation of the Settlement), on behalf of themselves and their respective heirs, executors, administrators, successors and assigns and all persons acting in concert with any such person shall have fully, finally and forever released, relinquished, acquitted and discharged the Starr Released Persons from the Starr Released Claims. The release also constitutes an express waiver and relinquishment, to the fullest extent permitted by law, of the provisions, rights and benefits of California Civil Code § 1542, and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

"Starr Released Claims" means and includes any and all Claims, known or unknown, suspected or unsuspected, asserted or unasserted, that Lead Plaintiff, the Settlement Class or Class Members, and/or each of their respective divisions, agencies, instrumentalities, branches, subsidiaries, parent companies, affiliates, associates, representatives, predecessors, successors, heirs, owners, assigns, executors and/or administrators ever had, now have or hereafter can, shall or may have against the Starr Released Persons in the Action arising out of or related in any way to any of the facts, matters, transactions, allegations or claims that are raised or could have been raised in the Complaint or related in any way to the financial statements of AIG or its subsidiaries for fiscal years 1999 through 2004 or any restatement thereof, including Claims relating to AIG's May 31, 2005 Restatement of its financial statements.

The Stipulation defines "Claims" as any and all claims, rights, causes of action or demands, whether legal or equitable, for damages, restitution, disgorgement, injunctive relief, attorneys' fees, costs, obligations, debts, losses or liabilities of any kind whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation (whether foreign or domestic), including known and unknown, accrued and not accrued, foreseen and unforeseen, matured and not mature claims.

**Questions? Call Toll-Free (800) _____**

The "Starr Released Persons" means the Starr Defendants and/or their present, former or future associates, representatives, predecessors, successors, heirs, direct or indirect subsidiaries, parent companies, affiliates, divisions, connected firms, owners, assigns, executors, administrators, and/or their present, former or future directors, agents, partners, principals, officers, employees, trustees, servants, attorneys, shareholders and/or representatives of the foregoing, and each of them.

The Final Judgment will also provide that the Starr Defendants fully, finally and forever release, relinquish, acquit and discharge the Lead Plaintiff, the Settlement Class, Settlement Class Members and Lead Plaintiff's counsel ("Released Plaintiff Parties") from any Claims which the Starr Defendants ever had, now have or hereafter can, shall or may have against any of the Released Plaintiff Parties, which arise out of or relate in any way to the institution, prosecution (to the Effective Date) or settlement of the Action.

Also, the Final Judgment will contain bar order provisions precluding the non-settling defendants from being able to bring claims in the future seeking relief such as contribution and indemnification against the Starr Released Persons.  Also, the non-settling defendants will be entitled to a judgment credit related to this Settlement if the Action against them results in a judgment.

## The New York Attorney General Action Against Starr Defendants Greenberg and Smith

The Starr Released Claims in this Settlement may include damages claims originally asserted by former New York Attorney General ("NYAG") Eliot Spitzer in an action in New York state court captioned *People v. Greenberg*, Civ. No. 401720 (N.Y. Sup. Ct.) (the "NYAG Action"), which asserts claims for injunctive relief, restitution and damages under New York's Martin Act and Executive Law against Starr Defendants Greenberg and Smith.

### Your Participation in This Settlement Could Result in the Loss of Damages Claims Brought on Your Behalf in the NYAG Action

In a recent case, the New York Court of Appeals held that damages claims asserted by the NYAG under the Martin Act could be dismissed based on the settlement of a related class action. Thus, when the proposed Settlement becomes final, the court presiding over the NYAG Action may dismiss from that action the damages claims of Settlement Class Members who participate in this Settlement, which, if it occurs, would not affect any Class Members' recovery in this Action.  As set forth in the Stipulation, to the extent that there are any uncertainties under New York law regarding the extent of recovery permitted against Greenberg and Smith in the NYAG Action following the approval of this Settlement, Greenberg and Smith bear the risk of that uncertainty, not Settlement Class Members.

The NYAG Action is more limited in scope than this Action.  First, the NYAG Action asserts claims against only two of the Starr Defendants, Greenberg and Smith.  In addition, the NYAG Action is based on only two of the two dozen allegedly fraudulent business transactions that form the basis of the claims in this Action:  (i) the Gen Re Transaction and (ii) the CAPCO Transaction.

**Questions? Call Toll-Free (800) _____**

The NYAG Action is similar to an SEC action that asserted claims only against Greenberg and Smith and was also based on a subset of the allegedly fraudulent business transactions that form the basis of the claims in this Action (the Gen Re Transaction, the CAPCO Transaction and certain other alleged accounting frauds). The SEC settled its claims against Greenberg and Smith for $15 million and $1.5 million, respectively.

Greenberg is represented in the NYAG Action by David Boies of Boies, Schiller & Flexner LLP, who prevailed in a jury trial against AIG in which AIG sought $4.3 billion in damages for alleged breaches of fiduciary duties by Greenberg and Starr International Company, Inc. Mr. Greenberg is also represented in the NYAG Action by John L. Gardiner of Skadden, Arps, Slate, Meagher & Flom LLP. Smith is represented in the NYAG Action by Vincent Sama of Kaye Scholer LLP.

### The NYAG's Allegations Regarding the Gen Re Transaction

The NYAG may not be able to establish liability against Defendants Greenberg and Smith for the Gen Re Transaction. Indeed, the judge presiding over the NYAG Action noted that Defendant Greenberg has denied any knowledge of the fraudulent aspects of the Gen Re Transaction, and found that "in the absence of direct testimony as to Greenberg's knowledge or participation in the structuring of the transaction without adequate risk transfer from the other participants in the scheme . . . or others who clearly facilitated the scheme . . . the evidence against Greenberg is too remote to find liability against him as a matter of law . . . ." The judge similarly found that the credibility of conflicting testimony with respect to Defendant Smith's involvement in the Gen Re Transaction would have to be determined at trial, stating, "in light of the facts in dispute, and the credibility determinations that must be made regarding Smith's testimony concerning accounting treatment for the Gen Re Transaction, summary judgment as to his liability . . . must also be denied."

Counsel for the NYAG has asserted that he is seeking billions of dollars in damages in the NYAG Action. However, even if the NYAG is able to establish liability for the Gen Re Transaction, it is not clear that it will be able to establish that investors suffered any damages based on that Transaction. The NYAG asserts that corrective disclosures relating to the Gen Re Transaction caused the price of AIG's common stock to drop on February 14, March 14 and March 15, 2005, resulting in damages to investors of $4.69 per share. In response, Greenberg and Smith assert that the NYAG has not provided any statistical basis for any of its damages claims, and that, in fact, the alleged misstatements and omissions were not "economically material," therefore, AIG investors were not financially damaged by them. Lead Plaintiff's loss causation expert has also examined the movements in AIG's stock price on the three alleged disclosure dates and has determined that none of them is statistically significant, *i.e.*, there may be no legal basis on which to award any damages for the stock drops on those dates. (Lead Plaintiff alleges damages in this Action based on *different* disclosures and stock drops than the three dates referenced above. Lead Plaintiff's loss causation expert believes that the stock drops alleged in this Action are statistically significant, and the Court has certified the Class with respect to four alleged corrective disclosure dates, including two disclosures dates allegedly relating to the Gen Re Transaction.)

**Questions? Call Toll-Free (800) _____**

### The NYAG's Allegations Regarding the CAPCO Transaction

Although the judge presiding over the NYAG Action found Greenberg and Smith liable under the Martin Act for the CAPCO Transaction, they have filed appeals challenging the court's finding on liability; the use of the Martin Act, as interpreted by the court, and the admissibility of certain hearsay evidence that may be critical to the NYAG's case.

Moreover, as with the Gen Re Transaction, the NYAG may not be able to show that investors suffered any damages based on the CAPCO Transaction. The NYAG asserts damages of $1.66 per share for the CAPCO Transaction, based on a decrease in AIG's stock price on March 30, 2005. However, the NYAG's own expert states, "Since other new information concerning AIG's accounting improprieties was released on March 30, the exact impact of CAPCO on AIG's price decline that day cannot be measured with precision." Because, to date, the NYAG has not provided any expert testimony identifying any effect on AIG's stock price caused specifically by corrective disclosures relating to the CAPCO Transaction, there may be no legal basis to award any damages for the stock drop on March 30.

Both Parties in the NYAG Action have appealed the lower court's decision regarding the liability of the defendants with respect to the Gen Re and CAPCO Transactions. The hearing on that appeal occurred on May 19, 2011. The appellate court has not yet ruled on this appeal.

### Potential Outcomes of the NYAG Action

In the view of Lead Counsel, based on the issues discussed above, a jury may or may not find Greenberg and Smith liable for any damages in the NYAG Action, and, even if it did, such findings may not be upheld on appeal, a process that is likely to be lengthy. However, it is the view of the NYAG that the potential recovery in the NYAG Action could be substantially greater than the proposed Settlement here.

### Convictions in a Separate Criminal Case Regarding the Gen Re Transaction Have Been Vacated

On February 25, 2008, a federal jury in Connecticut found Christian M. Milton (AIG's former Vice President of Reinsurance) and four former Gen Re executives guilty of securities fraud and other charges in connection with their involvement in the Gen Re Transaction.

However, on August 1, 2011, the Second Circuit issued a decision in *U.S. v. Ferguson*, 653 F.3d 61 (2d Cir. 2011), in which it reversed the convictions of all five defendants based on defective jury instructions and other issues, and remanded the case for a possible new trial. The Second Circuit later issued a revised opinion, Docket No. 08-6211, 2011 WL 6351862 (2d Cir. Dec. 19, 2011), in which it overruled the federal government's motion for reconsideration. To date, no announcement has been made regarding whether the Department of Justice will try the case again.

### Getting More Information about the NYAG Action or the Federal Action Regarding the Gen Re Transaction

**Questions? Call Toll-Free (800) _____**

13

Lead Counsel will periodically provide updates about significant developments in the NYAG Action and the federal action regarding the Gen Re Transaction.  Please check the following, the website for the Administrator: www._____.com, and the website for Lead Counsel: www.labaton.com.

| **What is this case about?** |
| --- |

This Action arises from, among other things, allegedly material misstatements and omissions made by certain of the Starr Defendants and others in connection with an allegedly illegal market division scheme with Marsh and others in the insurance industry, as well as an alleged accounting fraud scheme related to AIG's $3.9 billion restatement or adjustment of earnings in May 2005.  Lead Plaintiff alleges that at the end of the Class Period, the price of AIG's stock dropped significantly when these frauds were disclosed, resulting in alleged damages to the Settlement Class.

Specifically, Lead Plaintiff alleges that, on October 14 and 15, 2004, there were disclosures concerning AIG's involvement in a market division scheme that included its payment of allegedly improper "steering" contingent commissions to, and illegal rigging of bids with, Marsh and others in the insurance industry.  Lead Plaintiff also claims that there were disclosures in March and April 2005 of a massive accounting fraud at AIG that resulted in the Company restating or adjusting nearly four years of earnings and, *inter alia*, slashing net income by $3.9 billion.  In addition, the Complaint alleges that AIG and certain of the Starr Defendants manipulated the price of its stock during the Class Period through a stock repurchase program.

Lead Plaintiff alleges that the consequences of the disclosures referenced above included AIG's payment of more than $1.6 billion to settle claims and pay fines relating to, among other things, the alleged market division and accounting fraud brought by federal and state regulators, including the Securities and Exchange Commission, Department of Justice, and the Office of the New York Attorney General.

The Starr Defendants deny all civil liability and the Settlement is not and may not be construed or deemed to be evidence of, or an admission or a concession on the part of the Starr Defendants, of any fault or liability whatsoever or of any infirmity in any defenses they have asserted or intended to assert, or of the merits of Lead Plaintiff's claims.  The Starr Defendants, while affirmatively denying liability, considers it desirable and in their best interest that the claims against them in the Action be dismissed under the terms of the proposed Settlement in order to avoid further expense, uncertainty and distraction, and protracted litigation.

| **What has happened in this case so far?** |
| --- |

After the first alleged disclosures about the market division fraud were reported to the public on October 14, 2004, ten class action complaints were filed against AIG, the Starr Defendants, and others, and the cases were transferred to Judge Laura Taylor Swain.  The complaints included class periods of October 28, 1999 to October 15, 2004, and alleged Section 10(b) claims.  After hearing fully-briefed motions regarding appointment of a lead plaintiff and lead counsel to pursue the proposed class action, Judge Swain, by order dated February 7, 2005, appointed the

Ohio State Funds as Lead Plaintiff; and appointed Labaton Sucharow (at the time known as Goodkind Labaton Rudoff & Sucharow LLP) and Hahn Loeser & Parks LLP as Lead Plaintiff's counsel.

On April 19, 2005, Lead Plaintiff filed a Consolidated First Amended Complaint, which included claims based on both the alleged market division fraud and the alleged accounting fraud, alleged a class period of October 28, 1999 through March 30, 2005, named additional defendants and added claims under Section 11 and 15 of the Securities Act.

On May 16, 2005, the San Francisco Employees' Retirement System filed a separate, purportedly new securities class action complaint against AIG and others that alleged causes of action based solely on the alleged accounting frauds disclosed in the Spring of 2005. After reviewing motions on the appointment of Lead Plaintiff related to this claim, the Court held a hearing on July 18, 2005 and found that the Ohio State Funds would serve as the Lead Plaintiff for all the claims at issue.

Between November and December 2005 defendants in the Action filed motions to dismiss the Action in its entirety, submitting hundreds of pages of briefing and affidavits. The Court denied all of these motions, except one, in April and May 2006. After the denial of the motions, Lead Plaintiff, the Ohio State Funds, and Lead Counsel began to conduct formal discovery into the facts of the case. (Prior to filing its first complaint, Lead Plaintiff's counsel had engaged in a thorough investigation of the publicly available information about the claims, including contact with former employees of AIG and other defendants.) At the time of the Settlement, defendants, including the Starr Defendants, and approximately 42 non-parties had produced more than 53 million pages of documents. Lead Counsel represents that it has reviewed and analyzed virtually all of the documents produced to date. In addition, at the time of settlement, the parties had taken 50 depositions. Since then, 47 additional depositions have been taken in the Action.

On February 20, 2008, Lead Plaintiff moved to certify a litigation class in the Action. In connection with that motion, the Ohio State Funds produced more than 267,000 pages of documents to defendants, and more than 14 witnesses from the Ohio State Funds and their 10 external investment advisers were deposed. On August 20, 2008, AIG submitted its opposition to class certification and on September 23, 2008, all other defendants submitted their opposition papers. Lead Plaintiff replied to the opposition briefs and the Court held hearings and examined expert witness to determine whether the entire Action should be certified for litigation purposes. After the Settlement was reached, by order filed February 22, 2010, the Court certified the Action for litigation purposes as a class action on behalf of a class that differs from the Settlement Class. Both Lead Plaintiff and AIG requested that the United States Court of Appeals for the Second Circuit review the Court's certification order. AIG's request for review was granted and Lead Plaintiff's request was denied.

As noted above, Lead Plaintiff and the Starr Defendants have reached an agreement to settle the claims against the Starr Defendants in the Action on terms that are summarized here. Lead Plaintiff and the Starr Defendants, through their counsel, have engaged in substantial arm's-length negotiations in an effort to resolve all claims that have been or could have been asserted in the Action against the Starr Defendants. Lead Plaintiff and the Starr Defendants conducted numerous conferences, including several mediation sessions before a highly experienced

**Questions? Call Toll-Free (800) _____**

mediator who is a former federal judge, in which the terms of the Settlement detailed here were negotiated.

| How much will my payment be? |
| --- |

### THE PROPOSED PLAN OF ALLOCATION – GENERAL PROVISIONS

The Starr Defendants have paid $115 million in cash (the "Settlement Amount") into an escrow account that has been earning interest for the benefit of the Settlement Class. After approval of the Settlement by the Court and upon satisfaction of the other conditions to the Settlement, the Distribution Amount (the Settlement Amount less any Tax Expenses, court-awarded attorney's fees and expenses, Notice and Administrative Expenses, and any other expenses and awards the Court may order), will be distributed to Settlement Class Members who timely submit either valid Proofs of Claim or Release Forms (as the case may be) establishing "Recognized Losses" according to the Plan of Allocation described below.

To the extent there are sufficient funds in the Distribution Amount, each Authorized Claimant will receive an amount equal to the Authorized Claimant's allowable Recognized Loss, as defined below. If, however, the Distribution Amount is not sufficient to permit payment of the total of all Recognized Losses, then each Authorized Claimant will be paid the percentage of the Distribution Amount that each Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants ("*pro rata* share") that purchased or acquired either debt or equity securities, including options. You will be eligible to participate in the distribution only to the extent you have a net loss on your transactions in AIG debt securities, or on your combined transactions in AIG common stock and options. Payment in this manner will be deemed conclusive against all Authorized Claimants.

For all purposes, the transaction date and not the settlement date shall be used as the date for determining inflation per share and eligibility to file a claim. All purchases and sales of AIG Securities shall be accounted for and matched using the first-in-first-out (FIFO) method of accounting. Gifts and transfers of securities are not eligible purchases. The covering purchase of a "short" sale is not an eligible purchase.

The Plan of Allocation is not intended to estimate the amount a Settlement Class Member might have been able to recover after a trial, nor is it intended to estimate the amount that will be paid to Authorized Claimants. The Plan of Allocation is the basis upon which the Distribution Amount will be proportionately divided among all the Authorized Claimants. The Court will be asked to approve the Administrator's determinations before the Distribution Amount is distributed to Authorized Claimants. No distributions to Authorized Claimants who would receive less than $10.00 will be made, given the administrative expenses of processing and mailing such checks.

There will be no distribution of the Distribution Amount until a Plan of Allocation is finally approved and affirmed on appeal (if an appeal is filed) and the time for any petition for rehearing, appeal or review, whether by *certiorari* or otherwise, has expired. This Plan of Allocation may be modified by the Court without further notice to the Settlement Class. The

**Questions? Call Toll-Free (800) _____**

Released Persons have no liability, obligation or responsibility for the administration of the Settlement or disbursement of the Distribution Amount.

Each person wishing to participate in the distribution must timely submit a valid claim form and all required documentation or Release Form (as the case may be) **no later than** _____, **2012**, to the address listed below and set forth in the Proof of Claim form or Release Form that accompanies this Notice. The Proof of Claim form and Release Form include a general release of each of the Released Defendant Parties. *See* the section called "How do I participate in the settlement? What do I need to do?" below.

The Court has reserved jurisdiction to allow, disallow or adjust on equitable grounds the claim of any Settlement Class Member. The Court also reserves the right to modify the Plan of Allocation without further notice to Settlement Class Members. Payment pursuant to the Plan of Allocation approved by the Court shall be conclusive against all Authorized Claimants. No person shall have any claim against Lead Plaintiff, their counsel, the Claims Administrator, or other agents designated by counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.

## THE PROPOSED PLAN OF ALLOCATION - CALCULATION OF RECOGNIZED LOSS AMOUNT[3]

### Calculation of Recognized Loss for AIG Common Stock Purchases

A.    For shares purchased on or between October 28, 1999 through April 1, 2005, the following Recognized Losses shall be allowed, subject to the limitations set forth in Section II:

1.    For each share that was (a) sold on or between October 28, 1999 and October 13, 2004, (b) purchased on or after October 15, 2004 and sold on or before March 16, 2005, or (c) purchased on or after March 17, 2005, and sold on or before March 29, 2005, the Recognized Loss shall be 10% of the difference between the inflation per share at the time of purchase, for the applicable date of purchase, less the inflation per share at the time of sale, subject to a limit of $0.20 per share. Inflation per share shall be determined at each transaction date based on the percentage inflation applicable to that date as set forth in Table 1 times the price paid or received, excluding any commission, fees or other adjustments;

2.    For each share not covered by 1 above and sold on or before April 1, 2005, the Recognized Loss shall be the inflation per share at the time of purchase, for the applicable date of purchase, less the inflation per share at the time of sale. Inflation per share shall be determined at each transaction date based on the percentage inflation applicable to that date as set forth in Table 1 times the price paid or received, excluding any commission, fees or other adjustments; and

---

[3] The calculations are made by Lead Plaintiff and do not represent the position of the Starr Defendants.

**Questions? Call Toll-Free (800)** _____

3.     For each share not covered by 1 above and sold after April 1, 2005, the Recognized Loss shall be the inflation per share at the time of purchase. Inflation per share shall be determined at each purchase transaction date based on price paid or received, excluding any commission, fees or other adjustments.

B.     The following limitations on a Recognized Loss shall be applied:

1.     In addition to the annexed Table 1 relating to Section 10(b) AIG common stock claims, the Recognized Loss for such shares purchased during the Class Period shall be limited (as provided for under Private Securities Litigation Reform Act of 1995 "PSLRA") to the smallest of the following: (i) the difference between the price paid and the price received (out-of-pocket investment loss) if sold on or before April 1, 2005; (ii) the difference between the price paid (excluding all fees and commissions) and the average closing price as set forth in Table 2 below, if sold between April 4, 2005 and June 29, 2005; or (iii) the difference between the price per share paid and $53.70 per share if the shares were held on the close of business on June 29, 2005.

2.     You will be eligible for a recovery under the Plan only to the extent you have a net loss on your combined transactions in AIG common stock and options.

**Questions? Call Toll-Free (800) _____**

Table 1: Inflation per Share Percentage and Averages Over Identified Time Periods

| Period | Start Date | End Date | Inflation Percentage | Avg.Price | Avg. Value | Avg.Inflaton |
|--------|-----------|----------|---------------------|-----------|-----------|-------------|
| 1 | 28-Oct-99 | 7-Feb-01 | 13.9% | $80.21 | $69.07 | $11.14 |
| 2 | 8-Feb-01 | 1-Apr-01 | 16.1% | $81.28 | $68.19 | $13.09 |
| 3 | 2-Apr-01 | 25-Apr-01 | 18.2% | $78.39 | $64.11 | $14.28 |
| 4 | 26-Apr-01 | 13-Oct-04 | 21.2% | $67.81 | $53.43 | $14.37 |
| 5 | 14-Oct-04 | 14-Oct-04 | 14.2% | $60.00 | $51.50 | $8.50 |
| 6 | 15-Oct-04 | 16-Mar-05 | 11.2% | $64.84 | $57.59 | $7.25 |
| 7 | 17-Mar-05 | 29-Mar-05 | 8.5% | $57.77 | $52.86 | $4.91 |
| 8 | 30-Mar-05 | 30-Mar-05 | 6.0% | $57.16 | $53.73 | $3.43 |
| 9 | 31-Mar-05 | 31-Mar-05 | 3.3% | $55.41 | $53.56 | $1.85 |
| 10 | 1-Apr-05 | 3-Apr-05 | -3.8% | $50.95 | $52.91 | $(1.96) |
| 11 | 4-Apr-05 | Current | 0.0% | $52.30 | $52.30 | $- |

Table 2: PSLRA Loss Limitation Table for AIG Common Shares

| Date | AIG Closing Price | Avg. AIG Closing Price | Date | AIG Closing Price | Avg. AIG Closing Price |
|------|-------------------|------------------------|------|-------------------|------------------------|
| 4/1/2005 | $50.95 | $50.95 | 5/16/2005 | $52.81 | $52.33 |
| 4/4/2005 | $53.30 | $52.13 | 5/17/2005 | $53.38 | $52.36 |
| 4/5/2005 | $53.00 | $52.42 | 5/18/2005 | $53.25 | $52.39 |
| 4/6/2005 | $52.99 | $52.56 | 5/19/2005 | $53.00 | $52.41 |
| 4/7/2005 | $52.76 | $52.60 | 5/20/2005 | $53.76 | $52.45 |
| 4/8/2005 | $51.91 | $52.49 | 5/23/2005 | $53.45 | $52.47 |
| 4/11/2005 | $52.10 | $52.43 | 5/24/2005 | $53.80 | $52.51 |
| 4/12/2005 | $53.20 | $52.53 | 5/25/2005 | $54.08 | $52.55 |
| 4/13/2005 | $51.61 | $52.42 | 5/26/2005 | $55.71 | $52.63 |
| 4/14/2005 | $51.39 | $52.32 | 5/27/2005 | $56.40 | $52.72 |
| 4/15/2005 | $51.11 | $52.21 | 5/31/2005 | $55.55 | $52.79 |
| 4/18/2005 | $51.26 | $52.13 | 6/1/2005 | $56.10 | $52.86 |
| 4/19/2005 | $51.58 | $52.09 | 6/2/2005 | $55.89 | $52.93 |
| 4/20/2005 | $51.01 | $52.01 | 6/3/2005 | $55.09 | $52.98 |
| 4/21/2005 | $51.90 | $52.00 | 6/6/2005 | $54.85 | $53.02 |
| 4/22/2005 | $50.35 | $51.90 | 6/7/2005 | $55.23 | $53.07 |
| 4/25/2005 | $51.76 | $51.89 | 6/8/2005 | $54.95 | $53.11 |
| 4/26/2005 | $51.07 | $51.85 | 6/9/2005 | $55.55 | $53.16 |
| 4/27/2005 | $51.85 | $51.85 | 6/10/2005 | $55.09 | $53.20 |
| 4/28/2005 | $51.14 | $51.81 | 6/13/2005 | $55.50 | $53.24 |
| 4/29/2005 | $50.85 | $51.77 | 6/14/2005 | $55.57 | $53.29 |
| 5/2/2005 | $53.44 | $51.84 | 6/15/2005 | $55.41 | $53.33 |
| 5/3/2005 | $53.30 | $51.91 | 6/16/2005 | $55.23 | $53.36 |
| 5/4/2005 | $54.37 | $52.01 | 6/17/2005 | $55.55 | $53.40 |
| 5/5/2005 | $53.92 | $52.08 | 6/20/2005 | $55.68 | $53.44 |
| 5/6/2005 | $54.14 | $52.16 | 6/21/2005 | $56.29 | $53.49 |
| 5/9/2005 | $54.58 | $52.25 | 6/22/2005 | $55.95 | $53.53 |
| 5/10/2005 | $53.27 | $52.29 | 6/23/2005 | $55.20 | $53.56 |
| 5/11/2005 | $53.21 | $52.32 | 6/24/2005 | $54.54 | $53.58 |

**Questions? Call Toll-Free (800) _____**

| Date | AIG Closing Price | Avg. AIG Closing Price |
|------|------------------|------------------------|
| 5/12/2005 | $52.48 | $52.33 |
| 5/13/2005 | $52.05 | $52.32 |
| | | |

| Date | AIG Closing Price | Avg. AIG Closing Price |
|------|------------------|------------------------|
| 6/27/2005 | $55.03 | $53.60 |
| 6/28/2005 | $55.17 | $53.63 |
| 6/29/2005 | $58.48 | $53.70 |

## Calculation of Recognized Loss for AIG Call and Put Options

The AIG Options entitled to recover shall include all purchased AIG Call Options (excluding AIG Call Options purchased to cover or offset a previously sold, or written AIG Call Option) and all initially sold, or written, AIG Put Options (excluding those AIG Put Options sold, or written, to cover or otherwise offset a previously purchased AIG Put Option) during the period from October 28, 1999 through April 1, 2005.

Artificial inflation and Recognized Losses as to AIG Call Options and artificial deflation and Recognized Losses as to AIG Put Options will be computed based on the artificial inflation in AIG's common stock as described above.  To determine artificial inflation for AIG Call Options and artificial deflation for AIG Put Options, Lead Plaintiff's damages consultant considered these securities' price changes that occurred in reaction to certain public announcements regarding AIG and then made adjustments for changes that were attributable to market forces unrelated to the alleged fraud in prices of such call and put options.  Lead Plaintiff's damages consultant then developed formulas (see below) from which the Recognized Losses for AIG Call and Put Options may be calculated.

You will be eligible for a recovery under the Plan only to the extent you have a net loss on your combined transactions in AIG common stock and options.

## AIG Call Options

With respect to purchases and sales (covers) of AIG Call Options during the period from October 28, 1999 through April 1, 2005, the artificial inflation per Option on a given day shall be the dollar reduction in the value of the AIG Call Option with the same exercise (or strike price) and same date of expiration on that day as a result of the inflation in AIG's common share price at the close of trading.  The dollar reduction in the value of Call Options will be calculated using the Black-Scholes call option pricing formula (using the implied volatility for an at-the-money call option, annual dividend yield, and the appropriate annual interest rate on that day as set forth in Table 3 below) and the closing share price of AIG common stock on the transaction date ("AIG Price" as set forth in Table 3) compared with the Black-Scholes call option pricing formula value for the Call Option using the uninflated share closing share price of AIG common stock ("AIG True Value" as set forth in Table 3) on that same date.

A.    For such Call Options which (1) expired, were exercised or were sold (or the position was otherwise closed out) prior to October 14, 2004; (2) were purchased on or after October 15, 2004 and expired, were exercised or were sold (or the position was otherwise closed out) sold on or before March 16, 2005, or (3) were purchased on or after March 17, 2005, and

**Questions? Call Toll-Free (800) _____**

expired, were exercised or were sold (or the position was otherwise closed out) on or before March 29, 2005, the Recognized Loss shall be 10% times that number of options multiplied by the lesser of:

      1.      the difference between artificial inflation per Call Option on the date of purchase and artificial inflation per Call Option on the date of expiration, exercise, or sale, as appropriate; or

      2.      the difference between the purchase price per option and the sale price or value realized upon exercise or expiration per option ($0.00 if the call option expired worthless).

B.      For such Call Options not covered by A above which (1) expired after October 13, 2004 and on or before April 1, 2005; (2) were exercised for cash (or the shares immediately sold) on or between October 14, 2004 and April 1, 2005; or (3) were sold (position closed out) on or between October 14, 2004 and April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

      1.      the difference between artificial inflation per Call Option on the date of purchase and artificial inflation per Call Option on the date of expiration, exercise, or sale, as appropriate; or

      2.      the difference between the purchase price per option and the sale price or value realized upon exercise or expiration per option ($0.00 if the call option expired worthless).

C.      For such Call Options not covered by A above which (1) expired worthless after October 14, 2004 or (2) were retained at the end of trading on April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

      1.      the artificial inflation per Call Option on the date of purchase; or

      2.      the difference between the purchase price per option and the sale or realized proceeds price per option ($0.00 if the call option expired worthless).

## AIG Put Options

With respect to AIG Put Options written or purchased (covered) during the period from October 28, 1999 through April 1, 2005, the artificial deflation per AIG Put Option on a given day shall be the dollar decrease in the value of an AIG Put Option with the same exercise price and expiration date as the subject option at the close of trading on that day as a result of the inflation in AIG's common share price. The dollar decrease (artificial deflation) in the value of the Put Option will be calculated using the Black-Scholes put option pricing formula (using the implied volatility for an at-the-money put option, annual dividend yield, and annual interest rate on that day set forth in Table 3 below) and the closing share price of AIG common stock on the

**Questions? Call Toll-Free (800) _____**

transaction date ("AIG Price" as set forth in Table 3) compared with the Black-Scholes pricing formula value for the Put Option using the uninflated share closing share price of AIG common stock ("AIG True Value" as set forth in Table 3) on that same date.

       D.      For such Put Options which (1) expired, were exercised or were purchased/covered (position closed out) prior to October 14, 2004, (2) were written on or after October 15, 2004 and expired, were exercised or were purchased/covered (position closed out) on or before March 16, 2005, or (3) were written on or after March 17, 2005, and expired, were exercised or were purchased/covered (position closed out) on or before March 29, 2005 the Recognized Loss shall be 10% times that number of options multiplied by the lesser of:

           1.      the difference between artificial deflation per Put Option on the date the option was written and artificial deflation per Option on the date of expiration, exercise, or purchase, as appropriate; or

           2.      the difference between the purchase price, exercise price, or expiration price per option paid ($0.00 if the put option expired worthless) and the written price per option received.

       E.      For such initially written (sold) Put Options not covered by A above which (1) expired after October 13, 2004 and on or before April 1, 2005; (2) were exercised on or between October 14, 2004 and April 4, 2005; or (3) were purchased/covered (position closed out) on or between October 14, 2004 and April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

           1.      the difference between artificial deflation per Put Option on the date the option was written and artificial deflation per Option on the date of expiration, exercise, or purchase, as appropriate; or

           2.      the difference between the purchase price, exercise price, or expiration price per option paid ($0.00 if the put option expired worthless) and the written price per option received.

       F.      For such initially written (sold) Put Options not covered by A above which were retained at the end of trading on April 1, 2005, the Recognized Loss shall be that number of options multiplied by the lesser of:

           1.      the artificial deflation per Put Option on the date the put option was written; or

           2.      the difference between the purchase price, exercise price, or expiration price per option paid ($0.00 if the put option expired worthless) and the written price per option received, if purchased (covered), expired, or exercised on or before June 29, 2005.

**Table 3**

**Questions? Call Toll-Free (800) _____**

| Start | End | Avg. AIG Price | Avg. AIG True Value | Avg. AIG Inflation | Avg. Call Volatility | Avg. Put Volatility | Avg. Interest Rate | Avg. Dividend Yield |
|---|---|---|---|---|---|---|---|---|
| 10/28/1999 | 12/31/1999 | $70.71 | $60.88 | $9.83 | 33.58% | 34.45% | 5.69% | 0.19% |
| 1/3/2000 | 4/2/2000 | $65.15 | $56.09 | $9.06 | 37.49% | 38.07% | 6.19% | 0.21% |
| 4/3/2000 | 7/2/2000 | $76.62 | $65.97 | $10.65 | 38.42% | 39.40% | 6.22% | 0.18% |
| 7/3/2000 | 10/1/2000 | $86.41 | $74.40 | $12.01 | 28.14% | 29.13% | 6.13% | 0.17% |
| 10/2/2000 | 12/31/2000 | $96.57 | $83.15 | $13.42 | 31.39% | 34.09% | 5.91% | 0.15% |
| 1/2/2001 | 2/7/2001 | $87.00 | $74.91 | $12.09 | 32.75% | 33.80% | 4.80% | 0.17% |
| 2/8/2001 | 4/1/2001 | $81.28 | $68.19 | $13.09 | 31.12% | 34.46% | 4.45% | 0.18% |
| 4/2/2001 | 4/25/2001 | $78.39 | $64.11 | $14.28 | 32.30% | 33.61% | 3.99% | 0.19% |
| 4/26/2001 | 7/1/2001 | $82.73 | $65.19 | $17.54 | 22.12% | 22.36% | 3.70% | 0.20% |
| 7/2/2001 | 7/25/2001 | $84.58 | $66.65 | $17.93 | 21.59% | 21.28% | 3.63% | 0.20% |
| 7/26/2001 | 9/30/2001 | $77.60 | $61.15 | $16.45 | 29.25% | 29.33% | 3.25% | 0.22% |
| 10/1/2001 | 1/1/2002 | $81.26 | $64.03 | $17.23 | 29.73% | 29.60% | 2.24% | 0.21% |
| 1/2/2002 | 3/31/2002 | $74.72 | $58.88 | $15.84 | 28.17% | 28.58% | 2.32% | 0.23% |
| 4/1/2002 | 6/30/2002 | $68.74 | $54.17 | $14.57 | 29.57% | 29.62% | 2.35% | 0.26% |
| 7/1/2002 | 9/30/2002 | $61.21 | $48.23 | $12.98 | 45.13% | 45.38% | 1.81% | 0.31% |
| 10/1/2002 | 12/31/2002 | $61.66 | $48.59 | $13.07 | 41.78% | 41.79% | 1.53% | 0.31% |
| 1/2/2003 | 3/31/2003 | $53.02 | $41.78 | $11.24 | 39.69% | 39.96% | 1.30% | 0.36% |
| 4/1/2003 | 6/30/2003 | $56.26 | $44.33 | $11.93 | 31.41% | 31.70% | 1.15% | 0.40% |
| 7/1/2003 | 9/30/2003 | $60.22 | $47.45 | $12.77 | 27.67% | 27.76% | 1.22% | 0.43% |
| 10/1/2003 | 12/31/2003 | $60.77 | $47.89 | $12.88 | 24.54% | 24.53% | 1.30% | 0.43% |
| 1/2/2004 | 3/31/2004 | $71.45 | $56.30 | $15.15 | 22.65% | 22.66% | 1.22% | 0.36% |
| 4/1/2004 | 6/30/2004 | $72.62 | $57.22 | $15.40 | 23.37% | 23.38% | 1.78% | 0.38% |
| 7/1/2004 | 9/30/2004 | $70.02 | $55.18 | $14.84 | 21.88% | 21.89% | 2.08% | 0.43% |
| 10/1/2004 | 10/13/2004 | $67.32 | $53.05 | $14.27 | 22.23% | 21.79% | 2.22% | 0.45% |
| 10/14/2004 | 10/14/2004 | $60.00 | $51.50 | $8.50 | 39.05% | 38.52% | 2.15% | 0.50% |
| 10/15/2004 | 12/31/2004 | $62.66 | $55.64 | $7.02 | 25.56% | 25.63% | 2.52% | 0.66% |
| 1/3/2005 | 2/13/2005 | $67.33 | $59.79 | $7.54 | 18.76% | 18.76% | 2.89% | 0.74% |
| 2/14/2005 | 3/15/2005 | $67.09 | $59.58 | $7.51 | 20.34% | 20.34% | 3.17% | 0.75% |
| 3/16/2005 | 3/29/2005 | $58.34 | $53.38 | $4.96 | 29.70% | 29.70% | 3.36% | 0.86% |
| 3/30/2005 | 4/4/2005 | $54.21 | $53.38 | $0.83 | 37.58% | 37.58% | 3.36% | 0.92% |
| 4/5/2005 | 6/29/2005 | $53.76 | $53.76 | $- | 27.80% | 27.80% | 3.34% | 1.02% |

## Calculation of Recognized Loss for AIG Debt Securities Purchases

The Class Period for purchases of AIG debt securities is from October 28, 1999 through April 1, 2005. AIG debt securities that have matured, were called, put or converted were not damaged by the alleged fraud and, therefore, shall not be eligible for recovery under the Plan and all transactions in such securities shall be ignored. The AIG debt securities outstanding as of October 13, 2004 and eligible to participate in recovery under the Plan are listed in Table 4

**Questions? Call Toll-Free (800) _____**

below. <u>You will be eligible for recovery under the Plan only to the extent you have a net loss on your transactions in AIG debt securities.</u>

The "AIG Debt Settlement Fund" shall be created by apportioning up to 5% of the Distribution Amount. If the Total Recognized Losses for AIG debt securities eligible to participate under the Plan are equal to or less than the AIG Debt Settlement Fund, then the such Total Recognized Losses shall be recoverable and the remaining portion, if any, of the AIG Debt Settlement Fund shall revert back to the Distribution Amount for recovery under the AIG Common Stock and AIG Call and Put Options provisions of this Plan. If the Total Recognized Losses for AIG debt securities eligible to participate under the Plan are more than the AIG Debt Settlement Fund, such Total Recognized Losses shall be paid pro rata.

**Calculation of Recognized Loss for AIG Debt Securities shall be as follows:**

For AIG debt securities purchased on or between October 28, 1999 and April 1, 2005, the following the Recognized Losses shall be allowed:

a.     For each unit sold on or between October 28, 1999 and October 13, 2004, the Recognized Loss shall be 5% of the difference between the purchase price paid and the sale price received (out-of-pocket investment loss);

b.     For each unit sold on or between October 14, 2004 and March 14, 2005, the Recognized Loss shall be 10% of the difference between the purchase price paid and the sale price received (out-of-pocket investment loss);

c.     For each unit sold on or between March 15, 2005 and April 1, 2005, the Recognized Loss shall be 15% of the difference between the purchase price paid and the sale price received (out-of-pocket investment loss);

d.     For each unit sold on or between April 2, 2005 and June 29, 2005, the Recognized Loss shall be 15% of the lesser of: (i) the difference between the purchase price paid and the sale price received (out-of-pocket investment loss); or (ii) the difference between the purchase price paid and the average price on date of sale in Table 5 below;

e.     For each unit sold on or between June 30, 2005 and December 15, 2010, the Recognized Loss shall be 15% of the lesser of: (i) the difference between the purchase price paid and the sale price received (out-of-pocket investment loss); or (ii) the difference between the purchase price paid and the average price as of June 29, 2005 as set forth in Table 5 below; and

f.     For each unit held as of the close of business on April 1, 2005 and not sold as of December 15, 2010, the Recognized Loss shall be 15% of the difference between the purchase price paid and the average price as of June 29, 2005 as set forth in Table 5 below.

g.     For each unit that was (a) sold on or between October 28, 1999 and October 13, 2004, (b) purchased on or after October 15, 2004 and sold on or before March 16, 2005, or (c) purchased

**Questions? Call Toll-Free (800) _____**

on or after March 17, 2005, and sold on or before March 29, 2005, the Recognized Loss shall be subject to a further limit of 0.5% of the purchase price.

The Recognized Loss for damages for units purchased during the Class Period shall be further limited (as provided for under the PSLRA) to the smallest of the following: (i) the difference between the price paid and the price received (out-of-pocket investment loss) if sold on or before June 29, 2005; (ii) the difference between the price paid (excluding all fees and commissions) and the average closing price as set forth in Table 5 below if sold between April 4, 2005 and December 15, 2010; or (iii) the difference between the price paid and the average price as of June 29, 2005 as set forth in Table 5 below, if held as of the close of business on June 29, 2005.

**Table 4: AIG Debt Securities Eligible to Participate**

| Coupon | Maturity Date | CUSIP or ISIN |
|--------|---------------|---------------|
| Zero | 9-Nov-31 | CUSIP No. 026874AP2 |
| 0.5% | 15-May-07 | CUSIP No. 026874AN7 |
| 2.85% | 1-Dec-05 | CUSIP No. 026870BB3 |
| 2.875% | 15-May-08 | CUSIP No. 026874AQ0 |
| 2.875% | 15-May-08 | ISIN No. USU02687AB48 |
| 2.875% | 15-May-08 | CUSIP No. 026874AR8 |
| 4.25% | 15-May-13 | CUSIP No. 026874AS6 |
| 4.25% | 15-May-13 | ISIN No. USU02687AC21 |
| 4.25% | 15-May-13 | CUSIP No. 026874AT4 |

**Questions? Call Toll-Free (800) _____**

### Table 5: PSLRA Loss Limitation Table for AIG Debt Securities

| Coupon | Zero | 0.500% | 2.850% | 2.875% | 2.875% | 2.875% | 4.250% | 4.250% | 4.250% |
|---|---|---|---|---|---|---|---|---|---|
| Maturity Date | 11/9/2031 | 5/15/2007 | 12/1/2005 | 5/15/2008 | 5/15/2008 | 5/15/2008 | 5/15/2013 | 5/15/2013 | 5/13/2013 |
| Issue Date | 11/9/2001 | 5/1/2000 | 12/2/2002 | 5/15/2003 | 5/15/2003 | 4/20/2004 | 5/15/2003 | 5/15/2003 | 4/20/2004 |
| CUSIP/ISIN Number | 026874AP2 | 026874AN7 | 02687QBB3 | 026874AQ0 | USU02687AB48 | 026874AR8 | 026874AS6 | USU02687AC21 | 026874AT4 |
| Series | Registered | Registered | Registered | 144A | Regulation S | Registered | 144A | Regulation S | Registered |
| Date | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price | Average Price |
| 4/1/2005 | $65.63 | $91.88 | $99.54 | $95.07 | $95.07 | $95.07 | $94.25 | $94.25 | $94.25 |
| 4/4/2005 | $65.81 | $92.13 | $99.55 | $94.75 | $94.75 | $94.75 | $93.44 | $93.44 | $93.44 |
| 4/5/2005 | $65.83 | $92.17 | $99.55 | $94.76 | $94.76 | $94.76 | $93.58 | $93.58 | $93.58 |
| 4/6/2005 | $65.84 | $92.22 | $99.55 | $94.80 | $94.80 | $94.80 | $93.71 | $93.71 | $93.71 |
| 4/7/2005 | $65.85 | $92.25 | $99.55 | $94.82 | $94.82 | $94.82 | $93.74 | $93.74 | $93.74 |
| 4/8/2005 | $65.83 | $92.27 | $99.56 | $94.81 | $94.81 | $94.81 | $93.75 | $93.75 | $93.75 |
| 4/11/2005 | $65.84 | $92.29 | $99.56 | $94.82 | $94.82 | $94.82 | $93.78 | $93.78 | $93.78 |
| 4/12/2005 | $65.84 | $92.30 | $99.56 | $94.84 | $94.84 | $94.84 | $93.88 | $93.88 | $93.88 |
| 4/13/2005 | $65.85 | $92.29 | $99.56 | $94.87 | $94.87 | $94.87 | $93.88 | $93.88 | $93.88 |
| 4/14/2005 | $65.85 | $92.30 | $99.56 | $94.91 | $94.91 | $94.91 | $93.89 | $93.89 | $93.89 |
| 4/15/2005 | $65.85 | $92.32 | $99.57 | $94.97 | $94.97 | $94.97 | $93.95 | $93.95 | $93.95 |
| 4/18/2005 | $65.85 | $92.33 | $99.58 | $95.02 | $95.02 | $95.02 | $94.01 | $94.01 | $94.01 |
| 4/19/2005 | $65.86 | $92.35 | $99.58 | $95.07 | $95.07 | $95.07 | $94.08 | $94.08 | $94.08 |
| 4/20/2005 | $65.86 | $92.37 | $99.59 | $95.11 | $95.11 | $95.11 | $94.12 | $94.12 | $94.12 |
| 4/21/2005 | $65.86 | $92.37 | $99.59 | $95.12 | $95.12 | $95.12 | $94.14 | $94.14 | $94.14 |
| 4/22/2005 | $65.87 | $92.38 | $99.59 | $95.14 | $95.14 | $95.14 | $94.16 | $94.16 | $94.16 |
| 4/25/2005 | $65.88 | $92.39 | $99.59 | $95.16 | $95.16 | $95.16 | $94.19 | $94.19 | $94.19 |
| 4/26/2005 | $65.89 | $92.40 | $99.60 | $95.17 | $95.17 | $95.17 | $94.21 | $94.21 | $94.21 |
| 4/27/2005 | $65.91 | $92.41 | $99.60 | $95.18 | $95.18 | $95.18 | $94.23 | $94.23 | $94.23 |
| 4/28/2005 | $65.93 | $92.43 | $99.60 | $95.21 | $95.21 | $95.21 | $94.28 | $94.28 | $94.28 |
| 4/29/2005 | $65.93 | $92.44 | $99.60 | $95.22 | $95.22 | $95.22 | $94.31 | $94.31 | $94.31 |
| 5/2/2005 | $65.95 | $92.45 | $99.60 | $95.24 | $95.24 | $95.24 | $94.32 | $94.32 | $94.32 |
| 5/3/2005 | $65.96 | $92.46 | $99.60 | $95.25 | $95.25 | $95.25 | $94.34 | $94.34 | $94.34 |
| 5/4/2005 | $65.97 | $92.48 | $99.61 | $95.26 | $95.26 | $95.26 | $94.35 | $94.35 | $94.35 |
| 5/5/2005 | $65.98 | $92.50 | $99.61 | $95.28 | $95.28 | $95.28 | $94.38 | $94.38 | $94.38 |
| 5/6/2005 | $65.98 | $92.50 | $99.61 | $95.28 | $95.28 | $95.28 | $94.37 | $94.37 | $94.37 |
| 5/9/2005 | $65.99 | $92.51 | $99.61 | $95.28 | $95.28 | $95.28 | $94.37 | $94.37 | $94.37 |
| 5/10/2005 | $66.00 | $92.53 | $99.61 | $95.28 | $95.28 | $95.28 | $94.39 | $94.39 | $94.39 |
| 5/11/2005 | $66.00 | $92.54 | $99.61 | $95.28 | $95.28 | $95.28 | $94.40 | $94.40 | $94.40 |
| 5/12/2005 | $66.01 | $92.56 | $99.61 | $95.29 | $95.29 | $95.29 | $94.42 | $94.42 | $94.42 |
| 5/13/2005 | $66.02 | $92.58 | $99.61 | $95.30 | $95.30 | $95.30 | $94.44 | $94.44 | $94.44 |
| 5/16/2005 | $66.03 | $92.59 | $99.61 | $95.30 | $95.30 | $95.30 | $94.43 | $94.43 | $94.43 |
| 5/17/2005 | $66.03 | $92.61 | $99.61 | $95.31 | $95.31 | $95.31 | $94.43 | $94.43 | $94.43 |
| 5/18/2005 | $66.04 | $92.63 | $99.61 | $95.31 | $95.31 | $95.31 | $94.44 | $94.44 | $94.44 |
| 5/19/2005 | $66.04 | $92.63 | $99.61 | $95.32 | $95.32 | $95.32 | $94.44 | $94.44 | $94.44 |
| 5/20/2005 | $66.05 | $92.64 | $99.61 | $95.31 | $95.31 | $95.31 | $94.45 | $94.45 | $94.45 |

**Questions? Call Toll-Free (800) _____**

**Table 5: PSLRA Loss Limitation Table for AIG Debt Securities**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 5/23/2005 | $66.05 | $92.65 | $99.61 | $95.32 | $95.32 | $95.32 | $94.47 | $94.47 | $94.47 |
| 5/24/2005 | $66.06 | $92.66 | $99.61 | $95.32 | $95.32 | $95.32 | $94.49 | $94.49 | $94.49 |
| 5/25/2005 | $66.06 | $92.68 | $99.61 | $95.33 | $95.33 | $95.33 | $94.51 | $94.51 | $94.51 |
| 5/26/2005 | $66.06 | $92.70 | $99.61 | $95.33 | $95.33 | $95.33 | $94.53 | $94.53 | $94.53 |
| 5/27/2005 | $66.07 | $92.71 | $99.61 | $95.33 | $95.33 | $95.33 | $94.55 | $94.55 | $94.55 |
| 5/31/2005 | $66.07 | $92.73 | $99.61 | $95.34 | $95.34 | $95.34 | $94.59 | $94.59 | $94.59 |
| 6/1/2005 | $66.08 | $92.75 | $99.61 | $95.36 | $95.36 | $95.36 | $94.64 | $94.64 | $94.64 |
| 6/2/2005 | $66.08 | $92.77 | $99.61 | $95.37 | $95.37 | $95.37 | $94.70 | $94.70 | $94.70 |
| 6/3/2005 | $66.08 | $92.79 | $99.61 | $95.38 | $95.38 | $95.38 | $94.74 | $94.74 | $94.74 |
| 6/6/2005 | $66.08 | $92.80 | $99.61 | $95.40 | $95.40 | $95.40 | $94.78 | $94.78 | $94.78 |
| 6/7/2005 | $66.09 | $92.81 | $99.61 | $95.41 | $95.41 | $95.41 | $94.82 | $94.82 | $94.82 |
| 6/8/2005 | $66.10 | $92.82 | $99.61 | $95.42 | $95.42 | $95.42 | $94.86 | $94.86 | $94.86 |
| 6/9/2005 | $66.10 | $92.82 | $99.61 | $95.43 | $95.43 | $95.43 | $94.89 | $94.89 | $94.89 |
| 6/10/2005 | $66.11 | $92.83 | $99.61 | $95.44 | $95.44 | $95.44 | $94.92 | $94.92 | $94.92 |
| 6/13/2005 | $66.12 | $92.83 | $99.61 | $95.45 | $95.45 | $95.45 | $94.93 | $94.93 | $94.93 |
| 6/14/2005 | $66.13 | $92.83 | $99.61 | $95.45 | $95.45 | $95.45 | $94.95 | $94.95 | $94.95 |
| 6/15/2005 | $66.14 | $92.84 | $99.61 | $95.46 | $95.46 | $95.46 | $94.96 | $94.96 | $94.96 |
| 6/16/2005 | $66.15 | $92.84 | $99.61 | $95.46 | $95.46 | $95.46 | $94.98 | $94.98 | $94.98 |
| 6/17/2005 | $66.15 | $92.85 | $99.61 | $95.47 | $95.47 | $95.47 | $95.00 | $95.00 | $95.00 |
| 6/20/2005 | $66.15 | $92.86 | $99.61 | $95.48 | $95.48 | $95.48 | $95.01 | $95.01 | $95.01 |
| 6/21/2005 | $66.15 | $92.87 | $99.61 | $95.48 | $95.48 | $95.48 | $95.03 | $95.03 | $95.03 |
| 6/22/2005 | $66.16 | $92.88 | $99.62 | $95.49 | $95.49 | $95.49 | $95.06 | $95.06 | $95.06 |
| 6/23/2005 | $66.17 | $92.88 | $99.62 | $95.50 | $95.50 | $95.50 | $95.09 | $95.09 | $95.09 |
| 6/24/2005 | $66.18 | $92.89 | $99.62 | $95.52 | $95.52 | $95.52 | $95.12 | $95.12 | $95.12 |
| 6/27/2005 | $66.19 | $92.89 | $99.62 | $95.53 | $95.53 | $95.53 | $95.15 | $95.15 | $95.15 |
| 6/28/2005 | $66.20 | $92.90 | $99.62 | $95.54 | $95.54 | $95.54 | $95.17 | $95.17 | $95.17 |
| 6/29/2005 | $66.20 | $92.91 | $99.62 | $95.55 | $95.55 | $95.55 | $95.19 | $95.19 | $95.19 |

## How do I participate in the settlement? What do I need to do?

The Court has certified the Settlement Class for purposes of this Settlement only. As discussed above, if you purchased or acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive and you were damaged and you are not one of the people specifically excluded by the definition of the Settlement Class, you are a Settlement Class Member unless you take steps to get out of the Settlement Class.

As a Settlement Class Member, you will be bound by the proposed Settlement provided for in the Stipulation if it is approved by the Court, as well as by any judgment or determination of the Court affecting the Settlement Class. Even if you do not submit a Proof of Claim form or Release Form to receive a part of the recovery, unless otherwise provided by the Court, you will be forever barred from receiving any payments pursuant to the Settlement set forth in the Stipulation, but will, in all other respects, be subject to the provisions of the Stipulation, including the terms of any judgments entered and the releases given.

**Questions? Call Toll-Free (800) _____**

To qualify for a payment if you did NOT submit a Proof of Claim in the PwC and/or Company Settlements, you must timely send in a completed Proof of Claim form with supporting documents (DO NOT SEND ORIGINALS) to the Administrator. DO NOT SEND Proof of Claim forms to counsel for the Settling Parties or the Court. A Proof of Claim form is being circulated with this Notice. You may also get a Proof of Claim form on the Internet at the websites for the Administrator: www._____.com, or Lead Plaintiff's counsel: www.labaton.com. Please read the instructions carefully, fill out the Proof of Claim form, include all the documents the form asks for, sign it, and mail it to the Administrator by first class mail, **postmarked no later than _____, 2012**. The Administrator needs all of the information requested in the Proof of Claim in order to determine what you may be entitled to.

If you already submitted a Proof of Claim form in the PwC and/or Company Settlements, the trading information you already supplied will be used to determine your claim in this Settlement. DO NOT submit another Proof of Claim. Instead, you will receive a Release Form that must be completed and signed in order for you to recover. (*See "What if I already submitted a claim form in the PwC and/or Company Settlements?"* below) However, if you have additional transactional information that you <u>did</u> <u>not</u> submit on your PwC and/or Company Proof of Claim form that you would like considered in the calculation of your claim in this Settlement with the Starr Defendants, submit a Proof of Claim in this Settlement.

The Court may disallow or adjust the claim of any Settlement Class Member. The Court also may modify the Plan of Allocation without further notice to the Settlement Class. Each Claimant will be deemed to have submitted to the jurisdiction of the United States District Court for the Southern District of New York with respect to his, her or its Proof of Claim form.

If you do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section called, "What if I do not want to participate in the Settlement? How do I exclude myself?" below.

If you object to the Settlement or any of its terms, the proposed Plan of Allocation, Lead Plaintiff's counsel's application for attorneys' fees and reimbursement of litigation expenses, or Lead Plaintiff's application for expenses and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section called, "What if I want to object to the Settlement? When and where will the Court decide whether to approve the Settlement? May I speak at the Hearing if I do not like the Settlement" below.

| **What if I already submitted a claim form in the PwC and/or Company Settlements?** |
| --- |

If you have already submitted a Proof of Claim form in connection with the previously announced PwC and/or Company Settlements, DO NOT complete a new Proof of Claim form now. The trading information you already provided will be used to determine your claim in this settlement with the Starr Defendants. Instead, you must complete and submit a Release Form and mail it to the Administrator by first class mail, **postmarked no later than _____, 2012**, in order to recover. Alternatively, you may submit your Release Form through the Administrator's website, _____.

**Questions? Call Toll-Free (800) _____**

The deadline for Proof of Claim forms in the PwC Settlement was January 28, 2009. If you submitted your PwC Proof of Claim form on time, you should have received a postcard acknowledgment of receipt by March 16, 2009 and you will be mailed a Release Form. If you have not received a post card or Release Form by _____, 2012, please contact the Administrator at _____.

---

### What if I do not want to participate in the Settlement? How do I exclude myself?

---

Each Settlement Class Member will be bound by all determinations and judgments in this Action concerning the Settlement, whether favorable or unfavorable, unless such person mails, by first class mail, a written request for exclusion from the Settlement Class, postmarked no later than May 25, 2012, addressed to *In re AIG Securities Litigation – Starr Defendants EXCLUSIONS*, c/o Rust Consulting, Inc. No person may exclude himself, herself or itself from the Settlement Class after this deadline. You may not exclude yourself by telephone or e-mail.

In order to be valid, each request for exclusion must set forth the name and address of the person or entity requesting exclusion, must state that such person or entity "requests exclusion from the Starr Defendants Settlement Class in *In re AIG Securities Litigation*, Master File No. 04-8141 (DAB)" and must be signed by such person or entity. The following information **must also** be provided: your name, your address, your daytime telephone number; and documents establishing the date(s), price(s), and number(s) of shares of all purchases, other acquisitions and sales of AIG Securities during the Class Period. Requests for exclusion will NOT be accepted if the requests do not include the required information, are undocumented or if the requests are not made within the time stated above, unless the requests for exclusion are otherwise accepted by the Court.

If a Settlement Class Member requests to be excluded from the Settlement Class, that Settlement Class Member will not receive any benefit provided for in the Stipulation.

If a Settlement Class Member requests exclusion from the Settlement Class and later seeks to pursue an action against the Starr Defendants and to obtain discovery taken by Lead Counsel, Lead Plaintiff will in all likelihood seek advance payment on behalf of the Settlement Class for the reasonable costs (including the value of Lead Counsel's time, *i.e.*, "lodestar") related to such discovery. If Lead Plaintiff and any such person or entity are unable to agree upon the amount of such compensation, Lead Plaintiff will in all likelihood make a motion requesting payment. If Lead Plaintiff elects to do so, it will request, for example, an order from the Court providing that such a person or entity that timely and validly excludes itself from the Settlement Class and subsequently files a claim against the Starr Defendants related to the matters covered by the Settlement shall be required to compensate the Settlement Class for the costs (including lodestar) associated with any deposition transcripts (including exhibits) it receives in connection with such legal proceeding if the depositions were taken as part of discovery in the Action. Likewise, Lead Plaintiff may make a motion if any such person or entity seeks access to the electronic document repository, currently hosting more than 53.5 million pages of documents, that was established and maintained in significant part by Lead Plaintiff. Lead Plaintiff may seek an order requiring such person or entity to compensate the Settlement Class a reasonable amount for the costs (including lodestar) associated with establishing and maintaining the electronic document repository since August 2006.

**Questions? Call Toll-Free (800)** _____

Lead Plaintiff may request that the amount of such compensation shall be determined by the Court based on the size of the claim being asserted, using the number of allegedly damaged shares owned by the excluded Settlement Class Member, and the cost to the Settlement Class of obtaining the discovery being sought, which shall include Lead Counsel's lodestar and expenses directly or indirectly related to that discovery.  Discovery in the Action included 97 depositions, based upon, *inter alia*, the review and analysis of the 53.5 million pages of documents mentioned above.  Lead Counsel represents that the aggregate amount of Lead Counsel's lodestar attributable to discovery efforts alone is tens of millions of dollars.

The Starr Defendants are not required to join in any such application.

---

**What if I want to object to the Settlement? May I speak at the Fairness Hearing if I do not like the Settlement?**

---

No Settlement Class Member must attend the Fairness Hearing, but you can attend at your own expense.

Any Settlement Class Member who does not request exclusion by May 25, 2012 may ask the Court to consider their objection to any of the matters to be considered at the Fairness Hearing (and may also appear at the Fairness Hearing) provided, however, that **no such person shall be heard unless** his, her or its objection is made in writing and is filed, together with copies of all other papers and briefs to be submitted to the Court for the Fairness Hearing, by him, her or it (including documentation of all purchases, acquisitions and sales of AIG Securities during the Class Period) with the Clerk's Office at the United States District Court for the Southern District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007, **postmarked no later than May 25, 2012**, and is served on the same day, by first class mail, hand or overnight delivery to each of the following:

| | |
|---|---|
| Thomas A. Dubbs, Esq. | David Boies, Esq. |
| Louis Gottlieb, Esq. | Robert J Dwyer, Esq. |
| Labaton Sucharow LLP | Boies, Schiller & Flexner LLP |
| 140 Broadway | 575 Lexington Avenue, 7th Floor |
| New York, NY 10005 | New York, NY 10022 |
| | |
| *Lead Counsel for Lead Plaintiff and the Settlement Class* | *Counsel for Maurice R. Greenberg, C.V. Starr, & Co., Inc. and Starr International Company, Inc.* |
| | |
| Vincent A. Sama, Esq. | Frederick P Hafetz, Esq. |
| Kaye Scholer LLP | Noah E. Shelanski, Esq. |
| 425 Park Avenue | Hafetz Necheles & Rocco |
| New York, NY 10022-3598 | 500 5th Ave, 29th Floor |
| | New York, NY 10110 |
| *Counsel for Howard I Smith* | *Counsel for Christian M. Milton* |

**Questions? Call Toll-Free (800) _____**

Charles I. Poret, Esq.
Benjamin E. Rosenberg, Esq.
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797

*Counsel for Michael J. Castelli*

You must include your name, address, telephone number, and your signature, document the date(s), price(s), and number(s) of shares of all purchases, acquisitions, and sales of AIG Securities you made during the Class Period, and state the reasons why you object to the Settlement.  This information is needed to demonstrate your membership in the Settlement Class. **Only Settlement Class Members who have submitted their position in this manner will be entitled to object. The Settling Parties may seek further information, including testimony, about your objection prior to the Fairness Hearing.** You may file an objection without appearing at the Fairness Hearing. Settlement Class Members who approve of the Settlement do not need to appear at the Fairness Hearing.

While attendance at the Fairness Hearing is not necessary, persons wishing to be heard orally are required to indicate in their written objections their intention to appear at the Fairness Hearing. **No one will be heard at the Fairness hearing who has not sought and been granted by the Court permission to speak ten (10) days prior to the Fairness Hearing.** Persons who intend to object to the Settlement or any of its related matters and desire to present evidence at the Fairness Hearing must also include in their written objections the identity of any witnesses they may seek to call to testify and exhibits they may seek to introduce into evidence at the Fairness Hearing.

The Fairness Hearing may be rescheduled from time to time by the Court without further written notice to the Settlement Class. If you intend to attend the Fairness Hearing, you should confirm the date and time with Lead Plaintiff's counsel.

**UNLESS OTHERWISE ORDERED BY THE COURT, ANY SETTLEMENT CLASS MEMBER WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION.**

| **Special Notice to Securities Brokers and other Nominees** |
| --- |

If you purchased AIG Securities (as defined herein) during the Class Period for the beneficial interest of a person or organization other than yourself, you are directed (a) to provide the Administrator with lists of the names and last known addresses of the beneficial owners for whom you have purchased AIG Securities during the Class Period within seven (7) days of receipt of this Notice, or (b) to request additional copies of this Notice and Proof of Claim form within seven (7) days of receipt of this Notice and to send the Notice and Proof of Claim to the beneficial owners.  If you elect to send this Notice and Proof of Claim form to beneficial owners, you are directed to mail this Notice and Proof of Claim within seven (7) days of receipt of the

**Questions? Call Toll-Free (800) _____**

copies of this Notice from the Administrator, and, upon such mailing, you shall send a statement to the Administrator confirming that the mailing was made as directed. If you comply with the requirements above, you shall be reimbursed from the Cash Settlement Account after receipt by the Administrator of proper documentation for the reasonable expenses of sending the Notices and Proofs of Claim to the beneficial owners. If you choose to follow the first alternative, you must retain the list of names and addresses so that it will be available for use in connection with future notice to the Settlement Class. Copies of this Notice may also be obtained from the Administrator or may be downloaded from Lead Plaintiffs' counsel's website at www.labaton.com.

---

**Can I see the Court file? Who should I contact if I have questions?**

---

This Notice contains only a summary of the terms of the proposed Settlement.  For a more detailed statement of the matters involved in the Action, you are referred to the papers on file in the Action, including the Agreement of Compromise and Settlement and the Court's February 22, 2010 Order granting certification of a litigation class, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007.

All inquiries concerning this Notice, the Proof of Claim form, the Release Form or any questions regarding the Settlement should be directed to:

> *AIG Securities Litigation – Starr Defendants*
> c/o Rust Consulting, Inc.
> Administrator
> P.O. Box _____
> _____
> Toll Free: (800) _____
> www._____

**PLEASE DO NOT CONTACT THE COURT OR AIG REGARDING THESE MATTERS. THEY WILL NOT BE ABLE TO ANSWER YOUR QUESTIONS.**

DATED: _____

> BY ORDER OF THE UNITED STATES DISTRICT COURT DISTRICT OF NEW YORK

**Questions? Call Toll-Free (800) _____**

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x
                                       :
                                       :
IN RE AMERICAN INTERNATIONAL           :    Master File No. 04 Civ. 8141 (DAB) (AJP)
GROUP, INC. SECURITIES LITIGATION      :
                                       :    **SUMMARY NOTICE OF PENDENCY**
                                       :    **AND PROPOSED SETTLEMENT OF**
                                       :    **CLASS ACTION**
                                       :
                                       :
——————————————————————— x

**PROPOSED STARR DEFENDANTS CLASS SETTLEMENT IS $115 MILLION.
TOTAL SETTLEMENTS FOR CLASS MEMBERS COULD EXCEED $1 BILLION.[1]**

**TO:    ALL PERSONS OR ENTITIES WHO PURCHASED OR OTHERWISE
        ACQUIRED PUBLICLY-TRADED SECURITIES ISSUED BY AMERICAN
        INTERNATIONAL, INC. DURING THE PERIOD FROM OCTOBER 28,
        1999 THROUGH APRIL 1, 2005, INCLUSIVE, (THE "CLASS PERIOD") AND
        WHO WERE DAMAGED THEREBY.**

YOU ARE HEREBY NOTIFIED that in the above-captioned action (the "Action") the

Court has preliminarily certified a settlement class for purposes of a proposed partial settlement

only and that the Ohio Public Employees Retirement System, State Teachers Retirement System

of Ohio and Ohio Police & Fire Pension Fund (collectively, "Lead Plaintiff") and Maurice R.

Greenberg ("Greenberg"), Howard I. Smith ("Smith"), Christian M. Milton, Michael J. Castelli,

C.V. Starr & Co., Inc., and Starr International Company, Inc. (collectively, "the Starr

Defendants") have entered into a proposed partial settlement (the "Settlement") consisting of

$115 million in cash, plus interest as it accrues.  A hearing will be held before the Honorable

Deborah A. Batts, in the United States District Court for the Southern District of New York,

---

[1]    Lead Plaintiff has entered into settlement agreements with all other defendants in the Action, which have a
combined settlement value of $1.0095 billion.  On December 2, 2010, the Court entered a judgment approving the
$97.5 million settlement with AIG auditor PricewaterhouseCoopers LLP.  On _____, 2012, the Court entered
a judgment approving the $725 million settlement with defendant American International Group, Inc.  Finally, Lead
Plaintiff has reached a proposed $72 million settlement with General Reinsurance Corporation ("Gen Re").  On
September 10, 2010, the Court issued an Order dismissing the class claims against Gen Re.  On October 21, 2010,
Lead Plaintiff filed a notice of appeal from the Court's September 10th Order.  On January 9, 2012, the United
States Court of Appeals for the Second Circuit heard oral argument on the appeal.

United States Courthouse, 500 Pearl Street, New York, New York 10007 at 4:00 p.m. on June 28, 2012 to determine whether the proposed Settlement with the Starr Defendants should be approved by the Court as fair, reasonable and adequate, to consider final certification of the proposed Settlement Class, to consider the application of Lead Plaintiff's counsel for attorneys' fees and reimbursement of litigation expenses and to consider the application of Lead Plaintiff for the reimbursement of costs and expenses. The Court may change the date of the hearing without providing additional notice to Class Members.

IF YOU PURCHASED OR ACQUIRED AIG SECURITIES DURING THE CLASS PERIOD DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT PROCEEDS. If you are a member of the Settlement Class and did not submit a Proof of Claim in connection with the previously announced settlements with defendant PricewaterhouseCoopers LLP (the "PwC Settlement") and/or defendant American International Group, Inc. (the "Company Settlement"), in order to be eligible to share in the distribution of the net proceeds of the Settlement, you must submit a Proof of Claim no later than _____, 2012, establishing that you are entitled to a recovery. This is also the deadline for submitting a new Proof of Claim if you did not include all Class Period transactions on your PwC or Company Proof of Claim that you would like considered in the calculation of your claim in this Settlement with the Starr Defendants. If you are a member of the Settlement Class and already filed a complete Proof of Claim in the PwC and/or Company Settlements, you must submit a Release Form no later than _____, 2012. You will be bound by any judgment entered in the Action whether or not you make a Claim or submit a Release Form. If you have not yet received the Notice of Proposed Settlement, Motion for Attorneys' Fees and

2

Expenses Award and Fairness Hearing (the "Notice"), Proof of Claim form and/or Release Form, you may obtain copies of these documents by contacting: *In re American International Group, Inc. Securities Litigation- Starr Defendants*, c/o Rust Consulting, Inc., 800-_____. Copies of the Notice, Proof of Claim form and Release Form may also be downloaded from: _____, www.labaton.com.

To learn about how an action filed by the New York Attorney General against Starr Defendants Greenberg and Smith could potentially affect Class Members, and how the Settlement with the Starr Defendants could impact the claims in the action filed by the New York Attorney General, please review the Notice.

Inquiries, other than requests for information about the status of a claim, may also be made to Lead Counsel:

**LABATON SUCHAROW LLP**
Thomas A. Dubbs, Esq.
Louis Gottlieb, Esq.
140 Broadway
New York, New York 10005
(866) 779-0843
www.labaton.com; settlementquestions@labaton.com

If you desire to be excluded from the Settlement Class, you must file a request for exclusion by May 25, 2012, in the manner and form explained in the Notice. If you request exclusion from the Settlement Class and later seek to pursue your own action against the Starr Defendants and to obtain discovery taken by Lead Counsel (such as deposition transcripts), then Lead Plaintiff will in all likelihood seek to file a motion with the District Court to obtain advance payment of reasonable compensation for the Settlement Class for the costs (including the value of Lead Counsel's time, *i.e.* "lodestar") related to such discovery. All members of the Settlement Class who do not request exclusion will be bound by any judgment entered in the Action.

Any objection to the proposed Settlement, Plan of Allocation, application for attorneys' fees and reimbursement of litigation expenses or the cost and expense application of Lead Plaintiff must be filed with the Court and delivered to counsel for the parties no later than May 25, 2012 at the address provided in, and in the manner and form set forth in the Notice.

PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE
REGARDING THIS NOTICE.

DATED: _____

BY ORDER OF THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE AMERICAN INTERNATIONAL
GROUP, INC. SECURITIES LITIGATION

Master File No. 04 Civ. 8141 (DAB)

## PROOF OF CLAIM

**GENERAL INSTRUCTIONS**

1.      To receive a recovery from the Cash Settlement Account, created as a result of the settlement (the "Settlement") with defendants Maurice R. Greenberg, Howard I. Smith, Christian M. Milton, Michael J. Castelli, C.V. Starr & Co., Inc., and Starr International Company, Inc. (collectively, "the Starr Defendants"), as a member of the Settlement Class in the class action lawsuit entitled *In re American International Group, Inc. Securities Litigation*, Master File No. 04 Civ. 8141 (DAB) (the "Action"), you must complete and, on page 15 below, sign this Proof of Claim form.  If you fail to submit a timely, properly completed and addressed  Proof of Claim, your claim may be rejected and you may be precluded from any recovery from the Escrow Account.

2.      If you have already submitted a Proof of Claim form in connection with the previously announced settlements with defendant PricewaterhouseCoopers LLP (the "PwC Settlement") and/or American International Group, Inc. (the "Company Settlement"), DO NOT complete this Proof of Claim.  Instead, you must complete and submit a Release Form.  If you have not received a Release Form yet, please contact the Administrator at _____.  (However, if you have additional transactional information related to your purchases, acquisitions or sales of AIG Securities that you did not submit on your PwC and/or Company

Claim form that you would like considered in the calculation of your claim in this Settlement with the Starr Defendants please complete and submit this entire Proof of Claim form.)

3.      Submission of this Proof of Claim form, however, does not ensure that you will share in the Escrow Account, even if you are a member of the Settlement Class.

4.      **YOU MUST MAIL YOUR COMPLETED AND SIGNED PROOF OF CLAIM POSTMARKED NO LATER THAN _____, 2012, ADDRESSED AS FOLLOWS:**

> *In re AIG Securities Litigation – Starr Defendants Settlement*
> c/o ____ ____ ____ ____
> P.O. ____ ____
>
> ____ ____ ____ ____

**DO NOT MAIL your Proof of Claim to the Court or to counsel for the Settling Parties.**
If you are NOT a member of the Settlement Class (as defined in the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Fairness Hearing ("Notice")) DO NOT submit this Proof of Claim form.  You are not entitled to a recovery.

5.      If you are a member of the Settlement Class and you have not timely and validly requested to be excluded from the Settlement Class, you will be bound by the terms of the Order and Final Judgment entered by the Court, WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM.

6.      Separate Proofs of Claim must be filed for each differently named or owned account (e.g., individual account, IRA account, joint account, etc.).  However, joint tenants, co-owners or UGMA custodians should file a single claim.

**DEFINITIONS**

1.      All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Notice that accompanies this Proof of Claim form.

## IDENTIFICATION OF CLAIMANT

1.       You are a member of the Settlement Class if you purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive (the "Class Period") (including if you held the common stock of HSB Group, Inc. ("HSB") at the time HSB was acquired by American International Group, Inc. ("AIG") in a stock for stock transaction, or if you held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock transaction, and were damaged thereby. Excluded from the Settlement Class are (i) the Defendants, as named in the Consolidated Third Amended Class Action Complaint (the "Complaint") in this Action; (ii) members of the immediate families of the Individual Defendants, as named in the Complaint; (iii) any parent, subsidiary, affiliate, officer, or director of AIG; (iv) any entity in which any excluded person has a controlling interest; (v) the legal representatives, heirs, successors and assigns of any excluded person; and (vi) Persons who timely and validly made requests for exclusion from the Settlement Class and did not thereafter rescind such requests.

2.       "AIG Securities" are all publicly-traded securities issued by AIG, whether debt or equity securities.  Options on AIG common stock are included in this definition.  Please see Table 4 in the Notice for a list of the AIG bonds eligible for a recovery.

3.       If you held AIG Securities in your name, you are the beneficial purchaser or acquirer *as well as* the record purchaser or acquirer.  If, however, you purchased or otherwise acquired AIG Securities during the Class Period through a third party, such as a nominee or brokerage firm, and the securities were registered in the name of that third party, you are the beneficial purchaser or acquirer of these securities, *but the third party* is the record purchaser or acquirer of these securities.

- 3 -

4.      Use Part I of this form entitled "Claimant Identification" to identify each beneficial purchaser or acquirer of AIG Securities that forms the basis of this claim, as well as the purchaser or acquirer of record if different.  THIS CLAIM MUST BE SUBMITTED BY THE ACTUAL BENEFICIAL PURCHASER(S), OR AUTHORIZED ACQUIRER(S) OR LEGAL REPRESENTATIVE(S) OF SUCH BENEFICIAL PURCHASER(S) OR ACQUIRER(S), OF THE AIG SECURITIES UPON WHICH THIS CLAIM IS BASED.

5.      All joint beneficial purchasers or acquirers must sign this claim.  Executors, administrators, guardians, conservators and trustees must complete and sign this claim on behalf of Persons represented by them and their authority must accompany this claim and their titles or capacities must be stated.  The Social Security (or taxpayer identification) number and telephone number of one of the beneficial owner(s) may be used in verifying this claim.  Failure to provide the foregoing information could delay verification of your claim or result in rejection of your claim.

**INSTRUCTIONS FOR THE IDENTIFICATION OF TRANSACTION(S)**

1.      If you have already submitted a complete Proof of Claim form in connection with the PwC and/or Company Settlements setting forth all your purchases, acquisitions and sales of AIG Securities during the Class Period, DO NOT do so again.

2.      If you have NOT already submitted a Proof of Claim form in connection with the PwC and/or Company Settlements or if your PwC and/or Company Claim form did NOT set forth all your purchases, acquisitions and sales of AIG Securities during the Class Period and you would like additional transactions to be considered in this Settlement, use Parts II through IV of this form to supply all required details of all your transaction(s) in AIG Securities.  If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form.  Sign and print or type your name on each additional sheet.

- 4 -

3.      On the schedules, provide all of the requested information with respect to: (i) *all* of your holdings of AIG Securities as of the beginning of trading on October 28, 1999; (ii) *all* of your purchases, other acquisitions and sales of AIG Securities which took place at any time beginning October 28, 1999 through June 29, 2005, inclusive (or through December 15, 2010 for sales of AIG debt securities); and (iii) proof of your holdings of AIG Securities as of the close of trading on June 29, 2005 (or as of the close of trading on December 15, 2010 for AIG debt securities), whether such purchases, acquisitions, sales or transactions resulted in a profit or a loss. Failure to report all such transactions may result in the rejection of your claim.

4.      List each purchase, acquisition, sale and transaction in the Class Period separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day and year of each such transaction you list. All holdings and transactions must be documented.

5.      Copies of broker confirmations, monthly account statements or other documentation of your purchases, acquisitions, sales or transactions in AIG Securities must be attached to your claim. **DO NOT SEND ORIGINALS.** Failure to provide this documentation could delay verification of your claim or result in rejection of your claim. The Parties and the Administrator do not independently have information about your investments in AIG Securities. The Administrator may also request additional information as needed to efficiently and reliably calculate your losses.

- 5 -

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

*In re AIG Securities Litigation – Starr Defendants Settlement*
### No. 04-cv-8141
### PROOF OF CLAIM FORM

Must be Postmarked No Later Than:
_____, 2012

Please Type or Print

**PART I:**     **CLAIMANT IDENTIFICATION**

_____

Beneficial Owner's Name *(as it appears on your brokerage statement)*

_____

Joint Beneficial Owner's Name *(as it appears on your brokerage statement)*

_____

Street Address

_____     _____

City                                     State                Zip Code

_____     _____

Foreign Province                         Foreign Country

_____     _____

Social Security Number      or    Taxpayer Identification Number

Check appropriate box:
- ☐ Individual or Sole Proprietor  ☐ Pension Plan  ☐ Corporation  ☐ Partnership
- ☐ Trust        ☐    IRA        ☐ UGMA Custodian    ☐ Other _____

_____  _____ (Day)        _____  _____ (Evening)
Area Code   Telephone Number            Area Code      Telephone Number

_____        _____

e-mail address                           Facsimile Number

- 6 -

Were your shares held in "street name" (*i.e.,* in the name of a stock broker or other nominee)?  If so, that broker or nominee is the Record Owner and you are required to fill in the following line.

_____

Record Owner's Name (if different from beneficial owner listed above); e.g. brokerage firm, bank, nominee, etc.

**PART II:     SCHEDULE OF TRANSACTIONS IN AIG COMMON STOCK**

A.     **Number of shares of AIG common stock held** at the beginning of trading on **October 28, 1999**: _____

B.     **Purchases or other acquisitions** (including through exchange of HSB stock or AGC stock) of AIG common stock on or after **October 28, 1999** through and including **April 1, 2005** (in chronological order):

| Trade Date<br>Month Day Year | Number of Shares<br>Purchased or Acquired | Total Purchase Price* |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |
| 4. _____ | _____ | _____ |
| 5. _____ | _____ | _____ |

C.     **Sales** on or after **October 28, 1999** through and including **June 29, 2005** of AIG common stock (in chronological order):

| Trade Date<br>Month Day Year | Number of<br>Shares Sold | Total Sales Price* |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |
| 4. _____ | _____ | _____ |
| 5. _____ | _____ | _____ |

D.     **Number of shares of AIG common stock held** at close of trading on **June 29, 2005**: _____

**\* Excluding taxes, fees and commissions.**

- 7 -

**PART III:**     **SCHEDULE OF TRANSACTIONS IN AIG DEBT SECURITIES**

**POSITIONS**

A.     **Beginning and Ending Positions:** I owned the following principal amounts of AIG Bonds/Notes held at the close of business on **Oct. 27, 1999,** at the close of business on **April 1, 2005,** at the close of business on **June 29, 2005,** and at the close of business on **December 15, 2010** (please provide separately for each particular AIG Bond/Note):

| Coupon Rate | Maturity Date | Cusip | Principal amount of this particular bond/note held as of the close of business on Oct. 27, 1999 | Principal amount of this particular bond/note held as of the close of business on April 1, 2005 | Principal amount of this particular bond/note held as of the close of business on June 29, 2005 | Principal amount of this particular bond/note held as of the close of business on December 15, 2010 |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**PURCHASES AND SALES**

B.     **Purchases/Acquisitions:** I made the following purchases or acquisitions of AIG Bonds/Notes on or after **Oct. 28, 1999** through and including **April 1, 2005** (in chronological order):

| Coupon Rate/Maturity | Trade Date Month/ Day/ Year | Principal Amount | Cusip | Purchase Price per $1000 of Principal Amount* | Aggregate Cost* |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**\* Excluding taxes, fees and commissions.**

- 8 -

C.    **Sales:** I made the following sales of AIG Bonds/Notes on or after **Oct. 28, 1999** through and including **December 15, 2010** (in chronological order):

| Coupon Rate/Maturity | Trade Date Month/ Day/ Year | Principal Amount | Cusip | Sale Price per $1000 of Principal Amount* | Aggregate Received* |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

*If you require additional space, attach extra schedules in the same format as above. Sign and print your name on each additional page.*

**PART IV:**    **SCHEDULE OF TRANSACTIONS IN AIG OPTION SECURITIES**

**AIG CALL OPTIONS**

A.    **Beginning Position:** At the close of business on **Oct. 27, 1999**, I owned the following call options on AIG common stock (in chronological order):

| Date of Purchase (Month/Day/Year) | No. of Contracts | Cusip | Expiration Month & Year/Strike Price (e.g. May 2004/$45) | Purchase Price Per Contract | Amount Paid | Insert an "E" if Exercised or an "X" if Expired | Exercise Date [Month/Day/Year] |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

B.    **Purchases**:  I made the following purchases of call options on AIG common stock on or after **Oct. 28, 1999** through and including **April 1, 2005** (in chronological order):

| Date of Purchase (Month/Day/Year) | No. of Contracts | Cusip | Expiration Month & Year/Strike Price of Options (e.g. May 2004/$45) | Purchase Price Per Contract | Amount Paid* | Insert an "E" if Exercised or an "X" if Expired | Exercise Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

  \* **Excluding taxes, fees and commissions.**

C.    **Sales**:  I made the following sales of the above call options on AIG common stock which call options were purchased before **April 1, 2005 (include all such sales no matter when they occurred)** (in chronological order):

| Date of Sales (Month/Day/Year) | No. of Contracts | Cusip | Expiration Month & Year / Strike Price (e.g. May 2004/$45) | Sale Price Per Contract | Amount Received* |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

## AIG PUT OPTIONS

D.    **Beginning Position**:  At the close of business on **Oct. 27, 1999,** I was obligated on the following put options on AIG common stock (in chronological order):

| No. of Contracts | Expiration Month & Year /Strike Price (e.g. May 2004/$45) | Cusip | Sale Price Per Contract | Amount Received* | Insert an "A" if Assigned or an "X" if Expired | Assign Date (Month/Day/Year) |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

- 10 -

E.   **Sales (Writing) of Put Options**:  I wrote (sold) put options on AIG  common stock on or after **Oct. 28, 1999** through and including **April 1, 2005** (in chronological order):

| Date of Writing (Sale) (Month/Day/ Year) | No. of Contracts | Cusip | Expiration Month & Year /Strike Price (e.g. May 2004/$45) | Sale Price Per Contract | Amount Received* | Insert an "A" if Assigned or an "X" if Expired | Assign Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| . | | | | | | | |

\* Excluding taxes, fees and commissions.

F.   **Covering Transactions (Repurchases)**:  I made the following repurchases of the above put options on AIG common stock that I wrote (sold) before **April 1, 2005 (include all repurchases no matter when they occurred)** (in chronological order):

| Date of Purchase (List Chronologically) (Month/Day/Year) | No. of Contracts | Cusip | Expiration Month & Year/ Strike Price (e.g. May 2004/$45) | Price Paid Per Contract* | Aggregate Cost* |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

\* Excluding taxes, fees and commissions.

**YOU ARE NOT FINISHED, PLEASE READ THE RELEASE AND SIGN ON PAGE ____ BELOW.  FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**

**PART V:   SUBMISSION TO THE JURISDICTION OF THE COURT AND ACKNOWLEDGMENTS**

I (We) submit this Proof of Claim under the terms of the Contingent Agreement of Compromise and Settlement, dated August 10, 2009 ("Agreement") described in the Notice.  I (We) also submit to the jurisdiction of the United States District Court for the Southern District of New York with respect to my (our) claim as a member of the Settlement Class and for

- 11 -

purposes of enforcing the release set forth herein. I (We) further acknowledge that I (we) will be bound by and subject to the terms of any Order and Final Judgment that may be entered in the Action. I (We) agree to furnish additional information to the Administrator to support this claim if requested to do so. I (We) have not submitted any other claim in this Settlement covering the same purchases, acquisitions, sales or holdings of AIG Securities during the Class Period and know of no other Person having done so on my (our) behalf.

**PART VI:**     **RELEASE**

1.     I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release and discharge from the Starr Released Claims each and all of the Starr Released Persons as those terms are defined in the accompanying Notice.

2.     This release shall be of no force or effect unless and until the Court approves the Agreement, the Effective Date (as defined in the Agreement) has occurred and the Starr Defendants have funded the Settlement as set forth in the Agreement.

3.     Effective upon the Effective Date, with respect to any and all Starr Released Claims, I (we) hereby expressly waive the provisions, rights and benefits of California Civil Code § 1542 and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

> I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

- 12 -

4.      I (We) hereby warrant and represent that I (we) have included information about all of my (our) purchases, acquisitions, and sales and other transactions in AIG Securities which occurred during the Class Period (October 28, 1999 through April 1, 2005, inclusive) and the number of shares or units of AIG Securities held by me (us) at the requested periods of time.

## SUBSTITUTE FORM W-9

Request for Taxpayer Identification Number ("TIN") and Certification

PART 1

NAME: _____

Check appropriate box:

| | | | |
|---|---|---|---|
| ☐  Individual/Sole Proprietor | | ☐  Pension Plan | |
| ☐  Corporation | ☐  Partnership | ☐  Trust | |
| ☐  IRA | ☐  Other | | |

Enter TIN on appropriate line.

For individuals, this is your social security number ("SSN").

For sole proprietors, you must show your individual name, but you may also enter your business or "doing business as" name.  You may enter either your SSN or your Employer Identification Number.

__ __ - __ __ - __ __ __ __          or          __ __ - __ __ __ __ __ __ __
Social Security Number                                      Employer Identification Number

PART 2

For Payees Exempt from Backup Withholding

If you are exempt from backup withholding, enter your correct TIN in Part 1 and write "exempt" on the following line: _____.

- 13 -

**PART VII:   <u>CERTIFICATION</u>**

UNDER THE PENALTY OF PERJURY, I (WE) CERTIFY THAT:

1.      I (We) have read the contents of the Notice and the Proof of Claim, including the releases provided for in the Settlement;

2.      I (We) hereby warrant and represent that I (we) am (are) Settlement Class Member(s), as defined in the Notice, and am (are) not excluded from the Settlement Class as defined herein and in the Notice;

3.      I (We) own(ed) the AIG Securities identified in the Proof of Claim, or that, in signing and submitting this Proof of Claim, I (we) have the authority to act on behalf of the owner(s) thereof;

4.      I (We) desire to participate in the settlement described in the Notice and agree to the terms and conditions thereof;

5.      I (We) waive trial by jury, to the extent it exists, and agree to the Court's summary disposition of the determination of the validity or amount of the claim made by this Proof of Claim;

6.      The number shown on this form is my correct TIN;

7.      I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1)(C) of the Internal Revenue Code because:  (a) I am (we are) exempt from backup withholding; or (b) I (we) have not been notified by the Internal Revenue Service that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the Internal Revenue Service has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE:        If you have been notified by the Internal Revenue Service that you are subject to backup withholding, you must cross out the above paragraph.  The Internal

- 14 -

Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

8.      I (We) declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct and that the documents submitted herewith are true and genuine.


Executed this _____ day of _____, in _____, _____.
                              (Month / Year)              (City)              (State / Country)



_____
(Sign your name here)

_____
(Type or print your name here)

_____
(Signature of Joint Claimant, if any)

_____
(Print your name here)

_____
(Capacity of person(s) signing, *e.g.*, Beneficial Purchaser, Executor or Administrator)


- 15 -

**ACCURATE CLAIMS PROCESSING TAKES A**
**SIGNIFICANT AMOUNT OF TIME.**
**THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1.  Please sign the above release and certification.

2.  Remember to attach supporting documentation.

3.  Do not send original or copies of stock certificates.

4.  Keep a copy of the completed claim form and documentation for your records.

5.  If you do not receive an acknowledgment postcard of receipt of your claim form within forty (40) days of your mailing the form, then please call the Administrator, toll-free, at _____.

6.  If you move, please send the Administrator your new address: In re AIG Securities Litigation – Starr Defendants Settlement, c/o _____, P.O. Box _____, ___ ___ _____, (800) _____, www._____.

- 16 -

# EXHIBIT 4

# *AIG*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
*IN RE AMERICAN INTERNATIONAL GROUP, INC. SECURITIES LITIGATION*
**Starr Defendants Settlement**
Master File No. 04 Civ. 8141 (DAB)

| | |
|---|---|
| «barcode» — «Seq_no»<br><br>«barcode» — «Seq_no»<br>«name1»<br>«name2»<br>«name3»<br>«addr1»<br>«addr2»<br>«city», «state»  «zip5»<br>«country_name» | **Please correct the name or address if different from information on left:** |

## RELEASE FORM

**This Release Form is <u>ONLY</u> to be used by persons or entities that have <u>ALREADY</u> submitted a Proof of Claim form in connection with the previously announced settlements with defendant PricewaterhouseCoopers LLP (the "PwC Settlement") and/or defendant American International Group, Inc. (the "Company Settlement").** If you submitted a PwC or Company Claim form, it will be used to calculate your claim in connection with the above referenced settlement and you must sign and return this Release Form. (However, if you have additional transactional information related to your purchases, acquisitions or sales of AIG Securities that you did <u>not</u> submit on your PwC and/or Company Claim form that you would like considered in the calculation of your claim in this Settlement with AIG, please complete and submit a new Proof of Claim form.  If you would like a Proof of Claim form, please contact the Administrator at _____. )

I (We) submit this Release Form under the terms of the Contingent Agreement of Compromise and Settlement, dated August 10, 2009 ("Agreement") described in the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Fairness Hearing ("Notice").  I (We) also submit to the jurisdiction of the United States District Court for the Southern District of New York with respect to my (our) claim as a member of the Settlement Class and for purposes of enforcing the release set forth herein.  I (We) further acknowledge that I (we) will be bound by and subject to the terms of any Order and Final Judgment that may be entered in the Action.  I (We) agree to furnish additional information to the Administrator to support our claim if requested to do so.  I (We) have not submitted any other claim in this Settlement and know of no other Person having done so on my (our) behalf.

I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release and discharge from the Starr Released Claims each and all of the Starr Released Persons as those terms and terms related thereto are defined in the accompanying Notice.  This release shall be of no force or effect unless and until the Court approves the Agreement, the Effective Date (as defined in the Agreement) has occurred and the Starr Defendants have funded the Settlement as set forth in the Agreement.

Effective upon the Effective Date, with respect to any and all Starr Released Claims, I (we) hereby expressly waive the provisions, rights and benefits of California Civil Code § 1542 and any provisions, rights and benefits conferred

by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

I (We) have read the contents of the Notice and the Release Form, including the releases provided for in the Settlement;

I (We) hereby warrant and represent that I (we) am (are) Settlement Class Member(s), as defined in the Notice, and am (are) not excluded from the Settlement Class as defined in the Notice;

I (We) own(ed) the AIG Securities identified in the Proof of Claim previously submitted in the PWC and/or Company Settlements, or that, in signing and submitting the PwC and/or Company Claim form, I (we) had the authority to act on behalf of the owner(s) thereof;

I (We) desire to participate in the settlement described in the Notice and agree to the terms and conditions thereof;

I (we) waive trial by jury, to the extent it exists, and agree to the Court's summary disposition of the determination of the validity or amount of the claim made by the PwC and/or Company Claim form previously submitted in the related PWC and/or Company Settlements;

I (We) certify that the number shown on the PwC and/or Company Claim form previously submitted in the related PWC and/or Company Settlements is my correct TIN;

I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1)(C) of the Internal Revenue Code because: (a) I am (we are) exempt from backup withholding; or (b) I (we) have not been notified by the Internal Revenue Service that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the Internal Revenue Service has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE:   If you have been notified by the Internal Revenue Service that you are subject to backup withholding, you must cross out the above paragraph. The Internal Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

## SUPPLEMENTAL TRANSACTIONAL INFORMATION FOR AIG DEBT SECURITIES

The Plan of Allocation in this Settlement with the Starr Defendants requires certain additional information about your transactions in AIG Debt Securities. If you purchased or sold AIG Debt Securities, you must provide the following information.

I held the following principal amounts of AIG Bond/Notes at the close of business on December 15, 2010:

| Coupon Rate | Maturity Date | Cusip | Principal amount of this particular bond/note held as of the close of business on December 15, 2010 |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

I made the following sales of AIG Bonds/Notes on or after April 2, 2005 through and including December 15, 2010:

| Coupon Rate/Maturity | Trade Date Month/ Day/ Year | Principal Amount | Cusip | Sale Price per $1000 of Principal Amount* | Aggregate Received* |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

I (We) declare under penalty of perjury under the laws of the United States of America that the information supplied by the undersigned is true and correct.

Executed this _____ day of _____, in _____ _____, _____.

                            (Month / Year)       (City)       (State / Country)

---

(Sign your name here)                                  (Print your name here)

---

(Signature of Joint Claimant, if any)                         (Print your name here)

---

(Capacity of person(s) signing, e.g. Beneficial Purchaser, Executor, or Administrator)

1.   To qualify for a payment from the Cash Settlement Account, created as a result of the partial settlement with defendants Maurice R. Greenberg, Howard I. Smith, Christian M. Milton, Michael J. Castelli, C.V. Starr & Co., Inc., and Starr International Company, Inc. (collectively, "the Starr Defendants"), as a member of the Settlement Class in the class action lawsuit entitled In re American International Group, Inc.

3

Securities Litigation, Master File No. 04 Civ. 8141 (DAB) (the "Action"), you must sign this Release Form and return it to the address listed below.  If you fail to submit a timely, properly signed Release Form, your claim may be rejected and you may be precluded from any recovery from the Cash Settlement Account.

2.  Submission of this Release Form, however, does not ensure that you will share in the Cash Settlement Account, even if you are a member of the Settlement Class.

3.  This Release Form must be mailed no later than _____ to:

*IN RE AIG SECURITIES LITIGATION - Starr Defendants Settlement*
*c/o .*
P.O. Box XXXXX
_____

**DO NOT MAIL your Release Form to the Court or to counsel for the Settling Parties.**

4.  If you are NOT a member of the Settlement Class (as defined in the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses Award and Fairness Hearing) DO NOT submit this Release Form.  You are not entitled to a recovery.

5.  If you are a member of the Settlement Class and you have not timely and validly requested to be excluded from the Settlement Class, you will be bound by the terms of the Order and Final Judgment entered by the Court, WHETHER OR NOT YOU SUBMIT A RELEASE FORM.

4