**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x
                                                          :
                                                          :       ECF CASE
IN RE AMERICAN INTERNATIONAL GROUP,   :
INC. SECURITIES LITIGATION                       :       Master File No. 04 Civ. 8141 (DAB) (AJP)
                                                          :
This Document Relates To:  All Actions       :       <u>Oral Argument Requested</u>
                                                          :
                                                          :
———————————————————————— x


**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND
<u>LEAD PLAINTIFF'S REQUEST FOR REIMBURSEMENT OF EXPENSES</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .............................................................................................................................. 3

I.    LEAD COUNSEL IS ENTITLED TO THE REASONABLE ATTORNEYS'
FEE REQUESTED HEREIN ........................................................................................ 3

    A.    A Fee of 13.25% Is Fair, Reasonable, and Comparable to Fees Awarded
in Similar Cases ................................................................................................ 4

    B.    The Requested Fee Was Negotiated with Lead Plaintiff and Is Entitled to
Great Weight .................................................................................................... 6

    C.    The Requested 13.25% Fee Is Appropriate Under the *Goldberger* Factors .... 6

        1.    The Time and Labor Expended by Plaintiffs' Counsel ....................... 7

        2.    The Magnitude and Complexities of the Litigation ............................ 9

        3.    The Risks of the Litigation ................................................................ 11

        4.    The Quality of Representation ........................................................... 14

        5.    The Requested Fee in Relation to the Results Achieved ................... 15

        6.    Public Policy Considerations Support the Requested Fee ................. 16

    D.    The Class's Reaction to the Fee Request to Date ............................................ 17

II.    LEAD COUNSEL SHOULD BE REIMBURSED FOR LITIGATION
EXPENSES REASONABLY INCURRED IN CONNECTION WITH THIS
ACTION ...................................................................................................................... 18

III.    THE OHIO STATE FUNDS ARE ENTITLED TO REIMBURSEMENT OF
REASONABLE COSTS AND EXPENSES, INCLUDING LOST WAGES ............... 20

CONCLUSION ......................................................................................................................... 22

### TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,*
  No. 03 MDL 1529 (LMM), 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006),
  *aff'd*, 272 F. App'x 9 (2d Cir. 2008) .................................................................................15

*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....................................................................................14

*In re Arakis Energy Corp. Sec. Litig.,*
  No. 95-cv-3431, 2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) .........................................18

*In re AT&T Corp. Sec. Litig.,*
  455 F.3d 160 (3d Cir. 2006) ....................................................................................................5

*Blum v. Stenson,*
  465 U.S. 886 (1984) .........................................................................................................3, 4, 8

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) .................................................................................................................3

*In re Cardinal Health, Inc. Sec. Litig.,*
  528 F. Supp. 2d 752 (S.D. Ohio 2007) ....................................................................................5

*Carlson v. Xerox Corp.,*
  596 F. Supp. 2d 400 (D. Conn. 2009) .....................................................................................5

*In re Cavanaugh,*
  306 F.3d 726 (9th Cir. 2002) .................................................................................................21

*In re Charter Commc'ns, Inc., Sec. Litig.,*
  No. 02-cv-1506, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ..........................................21

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ....................................................................................................6

*In re CMS Energy Sec. Litig.,*
  No. 02-cv-72004 (GCS), 2007 U.S. Dist. LEXIS 96786 (E.D. Mich. Sept. 6, 2007) .........5

*In re Comverse Tech., Inc. Sec. Litig.,*
  No. 06-cv-1825, 2010 WL 2653354  (E.D.N.Y. June 24, 2010) ..........................................4

*In re Cont'l Ill. Sec. Litig.,*
  962 F.2d 566 (7th Cir. 1992) .................................................................................................11

*In re Deutsche Telekom AG Sec. Litig.,*
　No. 00-cv-9475 (NRB), 2005 U.S. Dist. LEXIS 45798 (S.D.N.Y. June 14, 2005) ........................... 4

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
　No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..................................................... 13, 16

*Fogarazzo v. Lehman Brothers, Inc.,*
　No. 03-cv-5194, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ................................................................ 9

*In re Global Crossing Sec. & ERISA Litig.,*
　225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................ 5, 11, 19

*Goldberger v. Integrated Res., Inc.,*
　209 F.3d 43 (2d Cir. 2000) ........................................................................................................ 3, 4, 6

*Hersch v. DeWitt Stern Group, Inc.,*
　841 N.Y.S.2d 516 (2007) ......................................................................................................... 12, 13

*Hicks v. Stanley,*
　No. 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .......................................... 14, 16

*In re Indep. Energy Holdings PLC Sec. Litig.,*
　302 F. Supp. 2d 180 (S.D.N.Y. 2003) .......................................................................................... 18

*Kurzweil v. Philip Morris Cos.,*
　No. 94-cv-2373 (MBM), 1999 WL 1076105 (S.D.N.Y. Nov. 30, 2009) ............................................ 5

*LeBlanc-Sternberg v. Fletcher,*
　143 F.3d 748 (2d Cir. 1998) ........................................................................................................ 7

*Luciano v. Olsten Corp.,*
　109 F.3d 111 (2d Cir. 1997) ......................................................................................................... 8

*Maley v. Del Global Techs. Corp.,*
　186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................. 4, 16, 17

*In re Marsh & McLennan Cos., Inc. Sec. Litig.,*
　No. 04-cv-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................ 13, 18, 20

*In re Mercury Interactive Corp. Sec. Litig.,*
　No. 05-cv-3395 (JF), 2011 WL 826797 (N.D. Cal. Mar. 3, 2011) ........................................................ 5

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
　246 F.R.D. 156 (S.D.N.Y. 2007) ...........................................................................................5, 9

*Missouri v. Jenkins,*
　491 U.S. 274 (1989) .................................................................................................................4

*In re Omnicom Group Inc. Sec. Litig.,*
  597 F.3d 501 (2d Cir. 2010) .................................................................................................13

*In re Oxford Health Plans, Inc. Sec. Litig.,*
  No. MDL 1222, 2003 U.S. Dist. LEXIS 26795 (S.D.N.Y. June 12, 2003) ...........................5

*In re Priceline.com, Inc. Sec. Litig.,*
  No. 00-cv-1884 (AVC), 2007 WL 2115592 (D. Conn. July 20, 2007)..................................4

*In re Philip Servs. Corp. Sec. Litig.,*
  No. 98-cv-835 (AKH), 2007 WL 959299 (S.D.N.Y. Mar. 28, 2007) ....................................4

*In re Prudential Sec. Inc. Ltd. P'ship Litig.,*
  985 F. Supp. 410 (S.D.N.Y. 1997) .....................................................................................17

*In re Rite Aid Corp. Sec. Litig.,*
  362 F. Supp. 2d 587 (E.D. Pa. 2005) ...................................................................................5

*In re Rite Aid Corp. Sec. Litig.,*
  396 F. 3d 294 (3d Cir. 2005) ...............................................................................................5

*In re Salomon Analyst Metromedia Litig.,*
  544 F.3d 474 (2d Cir. 2008) ...............................................................................................13

*In re Schering-Plough Corp. Sec. Litig.,*
  No. 01-cv-0829 (KSH/MF), 2009 WL 5218066 (D.N.J. Dec. 31, 2009)...........................5

*Schwartz v. TXU Corp.,*
  No. 02-cv-2243, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ............................................5

*In re Sumitomo Copper Litig.,*
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) ..................................................................................11

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,*
  No. 01 Civ. 11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) .......................................11

*In re Telik, Inc. Sec. Litig.,*
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007) ............................................................................................................16

*In re The Mills Corp. Sec. Litig.,*
  265 F.R.D. 246 (E.D. Va. 2009)............................................................................................5

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,*
  724 F. Supp. 160 (S.D.N.Y. 1989) .....................................................................................17

*U.S. v. Ferguson,*
   653 F. 3d 61 (2d Cir. 2011),
   *amended and superseded by* 2011 WL 6351862 (2d Cir. Dec. 19, 2011) ....................................................13

*In re Veeco Instruments Inc. Sec. Litig.,*
   No. 05 MDL 01695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ......................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005), *cert. denied sub nom.,*
   *Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.,* 544 U.S. 1044 (2005) ....................................3

*In re WorldCom, Inc. Sec. Litig.,*
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)..............................................................................................6, 16

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.,*
   364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................................................21

## DOCKETED CASES

*In re Bristol-Myers Squibb Sec. Litig.,*
   No. 00-cv-1990 (SRC) (D.N.J. May 11, 2006), *aff'd,*
   No. 06-2964, 2007 WL 2153284 (3d Cir. July 27, 2007)................................................................5, 20

*In re Broadcom Corp. Class Action Litig.,*
   No. 06-cv-5036 (CWx) (C.D. Cal. Aug. 11, 2010) ............................................................................5

*In re General Motors Corp. Sec. & Derivative Litig.,*
   No. MDL 1749 (E.D. Mich. Jan. 6, 2009) ......................................................................................20

*In re HealthSouth Corp. Sec. Litig.*
   No. 03-1500-S (N.D. Ala. Feb. 12, 2008 - July 26, 2010)..................................................................5

*In re Satyam Computer Services Ltd. Sec. Litig.,*
   No. 09-2027 (S.D.N.Y. Sept. 13, 2011)..........................................................................................20

## FEDERAL STATUTES

15 U.S.C. §78u-4(a) ..............................................................................................................................20

## PRELIMINARY STATEMENT

Labaton Sucharow LLP and Hahn Loeser & Parks LLP, Court-appointed Lead Counsel for the Ohio Public Employees Retirement System ("OPERS"), State Teachers Retirement System of Ohio ("STRS Ohio") and the Ohio Police & Fire Pension Fund ("OP&F") (collectively, "Lead Plaintiff" or the "Ohio State Funds") and the Settlement Class,[1] respectfully submit this memorandum of law in support of, *inter alia*: (1) their motion, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, on behalf of all plaintiffs' counsel who contributed to the prosecution of this Action ("Plaintiffs' Counsel"), for an award of attorneys' fees and reimbursement of litigation expenses to be paid out of the Cash Settlement Account, and (2) Lead Plaintiff's application for reimbursement of its reasonable costs and expenses (including lost wages) directly relating to the representation of the Settlement Class, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4 (a)(4).

Lead Plaintiff has reached a proposed settlement of the claims alleged against Defendants Maurice R. Greenberg, Howard I. Smith, Christian M. Milton, Michael J. Castelli, C.V. Starr & Co., Inc. ("C.V. Starr"), and Starr International Company, Inc. ("SICO" and collectively, the "Starr Defendants") in the above-captioned Action for $115 million in cash (the "Settlement") under the terms set forth in the Agreement.  The $115 million proposed Settlement with the Starr Defendants is an outstanding result for the proposed Settlement Class and would resolve claims that were the subject of five years of hard-fought litigation between Lead Plaintiff and the Starr Defendants. Indeed, when combined with the $725 million settlement with AIG (the "Company Settlement") and the $97.5 million settlement with PricewaterhouseCoopers LLP (the "PwC Settlement"), it would be part of the ***10th largest*** securities class action settlement, according to the most recent

---

[1] All capitalized terms not otherwise defined herein have the same meaning as that defined in the Contingent Agreement of Compromise and Settlement, dated August 10, 2009 (the "Agreement").

report of Securities Class Action Services.[2]  Importantly, if viewed as primarily a settlement with individual defendants it is one of the largest such settlements in the history of securities litigation, and if viewed primarily as a settlement of control person claims (*i.e.*, those against C.V. Starr and SICO), based on our research it appears to be the largest of its kind.  In any event, the Settlement is an excellent result achieved through Lead Plaintiff and Lead Counsel's persistent and creative efforts.  Lead Plaintiff has now reached settlements with all Defendants in the Action.

Lead Counsel respectfully seeks an award of attorneys' fees in the amount of 13.25% of the net Settlement Amount (*i.e.*, $115 million, minus litigation expenses[3]), and reimbursement of $550,897.29 in expenses reasonably incurred in the course of pursuing the claims against the Starr Defendants.  These requests are supported by the Declaration and Supplemental Declaration of Dennis P. Smith, Esq., Assistant Attorney General in the Office of the Ohio Attorney General ("Supplemental Smith Decl."), the Declaration of Julie E. Becker, Esq. of OPERS, and the Declaration of William J. Neville, Esq. of STRS Ohio.  *See* Exs. 4-5, 7-8. Further, Lead Plaintiff, supported by the Declarations of Julie Becker and William Neville, respectfully seeks reimbursement of $3,967 in costs as a result of the time expended by OPERS in representing the Settlement Class and $3,838 in costs as a result of the time expended by STRS Ohio.  Ex. 4 and 5.

The attorneys' fee request is very fair and reasonable when one considers: (i) the outstanding result for the Settlement Class; (ii) the amount of work done by Lead Counsel to achieve this result;

---

[2] *See* Declaration of Thomas A Dubbs in Support of Proposed Class Settlement, Plan of Allocation and Award of Attorneys' Fees and Expenses ("Dubbs Declaration" or "Dubbs Decl."), dated April 27, 2012, Ex. 1.  All exhibits referenced herein are annexed to the Dubbs Declaration.  For clarity, citations to exhibits that themselves have attached exhibits, will be referenced as "Ex. ___ - ___."  The first numerical reference refers to the designation of the entire exhibit attached to the Dubbs Declaration and the second reference refers to the exhibit designation within the exhibit itself.

The Dubbs Declaration is an integral part of this motion and is incorporated herein by reference.  For the sake of brevity, the Court is respectfully referred to the Dubbs Declaration for, *inter alia*: a detailed history of the Action; the nature of the claims asserted against the Starr Defendants; the investigation undertaken; the negotiations leading to settlement; the value of the Settlement compared to the risks of continued litigation; and a description of the services provided by Lead Counsel.

[3] If the requested expenses are awarded by the Court, the fee request would total $15,164,506.10.

(iii) the risks involved in prosecuting the claims against the Starr Defendants; and (iv) the amount of fees awarded by courts within this Circuit and in other circuits in comparable cases.  The requested expenses are also reasonable, as they are the type that are regularly reimbursed by courts within this Circuit and they were necessary for the thorough prosecution of the claims.  To date, no Settlement Class Members have filed objections to Lead Counsel's fee and expense request.[4]

It is respectfully submitted that without the tenacity and creativity of Lead Counsel, the Settlement would not have been reached.  Accordingly, Lead Counsel's fee and expense request should be granted.

## ARGUMENT

## I.    LEAD COUNSEL IS ENTITLED TO THE REASONABLE ATTORNEYS' FEE REQUESTED HEREIN

It is well-settled that attorneys who represent a class and achieve a benefit for class members are entitled to a reasonable fee as compensation for their services.  The Supreme Court has recognized that "a lawyer who recovers a common fund for the benefit of persons other than . . . his client is entitled to a reasonable attorneys' fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The Second Circuit, similarly, has confirmed that attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

The Supreme Court has suggested that in the case of a common fund, the attorneys' fee awarded may be determined on a percentage-of-recovery basis.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class…").  Since then, district courts within the Second Circuit have applied the percentage of the fund approach to calculate attorneys' fees.  *See Wal-Mart Stores, Inc. v.*

---

[4] The time for Settlement Class Members to object to the application for attorneys' fees and reimbursement of litigation expenses will expire on May 25, 2012.  Any objections received will be addressed in Lead Plaintiff's reply papers, which will be filed with the Court on June 13, 2012.

*Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), *cert. denied sub nom. Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*, 544 U.S. 1044 (2005).

In sum, this Court should approve Lead Counsel's reasonable percentage-of-recovery request.

### A.     A Fee of 13.25% Is Fair, Reasonable, and Comparable to Fees Awarded in Similar Cases

A reasonable percentage fee award generally should emulate what counsel would receive had they bargained in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). If this action were a non-representative litigation, the customary fee arrangement likely would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery, **a much higher percentage than the 13.25% requested in this Action**. *See Blum v. Stenson*, 465 U.S. 886, 904 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.").

A 13.25% attorneys' fee falls well within, if not at the lower end of, the range of fees typically awarded by courts in common-fund cases in this Circuit since *Goldberger. See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (McMahon, J.) ("Courts in this Circuit have awarded fees ranging from 15% to 50% of the settlement fund.") (awarding 33-1/3% fee). In securities class actions and other common fund cases with comparable recoveries, numerous courts in this Circuit have typically awarded fees ranging from 18% to 30% of the settlement fund. *See, e.g., In re Converse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (awarding 25% of $225 million settlement); *In re Priceline.com, Inc. Sec. Litig.,* No. 00-cv-1884 (AVC), 2007 WL 2115592, at *4-5 (D. Conn. July 20, 2007) (awarding 30% of $80 million settlement); *In re Philip Servs. Corp. Sec. Litig.*, No. 98-cv-835 (AKH), 2007 WL 959299, at *3 (S.D.N.Y. Mar. 28, 2007) (awarding 26% of $79.750 million settlement); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-cv-9475 (NRB), 2005 U.S. Dist. LEXIS 45798, at *12-13 (S.D.N.Y. June 14, 2005) (awarding 28% of $120

million settlement); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 464-68 (S.D.N.Y. 2004) (awarding 18.7% of $205 million settlement); *In re Oxford Health Plans, Inc. Sec. Litig.*, No. MDL 1222, 2003 U.S. Dist. LEXIS 26795, at *13 (S.D.N.Y. June 12, 2003) (awarding 28% of $300 million settlement); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 178 (S.D.N.Y. 2007) (awarding 24% of $133 million settlement); *Kurzweil v. Philip Morris Cos.*, No. 94-cv-2373 (MBM), 1999 WL 1076105, at *1 (S.D.N.Y. Nov. 30, 1999) (awarding 30% of $123.8 million settlement); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 400 (S.D.N.Y. 1999) (awarding 27.5% of $116.6 million settlement).[5]

An examination of fee decisions in securities class actions with settlements between $100 million and $200 million in other federal jurisdictions also shows that an award of 13.25% is on the lower end of the range of awards.  For example, in *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298 (3d Cir. 2005), the Third Circuit noted the District Court's reliance on an expert declaration of Professor John C. Coffee, which found that "percentage recoveries between 25% to 30% were 'fairly standard' in . . . class actions involving settlements between $100 and $200 million.[6] Accordingly, the attorneys' fee requested here is within the range of other fees awarded by courts across the country.

---

[5] When the Settlement is viewed as part of the combined total of the Settlements in the Action approved by the Court to date (*i.e.*, $937.5 million), the combined fee request of approximately 12% is also within the range of other court-approved fees.  *See, e.g., In re HealthSouth Corp. Sec. Litig.*, No. 03-1500-S, slip op. (N.D. Ala. July 26, 2010) (Ex. 26) (awarding an average of 15.3% of $804,500,000 total settlement amount); *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400 (D. (Ex. 26)(D. Conn. 2009) (awarding 16% of $750,000,000 settlement); *In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007) (awarding 18% of $600 million settlement).

[6] *See also, e.g., In re AT&T Corp. Sec. Litig.*, 455 F.3d 160 (3d Cir. 2006) (affirming award of 21.25% of $100 million settlement); *In re Mercury Interactive Corp. Sec. Litig.*, No. 05-cv-3395-JF, 2011 WL 826797, at *3 (N.D. Cal. Mar. 3, 2011) (awarding 22% of $117.5 million settlement); *In re Broadcom Corp. Class Action Litig.*, No. 06-cv-5036 (CWx), slip op. at 2 (C.D. Cal. Aug. 11, 2010) (Ex. 26)(awarding 18.5% of $160.5 million settlement); *In re Schering-Plough Corp. Sec. Litig.*, No. 01-cv-0829 (KSH/MF), 2009 WL 5218066, at *5-6 (D.N.J. Dec. 31, 2009) (awarding 23% of $165 million settlement); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260-64 (E.D. Va. 2009) (awarding 18% of $202.75 million settlement); *In re CMS Energy Sec. Litig.*, No. 02-cv-72004 (GCS), 2007 U.S. Dist. LEXIS 96786, at *14-15 (E.D. Mich. Sept. 6, 2007) (awarding 22.5% of $200 million settlement); *In re Bristol-Myers Squibb Sec. Litig.*, No. 00-cv-1990 (SRC), slip op. at 2 (D.N.J. May 11, 2006) (Ex. 26) (awarding 19.77% of $185 million settlement), *aff'd*, No. 06-2964, 2007 WL 2153284 (3d Cir. July 27, 2007); *Schwartz v. TXU Corp.*, No. 02-cv-2243, 2005 WL 3148350, at *24-34 (N.D. Tex. Nov. 8, 2005) (awarding 22% of $149.75 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 588-90 (E.D. Pa. 2005) (awarding 25% of $126.6 million settlement).

**B.      The Requested Fee Was Negotiated with Lead Plaintiff
and Is Entitled to Great Weight**

The amount of the requested fee was the subject of informed negotiation between Lead

Counsel and the Office of the Ohio Attorney General on behalf of Lead Plaintiff.  Dubbs Decl.¶ 33.

The Ohio Attorney's General's Office supports the fee request, Supplemental Smith Decl. ¶ 3, and

has noted the "extraordinary circumstances confronted in this case, the creative and aggressive

resolution of the issues as reflected in the Settlements, and the excellent result obtained by Lead

Counsel for all members of the Settlement Class, who will benefit by the recovery made under these

settlements.  Moreover, the Ohio AG believes that [the fee requested is] fully consistent with the

Contract . . . ."  *See* Ex. 7 ¶ 22.  This support by the Ohio Attorney General's Office strongly favors

approval of the requested fee.  *See In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319,356 (S.D.N.Y.

2005) (Cote, J.) ("When class counsel in a securities lawsuit have negotiated an arm's-length

agreement with a sophisticated lead plaintiff possessing a large stake in the litigation, and when that

lead plaintiff endorses the application following close supervision of the litigation, the court should

give the terms of that agreement great weight.").

**C.      The Requested 13.25% Fee Is Appropriate Under the *Goldberger* Factors**

In determining a reasonable attorneys' fee, district courts are guided by the factors first

articulated by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).  As

summarized more recently in *Goldberger*, these factors include:

> "(1) the time and labor expended by counsel; (2) the magnitude and
> complexities of the litigation; (3) the risk of the litigation . . . ; (4) the
> quality of representation; (5) the requested fee in relation to the
> settlement; and (6) public policy considerations."

*Goldberger*, 209 F.3d at 50 (following *Grinnell*).  As discussed below and in the Dubbs Declaration,

application of these criteria to the facts now before this Court shows that Lead Counsel's fee request

is clearly reasonable and warranted.

6

1.       **The Time and Labor Expended by Plaintiffs' Counsel**

As detailed in the declarations submitted by Lead Counsel and other Plaintiffs' Counsel who

contributed to the prosecution of the Action, Exs. 15 to 22, Plaintiffs' Counsel have devoted

substantial time and effort to the prosecution of the claims against the Starr Defendants in this

Action and to the settlement of the claims on terms very favorable to the Settlement Class.  Since

the initiation of the Action, Lead Counsel has tirelessly pursued the claims against the Starr

Defendants, reaching the Settlement after nearly five years of litigation that included:

- Fully-briefed motion practice, on two separate occasions, to determine the lead plaintiff;

- Motions to dismiss filed by 23 Defendants (including five separate motions by the Starr Defendants), all of which (except one unrelated to the Starr Defendants) the Court denied in April and May 2006;

- Fact and expert discovery related to class certification, followed by a contested motion for class certification involving four days of legal argument and hearings (the Settlement was reached before the hearings were completed);

- The review and analysis of more than 53.3 million pages of documents by Defendants and non-parties, including nearly 835,000 pages of documents produced by the Starr Defendants; and

- more than 50 depositions of fact and expert witnesses (approximately 45 additional depositions were taken after reaching the proposed Settlement, including those of Starr Defendants Greenberg, Smith and Castelli)

Plaintiffs' Counsel collectively devoted 26,228 hours to prosecution of the claims against the

Starr Defendants, resulting in a combined "lodestar" amount of $10,170,340 at Counsel's regular

and current billing rates.  *See* Ex. 23 (Summary Lodestar and Expense Table), 15-A through 22-A.

As explained by the Second Circuit in *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998),

"current rates, rather than historical rates, should be applied in order to compensate for the delay in

payment."  *See also In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007 WL 4115808, at *9

(S.D.N.Y. Nov. 7, 2007) (McMahon, J.) (reasoning that "use of current rates to calculate the lodestar figure has been repeatedly endorsed by courts as a means of accounting for the delay in payment inherent in class actions and for inflation").  If the Court approves the Settlement, Lead Counsel will also devote additional hours to the settlement administration and distribution process, without any additional compensation.

With respect to billing rates, Lead Counsel submits that the rates billed, averaging $399 per hour for attorneys, and $387 for all professionals,[7] are comparable to those of peer plaintiffs' and defense-side law firms litigating matters of similar magnitude in this District.  Ex. 24.  Sample defense firm billing rates, gathered by Labaton Sucharow from bankruptcy court filings between 2007 and 2010, in many cases exceeded these rates.  Ex. 25.

It is customary and appropriate to apply a timekeeper's normal hourly billing rate, so long as that rate conforms to the billing rate charged by others with similar experience in the community where the counsel practices (*i.e.*, the "market rate").  *See Blum*, 465 U.S. at 895;  *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'") (quoting *Blum*, 465 U.S. at 896 n.11).

With respect to the hours worked, Lead Counsel submits that the substantial time devoted to litigating the claims against the Starr Defendants reflects the tremendous effort needed to prosecute those claims and to bring them to a favorable resolution.  There are a number of core attorneys on the case who have devoted large amounts of their time to the litigation in order to insure continuity and to build on their knowledge base.  Document review was structured to limit overall cost, with the bulk of the initial review being conducted by junior attorneys hired by Labaton Sucharow.  These junior attorneys were trained and supervised by senior Labaton attorneys and

---

[7]  The hourly billing rates of Plaintiffs' Counsel ranged from $425 to $975 for partners, $575 to $725 for Of Counsels, and $250 to $575 for associates.  *See* Ex. 15-A to 22-A.

worked closely with accounting experts and insurance experts in order to insure the quality of their work.  Dubbs Decl. ¶¶ 119-129.

In addition, substantial effort went into investigating the claims against the Starr Defendants; drafting the amended complaints; responding to the Starr Defendants' five motions to dismiss; reviewing and analyzing the 53.3 million page document production, including more than 835,000 pages produced by the Starr Defendants; conducting class discovery; preparing for fact depositions; extensively analyzing loss causation issues, damages issues and complex accounting issues; and taking more than 50 depositions of fact and expert witnesses by the time of the Settlement.  *See generally* Dubbs Decl.

Lead Counsel submits that the first *Goldberger* factor weighs strongly in favor of the requested attorneys' fee.

### 2.      The Magnitude and Complexities of the Litigation

Courts have long recognized that shareholder class actions are notoriously complex and difficult to prosecute.  *See, e.g., Fogarazzo v. Lehman Bros., Inc.*, No. 03-cv-5194, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) (Scheindlin, J.) (stating that "securities actions are highly complex"); *Merrill Lynch Research Reports*, 246 F.R.D. at 172 ("Securities class litigation 'is notably difficult and notoriously uncertain.'").

Here, in addition to the complex issues of law and fact associated with securities class actions generally, this case presented a *sui generis* fraud involving (i) the payment of undisclosed contingent commissions and alleged bid-rigging (the "Market Division Fraud") and (ii) extraordinarily complex sets of accounting issues that led to AIG's $3.9 billion Restatement with respect to approximately two dozen separate types of accounting issues (the "Accounting Fraud"). Dubbs Decl. ¶ 34.  Lead Counsel, with the assistance of insurance and accounting experts, devoted thousands of hours to (i) analyzing hundreds of AIG insurance transactions that may have been part

of the Market Division Fraud; (ii) learning the applicable accounting rules (which, in some cases, changed during the Class Period); and (iii) analyzing thousands of AIG's accounting transactions and memoranda and PwC workpapers in order to piece together the documentation and understand the decision-making processes for hundreds of allegedly improper accounting entries.  The claims against the Starr Defendants involved piecing together the individual Starr Defendants' knowledge of the alleged Market Manipulation and Accounting Frauds, a complex task made even more difficult by the ongoing related criminal trials (*i.e.*, of the alleged bid-riggers in New York State court and of Milton and four former General Reinsurance Corporation officers regarding the Gen Re Transaction in federal court).  For example, numerous witnesses pled the 5th Amendment about the alleged bid-rigging scheme.  C.V. Starr and SICO's liability as "culpable" control persons over the alleged frauds hinged on understanding their complicated corporate and financial relationship with AIG, and connecting them with AIG's long-term compensation structure for the Company's top management.  Dubbs Decl. ¶¶ 133, 142-50, 167-169.

Moreover, efforts to reach the Settlement and resolve the claims against the Starr Defendants, involved years of extensive arm's-length negotiations including informal and formal discussions, face-to-face meetings, and two mediation sessions, one each in the Spring and Summer of 2009 with the Honorable Layn R. Phillips, a former federal district court judge, serving as mediator, that ultimately resulted in this Settlement.  These negotiations were complicated by the fall of AIG's fortunes, particularly in the year prior to the Settlement,[8] and the ongoing litigation with

---

[8] For example, at the end of the Class Period, Greenberg owned approximately 45 million shares of AIG common stock.  Third Amended Complaint ¶ 48.  [ECF 308.]  At that time, AIG's common stock was trading at slightly above $50 per share, yielding $2.25 billion in assets.  *See* Notice at 12, Ex. 3-A.  However, at the time of the bailout, in the year prior to the Settlement, AIG's common stock was trading closer to $3 per share, yielding just $135 million in assets.  At the end of June 2009, shortly before the Settlement was reached and before a 1:20 stock split, AIG's shares were trading below $2.00.  C.V. Starr and SICO's assets were almost entirely made up of AIG stock and were similarly impacted by the falling fortunes of AIG.  Dubbs Decl. ¶¶ 59-61.

AIG.[9]  At every juncture, Lead Counsel rose to newly presented challenges and was fully prepared to

litigate this case to judgment.  Considering the magnitude and complexity of the claims, the 13.25%

fee request is entirely warranted.

### 3.        The Risks of the Litigation

"The Second Circuit has identified 'the risk of success as "perhaps the foremost" factor to

be considered in determining' a reasonable award of attorneys' fees."  *Global Crossing*, 225 F.R.D. at

467 (quoting *Goldberger*, 209 F.3d at 54); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592

(S.D.N.Y. 2008) (McMahon, J.) ("Courts have repeatedly recognized that 'the risk of the litigation' is

a pivotal factor in assessing the appropriate attorneys' fees to award to plaintiffs' counsel in class

actions.").  Courts continue to recognize that "[l]ittle about litigation is risk-free, and class actions

confront even more substantial risks than other forms of litigation."  *Teachers' Ret. Sys. of La. v.*

*A.C.L.N., Ltd.*, No. 01 Civ. 11814, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (Pollack, J.).

The litigation risk here was very significant and fully supports the requested fee.  Lead

Counsel undertook this action on a strictly contingent-fee basis, and prosecuted the claims with no

guarantee of compensation or recovery of any litigation expenses, particularly after AIG's federal

bailout in September 2008, which significantly impacted the financial circumstances of the Starr

Defendants.  *See In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (Pollack, J.)

(class counsel not only undertook risks of litigation, but advanced its own funds and financed the

litigation).  Lead Counsel's risk encompasses not just the risk of non-payment, but also the risk of

underpayment.  *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district

---

[9] Specifically, Lead Counsel had to deal with the possibility that, if they settled with the Starr Defendants and continued on to a trial with AIG, Lead Plaintiff would still have to call Defendants Greenberg and Smith as witnesses. Moreover, in order to avoid the risk that Lead Plaintiff would have to try a case against AIG without the Starr Defendants being present, *i.e.*, the risk that AIG would assert the "empty chair" defense by blaming parties not present at the trial for the Company's alleged misconduct, Lead Counsel insisted that final approval of this Settlement would be contingent upon the entry of an order by this Court granting final approval of the Company Settlement.  *See* Agreement at ¶ I.A.  This contingency is now satisfied.

court's fee award where court failed to account for, among other things, risk of underpayment to counsel).

As discussed in the Dubbs Declaration, this case had significant risk from the beginning, when it was based solely on the Market Division Fraud, which had never before been the basis for a securities class action.  Indeed, the New York Appellate Division subsequently ruled that the payment of contingent commissions – an integral part of the claims against the Starr Defendants – was not *per se* illegal.  *See Hersch v. DeWitt Stern Group, Inc.*, 841 N.Y.S. 2d 516, 518 (2007) ("Contingent commission agreements between brokers and insurers are not illegal . . .  and, in the absence of a special relationship between the parties, defendant had no duty to disclose the existence of the contingent commission agreement . . . .").  Further, five Marsh employees accused of bid rigging were tried in two cases in New York State Court.  After lengthy bench trials, the defendants in one case were found not guilty and the defendants in the other case had their convictions vacated.  Even those AIG and Marsh employees who pled guilty to bid rigging in 2004 had their convictions reduced or vacated.  Moreover, the Starr Defendants were not indicted in connection with these claims, and no witness testified that the Starr Defendants were aware of the alleged bid-rigging.  Dubbs Decl. ¶¶ 41-51.

Furthermore, Lead Counsel's opposition to Defendants' numerous motions to dismiss (including the Starr Defendants' five motions), Lead Plaintiff's vigorously contested motion for class certification, and the very broad fact and expert discovery in this case had revealed that potential barriers to recovery lay ahead.  For example, the complexity of the accounting and insurance issues may have made it difficult to prove that the Starr Defendants acted with scienter.  While the individual Starr Defendants were directly involved in certain of the accounting transactions, they all testified that they relied upon the advice of highly experienced lawyers, accountants, actuaries, and other professionals who also knew about the transactions and approved them.  Dubbs Decl. ¶ 148.

We note that even with respect to the Gen Re Transaction, arguably Lead Plaintiff's strongest Accounting Fraud claim, there are potential problems.  A criminal case against a former AIG officer and four former Gen Re officers resulted in convictions after a five-week trial.  However, all of those convictions were recently vacated by the Second Circuit.  *See U.S. v. Ferguson*, 653 F.3d 61 (2d Cir. 2011), *amended and superseded by* No. 08-6211, 2011 WL 6351862 (2d Cir. Dec. 19, 2011).[10]  With the exception of Defendant Milton, none of the Starr Defendants were indicted.  Dubbs Decl. ¶¶ 43-44.

The risks related to establishing loss causation also support the requested fee.  In their class certification briefing and in Court hearings, the Starr Defendants have tenaciously challenged Lead Plaintiff's ability to establish loss causation for each of the alleged disclosure dates through two experts, David Tabak, Ph.D., and Mark Zmijewski, Ph.D.  Likewise, they have challenged Lead Plaintiff's calculation of damages.  At summary judgment and at trial, the Starr Defendants would likely have argued that Lead Plaintiff was unable to prove that any drops in AIG's stock price were caused by disclosures of new information regarding the alleged frauds (as opposed to being reactions to other market factors or non-fraud-related news pertaining to AIG.)[11]  Further, the Starr Defendants likely would have argued that Lead Plaintiff must prove loss causation separately with respect to the acts of each Defendant.  Dubbs Decl. ¶¶ 151-159, Exs. 11 and 12.

---

[10] A retrial has been scheduled for January 2013.  Dubbs Decl. ¶ 44.

[11] During the course of the Action, there were also significant changes in law with respect to class certification and loss causation that should be considered during the evaluation of the attorneys' fees request.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550, at *27-28 (S.D.N.Y. Nov. 8, 2010) (McMahon, J.) (noting that "the risk of this case for Lead Counsel increased as a result of developments in the law during the course of this litigation, especially in the areas of loss causation and class certification"); *see also In re Marsh & McLennan Co. Sec. Litig.*, No. 04-cv-8144, 2009 WL 5178546, at *18 (S.D.N.Y. Dec. 23, 2009) (McMahon, J.) (noting that "[w]hile risk is measured as of when the case is filed . . . changes in the law during the course of litigation can increase those risks considerably").  Here, the litigation risk increased due to several rulings.  For example, in *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474 (2d Cir. 2008), the Second Circuit vacated a grant of class certification and ruled that a district court must give defendants an opportunity to rebut the fraud-on-the-market presumption at the class certification stage, and in *In re Omnicom Group Inc. Sec. Litig.*, 597 F.3d 501 (2d Cir. 2010), the Second Circuit affirmed summary judgment in favor of defendants for failure to establish loss causation as a matter of law.  Also, as noted above, the Appellate Division ruled that the payment of contingent commissions was not *per se* illegal, *Hersch*, 841 N.Y.S. 2d 516, 518, and the Gen Re convictions were vacated by the Second Circuit, *Ferguson*, 2011 WL 6351862.

In addition, any resolution of damages issues necessarily would involve a "battle of the experts," with the concomitant risk that the jury could simply credit the Defendants' experts over those of Lead Plaintiffs.  *See Hicks v. Stanley*, No. 01-civ-10071, 2005 WL 2757792 at *6 (S.D.N.Y. Oct. 24, 2005) (Holwell, J.) (reasoning that "a 'battle of the experts' . . . creates a significant obstacle to plaintiffs in establishing liability"); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) (McMahon, J.) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses").

Accordingly, Lead Counsel submits that an analysis of the risks faced by the Settlement Class strongly supports the requested fee award.

### 4.    The Quality of Representation

Lead Counsel also respectfully submits that the quality of its representation supports the reasonableness of the requested fee.

Given the factual intricacies of the claims, the presence of numerous contested issues, and the resources possessed by the Starr Defendants, this case required the expertise and capacity of Lead Counsel and its proven ability to prosecute cases over an extended period and through trial. As the Court is aware, Labaton Sucharow has many years of experience in complex federal civil litigation, particularly the litigation of securities and other class actions.  Ex. 15-C.  Likewise, Hahn Loeser, one of Ohio's largest and most respected law firms, has served as lead counsel in, and has defended, many class actions in the securities area, as well as in the areas of banking law, privacy, real estate, and antitrust law.  Ex. 16-C.  This Settlement represents a highly favorable result for the Settlement Class in the face of uniquely difficult financial and legal circumstances, and is attributable to the diligence, determination, creativity, and hard work of Lead Counsel.

The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work. *See Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) (McKenna, J.), *aff'd*, 272 F. App'x 9 (2d Cir. 2008) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."). The skill, tenacity, experience and resources of the Starr Defendants' counsel – Boies, Schiller & Flexner LLP; Skadden, Arps, Slate, Meagher & Flom LLP; Kaye Scholer LLP; Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C.; Winston & Strawn LLP; Dechert LLP; and Hafetz & Necheles – are well known.

## 5.    The Requested Fee in Relation to the Results Achieved

The fifth *Goldberger* factor, the relation of the requested fee to the Settlement, also supports the requested attorneys' fee.

As discussed above, this Settlement provides the Settlement Class with an all-cash recovery of $115 million that was achieved despite many complexities and risks. When combined with the PwC and Company Settlements, this Settlement is one of the largest in the history of class action securities litigation. As noted in the declaration of Professor John C. Coffee, Esq., submitted in support of approval of the Company Settlement [ECF 603-8], the $725 million Company Settlement represented a recovery of 13.18% of the $5.5 billion in "maximum recoverable damages" in the case. *See* Coffee Decl. ¶ 22. Thus, the combined recovery for all three settlements (*i.e.*, the PwC Settlement, the Company Settlement, and the Starr Settlement) for the Settlement Class represents more than 17% of maximum obtainable damages.

As also discussed above, fees in the amount of 13.25% of a settlement of this size are well within the range of those that have regularly been awarded by courts. Lead Counsel submits that given these factors, the results achieved amply support the requested fee.

6. **Public Policy Considerations Support the Requested Fee**

Courts in the Second Circuit have held that "[p]ublic policy concerns favor the award of reasonable attorneys' fees in class action securities litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (McMahon, J.).

Specifically, "[i]n order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." *WorldCom*, 388 F. Supp. 2d at 359. Moreover, attorneys' fees must be sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the Securities and Exchange Commission and help deter future wrongdoing. *See Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."). As Judge Holwell explained in *Hicks*:

> Private actions to redress real injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices. . . .To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding. **The concept of a private attorney acting as a private attorney general is vital to the continued enforcement and effectiveness of the Securities Acts**.

2005 WL 2757792, at *9. Indeed, the Supreme Court has repeatedly emphasized the importance of private securities class actions. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission.").

As a practical matter, lawsuits such as this one can be maintained only if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved, often after years of litigation. As Judge Brieant has noted:

> A large segment of the public might be denied a remedy for
> violations of the securities laws if contingent fees awarded by the
> courts did not fairly compensate counsel for the services provided
> and the risks undertaken.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989)

(Brieant, J.).

Lead Counsel's willingness to assume the risks of this litigation resulted in a substantial

benefit to the Settlement Class.  Public policy supports awarding Lead Counsel's reasonable

attorneys' fees and expenses.

### D.    The Class's Reaction to the Fee Request to Date

"The reaction by members of the Class," while not one of the formal *Goldberger* factors, "is

entitled to great weight by the Court."  *Maley*, 186 F. Supp. 2d at 374; *see also In re Prudential Sec. Inc.*

*Ltd. P'ship Litig.,* 985 F. Supp. 410, 416 (S.D.N.Y. 1997) (Pollack, J.) ("In determining the

reasonableness of a requested fee, numerous courts have recognized that 'the lack of objection from

members of the class is one of the most important reasons.'").

Pursuant to this Court's Preliminary Approval Order, Lead Counsel caused more than ***2***

***million*** copies of the Notice of Proposed Settlement, Motion for Attorneys' Fees and Expenses

Award and Fairness Hearing ("Notice") and Proof of Claim forms ("Proof of Claims"), and 187,060

copies of the Release Forms (when applicable), to be disseminated to potential Settlement Class

Members.  *See* Affidavit of Eric J. Miller of Rust Consulting, Inc., dated April 24, 2012, Ex. 3 ¶¶ 11-

12, 16.  A Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary

Notice") regarding the Settlement and the Fairness Hearing was published in *The Wall Street Journal*

and transmitted over *PR Newswire* and referenced on Bloomberg News Services within 14 days of

February 24, 2012.  *Id.* ¶¶ 17-18.  The Notice and Proof of Claim and Release Form were also

posted on Labaton Sucharow's website and the website dedicated to the Settlement (which included

a link to the websites for the PwC and Company Settlements) created by the Administrator, for easy

downloading by potential claimants.  Dubbs Decl. ¶ 15.  The Notice advised Settlement Class

Members of the procedures and deadlines for objecting to any aspect of the Settlement.  It

specifically advised that Counsel intended to seek an award of attorneys' fees of 13.25% of the

Settlement and reimbursement of expenses not to exceed $1 million.  In addition, the Notice

informed Settlement Class Members that Lead Plaintiff could seek up to $50,000 for reimbursement

of its time and expenses.  *See generally* Notice, Ex. 3-A.  In fact, Lead Counsel seeks fees based on the

*net* Settlement Amount, reimbursement of expenses of only $550,897.29, and Lead Plaintiff seeks

reimbursement of only $7,805 for its time and expenses.

Although the deadline to object to the fee request is not until May 25, 2012, to date there

have been no objections by putative Settlement Class Members to the request for fees and expenses.

After the objection deadline has passed, Lead Counsel will address the substance of any objections

in its reply papers, which will be filed with the Court on June 13, 2012.

## II.  LEAD COUNSEL SHOULD BE REIMBURSED FOR LITIGATION EXPENSES REASONABLY INCURRED IN CONNECTION WITH THIS ACTION

In addition to a reasonable attorneys' fee, Lead Counsel respectfully seeks reimbursement in

the amount of $550,897.29 for litigation expenses reasonably incurred in connection with

prosecuting the claims against the Starr Defendants.  Ex. 23.  Lead Counsel has submitted

declarations attesting to the accuracy of Plaintiffs' Counsel's expenses and it is well-established that

such expenses are properly recovered by counsel.  *See, e.g.*, *In re Indep. Energy Holdings PLC Sec. Litig.*,

302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (Scheindlin, J.) (court may compensate class counsel

for reasonable litigation expenses necessary to representation of class); *In re Arakis Energy Corp. Sec.*

*Litig.*, No. 95-cv-3434, 2001 WL 1590512, at *17 n.12  (E.D.N.Y. Oct. 31, 2001) ("Courts in the

Second Circuit normally grant expense requests in common fund cases as a matter of course."); *see*

*also In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *20-21 (awarding

$7,848,411.84 in expenses to lead counsel and $214,657.14 in expenses to lead plaintiffs).

Where applicable, Plaintiffs' Counsel's declarations, annexed as Exhibits 15-B to 18-B of the Dubbs Declaration, itemize the various categories of expenses incurred.  Lead Counsel submits that these expenses were reasonably and necessarily incurred in prosecuting the claims against the Starr Defendants and achieving the proposed Settlement.  Lead Counsel further submits that these expenses, which include costs such as expert and consultant fees, the cost of mediation, the costs of establishing and using an electronic database to conduct discovery, and the costs related to taking depositions "are the type for which 'the paying, arms' length market' reimburses attorneys" and should therefore be reimbursed from the Settlement Fund.  *Global Crossing*,  225 F.R.D. at 468; *see also* Dubbs Decl. ¶¶ 181-186.

The most significant expense was the cost of consulting and testifying experts who provided critical assistance in the areas of accounting, insurance, loss causation, and damages.[12]  As discussed above, securities cases involving accounting issues require extensive and costly expert analysis. Expert expenses totaled approximately $340,000, and represented nearly 62% of total expenses. Dubbs Decl. ¶ 183, Ex. 15-B.  Lead Counsel received crucial advice and assistance from these experts throughout the course of the litigation.  Their expertise enabled counsel to fully frame the issues, gather relevant evidence, make a realistic assessment of provable damages, and structure a resolution of the claims.

The Notice advised potential Settlement Class Members that Lead Counsel would seek reimbursement of expenses of up to $1 million.  Ex. 3-A at 2.  The expenses sought here are well below this cap.

---

[12] The accounting expert Lead Plaintiff used to assist with analyzing defendants' accounting documents and prepare for depositions on accounting issues served in the same capacity in the *Enron* litigation.

**III.    THE OHIO STATE FUNDS ARE ENTITLED TO REIMBURSEMENT OF
REASONABLE COSTS AND EXPENSES, INCLUDING LOST WAGES**

The PSLRA, 15 U.S.C. §78u-4(a)(4), limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." Here, as explained in the Declarations of Julie E. Becker, Esq. and William J. Neville, Esq., submitted herewith, OPERS is seeking $3,967 and STRS Ohio is seeking $3,838, for a total of $7,805 in lost wages related to their active participation in this Action. Exs. 4 and 5. This amount relates to time that has not been previously reimbursed by the Court and is well below the $50,000 cap reported in the Notice and, to date, there have been no objections to the request.

Many cases have approved reasonable payments to compensate class representatives for the time and effort devoted by them on behalf of a class. *See, e.g.*, *In re Satyam Computer Services Ltd. Sec. Litig.*, No. 09-2027, slip op. (S.D.N.Y. Sept. 13, 2011) (Jones, J.) (Ex. 26) (awarding $193,111 to four institutional lead plaintiffs); *Marsh*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding $144,657 to NJ Attorney General's Office and $70,000 to Ohio Funds); *In re General Motors Corp. Sec. & Derivative Litig.*, No. MDL 1749, slip op. (E.D. Mich. Jan. 6, 2009) (*Id.*) (awarding $184,205 to two institutional class representatives and $1,000 to each of the named plaintiffs); *In re Bristol-Myers Squibb Sec. Litig.*, No. 00-1990, slip op. (D.N.J. May 11, 2006) (*Id.*) (awarding $58,948.64 to institutional class representative).

Indeed, given that the central objective of the PSLRA was to "protect[] investors who join class actions against lawyer-driven lawsuits by . . . increas[ing] the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of

plaintiff's counsel,'" (*In re Cavanaugh*, 306 F.3d 726, 737 (9th Cir. 2002)), it would be unreasonable to penalize institutional class plaintiffs, like the Ohio State Funds here, for devoting time to the litigation by denying them reimbursement. *See also In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (recognizing the important public policy role of lead plaintiffs, "if there were no individual shareholders willing to step forward and pursue a claim on behalf of other investors, many violations of law might go unprosecuted.")

Here, OPERS and STRS Ohio have devoted at least 710 hours to the Action, including meetings with counsel, time devoted to responding to extensive document requests and interrogatories and producing more than 260,000 pages of documents, preparation for and attendance at ten class discovery depositions, many of which lasted an entire day, review of court filings and correspondence and telephone conversations with counsel. Exs. 4 and 5. While assisting with the prosecution of this Action and the claims against the Starr Defendants, OPERS and STRS Ohio employees were unable to perform their regular responsibilities on behalf of their Funds, which lost those services. *Id.*

Lead Plaintiff is seeking reimbursement for that portion of their time related to the Starr Defendant claims. As explained in counsels' declarations, the hourly rates utilized are based on fund employees' annual salaries with benefits and related administrative overhead (*e.g.*, $175 per hour for general counsel of the Funds). *See In re Charter Commc'ns, Inc. Sec. Litig.*, No. 02-cv-1506, 2005 WL 4045741, at *24-25 (E.D. Mo. June 30, 2005) (Shaw, J.) (awarding institutional lead plaintiff $26,625 based on managing director's estimated hourly rate of $300, and noting that "Courts in this District have routinely approved such reimbursements").

Lead Counsel and the Ohio State Funds respectfully submit that the $7,805 sought, based on Lead Plaintiff's extensive involvement in the Action from inception to settlement, is eminently reasonable and should be granted.

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that this Court award attorneys' fees of 13.25% of the net Settlement Amount; reimbursement of litigation expenses in the amount of $550,897.29; and reimbursement of Lead Plaintiff's expenses in the amount of $7,805.  A proposed order will be submitted with Lead Counsel's reply papers.

Dated:  New York, New York
        April 27, 2012

**MICHAEL DEWINE,**
**OHIO ATTORNEY GENERAL**

**LABATON SUCHAROW LLP**

By  /s/ Thomas A. Dubbs
         Thomas A. Dubbs (TD 9658)
         Louis Gottlieb (LG 9169)
         Nicole M. Zeiss (NZ 3894)
         Thomas G. Hoffman, Jr. (TG 0330)

Alan S. Kopit, Esq. (Ohio Bar #0031965)
**HAHN LOESER & PARKS LLP**
200 Public Square, Suite 2800
Cleveland, Ohio  44114-2301
(216) 621-0150
(216) 274-2478 (Fax)

140 Broadway
New York, New York  10005
(212) 907-0700
(212) 818-0477 (Fax)

*Special Counsel to the Ohio Attorney General and the Ohio State Funds and Lead Counsel for the Class*

*Lead Counsel for Lead Plaintiff Ohio State Funds and Lead Counsel for the Class*