**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. SECURITIES LITIGATION | :  :  :  Master File No. 04 Civ. 8141 (DAB) (AJP)  : |
| This Document Relates To: All Actions | :  :  : |

**RESPONSE OF THE STARR DEFENDANTS TO THE OBJECTIONS**
**OF THE OFFICE OF THE ATTORNEY GENERAL OF NEW YORK**
**TO THE PROPOSED CLASS SETTLEMENT**

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 698-3500

*Attorneys for Defendant Michael J. Castelli*

BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone:  (914) 749-8200

575 Lexington Avenue, 7th Floor
New York, New York 10022
(212) 446-2300

*Attorneys for Defendants C.V. Starr & Co., Inc.,*
*Starr International Company, Inc., and*
*Maurice R. Greenberg*

SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone:  (202) 736-8000

*Attorneys for Defendant Christian M. Milton*

KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
(212) 836-8000

*Attorneys for Defendant Howard I. Smith*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS......................................................................................4

   I.    THE LEAD PLAINTIFF'S ACTION AND THE STARR SETTLEMENT..........4

   II.   THE NYAG'S ACTION.................................................................................4

   III.  THE STARR DEFENDANTS .......................................................................6

   IV.  THE NYAG RAISED ITS CURRENT OBJECTIONS TO THE STARR
       SETTLEMENT IN CONNECTION WITH PRELIMINARY APPROVAL .........7

       A.    January 25, 2011 Letter ....................................................................7

       B.    February 25, 2011 Letter ..................................................................8

       C.    March 22, 2011 Letter .....................................................................9

       D.    This Court Granted Preliminary Approval .......................................10

ARGUMENT.....................................................................................................10

   I.    THE NYAG LACKS STANDING TO OBJECT TO THE STARR
       SETTLEMENT...........................................................................................10

   II.   THE NYAG PREVIOUSLY RAISED VIRTUALLY ALL OF ITS
       OBJECTIONS ...........................................................................................12

   III.  THE NYAG'S SOLE "NEW" OBJECTION WAS DELIBERATELY
       WITHHELD BY THE NYAG AND COULD BE CURED BY AN
       AMENDED NOTICE .................................................................................13

       A.    The NYAG Could Have Raised Its "New" Objection, But Chose To
             Remain Silent ................................................................................13

       B.    Any Error In The Class Notice Can Be Corrected By An Amended
             Class Notice – Not By Rejection Of The Settlement ..............................13

   IV.  THE STARR SETTLEMENT IS FAIR, REASONABLE AND
       ADEQUATE AND SHOULD BE APPROVED .................................................14

       A.    The Source Of Settlement Funds Is Not Relevant To The Fairness
             Of The Settlement ..........................................................................16

B.    The NYAG's Damages Calculation Does Not Demonstrate That The Starr Settlement Is Unfair ............................................................... 18

V.    THERE IS NO BASIS TO "CARVE OUT" THE GEN RE CLAIMS. ............... 20

CONCLUSION ............................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Bonime v. Doyle,*
    416 F.Supp. 1372 (S.D.N.Y. 1976)...........................................................................17

*Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care LLC.,*
    504 F.3d 229 (2d Cir. 2007) ...................................................................................10

*Charron v. Pinnacle Group N.Y. LLC,*
    No. 07 Civ. 6316, 2012 WL 2053530 (S.D.N.Y. June 6, 2012)..........................................14

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ...................................................................................15

*Commonwealth of Pennsylvania v. Mid-Atlantic Toyota Distributors, Inc.,*
    704 F.2d 125 (4th Cir. 1983) ..................................................................................19

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ..............................................................................12, 16

*Davis v. J.P. Morgan Chase & Co.,*
    775 F. Supp. 2d 601 (W.D.N.Y. 2011)...................................................................14

*Duban v. Diversified Mortgage Investors,*
    87 F.R.D 33 (S.D.N.Y. 1980) .................................................................................17

*Farinella v. Paypal, Inc.,*
    611 F. Supp. 2d 250 (E.D.N.Y. 2009)....................................................................12

*Figueroa v. Sharper Image Corp.,*
    517 F. Supp. 2d 1292 (S.D. Fla. 2007)...................................................................11

*Glass v. UBS Financial Services, Inc.,*
    No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. 2007)....................................11

*Goldberger v. Integrated Res., Inc.,*
    209 F.3d 43 (2d Cir. 2000) ...................................................................................15

*Gould v. Alleco, Inc.,*
    883 F.2d 281 (4th Cir. 1989) ...........................................................................10, 11

*Grant v. Bethlehem Steel Corp.,*
    823 F.2d 20 (2d Cir. 1987) ...................................................................................21

*In re American Int'l Group, Inc. Secs. Litig.,*
No. 04 Civ. 8141(DAB), 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) .................................16

*In re American Int'l Group, Inc. Secs. Litig.,*
No. 04 Civ. 8141(DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010)..............................16

*In re AOL Time Warner, Inc.,*
No. MDL 1500, 02 Civ. 5575(SWK),
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .............................................................................12

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.),*
770 F.2d 328 (2d Cir. 1985) .............................................................. 1, 2, 3, 19, 20

*In re Bank of New York Mellon v. Walnut Place LLC,*
No. 11 Civ. 5988(WHP), 2011 WL 5843488
(S.D.N.Y. Nov. 18, 2011)..........................................................................................11

*In re Cendant Corp. Sec. Litig.,*
404 F.3d 173 (3d Cir. 2005) ......................................................................................11

*In re Drexel Burnham Lambert Group, Inc.,*
130 B.R. 910 (S.D.N.Y. 1991)...................................................................................10

*In re Global Crossing Securities and ERISA Litigation,*
225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................23

*In re Independent Energy Holdings PLC,*
No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..........................19

*In re Initial Public Offering Securities Litigation,*
243 F.R.D. 79 (S.D.N.Y. 2007) .................................................................................14

*In re Marsh Erisa Litigation,*
265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................................19

*In re Merrill Lynch Tyco Research Sec. Litig.,*
249 F.R.D. 124 (S.D.N.Y. 2008) ................................................................... 13, 14, 15

*In re Milken & Assocs. Sec. Litig.,*
150 F.R.D. 46 (S.D.N.Y. 1993) .................................................................................19

*In re NASDAQ Market-Makers Antitrust Litig.,*
184 F.R.D. 506 (S.D.N.Y. 1998) ...............................................................................17

*In re Telik Securities Litigation,*
576 F.Supp.2d 570 (S.D.N.Y. 2008).........................................................................16

*In re Veeco Instruments Inc. Securities Litigation,*
   No. 05 MDL 0165(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)...............................23

*In re Veritas Software Corp. Sec. Litig.,*
   496 F.3d 962 (9th Cir. 2007) ...................................................................................14, 15

*In re Warner Communications,*
   798 F.2d 35 (2d Cir. 1986) .................................................................................................17

*Karvaly v. Ebay, Inc.,*
   245 F.R.D. 71 (E.D.N.Y. 2007) ........................................................................................22

*Mars Steel Corp. v. Continental Illinois Nat'l Bank and Trust Co. of Chicago,*
   834 F.2d 677 (7th Cir. 1987) ..............................................................................................24

*Maywalt v. Parker & Parsley Petro. Co.,*
   67 F.3d 1072 (2d Cir. 1995) ...............................................................................................14

*McBean v. City of New York,*
   233 F.R.D. 377 (S.D.N.Y. 2006) .......................................................................................16

*Nat'l Super Spuds, Inc. v. New York Mercantile Exch.,*
   660 F.2d 9 (2d Cir. 1981) .............................................................................................21, 22

*New York v. Seneci,*
   817 F.2d 1015 (2d Cir. 1987)............................................................................................19

*People v. Applied Card Sys., Inc.,*
   11 N.Y.3d 105 (2008)..............................................................................................*passim*

*People v. Greenberg,*
   95 A.D.3d 474 (1st Dep't 2012) ......................................................................................6, 7

*Reynolds v. Beneficial Nat'l Bank,*
   288 F.3d 277 (7th Cir. 2002) ..............................................................................................16

*Schorsch v. Hewlett-Packard Co.,*
   417 F.3d 748 (7th Cir. 2005) ..............................................................................................11

*SEC v. AIG,*
   No. 06 Civ. 1000 (LAP) (S.D.N.Y.) ..............................................................................5, 15

*TBK Partners, LTD v. Western Union Corp.,*
   675 F.2d 456 (2d Cir. 1982) .........................................................................................21, 22

*United States v. Ferguson,*
   676 F.3d 260 (2d Cir. 2011) ....................................................................................3, 6, 8, 18

*United States v. Ferguson,*
   No. 06-CR-137 (D. Conn.) ..................................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A Inc.,*
   396 F.3d 96 (2d Cir. 2005) ............................................... 21, 22, 23, 24

*Weigner v. City of New York,*
   852 F.2d 646 (2d Cir. 1988) ................................................................. 13

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982) .................................................................. 21

## **Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(i) ..................................................................... 11

28 U.S.C. § 1715 .......................................................................................... 11

Pub. L. 109-2, 119 Stat. 14, § 9 ................................................................. 11

## **Rules**

Fed. R. Civ. P. 23 .................................................................................. 10, 16

Defendants C.V. Starr & Co., Inc. ("C.V. Starr"), Starr International Company, Inc. ("SICO"), Maurice R. Greenberg, Howard I. Smith, Christian M. Milton, and Michael J. Castelli (collectively, the "Starr Defendants") submit this memorandum of law in response to the August 17, 2012 Objections of the Office of the Attorney General of New York ("NYAG") (the "NYAG Objections") to the proposed Class settlement with the Starr Defendants, executed on August 10, 2009 (the "Starr Settlement").

## PRELIMINARY STATEMENT

The NYAG's August 17, 2012 Objections are the most recent of several submissions by the NYAG to this Court, each of which have a single objective – to delay as long as possible the Court's final approval of the August 10, 2009 Class settlement between the Starr Defendants and Lead Plaintiff in this action.

As a threshold matter, the NYAG lacks standing to object to the Starr Settlement; it is neither a member of the Settlement Class nor an intervenor. Making matters worse, the NYAG is engaging in precisely what the Second Circuit has recognized is improper conduct for a state attorney general: "using state actions as leverage" to interfere with a federal class settlement. *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 339 (2d Cir. 1985). In that case, the Second Circuit affirmed the grant of final approval to a class settlement and the enjoining of parallel actions by multiple state attorney generals, where those actions interfered with the federal action. The Second Circuit held that a district court could enjoin an attorney general from prosecuting a parallel lawsuit where, among other things, the state action was "being used by the state as a means of coercing the defendants into increasing a civil settlement offer." *Id.* at 341. Such tactics by an attorney general are not "sovereign functions," and the attorney general is "outside the protection of the states' sovereign immunity." *Id.* at

340-41.  Indeed, the *Baldwin-United* court held that such NYAG actions exceed the bounds of propriety and should be "outlawed."  *Id.* at 339 (citation omitted).

Separately, the bulk of the NYAG's Objections are not new.  Indeed, with a single exception, they are identical to those this Court has already considered and rejected when preliminarily approving the Starr Settlement.  Since Preliminary Approval of the Starr Settlement on February 3, 2012, the most significant new development is that, contrary to the NYAG's prior speculation, the Appellate Division, First Department reversed the trial court's grant of summary judgment against Messrs. Greenberg and Smith with respect to one of the two claims in *People of the State of New York v. Maurice R. Greenberg and Howard I. Smith*, Index No. 401720/05 (N.Y. Sup. Ct., N.Y. Cty.) (the "NYAG Action"), and subsequently granted leave to Messrs. Greenberg and Smith to appeal to the New York Court of Appeals the question of whether all claims in the NYAG Action should be dismissed.  This development reinforces this Court's original determination that the Starr Settlement was fair, reasonable and adequate.

The only "new" matter raised by the NYAG in its current filing is a claim that the Class Notice is defective.  The NYAG had ample opportunity to contribute to that Notice, and indeed was specifically invited by Lead Plaintiff on two separate occasions to provide proposed language for the Notice, but in furtherance of its strategy of trying to delay Final Approval as long as possible, the NYAG remained silent after the Class Notice was issued and after the Class overwhelmingly voted to accept the settlement.  (Even if the Class Notice needs amendment or correction, the proper remedy would be for the Lead Plaintiff to issue an amended notice, not to reject the Starr Settlement.)

Finally, the NYAG's effort to evade the preclusive effect of *People v. Applied Card Sys., Inc.*, 11 N.Y.3d 105 (2008), is not a basis for objection.  If anything, it serves as a basis for a

federal court injunction.  *See In re Baldwin-United*, 770 F.2d at 341.  As the NYAG acknowledges (NYAG Objections at 3, 14, 21-22), once the Starr Settlement receives Final Approval, the settlement would preclude the NYAG's duplicative damages action in state court.  But that is not a proper basis for depriving the class members who wish to accept the benefits of the Starr Settlement from being able to do so.

The Starr Settlement is fair, reasonable and adequate.  Reasonable settlements may be based on a variety of factors – including the risk that the actual recovery in litigation is often far less than the theoretical amount posited by an economic expert.  Here, Lead Plaintiff has negotiated settlements with the Starr Defendants, American International Group, Inc. ("AIG"), the General Reinsurance Corporation ("Gen Re") and PricewaterhouseCoopers LLP ("PwC") that provide over $1 billion in recovery for AIG's shareholders.  Settlements with regulatory authorities provide more than another $800 million in recovery for AIG's shareholders.  The NYAG's speculation that it might "do better" if permitted to go to trial simply does not justify second-guessing an otherwise fair and reasonable settlement, particularly where only 0.0004% of a class, including many highly sophisticated investors, has elected to opt out of the Starr Settlement and only one objection (other than the NYAG's) was filed, and that related to the size of the attorneys' fees not the size of the settlement.  The interests of AIG shareholders are ably protected by Lead Plaintiff, which the Court found in its Preliminary Approval Order to be "an adequate representative of the Settlement Class."  Preliminary Approval Order at 4.

The NYAG's objections are based primarily on its own expert's opinion that the entirety of the drop in AIG's share price resulting from disclosures made on three specific dates ("the Disputed Disclosures") is attributable to the Gen Re Transaction – a premise explicitly rejected by the Second Circuit in reversing the criminal convictions of Mr. Milton and four Gen Re employees

in *United States v. Ferguson*, 676 F.3d 260 (2d Cir. 2011).  The NYAG's reliance on its expert's opinion demonstrates only that the question of damages in any possible trial regarding the Gen Re Transaction would become a "war of experts" with an unpredictable outcome.  This fact counsels **in favor** of approving the Starr Settlement, which would provide a definitive, immediate and meaningful recovery for the Class, in contrast to the uncertainty inherent in the NYAG Action.

## STATEMENT OF FACTS

### I.  THE LEAD PLAINTIFF'S ACTION AND THE STARR SETTLEMENT

In October 2004, Lead Plaintiff filed the original complaint in this action on behalf of all AIG shareholders who purchased AIG's publicly-traded securities between October 28, 1999 and October 13, 2004.  On April 19, 2005, Lead Plaintiff filed a Consolidated Amended Complaint that expressly included claims relating to the Gen Re Transaction, as well as claims relating to more than thirty other transactions restated by AIG in 2005 (the "AIG Restatement").

On August 10, 2009, after extensive mediation conducted by former U.S. District Judge Layn R. Phillips (who also mediated Lead Plaintiff's settlements for the Class with AIG, PwC and Gen Re), the Starr Defendants reached an agreement with Lead Plaintiff to settle all claims in this action for $115 million, on behalf of a worldwide class of AIG securities holders (including New York investors).[1]

### II.  THE NYAG'S ACTION

On May 26, 2005, over a month after the filing of Lead Plaintiff's Consolidated Amended Complaint, the NYAG commenced a civil action against AIG and Messrs. Greenberg and Smith

---

[1] On February 22, 2010, the Court granted class certification for the period from October 28, 1999 and April 1, 2005. *In re AIG Secs. Litig.*, No. 04 Civ. 8141 (DAB)(AJP) (S.D.N.Y.), Dkt. 534.

concerning nine separate accounting matters addressed in the AIG Restatement (all of which were the subject of the present action), and alleging claims of common law fraud.  Over the ensuing seven years, the NYAG voluntarily dismissed all but two of the claims against Messrs. Greenberg and Smith, including the common law claims for fraud, and long ago settled the claims against AIG.

The NYAG settled its claims against AIG (including those relating to the Gen Re Transaction) for approximately $800 million, far less than the $6.5 billion in damages the NYAG currently claims resulted from that transaction alone.  Notably, over $700 million of that settlement was attributed to claims that had nothing to do with the Gen Re Transaction, and the remaining $100 million was paid as a fine to the State of New York.[2]  Moreover, the NYAG ***did not distribute any of the settlement funds*** paid by AIG to AIG shareholders.[3]

The NYAG Action involves only two remaining defendants – Messrs. Greenberg and Smith – and only two remaining transactions – the Gen Re Transaction and the CAPCO Transaction – of the more than thirty addressed in this action.  Messrs. Greenberg and Smith vigorously dispute their culpability with respect to those transactions and further deny that AIG's shareholders suffered any damages as a result of the Gen Re and CAPCO Transactions.  Those

---

[2] *See* NYAG Press Release, AIG Settles Fraud, Bid-rigging And Improper Accounting Charges (Feb. 6, 2006), *available at* http://www.ag.ny.gov/press-release/aig-settles-fraud-bid-rigging-and-improper-accounting-charges. *See also* Agreement Between the Attorney General of the State of New York and AIG and its subsidiaries dated January 18, 2006 ("NYAG-AIG Agreement"), pp. 12, 16, 19, *available at* http://www.ag.ny.gov/sites/default/files/press-releases/archived/signedSettlement.pdf.  $343.5 million of the funds recovered by the NYAG was paid to States (including New York) for claims relating to workers' compensation. NYAG-AIG Agreement, p. 12.  $375 million went into an "Excess Casualty Fund" for distribution to AIG policyholders who purchased AIG Excess Casualty policies.  *Id.*, p. 16.

[3] The $700 million settlement for AIG investors referenced by the NYAG (NYAG Objections at 4) was recovered by the United States Securities and Exchange Commission ("SEC") – ***not the NYAG*** – and paid into a Fair Fund for distribution to AIG shareholders.  *SEC v. AIG*, No. 06 Civ. 1000 (LAP) (S.D.N.Y.), Final Judgment as to Defendant AIG, so ordered Feb. 17, 2006, pp. 5-7.

transactions together had no material impact on AIG's net income or shareholder's equity, either individually or in the aggregate.[4]  Indeed, in the Appellate Division appeal, Justice Catterson questioned whether AIG shareholders suffered *any damages* as a result of those two transactions. *See People v. Greenberg*, 95 A.D.3d 474 (1st Dep't 2012) (dissent).

## III.    THE STARR DEFENDANTS

The Starr Defendants are C.V. Starr, SICO, and Messrs. Greenberg, Smith, Milton and Castelli.  Each of the individual defendants is a former officer of AIG.  C.V. Starr, SICO, and Mr. Castelli are not alleged by the NYAG to have any connection to the "Gen Re Transaction," which is the sole focus of the NYAG's objections.  The NYAG's objections largely focus on *ad hominem* attacks on Mr. Greenberg – Mr. Smith and Mr. Milton are mentioned to a much lesser extent.[5]

- As Justice Catterson and the United States Department of Justice ("DOJ") have recognized, however, the NYAG has no admissible evidence of wrongdoing against either Mr. Greenberg or Mr. Smith with respect to the Gen Re Transaction. *See People v. Greenberg*, 95 A.D.3d at 485 (noting that summary judgment in favor of Messrs. Greenberg and Smith was appropriate "due to the utter failure of the New York Attorney General to oppose the defendants' motion with evidence in admissible form or to put forward an excuse for the failure to do so after five years of investigation and discovery").[6]

---

[4] AIG's 10-K for 2004 states that the Gen Re Transaction "had virtually no effect on net income or consolidated shareholders' equity."  AIG 2004 10-K at 32-33, 119-20, *available at* http://www.sec.gov/Archives/edgar/data/5272/000095012305006884/y03319e10vk.htm.  NYAG's contention (NYAG Objections at 6) that the Gen Re Transaction has been held in a final, non-appealable order to be material is simply untrue.  Similarly, the CAPCO Transaction had no aggregate effect of AIG's net income or shareholders' equity.  AIG 2004 10-K at 36-37, 123-24, *available at* http://www.sec.gov/Archives/edgar/data/5272/000095012305006884/y03319e10vk.htm.

[5] In vacating Mr. Milton's conviction relating to the Gen Re Transaction, *see United States v. Ferguson*, 676 F.3d 260 (2d Cir. 2011), the Second Circuit wholly discredited the testimony of Mr. Richard Napier, the primary witness on whom the NYAG apparently plans to rely in its case against Messrs. Greenberg and Smith.  Chief Judge Jacobs called Mr. Napier's testimony "suspicious" and observed that "[c]ompelling inconsistencies suggest that Napier may well have testified falsely." *Id.* at 269, 281.  Not surprisingly, the DOJ has chosen not to retry the case against Mr. Milton – or any of his co-defendants – and has instead entered into deferred prosecution agreements with each of them.

[6] As to Mr. Smith, Justice Catterson found: "The NYAG's utter failure to submit admissible evidence in opposition to Greenberg's summary judgment motion is less egregious than its failure to submit such in opposition to Smith's motion." *People v. Greenberg*, 95 A.D.3d at 495.  He further noted: "No witness testified that that Smith was

*(cont'd)*

6

- The DOJ acknowledged in response to Judge Straub's question at the Second Circuit oral argument on November 17, 2010 in *United States v. Ferguson* that ***it did not have evidence of wrongdoing by Mr. Greenberg***:

  > I can address what was on the public record at trial with respect to Mr. Greenberg, which is that there wasn't a single e-mail that we had – that we were able to produce at trial – involving Mr. Greenberg that I know of standing here. That there were no recorded phone calls to Mr. Greenberg, there was not even a substantial witness who spoke about this to Mr. Greenberg.

  Nov. 17, 2010 Audio Recording of *United States v. Ferguson* Oral Argument before United States Court of Appeals for the Second Circuit at 11:58:45 A.M. - 12:03:46 P.M.

## IV.   THE NYAG RAISED ITS CURRENT OBJECTIONS TO THE STARR SETTLEMENT IN CONNECTION WITH PRELIMINARY APPROVAL

Lead Plaintiff moved for preliminary approval of the Starr Settlement on January 6, 2011. Shortly thereafter, on January 25, 2011, the NYAG submitted the first of several letters to this Court arguing that the proposed Starr Settlement was unfair and inadequate. *See* January 25, 2011 Letter from D. Ellenhorn to Hon. D. Batts.

### A.   January 25, 2011 Letter

In that first letter, the NYAG complained that the Starr Settlement of $115 million was unfair and inadequate because:

- According to the NYAG's expert and the damages analysis conducted in the *Ferguson* prosecutions, damages to AIG shareholders arising from the Gen Re Transaction were significantly more than $115 million, *id.* at 4 n.4;

- The Starr Settlement did not break down the amount of contribution from each defendant, thereby raising the possibility that the individual

---

*(cont'd from previous page)*

responsible for accounting for the Gen Re Transaction.  Indeed, no witness testified that they even spoke with Smith about the transaction." *Id.*

defendants' contribution was less than the NYAG itself would have demanded, *id.* at 4; and

- The Starr Settlement could potentially impact the NYAG Action under *Applied Card*, 11 N.Y.3d 105 (2008).[7]

The NYAG also argued that the original proposed class notice was inadequate and misleading because it did not adequately inform the Class of the NYAG Action and the damages allegations in that action. *Id.* at 6-7.

On January 31, 2011, in response to the NYAG's letter, Lead Plaintiff filed an Amended Class Notice, which included revised references to the NYAG Action. Lead Plaintiff also addressed the Disputed Disclosures, explaining that Lead Plaintiff's analysis had been based on the dates in this Court's February 22, 2010 Order granting class certification, and observing that the defendants in the NYAG Action had asserted that the NYAG's expert had not provided any statistical basis for any of its damages claims. *Id.* at 6. Lead Plaintiff also explained that its expert had examined the movement in AIG's stock on the dates of the Disputed Disclosures and had determined that none of them were statistically significant.[8] *Id.* at 6.

### B.  February 25, 2011 Letter

On February 25, 2011, the NYAG submitted a second letter to the Court, again complaining that the Starr Settlement was unfair and inadequate because:

---

[7] In that initial letter, the NYAG argued that *Applied Card* would not defeat the NYAG Action. *Id.* at 5-6. The NYAG has since acknowledged that *Applied Card* would in fact prevent the NYAG from seeking damages in the NYAG Action, and indeed now complains that the Class Notice should have said that *Applied Card* "would" bar the NYAG Action instead of arguing that it "could" do so. NYAG Objections at 21-22.

[8] On May 31, 2012, Lead Plaintiff submitted a letter to this Court acknowledging that its expert had made an arithmetical error with respect to the statistical significance of AIG stock drops on the dates of the Disputed Disclosures, but noted that the error had "no practical effect" on the Starr Settlement. May 31, 2012 Letter from T. Dubbs to Hon. D. Batts at 1-2. As discussed *infra* at Section IV.B, and as the Second Circuit found, *United States v. Ferguson*, 676 F.3d at 274-75, the stock market reaction on those dates resulted from a number of confounding pieces of information and cannot be attributed solely to the Gen Re Transaction.

- In the NYAG's view, certain of the individual Starr Defendants were not contributing enough to the Starr Settlement, *id.* at 4-5;

- The NYAG believed that trial of the NYAG Action would result in "a very large recovery" for class members, *id.* at 5; and

- The Amended Class Notice failed to measure damages for the Gen Re Transaction by reference to the Disputed Disclosures.  *Id.* at 3-4.

The NYAG also complained that the Amended Class Notice "demeaned" the NYAG Action and the likelihood of recovery by stating, among other things, that the NYAG's damages claims (which used the Disputed Disclosures) were predicated on the wrong dates for disclosure of the Gen Re Transaction.  *Id.* at 2-4.

In response, on March 4, 2011, Lead Plaintiff invited the NYAG to submit in writing to Lead Plaintiff any specific suggestions for language that the NYAG believed Lead Plaintiff should add to the Amended Class Notice, stating that Lead Plaintiff would consider adding any such suggestions.  March 4, 2012 Letter from T. Dubbs to Hon. D. Batts at 4 ("We are also willing to consider any specific suggestions for the Amended Notice proposed in writing by the NYAG; thus far, the NYAG has not proposed any to us directly.").

### C.  March 22, 2011 Letter

The NYAG's March 22, 2011 letter to the Court did not include any proposed suggestions for changes to the Class Notice.  March 22, 2011 Letter from D. Ellenhorn to Hon. D. Batts. Rather, the NYAG again complained about the fairness of the Starr Settlement:

- The Starr Settlement "appears to settle a case that does not even claim damages for the Gen Re fraud at issue in the [NYAG's] case," *id.* at 3;

- "None of the dates identified by plaintiffs involved damages from the Gen Re Transaction," *id.*; and

- "On the only date that arguably could relate to the Gen Re transaction, March 31, 2005, no new information about Gen Re was publicly revealed." *Id.* at 4.

The NYAG again argued that preliminary approval of the Starr Settlement should be delayed to permit trial of the NYAG Action, which the NYAG claimed would benefit class members because the NYAG would recover additional damages with respect to the Gen Re Transaction. *Id.* at 4.

In response, on March 28, 2011, Lead Plaintiff again asked the "NYAG to propose in writing any specific suggestions for the Amended Class Notice that it believes would be informative to Class members," adding: "***We would consider including any such additional language in the Notice.***" March 28, 2011 Letter from T. Dubbs to Hon. D. Batts at 1 (emphasis in original). The NYAG did not respond.

### D.  This Court Granted Preliminary Approval

Approximately ten months later, on February 3, 2012, after nothing but silence from the NYAG, the Court granted preliminary approval of the Starr Settlement and of the Amended Class Notice that was sent to class members.

## ARGUMENT

## I.   THE NYAG LACKS STANDING TO OBJECT TO THE STARR SETTLEMENT

The NYAG is not a party to this action and is not a member of the class that is bound by the proposed settlement. By its express terms, Fed. R. Civ. P. 23(e) permits ***only class members*** to object to a proposed class settlement. *See Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals.") (citations omitted). Accordingly, the NYAG does not have standing to object to the Starr Settlement. *See, e.g., Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care LLC.*, 504 F.3d 229, 244 (2d Cir. 2007) ("Nonparties to a settlement generally do not have standing to object to a settlement of a class action."); *In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910, 923 (S.D.N.Y. 1991)

("Objectors who are non-Class members lack standing to object to the fairness, reasonableness and adequacy of the Settlement.").

The NYAG does not represent AIG's shareholders in this action.  AIG's investors (including New York investors) are ably represented by Lead Plaintiff, which has a fiduciary duty to represent the interests of all AIG investors.  *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 203 (3d Cir. 2005) ("Once a lead plaintiff has been appointed, that plaintiff should be deemed to speak for the entire class – as indeed, the lead plaintiff has a fiduciary duty to represent all class members fairly."); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i) (noting that lead plaintiff must be the party "most capable of adequately representing the interests of class members").

The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, does not confer standing on the NYAG.[9]  Subsequent to CAFA's passage, state officials generally have submitted objections to a class settlements through motions for permission to file an *amicus* brief [10] or have moved to intervene in order to object to the class settlement.  *See, e.*g., *Gould*, 883 F.2d at 284 (holding that "non-class members have no standing to object" to a proposed class settlement and that "[i]nterjection of the opposing views of non-class members should proceed via intervention under Rule 24").[11]

---

[9] While notice of the Starr Settlement was given to the NYAG here to avoid any doubt, CAFA is not applicable to this case, which was filed in October 2004, several months *prior* to CAFA's enactment date of February 2005.  *See* Pub. L. 109-2, 119 Stat. 14, § 9 (Add. 25) (providing for prospective application); *see also Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748 (7th Cir. 2005) (CAFA does not apply to actions commenced prior to, but pending on, February 18, 2005).

[10] *See e.g., Glass v. UBS Financial Services, Inc.*, No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. 2007); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007).

[11] *See also In re Bank of New York Mellon v. Walnut Place LLC*, No. 11 Civ. 5988(WHP), 2011 WL 5843488 (S.D.N.Y. Nov. 18, 2011).

Here, the NYAG has done neither, and any attempted intervention at the "last hour" should not be allowed.  Indeed, courts have routinely held that applications to intervene on the eve of final approval of a proposed class settlement are untimely.  *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (denying as untimely motion to intervene filed more than one year after complaint was filed, three months after notice was sent to class members, and three days prior to fairness hearing); *Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 258 (E.D.N.Y. 2009) (denying as untimely motion to intervene filed two and a half months after class notice was issued and three months after court's preliminary approval of settlement); *In re AOL Time Warner, Inc.*, No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236, at *13 n.15 (S.D.N.Y. Apr. 6, 2006) (court was "troubled" by the fact that intervener knew of specific objection prior even to the preliminary fairness hearing and prior to the mailing of class notices and thus it was "precisely the type of objection that would have been beneficially brought to the Court's attention at the preliminary fairness hearing").

## II.     THE NYAG PREVIOUSLY RAISED VIRTUALLY ALL OF ITS OBJECTIONS

With the exception of one specific aspect of the language of the Amended Class Notice that the NYAG chose not to raise until after the Class Notice had been sent (discussed *infra* Section III), the NYAG raised all of its current objections in connection with the Preliminary Approval process.  Moreover, after the NYAG complained about the initial Class Notice, it declined the opportunity to provide input to the Amended Class Notice.

The Court, after considering the NYAG's objections, granted Preliminary Approval of the Starr Settlement.  With respect to the fairness and adequacy of the Starr Settlement, the Court specifically held that, subject to further consideration at the Fairness Hearing, the Starr Agreement was "fair, reasonable and adequate, and in the best interests of the Settlement Class."  Preliminary

Approval Order at 4.  The Court further approved the form of the Class Notice and approved for publication the form of the Summary Notice.  *Id.*

The Class should be permitted to accept the certainty provided by the Starr Settlement and not have to await the speculative outcome of the NYAG Action.

## III.   THE NYAG'S SOLE "NEW" OBJECTION WAS DELIBERATELY WITHHELD BY THE NYAG AND COULD BE CURED BY AN AMENDED NOTICE

The only objection by the NYAG that was not specifically presented to the Court in connection with the Preliminary Approval process concerns the Disputed Disclosures.  The NYAG had ample opportunity to object to this asserted error in the Class Notice long before the Court approved the notice on February 3, 2012.  (Moreover, any error in the Class Notice could be remedied by issuing a revised notice – not by rejecting the Starr Settlement.)

### A.  The NYAG Could Have Raised Its "New" Objection, But Chose To Remain Silent

As described above, Lead Plaintiff revised the original Proposed Notice to the Class in response to the NYAG's complaints, and then invited the NYAG on two separate occasions to provide comments to the Amended Proposed Notice to the Class.  Although nearly ten months passed between the Lead Plaintiff's second such invitation and this Court's approval of that notice, the NYAG never raised its "new" objection.  This dilatory conduct should not be condoned by the Court.

### B.  Any Error In The Class Notice Can Be Corrected By An Amended Class Notice – Not By Rejection Of The Settlement

The function of a class notice is to inform the class.  *See In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." ) (citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)).

It is the province of the Court and the Class – ***not the NYAG*** – to decide whether a settlement is fair and reasonable.

Accordingly, should the Court find that the Class Notice needs to be amended or revised,[12] the appropriate remedy is the dissemination of a revised notice.[13]  *See, e.g., Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 612 (W.D.N.Y. 2011) (in response to objections, class notice was revised to include information advising recipients of the pendency of related litigation, and "of the fact that, should the class member not opt out of this action, any claims that the class member may have in those or any other actions within the scope of the release in this lawsuit will be barred.")  *See also Charron v. Pinnacle Group N.Y. LLC*, No. 07 Civ. 6316, 2012 WL 2053530, at *9 (S.D.N.Y. June 6, 2012) (McMahon, J.) (approving settlement after dissemination of a second, revised notice); *In re Initial Public Offering Securities Litigation*, 243 F.R.D. 79 (S.D.N.Y. 2007) (proposed settlement notice could not be approved until revised to provide more adequate guidance as to the likely range of actual payments).[14]

## IV.   THE STARR SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED

When evaluating a proposed class settlement under Fed. R. Civ. P. 23, a court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate.  *Maywalt v. Parker & Parsley Petro. Co.*, 67 F.3d 1072, 1078-79 (2d Cir. 1995); *In re Merrill Lynch,* 249

---

[12] Contrary to the NYAG's suggestion, a class notice need not mention every pending action covered by its releases, let alone describe them in the detail insisted upon by the NYAG.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005).

[13] The Starr Settlement Agreement provides that Lead Plaintiff is required to cure any defect in the Class Notice.  Starr Settlement Agreement, p. 36.

[14] The NYAG relies on *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962 (9th Cir. 2007), but in *Veritas*, the Ninth Circuit found the class notice misleading because it failed to disclose that the per share recovery calculations rested on
*(cont'd)*

F.R.D. at 132. A reasonable settlement may be based on a variety of factors – including the risk of litigation. *See, e.g., City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (listing factors to be considered in determining the propriety of a class action settlement, including "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation") (abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

Here, the Court's review of the Starr Settlement should take into consideration the nearly $2 billion in recovered funds available to compensate AIG shareholders through various settlements with Lead Plaintiff and regulatory authorities. Lead Plaintiff's Class settlements with all defendants total over $1 billion: $725 million with AIG, $115 million with the Starr Defendants, $97.5 million with PwC, and $72 million with Gen Re. AIG shareholders are also entitled to recovery of over $800 million from the Fair Fund established by the SEC as a result of AIG's settlement payment to the SEC.[15]

Lead Plaintiff's determination that the recovery provided by the Starr Settlement is appropriate in light of the risks of litigating claims to trial is not unreasonable. The fact that timely and valid requests to opt out of the Starr Settlement were received for only 0.0004% of the potential shares in the Class (Ex. 1 to June 13, 2012 Dubbs Decl.) buttresses this conclusion.

---

*(cont'd from previous page)*

the assumption that only a fraction of class members would file claims. The Ninth Circuit did not reject the settlement, but instead remanded to the district court and ordered that a new notice be issued to the class. *Veritas*, 496 F.3d at 972.

[15] The $800 million settlement by AIG included a $700 million payment in disgorgement and a civil penalty of $100 million. *SEC v. AIG*, No. 06 Civ. 1000 (LAP) (S.D.N.Y.), Final Judgment as to Defendant AIG, so ordered Feb. 17, 2006, pp. 5-7. Both these payments were put into a Fair Fund for distribution to AIG shareholders. *Id.* at 6. Those payments accrued interest of $43 million before being paid to AIG's shareholders. *See* SEC Press Release No, 2009-115, SEC Announces $843 Million Fair Fund Distribution to Harmed AIG Investors (May 19, 2009), *available at* http://www.sec.gov/news/press/2009/2009-115.htm.

There has only been a single objection to the Starr Settlement, and that objection related to attorneys' fees, not the amount of the settlement.

Moreover, the involvement of former U.S. District Judge Layn R. Phillips in the settlement process renders the Starr Settlement presumptively fair. *See D'Amato*, 236 F.3d at 85; *In re Telik Securities Litigation*, 576 F.Supp.2d 570, 576 (S.D.N.Y. 2008); *McBean v. City of New York*, 233 F.R.D. 377, 383 (S.D.N.Y. 2006).[16]  This Court has already determined that the negotiations that led to the class settlements with AIG and the Starr Defendants were arm's length and fair. *In re American Int'l Group, Inc. Sec. Litig.*, No. 04 Civ. 8141(DAB), 2012 WL 345509, at *1, 3 (S.D.N.Y. Feb. 2, 2012) (Batts, J.) ("The Court finds that the [AIG] Settlement resulted from 'arm's length negotiations.'"); *In re American Int'l Group, Inc. Secs. Litig.*, No. 04 Civ. 8141(DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (Batts, J.).

### A.  The Source Of Settlement Funds Is Not Relevant To The Fairness Of The Settlement

The NYAG does not cite a single case in support of its argument that the Starr Settlement may not be approved unless the contributions to the settlement come from those defendants' personal funds.  The NYAG's position is contrary to black letter law.  The purpose of a class action settlement is to provide shareholders with a fair and adequate payment, Fed. R. Civ. P. 23(e)(2); the only proper consideration for a court in reviewing a proposed settlement is the total amount of the recovery to the class members, not the allocation of payment among the settling defendants.

---

[16] The arm's length nature of the settlement negotiations removes any possible effect from the case cited by the NYAG, *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002). *See* NYAG Objections at 16-18. *Reynolds* involved circumstances suggesting collusion between the settling defendants and plaintiffs' attorneys. 288 F.3d at 282-284. On the basis of those "suspicious circumstances," the *Reynolds* court observed that the proposed settlement deserved greater scrutiny than had been given by the district court. *Id.* at 283-84.  In other words, the extra scrutiny applied by the *Reynolds* court was triggered only after the court had concluded that the negotiation process had been tainted by impropriety, a situation not present or alleged here.

The Second Circuit spoke clearly to this issue when it rejected a shareholder's claim that a proposed class settlement should not be approved because certain officer defendants had paid only a *de minimis* portion of the settlement amount: "if the total compensation to class members is fair, reasonable, and adequate, the court is ***not required to supervise how the defendants apportion liability for that compensation among themselves***."  *In re Warner Communications*, 798 F.2d 35, 37 (2d Cir. 1986) (emphasis added).  *See also In re NASDAQ Market-Makers Antitrust Litig.*, 184 F.R.D. 506, 512 (S.D.N.Y. 1998) (rejecting non-party's request to inspect documentation setting forth the amount each defendant was paying in the settlement and holding: "The adequacy of the settlement does not depend upon the allocation of that amount among the Defendants.").  Even where certain defendants paid little – or nothing – towards a settlement, that is not a ground to disapprove the settlement.  *See Duban v. Diversified Mortgage Investors*, 87 F.R.D 33, 40 (S.D.N.Y. 1980) (rejecting objection that individual defendants contributed nothing to a proposed settlement because "this court must determine only that sufficient compensation is being paid to the class and need not speculate as to the appropriate contribution of each defendant"); *Bonime v. Doyle*, 416 F.Supp. 1372, 1387 (S.D.N.Y. 1976) (rejecting objection that settling officer defendants would "escape accountability" if corporation paid settlement amount).  Indeed, empirical studies have shown that officers named as defendants in securities class actions make "out-of-pocket" contributions in only approximately "5% of settlements."[17]

---

[17] Michael D. Klausner and Jason Hegland, *How Protective is D&O Insurance in Securities Class Actions?* PLUS JOURNAL,Vol.. 23, No. 2 (February 28, 2010), *available at*
http://media.law.stanford.edu/publications/archive/pdf/Plus%20Part%20I.pdf.

**B.  The NYAG's Damages Calculation Does Not Demonstrate That The Starr Settlement Is Unfair**

The NYAG bases its objection to the Starr Settlement on its damages expert's opinion that over $6.5 billion in damages is solely attributable to the Gen Re Transaction.  The unreliability of that assertion is demonstrated by the NYAG's own proof.  The only other support for its damages assertion is the damages ruling in *United States v. Ferguson*, No. 06-CR-137 (D. Conn Oct. 31, 2008) (Ruling on Loss Calculation, Victim Enhancement, and Restitution) [Dkt. 1164], which concluded that the Gen Re Transaction caused damages of *less than a tenth of the amount claimed by the NYAG's expert*.  As previously noted, even that determination was reversed by the Second Circuit, which expressly held that *the Gen Re Transaction "was one of several problems besetting AIG at that time," that could cause AIG's stock price declines on the dates of the Disputed Disclosures*, including "[u]nrelated allegations of bid-rigging, improper self-dealing, earnings manipulations, and more…." *United States v. Ferguson*, 676 F.3d at 274-75 (emphasis added).

Indeed, the NYAG's own actions demonstrate convincingly that the NYAG does not place much faith in the conclusions of its own damages expert.  As discussed *supra*, when the NYAG settled with AIG for over $800 million, it indicated that none of the settlement proceeds related to the Gen Re Transaction.  The reason for the NYAG's inconsistent behavior is quite simple to understand: the NYAG is attacking the Starr Settlement to try to evade the settled law of New York (set forth clearly in *Applied Card*), which (based on straightforward *res judicata* principles) bars the damages claims in the NYAG Action.

The NYAG's admission that it seeks to delay or prevent the Starr Settlement because the settlement will "terminate NYAG's assiduous, seven-year pursuit of compensation for the injured AIG shareholders" underscores that the NYAG fundamentally misconstrues its role.  When

pursuing a monetary recovery on behalf of a class of individuals, the NYAG is not pursuing any sovereign or quasi-sovereign interest of its own. *See In re Baldwin-United*, 770 F.2d at 341; *see also New York v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987) ("Where the complaint only seeks to recover money damages suffered by individuals, the award of money damages will not compensate the state for any harm done to its quasi-sovereign interests."); *Commonwealth of Pennsylvania v. Mid-Atlantic Toyota Distributors, Inc.*, 704 F.2d 125, 129 n.8 (4th Cir. 1983) ("no state has a legitimate quasi-sovereign interest in seeing that consumers or any other group of persons receive a given sum of money") (citation omitted). As such, the NYAG "is not the real party in interest" either here or in its state court action. *In re Baldwin-United*, 770 F.2d at 341. It is the "plaintiffs-investors in the federal action, who are the real parties in interest." *Id.* at 341-342. The resolutions chosen by the real parties in interest should not be jeopardized because the NYAG wants to preserve an action in which it has no legitimate interest of its own.

This Court need not evaluate the competing expert opinions before approving the proposed settlement. *See In re Marsh Erisa Litigation*, 265 F.R.D. 128 (S.D.N.Y. 2010). Indeed, in circumstances where "[e]stablishing damages . . . would have been a complicated endeavor" and "expert intensive," courts have concluded that the risk of establishing damages weighs in favor of approving a proposed class settlement. *See id.* at 140; *see also In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement amounting to small percentage of total damages sought because magnitude of damages often becomes "battle of experts . . . with no guarantee of the outcome"); *In re Independent Energy Holdings PLC*, No. 00 Civ. 6689, 2003 WL 22244676, *3 (S.D.N.Y. Sept. 29, 2003) (proof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury).

No federal policy would be served by waiting for the resolution of the NYAG Action. Indeed, the precedent sought by the NYAG would require that *any* federal class settlement await the eventual final outcome of *any* action brought by a state Attorney General involving allegations related to similar conduct.  That result is untenable and would grant *de facto* veto power to state attorney generals over federal court settlements, clearly an improper encroachment on federal jurisdiction and authority.  That is exactly the course of conduct that the Second Circuit rejected in *In re Baldwin-United*.  This Court recognized that principle when it granted preliminary approval to the Starr Settlement over the NYAG's objections.

## V.    THERE IS NO BASIS TO "CARVE OUT" THE GEN RE CLAIMS.

The premise underlying the NYAG's objection to the fairness and adequacy of the settlement is that "a material error by Lead Plaintiff's own expert" means that "the Starr Settlement does not generate *any* compensation for the victims of the [alleged] Gen Re fraud."  NYAG Objections at 1 (emphasis in original); *see id.* at 2 ("The [alleged] Gen Re victims are receiving no compensation from the Settlement"); *see also id.* at 15 ("no part of the proposed $115 million settlement consideration is payable to the [alleged] Gen Re victims").  This is flatly untrue.

The Starr Settlement does the exact opposite.  The settlement period includes the entire time period from the date on which the Gen Re Transaction was first reflected on AIG's financial statements (February 8, 2001)[18] through the date on which the NYAG claims "all market moving information concerning the Gen Re Transaction had already been revealed" (March 15, 2005)[19]. *See* Starr Settlement Agreement, Ex. A at 17.  Under the terms of the Starr Settlement, any class

---

[18] NYAG Objections, Ex. 1 at ¶ 6.

[19] NYAG Objections at 9.

member that sold securities at a loss during that time frame will be entitled to compensation in accordance with specified calculations.  *See id.* at 14-15.  Moreover, the settlement gives class members the right to be compensated without having to make any showing that their securities declined in value as a result of the Gen Re Transaction.

The NYAG's position is also unsupported by case law.  The centerpiece of the NYAG's fairness and adequacy argument — indeed, the only Second Circuit case the NYAG substantively relies on for this argument — is *Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F.2d 9 (2d Cir. 1981).[20]  According to the NYAG, the Starr Settlement is unfair because it releases claims based on the Gen Re Transaction and "*Super Spuds* requires that releases that are part of a class-action settlement be limited to the claims actually at issue in the action."  NYAG Objections at 15.  But that is not what *Super Spuds* requires, as the case makes evident, and as the Second Circuit has repeatedly explained in subsequent opinions.[21]  In any event, the Gen Re claims are at issue in this litigation and properly releasable on that ground as well, as the Gen Re claims *are* actually alleged in the operative complaint and have not been dismissed.  *See* NYAG Objections at 10.  The NYAG's argument is therefore fatally flawed.

Once the proper analysis is applied in light of the actual holding of *Super Spuds* and governing Second Circuit authority, the purpose of the NYAG's misdirection — to hide the fact

---

[20] The NYAG cites two other Second Circuit cases, but only for the mundane general propositions that a court must analyze the negotiating process in approving a settlement and that the court acts as a fiduciary to the class.  *See* NYAG Objections at 12 & 17 (citing *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982) and *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir. 1987)).

[21] As the Second Circuit later explained, consistent with *Super Spuds*, "a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." *TBK Partners, LTD v. Western Union Corp.*, 675 F.2d 456, 460-462 (2d Cir. 1982).  Indeed, *Super Spuds* and subsequent precedent make it clear that the "law is well established in this Circuit and others that class action releases may include claims not presented and even those which
*(cont'd)*

that its objections are unsustainable under the law — is laid bare.  In *Super Spuds*, the class

representatives all held only liquidated contracts with the defendants, but nevertheless sought to

release all of the claims of a portion of the class who not only had liquidated contracts, but also,

unlike the class representatives, had additional claims based on unliquidated contracts.  *Super

Spuds*, 660 F.2d at 18.  The Second Circuit held that the class representatives could not release the

claims of other class members based on the unliquidated contracts because "the named plaintiffs

were authorized to represent other members of the class solely with respect to the liquidated

contracts."  *Id.*[22]  These facts are not analogous to the facts presented to this Court concerning the

Starr Settlement.

In the present case, ***all*** of the named plaintiffs share the Gen Re claims,[23] as they all bought

and sold AIG stock throughout the entire period that the NYAG asserts is relevant to the Gen Re

Transaction.  *See* Exhibits J & K to Declaration of Thomas A. Dubbs in Support of Motion to

Appoint Lead Plaintiffs.  In *Wal-Mart Stores, Inc. v. Visa U.S.A Inc.*, 396 F.3d 96, 109-10 (2d Cir.

2005), objecting class members who had been litigating parallel class action suits in other courts

argued that the settlement before the Second Circuit was unfair and inadequate because it barred

their suits without recovering the "damages for billions of dollars" that could be sought in their

_____

*(cont'd from previous page)*

could not have been presented."  *Wal-Mart Stores, Inc. v. Visa U.S.A Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) (citation omitted); *see id.* at 111 (discussing *Super Spuds*).

[22] As the Second Circuit has repeatedly confirmed, "the heart of our concern was the danger that a class representative not sharing common interests with other class members would 'endeavor() to obtain a better settlement by sacrificing the claims of others at no cost to themselves.'"  *TBK Partners*, 675 F.2d at 462 (quoting *Super Spuds*, 660 F.2d at 19 n.10) (alteration in *TBK Partners*); *see id.* at 462 ("There would be no assurance that the class representative had fully advanced the unshared claims of the class members"); *see also Wal-Mart*, 396 F.3d at 111 ("*Super Spuds* hinged on the fact that class representatives did not possess the unliquidated futures").

[23] Indeed, the NYAG compounds the error in its misleading presentation to the Court by also citing *Karvaly v. Ebay, Inc.*, 245 F.R.D. 71, 89 (E.D.N.Y. 2007) without acknowledging that the decision in *Karvaly*, as in *Super Spuds*, was

*(cont'd)*

parallel actions.  The Second Circuit held that the "essential question" was "whether the interests

that were served by the Settlement were compatible with those" of the objecting plaintiffs.  *Id.* at

110.  Despite the complaints of the objecting plaintiffs that the class representatives "left

significant claims on the table," *id.* at 109-10, the court found that the settlement was fair and

adequate, *id.* at 124.  In reference to the complaints by the objectors that the class representatives

left billions on the table, the Second Circuit specified that "adequate representation of a particular

claim is determined by the alignment of interests of class members, not proof of vigorous pursuit

of that claim."  *Id.* at 113.

Here, Lead Plaintiff is entirely comprised of large and sophisticated pension funds that

would stand to gain from any recovery on the Gen Re Transaction.  Their decision to settle their

claims against the Starr Defendants on behalf of the class for the certainty of a $115 million

recovery (rather than engage in protracted litigation for a highly speculative future recovery)

should not be questioned unnecessarily.  *See In re Veeco Instruments Inc. Securities Litigation*, No.

05 MDL 0165(CM), 2007 WL 4115809, at *11 (S.D.N.Y. Nov. 7, 2007) ("the Court is not to

compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that

might be achieved by prosecution of the litigation to a successful conclusion"); *In re Global

Crossing Securities and ERISA Litigation*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) ("The prompt,

guaranteed payment of the settlement money increases the settlement's value in comparison to

"some speculative payment of a hypothetically larger amount years down the road.").   In

*Wal-Mart*, the Second Circuit concluded that it is properly left to "the judgment of the class

_____

*(cont'd from previous page)*

based on the concern not present here of "a class representative not sharing common interests with other class
members." *Id.* (quoting *TBK Partners* and *Super Spuds*).

representative" to decide if a particular category of claims, "known and unknown, was a proper thing to give up to obtain the benefits offered."  396 F.3d at 113 (internal quotations and citation omitted).

The Second Circuit has also expressly rejected the NYAG's suggestion that each claim can be individually valued in a settlement.  In *Wal-Mart*, the court rejected the objectors' request for discovery to determine whether class counsel had independently valued certain claims related in the class settlement and the amount, if any, of that valuation, holding that:

> Plaintiffs were not required to bargain separately for relief in exchange for the *Membership Rules* claims.  No part of the consideration on either side is keyed to any specific part of the consideration of the other.  Each side gives up a number of things.  This is the way settlements usually work.

396 F.3d at 120 (internal quotation and citation omitted).  Thus the NYAG's request for witness testimony concerning the valuation of the Gen Re claims must be denied.

The only other case the NYAG cites in relation to its fairness and adequacy arguments actually supports the conclusion that the Starr Settlement should receive Final Approval.  *See Mars Steel Corp. v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 834 F.2d 677, 682-85 (7th Cir. 1987) (***granting*** final approval because: "The temptation to convert a settlement hearing into a full trial on the merits must be resisted" and that a court is "not required" to take an objector's projections of recovery in a parallel case "at face value.").

## CONCLUSION

For all the foregoing reasons, the Starr Defendants respectfully request that the Court grant Final Approval to the Starr Settlement.

Dated: New York, New York
      September 18, 2012

DECHERT LLP

*Charles I. Poret* ꟿ *by permission*

Charles I. Poret
Benjamin E. Rosenberg
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500

*Attorneys for Defendant Michael J. Castelli*

BOIES, SCHILLER & FLEXNER LLP

David Boies
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200

Nicholas A. Gravante, Jr.
Robert J. Dwyer
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300

*Attorneys for Defendants C.V. Starr & Co., Inc.
Starr International Company, Inc., and
Maurice R. Greenberg*

SIDLEY AUSTIN LLP

*Kristin Graham Koehler* ꟿ *by permission*

Kristin Graham Koehler
1501 K Street, N.W.
Washington, DC 20005
Telephone: (202) 736-8000

*Attorney for Defendant Christian M. Milton*

KAYE SCHOLER LLP

*Vincent A. Sama* ꟿ *by permission*

Vincent A. Sama
Catherine B. Schumacher
425 Park Avenue
New York, New York 10022
Telephone: (212) 836-8000

*Attorneys for Defendant Howard I. Smith*