UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X

IN RE AMERICAN INTERNATIONAL GROUP, INC. SECURITIES LITIGATION

04 Civ. 8141 (DAB)

This Document Relates To:
All Actions

ORDER

-------------------------------------X

DEBORAH A. BATTS, United States District Judge.

Pursuant to Fed. R. Civ. P. 23(e)(2) and (h)(3), a Fairness Hearing on the Proposed Settlement with Maurice R. Greenberg, Howard I. Smith, Christian M. Milton, Michael J. Castelli, C.V. Starr & Co., Inc., and Starr International Company, Inc. (collectively "Starr Defendants") is scheduled for April 10, 2013 at 2:30 p.m. The Court has received one Objection[1] and request to be heard at the Hearing, which was filed by the Orloff Family Trust DTD 12/31/01 ("Orloff Trust" or "Objector") on March 6, 2013. (Orloff Trust Objection ("Objection"), ECF No. 671.) Objector asserts that the Proposed Settlement (1) is neither fair to the Class nor reasonable, (2) fails to make proper use of the cy pres doctrine, (3) permits Class Counsel to administer the claims process, (4) compensates Class Counsel with an unreasonably high fee, and (5) provides inadequate notice to the

[1] On May 25, 2012, Steve A. Miller, P.C. Profit Sharing Plan ("Miller") filed the first objection to the Proposed Settlement. (ECF No. 639.) In the objection, Miller claimed that (1) the proposed settlement's provision for cy pres distribution of uncashed checks is unnecessary and (2) the attorneys' fee for Lead Plaintiff's Counsel is excessive. On September 27, 2012, however, Miller withdrew its Objection with prejudice. (ECF No. 663.) Miller, therefore, will not be heard at the Fairness Hearing.

Class. For the foregoing reasons, the Court finds Objector's arguments to be without merit and, therefore, the Objection is OVERRULED.[2]

A. Fairness and Adequacy of the Settlement

Orloff Trust claims that the $115 million Settlement Fund is unfair because, "when analyzed in terms of the dollar value to be received by each individual class member . . . there is little or no value in the Settlement." (Objection at 2.) Objector further asserts that "there is little or no evidence provided to the class members and the court to determine whether the Settlement is reasonable." (Id.) To support its claim that the Settlement is unfair to the Class, however, Orloff Trust offers to the Court nothing more than a bare assertion to that effect. As such, the Court finds the claim unconvincing.

The instant litigation has been complex, costly, and lengthy in duration. Had the Parties not reached a Settlement, the matter would have likely continued for many more years; it would have required continued discovery, Summary Judgment Motions, and, potentially, a lengthy and complex trial. Each stage of litigation would have added to the already considerable expense,

[2] On April 4, 2013, the Court issued an Order overruling Orloff Trust's Objection because it lacked standing to object. (ECF No. 679.) It has since been brought to the Court's attention that Objector did, in fact, make a timely submission of its Proofs of Claim. The April 4, 2013 Order, therefore, is VACATED and SUPERCEDED by this Order.

and the Settlement Class might have obtained a result far less beneficial than the one provided by the Settlement. The docket in this matter is replete with Court findings and Party submissions that rebut Objector's unsupported opinion. (See, e.g., Memorandum and Order, Jan. 7, 2013, ECF No. 665; Lead Pl.s' Opp. to Objection of NYAG, ECF No. 658.) Given the attendant risks of litigation, the Court finds that the Settlement, especially when considered in conjunction with the previous Settlements in this case, is reasonable and fair. Accordingly, Orloff Trust unsupported Objection, which claims that the Settlement is not fair, is OVERRULED.[3]

B. Cy Pres Doctrine in the Plan of Allocation

Orloff Trust also asserts that the Plan of Allocation, which "distribut[es] the [residual] funds to charitable organizations[,] does not meet legal standards" for fairness because it fails to identify specific charities to receive any remaining funds. (Objection at 3.) Again, however, Objector provides no support in fact or law for this assertion.

---

[3] See also Memorandum and Order, Jan. 7, 2013, ECF No. 665. ("Overall, the submissions on the damages amount in terms of the Settlement amount have not convinced the Court that the Settlement is insufficient. Any class action settlement must take into account a number of variables that may impact the parties' expected gains from foregoing trial, including settlement awards in comparable suits, the cost of delay, the value of potential verdicts in related suits, and changes in the bargaining position of the parties, among other factors.")

**Prior to the Court's approval of the previous settlement with American International Group, Inc., an objection was made regarding the Proposed Settlement's Plan of Allocation. (Miller Objection, ECF No. 607.) The Objection opposed the Plan of Allocation to the extent that it would have returned to the Defendant any funds left unclaimed after distribution of the Settlement Fund. This Court sustained the Objection, ordering the Administrator to make a payment to a not-for-profit, in accordance with the cy pres doctrine, with any funds remaining after authorized claimants were compensated. (Order, Feb. 2, 2012, ECF No. 619.)**

**Citing a Second Circuit Opinion and a District Court Order, the Orloff Trust claims that approving a settlement prior to selecting an organization to receive the residual funds "do[es] not comply with the standards established in this circuit." (ECF No. 671, Objection at 5.) The Circuit Opinion cited, however, did not even address this issue; it only ruled that the lower Court had "discretion" to choose between supplementing payments to the Class (in accordance with treble damages) or making a cy pres distribution to put "the unclaimed fund[s] to its next best compensation use . . . ." Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007). And while a District Court judge directed "Lead Plaintiff to submit . . . the names of**

(and rationale for)" proposed charities prior to the distribution of the residual funds, neither that Court nor the Circuit has held that approval of the organization is a condition that must be met prior to a Settlement's approval. In re Nortel Networks Corp. Secs. Litig., 2010 U.S. Dist. LEXIS 87447, at *20 (S.D.N.Y. Aug. 20, 2010)(emphasis added). "Of course," as the Court in Masters noted, "it [is] not certain at the time [of] the Agreement . . . whether there [will] be [e]xcess [f]unds . . . ." Masters, 473 F.3d at 435.

The Plan of Allocation in the current Agreement of Compromise and Settlement ("Agreement"), moreover, provides for funds left unclaimed after pro rata distribution to be "donated to non-sectarian, not-for-profit 501(c)(3) organization(s) designated by Lead Plaintff and Lead Plaintiff's Counsel." (Agreement at 17; Reply Mem. Law in Further Supp. of Mot. for Final Approval at 4-5.) Funds are considered unclaimed only if the amount remaining after distribution is "not cost effective or efficient to redistribute . . . to the Settlement Class." (Id.) The Plan of Allocation is squarely in keeping with the terms of the prior one approved by this Court on February 2, 2012 (Order, Feb. 2, 2012, ECF No. 619.) The provision certainly has "a reasonable, rational basis," In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 462 (S.D.N.Y. 2004), and is within the

bounds of the law of this Circuit, which limits cy pres distributions "to circumstances in which direct distribution to individual class members is not economically feasible, or where funds remain after class members are given a full opportunity to make a claim." Masters, 473 F.3d at 436 (citation omitted). As such, Orloff Trust's objection to the Plan of Allocation's cy pres distribution is without merit and, therefore, is OVERRULED.

C. Claims Administration and the Power of Counsel

Orloff Trust argues that the Settlement Agreement permits Class Counsel "to make decisions[,] without any guidelines of judicial oversight[,]" regarding the administration of the Settlement Fund. (Objection at 6.) This claim fails, and even the provision of the Settlement Agreement that Objector cites offers it no support. The cited provision notes that "Lead Plaintiff's counsel shall have the right, but not the obligation, to advise the Administrator to waive what Lead Plaintiff's counsel deem to be de minimis or formal or technical defects in any Proofs of Claim submitted." (Agreement at 18.) This provision, which is implicated only in exceptional circumstances, merely allows Lead Counsel to recognize claimants who lack all necessary documents of proof. While it is does provide Lead Counsel with some discretion, the provision lends not even a scintilla of credibility to Objector's bald assertion that it

creates a "high potential for unfair or preferential treatment of certain class members." (Objection at 6.) The Agreement separates sufficiently Lead Counsel's representation of the Class from the administration of the Settlement Fund. As such, Orloff Trust's meritless objection, which asserts otherwise, is OVERRULED.

D. Adequacy of the Notice to the Class

Orloff Trust claims that the Notice to the class is inadequate because it neither identifies that a cy pres distribution is contemplated for undistributed funds, nor provides notice as to which specific organizations will receive residual funds. Both claims are without merit.

As noted herein supra, the Agreement indicates that residual funds will be "donated to non-sectarian, not-for-profit 501(c)(3) organization(s) designated by Lead Plaintiff and Lead Plaintiff's Counsel." (Agreement at 17.) The Notice, which provides the Class with information on the material parts of the Agreement, is only required to

> clearly and concisely state in plain, easily understood language (i) the nature of the action; (ii) the definition of the class certified;(iii) the class claims, issues, or defenses;(iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2). Objector sites no authority—not Rule 23 or otherwise—to indicate that a cy pres distributions of de minimis funds is material to the Notice. The failure to reference the cy pres distribution in the Notice, especially as it is already included in the Agreement's Plan of Allocation, is certainly not a basis for "direct[ing] parties to restart the settlement process . . . ." (Objection at 9.)

Orloff Trust also claims that the Notice is inadequate because it fails to inform the Class of the organizations to receive the residual funds. Objector, similarly does not—and cannot—cite authority to support its claim that failure to identify the specific organizations to receive the residual renders the Notice legally deficient. Therefore, Orloff Trust's Objection to the adequacy of the Notice to the Class is OVERRULED.

E. Attorneys' Fees

Finally, Objector claims that Lead Counsel's "fee request is unreasonably high," and instructs the Court to "engage in detailed analysis of counsel's billing . . . ." (Objection at 6, 7.) Orloff Trust's position is that "[i]f the court is inclined to use the percentage of fund method, Objectors [sic] would advocate the use of a lower percentage . . . ." (Objection at 8.)

**As with the claims discussed above, the instant claim lacks support, and Objector provides no basis for its request to decrease attorneys' fees here.**

**As Objector and Lead Plaintiffs' Counsel note, the Court analyzes the reasonableness of fees pursuant to the factors set out in Goldberger v. Int. Resources, 209 F.3d 43 (2d Cir. 2000). Goldberger explains that determining the appropriateness of fees depends on (1) the amount counsel's time and labor; (2) the magnitude and complexity of litigation; (3) the risks of further litigation; (4) the quality of representation; (5) the fee charged relative to the Settlement amount; and (6) any public policy considerations. (Id. at 50.)**

**Here, Counsel has expended considerable time and labor on behalf of Plaintiffs, approximately 30,000 hours in total. (Lead Pl.s' Reply to Objection at 8 n.7, ECF No. 677.) The litigation, furthermore, has been proved to be complex, protracted, and contentious; it has taken place over the course of eight years, with rounds of extensive discovery, amended complaints, motion practice, mediation, and settlement discussions. (Dubbs Decl. Apr. 27, 2012, ¶¶ 9-10.) Plaintiff's Counsel proved able and dedicated throughout the stages of litigation, having successfully opposed motions to dismiss, reached two earlier settlements worth a combined $822.5 million, and led the Class to**

this stage in the current case. (Id. at ¶¶ 5, 9.) The time, effort, and labor invested by Plaintiff's Counsel in this case cannot be questioned.

The risks of litigation for Plaintiffs, furthermore, are substantial, as the case involved novel legal issues, including issues surrounding class certification, factual obstacles, and difficult financial challenges. Additionally, Plaintiff's Counsel began the suit before government agencies commenced their investigations, (id. at ¶¶ 168-69), which speaks to the risks of litigation. Lead Counsel comprises of nationally-known leaders in the field of securities class actions, and its representation of the Class has been of high quality.

The Court, finally, concludes that the requested fee award is comparable to fee awards in cases with similar settlement amounts. (See Order, Feb. 2, 2012, ECF No. 619.) The award has the support of the Ohio Attorney General's Office, which has monitored and overseen the litigation by outside Counsel. (Dubbs Decl. Apr. 27, 2012, Ex. 7-8.) And public policy supports granting attorneys' fees "that are sufficient to encourage Plaintiffs' Counsel to bring securities class actions that supplement the efforts of the SEC." In re Bristol-Myers Squibb Sec. Litig., 361 F. Supp. 2d 229, 236 (S.D.N.Y. 2005). The Court finds that, in relation to the Parties' Settlement, the requested

**13.25% is reasonable and the award promotes the valuable public policy interests at stake.**

**Orloff Trust's Objection to the requested attorneys' fees is thus OVERRULED.**

**SO ORDERED.**

**Dated: New York, New York**
**April 10, 2013**

Deborah A. Batts

**Deborah A. Batts**
**United States District Judge**