UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X

In re: AMERICAN INTERNATIONAL
GROUP, INC. SECURITIES LITIGATION

This Document Relates To: All
Actions
------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/11/13

04 Civ. 8141 (DAB)
MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge.

On April 10, 2013, the Court held a Fairness Hearing in this matter to consider Motion for Approval of the Settlement with Defendants Maurice R. Greenberg, Howard I. Smith, Christian M. Milton, Michael J. Castelli, C.V. Starr & Co., Inc., and Starr International Company, Inc. (collectively "Starr Defendants"), and the Motion for Attorney's Fees and Reimbursement of Expenses. In accordance with the Court's findings and rulings as set forth in this Order, the April 10, 2013 Order, and the Transcript of the April 10, 2013 Fairness Hearing, the Court CERTIFIES the Settlement Class for settlement purposed, APPOINTS Lead Plaintiff as Settlement Class Representative, and APPOINTS Lead Counsel as Settlement Class Counsel. Furthermore, the Court finds the Proposed Settlement to be fair, reasonable, and adequate, and the Plan of Allocation to be fair and equitable. The Proposed Settlement and Plan of Allocation are HEREBY APPROVED. Finally, the Court finds the attorneys' fees and attorneys' and Lead Plaintiffs' expenses to be reasonable. The Motions for Approval

of Attorneys' Fees and for Reimbursement of Attorneys' and Lead Plaintiffs' Expenses are HEREBY APPROVED.

I.   INTRODUCTION

   A.   Factual Background and Litigation History

   This action, which was filed in 2004, arises from material misstatements and omissions allegedly made by Defendants in connection with disclosures of (1) the Starr Defendants' alleged involvement in a scheme that included steering contingent commissions to, and rigging certain insurance bids with, Marsh & McLennan Companies, Inc.; and (2) an alleged accounting fraud at AIG that resulted in the Company restating nearly four years of earnings and adjusting earnings for a fifth year.  Lead Plaintiff also alleged a "market manipulation" fraud, in which the Starr Defendants and AIG manipulated the market through the purchase of millions of shares of AIG stock.

   This is the third Settlement in this case.  On two prior occasions, Lead Plaintiffs settled lawsuits under the same caption, and with the same operative set of facts, against Defendants PwC and AIG.  The Court held Fairness Hearings for the Approval of the Proposed Settlement with Defendant PwC on November 30, 2010, and with Defendant AIG on January 31, 2012. The Court heard the Objections to the Settlement by Steven A.

2

Miller at the January 31, 2012 Fairness Hearing.  The Court
overruled all of the Miller Objections with the exception of one;
it sustained the Objection to the provision of the Agreement that
would have returned residual Settlement funds to the Defendant,
and directed the Parties to amend the Agreement to provide for a
cy pres distribution of any residual funds to a 501(c)(3) not-
for-profit.  The Court signed Final Approval Orders for the
Settlements with the Defendants on December 2, 2010 and February
2, 2012, respectively.

During the more than seven years this action has been
pending, this matter has been litigated vigorously.  The
litigation has involved: (1) fully-briefed motion practice, on
two separate occasions, to determine the Lead Plaintiff; (2)
Motions to Dismiss filed by 23 Defendants; (3) fact and expert
discovery related to class certification, followed by a contested
Motion for Class Certification involving four days of legal
argument and hearings; (4) the review and analysis of more than
53.3 million pages of documents, including more than 835,000
pages produced by Defendant AIG; and (5) 50 depositions of fact
and expert witnesses.

The Settlement, which was negotiated at arm's length over
many years with the help of several mediators, including the
Honorable Layn R. Phillips (Ret.), creates a Settlement Fund of

$115,000,000.00.  The Distribution Amount, which is the Settlement Fund plus interest and less any expenses related to taxes, notice, and Settlement administration, and any attorneys' fees and expenses award or Lead Plaintiff's award approved by the Court, is to be distributed pursuant to the Plan of Allocation, which is set forth in pages sixteen through twenty-seven of the Notice distributed to Class Members.

The Settlement Class consists of: all persons and entities who purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive, as well as all persons and entities who held the common stock of HSB Group, Inc. ("HSB") at the time HSB was acquired by AIG in a stock-for-stock transaction, and all persons and entities who held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock-for-stock transaction, and who were damaged thereby, excluding persons who made timely and valid requests for exclusion from the Class. Named Defendants, members of the immediate families of Named Defendants, parents, subsidiaries, affiliates, officers, or directors of AIG, any entity in which any of the foregoing has a controlling interest, or the legal representative, heirs, successors, and assigns of any of the foregoing, are precluded from making claims under the Settlement.

4

In an Order dated February 3, 2012, this Court preliminarily approved the Proposed Settlement between Lead Plaintiffs and Starr Defendants.  The Preliminary Approval Order conditionally certified a Class for the purposes of Settlement only.  The Court also approved the Notice for dissemination to Class Members.  On April 27, 2012, Lead Plaintiffs moved to have the Court approve the Proposed Settlement with Starr Defendants.  The Court set a Fairness Hearing for June 28, 2012, to consider the fairness, reasonableness and adequacy of the Settlement and Plan of Allocation, but the Hearing was continued.

On August 17, 2012, the Office of the Attorney General for the State of New York filed an objection to the Settlement, which this Court, on January 7, 2013, dismissed for lack of standing, but considered as an amicus submission.  In that same Order, the Court instructed Lead Plaintiffs to issue a Supplemental Notice to the Class to address a previous error regarding the statistical significance between the AIG securities prices and three "market corrective" dates.  Lead Plaintiffs issued the Supplemental Notice, which also extended deadlines for potential members of the Class to Opt-Out of the Settlement and to Object to the Settlement (to March 6, 2013), as well as to submit Proofs of Claim (to March 27, 2013).

B.    Fairness Hearing and Consideration of Objections

A Fairness Hearing in this matter was held at 2:30 p.m. in Courtroom 24B on April 10, 2013.  Prior to the hearing, Forrest S. Turkish submitted an Objection on behalf of Objector Marshall Orloff, Trustee for Orloff Family Trust DTD 12/13/01.[1] (See ECF No. 671.)  Mr. Orloff claimed that the Settlement (1) is neither fair to the Class nor reasonable, (2) fails to make proper use of the cy pres doctrine, (3) permits Class Counsel to administer the claims process, (4) compensates Class Counsel with an unreasonably high fee, and (5) provides inadequate notice to the Class.

This Court OVERRULED Mr. Orloff's objections that the Settlement was unfair and unreasonable and that the 13.25% award of attorneys' fees was excessive.  As set forth below, this Court found the Settlement to have been fair, reasonable, and adequate. The Settlement was negotiated at arms-length and the litigation was complex, costly, and lengthy in duration.  Lead Plaintiffs' Counsel represented the Class dutifully and professionally, and without its representation, the Class might have obtained a result far less beneficial than the one provided by the

---

[1] On April 4, 2013, the Court issued an Order overruling Orloff Trust's Objection for lack of standing to object because it failed to the provide Proofs of Claim necessary to demonstrate it as a member of the Class. (ECF No. 679.)  It has since been brought to the Court's attention that Objector did, in fact, make a timely submission of its Proofs of Claim and, therefore, is a member of the Class.  As such, the April 4, 2013 Order is VACATED and SUPERCEDED by this Order.

Settlement.

This Court further concluded that a 13.25% attorneys' fee award was in line with awards in similar cases, that it reflected the complexity of this case and Lead Counsel's efforts, and that it was consistent with the agreement executed by Lead Counsel and the Ohio Attorney General's Office.

Mr. Orloff also objected to the Plan of Allocation, which contemplates a cy pres distribution to a 501(c)(3) not-for-profit organization with any residual Settlement funds. Mr. Orloff argued that the Plan of Allocation does not meet the requirements for fairness because it fails to identify specific charities to receive any remaining funds. This Court OVERRULED the objection, and noted that there was no legal authority to support the argument; no Court in the Circuit has ever made identifying the organization to receive the residual funds a condition precedent to a Settlement approval. "Of course," as the Court in Masters v. Wilhelmina Model Agency, Inc. noted, "it [is] not certain at the time [of] the Agreement . . . whether there [will] be [e]xcess [f]unds" after all distributions are made pursuant to the Plan of Allocation. Masters v. Wilhelmina Model Agency, Inc. 473 F.3d 423, 435 (2d Cir. 2007).

The Court, similarly, OVERRULED Mr. Orloff's objections regarding the adequacy of the Notice to the Class because they

were meritless.  Mr. Orloff contended that the Notice was legally

deficient because it failed to indicate that there would be a <u>cy</u>

<u>pres</u> distribution for the residual funds, and failed to notify

the Class which organizations would receive the <u>cy pres</u>

distribution.  Again, Mr. Orloff failed to cite authority to

sustain his position.  The Notice, which provides the Class with

information on the material parts of the Agreement, is only

required to

> clearly and concisely state in plain, easily understood
> language (i) the nature of the action; (ii) the definition
> of the class certified;(iii) the class claims, issues, or
> defenses;(iv) that a class member may enter an appearance
> through an attorney if the member so desires; (v) that the
> court will exclude from the class any member who requests
> exclusion; (vi) the time and manner for requesting
> exclusion; and (vii) the binding effect of a class judgment
> on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2).  Objector cites no authority-not Rule

23 or otherwise-to indicate that a <u>cy pres</u> distribution of de

minimis funds is material to the Notice.

Finally, this Court OVERRULED Mr. Orloff's objection in

which he argued that the Settlement Agreement allowed Lead

Counsel to "make decisions without any guidelines of judicial

oversight." (Objection at 6.)  The contested provision states

that "Lead Plaintiff's counsel shall have the right, but not the

obligation, to advise the Administrator to waive what Lead

Plaintiff's counsel deem to be de minimis or formal or technical

8

defects in any Proofs of Claim submitted." (Agreement at ¶ E5.)
While it does provide Lead Counsel with some discretion, the
provision lends not even a scintilla of credibility to Objector's
bald assertion that it creates a "high potential for unfair or
preferential treatment of certain class members." (<u>Id.</u>)  This
Court found that the instant Agreement, like the Agreement in the
previous Settlements in this case, separates sufficiently Lead
Counsel's representation of the Class from the administration of
the Settlement Fund.

On April 10, 2013, the Court issued an Order, which further
set out its reasoning for OVERRULING Mr. Orloff's Objections.


II.  DISCUSSION

A.  <u>Class Certification</u>

In order to certify finally the Class as defined by the
Court's February 3, 2012 Order, the Court will consider the
criteria of Federal Rule of Civil Procedure 23(a) and (b).  The
four prerequisites of Rule 23(a) are that: (1) the class is so
numerous that joinder of all members is impracticable; (2) there
are questions of law or fact common to the class; (3) the claims
or defenses of the representative parties are typical of the
claims or defenses of the class; and (4) the representative
parties will fairly and adequately protect the interests of the

9

class.

The Court finds that the Class is so numerous that joinder of all members is impracticable.  Claims Administrator Rust Consulting, Inc. ("Rust") mailed more than 2 million Notice Packets, including 1,978,859 to individual names and addresses and 1,925 to nominee names and addresses.  (Miller Aff., Apr. 24, 2012 (Ex. 3 to Dubbs Decl., Apr. 27, 2012), ¶ 10; Miller Aff., June 12, 2012 (Ex. 1 to Dubbs Reply Decl., Jun. 13, 2012), ¶ 5.)

The Court finds that there are questions of law or fact common to the Class.  The Court also finds that under Rule 23(b)(3), these questions predominate over any questions affecting only individual Class Members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The central questions of whether Defendants made false and misleading statements in documents including periodic reports filed with the Securities and Exchange Commission, and whether those alleged misstatements caused AIG Securities to trade at artificially inflated prices during the Class Period, are common to the Class and predominate over questions affecting only individual members.  (See Dubbs Decl. Apr. 27, 2012, ¶¶ 34-36.)

The Court finds that the claims and defenses of the representative parties are typical of the claims and defenses of

the Class.  Lead Plaintiff, like all Class Members, purchased AIG
Securities at allegedly artificially inflated prices during the
Class Period and claims to have suffered damages because of the
Starr Defendants' alleged material misconduct.  Accordingly, the
legal theories and evidence Lead Plaintiff would advance to prove
its claims would simultaneously advance the claims of other Class
Members.  (Mem. L. Supp. Mot. Prelim. Approval, p. 11.)

The Court finds that the representative parties will fairly
and adequately protect the interests of the Class.  Labaton
Sucharow and Hahn Loeser, Court-appointed Lead Counsel for Lead
Plaintiff the Ohio State Funds, have zealously and ably
represented Lead Plaintiff on behalf of the proposed Class,
having expended nearly 30,000 hours in prosecution and
investigation of the claims against the settling Defendants.
(Dubbs Decl. Apr. 27, 2012, ¶ 175; Lead Pl.s' Mem. L. Further
Supp. Mot. Final Approval, p. 8, n.7.)  There is no conflict or
antagonism between the claims of the Ohio State Funds and the
other members of the proposed Class.

Finding all criteria of Rule 23 satisfied, this Court
finally certifies the Settlement Class for settlement purposes
and appoints Lead Plaintiff as Settlement Class Representative
and Lead Counsel as Settlement Class Counsel.

B.  <u>Fairness of the Settlement</u>

Under Rule 23(e), to grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is fair, reasonable and adequate. In making this determination, the Court must review both the procedural and substantive fairness of a proposed settlement. To find a settlement procedurally fair, the Court must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations, and that Plaintiff's Counsel possessed the experience and ability, and engaged in the discovery necessary for effective representation of the Class's interests. To find a settlement substantively fair, the Court reviews the nine <u>Grinnell</u> Factors. <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 463 (2d Cir. 1974).

<u>Procedural Fairness</u>:  The Court finds that the Settlement resulted from "arm's length negotiations." Class Counsel possessed the requisite amount of experience and ability, and the parties engaged in the discovery necessary for effective representation of the Class's interests.  See <u>D'Amato v. Deutsche Bank</u>, 236 F.3d 78, 85 (2d Cir. 2001)(citing <u>Weinberger v. Kendrick</u>, 698 F.2d 61, 74 (2d Cir. 1982)).

By the time the Settling Parties reached the Settlement, Lead Plaintiff, through able and experienced Lead Counsel, had

(i) opposed Motions to Dismiss by 23 Defendants, including AIG;
(ii) completed class discovery, involving many depositions; (iii)
moved for class certification; and (iv) completed all fact
discovery, including the review and analysis of many millions of
pages of documents.  (Dubbs Decl. Apr. 27, 2012, ¶¶ 71-139.)
Over the course of the case, the Parties engaged in numerous
discussions, both formal and informal, culminating in a mediation
session with the Honorable Layn R. Phillips (Ret.) in June of
2010.  (Id.)

    Grinnell Factor 1: The Court finds that the litigation is
complex, and would likely be costly and lengthy in duration. Had
the Parties not reached a Settlement, this case would have likely
continued for many more years and would have involved continued
discovery, summary judgment motions, and a lengthy and complex
trial, all of which would involve considerable expense, and after
which the Settlement Class might have obtained a result far less
beneficial than the one provided by the Settlement.  (Mem. L.
Supp. Mot. Approval at 9.)

    Grinnell Factor 2:  The Court finds that the reaction of
the Class to the Settlement has been positive.  With more than 2
million Notice Packets mailed to potential members of the
Settlement Class and nominees, there were only 61 requests for
exclusion received, out of which 15 were timely and valid. (See

Miller Aff., June 12, 2012, ¶¶ 10-12.)  Additionally, there were
only two objections, one of which was withdrawn prior to the
Fairness Hearing, and the other overruled as without merit. (ECF
No. 639, 663, 671, 682.)

Grinnell Factor 3:  The Court finds that proceedings have
progressed and sufficient discovery has been completed to
understand Plaintiffs' claims and negotiate Settlement terms.  As
noted above, this litigation has taken years and has involved
extensive discovery and briefing on Motions to Dismiss and class
certification issues.

Grinnell Factors 4 and 5: The Court finds that the risks of
establishing liability and damages are significant.  One of the
frauds alleged involved hundreds of separate insurance
transactions.  Proof of wrongdoing would have to be established
for each allegedly improper transaction separately.  Moreover,
the case involves violations of complex accounting rules that
might not be understood easily by a jury.  (Mem. L. Supp.
Approval at 14.)

Grinnell Factor 6: The Court finds that the risk of
maintaining the class action through the trial neither weighs for
nor against approving the Settlement in this case.

Grinnell Factor 7: The Court finds that Defendants' ability
to withstand a judgment greater than the Settlement weighs in

14

favor of approval.  Over the course of this case, the wealth and
assets of Defendants were diminished greatly, particularly with
the extreme drop in the price of AIG stock and the company's need
for a government bailout in 2008. (Mem. L. Supp. Approval at 19.)

Grinnell Factors 8 and 9: The Court finds that the
Settlement is reasonable in light of: (a) Plaintiffs' best
possible recovery, and (b) the attendant risks of litigation.
The $115,000,000.00 represents a significant Settlement for the
Class, especially given that "control person" only settlements
are rare, and this Settlement is primarily with individuals (four
of the six Starr Defendants are former AIG executives). (Mem. L.
Supp. Approval at 21.)  Indeed, this Settlement represents one of
the largest paid by individual Defendants. (Id.)  In light of the
significant risks involved in the litigation, the recovery is an
excellent result for the Settlement Class.

Having considered the procedural and substantive factors,
the Court find the proposed Settlement to be fair, reasonable and
adequate under Rule 23 and THE SETTLEMENT IS HEREBY APPROVED.


C.   Reasonablenss of the Plan of Allocation

"When formulated by competent and experienced class
counsel," a plan of allocation of net settlement proceeds "need
have only a reasonable, rational basis."  In re Global Crossing

15

Sec. & ERISA Litig., 225 F.R.D. 436, 462 (S.D.N.Y. 2004).  Here,
the Plan of Allocation, which is described in the Notice,
apportions the recovery among Settlement Class Members.  Those
who purchased common stock and options will recover a larger
portion of the Settlement than those who purchased the bonds, in
recognition of the particular risks involved in establishing loss
causation and market efficiency for the bonds.  The Plan also
apportions recovery to take into account the strength of
potential claims relative to the time of the purchase or sale of
AIG Securities, and to account for distributions from the Fair
Fund created in SEC v. American International Group, Inc., No. 06
Civ. 1000 (S.D.N.Y. June 15, 2007)(LAP).

    As discussed above, the Plan of Allocation as set forth in
the Agreement provides that any unclaimed or residual funds will
be subject to a cy pres distribution to a 501(c)(3) not-for-
profit.  The Plan of Allocation, in all respects, represents a
fair and equitable method for allocating the Settlement Fund
among Authorized Claimants, and it is HEREBY APPROVED.


    D.   Attorneys' Fees and Expenses

    To ensure the appropriateness of attorneys' fees and costs,
the Court reviews the award in accordance with the six Goldberger
criteria.  Goldberger v. Int. Resources, 209 F.3d 43, 50 (2d Cir.

2000).

Goldberger Factors 1 and 2: As discussed in the "Procedural Fairness" section above, the Court finds that Counsel have expended considerable time and labor on behalf of Plaintiffs and the litigation is complex and of large magnitude.

Goldberger Factor 3: As discussed in Grinnell factors 4, 5, and 6 above, the Court finds that the risks of litigation for Plaintiffs are substantial.

Goldberger Factor 4: The Court finds that the representation of Class Counsel is of high quality. Lead Counsel have extensive experience in complex litigation and are nationally known leaders in the field of securities class actions. (Dubbs Decl. Apr. 27, 2012, ¶¶ 175-78.)

Goldberger Factor 5: The Court finds that in relation to the Parties' Settlement, the requested attorneys' fees of 13.25% are reasonable. The Office of the Ohio Attorney General notes that despite the "extraordinary circumstances confronted in this case," Lead Counsel demonstrated a "creative and aggressive resolution of the issues," achieved "excellent results," and therefore "merit this award." (Smith Supp. Decl., Apr. 23, 2012.) In addition, the requested fee award in this case is well in line with fee awards in cases with similar settlement amounts. See, e.g., In re Initial Pub. Offering Sec. Litig., 671 F. Supp. 2d

467, 516 (S.D.N.Y. 2009) (awarding 33.30% on a Settlement Fund of
$586 million); Carlson v. Xerox Corp., 596 F. Supp. 2d 400 (D.
Conn. 2009) (awarding 16% on a Settlement Fund of $750 million).
Finally, the award of 13.25% is consistent with the Agreement
between Lead Counsel and the Ohio Attorney General. (Dubbs Decl.
Apr. 27, 2012, ¶ 163.)  This Court, therefore, agrees with
Counsel and the Ohio Attorney General, and concludes that the
13.25% fee award is "eminently reasonable under the circumstances
of this case and precedent within this Circuit." (Reply Mem. Law.
in Further Supp. Of Mot. For Approval at 6-7)

     Goldberger Factor 6: The Court finds that public policy
supports granting attorneys' fees "that are sufficient to
encourage plaintiffs' counsel to bring securities class actions
that supplement the efforts of the SEC."  In re Bristol-Myers
Squibb Sec. Litig., 361 F. Supp. 2d 229, 236 (S.D.N.Y. 2005).
This Court finds that an award of 13.25% of the Settlement Fund
promotes the valuable public policy interests at stake.

     Expenses:  "Attorneys may be compensated for reasonable out-
of-pocket expenses incurred and customarily charged to their
clients, as long as they were 'incidental and necessary to the
representation' of those clients."  In re Independent Energy
Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 (S.D.N.Y.
2003).  This Court finds that expenses in the amount of

$991,596.83 were reasonable and necessary to the prosecution of this Action.   The categories of expenses for which Counsel seek reimbursement are the types of expenses routinely charged to hourly paying clients including, <u>inter alia</u>, fees for experts and consultants, filing fees, and discovery expenses. (Dubbs Decl. Apr. 27, 2012, ¶¶ 180-86; Lead Pl.s' Mem. Law. in Further Supp. of Final Approval at 10.)   The costs are detailed and well-documented, and are not duplicated in the attorney billing rates. (<u>Id.</u>)

Having conducted the <u>Goldberger</u> analysis, the Court finds attorneys' fees of 13.25% of the Settlement Fund to be reasonable and those attorneys' fees are HEREBY APPROVED. Likewise, the Court finds attorneys' expenses of $991,596.83 reasonable and those expenses are HEREBY APPROVED.

<u>Class Representative Compensation</u>: "Courts in this Circuit routinely award . . . costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." <u>Hicks v. Stanley</u>, No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); <u>see also</u> <u>In re Marsh & McLennan Cos., Inc. Sec. Litig.</u>, NO. 04 Civ. 8144, 2009 WL 5178546, at * 21 (S.D.N.Y. Dec.

23, 2009).  Here, the request of OPERS and STRS Ohio for
reimbursement of $7,805.00 in lost wages related to their active
participation in this action is reasonable, and those expenses
are HEREBY APPROVED.


SO ORDERED.

Dated: April 11, 2013
New York, New York


                              *Deborah A. Batts*
                         Deborah A. Batts
                    United States District Judge

20