

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

In re: AMERICAN INTERNATIONAL
GROUP, INC. SECURITIES LITIGATION

This Document Relates To: All
Actions

----------------------------------X

04 Civ. 8141 (DAB)
MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge.

On September 10, 2013, the Court held a Fairness Hearing in this matter to consider Motion for Approval of the Settlement with Defendants Ronald E. Ferguson, Richard Napier, John B. Houldsworth, and General Reinsurance Corp. (collectively "Gen Re Defendants"), and the Motion for Attorney's Fees and Reimbursement of Expenses. In accordance with the Court's findings and rulings as set forth in this Order, the September 11, 2013 Order, and the Transcript of the September 10, 2013 Fairness Hearing, the Court CERTIFIES the Settlement Class for settlement purposed, APPOINTS Lead Plaintiff as Settlement Class Representative, and APPOINTS Lead Counsel as Settlement Class Counsel. Furthermore, the Court finds the Proposed Settlement to be fair, reasonable, and adequate, and the Plan of Allocation to be fair and equitable. The Proposed Settlement and Plan of Allocation are HEREBY APPROVED. Finally, the Court finds the attorneys' fees and attorneys' and Lead Plaintiffs' expenses to

be reasonable. The Motions for Approval of Attorneys' Fees as modified by the Court and for Reimbursement of Attorneys' and Lead Plaintiffs' Expenses are HEREBY APPROVED.

I. INTRODUCTION

A. Factual Background and Litigation History

This action, which was filed in 2004, arises from material misstatements and omissions allegedly made by Defendants in connection with disclosures of (1) the Gen Re Defendants' alleged involvement in a scheme that included the transfer of $500 million to AIG to fraudulently increase the company's claims reserves and premiums reserves; and (2) an alleged accounting fraud at AIG that resulted in the Company restating nearly four years of earnings and adjusting earnings for a fifth year. Lead Plaintiff further alleged that (1) the Gen Re Defendants knowingly, and with severe recklessness, structured and executed the alleged sham transactions; (2) related false and misleading statements were filed with the Securities and Exchange Commission; and (3) the price of AIG's stock fell at various times when market division and accounting frauds were disclosed, resulting in significant damage to the Class.

This is the fourth and final Settlement in this case. On three prior occasions, Lead Plaintiffs settled lawsuits under the

same caption, and with the same operative set of facts, against Defendants PwC, AIG, and Starr Defendants. The Court held Fairness Hearings for the Approval of the Proposed Settlement with Defendant PwC on November 30, 2010, with Defendant AIG on January 31, 2012, and with Starr Defendants on April 10, 2013. The Court heard the Objections to the Settlement by Steven A. Miller at the January 31, 2012 Fairness Hearing. The Court overruled all of the Miller Objections with the exception of one; it sustained the Objection to the provision of the Agreement that would have returned residual Settlement funds to the Defendant, and directed the Parties to amend the Agreement to provide for a <u>cy pres</u> distribution of any residual funds to a 501(c)(3) not-for-profit. Prior to April 10, 2013 Fairness Hearing, Forrest S. Turkish submitted an Objection on behalf of Objector Marshall Orloff, Trustee for Orloff Family Trust DTD 12/13/01. The Court overruled the Objections from the bench, as well as in an April 10, 2013 Order. The Court signed Final Approval Orders for the Settlements with the Defendants on December 2, 2010, February 2, 2012, and April 11, 2013 respectively.

During the more than eight years in which this action has been pending, this matter has been litigated vigorously. The litigation has involved: (1) fully-briefed motion practice, on two separate occasions, to determine the Lead Plaintiff; (2)

3

Motions to Dismiss and for Judgment on the Pleadings; (3) fact and expert discovery related to class certification, followed by a contested Motion for Class Certification involving four days of legal argument and hearings; (4) the review and analysis of more than 46 million pages of documents, including more than 9,000,000 pages related to Gen Re Defendants; and (5) 47 depositions of fact and expert witnesses.

The Settlement, which was negotiated at arm's length over many years with the help of several mediators, including Kenneth Feinberg and the Honorable Layn R. Phillips (Ret.), creates a Settlement Fund of $72,000,000.00. The Distribution Amount, which is the Settlement Fund plus interest and less any expenses related to taxes, notice, and Settlement administration, and any attorneys' fees and expenses award or Lead Plaintiff's award approved by the Court, is to be distributed pursuant to the Plan of Allocation, which is set forth in pages nine through seventeen of the Notice distributed to Class Members.

The Settlement Class consists of: all persons and entities who purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive, as well as all persons and entities who held the common stock of HSB Group, Inc. ("HSB") at the time HSB was acquired by AIG in a stock-for-stock transaction, and all persons and entities who

held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock-for-stock transaction, and who were damaged thereby, excluding persons who made timely and valid requests for exclusion from the Class. Named Defendants, members of the immediate families of Named Defendants, parents, subsidiaries, affiliates, officers, or directors of AIG, any entity in which any of the foregoing has a controlling interest, or the legal representative, heirs, successors, and assigns of any of the foregoing, are precluded from making claims under the Settlement.

In December 2008, while two motions in this matter were pending-Lead Plaintiff's Motion for Class Certification and Defendants' Motion for Judgment on the Pleadings-Parties agreed in principle on settlement terms. On February 25, 2009, Lead Plaintiff filed a Motion for Preliminary Approval of the Settlement. The Court issued an Order on February 22, 2010, which certified a class for litigation. The Order also concluded that Second Circuit case law prohibited Lead Plaintiff from pleading reliance based on the fraud-on-the-market theory, and Lead Plaintiff was, therefore, unable to meet the predominance requirement with respect to a litigation class against the Gen Re Defendants.

Pursuant to the February 2010 Order, the Court, on March 4,

2010, issued an Order denying as moot Lead Plaintiff's February 2009 Motion for Preliminary Approval of the Settlement as to Gen Re Defendants only. On September 10, 2010, the Court granted Gen Re Defendants' Motion for Judgment on the Pleadings, and two weeks later, the Court entered a Judgment dismissing all claims against Gen Re Defendants. Lead Plaintiffs appealed the Court's March 2010 Order and its September 2010 Judgment. On August 13, 2012, the Second Circuit vacated this Court's March 2010 Order and September 2010 Judgment dismissing claims against Gen Re Defendants. The Second Circuit panel did not rule on the issue addressed in this Court's February 2010 Order. Instead, the Appeals Court concluded that unlike a litigation class, "a settlement class ordinarily need not demonstrate that the fraud-on-the-market presumption applies to its claims in order to satisfy the predominance requirement."

In an Order dated May 13, 2013, this Court preliminarily approved the Proposed Settlement between Lead Plaintiffs and Gen Re Defendants. The Preliminary Approval Order conditionally certified a Class for the purposes of Settlement only. On July 29, 2013, Lead Plaintiffs moved to have the Court approve the Proposed Settlement with Gen Re Defendants. The Court set a Fairness Hearing for September 10, 2013, to consider the fairness, reasonableness, and adequacy of the Settlement and Plan

of Allocation.

B. <u>Fairness Hearing and Consideration of Objections</u>

A Fairness Hearing in this matter was held at 3:00 p.m. in Courtroom 24B on September 10, 2013. Prior to the hearing, Attorneys Vincent S. Verdiramo and John J. Pentz submitted an Objection on behalf of the sole Objector[1], Lee Janovitz IRA. (See ECF No. 706.) Mr. Janovitz claimed that the Settlement would compensate Lead Counsel with a fee that exceeds the maximum amount permitted by the Agreement of Compromise and Settlement. This Court SUSTAINED Mr. Janovitz's objection, reasoning that while the 13.25% requested award of attorneys' fees was reasonable, it could not rescind the terms of the Agreement of Settlement to increase the attorneys' fee. The Court, then, approved attorneys' fees in the amount of $6,500,000.00, or

---

[1] In a September 11, 2013 Order, the Court noted that on September 3, 2013, after the deadline to object to the Settlement, Class Member Douglas J. Kramer emailed the claims administrator concerning untimely receipt of the Notice to the Class and the "professionalism on the part of the plaintiffs' lawyers." (Schachter Decl., Ex. A, ECF No. 710.) The administrator, however, sent Notice packets to Mr. Kramer on three occasions and to two separate addresses, which were provided by Mr. Kramer himself, and his broker, and were on file from the prior settlements. (Schachter Decl. ¶¶ 4-6, ECF No. 710.) The Court articulated the demands of the law, that "each class member who can be identified through reasonable effort must be notified." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 (U.S. 1974)(emphasis added); Fed. R. Civ. P. 23(c)(2)(B) ("[T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.") The Court found that Lead Counsel demonstrated more than reasonable effort to provide Mr. Kramer Notice. Thus, the Court OVERRULED Mr. Kramer's Objection as untimely and without merit.

approximately 9.09% of the Settlement Fund. On September 11, 2013, the Court issued an Order, which further set out its reasoning for SUSTAINING Mr. Janovitz's Objections.

II. DISCUSSION

A. Class Certification

In order to certify finally the Class as defined by the Court's May 13, 2013 Order, the Court will consider the criteria of Federal Rule of Civil Procedure 23(a) and (b). The four prerequisites of Rule 23(a) are that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The Court finds that the Class is so numerous that joinder of all members is impracticable. Claims Administrator Rust Consulting, Inc. ("Rust") mailed nearly 2.4 million Notice Packets, including 2,092,810 to individual names and addresses and 102,524 to nominee names and addresses. (Schachter Decl., July 24, 2013 (Ex. 3 to Dubbs Decl., July 26, 2013), ¶¶ 6-8.)

The Court finds that there are questions of law or fact

common to the Class. The Court also finds that under Rule 23(b)(3), these questions predominate over any questions affecting only individual Class Members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The central questions include, inter alia, whether the Gen Re Transaction (1) was material, (2) caused Class Members' losses, and (3) was designed and executed by the Gen Re Defendants with the requisite state of mind. These questions are among those that are common to the Class and predominate over questions affecting only individual members. (See Lead Pl.'s Mem. of Law in Supp. of Final Settlement Approval at 16, July 26, 2013.)

The Court finds that the claims and defenses of the representative parties are typical of the claims and defenses of the Class. Lead Plaintiff, like all Class Members, purchased AIG Securities at allegedly artificially inflated prices during the Class Period and claims to have suffered damages because of the Gen Re Defendants' alleged material misconduct. Accordingly, the legal theories and evidence Lead Plaintiff would advance to prove its claims would simultaneously advance the claims of other Class Members. (Id. at 17.)

The Court finds that the representative parties will fairly and adequately protect the interests of the Class. Labaton

9

Sucharow and Hahn Loeser, Court-appointed Lead Counsel for Lead Plaintiff the Ohio State Funds, have zealously and ably represented Lead Plaintiff on behalf of the proposed Class, having expended more than 9,000 hours in prosecution and investigation of the claims against the Ge Re Defendants. (Dubbs Decl. July 26, 2013, ¶ 98.) There is no conflict or antagonism between the claims of the Ohio State Funds and the other members of the proposed Class.

Finding all criteria of Rule 23 satisfied, this Court finally certifies the Settlement Class for settlement purposes and appoints Lead Plaintiff as Settlement Class Representative and Lead Counsel as Settlement Class Counsel.

### B. Fairness of the Settlement

Under Rule 23(e), to grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is fair, reasonable and adequate. In making this determination, the Court must review both the procedural and substantive fairness of a proposed settlement. To find a settlement procedurally fair, the Court must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's length negotiations, and that Plaintiff's Counsel possessed the experience and ability, and engaged in the discovery necessary

10

for effective representation of the Class's interests. To find a settlement substantively fair, the Court reviews the nine Grinnell Factors. City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

Procedural Fairness: The Court finds that the Settlement resulted from "arm's length negotiations." Class Counsel possessed the requisite amount of experience and ability, and the parties engaged in the discovery necessary for effective representation of the Class's interests. See D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)(citing Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982)).

By the time the Settling Parties reached the Settlement, Lead Plaintiff, through able and experienced Lead Counsel, had (i) led two rounds of motion practice to determine the Lead Plaintiffs; (ii) opposed Motions to Dismiss and for Judgment on the Pleadings; (iii) completed class discovery, involving many depositions; (iv) moved for class certification; (v) appealed successfully the Court's dismissal of claims against the Gen Re Defendants; and (vi) completed all fact discovery, including the review and analysis of many millions of pages of documents. (Lead Pl.s' Mem. of Law in Supp. of Mot. for Final Approval at 3-7); (Dubbs Decl. July 26, 2013, ¶¶ 37-72.) Over the course of the case, the Parties engaged in numerous discussions, both formal

11

and informal, culminating in mediation sessions with Kenneth Feinberg in March 2006 and the Honorable Layn R. Phillips (Ret.) in December 2008. (Id.)

Grinnell Factor 1: The Court finds that the litigation is complex, and would likely be costly and lengthy in duration. Had the Parties not reached a Settlement, this case would have likely continued for many more years and would have involved continued discovery, summary judgment motions, and a lengthy and complex trial, all of which would involve considerable expense, and after which the Settlement Class might have obtained a result far less beneficial than the one provided by the Settlement. (Mem. of Law Supp. of Final Settlement Approval at 10-11.)

Grinnell Factor 2: The Court finds that the reaction of the Class to the Settlement has been positive. With almost 2.4 million Notice Packets mailed to potential members of the Settlement Class and nominees, there were only 29 requests for exclusion received, out of which 7 were timely and valid. (See Schachter Decl., July 24, 2013, ¶¶ 13-19.) Additionally, there was only one valid objection, which was sustained by the Court. (ECF No. 706.)

Grinnell Factor 3: The Court finds that proceedings have progressed and sufficient discovery has been completed to understand Plaintiffs' claims and negotiate Settlement terms. As

noted above, this litigation has taken years and has involved extensive discovery and briefing on Motions to Dismiss and Judgment on the Pleadings, as well as on issues related to class certification.

Grinnell Factors 4 and 5: The Court finds that the risks of establishing liability and damages are significant. Because the accounting for the Gen Re transaction required the exercise of professional judgment, there would be a risk of establishing the requisite state of mind for securities fraud. (Dubbs Decl. July 26, 2013, ¶ 76.) Additionally, the case faced the strong potential of dismissal under the Supreme Court case, Stoneridge Investment Partners v. Scientific-Atlanta, 552 U.S. 148 (2008), as this Court, on September 10, 2010, found Plaintiffs' claims of reliance on the statements and actions of Gen Re Defendants to be deficient. (ECF No. 557); (Mem. of Law in Supp. of Final Settlement Approval at 12.) Moreover, the case involves violations of complex accounting rules that might not be understood easily by a jury. (Mem. of Law in Supp. of Final Settlement Approval at 13); (Dubbs Decl. July 26, 2013, ¶ 78.) There are also uncertainties related to damages, as proving loss causation would have required Lead Plaintiff to establish that stock price declines were due to the Gen Re Transaction. (Id. at ¶¶ 80-82); (Mem. of Law in Supp. of Final Settlement Approval at

13-14.)

Grinnell Factor 6: The Court finds that the risk of maintaining the class action through the trial neither weighs for nor against approving the Settlement in this case.

Grinnell Factor 7: The Court finds that Defendants' ability to withstand a judgment greater than the Settlement neither weighs for or against Settlement approval.

Grinnell Factors 8 and 9: The Court finds that the Settlement is reasonable in light of: (a) Plaintiffs' best possible recovery, and (b) the attendant risks of litigation. The $72,000,000.00 represents a significant Settlement for the Class, especially given the significantly smaller amounts paid the settle the Government's allegations against the Gen Re Defendants. (Mem. of Law in Supp. of Final Settlement Approval at 14.) As noted supra, there were significant risks involved in the litigation and, in light of them, the recovery is an excellent result for the Settlement Class.

Having considered the procedural and substantive factors, the Court finds the proposed Settlement to be fair, reasonable and adequate under Rule 23 and THE SETTLEMENT IS HEREBY APPROVED.

C. Reasonablenss of the Plan of Allocation

"When formulated by competent and experienced class

counsel," a plan of allocation of net settlement proceeds "need have only a reasonable, rational basis." In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 462 (S.D.N.Y. 2004). Here, the Plan of Allocation, which is described in the Notice, apportions the recovery among Settlement Class Members. The Plan of Allocation, furthermore, is substantially similar to those approved by the Court in the settlements against Defendants AIG, PwC, and Starr International Company. Those who purchased common stock and options will recover a larger portion of the Settlement than those who purchased the bonds, in recognition of the particular risks involved in establishing loss causation and market efficiency for the bonds. The Plan also apportions recovery to take into account the strength of potential claims relative to the time of the purchase or sale of AIG Securities, and to account for distributions from the Fair Fund created in SEC v. American International Group, Inc., No. 06 Civ. 1000 (S.D.N.Y. June 15, 2007)(LAP). (Dubbs Decl. July 26, 2013, ¶ 82-88.)

As discussed above, the Plan of Allocation as set forth in the Agreement provides that any unclaimed or residual funds will be subject to a cy pres distribution to a 501(c)(3) not-for-profit. The Plan of Allocation, in all respects, represents a fair and equitable method for allocating the Settlement Fund

15

among Authorized Claimants, and it is HEREBY APPROVED.

D. Attorneys' Fees and Expenses

To ensure the appropriateness of attorneys' fees and costs, the Court reviews the award in accordance with the six Goldberger criteria. Goldberger v. Int. Resources, 209 F.3d 43, 50 (2d Cir. 2000).

Goldberger Factors 1 and 2: As discussed in the "Procedural Fairness" section above, the Court finds that Counsel have expended considerable time and labor on behalf of Plaintiffs and the litigation is complex and of large magnitude.

Goldberger Factor 3: As discussed in Grinnell factors 4, 5, and 6 above, the Court finds that the risks of litigation for Plaintiffs are substantial.

Goldberger Factor 4: The Court finds that the representation of Class Counsel is of high quality. Lead Counsel have extensive experience in complex litigation and are nationally known leaders in the field of securities class actions.(Dubbs Decl. July 26, 2013, ¶¶ 100-103.)

Goldberger Factor 5: The Court finds that in relation to the Parties' Settlement, the requested attorneys' fees of 13.25% are reasonable. The Court ruled on this matter from the bench, however, and determined that an award of approximately 9.09%, or

$6,500,000.00, which was set out in the Agreement of Compromise and Settlement, is reasonable and proper. In addition, the fee award in this case is well in line with fee awards in cases with similar settlement amounts. See, e.g., In re Initial Pub. Offering Sec. Litig., 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.30% on a Settlement Fund of $586 million); Carlson v. Xerox Corp., 596 F. Supp. 2d 400 (D. Conn. 2009) (awarding 16% on a Settlement Fund of $750 million). The award of $6,500,000.00 is consistent with the Agreement signed by attorneys for both Parties. This Court, therefore, concludes that the $6,500,000.00 fee award is reasonable under the circumstances of this case and precedent within this Circuit.

Goldberger Factor 6: The Court finds that public policy supports granting attorneys' fees "that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC." In re Bristol-Myers Squibb Sec. Litig., 361 F. Supp. 2d 229, 236 (S.D.N.Y. 2005). This Court finds that an award of $6,500,000.00 from the Settlement Fund promotes the valuable public policy interests at stake.

Expenses: "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the

representation' of those clients." In re Independent Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 (S.D.N.Y. 2003). This Court finds that expenses in the amount of $525,000.00 were reasonable and necessary to the prosecution of this Action. The categories of expenses for which Counsel seek reimbursement are the types of expenses routinely charged to hourly paying clients including, inter alia, fees for experts and consultants, filing fees, and discovery expenses. (Dubbs Decl. July 26, 2013, ¶¶ 105-11.) The costs are detailed and well-documented, and are not duplicated in the attorney billing rates. (Id.)

Having conducted the Goldberger analysis, the Court finds attorneys' fees of $6,500,000.00 from the Settlement Fund to be reasonable and those attorneys' fees are HEREBY APPROVED. Likewise, the Court finds attorneys' expenses of $525,000.00 reasonable and those expenses are HEREBY APPROVED.

Class Representative Compensation: "Courts in this Circuit routinely award . . . costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." Hicks v. Stanley, No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y.

Oct. 24, 2005); see also In re Marsh & McLennan Cos., Inc. Sec. Litig., NO. 04 Civ. 8144, 2009 WL 5178546, at * 21 (S.D.N.Y. Dec. 23, 2009). Here, the request of OPERS and STRS Ohio for reimbursement of $4,855.00 in lost wages related to their active participation in this action is reasonable, and those expenses are HEREBY APPROVED.

SO ORDERED.

Dated: September 11, 2013
New York, New York

*Deborah A. Batts*
Deborah A. Batts
United States District Judge